UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re AMERICAN REALTY CAPITAL PROPERTIES, INC. LITIGATION | : | Civil Action No. 1:15-mc-00040-AKH |
|  | : |  |
|  | : | CLASS ACTION |
|  | : |  |
| This Document Relates To: | : |  |
|  | : | DEMAND FOR JURY TRIAL |
| ALL ACTIONS. | : |  |
|  | : |  |

AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

SUMMARY OF THE ACTION ..............................................................................2

JURISDICTION AND VENUE .............................................................................7

PARTIES ................................................................................................................7

THE SCHORSCH EMPIRE WAS STRUCTURED TO HELP CONCEAL
    DEFENDANTS' FRAUDULENT SCHEME ...............................................30

ARCP'S FINANCIAL REPORTING DURING THE CLASS PERIOD WAS
    MATERIALLY FALSE AND MISLEADING..............................................38

DEFENDANTS' DISSEMINATION OF FALSE AND MISLEADING STATEMENTS
    IN FURTHERANCE OF THEIR WRONGFUL COURSE OF CONDUCT ..................69

ARCP ACKNOWLEDGES THAT IT FALSIFIED ITS FINANCIAL STATEMENTS
    AND AFFO.................................................................................................131

McALISTER FILES HER VERIFIED COMPLAINT CONFIRMING DEFENDANTS'
    FRAUDULENT REPORTING ...................................................................139

GRANT THORNTON'S FALSE AND MISLEADING AUDIT OPINIONS ..........................141

APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET
    DOCTRINE .................................................................................................144

LOSS CAUSATION/ECONOMIC LOSS ...........................................................147

CLASS ACTION ALLEGATIONS .....................................................................150

PRAYER FOR RELIEF .......................................................................................173

JURY DEMAND ..................................................................................................174

1016919_1

Plaintiffs, by their undersigned attorneys, on behalf of themselves and the class they seek to represent, for their Complaint for Violations of the Federal Securities Laws Seeking Damages and Equitable Relief (the "Complaint"), allege the following upon knowledge as to their own acts and upon the investigation conducted by their counsel.  The investigation included examining and analyzing information relating to the relevant time period obtained from public and proprietary sources – including, inter alia, United States Securities and Exchange Commission ("SEC") filings, the sworn allegations in *Lisa Pavelka McAlister v. American Realty Capital Properties, Inc., et al.*, Index No. 162499/2014 (Sup. Ct. N.Y. Cnty.), other court filings related to American Realty Capital Properties, Inc. ("ARCP" or the "Company"), public reports, releases, investor presentations, published interviews, news articles and other media reports, interviews with former employees of the Company, and reports of securities analysts and investor advisory services.  Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1.      This securities class action is brought on behalf of those who purchased or otherwise acquired ARCP securities, including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock between September 7, 2011 and October 29, 2014 (the "Class" and the "Class Period"), seeking to pursue remedies under §§11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act"), and §§10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 ("1934 Act" or "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

2.      This case arises out of a multi-year long accounting fraud that ultimately required ARCP to admit that it had falsified its reported operating performance and/or financial statements for

- 1 -

every reporting period since it went public in 2011.  The fraud also resulted in the termination or resignation of all five of ARCP's most senior executives and the majority of the members of its Board of Directors.

## SUMMARY OF THE ACTION

3.       ARCP is a commercial real estate investment trust ("REIT") that owns and leases single-tenant freestanding commercial properties subject to medium-term leases with credit-quality tenants.  On September 7, 2011, ARCP completed its initial public offering ("IPO"), raising $69.75 million via the sale of 5.58 million shares of ARCP common stock at $12.50 per share.  Following the IPO, the price of ARCP stock fell below the IPO price and languished there as the Company was able to report only modest growth in adjusted funds from operations ("AFFO"), the single most important financial metric used by investors to assess a REIT's performance.[1]

4.       By early 2012, however, ARCP's senior insiders realized that their existing practice of artificially inflating ARCP's AFFO by failing to adjust for non-controlling interests was not going to adequately boost ARCP's share price performance, which, in turn, was impeding ARCP's ability to raise meaningful amounts of capital.  ARCP's senior insiders recognized that the only way to generate the substantial fees, commissions and compensation payments they sought would be to supercharge ARCP's reported AFFO growth.

---

[1]     AFFO is a measure of operating performance that is critical to analysts and investors in valuing a REIT.  AFFO is generally equal to a REIT's funds from operations with adjustments made for recurring capital expenditures used to maintain the quality of the REIT's underlying assets.  Thus, AFFO provides useful information for investors and analysts to assess the sustainability of a REIT's operating performance.  As the Company stated in its 2013 Amended Form 10-K, ARCP's *"[s]enior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance*."  (All emphasis in quotations is added unless otherwise noted.)

5.     Thus, ARCP's senior insiders doubled-down on their accounting scheme in order to fuel an unprecedented acquisition binge.  Through a series of complex and oftentimes opaque related-party transactions, ARCP grew from a relatively modest-sized entity which owned 63 properties at the time of the IPO into a $21 billion behemoth that, only three years later, owned more than 4,400 commercial properties.  ARCP's rapid-fire acquisition strategy was predicated upon an accounting scheme that was breathtaking in both its breadth and magnitude.

6.     Beginning in late 2012, ARCP's Chairman and CEO, defendant Nicholas S. Schorsch ("Schorsch"), and its CFO, defendant Brian Block ("Block"), assured ARCP investors and potential merger partners that ARCP's performance was "exceed[ing] our financial projections across the board."  In February 2013, the Company reported strong 2012 AFFO of $10.5 million, and declared that ARCP was "positioned for dynamic growth."  By late 2013, ARCP's senior insiders were emphasizing to the market that ARCP would report for 2014, "a growth rate of about 30% over 2013 AFFO per share."

7.     Defendants' scheme reached its apex in the second quarter of 2014 ("2Q14"), when the Company reported quarterly AFFO of $205.3 million, *a 429% increase over 2Q13*.  By that time, ARCP's senior insiders had caused ARCP to issue and/or sell $3.5 billion of ARCP debt securities and well over 800 million shares of ARCP stock at artificially inflated levels.  They had also used the billions of dollars ARCP had raised, together with artificially inflated shares of ARCP stock, to consummate no less than five multi-billion dollar acquisitions of other REITs and real estate portfolios.  And, as part of ARCP's acquisition spree, ARCP's insiders ensured that more than $917 million was paid directly or indirectly to ARCP insiders and their affiliates, including:

- $15.4 million paid for "post-transaction support services," which included $10 million paid to a Schorsch-controlled entity to provide, among other things, "public relations support" and "services relating to office supplies;"

- $17.7 million for so-called "financing coordination fees;"

- $21.6 million for the purported sale to ARCP of "furniture, fixtures, and equipment," for which "no evidence" could be found that at least a third of such furniture, fixtures or equipment were received;

- $63.4 million for "strategic advisory services;"

- $176.6 million in payments denominated as "subordinated distribution fees" and triggered by ARCP's purchase of defendant American Realty Capital Trust, III, Inc. ("ARCT III") and defendant American Realty Capital Trust, IV, Inc. ("ARCT IV"); and

- $333 million in "commissions and fees."

8.       On October 29, 2014, ARCP stunned the market by admitting that its previously reported first quarter of 2014 ("1Q14") AFFO and second quarter of 2014 ("2Q14") AFFO had been falsified.  ARCP further revealed that not only had senior ARCP executives been aware of the falsity of ARCP's financial statements, but they had allowed those false financial statements "*to be filed without completing an analysis of the errors*".  Even more troubling, ARCP admitted that the falsification of its 1Q14 Form 10-Q was "*intentionally not corrected*," and that "*other AFFO and financial statement errors were intentionally made*."  That is, ARCP's 2Q14 AFFO was falsified to cover up prior false statements.

9.       The Company also revealed that investors could no longer rely upon its previously reported financial results for fiscal year 2013 ("FY13"), 1Q14 and 2Q14, and further indicated that the financial manipulation that took place at ARCP had been perpetrated by Chief Financial Officer ("CFO") Block and Chief Accounting Officer ("CAO") defendant Lisa P. McAlister ("McAlister"), whom ARCP claimed to have asked to resign (though McAlister claims she was fired).

10.      The market's reaction to these startling revelations was swift and severe.  The trading price of ARCP securities collapsed in response to revelations of accounting fraud in ARCP's corporate suite, with the price of ARCP common stock dropping by more than $4.50 per share, or

- 4 -

36.6%, to $7.85, before recovering to close at $10 per share later that day, on volume of more than 231 million shares.  ARCP's stock price declined from $12.45 on October 28, 2014, to $7.53 on November 3, 2014, as the market digested the magnitude and implications of the scandal at ARCP, erasing over $3 billion in market capitalization and inflicting significant harm on ARCP investors.

11.    The reaction of regulators and the criminal authorities was likewise swift, as it was almost immediately reported that the Federal Bureau of Investigation ("FBI") and the United States Attorney's Office were conducting criminal investigations of the Company.  Likewise, the U.S. Securities & Exchange Commission ("SEC") immediately issued subpoenas and launched its own investigation into ARCP's admitted misconduct, as did state regulators.

12.    Six weeks later, on December 14, 2014, ARCP's management purge concluded with the resignations of Schorsch, defendant David Kay ("Kay") (who had recently taken over as CEO), and Chief Operating Officer ("COO") defendant Lisa Beeson ("Beeson"), who had recently taken over as President.

13.    On December 18, 2014, it became apparent why every senior executive employed by the Company during the Class Period – its Chairman, CEO, COO, CFO, and CAO – had been asked to leave the Company or been terminated.  McAlister, who had purportedly resigned from the Company as a result of her role in the misconduct, sued the Company, Schorsch, and Kay in the New York State Supreme Court, claiming that she had been defamed and terminated for reporting accounting malfeasance at the Company.

14.    McAlister had been one of the first executives to be hired from outside Schorsch's inner circle as ARCP transitioned to being internally managed.  Although she had repeatedly informed Schorsch, Kay and ARCP senior management of the accounting inaccuracies in February 2014, Kay instructed McAlister not to correct ARCP's false financial statements.  McAlister

- 5 -

declined to report her discovery in February 2014 to ARCP's auditor, Audit Committee, or any authority outside the Company. Not long after receiving and following Kay's instruction, McAlister was rewarded with a bonus, raise and promotion.

15. Thereafter, prior to the filing of ARCP's 2Q14 Form 10-Q, McAlister alleges that Schorsch directed Block to take steps to conceal previous improper reporting, and that when she then contacted the Company's outside auditors, defendant Grant Thornton, LLP ("Grant Thornton"), to express her concern, she was instructed to sign the Company's 2Q14 financial statements "as is," notwithstanding their falsity. McAlister signed the false financial reports in her capacity as ARCP's CAO and submitted them to the SEC on July 29, 2014. In September 2014, an "unidentified person," not McAlister, made a report to the Audit Committee, spurring the internal investigation that resulted in the October 29, 2014 announcement and the restatement.

16. On March 2, 2015, ARCP admitted that it had falsified its reported operating performance and/or financial statements for *each and every reporting period since it went public in 2011*. ARCP and its accountants, Grant Thornton, have now confirmed that the falsification of ARCP's financial performance was achieved via no fewer than three dozen different artifices. As alleged herein, defendants falsified ARCP's financial performance via a collage of accounting tricks, many of which were designed to inflate ARCP's AFFO and/or line its senior insiders' pocketbooks, including:

- Misclassifying recurring expenses as non-recurring, or "one-off," expenses so they would inflate ARCP's reported AFFO;

- Improperly delaying expense recognition so as to recognize expenses based on when they would have the least detrimental impact on ARCP's reported AFFO, versus properly recognizing expenses when they were actually incurred. This practice allowed ARCP to manipulate its AFFO so as to meet its guidance and bolstered its management's perceived reliability;

- 6 -

- Improperly using "goodwill" from acquisitions as a slush fund that ARCP retroactively increased to absorb subsequent losses from the sale of individual properties (thereby hiding the fact that ARCP had overvalued such properties when it acquired them); and

- Using improper, arbitrary and unauthorized metrics for executive compensation to increase the bonus pool by nearly $100 million beyond the amount ARCP's Compensation Committee had authorized.

## JURISDICTION AND VENUE

17.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o], and §§10(b), 14(a), and 20(a) of the Exchange Act [15 U.S.C. §§78j(b), 78n(a) and 78t(a)], and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

18.     This Court has jurisdiction over this action pursuant to §22 of the Securities Act [15 U.S.C. §77v], §27 of the Exchange Act [15 U.S.C. §78aa], and 28 U.S.C. §1331.

19.     Venue is properly laid in this District pursuant to §22 of the Securities Act, §27 of the Exchange Act, and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District.

20.     In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ stock market (the "NASDAQ").

## PARTIES

**A.     Plaintiffs**

21.     Lead Plaintiff is Teachers Insurance and Annuity Association of America ("TIAA"), College Retirement Equities Fund, TIAA-CREF Equity Index Fund, TIAA-CREF Real Estate Securities Fund, TIAA-CREF Large Cap Value Index Fund, TIAA-CREF Small Cap Blend Index

- 7 -

Fund, TIAA-CREF Life Real Estate Securities Fund, and TIAA-CREF Life Equity Index Fund (collectively, "TIAA-CREF").

(a)     TIAA was founded in 1918 and is a joint stock life insurance company incorporated in New York with its principal place of business in New York.  TIAA offers traditional annuities, as well as variable annuities that invest, among other things, in real estate and in mutual funds that invest in equities and fixed income investments.  College Retirement Equities Fund ("CREF"), a companion organization to TIAA, is a not-for-profit membership corporation incorporated in New York with its principal place of business in New York.  Together, TIAA and CREF constitute a Fortune 100 financial services organization that forms the principal retirement system for the nation's education and research communities and one of the largest retirement systems in the world based on assets under management.

(b)     As of October 31, 2014, TIAA-CREF served over five million individuals overall (with more than 3.7 million clients in institutional retirement plans) and managed in excess of $500 billion in assets.  As set forth in TIAA-CREF's certification attached hereto, TIAA-CREF purchased and/or acquired ARCP securities during the Class Period and was damaged thereby.

22.     Plaintiff Sheet Metal Workers' National Pension Fund ("National Pension Fund"), with assets of nearly $4 billion, is a defined benefit pension fund organized to provide retirement benefits to sheet metal workers and their spouses.  As set forth in National Pension Fund's certification attached hereto, National Pension Fund purchased and/or acquired ARCP securities, including ARCP common stock issued in the Cole Merger (defined below in ¶270) and ARCP common stock in the May 21, 2014 offering, as well as ARCP debt securities, during the Class Period and was damaged thereby.

23.     Plaintiff Union Asset Management Holding AG ("Union") is an investment company based in Germany that manages assets of approximately $279 billion.  As set forth in Union's certification previously filed as Dkt. No. 39-1 to Case No. 1:14-cv-08659-AKH and incorporated herein by reference, Union purchased and/or acquired ARCP debt securities during the Class Period and was damaged thereby.

24.     Plaintiff KBC Asset Management NV ("KBC") is an investment company based in Belgium that manages assets of approximately $212 billion.  As set forth in KBC's certification previously filed as Dkt. No. 39-1 to Case No. 1:14-cv-08659-AKH and incorporated herein by reference, KBC purchased and/or acquired ARCP securities, including ARCP common stock issued in the Cole Merger, during the Class Period and was damaged thereby.

25.     Plaintiffs Corsair Select 100 L.P., Corsair Select Master Fund, Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd. (collectively "Corsair") are a group of private investment funds that operate under the common management of Corsair Capital Management, L.P., which makes decisions for the Corsair funds.  As set forth in its certification attached hereto, Corsair purchased and/or acquired ARCP securities, including ARCP common stock issued in the Cole Merger and in the May 21, 2014 offering, during the Class Period and was damaged thereby.

26.     Plaintiffs the New York City Employees' Retirement System, the New York City Police Pension Fund, the New York City Police Officers' Variable Supplements Fund, the Board of Education Retirement System of the City of New York, the Teachers' Retirement System of the City of New York and the Teachers' Retirement System of the City of New York Variable A, the New York City Fire Department Pension Fund, the New York City Fire Officers' Variable Supplements Fund and the New York City Fire Fighters' Variable Supplements Fund (collectively, the "NYC

- 9 -

Funds") are defined benefit pension funds organized to provide retirement benefits to New York City employees and their spouses.  As set forth in the certification attached hereto, the NYC Funds purchased and/or acquired ARCP securities, including ARCP common stock and ARCP debt securities, during the Class Period and were damaged thereby.

27.     Plaintiff the City of Tampa General Employees Retirement Fund ("Tampa") is a defined benefit pension fund organized to provide retirement benefits to City of Tampa employees and their spouses.  As set forth in its certification attached hereto, Tampa purchased and/or acquired ARCP securities, including ARCP common stock issued in the May 21, 2014 offering, during the Class Period and was damaged thereby.

28.     Plaintiff Paul Matten ("Matten") purchased and/or acquired ARCP securities, including ARCP Series F Preferred stock issued in the ARCT IV Merger (desribed in ¶262) and option contracts on ARCP stock, during the Class Period, as set forth in his certification attached hereto, and was damaged thereby.

29.     Plaintiff Simon Abadi ("Abadi") purchased and/or acquired ARCP securities, including ARCP common stock issued in the Cole Merger (described in ¶270) and ARCP common stock issued in the May 21, 2014 offering, during the Class Period, as set forth in his certification attached hereto, and was damaged thereby.

30.     Plaintiffs Mitchell Ellis and Bonnie Ellis (collectively "Ellis") purchased and/or acquired ARCP securities, including ARCP Series F Preferred stock issued in the ARCT IV Merger, during the Class Period, as set forth in their certifications attached hereto, and were damaged thereby.

- 10 -

31.     Plaintiff Noah Bender ("Bender") made transactions in ARCP securities and ARCP option contracts during the Class Period, as set forth in his certification attached hereto, and was damaged thereby.

**B.     Defendants**

**Entity Defendants**

32.     ARCP is a corporation organized and existing under the laws of the state of Maryland, and maintained its headquarters during the Class Period at 405 Park Avenue, 15th floor, New York, New York 10022, and qualifies as a REIT for federal income tax purposes.  ARCP's common stock began trading on NASDAQ under the symbol "ARCP" on September 7, 2011.  On February 28, 2013, ARCP common stock was transferred to The NASDAQ Global Select Market, or the NASDAQ.

33.     ARCP owns freestanding commercial real estate leased on a medium term basis pursuant to what are colloquially referred to as "Triple Net Leases," primarily to investment credit rated and other creditworthy tenants.   As of December 31, 2014, ARCP owned more than 4,100 commercial properties representing more than 108 million square feet.  Substantially all of ARCP's business is conducted through its operating partnership, ARC Properties Operating Partnership L.P., of which ARCP is the sole general partner.

34.     ARC Properties Operating Partnership L.P. is a subsidiary and the operating partnership of ARCP.  ARCP is ARC Properties' sole general partner.  As of June 30, 2014, ARCP owned 97.3% of the common equity interest in ARC Properties, and certain persons affiliated with ARCP as of June 30, 2014 are limited partners and own an additional 1.7%.  ARC Properties is organized under the laws of the state of Delaware and listed its address during the Class Period as 405 Park Avenue, 15th Floor, New York, New York 10022.

- 11 -

35.     American Realty Capital Trust IV, Inc. was a Maryland corporation.  In June 2012, ARCT IV commenced an IPO and by September 19, 2013, had more than 71 million shares of common stock outstanding.  ARCT IV's principal executive offices were located at 405 Park Avenue, 15th Floor, New York, New York 10022.  Prior to ARCT IV's merger with ARCP, Schorsch, Edward M. Weil ("Weil"), William G. Stanley ("Stanley"), Peter M. Budko ("Budko") and Block held executive officer and/or director positions at ARCT IV.

36.     American Realty Capital Trust III, Inc. was a Maryland corporation that qualified as a REIT for U.S. federal income tax purposes. In March 2011, ARCT III commenced an IPO.  The ARCT III IPO closed in September 2012.  ARCT III's principal executive offices were located at 405 Park Avenue, 15th Floor, New York, New York 10022.  Prior to ARCT III's merger with ARCP, Schorsch, Weil, Edward G. Rendell ("Rendell"), Budko, Block, David M. Gong ("Gong") and Scott J. Bowman ("Bowman") held executive officer and/or director positions at ARCT III.

37.     AR Capital LLC ("AR Capital") is a Delaware limited liability company that provided management and advisory services to ARCP and its affiliates.  AR Capital is a subsidiary of RCS Capital ("RCS Capital") and during the Class Period was directly or indirectly owned and/or controlled by Schorsch, William M. Kahane ("Kahane"), Budko, Block and Weil.  AR Capital also owns ARC Properties Advisors LLC ("ARC Advisors"), which served as ARCP's external manager prior to January 8, 2014, and for which Schorsch served as CEO.  AR Capital is located at 405 Park Avenue, 12th Floor, New York, New York 10022.  During the Class Period, Schorsch, Weil, and Budko held executive officer positions at AR Capital.

38.     ARC Properties Advisors LLC is a Delaware limited liability company and was ARCP's external manager during Class Period until January 8, 2014.  ARC Advisors is directly or indirectly owned and/or controlled by Schorsch, Kahane, Budko, Block, and Weil.  ARC Advisors is

- 12 -

an affiliate of AR Capital and had its principal office at 405 Park Avenue, New York, NY 10022. During the Class Period, ARC Advisors and "its affiliates" received payments in excess of $917 million from ARCP, ARCT III and ARCT IV.

39.     RCS Capital Corporation ("RCAP") is a Delaware corporation whose stock is traded on the New York Stock Exchange ("NYSE") using the ticker symbol "RCAP."  RCAP is an investment firm with operating subsidiaries including retail advice services, wholesale distribution, investment banking, capital markets, investment research, investment management and crowdfunding.  RCAP was originally formed as a holding company that would operate and grow several RCS Capital subsidiaries including: Realty Capital Securities, LLC, a wholesale broker-dealer business; RCS Advisory Services, LLC, an investment banking and capital markets business and transaction management services provider; and American National Stock Transfer, LLC, a transfer agent business.  During the Class Period, RCAP was externally managed by RCS Capital Management, LLC, an entity directly or indirectly controlled by Schorsch and Kahane, its co-CEOs. RCAP is located at 405 Park Avenue, 14th Floor, New York, New York 10022.  During the Class Period, Schorsch, Weil, Kahane, Budko and Brian D. Jones ("Jones") held executive officer and/or director positions at RCAP.  During the Class Period, Schorsch and Kahane controlled more than 95% of the voting rights with respect to RCAP and thereby effectively controlled all matters affecting RCAP.

40.     RCS Capital, LLC is a Delaware limited liability company that operated as a multi-platform investment and financial services firm.  Through its subsidiaries, RCS Capital offers real estate investment trust management, securities brokerage, investment banking, transaction management, program management, risk analysis and portfolio management.  RCS Capital has two subsidiaries, AR Capital and RCAP Holdings, LLC., and was the ultimate parent entity in the

- 13 -

Schorsch empire.   During the Class Period, RCS Capital was owned and/or controlled by Schorsch and Kahane.

41.     Cole Real Estate Investments, Inc. (formerly known as Cole Credit Property Trust III, Inc.) ("Cole Inc.") was a Maryland corporation.  On February 7, 2014, Cole Inc. merged with ARCP (the "Cole Merger") and became a wholly owned subsidiary of ARCP.

**ARCP Management Defendants**

42.     Nicholas S. Schorsch founded ARCP in 2010, and served as its CEO and Chairman of its Board of Directors during the Class Period.  Effective October 1, 2014, Schorsch ceased serving as the Company's CEO.  Schorsch remained Chairman until December 15, 2014, when he was forced to "step[] down" from the Company's Board of Directors.  During the Class Period, Schorsch also served and/or continues to serve as an officer and/or director at numerous related entities.[2] Throughout the Class Period, Schorsch took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, AR Capital, RCAP, RCS Capital,

---

[2]    These include RCS Capital Management, LLC (CEO); RCAP Holdings LLC (Chairman and CEO); American Realty Capital Global Trust, Inc. (Chairman and CEO); American Realty Capital Global Trust, Inc. II (Chairman); AR Capital Acquisition Corp. (Chairman); ARC Properties Advisors, LLC (CEO); American Realty Capital Trust V, Inc. (Chairman and CEO); Corporate Income Properties – ARC, Inc. (President and Director); American Realty Capital Daily Net Asset Value Trust, Inc. (Chairman and CEO); American Realty Capital Healthcare Trust, Inc. (Chairman and CEO); American Realty Capital Healthcare Trust II, Inc. (Chairman); American Realty Capital Healthcare Trust III (Chairman); American Realty Capital Hospitality Trust, Inc. (Chairman); American Realty Capital New York City REIT, Inc. (Chairman and CEO); New York REIT (Chairman and CEO); American Realty Capital – Retail Centers of America II, Inc. (Chairman and CEO); ARC Realty Finance Trust ( Chairman and CEO); American Realty Capital – Retail Centers of America, Inc. (Chairman and CEO); American Realty Capital Trust Advisors, Inc. (Chairman and CEO); AR Capital Acquisition Corp. (Chairman); American Realty Capital Trust IV, Inc. (Chairman and CEO); Cole Corporate Income Trust, Inc. (Chairman, President and CEO); Cole Credit Property Trust, Inc. (Chairman and CEO); Cole Credit Property Trust IV, Inc. (Chairman, President and CEO); Cole Credit Property Trust V, Inc. (Chairman);   Cole Office & Industrial REIT, Inc. (Chairman, President and CEO); Cole Real Estate Income Strategy, Inc. (Chairman, President and CEO); Phillips Edison – ARC Grocery Center REIT II (CEO); and Business Development Corporation of America (Chairman and CEO).

- 14 -

ARC Properties, ARC Advisors, ARCT III and ARCT IV, as well as the other entities listed above in which he held ownership, executive and/or director positions.

43.     David Kay served as ARCP's President from December 2013 until October 1, 2014, when he replaced Schorsch as the Company's CEO and also joined the Company's Board of Directors.   On December 15, 2014, ARCP announced that Kay had "stepped down" as the Company's CEO, as well as from its Board of Directors.   During the Class Period, Kay took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP.

44.     Brian Block served as ARCP's CFO and Executive Vice President from its formation in December 2010 and was appointed as its Treasurer and Secretary effective December 2013.   On October 28, 2014, Block abruptly "resigned" from the Company after being asked to do so.   Block currently remains Executive Vice President and CFO of AR Capital, as well as a number of publicly registered, non-traded direct investments sponsored by AR Capital and/or controlled by Schorsch. Block also served as a director of RCAP from February 2013 until July 2014.   Throughout the Class Period, Block took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, ARC Advisors, ARCT III, ARCT IV, AR Capital, and RCAP.   Block is a licensed Certified Public Accountant ("CPA").

45.     Edward M. Weil served as ARCP's President, Treasurer and Secretary from its formation until January 2014, when he ceased functioning as an executive officer.   Weil was a member of ARCP's Board of Directors from March 2012 through June 2014, when he "resigned" from the Board in an effort to "enhance corporate governance."   Weil also served as President, COO, Treasurer, Secretary and Director of ARCT III and ARCT IV from their formation until their mergers with ARCP.   Weil is currently President and COO at AR Capital under the name "Michael

- 15 -

Weil," where Schorsch is Chairman of the Board and CEO.  Additionally, he currently serves as CEO of RCAP.  Prior to being appointed CEO of RCAP, Weil was the President, Treasurer, Secretary and a Director of RCAP.  During the Class Period, Weil served and/or continues to serve as an officer and/or director at numerous related entities.[3]  Throughout the Class Period, Weil took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, AR Capital, ARC Advisors, RCAP, ARCT III and ARCT IV.

46.     Peter M. Budko was ARCP's Executive Vice President and Chief Investment Officer from December 2010 until January 8, 2014.  During the Class Period, Budko served and/or continues to serve as an officer and/or director at numerous related entities, including: AR Capital (Director); RCAP (Director and Chief Investment Officer); American Realty Capital Global Trust, Inc. (Executive Vice President); Business Development Corporation of America (President and CEO); and American Realty Capital – Retail Centers of America II, Inc. (Chief Investment Officer). Throughout the Class Period, Budko took the actions and made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, AR Capital, RCAP, ARC Advisors, ARCT III and/or ARCT IV, as well as the other entities listed above in which he held ownership, executive and/or director positions.

47.     Brian D. Jones was ARCP's COO from February 2013 until November 2013.  Since December 2013, Jones has been the CFO, Assistant Secretary and Manager of RCAP.  Jones also has

---

[3]     These include New York Recovery REIT (Executive Officer); Phillips Edison – ARC Shopping Center REIT (Executive Vice President and Secretary); Phillips Edison – ARC Grocery Center REIT II (President, CEO, Treasurer and Secretary); American Realty Healthcare Trust, Inc. (Executive Officer); American Realty Capital Daily Net Asset Value Trust, Inc. (Director and Executive Officer); American Realty Capital – Retail Centers of America, Inc. (Executive Officer); American Realty Global Trust, Inc. (Director and Executive Officer); American Realty Healthcare Trust II (President, CEO, Treasurer and Secretary); and Business Development Corporation of America (Executive Vice President and Secretary).

- 16 -

served as head of the investment banking division of RCAP since February 2013. Jones served as CFO and treasurer of ARCT from its internalization in March 2012 until the close of its merger with Realty Income Corporation in January 2013.  Prior to ARCT's internalization, Jones served as senior vice president, managing director and head of investment banking at RCAP and ARC Advisory Services, LLC from September 2010 through February 2012.  Throughout the Class Period, Jones took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and RCAP, as well as the other entities listed above in which he held ownership, executive and/or director positions.  Jones is a licensed CPA.

48.     Lisa P. McAlister served as ARCP's Senior Vice President and CAO from November 2013 through October 28, 2014, when she was fired.  During the Class Period, McAlister took the actions and/or made the statements detailed herein in her capacity as an officer of ARCP.  McAlister is a licensed CPA.

49.     Lisa Beeson began serving as ARCP's COO on November 4, 2013, and also became President on October 1, 2014.  On December 15, 2014, Beeson "stepped down" as President and COO.  During the Class Period, Beeson took the actions and/or made the statements detailed herein in her capacity as an officer ARCP.

50.     The defendants listed in ¶¶42-49 above are collectively referred to as the "ARCP Management Defendants."

51.     Defendants Schorsch, Weil, Kay, Budko, Block and Beeson are identified in the Proxy Statements related to the ARCT III Merger, ARCT IV Merger and/or Cole Merger as participants in the solicitation of proxies and had direct participation in and oversight of the wrongdoing alleged herein in ¶¶220-223, 244-245, 253-256, 260, 262-266, 270-274, 276, 281-282, relating to those mergers.

- 17 -

**ARCP Director Defendants**

52.     William M. Kahane was a member of ARCP's Board of Directors from ARCP's formation until March 2012, and then again from February 2013 until June 24, 2014, when he resigned from the Board.  Between November 2010 and March 2012,  Kahane was an executive officer of ARC Advisors.  Kahane and Schorsch co-founded AR Capital.  During the Class Period, Kahane also served and/or continues to serve as an officer and/or director at numerous related entities.[4]  Throughout the Class Period, Kahane took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, RCAP, AR Capital and/or ARC Advisors, as well as the other entities listed herein in which he held ownership, executive and/or director positions.

53.     Leslie D. Michelson ("Michelson") served as a member of ARCP's Board of Directors during the Class Period, beginning in October 2012.  During the Class Period, Michelson also served as a Director at American Realty Capital Healthcare Trust, Inc. and Business Development Corporation of America.  Throughout the Class Period, Michelson took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, American Realty Capital Healthcare Trust, Inc. and/or Business Development Corporation of America.

---

[4]     These include RCS Capital Management, LLC (co-CEO); American Realty Capital Healthcare Trust, Inc. (Director); American Realty Capital Healthcare Trust II, Inc. (Director); American Realty Capital Healthcare Trust III, Inc. (Director); American Realty Capital New York Recovery REIT, Inc. (Director); American Realty Capital – Retail Centers of America, Inc. (Director); and American Realty Capital – Retail Centers of America II, Inc. (Director, COO, Treasurer and Secretary); Phillips Edison – ARC Shopping Center REIT (Director); Phillips Edison – ARC Shopping Center REIT II (Director); American Realty Capital Hospitality Trust, Inc. (CEO); Business Development Corporation of America (Director); Cole Real Estate Income Strategy (Daily NAV), Inc. (Director); and Cole Credit Property Trust (Director).

54.     William G. Stanley was appointed as an ARCP Director in connection with the
Company's acquisition of ARCT IV in January 2014, and remained a Director through the end of the
Class Period.  Stanley served as the interim Chairman and CEO at ARCP between December 2014
and April 1, 2015, assuming those roles when Schorsch and Kay terminated their employment at
ARCP.  Formerly, Stanley served as a Director of two REITs sponsored by AR Capital, as a Director
of a non-traded business development company sponsored by AR Capital, and as a director of ARCT
IV (appointed in January 2013).  When Stanley became Chairman and CEO in December 2014, the
Company announced that he had resigned, or was in the process of resigning, his positions with all
entities (other than ARCP) related to Schorsch.[5]  Throughout the Class Period, Stanley took the
actions and/or made the statements detailed herein in his capacity as an officer, member and/or
director of ARCP and/or ARCT IV, as well as the other entities listed herein in which he held
ownership, executive and/or director positions.

55.     Edward G. Rendell served as an ARCP Board member between July 2011 and
October 2012, and February 2013 through the end of the Class Period.  During the Class Period,
Rendell also served and/or continues to serve as an officer and/or director at numerous related
entities, including: ARCT III (Director); American Realty Capital Trust (Director); and American
Realty Capital – Retail Centers of America, Inc. (Director).  During the Class Period, Rendell took
the actions and/or made the statements detailed herein in his capacity as an officer, member and/or

---

[5]    These include Business Development Corporation of America, Business Development
Corporation of America II, American Realty Capital, Retail Centers of America, Inc., and New York
REIT Inc.  During the Class Period, Stanley served and/or continues to serve as an officer and/or
director of other related entities, including:  New York recovery REIT (Director); American Realty
Capital – Retail Centers of America, Inc. (Director); and Business Development Corporation of
America (Director).

- 19 -

director of ARCP and/or ARCT III, as well as the other entities listed above in which he held ownership, executive and/or director positions.

56.     Scott J. Bowman served as an ARCP Board member during the Class Period from February 2013 until September 9, 2014.  During the Class Period, Bowman served and/or continues to serve as an officer and/or director at numerous related entities, including: ARCT III (Director), American Realty Capital Global Trust, Inc. (Director and CEO), and American Realty Capital Daily Net Asset Value Trust, Inc. (Director).  Throughout the Class Period, Bowman took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and/or ARCT III, as well as the other entities listed above in which he held ownership, executive and/or director positions.

57.     David M. Gong served as an ARCP Board member between July 2011 and October 2012.  Gong also served as a member of ARCT III's Board from January 2011 to March 2013. During the Class Period, Gong also served and/or continues to serve as an officer and/or director at numerous related entities, including: American Realty Capital Healthcare Trust II, Inc. (Director); American Realty Capital Trust V, Inc. (Director); American Realty Capital – Retail Centers of America, Inc. (Director); AR Capital Acquisition Corp. (Director); ARC – RCA (Director); and American Realty Capital Daily Net Asset Value Trust, Inc. (Director).  During the Class period, Gong took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and/or ARCT III, as well as the other entities listed above in which he held ownership, executive and/or director positions.

58.     Thomas A. Andruskevich ("Andruskevich") served as an ARCP Board member from the Company's acquisition of Cole Inc. in February 2014 through the end of the Class Period. Andruskevich previously served as a Director of Cole Inc. from October 2008 until Cole Inc.'s

- 20 -

merger with ARCP in February 2014.  During the Class Period, Andruskevich took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and/or Cole Inc.

59.     Scott P. Sealy, Sr. ("Sealy") was appointed as an ARCP Board member as a result of the Company's acquisition of Cole Inc. in February 2014.  Sealy previously had served as a director of Cole Inc.  Sealy resigned from ARCP's Board effective June 10, 2014.  During the Class Period, Sealy took the actions and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and/or Cole Inc.

60.     Bruce D. Frank ("Frank") served as an ARCP Board member from July 8, 2014 through the end of the Class Period.

61.     The defendants listed in ¶¶52-60 above, as well as Schorsch, Kay and Weil, are collectively referred to as the "ARCP Director Defendants."

62.     Defendants Kahane, Michelson, Rendell, Gong and Bowman are identified in the Proxy Statements related to the ARCT III Merger, ARCT IV Merger and/or Cole Merger as participants in the solicitation of proxies, and had direct participation in and oversight of the wrongdoing alleged in ¶¶220-223, 244-245, 253-256, 260, 262-266, 270-274, 276, 281-282, relating to those mergers.

**AR Capital Defendants**

63.     Nicholas Radesca ("Radesca") was Executive Vice President and CFO of AR Capital, and served in the same capacity for a number of the publicly registered, non-traded alternative investments AR Capital sponsors during the Class Period.  During the Class Period, Radesca took the actions and/or made the statements detailed herein in his capacity as an officer AR Capital.

64.     AR Capital, Schorsch, Weil, Kahane, Budko and Radesca are collectively referred to herein as the "AR Capital Defendants."

65.     The AR Capital Defendants are identified in the Proxy Statements related to the ARCT IV Merger and Cole Merger as participants in the solicitation of proxies, and had direct participation in and oversight of the wrongdoing alleged herein related to those mergers.

66.     During the Class Period, the ARCP Management Defendants, ARCP Director Defendants and Redesca, as senior executive officers and/or directors of ARCP, AR Capital, RCAP, RCS Capital, ARC Advisors and/or ARC Properties, were privy to confidential and proprietary, non-public information concerning ARCP, AR Capital, RCAP, RCS Capital, ARC Advisors and/or ARC Properties' operations, finances, financial condition and present and future business prospects via internal documents, conversations and connections with other officers and employees, and/or attendance at management and/or board of directors meetings and committees thereof.  Because of their possession of such information, the ARCP Management Defendants, ARCP Director Defendants and Redesca had the ability and opportunity to prevent the issuance of the Company's reports and releases alleged herein to be false or misleading and/or to cause them to be corrected. The ARCP Management Defendants, ARCP Director Defendants and Redesca's materially false and misleading statements and omissions during the Class Period violated their duty to promptly disseminate accurate, full and truthful information with respect to ARCP's operations, business, financial statements, and financial metrics, such as AFFO, so that the market price of ARCP's securities would be based upon truthful and accurate information.

67.     The ARCP Management Defendants, ARCP Director Defendants and Redesca, by reason of their status as senior executive officers and/or directors of ARCP, AR Capital, RCAP, RCS Capital, ARC Advisors and/or ARC Properties, were "controlling persons" within the meaning of

- 22 -

§15 of the 1933 Act and §20(a) of the 1934 Act, had the power and influence to cause ARCP, AR Capital, RCAP, RCS Capital, ARC Advisors and/or ARC Properties to engage in the unlawful conduct complained of herein, and were able to and did, directly or indirectly, control the conduct of ARCP, AR Capital, RCAP, RCS Capital, ARC Advisors and/or ARC Properties.

**ARCT IV Defendants**

68.     Abby M. Wenzel ("Wenzel") was a member of ARCT IV's Board of Directors from May 2012 through the closing of the merger with ARCP.  Wenzel is also a Director at American Realty Capital Global Trust, Inc.  During the Class Period, Wenzel took the actions and/or made the statements detailed herein in her capacity as a director of ARCT IV.

69.     Elizabeth K. Tuppeny ("Tuppeny") was a member of ARCT IV's Board of Directors from May 2012 through the closing of the merger with ARCP.  Tuppeny is also a Director of American Realty Healthcare Trust II, Inc.  During the Class Period, Tuppeny took the actions and/or made the statements detailed herein in her capacity as a director of ARCT IV.

70.     ARCT IV, Schorsch, Weil, Stanley, Wenzel, Tuppeny, Budko and Block are collectively referred to as the "ARCT IV Defendants."

71.     As senior executive officers and/or directors of ARCP and/or its affiliates during the Class Period, the ARCT IV Defendants were privy to confidential and proprietary information concerning ARCP's operations, finances, financial condition and present and future business prospects in connection with the due diligence undertaken as part of the ARCT IV Merger via internal documents, conversations and connections with other officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

72.     The ARCT IV Defendants are identified in the ARCT IV Proxy Statement as participants in the solicitation of proxies, had direct participation in and oversight of the wrongdoing alleged in ¶¶244-245, 262-266, 276 related to that merger, were provided with copies of the ARCT IV Proxy Statement alleged herein to be misleading prior to or shortly after its issuance, and had the ability and opportunity to prevent its issuance.

**ARCT III Defendants**

73.     ARCT III, Schorsch, Weil, Rendell, Gong, Bowman, Budko and Block are collectively referred to as the "ARCT III Defendants."

74.     As senior executive officers and/or directors of ARCP and/or its affiliates during the Class Period, the ARCT III Defendants were privy to confidential and proprietary information concerning ARCP's operations, finances, financial condition and present and future business prospects in connection with the due diligence undertaken in as part of the ARCT III Merger via internal documents, conversations and connections with other officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

75.     The ARCT III Defendants are identified in the ARCT III Proxy Statement as participants in the solicitation of proxies, had direct participation in and oversight of the wrongdoing alleged in ¶¶220-228, 231 related to that merger, were provided with copies of the ARCT III Proxy Statement alleged herein to be misleading prior to or shortly after its issuance, and had the ability and opportunity to prevent its issuance.

**Cole Defendants**

76.     Christopher H. Cole ("Cole") was Cole Inc.'s Executive Chairman of the Board of Directors from April 5, 2013, through the closing of the merger with ARCP.

- 24 -

77.     Marc T. Nemer ("Nemer") was Cole Inc.'s CEO from April 5, 2013, through the closing of the merger with ARCP.

78.     Jeffrey C. Holland ("Holland") was Cole Inc.'s President and COO from June 3, 2013, through the closing of the merger with ARCP.

79.     Stephan Keller ("Keller") was Cole Inc.'s Executive Vice President, CFO and Treasurer from June 3, 2013, through the closing of the merger with ARCP.

80.     D. Kirk McAllaster, Jr. ("McAllaster") was Cole Inc.'s Executive Vice President from April 5, 2013, through the closing of the merger with ARCP.

81.     Leonard W. Wood ("Wood") was a member of Cole Inc.'s Board of Directors from April 5, 2013, through the closing of the merger with ARCP.

82.     Cole Inc., Cole, Nemer, Holland, Keller, McAllaster, Wood, Sealy and Andruskevich are collectively referred to as the "Cole Defendants."  During the Class Period, the Cole Defendants took the actions, failed to take the actions required of them, and/or made the statements detailed herein in their capacities as officers and/or directors of Cole Inc.

83.     As senior executive officers and/or directors of Cole Inc. and its affiliates during the Class Period, the Cole Defendants had access to confidential and proprietary information concerning ARCP's operations, finances, financial condition and present and future business prospects in connection with the due diligence undertaken as part of the Cole Merger beginning on or about October 2013 and continuing through February 2014, and via internal documents, conversations and connections with other officers and employees, attendance at management and/or board of directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

- 25 -

84.     The Cole Defendants are identified in the Cole Proxy Statement as participants in the solicitation of proxies, had direct participation in and oversight of the wrongdoing alleged in ¶¶253-256, 260, 270-274, 276, 281-282 related to that merger, were provided with copies of the Cole Proxy Statement alleged herein to be misleading prior to or shortly after its issuance, and had the ability and opportunity to prevent its issuance. Thus, the Cole Defendants had the opportunity to commit the acts alleged herein.

**Grant Thornton**

85.     (a)     Grant Thornton is the U.S. member firm of Grant Thornton International Ltd, an international firm that provides independent audit, tax and advisory services.  Grant Thornton has revenue in excess of $1.3 billion and operates 58 offices across the United States, with more than 500 partners and 6,000 employees.  Grant Thornton served as ARCP's outside auditor before, during and after the Class Period.

(b)     In connection with its 2012 and 2013 annual audits, Grant Thornton issued unqualified audit opinions that certified ARCP's false and misleading financial statements included in its Form 10-K filed with the SEC for those periods.  Grant Thornton also consented to including its 2012 and/or 2013 unqualified audit opinions in the Registration Statements filed with the SEC in connection with the July 2013, December 2013, and September 2014 debt offerings, the May 2014 equity offering, the Cole Merger and the ARCT IV Merger.

(c)     Grant Thornton's unqualified, or "clean," audit reports certified ARCP's Class Period financial statements as being free of material misstatements. Grant Thornton's audit reports, included in ARCP's 2012 Form 10-K and 2013 Form 10-K, stated that ARCP's statement of financial position for the year under audit and the previous year, and its statement of the results of operations for the year under audit and the two previous years, presented "fairly" the financial

- 26 -

position of ARCP "in conformity with accounting principles generally accepted in the United States of America." Grant Thornton's unqualified audit reports for the fiscal years ended December 31, 2012 ("FY12") and December 31, 2013 were materially false and misleading because, as set forth in ¶¶114-196, ARCP's financial statements for the FY12 and FY13 did not present fairly, in all material respects, the Company's results of operations or its financial condition in accordance with Generally Accepted Accounting Principles ("GAAP").

(d)     During the Class Period, Grant Thornton served as ARCP's auditor and received millions of dollars in payments from Schorsch-related entities,[6] including nearly $1.6 million in fees for its ARCP audit work in 2013, a 437% increase from the fees it received for such work in 2012.

86.     In late July 2014, Grant Thornton was informed about the false and misleading nature of ARCP's financial statements by McAlister, as described in ¶352. Instead of investigating the information that was reported, Grant Thornton Partner Richard LeFleur and Manager Jessica Estrada directed McAlister to sign ARCP's Form 10-Q for 2Q14 and file the false financial statements with the SEC, but did nothing at the time to determine how widespread the reported misconduct was, by what amount ARCP's financial statements were potentially misstated, or if other violations of GAAP were occurring. Grant Thornton remained silent on the reporting of this information while it specifically authorized its 2013 unqualified audit opinion concerning ARCP's FY13 financial statements, as well as ARCP's false and misleading 1Q14 Form 10-Q and 2Q14 Form 10-Q, to be

---

[6]   These include ARCP, American Realty Capital Daily Net Asset Value Trust, Inc., American Realty Capital Global Trust, Inc., American Realty Capital Healthcare Trust II, Inc., American Realty Capital New York City REIT, Inc., American Realty Capital New York Recovery REIT, Inc., American Realty Capital – Retail Centers of America, Inc., and American Realty Capital Trust V, Inc.

- 27 -

incorporated by reference into the registration statement used in connection with the $2.55 billion offering of ARCP debt securities in September 2014.

**Underwriter Defendants**

**July 2013 Offering**

87.     J.P. Morgan Securities LLC ("JP Morgan"), Citigroup Global Markets Inc. ("Citigroup"),  Barclays Capital Inc. ("Barclays"),  BMO Capital Markets Corp. ("BMO Capital"), and KeyBanc Capital Markets Inc. ("KeyBanc") acted as Joint Book Running Managers, and JMP Securities LLC ("JMP Securities"), Ladenburg Thalmann & Co. Inc. ("Ladenburg"), and Realty Capital Securities, LLC ("RCS Securities") acted as Co-Managers of the July 24, 2013 underwriting of $300 million Senior Notes.

88.     The underwriter defendants listed above in ¶87 collectively acted as the underwriting syndicate and participated in the drafting and/or dissemination of the registration statement, as well as in the sale of those Senior Notes to Plaintiffs and the Class in connection with the July 2013 offering.  The underwriter defendants listed above were responsible for ensuring the completeness and accuracy of the statements contained in, or incorporated by reference into, the registration statement used in connection with the July 2013 offering. The underwriter defendants listed above collectively received more than $8 million in connection therewith.

**December 2013 Offerings**

89.     Barclays, Citigroup, Credit Suisse Securities (USA) LLC ("Credit Suisse"),  Morgan Stanley & Co. LLC ("Morgan Stanley"), and Wells Fargo Securities, LLC ("Wells Fargo") acted as Joint Book Running Managers, and Capital One Securities, Inc. ("Capital One") and JMP Securities acted as Managers of the December 2013 offerings of $690 million of Convertible Senior Notes, and

- 28 -

participated in the drafting and/or dissemination of the registration statements, as well as in the sale of those Senior Notes to Plaintiffs and the Class.[7]

90.    The underwriter defendants listed above in ¶89 collectively acted as the underwriting syndicate that drafted and disseminated the offering documents in connection with the December 2013 offerings.  The underwriter defendants listed above were responsible for ensuring the completeness and accuracy of the various statements contained in, or incorporated by reference into, the registration statements used in connection with the December 2013 offerings.  The underwriter defendants listed above collectively were paid nearly $22 million in connection therewith.

**May 2014 Offering**

91.    Merrill, Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Citigroup, Barclays, J.P. Morgan, Capital One, Credit Suisse, Deutsche Bank Securities Inc. ("Deutsche Bank"), Wells Fargo, Robert W. Baird & Co. ("Baird"), Ladenburg, BMO Capital, JMP Securities, Janney Montgomery Scott, LLC ("Janney"), Mizuho Securities USA Inc. ("Mizuho"), PNC Capital Markets LLC ("PNC Capital"), Piper Jaffray & Co. ("Piper Jaffray"), and RBS Securities Inc. ("RBS Securities") acted as underwriters of the May 21, 2014 offering of 138 million shares of ARCP common stock, and participated in the drafting and/or dissemination of the registration statement, as well as in the sale of the common stock offered to Plaintiffs and the Class.

92.    The underwriter defendants listed above in ¶91 collectively acted as the underwriting syndicate that drafted and disseminated the offering documents in connection with the May 2014 offering.  The underwriter defendants listed above were responsible for ensuring the completeness and accuracy of the various statements contained in, or incorporated by reference into, the

---

[7]    The underwriters of this offering exercised the greenshoe over-allotment option, bringing the total number of shares sold in the May 21, 2014 offering to 138 million shares, and total gross proceeds to $1.656 billion.

registration statement used in connection with the May 2014 offering.  The underwriter defendants listed above collectively were paid nearly $57 million in connection therewith.

## THE SCHORSCH EMPIRE WAS STRUCTURED TO HELP CONCEAL DEFENDANTS' FRAUDULENT SCHEME

93.     ARCP is a REIT, focused on single-tenant freestanding commercial properties subject to medium-term leases with high credit-quality tenants.  After its September 7, 2011 IPO, which raised just under $70 million, ARCP grew into one of the largest REITs in the United States.  By 2014, ARCP owned more than 4,400 properties spanning almost 100 million square feet.[8]

94.     ARCP lies at the center of a complex web of interrelated companies devised by its former Chairman and CEO, Schorsch.  In addition to ARCP, Schorsch served as Executive Chairman of the Board of RCAP, a self-described "full-service investment firm expressly focused on the individual retail investor," and as Chairman and CEO of AR Capital, "a full-service investment advisory firm sponsoring a series of investment programs with an emphasis on publicly registered non-traded real estate offerings."

---

[8]     REITs own – and typically operate – income-producing real estate or real estate-related assets. REITs provide investors with the ability to receive a share of the income produced through real estate ownership, without owning the underlying real estate.  To qualify as a REIT, a company must, *inter alia*, have the bulk of its assets and income connected to real estate investment and must distribute at least 90% of its taxable income to shareholders annually in the form of dividends.

95.     RCAP and AR Capital are but two of the many companies that formed the dizzying

array of companies owned and/or controlled by Schorsch, which were used to effectuate the scheme

and wrongful course of conduct alleged herein:



96.     Schorsch used RCAP, AR Capital, Cole Inc. and other affiliated entities to raise money for his non-traded REITs, and then used ARCP equity securities as currency to buy out the non-traded REITs.[9]  Forbes.com described the Schorsch empire as "[a] fully integrated operation [that] not only manufactured nontraded, high-yielding REITs, it also provided research and advisory services to them, and controlled the second-largest independent financial advisory operation in the nation (and 9,200 brokers) who peddled them."

**ARCP Embarks on an Acquisition Spree**

97.     When ARCP went public on September 7, 2011, it sold just over 5.5 million shares of ARCP common stock at $12.50 per share.  As of December 31, 2011, the Company reported total assets of $132 million.  By December 31, 2012, ARCP's assets had almost doubled (to $256 million), as ARCP embarked on one of the most aggressive merger-and-acquisition campaigns ever undertaken in the real estate industry.  The table below shows the ARCP's rapid-fire pattern of acquisition:

**ARCP ACQUISITION SPREE**

| Acquisition | Close Date | Transaction Value |
|---|---|---|
| ARCT III | 02/28/13 | **$2.2 billion** |
| GE Capital Properties | 06/27/13 | **$774 million** |
| CapLease, Inc. | 11/03/13 | **$2.2 billion** |
| ARCT IV | 01/03/14 | **$3 billion**, including 79.1 million ARCP shares |
| Fortress Group Properties | 01/08/14 | **$601 million** |
| Cole Inc. | 02/07/14 | **$11.2 billion**, including 520 million ARCP shares |
| Red Lobster Properties | 07/28/14 | **$1.5 billion** |

98.     Describing itself publicly as an "acquisition machine," ARCP became the largest REIT of its kind in the United States.  It grew by acquiring hundreds of millions of dollars of real

---

[9]   The December 12, 2014 agreement entered into between Schorsch and the Company in connection with his resignation, which does not purport to be complete, identifies no fewer than ***47*** entities from which Schorsch agreed to resign his positions.

1016919_1

estate assets at a time (and in some cases billions of dollars), increasing its total assets more than *16,036%* in two and a half years, as the following chart demonstrates:



**American Realty Capital Properties, Inc.**
Total Assets (Billions of $)

99.     Prior to January 8, 2014, the external manager responsible for ARCP's "affairs on a day-to-day basis" was ***ARC Properties Advisors, LLC*** (defined above as ARC Advisors) (whose CEO was also Schorsch) which was controlled by Schorsch, Block, Budko, Weil and Kahane.  ARC Advisors, is a separate legal entity that ARCP does not own and whose revenues and profits do not benefit ARCP's shareholders.  Yet its name is confusingly similar to ***ARC Properties Operating Partnership, L.P.*** (defined above as ARC Properties), which is a subsidiary of and 97.3% owned by ARCP and serves as ARCP's operating partnership.

100.    The ARCP "acquisition machine" was designed to and did effectively transfer hundreds of millions of dollars from ARCP to entities owned and/or controlled by Schorsch, Weil,

Kahane, Block and Budko in connection with ARCP's Class Period acquisition spree.  In just three years, ARCP paid ARC Advisors "and its affiliates" over $917 million – most of which was purportedly for offering/acquisition-related "commissions," "fees," "services," and "acquisition related expenses."   ARC Advisors' use of similarly named affiliates to receive this money was designed to and did make it more difficult to trace.  These affiliates included AR Capital; RCS Securities; RCS Advisory Services, LLC; ARC Advisory Services, LLC; American Realty Capital Advisors III; American Realty Capital Advisors IV, LLC; American National Stock Transfer, LLC; and ARC Real Estate Partners, LLC.

101.    Indeed, in 2012 and 2013, ARCP transferred over $66 million to ARC Advisors, headed by Schorsch, "and its affiliates" for "acquisition related expenses."   ARCP transferred to ARC Advisors "and its affiliates" another $240 million in 2013 and 2014 for "subordinated distribution fees" and "strategic advisory services," purportedly in connection with ARCP's mergers with ARCT III and ARCT IV, as well as an additional $119 million for "general and administrative expenses" and another $31 million for "management fees."

102.    ARCP also paid $7.66 million to RCS Securities for "financial advisory and strategic services to *ARCP* prior to the consummation of the ARCT IV Merger," with ARCT IV paying *another* $7.66 million to RCS Securities for the "[p]rovision of financial advisory and strategic services to *ARCT IV* prior to the consummation of the ARCT IV Merger."  Put another way, one Schorsch-controlled entity (RCS Securities) advised *both* sides of the ARCT IV Merger (the Company and ARCT IV) – both of which were *also* Schorsch-controlled entities – and received $7.66 million from *each* of them.

103.    Although modest by comparison, two of ARCP's final cash transfers to ARC Advisors "and its affiliates" highlight the motive of Schorsch, Block and others to engage in the

- 34 -

fraudulent scheme and wrongful course of business detailed herein.  In 2014, ARCP paid exactly $20 million to ARC Advisors "and its affiliates" for nothing more than switching from external management to internal management.  Notably, this $20 million was split exactly evenly between "post-transaction support services" and "furniture, fixtures, and equipment," for which ARCP itself acknowledged "there was no evidence of the receipt [of] and it could not support the value of."

104.    The various ways defendants received money from ARCP was so complex that a months-long Audit Committee investigation resulted in no more than vague findings of "certain payments" to Schorsch-related entities "that were not sufficiently documented or [that] otherwise warrant scrutiny," and a lingering question as to "whether [ARCP] has a right to seek recovery for any other such payments and, if so, its alternatives for recovery."

**ARCP's Acquisition Spree Boosted Executive Incentive Payments**

105.    The "acquisition machine" was also a fundamental part of defendants' efforts to expand ARCP's asset base to increase the basis for incentive compensation under the Multi-Year Outperformance Plan (the "OPP").

106.    The OPP has two components, one "absolute" and one "relative," both measured over a three-year period in terms of total return to stockholders, including both share price appreciation and common stock distributions.  First, if ARCP achieved a total return to stockholders of more than 7% a year, the plan paid out 4% of the dollar amount of the total return exceeding that benchmark. Second, if the Company's annual performance exceeded the median total return of a group of peer companies by six percentage points or more, then the OPP paid out an additional 4% of that excess total return.

107.    With respect to this second component, however, the recipients were to receive 50% of their incentive compensation even if ARCP posted a cumulative total return of ***zero percent***.  That

- 35 -

is, **even with no total return to shareholders whatsoever**, the OPP entitled certain defendants, including Schorsch and Block, to **half** of this component of their incentive compensation.

108.   The Compensation Committee of ARCP's Board of Directors approved the adoption of the OPP in October 2013, and allocated the bulk of its $120 million executive-incentive compensation pool – **42.5%** – to Schorsch alone (over a five-year period).

109.   The OPP's obvious extravagance was not quite enough for defendants Schorsch and Block, whether by fiat arbitrarily increased the OPP by $100 million simply by altering the plan and disseminating a Proxy stating that the "maximum award value" of the Plan was $222.1 million.[10] ARCP's shareholders rejected the OPP in a non-binding vote at the Company's annual meeting on May 29, 2014.  Of the 413 million shares represented, only 32.4% voted in favor of the package. Nonetheless, the Company apparently ignored the shareholder vote and all indications are that the plan was later adopted by the ARCP Defendants, notwithstanding its repudiation by ARCP shareholders, with the arbitrary $100 million OPP pool increase by Schorsch and Block.[11]

110.   Schorsch's compensation from the OPP was in addition to: (i) his guaranteed base salary for 2014 of $1.1 million; (ii) an estimated $8.8 million of nonguaranteed cash bonus and equity awards; and (iii) a "retention grant" worth $24.9 million, paid out over nine annual installments of $2.8 million.  Schorsch's total awarded compensation for 2014 alone was estimated

---

[10]   Although ARCP's 2014 Form 10-K, filed on March 30, 2015, states that the Compensation Committee intended the "maximum award pool opportunity" under the OPP to be $120 million, the Company's Schedule 14A (Proxy Statement) filed on April 29, 2014 gave a very different "maximum award value" – $222.1 million.

[11]   The December 12, 2014 agreement between Schorsch and the Company in connection with his resignation, for example, specifically refers to the "Award Agreement dated January 8, 2014, under the ARCP 2014 Multi-Year Outperformance Plan."

1016919_1

at **$28.4 million**, assuming he achieved only the **midrange** of the OPP plan, or almost **26 times** his guaranteed salary of $1.1 million.

### AFFO Is the Most Critical Metric for ARCP Investors

111.    Arguably the single most critical metric relied upon by analysts and investors in valuing a REIT is a measure of operating performance called AFFO.  AFFO is based on another commonly accepted measure of operating performance for REITs called Funds from Operations, or FFO.[12]  The Company defines FFO as "net income or loss computed in accordance with GAAP, excluding gains or losses from sales of property but including asset impairment write-downs, plus depreciation and amortization, after adjustments for unconsolidated partnerships and joint ventures." AFFO, in turn, equals FFO adjusted to exclude (in the case of ARCP) acquisition-related fees and expenses, amortization of above-marketplace assets and liabilities, amortization of deferred financing costs, straight-line rent, non-cash mark-to-market adjustments, amortization of restricted stock, non-cash compensation and gains and losses.  As the Company has acknowledged, AFFO:

> [P]rovides information consistent with management's analysis of the operating performance of the properties.  By providing AFFO, ***ARCP believes it is presenting useful information that assists investors and analysts to better assess the sustainability of our operating performance***.  Further, ARCP believes AFFO is ***useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies, including exchange-traded and non-traded REITs***.

112.    Indeed, ARCP's financial advisor with respect to its acquisition of Cole Inc., Barclays, likewise relied heavily on AFFO in conducting its analysis of selected comparable

---

[12]    Although ARCP does not dismiss the utility of GAAP-related metrics for measuring its performance, it does point out certain deficiencies in those metrics with respect to REITs.  As the Company noted repeatedly in 2013 and 2014: "Accounting for real estate assets in accordance with GAAP implicitly assumes that the value of real estate assets diminishes predictably over time.  Since real estate values have historically risen or fallen with market conditions, many industry investors and analysts have considered the presentation of operating results for real estate companies that use historical cost accounting to be insufficient by themselves."

companies.  For example, according to the Joint Proxy Statement/Prospectus issued to the stockholders of ARCP and Cole Inc. to solicit their votes in favor of the Cole merger, "Barclays Capital calculated and compared various financial multiples and ratios of Cole Inc., ARCP and the selected comparable companies.  As part of its selected comparable company analysis, Barclays Capital calculated and analyzed each company's ratio of its current stock price to its calendar year 2014 estimated AFFO based on Wall Street research consensus estimates.  This resulted in a range of 12.2x to 16.8x estimated AFFO with a median of 14.6x."

113.    AFFO is so important in assessing the value and performance of a REIT that analysts, including Ladenburg, BMO Capital, and JMP Securities, valued ARCP and its shares throughout the Class Period on a price-to-AFFO basis.  For example, based on the Company's purported "cheap multiple (11x 2014 AFFO compared to the group at roughly 15x)," JMP Securities characterized ARCP stock as a "***must own***" security.

**ARCP'S FINANCIAL REPORTING DURING<br>THE CLASS PERIOD WAS MATERIALLY FALSE AND MISLEADING**

114.    During the Class Period, defendants violated GAAP and SEC regulations governing the reporting of ARCP's financial results and the maintenance of an effective system of internal control over financial reporting and public disclosure.[13]  Throughout the Class Period, ARCP issued to investors and filed with the SEC financial statements that ARCP, the ARCP Management Defendants and the ARCP Director Defendants falsely represented were prepared in conformity with GAAP.  ARCP, the ARCP Management Defendants, and the ARCP Director Defendants also

---

[13]    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that ***financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate***, despite footnote or other disclosure.  Regulation S-X requires that interim financial statements must also comply with GAAP.  17 C.F.R. §210.10-01(a).

supplemented ARCP's GAAP financial statement with certain "non-GAAP financial measures" during the Class Period.  These, too, were false and misleading.

115.    At issue in this case are the Company's financial statements for the years ended December 31, 2012 and 2013; the quarters ended March 31, 2013, June 30, 2013, and September 30, 2013; and the quarters ended March 31, 2014 and June 30, 2014 (collectively the "GAAP financial statements"), as well as certain ARCP pro-forma financial statements (defined below) and "non-GAAP" financial measures issued by the Company during the Class Period, and Defendants' statements related thereto.

116.    ARCP violated GAAP standards and SEC rules because, as ARCP has admitted, the financial information contained in ARCP's financial statements was not prepared in conformity with applicable GAAP and SEC requirements, nor was the financial information a fair presentation of the Company's operations.  ARCP has also admitted that management was aware of certain errors that "were intentionally not corrected," and that other "errors were intentionally made."   ARCP admittedly understated its operating expenses, as well as its operating and net losses, and misclassified expenses in order to give the false impression to investors that those expenses were non-recurring.

117.    Indeed, ARCP has now admitted that the GAAP financial statements and the non-GAAP financial measures it issued to investors during the Class Period were materially false and misleading and "***should no longer be relied upon***."[14]

118.    In fact, ARCP has acknowledged that the Company's Class Period financial statements were riddled with accounting errors and/or financial manipulations, resulting in

---

[14]   The pro-forma financial statements issued by the Company during the Class Period, which were a function of the GAAP financial statements, were also materially false and misleading and presented in violation of GAAP.

- 39 -

understated net losses attributable to stockholders by as much as 26% in certain quarters.   In addition, ARCP has likewise admitted that it overstated its AFFO per share each and every year during the Class Period, with the overstatement reaching as much as 100% in certain quarters.

119.   As provided in detail in ¶¶120-196 below, ARCP has restated its GAAP financial statements to correct myriad GAAP violations and financial reporting improprieties, including:

- The Company regularly and improperly classified ordinary business expenses as "merger-related," which inflated AFFO and gave investors the false impression that such expenses were not recurring in nature.   As restated, the expenses were reclassified as general and administrative expenses.

- Numerous expenses were recorded in the incorrect accounting period, effectively delaying expense recognition and understating reported expenses.

- On multiple occasions, the Company improperly classified management fees to affiliates as being merger and other non-routine transaction-related, which masked related-party transactions, inflated AFFO, and gave investors the false impression that such expenses were not recurring in nature.   As restated, the expenses were reclassified as management fees to affiliates.

- On multiple occasions, the Company recorded deferred financing costs as merger and other transaction-related expenses.

- On multiple occasions, the Company recorded payments to Schorsch-controlled entities as being for the acquisition of furniture, fixtures and equipment, and included those purported assets on its books, notwithstanding that there was "no evidence of the receipt" to substantiate the existence of any such assets.   The Company restated the payments by writing off the amounts.

- Additionally, as detailed in ¶¶182-196, ARCP had inadequate and deficient internal controls that permitted the misstatement of ARCP's financial results and reported AFFO.   Among these deficiencies were (i) the lack of controls preventing senior management from changing ARCP's financial statements without a proper basis, review and approval; and (ii) a lack of control over the formulation of the AFFO and the evaluation of the Company's ability to meet AFFO guidance.

- Despite the lack of these key financial controls, in each quarter that ARCP has been a public company, Schorsch and Block certified to investors that they had designed, reviewed, evaluated and found ARCP's controls "effective" to prevent the very type of misstatements ARCP has now admitted occurred.

**ARCP's Financial Disclosures During the Class Period**

120.    During the Class Period, ARCP filed with the SEC purported GAAP financial statements.[15]  In addition, ARCP provided investors with certain "non-GAAP" financial measures during the Class Period.  The objective of non-GAAP measures, which are governed by Regulation G [17 C.F.R. §244.100], is to facilitate investor understanding and provide better insight into a company's operational performance, liquidity or financial position by making various adjustments to the entity's reported GAAP results.

121.    Given the operating characteristics of real estate companies, industry trade group National Association of Real Estate Investment Trusts, Inc. ("NAREIT") adopted a financial measure known as FFO, which provides investors with an industry-wide standard measurement of a REIT's operating performance that eliminates certain perceived drawbacks associated with the presentation of a REIT's net income as calculated under GAAP.  ARCP represented that its calculation of FFO was consistent with the standards established by the White Paper on FFO approved by the Board of Governors of NAREIT, which generally defines FFO as net income less: (i) gains (or losses) from sales of most property; and (ii) depreciation expense on real estate related assets.  Schorsch is a current member of NAREIT's Public Non-Listed REIT Council Executive Committee – an advisory body to NAREIT's Executive Board and senior staff.

---

[15]   Pursuant to Regulation S-X, ARCP also filed with the SEC certain "pro-forma" financial statements.  As provided by Regulation S-X, the objective of pro-forma financial information is to provide investors with information about the continuing impact of a particular transaction by illustrating how it might have affected an entity's historical financial statements had the transaction been consummated earlier.  Accordingly, during the Class Period ARCP filed various pro-forma financial statements combining the Company's historical GAAP financial statements with the historical financial statements of certain of the entities it acquired during the Class Period (the "pro-forma financial statements").

1016919_1

122.    During the Class Period, ARCP also presented investors with its adjusted FFO, or AFFO, as an additional supplemental measure of its operating performance.  ARCP represented that the Company's reported AFFO provided information that assisted investors and analysts in assessing the sustainability of the Company's ongoing operating performance by excluding transactions that were not related to the ongoing profitability of its portfolio of properties.  These representations, which were included in each of the annual and quarterly SEC filings made during the Class Period, stated, in pertinent part, as follows:

- "***By providing AFFO***, we believe we are presenting useful information that ***assists investors and analysts to better assess the sustainability of our ongoing operating performance without the impacts of transactions that are not related to the ongoing profitability of our portfolio of properties***."

- "We believe ***AFFO is useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies that are not as involved in activities which are excluded from our calculation***."

- "We believe that the use of FFO and AFFO, together with the required U.S. GAAP presentations, provide a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing, and investing activities."

123.    Contrary to these representations, ARCP's disclosed AFFO did not provide a more complete understanding of the Company's performance; rather, it was materially misstated throughout the Class Period.

### ARCP's Admissions that Its GAAP Financial Statements Were Materially False and Misleading

124.    There is no dispute that ARCP's Class Period financial statements were false.  Nor is there any dispute that those false financial statements were reported in ARCP's quarterly and annual SEC filings, and included in the various offering documents issued during the Class Period.  Defendants have restated ARCP's prior financial results and ***admitted*** that they were materially false

- 42 -

as to, among other things: (i) ARCP's operating loss; (ii) loss from continuing operations; (iii) net loss; and (iv) net loss per share, as detailed in ARCP's Amended 2013 Form 10-K, Amended 1Q14 Form 10-Q and Amended 2Q14 Form 10-Q. The restatement reveals that the reported net loss was understated in FY12, FY13 and in four of the six restated quarters.

125.    The fact that ARCP restated its previous financial statements is an admission that (i) the financial results originally issued during the Class Period and its public statements regarding those results were *materially false and misleading*; and (ii) the financial statements reported during the Class Period were incorrect *based on information available to defendants at the time the results were originally reported*.

126.    As noted by the SEC, GAAP only allows a restatement of prior financial statements based upon information "that existed at the time the financial statements were prepared," and "restatements should not be used to make any adjustments to take into account subsequent information that did not and could not have existed at the time the original financial statements were prepared."[16] The Financial Accounting Standards Board ("FASB"), the governing body that promulgated the accounting rules regarding restatements of prior financial statements, has defined "restatement" as "the process of revising previously issued financial statements to reflect the correction of an error in those financial statements." *See* FASB Accounting Standards Codification ("ASC") Topic 250-10-20, *Accounting Changes and Error Corrections*. FASB has also defined the "errors" that may be corrected through a restatement as fictitious: "an error in recognition, measurement, presentation, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of GAAP, or oversight or misuse of facts that existed at the

---

[16]    *In re Sunbeam Sec. Litig.*, No. 98-8258-Civ.-Middlebrooks (S.D. Fla. filed Jan. 31, 2002), SEC *Amicus Curiae* Brief regarding Defendants Motion *In Limine* to Exclude Evidence of the Restatement and the Restatement Report.

time that the financial statements were prepared." *Id.* Indeed, as alleged herein, the restatement at issue here was, according to defendants, due to accounting errors that were the result of "*intentional*" misuse of the facts that were known at the time.

127.    Before the market opened on October 29, 2014, ARCP issued a release and filed a Form 8-K with the SEC revealing that the financial information contained in the Company's 2013 Form 10-K and its previously issued financial statements and other financial information contained in the Company's 1Q14 Form 10-Q and 2Q14 Form 10-Q "*should no longer be relied upon*." The release also announced that "*intentional*" financial statement "errors" caused the Company's previously disclosed net loss (on a GAAP basis) for the three and six months ended June 30, 2014 to be understated.

128.    Later that day, on a conference call with analysts and investors, Kay acknowledged that the Company had inappropriately accounted for various accruals and expenses, which affected, among other things, the Company's reported GAAP earnings-per-share and AFFO, which were overstated.

129.    On March 2, 2015, ARCP amended certain documents previously filed with the SEC.[17] The amended SEC filings confirm that numerous and varied violations of GAAP and financial reporting improprieties necessitated the restatement of ARCP's financial statements for the following seven consecutive reporting periods: (1) the year ended December 31, 2012; (2) the year ended December 31, 2013; as well as the quarters ended (3) March 31, 2013; (4) June 30, 2013; (5) September 30, 2013; (6) March 31, 2014; and (7) June 30, 2014. Defendants perpetrated these

---

[17]    The filings amended due to falsity include ARCP's amended Form 10-K for the year ended December 31, 2013 (the "2013 Amended Form 10-K") and its amended Forms 10-Q for the quarter ended March 31, 2014 (the "1Q14 Amended Form 10-Q") and the quarter ended June 30, 2014 (the "2Q14 Amended Form 10-Q"). The 2013 Amended Form 10-K, 1Q14 Amended Form 10-Q and 2Q14 Amended Form 10-Q are collectively referred to herein as the "amended SEC filings."

- 44 -

improprieties by deliberately employing a host of accounting schemes and manipulations, the majority of which can be generally classified under the following categories: (a) understatement of expenses, (b) improper equity awards for executives containing more favorable provisions than authorized, (c) misclassification of expenses, and (d) improper accounting for loss on disposal (and goodwill), which the Company's deficient controls did not and could not prevent.

### ARCP'S Understated Expenses

130.    In violation of some of the most basic and fundamental rules of accounting, defendants repeatedly devised ways to artificially understate ARCP's net losses by improperly, systematically and continually understating expenses throughout the Class Period.  GAAP requires expenses to be recorded in the period they are incurred.  *See* FASB Statement of Financial Accounting Concepts No. 5, *Recognition and Measurement in Financial Statements of Business Enterprises*, ¶¶85-87, and ASC Topic 450-20, *Loss Contingencies*.  This concept, that expenses be recorded in the same period in which the corresponding benefit is realized, is one of, if not the, most basic tenet underlying accrual accounting.  ARCP, however, deliberately ignored this most basic rule and instead systematically engaged in a scheme of improper timing of expense recognition, typically understating its expenses in a current period and/or improperly delaying expense recognition for as long as possible.

131.    ARCP achieved this improper timing of expense recognition in at least the following ways, as explained more fully below: (a) by improperly deferring current period expenses to later periods; (b) by improperly capitalizing non-capitalizable expenses as assets and amortizing them over time, rather than correctly expensing them at the time they were incurred; and (c) by failing to write down the value of impaired assets.

- 45 -

### ARCP's Deferral of Expenses to Later Periods

132.    Defendants understated the Company's loss by improperly deferring current period expenses to subsequent periods, using a variety of methods to defer merger-related expense, tax liability, bonus accruals, stock award expenses, depreciation and interest expenses.

### Deferred Merger-Related Expenses

133.    ARCP admittedly failed to record $14.5 million of merger and other non-routine transaction-related expenses that were "incorrectly excluded" from the 2013 financial statements. Instead, ARCP delayed recording this expense, and the associated increase in net loss, until 1Q14. ARCP also failed to record $1.2 million of merger and other non-routine transaction-related expenses that were incorrectly excluded from the 2Q14 financial statements.

### Deferred Merger-Related Transfer Tax Liability

134.    ARCP recorded transfer tax liabilities in incorrect accounting periods.  ARCP improperly understated the Company's loss by excluding certain merger and non-routine transaction-related expenses during 2013.  As it has now admitted, ARCP should have recorded a controlling interest transfer tax liability upon consummation of the ARCT III Merger and the Company's merger with CapLease totaling $1.1 million and $8.9 million for first quarter of 2013 ("1Q13") and FY13, respectively.  These accruals and corresponding merger and other non-routine transaction-related expenses were improperly excluded from the 2013 financial statements.

### Deferred Bonus Accruals

135.    The Company also admittedly failed to record bonus expenses on a timely basis.  $1.8 million in bonuses paid in 2014 should have been, but were not, recorded as an accrued expense for FY13.  As such, the Company increased the 2013 bonus accrual and the corresponding general and administrative expense by this amount in connection with the restatement in accordance with ASC Topic 710-10, *Salaries, Wages, and Bonuses*, which requires compensation to be accrued during the

- 46 -

performance period.  Additionally, annual bonuses of $5.8 million should have been accrued for and expensed as of and for 2Q14, in accordance with the Company's accounting policy of accruing estimated bonuses throughout the year, but were not.

### Deferred Accounting for Stock Awards Granted

136.    Additionally, the documentation of awards granted to ARCP directors provided for accelerated vesting of shares upon voluntary resignation of the directors.  As a result, there was no required service period for the vesting of such awards and, thus, GAAP required that the full amount be expensed in accordance with ASC Topic 718, *Compensation-Stock Compensation*, which requires such compensation to be expensed over the requisite service period.  Thus, awards that vest immediately should be recognized at the grant date.  In connection with the restatement, the Company corrected this accounting by recording $3.3 million as a general and administrative expense during 1Q14.

### Deferred General and Administrative Expenses

137.    ARCP has restated its financial statements to reflect general and administrative expenses that were recorded in the incorrect period.  This correction required the recordation of additional general and administrative expenses of $1.7 million and $0.9 million in 1Q14 and 2Q14, respectively.

### Deferred Depreciation and Acquisition Related Expenses

138.    Another example of ARCP's delayed expense recognition relates to depreciation and acquisition related expenses.  In connection with the restatement, the Company admitted that its 1Q14 depreciation expense and acquisition related expenses were under expensed by $2.3 million and $0.6 million, respectively, based on its accounting for certain properties acquired in 2013.  The Company had delayed recording these amounts until 2Q14 instead of in 1Q14.  As such, as reflected

- 47 -

in the restatement, the Company moved the depreciation expense and acquisition-related expense by the respective amounts from 2Q14 to 1Q14.  The Company has also admitted that it did not properly record $6.0 million of depreciation expense for real estate properties acquired during 1Q14, and that this too had been expensed in 2Q14 instead of 1Q14.  Therefore, the $6.0 million expense was properly recorded in 1Q14 in the restatement.

**Deferred Interest Expense**

139.    ARCP admittedly understated interest expense related to a swap by $1.4 million in 1Q14, in violation of ASC Topic 835, *Interest*.

**ARCP Improperly Capitalized Expenses**

140.    ARCP admittedly improperly capitalized non-capitalizable expenses as assets and improperly amortized them over time rather than properly expensing them at the time they were incurred.   ASC Topic 805, *Business Combinations*, requires that acquisition-related costs be recorded as expenses in the periods in which the costs are incurred.  By improperly capitalizing these costs, ARCP recorded assets so that they would slowly be depreciated over the estimated life of the asset, rather than expensed immediately as incurred as was required, which resulted in an artificial inflation in ARCP's reported financial performance.

141.    On multiple occasions, ARCP recorded the supposed acquisition of furniture, fixtures and equipment ("FF&E") from other Schorsch-controlled entities when there was "***no evidence***" to substantiate the existence of any such assets.  Upon consummation of the ARCT III Merger in 1Q13, for example, the ARCP Directors caused ARC Properties to enter into an agreement with ARCT III (an entity owned and controlled by Schorsch) to acquire certain FF&E and other assets.  The Company originally capitalized $4.1 million of FF&E costs and expensed $1.7 million of costs in 1Q13.  However, there was no evidence of the receipt of any FF&E and the Company has now

- 48 -

acknowledged it could not support the value of the FF&E purportedly acquired.  The same situation occurred in 1Q14 upon consummation of the ARCT IV Merger, resulting in the improper capitalization of $2.1 million in that quarter.  As part of the restatement, the Company expensed the amounts originally capitalized – $4.1 million and $2.1 million – and recognized the expenses in merger and other non-routine transaction-related expense in 1Q13 and 1Q14, respectively.

### ARCP Failed to Write Down the Value of Impaired Assets

142.    In violation of ASC 360-10-35-21, *Property, Plant and Equipment*, ARCP "failed to monitor events and changes in circumstances that could indicate that the carrying amount of its real estate and related assets may not be recoverable."  The Company belatedly performed a detailed analysis of the portfolio in connection with the restatement and noted four properties with impairment indicators.  The Company assessed the recoverability of the carrying amounts of such properties as of the date in which such indicators existed.  Based on this assessment, the Company noted two properties with carrying amounts in excess of their expected undiscounted cash flows.  As a result, the Company reduced the carrying amount of the real estate and related net assets to their estimated fair values by recognizing an impairment loss of $2.1 million and $3.3 million for 3Q13 and FY13, respectively, in accordance with ASC 360-10-35-21, which requires that an impairment loss be measured as the amount by which the carrying amount of a long-lived asset exceeds its fair value.

143.    Additionally, ARCP failed to properly classify certain property as held for sale as of June 30, 2014.  GAAP, specifically ASC 360-10-35-43, requires that a long-lived asset classified as held for sale be measured at the lower of its carrying amount or fair value less cost to sell.  In connection with the restatement, the Company classified the property as held for sale, adjusted the

fair value of the property at that date and recognized a loss on held for sale assets of $1.8 million for 2Q14.

### ARCP's Equity Awards for Defendants Contained Provisions More Favorable than Had Been Authorized

144.    The ARCP Management Defendants' self-serving behavior included ARCP's failure to comply with boundaries and directives set by the Compensation Committee.  As the Company later admitted, equity awards made to Schorsch and Block in connection with the Company's transition from external to internal management were altered such that they "contained vesting provisions that, as drafted, were more favorable to them than the Compensation Committee had authorized."  In addition, the OPP approved by the Compensation Committee contained a maximum award pool opportunity based upon the Company's equity market capitalization as *of the date of the approval of the OPP in October 2013*, equaling approximately $120 million.  Yet, the ARCP Management Defendants implemented the OPP with a maximum award pool approximately $100 million greater, which was derived from a pro forma equity market capitalization as of January 8, 2014.[18]  These manipulations resulted in a decrease of $8.4 million to stock-based compensation reported in general and administrative expense for the six months ended June 30, 2014 – $6.3 million in 1Q14 and $2.2 million in 2Q14.

### ARCP Misclassified Expenses

145.    ARCP misled investors by misclassifying ordinary business expenses (*i.e.*, operating expenses) as merger and other non-routine transaction-related expenses in order to inflate AFFO and to give the false impression to investors that they were not routine in nature and would not be

---

[18]   The amended 2Q14 Form 10-Q filed March 2, 2015, states that the maximum award pool as altered by ARCP management was $218.1 million, but ARCP had previously claimed in the April 29, 2014 Proxy Statement that the award pool would be $222.1 million.

recurring in future accounting periods.  Investors would not have considered merger related expenses as the normal costs the Company incurs as a result of performing its normal business operations, but rather as one-time expenses that were related to the particular merger(s) entered into during that period.  Such acquisition-related expenses are excluded in the calculation of AFFO.  ARCP's mischaracterization of operating expenses as expenses that would not continue in future periods inflated AFFO and misled investors to believe that such expenses would not have a negative impact on future profits.

### General &Administrative

146.    The Company improperly classified $75.7 million of general and administrative expenses as "merger-related" in FY13 – specifically, $5.4 million, $0.4 million, $0.3 million and $69.6 million in 1Q13, second quarter of 2013 ("2Q13"), third quarter of 2013 ("3Q13") and fourth quarter of 2013 ("4Q13"), respectively.  ARCP also improperly classified $14.5 million of general and administrative expenses as "merger-related" in the six months ended June 30, 2014 – $9.4 million in 1Q14 and $5.2 million in 2Q14.  As restated, the amounts have been reclassified from merger and other non-routine transaction-related expenses to general and administrative expenses. The largest component of the amount misclassified in FY13 was $59.6 million of equity-based compensation expense relating to the OPP.

### Management Fees

147.    On multiple occasions, the Company improperly classified management fees paid to affiliates as being merger and other non-routine transaction-related, which masked related-party transactions in violation of ASC Topic 850, *Related-Party Disclosures*, and gave investors the false impression that such expenses were not routine in nature.  The Company identified $13.0 million and $13.9 million of management fees that were improperly classified as merger and other non-routine

- 51 -

transaction-related expenses in 1Q13 and 1Q14, respectively.  As restated, the expenses were accurately classified as management fees to affiliates.

### Deferred Financing Costs

148.    The Company improperly recorded as merger and other non-routine transaction-related expenses, costs that should have been capitalized as deferred financing costs and amortized accordingly in the amount of $1.0 million, $1.2 million, $5.9 million, $20.6 million and $0.8 million for the periods 1Q13, 3Q13, FY13, 1Q14 and 2Q14, respectively.  As such, adjustments to properly record and amortize the deferred financing costs were made in the restatement.  As a result of capitalizing these deferred financing costs, additional interest expense of $0.6 million (1Q13), $2.3 million (FY13), $8.7 million (1Q14), and $1.3 million (2Q14) was recorded.  And related extinguishment of debt expense of $2.3 million and $0.9 million was recorded in 1Q14 and 2Q14, respectively.

### ARCP Improperly Accounted for Losses on Disposals and Goodwill

149.    Subsequent to the CapLease Merger in 2013, ARCP disposed of certain properties acquired in that transaction.  The disposition of such properties resulted in a net loss on disposition; however, the Company improperly accounted for such losses by adjusting its purchase price allocation to increase the amount of goodwill and decrease the associated real estate investments recorded in connection with the CapLease Merger by $12 million when it reissued its recast financial statements to reflect the common control merger with ARCT IV.  ***Defendants have admitted that they lacked the evidence to support adjusting its goodwill as a measurement period adjustment***.  As a result, in connection with the restatement, the Company has reversed the measurement period adjustments that were made to goodwill and related assets and liabilities acquired in the CapLease Merger and recognized a net loss on the dispositions in 2014 when the dispositions occurred.

- 52 -

150.    Similarly, in 1Q14, subsequent to both the CapLease and Cole Mergers, ARCP disposed of certain properties acquired in those mergers.  The disposition of such properties resulted in a net loss on disposition in 1Q14 and a net gain in 2Q14; however, the Company incorrectly adjusted its purchase price allocation by increasing its goodwill recorded in connection with the mergers by $13.6 million in 1Q14 and by $2.6 million in 2Q14.  ***ARCP has admitted that it lacked the evidence to support adjusting ARCP's goodwill as a measurement period adjustment***.  As a result, the Company reversed the measurement period adjustments that were made to goodwill and recognized a net loss on dispositions for 1Q14 and a net gain on disposition for 2Q14.

151.    In addition, ARCP recorded a decrease to goodwill of $0.6 million for FY13 to reflect valid measurement period adjustments that were identified subsequent to the initial purchase price allocation.  The Company also identified certain liabilities assumed and subsequent payments of such liabilities by the former manager from the CapLease Merger that were not recorded properly. To correct the inaccurate accounting, the Company has increased goodwill by $3.0 million, decreased merger and non-routine transaction-related expenses by $0.7 million and increased the equity contributions by $2.3 million.

152.    Furthermore, ARCP assigned goodwill associated with certain mergers to the Company's Real Estate Investement segment.  However, the Company determined that it did not properly account for disposals of real estate because a portion of goodwill was not included in the carrying amount of the associated real estate in its determination of the gain or loss on disposition. To correct the inaccurate accounting, the Company allocated $7.0 million and $2.2 million of goodwill to real estate dispositions in 1Q14 and 2Q14, respectively, which increased the loss on disposition of properties recognized.

153.    As admitted by defendants, ARCP's improper accounting for losses on disposal and goodwill violated GAAP, including ASC Topic 350, *Intangibles – Goodwill and Other*, ASC Topic 360, *Property, Plant, and Equipment*, ASC Topic 610, *Other Income*, and ASC Topic 805, *Business Combinations*.

### Additional Accounting Improprieties

154.    Accompanying the myriad GAAP violations described above, ARCP also engaged in a number of other accounting improprieties described in their amended SEC filings and corrected by the restatement including, but not limited to, the following:

- failing to properly record distributions on long-term incentive plan units;

- improperly classifying amounts due to affiliates as accounts payable and accrued expenses, thereby concealing that these expenses were being paid to other Schorsch-controlled entities;

- improperly excluding certain expenses from the calculation of the net loss attributable to non-controlling interest holders;

- improperly accounting for gains/losses on derivative instruments (specifically, interest rate swaps);

- understating interest expense by improperly recording the same credit twice; and

- misclassifying interest expense, debt extinguishment costs and loss on disposition of properties expenses.

155.    In addition to the restatement of the consolidated financial statements (*i.e.*, balance sheets, statements of operations, statements of comprehensive loss, statements of changes in equity and statements of cash flows), the Company has also restated certain notes to the financial statements – as guided by ASC Topic 235, *Notes to Financial Statements* – to reflect the error corrections noted above.

- 54 -

**ARCP's Admissions that Its Non-GAAP Financial Measures**
**During the Class Period Were Materially False and Misleading**

156.    In the October 29, 2014 release, ARCP announced, among other things, that an error

in the calculation of the Company's AFFO for 1Q14 (the "1Q14 AFFO error"), which was identified

but "intentionally" left uncorrected, caused that metric to be overstated during that period.   ARCP

also announced that "***intentional***" AFFO errors during 2Q14, coupled with the ***intentional*** 2Q14

GAAP errors and the identified 1Q14 AFFO error, caused the Company's previously disclosed

AFFO for the three and six months ended June 30, 2014 to be overstated (the "2Q14 AFFO fraud").

157.    During the October 29, 2014 conference call, Kay provided additional explanation

about the 1Q14 AFFO falsification, stating, in pertinent part, as follows:

> There are two methods which are acceptable - both are acceptable in disclosing and
> presenting non-controlling interest in the AFFO calculation.  In the first quarter, our
> Company was using the net method.  Under the net method, you present net income
> on a net basis, meaning that any income related or allocated to the noncontrolling
> shareholders, which are those of shareholders in our operating partnership - we have
> a traditional OP structure, UPREIT structure.  And so those OP or noncontrolling
> interest shareholders represent roughly 3.5% of the total shares outstanding.
>
> Under the net method, we would present the top net income at 96.5%, and add back
> roughly 96.5% of each of the add-backs to come to AFFO.  You would then divide
> AFFO by just the common shareholder numbers, the weighted average common
> shares, to get to an AFFO per share number.  You can see that depicted in the table
> that is in both the 8-K as well as at the back of the press release.
>
> The impact of that for the first quarter of the adjustment - what happened was when
> the add-backs were done, they were done at 100% instead of 96 - roughly 96.5%.
> That created too much add-back, or presentation for AFFO would be too high by
> roughly $17.6 million. That was a roughly $0.03 overstatement of AFFO per share
> for the quarter in that presentation.

158.    With respect to the 2Q14 AFFO fraud, the October 29, 2014 release also stated, in

pertinent part:

> [B]ased on the preliminary findings of the investigation, the Audit Committee
> believes that the Company incorrectly included certain amounts related to its non-
> controlling interests in the calculation of adjusted funds from operations ("AFFO"), a
> non-U.S. GAAP financial measure, for the three months ended March 31, 2014 and,

- 55 -

as a result, overstated AFFO for this period.  The Audit Committee believes that this error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.

159.    In the amended SEC filings, *ARCP has admitted that it materially misstated its FFO and AFFO for each and every year that ARCP has been a public company*, that is, fiscal years 2011, 2012 and 2013, and interim quarters ended March 31, 2013, June 30, 2013, September 30, 2013, March 31, 2014 and June 30, 2014.

160.    In addition to repeating many of the admissions set forth in the October 29, 2014 release, the amended SEC filings acknowledge that the AFFO guidance ARCP issued to investors during the Class Period was without reasonable basis, as "*the Company did not have appropriate controls over the formulation of AFFO per share guidance or the periodic re-assessment of the Company's ability to meet its guidance*."

161.    The 2013 Amended Form 10-K included, in pertinent part, the following admissions with respect to the Company's previously disclosed AFFO:

> The investigation found that Adjusted Funds From Operations ("AFFO"), a non-GAAP measure presented in the Company's SEC filings and other financial communications, was overstated for fiscal year 2011, fiscal year 2012, fiscal year 2013 (including each fiscal quarter of 2013) and, as previously disclosed in the October 29 8-K, the first two fiscal quarters of 2014.  *Senior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance and, for the first two quarters of 2014, sought to maintain reported AFFO within the 2014 guidance range of $1.13 to $1.19 per share announced at the end of 2013.* The overstatements of AFFO were due in part to errors in reflecting amounts attributable to the limited partnership interests in the Company's operating partnership, ARC Properties Operating Partnership, L.P., held by holders other than the Company (known as non-controlling interests or "NCI").  *Prior to the filing of the Quarterly Report on Form 10-Q for the first quarter of 2014, some members of senior management were aware of NCI errors but allowed the report to be filed without completing an analysis of the errors*. In the Company's Quarterly Report on Form 10-Q for the second quarter of 2014, as previously reported in the October 29 8-K, *the NCI errors in the first quarter were intentionally not corrected, and other AFFO and financial statement*

***errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014***.

162.     ARCP's admissions that "some members of senior management" were "aware" of the errors is consistent with McAlister's Verified Petition, identifying those members of senior management to include Schorsch, Kay, Block and McAlister.

163.     The amended SEC filings also disclose that the AFFO that ARCP, the ARCP Management and the ARCP Director Defendants reported to investors during the Class Period was false because:

- "The Company failed to implement and maintain an effective internal control environment that had appropriate processes to manage the changes in business conditions resulting from the volume and complexity of its 2013 and first quarter 2014 transactions, combined with the pressure of market expectations inherent in announcing AFFO per share guidance for 2014";

- "[T]he Company has determined that it is appropriate to include certain adjustments that were not included in the previously reported AFFO calculation"; and

- "[T]he Company has determined that it was not appropriate to adjust for operating fees incurred to affiliates as these expenses represent operating expenses that are typical for the industry."

164.     However, in each quarter during the Class Period, ARCP's annual and quarterly SEC filings contained certifications signed by Schorsch and Block pursuant to §302 of Sarbanes Oxley Act of 2002 ("SOX"), attesting that the financial information contained in the filing was true, that it did not omit material facts, and that the Company's internal and disclosure controls were effective. The certification stated:

I, [Schorsch and Block], certify that:

1.     I have reviewed this . . . Report . . . of [ARCP];

2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the

- 57 -

statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.   Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.   The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)   Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)   Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)   Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are

- 58 -

reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

165.    Likewise, the ARCP's annual and quarterly SEC filings represented that:

In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this . . . [report] and determined that the disclosure controls and procedures are effective . . . .

166.    These representations concerning the Company's internal and disclosure controls, and Schorsch and Block's certifications pursuant to SOX, were repeated, in all material respects, in the Form 10-Ks and 10-Qs that ARCP filed with the SEC during the Class Period, as detailed in ¶¶201, 203, 208, 213, 217, 235, 239, 250, 258, 285, 292, 307.

167.    According to ARCP's amended SEC filings, the AFFO and financial statement errors were caused by the Company's inadequate and deficient control environment.  The ARCP Management Defendants failed to establish key controls necessary to ensure that the Company's financial reporting complied with GAAP and that the financial information provided to investors was not materially misstated.  The ARCP Management Defendants failed to: (1) establish controls designed to ensure that accounting employees would not be subject to pressure to make inappropriate decisions affecting the financial statements and/or the financial statement components of AFFO; (2) establish controls designed to ensure that accounting concerns raised by employees would be timely and appropriately addressed by senior management; (3) establish controls designed to prevent changes to the financial statements and supporting financial information by senior management without the proper levels of review, support and approval; (4) establish appropriate

- 59 -

Case 1:15-mc-00040-AKH   Document 30   Filed 04/17/15   Page 62 of 275

policies and procedures surrounding the accounting treatment and classification of merger-related expenses, goodwill, impairments and purchase accounting; and (5) emphasize the importance of adherence to the Company's Code of Business Conduct and Ethics.

### ARCP's Admission that Its Financial
### Misstatements Were Material

168.    ARCP has now restated its financial statements for FY12, FY13, and 1Q13-3Q13, 1Q14 and 2Q14, due to numerous and varied violations of GAAP and financial reporting improprieties.  ARCP's financial restatements establish that the GAAP financial statements and non-GAAP measures it issued to investors during the Class Period were materially misstated, as only materially misstated financial statement and measures need be corrected and re-reported on a retroactive basis.[19]

169.    ARCP's misstatements of certain performance measures reported in the Company's GAAP financial statements during the Class Period, due to its GAAP violations and financial reporting improprieties, caused operating loss to be understated by as much as 15% and net loss attributable to stockholders to be understated as much as 26%.  Additionally, the cash flow used by the Company's operations was misstated by -27.21% and -13.60% in 1Q13 and 1Q14, respectively.

170.    In addition, ARCP has admitted that its previously issued non-GAAP FFO and AFFO financial measures for each of the above periods, as well as for the fiscal year ended December 31, 2011, were materially misstated.  The misstatements of ARCP's reported AFFO during the Class Period, resulting from its violations of GAAP and financial reporting improprieties (including its lack of adequate and effective internal financial controls), are illustrated in the following chart:

---

[19]    *See, e.g.*, ASC Topic 250, *Accounting Changes and Error Corrections*, SEC Staff Accounting Bulletin Topic 1-M, *Materiality*, and SEC Staff Accounting Bulletin Topic 1-N, *Considering the Effects of Prior Year Misstatements when Quantifying Misstatements in Current Year Financial Statements*.

- 60 -

| American Realty Capital Properties, Inc. Fiscal Year AFFO Misstatement[20] | | | | | |
|---|---|---|---|---|---|
| | FYE 12/31/11 | FYE 12/31/12 | FYE 12/31/13 | FQE 3/31/14 | FQE 6/30/14 |
| AFFO Per Share – Reported | $.60 | $.47 | $1.07 | $.26 | $.24 |
| AFFO Per Share – Restated | $.56 | $.46 | $.87 | $.19 | $.21 |
| % Overstated | 7.1% | 2.2% | 23.0% | 36.8% | 14.3% |

171.    These misstatements of the Company's income-related and operating cash flow-related GAAP financial measures, as well as its AFFO, are both quantitatively and qualitatively material, thereby causing the Company's reported operating performance during the Class Period to be materially misstated.

172.    GAAP, as articulated in the SEC's Codification of Staff Accounting Bulletins Topic 1M ("CSAB Topic 1M"), provides that materiality in the context of a financial misstatement not only includes an assessment of the magnitude of the misstatement in percentage terms, but also requires an assessment of the factual context in which the user of financial statements would view the financial misstatement (referred to in accounting and auditing literature as "quantitative" and "qualitative" factors).

173.    Thus, CSAB Topic 1M provides: "there are numerous circumstances in which misstatements below 5% could well be material.  Qualitative factors may cause misstatements of quantitatively small amounts to be material."

174.    For example, CSAB Topic 1M notes that even quantitatively small financial misstatements may be material if management has intentionally made adjustments to various financial statement items in a manner inconsistent with GAAP.  Accordingly, CSAB Topic 1M cautions that SEC registrants "*should not assume that even small intentional misstatements in*

---

[20]    Amounts include the effects of the ARCT III and ARCT IV mergers and thus differ from the amounts originally reported prior to the ARCT III Merger in February 2013 and the ARCT IV Merger in January 2014.

*financial statements*" are immaterial.  Here, ARCP has admitted that its financial misstatements during the Class Period were caused by "intentional" acts of the Company's senior management.

175.    In addition, CSAB Topic 1M provides that the "volatility of the price of a registrant's securities in response to certain types of disclosures may provide guidance as to whether investors regard quantitatively small misstatements as material."  When ARCP first disclosed its financial misstatements to the market, the price of its common stock declined more than **19%**, and its market capitalization collapsed by more than **$3 billion**, further evidencing the qualitative materiality of the misstatements.

### ARCP's Financial Misstatements
### Were the Result of Intentional Conduct

176.    The intentionality of ARCP's financial misstatements during the Class Period is not in doubt, as the Company has admitted:

- Senior management participated in the intentional, material misstatement of ARCP's operating performance measures, including the material misstatement of various GAAP income and cash flow-related measures;

- At least five of its senior executives – Block, McAlister, Schorsch, Kay, Beeson – including those directly responsible for its accounting, were all fired or "stepped down" within weeks of the revelation of the accounting fraud at ARCP:

  > On October 29, 2014, ARCP announced it had "replaced" Block (Executive Vice President, CFO, Treasurer and Secretary) and McAlister (Senior Vice President and CAO).

  > On December 12, 2014, Schorsch "resigned" as Executive Chairman and a director of ARCP.

  > On December 15, 2014, Kay "resigned" as CEO and a director of the Company and Beeson "resigned" as President and COO of the Company.

- ARCP's Audit Committee hired legal and accounting advisors to assist it with an "investigation" into the concerns about the Company's financial reporting and internal controls;

- The Commonwealth of Massachusetts (the "COM"), SEC and Department of Justice ("DOJ") are conducting on-going investigations into matters associated with the Company's false financial reporting;

- ARCP's previously issued financial measures were materially misstated due to no less than seventy GAAP violations and financial reporting improprieties; and

- ARCP's disclosure controls and internal controls over its financial reporting were riddled with material weaknesses that contributed to the material misstatement of the Company's financial statements and AFFO.

177.    Indeed, the duration and magnitude of ARCP's financial misstatements, the Audit Committee's retention of legal and accounting advisors to assist it with its ongoing investigation, the ongoing investigations launched by the COM, SEC and DOJ, the Company's wholesale management "replacements" and "resignations," and the numerous and "intentional" accounting improprieties and its disclosure control and internal control deficiencies evidence fraudulent financial reporting, rather than mere innocent recordkeeping "errors."

178.    In addition, as detailed in ¶¶346-352, in her defamation lawsuit, McAlister has alleged that in February 2014, she informed Schorsch, Kay and Block about the financial improprieties now admitted by defendants.  Nonetheless, ARCP continued to engage in the fraudulent financial reporting alleged herein at the "specific direction of defendants Schorsch and Kay."

179.    Moreover, the bad faith of ARCP and the ARCP Management Defendants is consistent with the following:

- agreements entered into between ARCP and ARCP Management Defendants, including Schorsch and Block, that entitled them to receive equity awards that were at least $100 million more lucrative to them than the amount the Compensation Committee had previously authorized;

- The failure to maintain appropriate controls to assess, authorize and monitor related-party transactions or validate the appropriateness of related-party transactions;

- 63 -

- repeated payments to affiliates of defendants for certain FF&E "assets" totaling approximately $8 million, where there was "no evidence of receipt" of any such property;

- the absence of appropriate controls to ensure that ARCP's SEC filings were reviewed on a timely basis by senior management, or that significant changes to amounts or other disclosures contained in a document that had previously been reviewed and approved by the Audit Committee were brought to the attention of the Audit Committee or its Chair for review and approval before the document was filed with the SEC; and

- the failure to maintain effective controls or develop standardized policies and procedures for "critical" accounting estimates and non-routine transactions.

### ARCP's Contravention of GAAP Violated SEC Regulations

180. By failing to file financial statements with the SEC that complied with GAAP as discussed herein, ARCP disseminated financial statements that were presumptively misleading and inaccurate according to SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)).  In addition, ARCP, ARC Properties, the ARCP Management Defendants, and the ARCP Director Defendants violated the dictates of §13 of the Exchange Act, which provides:

Every issuer which has a class of securities registered pursuant to section 12 of this title and every issuer which is required to file reports pursuant to section 15(d) of this title shall –

A.      make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

B.      devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that –

        i.      transactions are executed in accordance with management's general or specific authorization;

        ii.      transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets;

        iii.      access to assets is permitted only in accordance with management's general or specific authorization; and

- 64 -

iv.    the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

181.    In addition, the Company's Form 10-Ks and 10-Qs filed with the SEC during the Class Period were also materially false and misleading in that they failed to disclose known trends, demands, commitments, events, and uncertainties that were reasonably likely to have a material adverse effect on the Company's liquidity, net sales, revenues and income from continuing operations, as required by Item 303 of Regulation S-K.

### ARCP's Material Weaknesses in Internal Controls

182.    Section 13(b)(2) of the Exchange Act states, in pertinent part, that every reporting company must: "(a) make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and (b) devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that . . . transactions are recorded as necessary . . . to permit [the] preparation of financial statements in conformity with [GAAP]."  These provisions require an issuer to employ and supervise reliable personnel, to maintain reasonable assurances that transactions are executed as authorized, to properly record transactions on an issuer's books and, at reasonable intervals, to compare accounting records with physical assets.  *SEC v. World-Wide Coin Investments, Ltd.*, 567 F. Supp. 724, 746, 750 (N.D. Ga. 1983).

183.    Internal control is a process designed by, or under the supervision of, the CEO and CFO and carried out by a company's board of directors, management and other personnel, to provide reasonable assurance that, among other things, the financial statements are reliable and accurate and that a company complies with applicable laws and regulations.

- 65 -

184.     As acknowledged in the Company's SEC filings, management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in §§13a-15(f) and 15d-15(f) under the Exchange Act.

185.     Under §302 of the SOX, Schorsch and Block were required to certify that: they are responsible for establishing, maintaining and regularly evaluating the effectiveness of the issuer's internal controls; they have made certain disclosures to the issuer's auditors and the audit committee of the board of directors about the issuer's internal controls; and they have included information in the issuer's quarterly and annual reports about their evaluation.

186.     Under §906 of the SOX, Schorsch and Block were required to certify each periodic report containing financial statements filed by an issuer with the SEC pursuant to §§13(a) or 15(d) of the Exchange Act, 15 U.S.C. §78m(a) or §78o(d), and that information contained in the periodic report fairly presents, in all material respects, the financial condition and results of operations of the issuer.

187.     Under Item 308, *Internal Control Over Financial Reporting*, of Regulation S-K, management is required to provide a report of the registrant's internal control over financial reporting (as defined in Rule 13a-15(f) or Rule 15d-15(f) under the Exchange Act) that contains: (a) a statement of management's responsibility for establishing and maintaining adequate internal control over financial reporting for the registrant; (b) a statement identifying the framework used by management to evaluate the effectiveness of the registrant's internal control over financial reporting as required by paragraph (c) of §13a-15 or §15d-15 under the Exchange Act; (c) management's assessment of the effectiveness of the registrant's internal control over financial reporting as of the end of the registrant's most recent fiscal year, including a statement as to whether or not internal control over financial reporting is effective – this discussion must include disclosure of any material

- 66 -

weakness in the registrant's internal control over financial reporting identified by management, and management is not permitted to conclude that the registrant's internal control over financial reporting is effective if there are one or more material weaknesses in the registrant's internal control over financial reporting; and (d) a statement that the registered public accounting firm that audited the financial statements included in the annual report containing the disclosure required by this Item has issued an attestation report on management's assessment of the registrant's internal control over financial reporting.

188.    ARCP has admitted that its internal controls over finance reporting were plagued with material weaknesses.  A material weakness is a "deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis," as defined by Public Company Accounting Oversight Board ("PCAOB") Auditing Standard ("AS") No. 5 §A7.

189.    Among the key controls ARCP has admitted were improperly designed or implemented are controls (i) to ensure that the information contained in the Company's periodic reports and other SEC filings correctly reflected the information contained in the Company's accounting records and other supporting information and that AFFO per share was correctly calculated; (ii) to ensure that its SEC filings were reviewed on a timely basis by senior management or that significant changes to amounts or other disclosures contained in a document that had previously been reviewed and approved by the Audit Committee were brought to the attention of the Audit Committee or its Chair for review and approval before the documents were filed with the SEC; and (iii) over the formulation of AFFO per share guidance or the periodic re-assessment of the Company's ability to meet its guidance.

190.     ARCP has further admitted that there were material weaknesses in its internal control over financial reporting relating to (i) related-party transactions and conflicts of interest; (ii) grants of equity-based compensation; (iii) business process-level control activities and financial reporting controls; (iv) critical accounting estimates and non-routine transactions; (v) cash reconciliations and monitoring; (vi) information technology controls; and (vii) the control environment.

191.     With regard to the related-party transactions and conflicts of interest, ARCP did not maintain appropriate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates.  Without the appropriate controls, ARCP made certain payments to the ARC Advisors, and its affiliates that were not sufficiently documented or that otherwise warrant scrutiny.

192.     With regard to the failure to maintain appropriate controls over various grants of equity-based compensation, in 4Q13, the Company entered into employment agreements with Schorsch and Block and also approved the OPP pursuant to which awards were made to them on January 8, 2014.  Without the appropriate controls, these documents contained terms that were inconsistent with the terms authorized by the Compensation Committee.  Additionally, the Company did not obtain copies of or administer the equity awards made by means of block grants allocated by ARC Advisors and its affiliates, nor did ARCP review the awards for consistency with the Compensation Committee's authorization.

193.     Further, the material weakness resulting from business process-level control activities and financial reporting controls affected the accounting close process and critical accounting estimates and non-routine transactions.  ARCP did not have consistent policies and procedures relating to purchase accounting, accounting for gain or loss on disposition and testing for impairment.  In addition, senior management did not establish clear reporting lines and job

responsibilities or promote accountability over business process control activities.  The Company did not maintain effective controls or develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis.

194.     ARCP violated §13(b)(2)(A) of the Exchange Act by failing to maintain accurate records concerning its expenses and net income.  Moreover, ARCP's inaccurate and false records were not an isolated or unique instance because they were improperly maintained for multiple years and reporting periods, basically since the Company's inception.

195.     In addition, ARCP violated §13(b)(2)(B) of the Exchange Act by failing to implement procedures reasonably designed to prevent accounting irregularities.  For example, ARCP failed to ensure that controls were in place to develop necessary accounting policies and procedures, to properly monitor related-party transactions, to review equity awards for compliance with authorized terms, and to review and approve critical and significant estimates.  It failed to ensure that transactions were reported in accordance with its own policies and with GAAP.

196.     Schorsch and Block provided the required SOX certifications described in ¶¶164-165, as well as the report of their "assessment" of the effectiveness of the Company's internal controls during each quarter of the Class Period.

## DEFENDANTS' DISSEMINATION OF FALSE AND MISLEADING STATEMENTS IN FURTHERANCE OF THEIR WRONGFUL COURSE OF CONDUCT

### ARCP Initial Public Offering

197.     The Class Period begins on September 7, 2011 with the closing of ARCP's IPO of its common stock through a registration statement and prospectus ("IPO Registration Statement"), selling 5.58 million shares of common stock at $12.50 per share for proceeds of $69,750,000.  The IPO Registration Statement noted that FFO, was "a useful indicator of the performance of a REIT"

- 69 -

and "that the use of FFO, together with the required GAAP presentations, provide a more complete understanding of our performance relative to our peers and more informed and appropriate bases on which to make decisions involving operating, financing and investing activities."

198.    The IPO Registration Statement also stated that ARCP had prepared its financial statements "in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period."

199.    On November 2, 2011, ARCP closed an offering of 1.5 million newly issued shares of ARCP common stock at $10.50 per share.

**Third Quarter 2011 Financial Results**

200.    On November 14, 2011, ARCP issued a release announcing its financial results for the third quarter, ended September 30, 2011 ("3Q11").  The Company reported 3Q11 AFFO of $287,000, or $0.17 per share, and a net loss of ($634,000) or ($0.42) per share.

201.    On November 14, 2011, ARCP also filed with the SEC its Form 10-Q for the period ended September 30, 2011 (the "3Q11 Form 10-Q").  The 3Q11 Form 10-Q was signed by Schorsch and Block and reiterated ARCP's previously reported financial results.  It also represented that these financial results were accurate and presented in accordance with GAAP.  In addition, the 3Q11 Form 10-Q (and each of ARCP's quarterly and annual reports filed with the SEC described herein) contained certifications signed by Schorsch and Block pursuant to §302 of the SOX, which certified:

- "This report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

- 70 -

- "Based on [their] knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

- With respect to ARCP's internal controls, that they personally: (i) were responsible for establishing and maintaining disclosure controls and procedures; (ii) designed or caused ARCP's controls or procedures to be designed to ensure that material information relating to ARCP and its consolidated subsidiaries was made known to them by others within those entities; (iii) designed or caused ARCP's controls over financial reporting to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP; and (iv) evaluated the effectiveness of the ARCP's disclosure controls and procedures and presented in ARCP's quarterly and annual filings their conclusions about the effectiveness of the disclosure controls and procedures.

**Fourth Quarter 2011 Financial Results**

202.    On March 19, 2012, ARCP issued a release announcing its financial results for the fourth quarter, ended December 31, 2011 ("4Q11"). The Company reported AFFO of $1,491,000, or $0.23 per share, and a net loss of ($1,117,000), or ($0.17) per share. The release also noted that ARCP's "2012 AFFO should range from $0.94 to $0.96 per share."

203.    That same day, ARCP filed with the SEC its Form 10-K for the fiscal year ended December 31, 2011 (the "2011 Form 10-K"). The 2011 Form 10-K was signed by Schorsch, Block, Weil, Rendell and Gong, and reiterated ARCP's previously reported financial results. It also represented that these financial results were accurate and presented in accordance with GAAP. The 2011 Form 10-K further stated that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed therein. The Form 10-K included certifications by Schorsch and Block pursuant to SOX, which were identical in all material respects to the certifications quoted in ¶¶164-165.

204.    The statements made above in ¶¶197-203 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that as to ¶¶200-203, reported 3Q11 and 4Q11 AFFO of $287,000 and $1.49 million, respectively, were false and the product of fraudulent accounting manipulations, including changes made to accounting entries without evidentiary support;

(b)    that as to ¶¶200-203, the financial statements and/or AFFO calculations in ARCP's 3Q11 Form 10-Q and 2011 Form 10-K were false and misleading, as detailed in ¶¶114-181, *infra*;

(c)    that ARCP lacked the internal controls necessary to ensure that: (i) ARCP's SEC filings were timely reviewed for accuracy, (ii) the estimates used to formulate ARCP's AFFO were reasonable and appropriately calculated; (iii) ARCP's reported AFFO was accurate; (iv) ARCP's formulation of AFFO guidance was reasonable; and (v) ARCP could assess, authorize and monitor related-party transactions involving millions of dollars in payments to ARCP's external manager, ARC Advisors, and its affiliates, which entities were owned and controlled by ARCP senior insiders, including Schorsch;

(d)    that Schorsch and Block were aware from their review and evaluation of the effectiveness of the Company's internal controls and financial reporting processes that the Company lacked reliable internal controls over financial reporting;

(e)    that as a result of (a)-(d), above ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements were accurate and free from material misstatements; and

(f)     that as to ¶¶200-203, as a result of (a)-(e), above, ARCP, Schorsch and Block had no reasonable basis to believe, and did not in fact believe, their March 19, 2012 AFFO guidance of $0.94 - $0.96 per share.

### First Quarter 2012 Financial Results

205.    On May 8, 2012, ARCP issued a release announcing its financial results for the first quarter, ended March 31, 2012 ("1Q12").  ARCP reported a 1Q12 AFFO of $1,583,000, or $0.22 per share, and a net loss of ($630,000), or ($0.09) per share.  Schorsch was quoted in the release, stating:

> We continue to execute on our strategy of assembling a well-diversified portfolio of investment properties containing vintage net leases at attractive prices. . . .  We are focused on increasing core earnings within our expanding portfolio. . . .  We believe the corresponding results to ARCP's earnings are accretive to our existing common stockholders.

206.    The release also announced that ARCP was increasing its 2012 estimated AFFO, stating that in "March 2012, the Company estimated that 2012 AFFO should range from $0.94 to $0.96 per share . . . .  [T]he Company is revising its 2012 estimated AFFO per share range to $1.04 to $1.07."

207.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 1Q12 financial results.  During the conference call, Schorsch commented that ARCP's "external management structure allows us to keep overhead low."  Additionally, in describing the revision to AFFO estimates, Schorsch stated that his upward adjustment of the Company's FY12 AFFO guidance by 11.5% was "due to the fact that the acquisitions that we have made continue to perform."

208.    On May 9, 2012, ARCP filed its Form 10-Q for the period ended March 30, 2012 with the SEC (the "1Q12 Form 10-Q").  The 1Q12 Form 10-Q was signed by Schorsch and Block and reiterated ARCP's previously reported financial results.  It also represented that the financial

- 73 -

results contained therein were accurate and presented in accordance with GAAP, that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed. The 1Q12 Form 10-Q also included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶164-165.

209.    On or about June 18, 2012, ARCP raised $30.5 million via the sale of 3.25 million newly issued shares of ARCP common stock at $10 per share (the "June 2012 Equity Offering"), pursuant to a false registration statement filed May 25, 2012, along with a prospectus filed June 14, 2012, which was incorporated therein (collectively, the "June 2012 Equity Offering Documents"). The June 2012 Equity Offering Documents included ARCP's 1Q12 financial results, as well as its 1Q12 AFFO.

210.    The statements detailed above in ¶¶205-209 were each false and misleading when made in that each omitted and/or misrepresented material facts. The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

        (a)      that ARCP's 1Q12 financial statements, including its reported net loss of ($630,000) and AFFO of $1,583,000, were materially false, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP as detailed in ¶¶114-181;

        (b)      that as a result of Schorsch and Block's review and evaluation of the effectiveness of the Company's internal controls and financial reporting processes in connection with the filing of ARCP's 1Q12 Form 10-Q, they were aware that ARCP lacked reliable internal financial controls, including procedures and controls necessary to allow the Company to: (i) calculate basic performance information, such as the calculation of AFFO – the most fundamental

metric to a REIT investor; (ii) accurately calculate AFFO, formulate AFFO guidance or periodically reassess ARCP's ability to meet its AFFO guidance; (iii) ensure that material changes made by management to ARCP's SEC filings and public statements were approved by the Audit Committee before dissemination; (iv) calculate and track multimillion dollar grants of equity-based compensation; and (v) undertake basic reconciliation and monitoring functions necessary to enable ARCP to timely record and reconcile cash payments received by ARCP;

(c)     that ARCP lacked the controls necessary to assess, authorize or monitor million of dollars of related-party transactions that were being overseen by Block and Schorsch during 1Q12, as described in ¶¶182-196, between ARC Advisors and its affiliates, each of which was owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil;

(d)     that ARCP's acquisition program was not accretive to AFFO if honestly accounted for but rather was predicated on the use of ARCP securities that were artificially inflated as a result of defendants' misrepresentations concerning ARCP's 2012 and 2013 AFFO prospects, and designed to generate hundreds of millions annually in related-party transactional fees and compensation payments for ARCP executives and other parties affiliated with Schorsch-controlled companies, as detailed in ¶¶93-110; and

(e)     that as a result of (a)-(c) above, ARCP and Schorsch had no reasonable basis to believe, and in fact did not believe, that ARCP's 2012 AFFO guidance of $0.94 - $0.96, let alone their increased 2012 AFFO guidance of $1.04-$1.07 per share, was achievable.

**Second Quarter 2012 Financial Results**

211.    On July 31, 2012, ARCP issued a release announcing its financial results for the second quarter, ended June 30, 2012 ("2Q12"), including a net loss of ($2.04 million), or ($0.28) per

- 75 -

share, and AFFO of $1.9 million, or $0.25 per share.  Emphasizing that "our core earnings have

increased significantly," Schorsch commented on the Company's financial results, stating:

> that "[s]ince our initial public offering, we have continually and consistently
> demonstrated our ability to grow earnings through accretive acquisitions . . . the
> proceeds from two recently completed follow-on offerings of common stock, the
> issuance of convertible preferred stock and operating partnership units, and prudent
> use of our cost effective credit facility.
>
> We are especially pleased to be able to raise our earnings guidance for calendar
> year 2012 by 8.5%, clarifying fiscal year 2012 guidance for AFFO of $1.13 to
> $1.16 per share, or $0.09 per share based on the mid-points of the respective
> ranges.  Furthermore, we are initiating preliminary guidance for 2013, at AFFO
> levels of $1.25 to $1.28 per share . . . thereby targeting AFFO growth of over 10%
> for 2013.

212.    On August 1, 2012, ARCP convened a conference call with analysts and investors to

discuss the Company's 2Q12 financial results.  During the conference call, Schorsch and Block

reiterated the increased 2012 AFFO guidance change outlined in the July 31, 2012 release, as well as

the 2013 AFFO guidance described in the release.  Commenting on the Company's growth,

Schorsch stated, "[s]ince our IPO we have consistently demonstrated our ability to grow our earnings

through accretive acquisitions," and noted that ARCP was "targeting AFFO growth of an additional

10% for 2013 on top of the 8 1/2% for 2012."

213.    Also on August 1, 2012, ARCP filed its Form 10-Q for the period ended June 30,

2012 with the SEC (the "2Q12 Form 10-Q"), which was signed by Schorsch and Block.  The 2Q12

Form 10-Q reiterated ARCP's previously reported financial results and represented that those

financial results were accurate and presented in accordance with GAAP.  It also represented that the

Company's internal controls were effective and that any material changes to the Company's internal

controls over financial reporting were disclosed therein.  The 2Q12 Form 10-Q also included

Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the

certification quoted in ¶¶164-165.

214.    The statements referenced above in ¶¶211-213, were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's 1Q12 and 2Q12 financial statements, including its 1Q12 AFFO and 2Q12 AFFO of $1.583 million and $1.9 million, respectively, were false, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-181;

(b)    that the Company lacked internal financial controls sufficient to enable ARCP to: (i) accurately calculate AFFO or future estimates thereof; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as detailed in ¶¶182-196;

(c)    that the only way ARCP could post in FY12 AFFO growth of 8.5% or 2013 AFFO growth of 10% was by making additional acquisitions using ARCP securities that were inflated as a result of the misconduct described herein;

(d)    that ARCP had not consistently grown its earnings nor had ARCP's "core earnings" increased significantly, as the earnings and AFFO reported by ARCP for the last half of 2011 and the first half of 2012 were the product of accounting manipulations overseen by ARCP's two senior insiders – Block and Schorsch, as detailed in ¶114-181;

(e)    that as a result of (a)-(d), above, ARCP, Schorsch and Block had no reasonable basis to believe, nor did in fact believe, that ARCP could post legitimate AFFO growth of an additional 8.5% for FY12, let alone an additional 10% growth in FY13, absent the accounting manipulations detailed in ¶¶114-196; and

- 77 -

(f)     that as a result of (a)-(e), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, ARCP's 2012 and 2013 AFFO guidance of $0.94-$0.96 per share and $1.25 to $1.28 per share, respectively.

215.    On August 1, 2012, ARCP filed a Form S-3 (the "2012 Shelf Registration Statement") with the SEC, which was automatically updated to incorporate by reference each of ARCP's subsequently filed Forms 10-K and 10-Q, as well as the Company's offering materials identified herein.  The 2012 Shelf Registration Statement was signed by Schorsch, Weil, Block, Gong and Rendell.

### Third Quarter 2012 Financial Results

216.    On October 29, 2012, ARCP issued a release announcing its financial results for the third quarter, ended September 30, 2012 ("3Q12").  The Company reported 3Q12 AFFO of $3.1 million, or $0.28 per share, and a net loss of ($804,000), or ($0.09) per share.  Commenting on ARCP's "core earnings," Block remarked:

> *During the quarter ended September 30, 2012, the Company generated AFFO of $3.1 million, or $0.28 per share computed using basic weighted average shares outstanding.  This represents a 15.0% increase in AFFO per share compared to the second quarter ended June 30, 2012*.  Further, our recently announced 'at the market' or ATM program will provide equity capital allowing us to purchase properties accretive to our dividend, fueling our growth strategy.

217.    Also on October 29, 2012, ARCP filed its Form 10-Q for the period ended September 30, 2012 with the SEC (the "3Q12 Form 10-Q"), which was signed by Schorsch and Block, and reiterated ARCP's previously reported financial results, represented that those financial results were accurate and presented in accordance with U.S. GAAP, represented that the Company's internal controls were effective, represented that any material changes to the Company's internal controls over financial reporting were disclosed, and included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶164-165.

- 78 -

218.    On October 30, 2012, ARCP held a conference call with analysts and investors to discuss the Company's 3Q12 financial results.  During the conference call, Block reiterated the 3Q12 AFFO results disclosed in the October 29, 2012 release, while Schorsch commented that the 3Q12 results demonstrated that their strategy permitted them to "grow three quarters in a row substantially our AFFO, which we believe is our primary measure."

219.    The statements referenced above in ¶¶216-218, were each false and misleading when made in that each omitted and/or they misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's reported 2Q12 AFFO of $1.9 million, as well as the Company's 3Q12 financial results, including its net loss of ($804,000) and AFFO of $3.1 million, were false as detailed in ¶214 above;

(b)    that ARCP had not grown its AFFO "substantially" for three sequential quarters, nor had ARCP generated 3Q12 AFFO growth per share of 15%, but rather ARCP had been able to report purportedly strong and consistent AFFO growth only by falsifying its reported financial performance, as detailed in ¶¶114-196;

(c)    that ARCP's 3Q12 financial statements, including its 3Q12 AFFO, were false and did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-196;

(d)    that ARCP's acquisition program was not designed to bolster ARCP's "core earnings," but rather was designed to generate hundreds of millions in related-party transactional fees and compensation payments for ARCP executives and other parties affiliated with Schorsch-controlled companies, as detailed in ¶¶93-110;

(e)      that the Company lacked reliable internal financial controls sufficient to enable ARCP to: (i) accurately calculate its AFFO, as well as future estimates thereof, and the periodic reassessment of ARCP's ability to meet existing AFFO guidance; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko Weil – without proper documentation, as described in ¶¶182-196;

(f)      that Schorsch's and Block's review and evaluation of the effectiveness of the Company's internal controls and financial reporting processes had confirmed that the Company lacked reliable internal financial controls; and

(g)      that as a result of (a)-(f), above, ARCP, Schorsch and Block had no reasonable basis to believe, and did not in fact believe, their 2012 AFFO guidance of $0.94 - $0.96.

**ARCT III Merger**

220.      On December 17, 2012, ARCP issued a release announcing that it had entered into an agreement to acquire the outstanding shares of ARCT III in a transaction valued at approximately $3 billion, and that the transaction was expected to close during 2Q13.   Block commented on the proposed merger, stating in pertinent part: "***We are guiding to AFFO per share in 2013 of $0.93, and $1.08 in 2014, which translates to 16% growth in earnings, about 4 times our peer group. Assuming ARCP trades at a 15 times multiple, the implied share price is close to $14 for 2013***."

221.      On January 22, 2013, the ARCP Board and ARCT III caused a Registration Statement to be filed with the SEC on Form S-4, and disseminated a Joint Proxy Statement/Prospectus (collectively, the "ARCT III Registration Statement/Proxy") to shareholders. A copy of the merger agreement for the transaction was attached as Annex A to the ARCT III Registration Statement/Proxy and was incorporated by reference therein.  The ARCT III Registration

- 80 -

Statement/Proxy was prepared, reviewed and/or signed by ARCP, Schorsch, Weil, Michelson and Block.

222.    The ARCT III Registration Statement/Proxy represented that the ARCT III board had unanimously determined that the merger was "advisable, fair to, and in the best interests of ARCT III and its stockholders." Likewise, the ARCP Board unanimously recommended that the transaction be approved.

223.    The ARCT III Registration Statement/Proxy incorporated by reference ARCP's 2011 Form 10-K, 1Q12 Form 10-Q, 2Q12 Form 10-Q and 3Q12 Form 10-Q, each of which was signed by Schorsch and Block, containing ARCP's financial results for the respective quarter, and assured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

224.    Section 5.7(c) of the ARCT III Merger Agreement represented that:

> (a)    ARCP and its subsidiaries "maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP.";

> (b)    the members of the audit committee of ARCP's Board of Directors had been informed of "all significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting that are reasonably likely to adversely affect [ARCP's] ability to record, process, summarize and report financial data."

225.    Section 5.7(c) of the ARCT III Merger Agreement further represented that:

> [ARCP] ha[d] established and maintains disclosure controls and procedures (as such term is defined in Rule 13a-15 promulgated under the Exchange Act) designed to ensure that material information relating to [ARCP] required to be included in reports filed under the Exchange Act, including its consolidated subsidiaries, is made known to [ARCP's] principal executive officer and its principal financial officer by others

- 81 -

within those entities, particularly during the periods in which the periodic reports required under the Exchange Act are being prepared, and, to the knowledge of [ARCP], such disclosure controls and procedures are effective in timely alerting [ARCP's] principal executive officer and its principal financial officer to material information required to be included in [ARCP's] periodic reports required under the Exchange Act.

226.    Section 5.7(a) of the ARCT III Merger Agreement also contained a representation by ARCP that its filings with the SEC "complied in all material respects with the requirements of the Securities Act or the Exchange Act, as the case may be, and the applicable rules and regulations of the SEC thereunder," and did not contain "any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements made therein, in the light of the circumstances under which they were made, not misleading."

227.    Section 5.8(a) of the ARCT III Merger Agreement further represented that:

None of the information supplied or to be supplied in writing by or on behalf of [ARCP] for inclusion or incorporation by reference in (i) the Form S-4 [Registration Statement] will, at the time such document is filed with the SEC, at any time such document is amended or supplemented or at the time such document is declared effective by the SEC, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein not misleading, or (ii) the Joint Proxy Statement will, at the date it is first mailed to the stockholders of [ARCT III and ARCP], at the time of the [ARCT III] Stockholder Meeting and the [ARCP] Stockholder Meeting, at the time the Form S-4 is declared effective by the SEC or at the Effective Time, contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances in which they were made, not misleading.

228.    Section 6.2(c)(xv) of the ARCT III Merger Agreement also contained a representation by ARCP that it would "maintain all financial books and records in all material respects in accordance with GAAP."

229.    The ARCT III Registration Statement/Proxy was materially false and misleading in that it omitted and/or misrepresented material facts, including:

(a)     that ARCP lacked internal financial controls sufficient to enable it to: (i) accurately calculate AFFO and future estimates thereof, and periodically reassess ARCP's ability to meet existing AFFO guidance; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as described in ¶¶182-196;

(b)     that ARCP's FY11, 1Q12, 2Q12 and 3Q12 reported financial results, including AFFO, were false and could not be relied upon, as they were the product of improper accounting and inadequate internal controls, as detailed in ¶¶114-118, 120-175, 180-181, and have been restated;

(c)     that the ARCT III merger was a vehicle for generating more than $100 million in fees to be paid to Schorsch-related entities;

(d)     that ARCP executives failed to disclose significant deficiencies and material weaknesses that then existed and were likely to adversely affect ARCP's ability to accurately report financial data, including that ARCP did not maintain disclosure controls and procedures necessary to timely alert its principal executive officer and principal financial officer to material information required to be included in the Company's periodic reports;

(e)     that ARCP's SEC filings did not comply with the requirements of the Federal securities laws that its financial statements include all adjustments necessary for a fair presentation of the Company's financial information;

(f)     that the evaluation of the effectiveness of ARCP's disclosure controls and procedures, which Block and Schorsch supervised and participated in, in connection with the preparation and dissemination of the Company's interim 2012 financial statements, confirmed that

- 83 -

the Company's disclosure controls and procedures were neither adequate nor reliable, as detailed in ¶¶182-196; and

(g)       that as a result of (a)-(f), above, defendants named herein had no reasonable basis to believe, and did not in fact believe, that the ARCT III Merger was "fair to," nor in the best interests of shareholders.

(h)       As a result of (a)-(f) above, ARCP and Block had no reasonable basis to believe, and did not in fact believe, their 2013 and 2014 AFFO projections of $0.93 and $1.08, respectively, which translated to an AFFO growth rate equal to four tiems ARCP's peer group.

**January 2013 Equity Offering**

230.     On or about January 29, 2013, ARCP completed the offering of over 2 million newly issued shares of ARCP common stock at $13.47 per share for proceeds of approximately $26.5 million (the "January 2013 Equity Offering").  The January 2013 Equity Offering was conducted pursuant to the 2012 Shelf Registration Statement and Prospectus Supplements dated January 22, January 24 and January 25, 2013 (collectively, the "January 2013 Equity Offering Materials").  The January 2013 Equity Offering Materials specifically incorporated by reference ARCP's 2011 Form 10-K, 1Q12, 2Q12 and 3Q12 Form 10-Qs.

231.     On February 28, 2013, ARCP issued a release announcing the closing of the ARCT III Merger and stating that it was "reaffirming previously issued preliminary pro forma 2013 and 2014 AFFO guidance post-merger.  ARCP's AFFO is expected to range between $0.91 and $0.95 per share (fully diluted) in 2013.  ARCP's AFFO is expected to range between $1.06 and $1.10 per share (fully diluted) in 2014."

- 84 -

**Fourth Quarter 2012 Financial Results**

232.    On February 28, 2013, ARCP issued a release announcing its financial results for the fourth quarter of 2012 ("4Q12") and FY12, including 4Q12 AFFO of $3.4 million, or $0.28 per share, and FY12 AFFO of $10.5 million, or $1.08 per share, a net loss of ($7.3 million), or ($0.84) per share.  Schorsch extolled the success and growth the Company reported during FY12, stating that:

> "Our first full calendar year of operations has seen us exceed our financial projections across the board . . ." and that the ARCT III merger "will result in geometric growth to our property portfolio that provides our shareholders with durable dividend income augmented by extraordinary earnings growth potential."

233.    The Company also reaffirmed its FY13 AFFO guidance of $0.91 - $0.95 per share and fiscal year 2014 ("FY14"), $1.06 - $1.10 per share.  Block commented on ARCP's financial results, stating in pertinent part:

> "*At $1.15 per share (basic), based on adjusted funds from operations, we're pleased to report that our 2012 earnings are at the high-end of our guidance published in July 2012*," noted Brian S. Block, executive vice president and chief financial officer.  "Moreover, *the Company is positioned for dynamic growth in the future.  In fact, our earnings guidance for 2014 suggests a growth rate of 16% from 2013, an extraordinary trajectory for a net lease company*.  The Company's enterprise value is over $3 billion in an industry where size matters."

234.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 4Q12 and FY12 financial results.  During the conference call, Block discussed ARCP's 4Q12 and FY12 AFFO, and reiterated the 2013 and 2014 AFFO guidance, emphasizing that the Company expected to see a "*16% AFFO growth year over year*."

235.    That same day, ARCP filed its Form 10-K for the period ended December 31, 2012 with the SEC (the "2012 Form 10-K").  The 2012 Form 10-K was prepared, reviewed and/or signed by Schorsch, Block, Weil and Michelson.  The 2012 Form 10-K reiterated ARCP's previously reported financial results and stated that the financial results were accurate and presented in

- 85 -

accordance with GAAP. The 2012 Form 10-K also represented that the Company's internal controls were effective, and that any material changes to the Company's internal controls over financial reporting were disclosed. The 2012 Form 10-K included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶164-165.

236. The statements referenced above in ¶¶220-228, 230-235 were each false and misleading when made in that each omitted and/or misrepresented material facts. The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP's 4Q12 and FY12 financial statements were false, did not accurately portray the Company's financial performance during those periods and were not prepared in accordance with GAAP, as detailed in ¶¶114-181;

(b)     that ARCP had not exceeded its FY12 financial projections and was not positioned for extraordinary growth, as its reported FY12 financial performance and AFFO were the product of financial engineering, as detailed in ¶¶141-196;

(c)     that the Company lacked reliable internal financial controls sufficient to enable ARCP to: (i) accurately calculate AFFO and future estimates thereof, or periodically reassess ARCP's ability to meet existing AFFO guidance; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as detailed in ¶¶182-196;

(d)     that Schorsch's and Block's review of the Company's internal controls and financial reporting processes in connection with the filing of the 2012 Form 10-K confirmed that the Company lacked reliable internal financial controls;

(e)     that the ARCT III Merger was a vehicle for generating more than $115 million in fees to be paid to Schorsch-related entities;

(f)     that ARCP was not "positioned for dynamic growth" or on "an extraordinary trajectory," as its reported 4Q12 and FY12 AFFO was the product of falsified financial statements, as detailed in ¶¶114-196;

(g)     that in issuing guidance of 16% AFFO growth for 2014, Block and Schorsch assumed their ability to continue to (i) manipulate ARCP's financial statements by misclassifying ordinary general and administrative expenses as extraordinary merger and other non-routine transaction-related expenses; and (ii) conceal the ongoing transfer of assets to ARC Advisors and other entities affiliated with Schorsch and Block under the guise of acquisition related costs;

(h)     that the ARCT III Merger did not provide ARCP with "extraordinary earnings growth potential" but rather was designed to generate hundreds of millions in related-party transactional fees and compensation payments to ARCP executives and other parties affiliated with Schorsch-controlled companies, as detailed in ¶¶93-110, including the payment of more than $100 million in fees and expenses relating specifically to the ARCT III Merger;

(i)     that as a result of (a)-(h), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, ARCP's financial statements did not contain material misstatements; and

(j)     that as a result of (a)-(h), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, their 2013 and 2014 AFFO guidance of $0.91-$0.95 per share and $1.06-$1.10 per share, respectively, was achievable.

237.    On March 14, 2013, ARCP filed a Form S-3ASR (the "2013 Shelf Registration Statement") with the SEC. The 2013 Shelf Registration Statement incorporated by reference certain

- 87 -

documents to be filed with the SEC, including reports on Form 10-K and 10-Q.  The 2013 Shelf Registration Statement was prepared, reviewed and/or signed by Schorsch, Weil, Block, Jones, Kahane, Rendell, Michelson and Bowman.

### First Quarter 2013 Financial Results

238.   On May 6, 2013, ARCP issued a release announcing its financial results for 1Q13. The Company reported 1Q13 AFFO of $30.8 million, or $0.20 per fully diluted share, compared to AFFO of $3.4 million during the fourth quarter of 2012.  The Company further reported a net loss of ($137.9 million), or ($0.90) per share.  Schorsch commented on the Company's financial results, stating in pertinent part:

> We are very pleased with our first quarter results which are in line with our earlier 2013 earnings guidance, ***projecting earnings growth of 16%*** between 2013 and 2014, and we are ***particularly well positioned for continued earnings growth***. . . .  We intend to continue executing our highly accretive organic acquisition program on which our earnings guidance is constructed . . . .

239.   Also on May 6, 2013, ARCP filed its Form 10-Q for the period ended March 31, 2013 with the SEC (the "1Q13 Form 10-Q"), which was signed by Schorsch and Block.  The 1Q13 Form 10-Q reiterated ARCP's previously reported financial results, and represented that those financial results were accurate and presented in accordance with GAAP.  The 1Q13 Form 10-Q also represented that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed.  It also included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶164-165.

240.   On May 6, 2013, ARCP also held a conference call with analysts and investors to discuss the Company's 1Q13 financial results, during which Block noted that "for the balance of

2013, *we reaffirm our forecasted AFFO per share of between $0.91 and $0.95 per share* [and] *forecast* 2014 AFFO per share of $1.06 to $1.10."

### CapLease Merger Announcement

241.    On May 28, 2013, ARCP issued a release announcing that it had entered into an agreement to acquire all of the outstanding shares of CapLease, Inc. ("CapLease"), in a transaction valued at approximately $2.2 billion.  Discussing the proposed merger, Block reassured investors that the CapLease transaction would drive ARCP's 2014 AFFO growth, stating in pertinent part: "We have announced revised earnings guidance for 2014 of between $1.17 to $1.21 per share based on AFFO, *representing a 28% increase over previously announced 2013 guidance*."

242.    During a May 28, 2013 conference call with analysts and investors to discuss the CapLease acquisition, Schorsch and Block made additional statements about the proposed transaction and its impact on the Company, stating in pertinent part:

Defendant Schorsch:

The transaction rationale is very simple.  This accomplishes exactly what we have been talking about since our IPO in 2011.  This is accretive growth.  *The acquisition is expected to result in approximately 11% accretion to our AFFO in 2014*.

\*        \*        \*

*. . . Pro forma 2014 we expect to add $0.11 per share to our AFFO*. . . .

\*        \*        \*

Defendant Block:

The pro forma financial projections are impressive. . . . Based on our ability to modify the portfolio's capital structure as Nick mentioned earlier, *our 2014 guidance has been revised upward.  The new 2014 earnings guidance range is projected between $1.17 to $1.21 AFFO per share on a fully diluted basis.  Using the mid points of the respective ranges, this represents a 28% increase compared to our projected 2013 results*.

- 89 -

243.    The statements referenced above in ¶¶237-242, were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's reported AFFO of $0.20 per share was overstated by 100% and as such did not accurately reflect the Company's actual performance, as detailed in ¶¶114-196;

(b)    that ARCP's 1Q13 financial statements and reported AFFO were materially false and misleading, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-181;

(c)    that the Company lacked adequate internal controls, which prevented it from accurately computing its reported AFFO and net earnings/losses, including: (i) basic systems to reconcile cash accounts; and (ii) a process by which senior management approved critical accounting estimates and non-routine transactions and/or provided for audit committee review of the same;

(d)    that ARCP lacked the internal controls to assess, calculate and account for payments made to ARC Advisors (ARCP's external manager until January 8, 2014) and its affiliates and/or provide for review and approval of equity awards allocated to ARC Advisors employees responsible for ARCP's operations;

(e)    that ARCP's reported 1Q13 financial performance was not "in line" with guidance, but rather was the product of financial manipulation, as detailed in ¶¶114-181;

(f)    that as a result of (a)-(e), above, ARCP was not "well positioned" for continued earnings growth, as its reported AFFO for each and every quarter since the Company's 2011 IPO had been the product of financial manipulation; and

(g)    that as a result of (a)-(f), above, ARCP, Schorsch and Block had no reasonable basis to believe, and did not in fact believe, that ARCP would post 2013 AFFO of $0.91-$0.95 per

- 90 -

share or 2014 AFFO of $1.06-$1.10 per share, let alone meet upward "revised earnings guidance" of

between $1.17 and $1.21 per share following the $2.2 billion CapLease transaction.

**ARCT IV Merger Announcement**

244.    On July 2, 2013, ARCP issued a release announcing that it had entered into a

definitive merger agreement to acquire the outstanding shares of ARCT IV – a publicly registered,

non-traded REIT controlled by Schorsch.   In connection with the proposed merger, ARCP

"increased its 2014[] [AFFO] guidance to $1.19-$1.25 per share, equivalent to approximately 31%

growth over 2013"[]" and emphasized that "***[t]his projected AFFO growth rate leads the net lease***

***industry***."   Schorsch and Block commented on the proposed merger, stating in pertinent part:

Defendant Schorsch:

Today's announced merger solidifies our leadership position in the net lease real
estate sector.

\*         \*         \*

***With this acquisition we continue to further diversify our asset and tenant base and***
***increase our projected 2014 AFFO per share***.   This acquisition is yet another
example of executing our deliberate and focused strategy to . . . ***give us further  cost***
***of capital advantages enabling us to deliver AFFO per share earnings accretion.***
***Our sector-leading 31% 2014 over 2013 projected AFFO growth is further proof of***
***that***. . . .

\*         \*         \*

Defendant Block:

Due to the relative value of our stock offer versus cash consideration, we reasonably
expect the acquisition of ARCT IV will be completed primarily through the issuance
of ARCP common stock.  ***This will result in growth in projected 2014 AFFO per***
***share***, as well as reduced balance sheet leverage.

245.    Later that day, ARCP held a conference call with analysts and investors to discuss the

Company's planned acquisition of ARCT IV.   During the conference call, Schorsch and Block spoke

about the proposed transaction and its impact on the Company, stating in pertinent part:

- 91 -

<u>Defendant Schorsch</u>:

***We are . . . increasing our AFFO earnings guidance range for 2014 to $1.19 to $1.25 per share***.

*      *      *

I would like to take you through some of the significant benefits we believe this transaction offers our shareholders.   The transaction will provide immediate accretion to our earnings once closed.   ***Accordingly, we have revised our 2014 earnings guidance, increasing the pro forma 2014 AFFO to $1.19 to $1.25***; annualized dividend increase from $0.91 to $0.94 per share, ***while the AFFO payout ratio decreases to less than 80%***.

*      *      *

<u>Defendant Block</u>:

***. . . I wanted to focus for a moment on our future earnings outlook for ARCT, which we believe to be very exciting for us as we look at this combined transaction. . . .   AFFO per share is expected to grow significantly from 2013 to full year 2014.  For 2014, we're projecting fully diluted AFFO per share in the range of between $1.19 per share to $1.25.  This represents a growth rate of about 30% over 2013 AFFO per share.  This earnings percentage of year-over-year growth is unprecedented in the net lease sector as we continue to aggregate world-class portfolios***.

**July 2013 Investor and Analyst Day**

246.    On July 24, 2013, ARCP held an Investor and Analyst Day to discuss the Company's operations and financial results.  During a presentation, Block described the Company's increased full-year 2014 AFFO per share guidance as "very conservative."   In responding to an analyst's question on the topic, he stated in pertinent part:

What I want to walk you through right now is as it stands today, where our expectation is, what our projections are, as it related to our 2014 guidance.

*      *      *

. . . So again to recap, June 30th, ARC Trust, CapLease, well in your guidance, you said you were going to buy about another $300 million.  I wish I can say these are the exact transactions we're going to buy.  ***We actually have a more robust pipeline today that 300, maybe 400 or 500***, we will see where that works out, ***but as a placeholder again to understand how do we get to that $1.19 or $1.25 on your***

- 92 -

*earnings guidance, we're assuming post transactions, the organic transactions we do*.  The one-off two CVS', three Walgreens, four Dollar General's, one Advance Auto, *that composes the $300 million of what we define as organic growth*. . . . We have an abundance of that in our pipeline right now, very attractive credit, extremely attractive pricing with great locations. . . .

I do make one assumption here and it's a very reasonable assumption if you look at our AFFO and a multiple at 13.5 times multiple or 14 times multiple, which hopefully we all agree *is a very conservative number on future earnings growth*.

*      *      *

*Characterizing it multiple times as "very conservative" and noting that "[W]e're going to be roughly $450 million of AFFO which equates to about [$]1.19" per share and that although "we give a range $1.19 or $1.25.  What could happen there?  Well, our stock could be better*. . . ."

**July 2013 Offering**

247.    On July 23, 2013, ARCP announced a $300 million offering of 3.0% Convertible Senior Notes due August 1, 2018 (the "2018 Notes") (the "July 2013 Offering").[21]  The July 2013 Offering was underwritten by defendants JP Morgan, Citigroup, Barclays, BMO Capital, KeyBanc, JMP Securities, Ladenburg, and RCS Securities.  These defendants were "underwriters," as defined in §2(11) of the Securities Act, of the 2018 Notes.

248.    The July 2013 Offering Materials specifically incorporated by reference the 2012 Form 10-K and 1Q13 Form 10-Q.  These materials, which induced Union, NYC Funds and other members of the Class to purchase ARCP's 2018 Notes, contained untrue statements of material fact and omitted to state material facts required therein or necessary to make the statements therein not misleading, as detailed in ¶¶114-118, 120-175, 180-196.

---

[21]   The July 2013 Offering was conducted pursuant to the 2013 Shelf Registration Statement, a Pricing Term Sheet dated July 23, 2013, Free Writing Prospectuses dated July 23 and filed on July 24, 2013, and Prospectus Supplements dated July 23 and 25, 2013 (collectively, the "July 2013 Offering Materials").

**Second Quarter 2013 Financial Results**

249.    On August 6, 2013, ARCP issued a release announcing "[r]ecord" results for 2Q13. For the quarter, the Company reported AFFO of $32.8 million, or $0.19 per share, and a net loss of ($51.7 million), or ($0.32) per share.  In addition, the Company raised its previously-issued full-year 2014 AFFO per share guidance by almost 8%, from a range of $1.06 to $1.10 per share, to $1.14 to $1.18 per share.

250.    Also on August 6, 2013, ARCP filed its Form 10-Q for the period ended June 30, 2013 with the SEC (the "2Q13 Form 10-Q"), which was signed by Schorsch and Block.  The 2Q13 Form 10-Q reiterated ARCP's previously announced financial results.  It also represented that the financial results therein were accurate and presented in accordance with GAAP, that the Company's internal controls were effective and that any material changes to the Company's internal control over financial reporting were disclosed therein.  The 2Q13 Form 10-Q also included Schorsch's and Block's certifications pursuant to SOX, which were identical in all material aspects to the certification quoted in ¶¶164-165.

251.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 2Q13 financial results.  During the conference call, Schorsch and Block stated, in pertinent part:

Defendant Schorsch:

***Full quarter AFFO per share was $0.19.  More importantly, the normalized AFFO per share, which also represents the period end run-rate, was $0.23 per share which was above our previously provided 2013 AFFO guidance***.

             *       *       *

To sum up, ***we are extremely pleased with our accomplishments during this second quarter***. . . .  Our current pipeline of acquisitions and balance sheet strength suggests that ***ARCP is well-positioned for continued earnings growth***.

- 94 -

As Brian will discuss in a moment, . . . *we are updating our guidance to $1.14 to $1.18 per share on an AFFO basis*.  This change to our earnings guidance results primarily from two factors – and this is very important.  We will incur approximately $20 million in our guidance of additional debt service cost relating to terming out the fixed debt and increasing our acquisitions to $1.1 billion.

*        *        *

Defendant Block:

As Nick mentioned previously, *we have revised our 2014 AFFO guidance based on increased acquisition activity as well as a more deliberate pursuit of fixed-rate, long-term, match-funded debt*. . . .

*Our revised 2014 AFFO guidance is $1.14 to $1.18 per share*, reflecting additional interest costs related to increased duration of fixed rate borrowings to match fund assets and liabilities, . . . *and substantially higher acquisition volumes than previously projected*.  Specifically, we include about $1.4 billion of five, seven and ten year notes with a weighted average interest rate of approximately 4.1%.

252.    The statements referenced above in ¶¶244-251, were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's 2Q13 financial statements and reported AFFO were materially false and misleading, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-181;

(b)    that ARCP lacked adequate internal controls in several respects, as detailed in ¶¶182-196, including controls necessary to (i) enable ARCP to ensure that its 2Q13 SEC filings were reviewed timely; (ii) formulate AFFO guidance and/or periodically reassess ARCP's ability to meet that guidance; and (iii) assess, authorize and monitor related-party transactions that were resulting in payments to ARCP's external manager and its affiliates – all entities controlled by Schorsch – that were not sufficiently documented or otherwise warrant scrutiny;

- 95 -

(c)     that as a result of (a)-(b), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, ARCP's financial statements did not contain material misstatements;

(d)     that Block and Schorsch had no reasonable basis to believe, and did not in fact believe, that ARCP would post AFFO growth of between 28-31% in 2014, nor did they expect the CapLease or ARCT IV Mergers to be accretive absent the misclassification of expenses, including: (i) payments to ARCP insiders and their affiliates; and (ii) general and administrative expenses as "merger and non-routine transaction-related expense";

(e)     that as a result of (a)-(d), above, ARCP, Schorsch and Block had no reasonable basis to believe, and did not in fact believe, their 2013 AFFO guidance of $0.91 - $0.95 per share, and the 30+ percent increase in AFFO growth estimates for 2014 of at least $1.19 per share; and

(f)     that these defendants had no reasonable basis to expect, and did not in fact expect, ARCP to post "unprecedented" AFFO year over year growth in 2013 absent the continued manipulations of ARCP's financial and operating results.

**Cole Merger Announcement**

253.    On or about October 22, 2013, ARCP and Cole Inc. entered into an Agreement and Plan of Merger (the "Cole Merger Agreement") whereby Cole Inc. shareholders were to receive, at their election, 1.0929 shares of ARCP common stock or $13.82 in cash per Cole Inc. share, with the cash consideration limited to no more than 20% of Cole Inc.'s shares.

254.    The following day, on October 23, 2013, ARCP and Cole Inc. issued a joint release concerning the proposed $11.2 billion merger, which, if consummated, would create the country's largest net REIT.  In connection with the proposed merger, ARCP issued updated 2014 AFFO

- 96 -

guidance, of "$1.13 to $1.19 per share, an increase of approximately 25% over . . . 2013 AFFO per share guidance of $0.91 to $0.95."  Schorsch commented on the proposed Cole Merger, in pertinent part:

> . . . ARCP will become the largest net lease REIT and the new industry leader. . . .
>
> *          *          *
>
> Both companies share the same vision, namely to **drive value for stockholders by placing their interests ahead of our own**, aligning pay with performance, **and reporting fully and transparently**. . . . ARCP and Cole both have histories of driving tremendous growth.  By leveraging our successful track records, our complementary businesses and highly skilled professionals, **we are confident that we will be well-positioned to achieve continued growth**. . . . Far more can be accomplished by these two great companies working together than either one could have hoped to achieve independently.
>
> *          *          *
>
> . . . With this acquisition, we continue to further diversify our asset and tenant base **while driving projected 2014 AFFO per share growth**.  This acquisition represents the continuation of our deliberate and focused growth strategy . . . **enabling us to deliver AFFO per share earnings accretion through further cost of capital advantages.  In addition, the merger with Cole furnishes the size and scale to allow us to continue to reduce our operating costs as a percentage of assets and potentially improve our AFFO multiple**.

255.    Later that day, ARCP held a conference call with analysts and investors.  During the conference call, Schorsch and Cole Inc. CEO Nemer extolled the benefits of the proposed merger with Cole Inc., that the Cole Merger was "an epic transaction" that represented a "one-plus-one-equals-five combination."  These defendants further noted:

Defendant Schorsch:

> **This is an epic transaction.  Great companies combining in a win-win to the shareholders**, the employees and the broker-dealer systems that we work with.
>
> The portfolios just fit.  They fit very, very well.  **We're a much stronger company**.  We . . . have both proven ourselves.  And if you look back at the last six months, as we've gone through this transaction, **we as a company have improved at ARCP – we've become investment-grade rated; we've managed our balance sheet and a number of other mergers to build a larger company of over $10 billion on a pro**

- 97 -

*forma basis. . . . And today, we have created, with this merger, the largest net lease company on the globe.*

Defendant Nemer:

*This transaction represents a major step in achieving our goal of creating the premier real estate company that delivers best-in-class, long-term results to our shareholders.* The combination is forward thinking, and our union provides immediate and obvious benefits of size, scale and diversification.

. . . [A]s Nick said, *this combination makes all the sense in the world. It's truly a one-plus-one-equals-five combination* of a – transactions of this magnitude, this significant, that are this transformational, rarely come together. And so, I give my hat's off to Nick and his team for the effort that they've made over the last year, to make themselves a more compelling strategic partner, and for putting terms on the table *that produce terrific results for both of our shareholders, both in the immediate term and the long-term.*

256.     During the conference call, Block discussed the Company's full year 2014 AFFO per

share guidance, and responded to an analyst's question on that topic, stating in pertinent part:

Defendant Block:

Just jumping into the numbers here, I want to give an overview of the financial benefits of this transformative transaction. *Specific to adjusted funds from operation, or AFFO for 2014, our guidance remains unchanged with this transaction from a numbers' standpoint. We expanded the range slightly*, due to the fact that we have variability here. In closing this merger within the first half of 2014, *our guidance range on a fully diluted per-share basis is $1.13 to $1.19 per share.*

*            *            *

*Turning our attention specifically to 2014 guidance, I wanted to point out a range – from an FFO standpoint, fully diluted share count, as we talked about – $1.14 to $1.20; AFFO, $1.13 to $1.19.* The key assumptions . . . include[] $11.2 billion purchase price for Cole. It assumes an election of 80% stock and 20% cash. We're assuming a $70 million expense reduction in aggregate from the combined organization. The distributions go up to $1.00 per share, and again, representing an 86% payout ratio.

**Third Quarter 2013 Financial Results**

257.     On November 7, 2013, ARCP issued a release announcing its financial results for

3Q13.  For the quarter, the Company reported AFFO of $46.7 million, or $0.21 per share,

- 98 -

representing a quarter-to-quarter increase of over 42%, and confirmed "[u]pdated AFFO pro forma

2014 guidance of $1.13 to $1.19 per share."  Schorsch and Block commented on the Company's

financial results, stating in pertinent part:

Defendant Schorsch:

*We have continued to build enterprise value during this third quarter, and for now are intently focused on execution* . . . .  In this regard, we have identified several near-term key objectives: completing the announced ARCT IV and Cole transactions; becoming self-managed and significantly broadening our intellectual capital by continuing to attract the best and brightest managers in the industry; deleveraging and terming out our balance sheet utilizing long-term, fixed rate debt; and effectively and seamlessly integrating Cole organization.

*        *        *

We are fully committed to becoming self-managed, as promised . . . .  In fact, it is a closing condition for our merger with Cole.  We will announce the President of ARCP before year-end.  We have already moved to bolster our team with several key hires.  Brian Block, our CFO, will now be focused exclusively on ARCP.  Lisa Beeson joins us as COO after 25 years as an investment banker with tremendous M&A and capital markets expertise.  Lisa Pavelka McAlister is our new CAO with 25 years' experience in senior financial roles versed in all aspects of financial and accounting operations.

*        *        *

Defendant Block:

*Our 3rd quarter operating results are in-line with projections* . . . . We are well positioned to close our pending acquisitions and execute our capital plan.

258.    Also on November 7, 2013, ARCP filed with the SEC its Form 10-Q for the period

ended September 30, 2013 (the "3Q13 Form 10-Q").  The 3Q13 Form 10-Q, which was signed by

Schorsch and Block, reiterated ARCP's previously announced financial results and represented that

those financial results were accurate and presented in accordance with GAAP.  It also represented

that the Company's internal controls were effective and disclosed any material changes to the

Company's internal controls over financial reporting, and included Schorsch's and Block's

certifications pursuant to SOX, identical in all material aspects to the certification quoted in ¶¶164-

165.

259.    Later that day, ARCP held a conference call with analysts and investors to discuss the

Company's 3Q13 financial results.  During the conference call, Schorsch and Block stated:

Defendant Schorsch:

*Our 2014 AFFO earnings guidance*, which reflects the acquisition of Cole, assumes
a closing date of April 1 and *is $1.13 to $1.19 per share.  This range includes only
$2 billion of acquisitions for 2014, which we think is very manageable*, particularly
given the historic acquisition activity of our combined organizations.

*             *             *

Defendant Block:

*In connection with the Cole merger, we widened our 2013 guidance by $0.01 on
each side of the range based on the uncertainty with respect to the anticipated
closing date*. . . .

*Our 2014 AFFO guidance is $1.13 to $1.19 per share*.  This range, which assumes
the Cole merger to close the end of the first quarter of 2014, reflects additional
interest costs attributable to increased duration of fixed rate borrowings to match
fund, assets and liabilities, as I previously noted, and higher acquisition volumes than
previously projected, reflecting increased capacity of the combined teams.

**Cole Merger Presentation**

260.    On November 12, 2013, ARCP caused a shareholder presentation to be disseminated

in connection with the Cole Merger, which stated that the Cole Merger would result in ARCP being

the world's largest net lease REIT and would generate "AFFO growth" for ARCP.  The shareholder

presentation also noted that "guidance for 2014 AFFO growth estimates" was being "updated to

$1.13 to $1.19 per share (fully diluted)," and indicated that ARCP was positioned to post 2014

"AFFO of $1.13 per share" even if no further acquisitions were completed during 2014.

261.     The statements referenced above in ¶¶253-260, were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Nemer, Schorsch and Block, were:

(a)     that ARCP's 3Q13 financial statements were false, did not accurately portray the Company's financial performance during those periods and were not prepared in accordance with GAAP, as detailed in ¶¶114-181;

(b)     that ARCP, Schorsch and Block's representations in ARCP's 3Q13 SEC filings with respect to internal controls and financial reporting processes were false and misleading, as detailed in ¶¶182-196, in that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were reviewed timely; (ii) formulate AFFO guidance and periodically reassess ARCP's ability to meet AFFO guidance; and (iii) assess, authorize and monitor millions of dollars of related-party payments to ARCP's external manager and its affiliates;

(c)     that the Cole Merger would not drive 2014 AFFO per share growth or earnings accretion, but rather that would permit ARCP to conceal its inability to meet its 2013 and 2014 performance estimates;

(d)     that ARCP's claimed AFFO growth could only be achieved via defendants' ongoing falsification of ARCP's financial statements;

(e)     that defendants did not place shareholder interests ahead of their own interests, or align ARCP insiders' pay with ARCP's actual performance in connection with the Cole Merger, nor did the Cole Merger represent a "terrific result[]" for ARCP or Cole, Inc. shareholders, but rather was designed to and did permit the payment of $37 million in related-party transactional fees and compensation payments to ARCP insiders and other parties affiliated with Schorsch;

- 101 -

(f)      that as a result of (a)-(e), above ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements did not contain material misstatements;

(g)      that as a result of (a)-(f), above ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP was well positioned for continued earnings growth or to post 2014 AFFO of $1.13-$1.19 per share; and

(h)      The statements made by Nemer in the Cole Registration Statement/Proxy as well as those in the Oct. 22, 2013 release that the Cole Merger was a "*one-plus-one-equals-five combination*" that would create "*the premier real estate company*" poised to deliver "*best in-class*" results "*for both of our shareholders, both in the immediate term and long-term*" were false and misleading when made.  The true facts were that Nemer failed to conduct a meaningful assessment of ARCP's financial controls, processes or reporting practices, including failing to conduct any review at all of ARCP's 3Q13 financial statements and the adequacy of its internal controls, procedures or the formulation of reported AFFO with respect thereto.  Nemer has confirmed the fact that Cole, Inc. declined to even review or assess ARCP's false 3Q13 financial statements which were included in the Cole Registration Statement/Proxy even though they were available to Nemer and the Cole Defendants prior to the dissemination of the Cole Registration Statement/Proxy.

**ARCT IV**

262.     On December 3, 2013, the ARCP Management Defendants, the ARCP Director Defendants, the ARCT IV Defendants, and the AR Capital Defendants caused a Registration Statement to be filed with the SEC on Form S-4, and disseminated a Joint Proxy Statement/Prospectus (collectively, the "ARCT IV Registration Statement/Proxy") to shareholders. A copy of the merger agreement for the transaction was attached as Annex A and was incorporated

- 102 -

by reference therein.  The ARCT IV Registration Statement/Proxy was prepared, reviewed and/or signed by ARCP, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson, AR Capital, Radesca, ARCT IV, Stanley, Wenzel and Tuppeny.

263.    The ARCT IV Registration Statement/Proxy represented that the ARCT IV Board had unanimously determined that the merger was "fair to, and in the best interests of ARCT IV and its stockholders."  Likewise, with respect to their own shareholders, the ARCP Directors recommended that the transaction be approved.  The ARCT IV Registration Statement/Proxy represented that the proposed transaction would drive AFFO growth and increase dividend distributions, stating that "the combined company's stockholders will benefit from a stable and secure dividend, which is expected to increase to $0.94 per share following the merger" as well as a "higher future AFFO growth rate."  The ARCT IV Registration Statement/Proxy contained a section entitled "Selected Publicly Traded REITs Analysis," which provided multiple ranges of calendar year 2014 estimated FFO per share and calendar year 2014 estimated AFFO per share.  It also provided "Certain Prospective Financial Information Reviewed by ARCT IV," including projected AFFO figures through 2018, as follows:

| ($ in millions) | 2011 | 2012 | 2013 (6 months) | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|
| EBITDA as adjusted | ($2) | $ 15 | $ 23 | $ 525 | $ 604 | $ 681 | $ 757 | $ 831 |
| Funds from Operations as adjusted (FFO as adjusted) | ($2) | $ 4 | $ 38 | $ 379 | $ 443 | $ 505 | $ 565 | $ 623 |
| Adjusted Funds from Operations (AFFO) | $ 2 | $ 48 | $ 63 | $ 380 | $ 445 | $ 505 | $ 564 | $ 620 |

264.    ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q and 3Q13 Form 10-Q, which were signed by Schorsch and Block, were each incorporated by reference in the ARCT IV Registration Statement/Proxy, also assured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of

- 103 -

the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

265.    The ARCT IV Merger Agreement repeated in all material respects the same representations concerning ARCP's internal controls, disclosures and SEC filings quoted in ¶¶223-228 from the ARCT III Merger Agreement.

266.    On December 3, 2013, the ARCT IV Registration Statement/Proxy was disseminated to shareholders and, among other things, presented ARCP's audited FY12 financial data and unaudited financial data for the first nine months of 2013, ended September 30, 2013, and represented that "[i]n ARCP's opinion, such unaudited financial statements include all adjustments (consisting of normal recurring adjustments) necessary for a fair presentation of the interim September 30, 2013 financial information."  All of these financial statements have been restated.

267.    The ARCT IV Registration Statement/Proxy was materially false and misleading in that it omitted and/or misrepresented material facts, including:

(a)    that ARCP's financial statements for FY12, 1Q 2013, 2Q13, and 3Q13 were false, did not accurately portray the company's financial performance for those periods and were not prepared in accordance with GAAP as detailed in ¶¶114-118, 120-175, 180-196.

(b)    that the acquisition capacity detailed therein was predicated upon the use of artificially inflated ARCP shares, the price of which was based upon financial data that was false, as detailed in ¶¶114-118, 120-175, 180-196, *infra*, and has been restated;

(c)    that the ARCT IV Defendants, AR Capital Defendants and the ARCP Management and Director Defendants had no reasonable basis to believe, and did not in fact believe, that the combined company's stockholders would benefit from a stable or secure dividend or higher AFFO growth rate, as ARCP's existing internal controls were not adequate to generate an accurate assessment of its financial performance, and each of these defendants should have known of the

- 104 -

inadequacy of ARCP's financial controls and that the existing inadequacy would only be exacerbated by the ARCT IV Merger;

(d)      that the ARCT IV Defendants, the AR Capital Defendants and the ARCP Director and Management Defendants had no reasonable basis to believe, and did not in fact believe, that the ARCT IV Merger was fair to, or in the best interest of, ARCT IV stockholders, as each of these defendants was either aware that, or reasonable due diligence investigation would have shown that, ARCP's reported financial performance and AFFO for the FY12 and 1Q13, 2Q13 and 3Q13 was false and the product of improper accounting and inadequate internal controls, as detailed in ¶¶182-196, *infra*; and

(e)      that as a result of (a)-(d), above, neither the ARCT IV Defendants nor the ARCP Management and Director Defendants had a reasonable basis to believe the 2014 AFFO estimates of $380 million detailed in the ARCT IV Registration Statement/Proxy as each defendant either did not in fact believe, or had not conducted any meaningful due diligence in connection with the ARCT IV Merger.

**December 2013 Debt Offerings**

268.    On December 4, 2013, ARCP announced:

(a)      a reopening of the 2018 Notes, which were ultimately priced at $287.5 million (the "December 2013 Reopening").  The December 2013 Reopening was conducted pursuant to the 2013 Shelf Registration Statement, a Pricing Term Sheet and Free Writing Prospectuses dated December 5, 2013, and Prospectus Supplements dated December 5, 6, and 9, 2013 (collectively, the "December 2013 Reopening Materials").  The December 2013 Reopening was underwritten by defendants Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One, and JMP

- 105 -

Securities.  These defendants were "underwriters," as defined in §2(11) of the Securities Act, of the 2018 Notes; and

(b)        an offering of 3.75% Convertible Senior Notes due December 15, 2020, which were ultimately priced at $402.5 million (the "2020 Notes") (the "December 2013 Offering").  The December 2013 Offering was conducted pursuant to the 2013 Shelf Registration Statement, a Pricing Term Sheet dated December 5, 2013, and Prospectus Supplements dated December 5, 6 and 9, 2013 (collectively, the "December 2013 Offering Materials").  The December 2013 Offering was underwritten by defendants Citigroup, Barclays, JMP Securities, Credit Suisse, Morgan Stanley, Wells Fargo, and Capital One.  These defendants were "underwriters," as defined in §2(11) of the Securities Act, of the 2020 Notes, as well as of the 2018 Notes as a result of their reopening.

269.    The December 2013 Reopening Materials and the December 2013 Offering Materials specifically incorporated by reference ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q, and 3Q13 Form 10-Q.  These materials, which induced Union and other members of the Class to purchase ARCP's 2018 Notes and 2020 Notes, contained untrue statements of material fact and omitted to state material facts required therein or necessary to make the statements therein not misleading, as described in ¶¶114-118, 120-175, 180-196.

**Cole Merger**

270.    On or about December 23, 2013, ARCP and Cole Inc. filed a Registration Statement on Form S-4 (the "Cole Registration Statement") with the SEC and disseminated a Joint Proxy Statement/Prospectus (the "Cole Proxy") to Cole Inc. shareholders to solicit their votes in favor of the proposed merger (collectively, the "Cole Registration Statement/Proxy").  A copy of the Cole Merger Agreement for the transaction was attached to the Cole Registration Statement/Proxy and was incorporated by reference into both documents.

- 106 -

271.    The Cole Registration Statement/Proxy represented that the Cole Inc. board had unanimously determined that the merger was "advisable, fair to, and in the best interests of ARCT III and its stockholders."  Likewise, the ARCP Board unanimously recommended that the transaction be approved.

272.    ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q and 3Q13 Form 10-Q, which were signed by Schorsch and Block, and each incorporated by reference in the Cole Registration Statement/Proxy, also assured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

273.    The Cole Merger Agreement repeated in all material respects the same representations concerning ARCP's internal controls, disclosures and SEC filings quoted in ¶¶223-228 of the ARCT III Merger Agreement.

274.    On December 23, 2013, the Cole Registration Statement/Proxy was disseminated to Cole Inc. and ARCP shareholders and, among other things, presented ARCP's audited FY12 financial data and unaudited financial data for the first nine months of 2013, ended September 30, 2013, and represented that "[i]n ARCP's opinion, such unaudited financial statements include all adjustments (consisting of normal recurring adjustments) necessary for a fair presentation of the interim September 30, 2013 financial information."  All of these financial statements have been restated.

275.    The Cole Registration Statement/Proxy was materially false and misleading in that it omitted and/or misrepresented material facts.  The true facts were:

(a)      that ARCP's reported financial results for FY12, 1Q13, 2Q13 and 3Q13, including ARCP's reported AFFO and net loss, were false and the product of improper accounting and inadequate internal controls.  Indeed, as detailed in ¶¶114-118, 120-175, 180-196, *infra*, ARCP since has restated its 2012 and 2013 financial statements and 2012 and 2013 AFFO;

(b)      that ARCP did not maintain a system of internal controls sufficient to provide reasonable assurances regarding the reliability of its financial reporting, and the formulation and evaluation of the Company's ability to meet its AFFO guidance, as described in ¶¶182-196;

(c)      that ARCP executives failed to disclose material weaknesses that they were aware had been and would continue to adversely affect ARCP's ability to accurately report financial data, including the fact that ARCP lacked disclosure controls and procedures necessary to timely alert its principal executive officer and principal financial officer to material information required to be included in the Company's periodic reports;

(d)      that ARCP's filings with the SEC did not comply with the federal securities laws, as its financial statements failed to include all adjustments necessary for a fair presentation of the Company's financial information;

(e)      that ARCP was in the midst of an acquisition campagn designed to generate hundreds of millions in transactional fees and compensation payments for Schorsch and ARCP insiders, as well as other parties affiliated with Schorsch-controlled companies, without regard to the fairness or merits of the underlying transaction;

(f)      that the evaluation of the effectiveness of ARCP's disclosure controls and procedures, which Block and Schorsch supervised and participated in in connection with the preparation and dissemination of the Company's interim 2013 financial statements and its 2012

Form 10-K, confirmed that the Company's disclosure controls and procedures were inadequate in several regards, as detailed in ¶¶182-196; and

(g)     that as a result of (a)-(f), above, defendants named herein had no reasonable basis to believe, and did not in fact believe, their statements detailed herein about ARCP, its financial performance and its AFFO estimates.

**ARCT IV Release**

276.     On January 3, 2014, ARCP issued a release wherein Block noted that the ARCT IV transaction was "instrumental to achieving 2014 AFFO growth per share, and will reduce our balance sheet leverage with ARCT IV's highly unencumbered portfolio of real estate assets."  Block also reiterated, "our 2014 AFFO guidance ranges from $1.13 per share to $1.19 [per share]."

**February 2014 Notes Offering**

277.     On February 6, 2014, ARCP completed a $2.55 billion February Notes Offering of 2.0% Senior Notes due February 6, 2017, 3.0% Senior Notes due February 6, 2019, and 4.6% Senior Notes due February 6, 2024 (the "Senior Notes") (the "February Notes Offering").  The February Notes Offering was conducted by way of an Offering Memorandum pursuant to Securities Act Rule 144A, by which the initial purchasers purchase the securities from the issuers and resell them pursuant to an SEC regulation providing for resales of unregistered securities to "Qualified Institutional Buyers."[22]

---

[22]   The February Notes Offering was the first step in a two-step process known as an "Exxon Capital Exchange."  The second step, the "Exxon Capital Exchange Offer," is the means by which the 144A notes are converted into registered, freely tradable securities.  In practice, the Rule 144A/Exxon Capital framework does not differ from registration.  Issuers and their underwriters prepare the offering memoranda for Rule 144A offerings in contemplation of the Exxon Capital Exchange Offer and, accordingly, prepare such documents to conform in all material respects to a registered offering.

278.    TIAA-CREF, National Pension Fund, NYC Funds and other members of the Class purchased the Senior Notes sold by ARC Properties with the understanding and expectation that the Senior Notes would later be exchanged for freely tradeable registered bonds in the second step Exxon Capital Exchange Offer.

279.    TIAA-CREF, National Pension Fund, NYC Funds and other members of the Class purchased the unregistered Senior Notes based upon the statements contained in the Offering Memorandum.  The Offering Memorandum stated that ARCP and ARC Properties "furnished the information contained or incorporated by reference in this offering memorandum" and  set forth ARCP's reported financial and operating results, including AFFO, for FY12 and the nine-months ended September 30, 2013, and incorporated by reference ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q and 3Q13 Form 10-Q, which were signed by Schorsch and Block, also insuring investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

280.    The Offering Memorandum also represented that ARCP's January 8, 2014 transition to internal management "has eliminated conflicts of interests associated with an external advisor."

281.    The Cole Merger closed on February 7, 2014, following approval by the shareholders of Cole Inc. and ARCP at respective Special Meetings of Stockholders.  Ninety-eight percent of Cole Inc. shareholders elected to receive and were issued a portion of the 520 million shares ARCP

exchanged in the merger at a rate of 1:1.092 for every Cole Inc. share exchanged, which shares were issued pursuant to the Cole Registration Statement/Proxy.[23]

282.     On February 7, 2014, ARCP issued a release commenting on the closing of the Cole Merger, wherein Block stated: "*With this success, we reaffirm our 2014 AFFO guidance range of $1.13 to $1.19 per share*" and highlighted that – in addition to Moody's – ARCP had now received an "investment grade credit rating from Standard & Poor's Rating Services."

**Fourth Quarter 2013 Financial Results**

283.     On February 27, 2014, ARCP issued a release announcing its financial results for 4Q13 and FY13.  The release emphasized that ARCP had exceeded 2Q13 AFFO estimates given in 2Q13 and generated "record operating results for the full year ended December 31, 2013[.]"  For 4Q13, the Company reported AFFO of $55.8 million, a year-over-year increase of 153%, or $0.25 per share, a year-over-year increase of 108% and a net loss of ($157.8 million), or ($0.85) per share. For FY13, the Company reported AFFO of $163.9 million, an increase of 240% from 2012, or $0.86 per share, an increase of over 80% from 2012 and a net loss of ($406.5 million), or ($2.36) per share. The Company also reiterated its full year 2014 AFFO per share guidance of $1.13-$1.19 per share.

284.     Commenting on the Company's financial results, Block emphasized that while 2013 "proved to be a *record-setting year* for ARCP both in terms of earnings and growth . . . *we firmly believe that 2014 will be an even more impressive year.  These factors should fortify our 2014 AFFO guidance of $1.13 to $1.19 per share*."  Schorsch further noted:

> *As these results unequivocally demonstrate, we have accomplished an extraordinary amount in a very short time, underscoring our ability to execute key initiatives on every level across the organization*.  We will complete over $1.0 billion of acquisitions during the first quarter, at a pace ahead of projections and

---

[23]   The small faction of Cole Inc. shareholders who made a cash election received, in the aggregate, approximately $181 million.

accretive to our earnings.  Our robust pipeline of property acquisitions, as well as other corporate opportunities we are privy to, is consistent with our ability to grow impressively, while staying true to our strategy.

        *       *       *

In addition to the strong growth we have seen with our earnings, ARCP's improved leverage posture and identified G&A synergies from the Cole acquisition are also generating a positive impact to the bottom line. ***Not only did we beat consensus estimates for the fourth quarter, our first quarter is off to a tremendous start***. When you compare these financial results to our peer group valuation metrics, particularly dividend yield and earnings multiple, ***we believe our Company is undervalued and poised for a share price increase***.

285.   Also on February 27, 2014, ARCP filed its annual report for the year ended December 31, 2013 with the SEC on Form 10-K (the "2013 Form 10-K").  The 2013 Form 10-K was signed by Schorsch, Beeson, Block, Kay and McAlister, as well as Michelson, Stanley, Bowman, Rendell, Andruskevich and Sealy.  The 2013 Form 10-K reiterated ARCP's previously announced financial results, represented that those financial results were accurate and presented in accordance with GAAP, represented that the Company's internal controls were effective and disclosed any material changes to the Company's internal control over financial reporting, and included Schorsch's and Block's certifications pursuant to SOX, identical in all material aspects to the certification quoted in ¶¶164-165.

286.   Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 4Q13 and FY13 financial results.  During the conference call, Schorsch confirmed that "***[o]ur earnings guidance is solid,*** " and there is even "***with room for upside***[.]"  Block likewise stated in pertinent part:

Based on the strength of our acquisitions, success in our private capital management business, strategic execution of our balance sheet initiatives, and the continued savings in G&A costs, ***we comfortably affirm our 2014 AFFO guidance of $1.13 to $1.19 per share***.

        *       *       *

- 112 -

We currently have today 812.5 million shares and share equivalents outstanding on a fully diluted basis. ***The end result of all these numbers I just mentioned is a run rate of around $1.11 to $1.13 per share AFFO***. Again, this number is a run rate through what we know today.

***If we didn't do anything else as of April 1, we would achieve this roughly $1.12 per share for the prospective 12 months. We of course will continue to acquire more than the $1 billion we've discussed over the next nine months, and therefore achieve higher results***.

These results demonstrate tremendous success and are a result of the equally tremendous hard work.

287.    During the conference call, Block responded to an analyst's question about the

Company's full year 2014 AFFO per share guidance, stating in pertinent part:

Chris Lucas – Capital One Securities – Analyst:

Okay. And then, again related to guidance, Brian, just in terms of getting to the low end of the numbers ***we should just assume that $1.13 at the low end is reflective of*** just essentially what you talked about before, which is ***what's done and nothing more?  Is that effectively how we should be thinking about the low end***?

Defendant Block:

***That's correct***.  To repeat Chris, ***if we didn't do anything past March 31, we would be at the low end of the range, notwithstanding the fact that we have a lot more acquisition potential for the duration of the year***.

288.    Also during the call, Beeson highlighted ARCP's "acquisition machine" as the

mechanism driving ARCP's strong performance.  Beeson stated in pertinent part:

Josh Patinkin – BMO Capital Markets – Analyst:

Okay.  And is that, you think, what enabled you such an attractive initial yield, going into smaller deal size?

Defendant Beeson

Absolutely.  That is how we distinguish ourselves.  ***No other company has the acquisition machine that we have built here***, that enables us to cost effectively do smaller one-off transactions, ***and that's how we're able to get the pricing differential***.

- 113 -

We can buy three assets at a 7.75% or an 8% cap that another competitor buys in a portfolio at a 6, 7% cap.  That's a significant spread differential, and we do that because we're able to, and we'll do granular level acquisitions.

289.   The statements referenced above in ¶¶268-274, 276-289 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch, Block, Beeson, Kay and McAlister, were:

(a)   that ARCP's reported 4Q13 AFFO was overstated by nearly 90%, while its FY13 AFFO was overstated by 23%, as detailed in ¶¶114-181;

(b)   that ARCP's 4Q13 and FY13 financial statements were false, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-196;

(c)   that ARCP, Schorsch, Block, Beeson, Kay and McAlister were aware that the AFFO reported by ARCP was false because McAlister had repeatedly informed Schorsch, Kay, Block and other members of senior management by at least February 2014 that the Company's AFFO calculations improperly accounted for costs attributed to non-controlling interests in ARC Properties, thus falsifying the AFFO numbers disseminated by the Company;

(d)   that the AFFO provided to investors remained inflated as a result of Kay's instruction to Block and McAlister not to change or correct ARCP's fraudulent reports, thereby avoiding public disclosure of the Company's faltering financial performance;

(e)   that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were timely reviewed; (ii) ensure that grants of equity-based compensation were consistent with those approved by the Board; (iii) formulate AFFO guidance and periodically reassess the Company's ability to meet its AFFO guidance; and (iv) assess, authorize and monitor related-party

- 114 -

transactions that resulted in payments to ARCP's external manager and its affiliates – all entities controlled by Schorsch – that were not sufficiently documented or that otherwise warranted scrutiny;

(f)     that the "acquisition machine" which Beeson contended was driving ARCP's performance was predicated on Block, Beeson, Kay, Schorsch and McAlister's falsification of ARCP's financial results;

(g)     that the ARCP "acquisition machine" was designed to generate nearly $200 million in compensation payments and fees for Schorsch-controlled entities in 2013;

(h)     that as a result of (a)-(g), above, ARCP, Schorsch, Block, Kay, Beeson and McAlister had no reasonable basis to believe, and in fact did not believe, that ARCP was "undervalued" or "off to a tremendous start" for 2014; and

(i)     that as a result of (a)-(g), above, ARCP, Schorsch, Block, Kay, Beeson and McAlister had no reasonable basis to believe, and in fact did not believe, their 2014 AFFO guidance of $1.13-$1.19 per share or that their AFFO guidance had "room for upside."

### First Quarter 2014 Financial Results

290.     On May 8, 2014, ARCP issued a release announcing its financial results for 1Q14. The release emphasized that ARCP had achieved "***Record First Quarter 2014 Operating Results***." The Company reported AFFO available to common stockholders of $147.4 million, or $0.26 per share, representing a year-over-year increase of 334.6%.  ARCP reaffirmed its full-year 2014 AFFO guidance of $1.13-$1.19 per share.  Schorsch and Kay commented on the Company's financial results, stating in pertinent part:

Defendant Schorsch:

***I am very pleased with our results for the first quarter of the year . . . .  We had a record quarter with earnings coming exactly in line with our expectations of $0.26 AFFO per share, consistent with our previously stated guidance for the year. Additionally, our year-to-date acquisitions***, combined with properties currently

- 115 -

under contract *puts us well-ahead of schedule to achieve our total 2014 annual acquisition targets by midyear*.  With our strengthened balance sheet, and the Company ready to capitalize on a number of large-scale sale-leaseback transactions, *we are in position to deliver strong shareholder return this year*. . . .

\*        \*        \*

Defendant Kay:

With our acquisitions team firing on all cylinders, *every aspect of our business is exceeding our expectations* . . . . *With strong earnings, our acquisition volume is outpacing our guidance*, our cap rates surpass all industry peers, Cole Capital launched two new products, and we successfully integrated our management and systems, all of which is allowing us to execute with a disciplined intensity.  The $1.7 billion of acquisitions we have closed or placed under contract were at a 7.92% cash cap rate or 8.26% GAAP cap rate.  These 150 self-originated transactions are indicative of *the scale and expertise of our platform, providing a significant competitive advantage*.

291.    Beeson further noted that the Company's "*improved operational and financial efficiencies*" had positioned ARCP "*well to drive meaningful growth*."

292.    Also on May 8, 2014, ARCP filed with the SEC its Form 10-Q for the period ended March 31, 2014 (the "1Q14 Form 10-Q"), which was signed by Schorsch and Block.  The 1Q14 Form 10-Q also reiterated ARCP's previously announced financial results, including its representation at page 66 that ARCP had posted 1Q14 AFFO of $147 million, compared to 1Q13 AFFO of $34 million.  The 1Q14 Form 10-Q further represented that those financial results were accurate and presented in accordance with GAAP, that the Company's internal controls were effective and that the 1Q14 Form 10-Q disclosed any material changes to the Company's internal control over financial reporting.  It also included Schorsch's and Block's certifications pursuant to SOX, identical in all material aspects to the certification quoted in ¶¶164-165.

293.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 1Q14 financial results.  During the conference call, Schorsch stated: "Our first quarter earnings came in exactly where we expected, at $0.26 per share of AFFO," while reiterating that

- 116 -

"[w]e are confident with our guidance for the full year of 2014 of $1.13 to $1.19 per share."  Block noted that the Company's "current run rate based on AFFO per share fully diluted is between $0.29 and $0.30."

294.     Beeson discussed various aspects of the Company's operations and net lease portfolio, noting how ARCP had "***successfully*** integrated over 300 individuals from the multiple entities into one cohesive enterprise," and confirming that the respective accounting systems had likewise been "***fully integrated as well***."

295.     Upon completion of the prepared remarks by Schorsch, Kay, Block and Beeson, the call was opened up for questions.  In response to questions from one analyst, Schorsch emphasized that investors should be buyers of ARCP stock as "***we're way undervalued***," noting that "***our stock is cheap***."

296.     The statements referenced above in ¶¶290-295 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch, Block, Beeson and Kay, were:

(a)     that ARCP's reported 1Q14 AFFO of $147 million, or $0.26 per share, was overstated by 35% and 37% respectively, as detailed in ¶¶114-196;

(b)     that ARCP had not posted "record" results and was not experiencing "improved operational efficiencies" nor was it positioned for meaningful growth, as the Company lacked reliable financial controls and, as a result, was issuing false financial reports, including inflated AFFO and unreliable AFFO guidance, to the market;

(c)     that ARCP, Schorsch, Block, Kay and Beeson were aware that the 1Q14 Form 10-Q was false as McAlister had "repeatedly" informed Schorsch, Kay, Block and other members of

- 117 -

senior management that the Company's AFFO calculation improperly accounted for costs that should have been attributed to non-controlling interests in ARC Properties;

(d)     that the false AFFO reported by ARCP for 1Q14 was provided to investors upon Kay's instruction to Block and McAlister not to change or correct the fraudulent reports, in an effort to misrepresent the Company's performance and avoid disclosure of the Company's faltering financial performance;

(e)     that ARCP's 1Q14 financial statements were false, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-196;

(f)     that, as detailed in ¶¶182-196, ARCP lacked adequate internal controls, including controls to ensure, among other things, that the Company's Code of Conduct was adhered to and that employees would not be subject to pressure to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO;

(g)     that ARCP had not successfully integrated its financial systems or operations "into one cohesive enterprise," as it lacked even the most basic accounting functions, including a standardized internal accounting close and cash reconciliation process;

(h)     that ARCP was not generating "strong earnings" nor was its stock cheap nor undervalued, as its financial results for FY13 and 1Q14 were the product of fraudulent manipulations, as detailed in ¶¶114-196, including its reported AFFO per share, which was overstated by 23% and 37%, respectively;

(i)     that absent the fraudulent manipulation of the Company's AFFO, ARCP's actual AFFO could not meet, let alone outpace, ARCP's 2014 AFFO guidance of $1.13-$1.19 per share;

- 118 -

        (j)      that the Company's ability to continue to meet AFFO growth guidance of $1.13-$1.19 per share was entirely dependent upon the continued manipulation of the Company's financial statements and reported AFFO; and

        (k)      that as a result of (a)-(j), above, ARCP and Schorsch had no reasonable basis to believe, and in fact did not believe, their 2014 AFFO guidance of $1.13-$1.19 per share.

**May 21, 2014 Secondary Offering**

297.    On May 21, 2014, ARCP entered into an agreement related to the offering of 138 million newly issued shares of ARCP common stock at $12.00 per share (the "May 21 Equity Offering"), raising $1.65 billion from investors pursuant to the false and misleading 2013 Shelf Registration Statement, along with a preliminary Prospectus Supplement filed May 21, 2014 and a Prospectus Supplement filed May 23, 2014, which were incorporated therein (collectively, the "May 21 Equity Offering Documents").[24]

298.    Defendants identified in ¶91 were "underwriters," as defined in §2(11) of the Securities Act, of the May 21 Equity Offering.

299.    The May 21 Equity Offering Documents incorporated by reference ARCP's 2012 Form 10-K, 2013 Form 10-K and its 1Q14 Form 10-Q, each of which represented that: (i) the financial results contained therein were accurate and presented in accordance with GAAP; and (ii) the Company's internal controls were effective and any material changes to the Company's internal controls over financial reporting had been disclosed.  Each of the 2012 Form 10-K, 2013 Form 10-K and 1Q14 Form 10-Q also included false and misleading certifications executed by Schorsch and Block and filed pursuant to SOX.

---

[24]   The underwriters also exercised the "green shoe," selling an additional 18 million newly issued shares, for a total of 138 million shares in connection with the May 21 Equity Offering.

300.    The statements referenced above in ¶¶297-299 were each materially false and misleading when made in that they failed to disclose and/or misrepresented the following adverse facts:

(a)    that ARCP's financial statements for FY12, FY13 and 1Q14 which were incorporated into the May 21 Equity Offering Documents were false, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-118, 120-175, 180-196;

(b)    that ARCP could not prepare sufficiently reliable financial statements, and, as detailed in ¶¶182-196, has admitted that it lacked necessary and appropriate internal controls with regard to its financial reporting processes; and

(c)    the Company's reported 1Q14 and FY13 AFFO was overstated by at least 36% and nearly 23%, respectively because ARCP lacked appropriate controls over the formulation of AFFO and its evaluation of AFFO guidance.

**Annual Shareholder Meeting**

301.    On May 29, 2014, ARCP held its annual shareholder meeting.  Shareholders focused intently on ARCP's management's compensation and the OPP Plan, a compensation scheme that had been represented to shareholders to entitle as much as $221.1 million in performance payouts to certain members of ARCP management, specifically Schorsch and Block, over a five-year period, 42.5% of which (nearly $100 million) was allocated to be paid to Schorsch, assuming ARCP met certain performance goals measured over the ensuing three years.  Notably, Schorsch and ARCP's senior management were entitled to at least 50% of those payments *even if the total return to stockholders over the measuring period, including both share price appreciation and common stock distributions, as measured against a hurdle rate and a peer group of companies was – zero*.

- 120 -

302.     Shareholder reaction to the ARCP compensation scheme was overwhelmingly negative, as only 32% of the shares represented at the annual meeting voted in favor of the OPP Plan.

**REIT Week Investor Forum**

303.     On June 3, 2014, Schorsch, speaking at the NAREIT REITWeek Investor forum, highlighted the Company's increased acquisition guidance for 2014, stating in pertinent part:

> *We've also raised our acquisition guidance – our core acquisition guidance. This is critically important for people to understand about what we do*. This is a very, very large enterprise.  It's about $30 billion between our non-traded REITs that are the Cole brand and our traded ARCP balance sheet.
>
>           \*        \*        \*
>
> . . . But the reason we've raised our acquisition target is because we net the entire years' core acquisition target by June.  It makes no sense to not have acquisitions in the last half of the year.  Now granted, we do not expect anywhere near the acquisition speed in the last half of the year . . . but *we did raise our target from $3 billion to $4.5 billion and we're currently already locked and loaded on $3.3 billion to close this year through the end of June*.

**June 20 Stockholder Memorandum**

304.     On June 20, 2014, ARCP announced via a stockholder memorandum Schorsch's planned transition to Executive Chairman and that Kay would replace Schorsch as CEO in October 2014.  The memorandum also confirmed that Kahane and Weil would be resigning from their board seats.   The stockholder memorandum also included a chart emphasizing that ARCP was "a compelling value proposition" due in part to the fact that it traded at the "lowest 2014 AFFO multiple" relative to its peers.

**Second Quarter 2014 Financial Results**

305.     On July 29, 2014, ARCP issued a release announcing its financial results for 2Q14.  For the quarter, the Company reported AFFO of $205.3 million, representing a year-over-year

- 121 -

increase of 429.0%, or $0.24 per fully diluted share, representing a year-over-year increase of 26%. The Company also reported a net loss of ($40.3 million), or ($0.08) per share.

306.    Noting that ARCP's use of AFFO was designed to "provide a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing and investing activities," the Company reported a "*estimated AFFO run rate as of year-end 2014 of $1.18-$1.20 per share including 2014 completed and announced transactions*." Kay and Schorsch commented on the Company's financial results, stating in pertinent part:

Defendant Kay:

*Our second quarter results and accomplishments are indicative of our focus on driving long-term value by delivering on our commitments* . . . . In six months, we have fully integrated the organization, achieved $38.0 million of the $77.0 million of cost synergies to come in the first year, reduced leverage, de-risked the balance sheet, lengthened debt maturities, created $11.8 billion of unencumbered assets and significantly extended and upsized our credit facility. With these actions undertaken and the formative stage of the company behind us, we are focused on the day-to-day operations of the company. *Through all of these undertakings, we are positioned for long-term success*.

*Our balance sheet acquisitions in the quarter*, owned and under contract, of 1,217 properties in over 210 separate transactions *demonstrates the continuing systematic execution of our core acquisition strategy and testifies to the repeatability of our investment process*. As always, we see a tremendous volume of deals, but *with only approximately $250 million of acquisitions remaining to transact in calendar year 2014 on the balance sheet to meet our previously announced $4.5 billion target*, we intend to maintain a highly disciplined and selective approach to purchase the best assets for the portfolio. . . . *The daily execution of these collective actions allows us to maintain our 2014 AFFO per share guidance of $1.13-$1.19*, while significantly de-levering the balance sheet and maximizing value for our stockholders.

Defendant Schorsch:

. . . I have continued to focus my attention on improving corporate governance . . . . With the support of our Board of Directors, we are improving our practices by eliminating related-party transactions, enhancing disclosures, evaluating executive compensation, opting out of the MUTA to assure our stockholders' right to elect the entire Board at each annual meeting, and implementing other policies designed to improve our reporting and transparency, further align interest with our stockholders,

- 122 -

and eliminate potential conflicts of interest. Our goal is to constantly improve our corporate governance, which we expect will ultimately be reflected in our corporate governance scores.  All of these efforts are taken with a view toward creating long-term value for stockholders.

307.    Also on July 29, 2014, ARCP filed its Form 10-Q for the period ended June 30, 2014 with the SEC (the "2Q14 Form 10-Q"), which was signed by Schorsch, Block and McAlister.  The 2Q14 Form 10-Q reiterated ARCP's previously announced financial results, represented that those financial results were accurate and presented in accordance with GAAP, represented that the Company's internal controls were effective and disclosed any material changes to the Company's internal control over financial reporting, and included Schorsch's and Block's certifications pursuant to SOX, identical in all material aspects to the certification quoted in ¶¶164-165.

308.    The 2Q14 Form 10-Q contained a table, at page 74, which purportedly reflected ARCP's calculation of AFFO and represented that AFFO was $205.3 million and $353.1 million for the three and six month periods ended June 30, 2014, respectively, representing increases of more than 400% compared to $38.8 million and $72.3 million for the three and six month periods ended June 30, 2013, respectively.

309.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 2Q14 financial results.  During the conference call, Kay and Block stated in pertinent part:

Defendant Kay:

. . . From afar, *it may appear at times our rapid growth is hard to understand.  I assure you, however, that everything we do is directed towards a singular objective: to create value for our shareholders. . . .*

. . . *We have built this Company with the future in mind and we are well positioned to take advantage of market opportunities as they arise*. . . .

\*         \*         \*

- 123 -

For example, I am often asked how can a company of our size consistently invest in properties at cap rates meaningfully better than our competitors. There is no alchemy here, I assure you. In part, our ability to invest at prices better than our peer groups result from our origination team being the largest in the industry. . . .

\*       \*       \*

**ARCP is positioned for success**. It is now not about creating this foundation, but building upon it. **I could not be more excited about the prospects for this Company** and I look forward to our future together.

\*       \*       \*

Defendant Block:

Our second-quarter results are in line with our expectations. . . . AFFO was $198.6 million, or $0.24 per fully diluted share, which represents a 26% increase from this period last year. **We are confident with our [AFFO] guidance range for the full year of 2014 of $1.13 to $1.19 per share**. . . .

\*       \*       \*

Additionally, **our internal operations continues to strengthen. The synergy created by the integration of the Cole team and the adoption of new technology has allowed us to be more timely and efficient in our financial reporting**. In fact, this enhanced scale allowed us to move up the timing of our 10-Q filing and earnings call as a result of these improvements by roughly a week.

Let me turn to our earnings guidance numbers. . . .

**The second-half estimated AFFO projected run rate of $533 million** . . . includes second quarter as well as G&A for the second half of the year of approximately $80 million, which is inclusive of commissions and cost synergies. This is consistent with our full-year estimate of total G&A, including noncash compensation of approximately $176 million. **The run rate AFFO also includes an estimate for Cole Capital based on our projected $3.1 billion of capital raise and $4.9 billion of acquisitions into the managed funds**. The projection results in AFFO for Cole Capital for the full year of approximately $120 million.

310.    During the conference call, an analyst questioned ARCP's guidance, and Kay responded in pertinent part:

Dan Donlan – Ladenburg Thalmann & Company Inc. – Analyst:

David, just wanted to go to the guidance of a quick just so I understand it. **The pro forma AFFO run rate at year-end 2014, you have $1.18 to $1.20, that implies a quarterly run rate of $0.295 to $0.30**.

- 124 -

That's not a run rate for the fourth quarter, is it? ***Is that what it would be*** . . . at the very end of the quarter . . . ***for the first quarter of 2015 assuming nothing new to 2015***. Is that right?

Defendant Kay:

***That is correct. Other than for Cole Capital that would assume the same estimates for 2015 as we have estimated for 2014***. So yes, that would be a year-end run rate but would assume the same $4.9 billion of assets acquired during 2015 as well as the same $3.1 billion of equity raised in the Cole Capital managed funds.

\*     \*     \*

Dan Donlan – Ladenburg Thalmann & Company Inc. – Analyst:

If I am looking at the other guidance range that you reiterated, the one ***for the full-year 2014 of $1.13 to $1.19*** I think, ***the midpoint of that is $1.16***. So you have done $0.49 year to date. That ***would imply about $0.335 in the third quarter and fourth quarter to get to that midpoint – is that right as well***?

Defendant Kay:

That is roughly, yes, the math. And the reason there being is again, most of the Cole Capital EBITDA will occur with the acquisitions in the capital (inaudible) in Cole Capital versus where we were the first two quarters of the year. It is a very steep ramp up, as you know.

Dan Donlan – Ladenburg Thalmann & Company Inc. – Analyst:

Yes, yes. And so you probably have some benefit from ARCM not getting full potentially until the first part of the fourth quarter as well.

Defendant Kay:

That is exactly right. Because as articulated in that and part of the reason why we really wanted to lay that out is because you will have Red Lobster and ARCenters being owned for the three-month period, roughly, both at the same time. And that is why ***we tried to be transparent and give both numbers – give the AFFO run rate*** so that you will see the difference of actually Centers coming out as well as the year with both Centers and Lobster in at the same period of time.

\*     \*     \*

Just to note, one other thing also in the estimates there is no promote or one-time disposition fees in any of the Cole numbers either in the AFFO run rate that we gave of $1.18 to $1.20 or in the $1.13 to $1.19 range where we reconciled to $1.14.

- 125 -

311.    The statements referenced above in ¶¶297, 299, 301-310 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch, Block, Kay and McAlister, were:

(a)    that ARCP's reported financial results for 2Q14 were false, including its reported AFFO of $0.24 per share, which was overstated by more than 14%, and its reported net loss of $40.3 million which was understated by more than 26%.

(b)    that ARCP's 2Q14 financial statements were false, did not accurately portray the Company's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶114-196;

(c)    that, as described in ¶¶182-196, ARCP lacked appropriate controls to ensure, among other things, that the Company's Code of Conduct was adhered to and that employees would not be subject to pressure to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO;

(d)    that ARCP was not improving its governance practices, reporting practices, transparency or practices concerning related party transactions, as during the very quarter Schorsch, Kay and Block were making these representations, these defendants had actively falsified ARCP's reported AFFO by tens of millions of dollars and its AFFO per share by more than 14%;

(e)    that ARCP, Schorsch, Block, Kay and McAlister knew that the Company's AFFO as reported was false because McAlister had repeatedly informed Schorsch, Kay, Block and other members of senior management that the Company's AFFO calculation improperly accounted for costs attributed to non-controlling interests in ARC Properties;

- 126 -

(f)      that the ARCP's 2Q14 AFFO reported to investors and incorporated in ARCP's 2Q14 Form 10-Q was inflated based upon Kay's instruction to Block and McAlister not to change or correct ARCP's fraudulent financial statements and AFFO, thus avoiding disclosure of the Company's faltering financial performance;

(g)      that on July 28, 2014, Schorsch instructed Block to ARCP's 2Q14 AFFO by shifting numbers in ARCP's 2Q14 Form 10-Q in an effort to conceal ARCP's previous improper reporting;

(h)      that Schorsch and Kay directed Block to take steps in formulating ARCP's 2014 financial statements to make it more difficult for stockholders to discover the fraudulent changes regarding add-backs of non-recurring transaction and deferred financing costs;

(i)      that the Schorsch, Kay and Block did not have a singular objective of creating value for ARCP shareholders, but rather their conduct was designed to ensure their primary objective of facilitating rapid growth in ARCP's asset base in order to generate higher executive compensation payments, and payments to affiliated parties controlled by ARCP insiders and their affiliates which totaled more than $475 million in 2013;

(j)      that ARCP's internal operations did not "continue to strengthen," but rather were riddled with no less than three dozen different accounting manipulations as ARCP itself acknowledged just three months later;

(k)      that ARCP's financial reporting was neither "timely" nor "efficient", but rather was grossly inadequate, riddled with inadequacies and the product of fraudulent manipulators, as detailed in ¶¶114-196;

(l)      that ARCP's 2Q14 results did not position the Company for "long term success," nor were they the product of defendants' focus on driving long term value for ARCP

- 127 -

shareholders, but were the result of the systematic manipulation by defendants Schorsch, Block, Kay and McAlister of ARCP's financial results, including its AFFO, as detailed in ¶¶114-196, 345-353; and

(m)     that as a result of (a)-(l), above ARCP, Schorsch, Block, Kay and McAlister had no reasonable basis to believe, and in fact did not believe, their estimates of 2014 AFFO of $1.13 - $1.19 per share.

**Exxon Capital Exchange Pursuant to**
**September 12, 2014 Senior Notes Offering**

312.    On September 12, 2014, ARCP and ARC Properties registered the $2.55 billion worth of Senior Notes previously issued in the February Notes Offering (discussed above in ¶¶277-280) through the Exxon Capital Exchange Offer.

313.    The Exxon Capital Exchange Offer was conducted pursuant to the 2013 Shelf Registration Statement and a Prospectus dated September 12, 2014 (the "Senior Notes Registration Statement").  The Senior Notes Registration Statement contained untrue statements of material fact and failed to disclose material information required to be disclosed therein pursuant to the regulations governing its preparation.

314.    Specifically, the Senior Notes Registration Statement incorporated by reference ARCP's: (i) 2012 Form 10-K; (ii) 2013 Form 10-K; (iii) 1Q14 Form 10-Q; and (iv) 2Q14 Form 10-Q each of which contained ARCP's financial statements for those periods, which the Company now admits were materially inaccurate and have been restated.  The Senior Notes Registration Statement also incorporated by reference the materially false and misleading internal control disclosures and SOX certifications contained in those filings.

315.    The Senior Notes Registration Statement was materially inaccurate because it contained the following false and misleading statements: (i) pro-forma financial information;

- 128 -

(ii) AFFO financial measures; (iii) risk disclosures; and (iv) representations about the Company's internal controls.  ARCP now admits that all of these financial statements violated GAAP, largely due to the understatement and misclassification of numerous expenses, as described in ¶¶114-118, 120-175, 180-196 herein.  Such GAAP violations caused the reported net loss attributable to the Company to be understated by approximately 3.4% for the year ended December 31, 2013, and 26.3% for 2Q14.

316.    The Senior Notes Registration Statement also contained pro-forma financial statements based upon ARCP's false 2Q14 financial statements.  Accordingly, the pro-forma financial statements included in the Senior Notes Registration Statement, including the unaudited selected pro-forma consolidated operating data for the six months ended June 30, 2014 and the disclosures related thereto, were materially false.

317.    The Senior Notes Registration Statement was also false and misleading because it contained ARCP's false AFFO for 2012, 2013, 1Q14 and 2Q14.  These misstated AFFO amounts were contained in the 2013 Form 10-K, 1Q14 Form 10-Q and 2Q14 Form 10-Q, which were incorporated by reference into the September 12, 2014 Prospectus Supplement.  AFFO per share was overstated by 2.2% for 2012, 23% for 2013, 36.8% for 1Q14, and 14.3% for 2Q14.

318.    Additionally, the 1Q14 Form 10-Q and the 2Q14 Form 10-Q incorporated by reference in the Senior Notes Registration Statement contained materially inaccurate disclosures in the MD&A (*Management's Discussion and Analysis of Financial Condition and Results of Operations* under Regulation S-K [17 C.F.R. §229.303]).  The disclosures in the MD&A (which require that ARCP provide investors with information sufficient to understand the Company's results of operations, liquidity and capital resources) were materially false and misleading because they

were based, in part, upon ARCP's admittedly misstated AFFO for 1Q14, 2Q14 and the three and six months ended June 30, 2014.

319.    Additionally, Item 3 of Form S-4 required that the Senior Notes Registration Statement furnish the information required by Item 503 of Regulation S-K [17 C.F.R. §229.503], including, among other things, a "discussion of the most significant factors that make the offering risky or speculative."   The risk disclosures in the Senior Notes Registration Statement were materially inaccurate because they failed to advise investors about significant, then-existing factors that made the offering speculative or risky, including ARCP's managements' ongoing effort to intentionally inflate the Company's reported operating performance and intentionally file unreliable and material misstated financial statements with the SEC.

320.    Finally, the Senior Notes Registration Statement represented that the Company was implementing "additional enhancements to its corporate governance practices as it remains focused on 'best practices[.]'"

321.    The statements referenced above in ¶¶312-320 were false and misleading in that they failed to disclose and/or misrepresented that ARCP lacked the necessary internal controls over its accounting systems to prepare reliable financial statements, and accordingly, was not enhancing its corporate governance practices or focusing on best practices.  And just weeks after the September 2014 offering, ARCP admitted that the 1Q14 financial statements incorporated into the Senior Note Registration Statement contained errors that had been "identified but intentionally not corrected," and that the 2Q14 financial statements incorporated into the Senior Note Registration Statement contained errors that were "intentionally made[.]"

- 130 -

## ARCP ACKNOWLEDGES THAT IT FALSIFIED
## ITS FINANCIAL STATEMENTS AND AFFO

322.     Before the market opened on October 29, 2014, ARCP issued a release and filed a

Form 8-K with the SEC revealing that the Company's previously reported FY13 financial results, as

well as its financial results for 1Q14 and 2Q14, "*should no longer be relied upon*," and that the

Company intended to restate its financial results for those periods.  ARCP further admitted that:

> (1) the Company's AFFO was overstated during the first quarter of 2014 by an estimated
> ***$17,638,000*** on a net basis (or $11,974,000 on a gross basis), and was overstated during the
> second quarter of 2014 by an estimated ***$10,869,000*** on a gross basis; and

> (2) the Company's net loss attributable to common stockholders was understated during the
> second quarter of 2014 by an estimated ***$9,242,000***.

In addition, the Company's Audit Committee had concluded that the first quarter error "was

*identified but intentionally not corrected*," and the second quarter errors were "***intentionally made***."

As a result, the Company was "reevaluating its internal control over financial reporting and its

disclosure controls and procedures."

323.     The Form 8-K stated, in pertinent part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related
Audit Report or Completed Interim Review**.

. . . *On October 24, 2014, the Audit Committee* of the Board of Directors (the "Audit
Committee") *of [ARCP]* . . . *concluded that the previously issued audited
consolidated financial statements and other financial information contained in the
Company's Annual Report on Form 10-K for the fiscal year ended December 31,
2013, the previously issued unaudited financial statements and other financial
information contained in the Company's Quarterly Reports on Form 10-Q for the
fiscal periods ended March 31, 2014 and June 30, 2014, and the Company's
earnings releases and other financial communications for these periods
(collectively, the "Prior Financial Information") should no longer be relied upon*.

The Audit Committee based its conclusion on the preliminary findings of its
investigation into ***concerns regarding accounting practices and other matters*** that
first were reported to the Audit Committee on September 7, 2014. The Audit
Committee promptly initiated an investigation, which is being conducted with the
assistance of independent counsel and forensic experts.

- 131 -

The investigation conducted to date has not uncovered any errors in the consolidated financial statements (prepared in accordance with U.S. GAAP) for the three months ended March 31, 2014. However, *based on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO")*, a non-U.S. GAAP financial measure, *for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period. The Audit Committee believes that [1] this error was identified but intentionally not corrected, and [2] other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014*.

*     *     *

*Based on the preliminary findings of the investigation, the Company has identified the potential adjustments* set forth in Exhibit 99.1 to this Report *[1] to the Company's reported net loss in accordance with U.S. GAAP for the three and six months ended June 30, 2014 and [2] to reported AFFO . . . for the three months ended March 31, 2014 and the three and six months ended June 30, 2014*. Note that, in calculating AFFO for the first quarter of 2014, the Company presented activity from non-controlling interests on a net basis, while in the second quarter of 2014, as permitted, the Company presented its activity from non-controlling interests on a gross basis (which it will continue to do in calculating AFFO in future periods). The weighted average number of shares used in calculating AFFO differs depending on whether the net or gross method is used (but does not change for purposes of calculating net loss per share in accordance with U.S. GAAP). *The investigation is ongoing and there can be no assurance that the potential adjustments* set forth in the table below *will not change based upon the final results of the investigation, and any such change could be material*.

The Company will work with the Audit Committee and the Audit Committee's independent advisors to determine the adjustments required to be made to the Prior Financial Information as expeditiously as possible. *Upon the completion of this process, which could identify further adjustments in addition to those discussed above, the Company will restate the Prior Financial Information and amend its prior periodic filings to the extent required [and update its earnings guidance at that time]*.[25]   The Company will file its Quarterly Report on Form 10-Q for the quarter ended September 30, 2014 after the amended filings have been made.

In light of the preliminary findings of the Audit Committee's investigation, *the Company is reevaluating its internal control over financial reporting and its disclosure controls and procedures. The Company intends to make the necessary*

---

[25]   Bracketed language is contained in the Company's October 29, 2014 release.

*changes to its control environment to remediate all control deficiencies that are identified as a result of the ongoing investigation and the restatement process.*

324.   The Form 8-K announced the abrupt resignations of the Company's CFO, defendant Block, as well as  defendant McAlister, the Company's CAO.

325.   The release and Form 8-K contained identical tables setting forth "Potential Adjustments" to the Company's: (1) previously reported AFFO for the first and second quarters of 2014; and (2) previously reported net loss attributable to common stockholders (a GAAP measure) for the 2Q14.   According to those tables, AFFO was overstated during 1Q14 by an estimated ***$11,974,000*** on a gross basis, and during 2Q14 by an estimated ***$10,869,000*** on a gross basis.[26]  In addition, the Company's 2Q14 overstatement of AFFO included an understatement of the Company's net loss attributable to common stockholders of an estimated ***$9,242,000***.

326.   Later that day, defendants held a conference call with analysts and investors, during which Kay admitted that the Company had inappropriately accounted for various accruals and expenses, which affected, among other things, the Company's reported GAAP earnings per share ("EPS").  Kay explained that "various accruals and expenses . . . should[] [have] been accrued in the second quarter that ended up resulting in an accrual in the third quarter instead. . . .  That does impact our GAAP statements.  Accruals are an expense item.  They affect both AFFO as well as EPS."

327.   In response to these announcements, ARCP common stock traded as low as $7.85 per share on October 29, 2014, a decline of more than 36% from the prior day's closing price of $12.38 per share, before closing at $10 per share, a decline of more than 19%, on 231 million shares traded, or more than 50 times the average daily trading volume during the Class Period.

---

[26]   These estimates were low.  The amended SEC filings revealed that on a gross basis, 1Q14 AFFO was overstated by $33,008,000, and 2Q14 AFFO was overstated by $19,344,000.

328.   The price of the Company's common stock continued to decline as the market absorbed the import of ARCP's October 29, 2014 announcements and analysts issued reports downgrading and lowering their estimates for the Company, closing at $9.42 per share on October 30, 2014, and ultimately tumbling to a closing price of $7.85 per share on November 3, 2014.

329.   ARCP debt securities likewise experienced a substantial decline in price as a result of the corrective disclosures announced on October 29, 2014.  As reflected in the following table, debt prices experienced a one-day decline of between 1.8% and 7.1%:

|  | 2.00%<br>due 2/6/17 | 3.00%<br>due 2/6/19 | 4.60%<br>due 2/6/24 | 3.00%<br>due 8/1/18 | 3.75%<br>due 12/15/20 |
|---|---|---|---|---|---|
| 10/28/2014 | $1,004.70 | $1,007.20 | $1,038.70 | $995.00 | $1,000.60 |
| 10/29/2014 | $986.90 | $977.00 | $965.20 | $942.50 | $957.50 |
| $ Change | -$17.80 | -$30.20 | -$73.50 | -$52.50 | -$43.10 |
| % Change | -1.8% | -3.0% | -7.1% | -5.3% | -4.3% |

330.   ARCP Series F Preferred stock also experienced a substantial decline in price as a result of the corrective disclosures announced on October 29, 2014.  On October 28, 2014, the closing price of ARCP Series F Preferred stock was $23.53; on October 29, 2014, the price of ARCP Series F Preferred stock declined to $22.12 on usually heavy trading volume.  As the news of ARCP's corrective disclosures penetrated the market, the price of ARCP Series F Preferred stock continued to decline.  On November 3, 2014, the closing price of ARCP Series F Preferred stock was $20.91 per share.

331.   Analysts reacted negatively to the Company's October 29, 2014 disclosures.  For example, Wells Fargo Securities noted, "we believe this morning's announcement will be a significant setback for the company in terms of earning or maintaining investor trust, credibility, and allaying investor skepticism."

- 134 -

332.   Credit rating agencies likewise reacted negatively.  On October 29 and October 30, 2014, S&P and Moody's, respectively, placed the corporate debt ratings of ARCP under review for possible downgrade as the markets digested the revelations about ARCP.

333.   On October 29, 2014, *The Wall Street Journal* reported that the SEC "intends to launch an inquiry into the accounting irregularities" at ARCP.  According to the October 29, 2014 *Wall Street Journal* article:

> The incident might make it harder for [ARCP], which manages nearly $30 billion in real estate, . . . to raise capital for purchasing properties, analysts said.
>
> *          *          *
>
> Others said the errors could directly undermine [ARCP's] growth strategy, which has relied on tapping the debt and equity markets for capital to pay for acquisitions.
>
> The company's "credibility is likely impugned for some period of time," wrote J.P. Morgan analyst Anthony Paolone, adding that "capital costs will be higher in the near term . . . thus making growth more difficult."
>
> Investors also are worried the timing of the accounting revelations could imperil a deal that [ARCP] announced earlier this month, according to a person familiar with the matter.
>
> On Oct. 1, the company said that it would sell its private capital-management business, Cole Capital, which raises money for nontraded REITs, for $700 million to RCS Capital Corp., another company chaired by Mr. Schorsch.

334.   On October 31, 2014, *Reuters* reported that the FBI and the United States Attorney's Office for the Southern District of New York had "opened a criminal probe of [ARCP] . . . in the wake of the . . . accounting errors."

335.   On November 3, 2014, Wells Fargo suspended equity research coverage on ARCP, citing news reports "that the FBI and the U.S. attorneys' office have both opened a criminal probe into ARCP."  Ladenburg also suspended coverage.

336.   Although the Company had represented that it did not expect its revelations of accounting improprieties "to impact any previously announced transactions, including the sale of

- 135 -

Cole Capital," on November 3, 2014, ARCP announced that RCAP had notified the Company "[i]n the middle of the night" that it was terminating its $700 million agreement to purchase Cole Capital from ARCP.  RCAP cited the "recent disclosures by [ARCP] . . . on October 29, 2014, and the matters arising with respect to such disclosures" – notwithstanding the fact that Schorsch held executive-level positions at both RCAP and ARCP.

337.    On November 6, 2014, Oppenheimer released a research report summarizing a conversation with Kay and Michael Sodo in which they indicated that they "expect[ed] to release revised result for all three quarters in 2014 and full year 2013 together."

338.    The Company's ability to finance the acquisitions so critical to its business strategy was hindered by its fraudulent financial reporting and its inability to file accurate financial statements.  Thus, on November 14, 2014, ARCP announced that it "had received . . . consent . . . from its lenders on its unsecured credit facility for an extension" of time to file "its third quarter 2014 financial statements . . .  by January 5, 2015."  As a condition of the extension, however, the Company's lenders required it "to permanently reduce the maximum amount of indebtedness" under the unsecured credit facility "from $4.65 billion to $4.0 billion," and to "temporarily" reduce that amount to $3.6 billion until the Company filed its amended financial statements with the SEC – which left ARCP with only $400 million of remaining borrowing capacity.  Subsequently, on December 23, 2014, ARCP was forced to further "permanently reduce the maximum amount of indebtedness under its credit facility to $3.6 billion," in exchange for an additional extension of time from its unsecured credit facility lenders to file its 3Q 2014 and amended financial statements.

339.    On November 18, 2014, ARCP announced that the Company had received a notice from the NASDAQ stating that it was "not in compliance with NASDAQ Listing Rule 5250(c)(1)

- 136 -

that requires timely filing of reports with the [SEC]," and had until January 11, 2015 to submit a plan to regain compliance.

340.    Then, on December 15, 2014, ARCP filed a Form 8-K with the SEC announcing that Schorsch had "resigned as Executive Chairman and a director of [ARCP]" and had "also resigned from all other employment and board positions that he held at the Company and its subsidiaries and certain Company-related entities."  According to a release issued that day, ARCP was "unwinding all of its relationships with entities in which Mr. Schorsch maintains an executive or director-level role or is a significant stockholder."  The December 15, 2015 Form 8-K also announced the resignations of Kay, the Company's CEO and a member of the Board of Directors, and Beeson, the Company's President and COO.  According to a J.P. Morgan research report dated December 18, 2014, "[w]e were surprised (and so was the market) by the resignation of David Kay (former CEO) this week since, up until recently Mr. Kay stated that he was there for the long haul."

341.    The following day, S&P downgraded ARCP's credit rating to junk status and cautioned that further downgrades were possible in the near-term.  Moody's likewise downgraded the Company's credit rating below investment grade, with a "negative outlook."

342.    As a result of defendants' fraud and other violations of law, ARCP's reputation and credibility among investors and business associates have been devastated.  ARCP purchases real estate with money raised by selling non-traded, illiquid REITS, primarily to small investors through a network of independent broker-dealers and financial advisors.  Indeed, nearly 40,000 independent broker-dealers immediately suspended sales of ARCP, Cole Inc. and RCAP-sponsored products, and three giants of the clearing and custody industry – Fidelity, Pershing and Schwab –followed suit.  As Paul Adornato ("Adornato"), a REIT analyst with BMO Capital markets stated: "It would be

difficult if not impossible for any broker to sell shares . . . until the investigation into ARCP['s] . . . financial control is satisfactorily completed."

343.    The Company's credibility has been so severely harmed that it was compelled to conduct "a review of its portfolio" and assure the market in a December 24, 2014 release that it had re-confirmed ownership status of its own portfolio and the status of property leases.  In the same release, ARCP delivered yet another blow to investors: it would "not pay a dividend on its common stock until its financial statements have been delivered," and "intend[ed] to review its dividend policy" thereafter.

344.    On March 2, 2015, ARCP filed a Form 8-K with the SEC disclosing that its Audit Committee confirmed the necessity of restating its financial statements for FY12 and FY13, as well as 1Q13, 2Q13, 3Q13, 1Q14 and 2Q14, because of the Company's GAAP violations and financial reporting improprieties.  ARCP also confirmed that it had overstated its AFFO for each of the periods above, in addition to FY11.  Additionally, ARCP admitted the impropriety of certain payments to Schorsch-related entities that "were not sufficiently documented or otherwise warrant scrutiny"; the payment of equity awards to Schorsch and Block "more favorable than the Compensation Committee . . . had authorized"; and "material weaknesses in the Company's internal controls over financial reporting and its disclosure controls and procedures."  In connection with ARCP's announcement, on March 2, 2015, the Company filed an amended 2013 Form 10-K, an amended 1Q14 Form 10-Q and an amended 2Q14 Form 10-Q with the SEC.  On March 30, 2015, ARCP filed its 2014 Form 10-K outlining the pervasive material weaknesses in ARCP's internal financial controls, and disclosing the hundreds of millions of dollars in fees and commissions paid to ARC Advisors and its affiliates during the Class Period.

## McALISTER FILES HER VERIFIED COMPLAINT
## CONFIRMING DEFENDANTS' FRAUDULENT REPORTING

345.    On December 18, 2014, the reason for Schorsch, Kay and Beeson's December 15, 2014 dramatic departures became clear.  Former CAO McAlister filed a Verified Complaint in the Supreme Court of the State of New York, County of New York, asserting claims of defamation *per se* against ARCP, Schorsch and Kay.  In an action captioned *Lisa Pavelka McAlister v. American Realty Capital Properties, Inc., et al.*, Index No. 162499/2014 (N.Y. Sup. Ct. N.Y. Cnty.), McAlister disputed the account of events given by the Company and Kay on October 29, 2014, including their representation that she had "resigned."

346.    Specifically, McAlister alleged that, beginning in or about ***February 2014***, she "***repeatedly informed Mr. Schorsch, Mr. Kay and senior management*** [that] she had discovered that the Company had, in the fourth quarter of 2013 ('2013 Q4'), and possibly in earlier quarters, suddenly and without any apparent justification or basis changed the method by which it had historically reported its adjusted funds from operations ('AFFO') relative to previous financial quarters."  Verified Complaint, ¶1.

347.    In an explanation facially similar to the one given by Kay during the October 29, 2014 investor and analyst call, McAlister – who described AFFO as "arguably the single most critical metric" for publicly traded REITs (*id.*, ¶33) – alleged:

> Specifically, the Company ceased pro-rating the added-back-to-AFFO non-recurring transaction and deferred financing costs on its 10K and 10Q reports, opting instead to add to and increase the Company's AFFO by the entirety of the edit-back costs, including the portion thereof that should have been attributed to non-controlling interests in the operating partnership, ARC Properties Operating Partnership LP, instead of adding to AFFO only the Company's *pro rata* share of the added-back costs.

*Id.*, ¶31.

348.   According to McAlister's verified petition, she made senior management, ***including Schorsch and Kay***, aware of the problem in or about the previous ***February***.

349.   Moreover, McAlister alleged that, upon apprising Kay of the problem she had identified, he directed her and Block "not to change or correct the fraudulent reports, ***in an apparent effort to avoid public disclosure of the Company's faltering financial performance***." *Id.*, ¶37.

350.   She also alleged that, during a conference call with her and Block on or around July 28, 2014:

> ***Mr. Schorsch directed Mr. Block*** to reallocate the funds used to calculate the AFFO and shift the numbers in the 2014 Q2 report ***in an effort to conceal the previous improper reporting***, by having Mr. Block prepare a schedule changing the add-back amortization and write off of deferred financing costs.

*Id.*, ¶39.

351.   In addition, she alleged that Schorsch and Kay directed the Company to "change[] the beginning point for its AFFO calculation from 'net loss attributable to stockholders (in accordance with U.S. GAAP)' to 'net loss (in accordance with U.S. GAAP).'" *Id.*, ¶40.  While this change was not improper in and of itself, she alleged, "it made it more difficult for stockholders to see the fraudulent change in the add-backs of non-recurring transaction and deferred financing costs." *Id.*

352.   Although McAlister "repeatedly expressed her concerns regarding Mr. Schorsch's instruction to shift and reallocate the funds in the 2014 Q2 report, . . . her objections went ignored." *Id.*, ¶42.  Therefore, after she was appointed to be the "'principal accountant' on the 2014 Q2 report," *id.*, ¶43, she "emailed Jessica Estrada, a Manager at Grant Thornton, the Company's auditors, and called attention to the manipulative accounting practice reflected in the Q2 report." *Id.*, ¶44.  In response to her email, according to McAlister: "Ms. Estrada and Richard LeFleur, a Partner at Grant Thornton, told Ms. McAlister that she could sign and file the 2004 Q2 report 'as is.'" *Id.*, ¶45.  On Grant Thornton's instruction, McAlister filed the 2014 Q2 report. *Id.*, ¶46.

- 140 -

353.    Finally, McAlister alleged that the issues she had raised concerning the Company's accounting resulted in the Audit Committee's internal investigation, *id.*, ¶48, that she was later "terminated" on or about October 28, 2014, *id.*, ¶51, in "retaliation for her blowing the whistle on ARCP's unlawful accounting and financial reporting practices," and in order to make McAlister the scapegoat for defendants' fraudulent conduct. *Id.*, ¶52. After learning about McAlister's complaint, which "suggest[ed] a more broad knowledge of the intentional misstatement," J.P. Morgan surmised that the resignations could be because the lawsuit could "impugn Mr. Kay's credibility," and signify that the Audit Committee's "investigation . . . [had] uncovered evidence that Mr. Kay knew more than previously thought."

## GRANT THORNTON'S FALSE AND MISLEADING AUDIT OPINIONS

354.    Grant Thornton, a firm of certified public accountants, has provided the Company with independent auditing and various accounting-related services since March 21, 2011.

355.    As a result of Grant Thornton's history with Schorsch-controlled entities, including ARCP and those detailed in ¶85, above, and the scope of services it provided to the Company, Grant Thornton personnel were intimately familiar with ARCP's business, including its related-party transactions.

356.    Grant Thornton acted as ARCP's auditor and consented to the inclusion of its unqualified report on ARCP's false financial statements for 2012 in the Registration Statements and Prospectuses in connection with the debt offerings in July 2013, December 2013 and September 2014, the equity offering in May 2014, the Cole Merger and the ARCT IV Merger as described in ¶389. Grant Thornton also consented to the inclusion of its unqualified report on ARCP's false financial statements for 2013 in the Registration Statements and Prospectuses in connection with the equity offering in May 2014 and debt registration in September 2014. Grant Thornton further

- 141 -

reviewed ARCP's financial results included in its 1Q14 and 2Q14 Forms 10-Q, which were incorporated into the Prospectuses for the May 2014 (1Q14) equity and September 2014 (1Q14 and 2Q14) debt offerings.  Grant Thornton also consented to be referred to in the Registration Statements as "experts in accounting and auditing" whose audit reports were being relied upon.

357.    Grant Thornton's audit reports for 2012 and 2013 were identical in all material respects and stated, in pertinent part:

Report of Independent Registered Public Accounting Firm

Board of Directors and Stockholders
American Realty Capital Properties, Inc.

We have audited the accompanying consolidated balance sheets of American Realty Capital Properties, Inc. (a Maryland corporation) and subsidiaries (the "Company") as of December 31, 2013 and 2012, and the related consolidated statements of operations and comprehensive loss, changes in equity, and cash flows for each of the three years in the period ended December 31, 2013.  Our audits of the basic consolidated financial statements included the financial statement schedules listed in the index.  These financial statements and financial statement schedules are the responsibility of the Company's management.  Our responsibility is to express an opinion on these financial statements and financial statement schedules based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States).  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement.  An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements.  An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation.  We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of American Realty Capital Properties, Inc. and subsidiaries as of December 31, 2013 and 2012, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2013 in conformity with accounting principles generally accepted in the United States of America.  Also in our opinion, the related financial statement schedules, when considered in relation to the basic consolidated financial statements taken as a whole, presents fairly, in all material respects, the information set forth therein.

- 142 -

> We also have audited, in accordance with the standards of the Public Company
> Accounting Oversight Board (United States), the Company's internal control over
> financial reporting as of December 31, 2013, based on criteria established in the 1992
> *Internal Control-Integrated Framework* issued by the Committee of Sponsoring
> Organizations of the Treadway Commission (COSO), and our report dated February
> 27, 2014 expressed an unqualified opinion.

358.    The statements made in the audit reports were objectively false because: (a) as detailed above, ARCP's 2012 and 2013 financial statements violated GAAP; (b) material weaknesses existed in ARCP's internal control over financial reporting; and (c) Grant Thornton's audits of the FY12 and FY13 financial statements were not conducted in accordance with the standards of the PCAOB.

359.    Auditing standards have been established to ensure that external auditors fulfill their obligations when auditing and reviewing financial statements and other information contained in SEC filings.  These standards include those originally established by the American Institute of Certified Public Accountants ("AICPA"), which include, *inter alia*, ten basic standards that establish the objectives of a financial statement audit and provide guidance for the quality of audit procedures to be performed, as well as interpretations of these standards.

360.    As a result of SOX, the PCAOB was created to oversee the audits of public companies, and has now adopted, amended, and expanded upon the auditing standards and interpretations previously issued by the AICPA (referred to by the PCAOB as "interim standards"), and has also promulgated additional auditing standards (referred to herein as "AS___").

361.    The PCAOB's AS No. 5, *An Audit of Internal Control Over Financial Reporting That Is Integrated with An Audit of Financial Statements*, identifies the following as indicators of material weakness(es) in a company's system of internal control: (1) the identification of fraud, whether or not material, on the part of senior management; and (2) a restatement of previously issued financial statements to reflect the correction of a material misstatement.

- 143 -

362.    These indicators, which were admittedly present during the Class Period, demonstrate that material weaknesses existed in ARCP's system of internal control throughout the Class Period.

363.    In addition, Grant Thornton's knowledge of ARCP's transactions with its affiliates and related parties created various obligations under the auditing standards.  For example, AU §334, *Related Parties*, notes that the auditor "should place emphasis on testing material transactions with parties he knows are related to the reporting entity" and "apply the procedures [the auditor] considers necessary to obtain satisfaction concerning the purpose, nature, and extent of these transactions and their effect on the financial statements."

364.    Further, AS No. 15, *Audit Evidence*, provides that an auditor has a reasonable basis for issuing an audit opinion when the auditor has planned and performed audit procedures in a manner that enables the auditor to obtain "sufficient appropriate audit evidence." AS No. 15 defines sufficiency as "the measure of the quantity of audit evidence" and appropriateness as "the measure of the quality of audit evidence."

365.    In addition, AS No. 14, *Evaluating Audit Results*, provides that when evaluating whether the financial statements as a whole are free of material misstatement, the auditor should evaluate the qualitative aspects of the company's accounting practices, including potential bias in management's judgments about the amounts and disclosures in the financial statements.

366.    Had Grant Thornton performed its audit in accordance with the standards of the PCAOB, it would have learned, if it did not already know, that the 2012 and 2013 financial statements were not presented in conformity with GAAP and could not be relied upon.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET DOCTRINE

367.    At all relevant times, the markets for ARCP securities were efficient for the following reasons, among others:

(a)     ARCP stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     as a regulated issuer, ARCP filed periodic public reports with the SEC and the NASDAQ;

(c)     ARCP regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     ARCP was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

368.     As a result of the foregoing, the markets for ARCP securities promptly digested current information regarding ARCP from all publicly available sources and reflected such information in the prices of ARCP's securities.  Under these circumstances, all purchasers of ARCP securities during the Class Period suffered similar injury through their purchase of ARCP securities at artificially inflated prices and a presumption of reliance applies.

369.     A class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the Class's claims are grounded on defendants' material omissions.  Because this action involves defendants' failure to disclose material adverse information regarding ARCP's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material

- 145 -

in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

### Additional Averments Regarding the February Notes Offering

370.    As alleged here, in connection with the offering and sale of the Senior Notes pursuant to the February 6, 2014 February Notes Offering, defendants employed devices, schemes and artifices to defraud, and engaged in acts, practices and a course of business, which would and did operate as a fraud and deceit upon certain plaintiffs and other members of the Class.  This scheme included the offering and sale of the Senior Notes based on materially false and misleading information, and without disclosing material facts.

371.    Named plaintiffs and members of the Class need not prove individualized reliance, or may prove reliance through common evidence, when, as here, uniform written representations form the basis of their claims.  Because named plaintiffs can show that uniform and material written representations were communicated to the Class as a whole, a presumption of class-wide reliance is proper.

372.    Defendants' scheme included the dissemination of written offering materials that contained material misrepresentations and omissions.  These misrepresentations and omissions were made to all potential investors, and included: (a) ARCP's false 2012, 2013 and 2014 financial results; (b) misrepresentations about the effectiveness of ARCP's internal controls over financial reporting; and (c) overstated 2014 AFFO guidance.  The alleged misrepresentations and omissions here were so fundamental to the value of the notes that it is impossible to imagine any market existing for the Senior Notes, or any reasonable investor purchasing them, if the offering materials had revealed their true nature.

- 146 -

373.     As detailed herein, defendants engaged in a scheme of fraudulent conduct involving uniform misrepresentations and omissions made to plaintiffs and the other members of the Class. And, since the material misrepresentations and omissions all were part of a uniform scheme perpetrated through uniform Offering Materials, plaintiffs and the other members of the Class are entitled to a presumption of reliance.

## LOSS CAUSATION/ECONOMIC LOSS

374.     During the Class Period, as detailed herein, defendants engaged in a scheme and wrongful course of business that artificially inflated the price of ARCP securities by making false and misleading statements, and omitting material information, about ARCP's operations and financial results.  As defendants' false and misleading statements and omissions became apparent to the market, beginning on October 29, 2014, the price of ARCP securities fell, as the prior artificial inflation came out.  As a result of their acquisitions of ARCP securities during the Class Period, plaintiffs and other members of the Class suffered economic loss.

375.     In direct response to the October 29, 2014 disclosure, ARCP common stock plummeted, trading as low as $7.85 per share on October 29, 2014, on an extremely heavy trading volume.  Before the market closed on October 29, 2014, ARCP held a conference call, which over 1,000 analysts and investors listened to telephonically.  During the call, Kay characterized the fraud as "a one-quarter adjustment," implying that culpability was limited to two Company executives, and emphasizing that the Company's "controls and processes [had] continued to improve" over the last ten months.  Following Kay's reassurances, the price of ARCP common stock rebounded slightly, closing at $10 per share on October 29, 2014, a decline of more than 19% from the prior day's closing price, with over 230 million shares traded, 50 times the average daily trading volume during the Class Period.

376. The price of the Company's common stock continued to decline on October 30, 2014, closing at $9.42 per share as the market absorbed the import of the October 29, 2014 announcements and analysts issued reports downgrading and lowering their estimates for the Company. ARCP's common stock price ultimately tumbled to a closing price of $7.85 per share on November 3, 2014, after investors learned that RCAP had terminated its $700 million agreement to purchase Cole Capital from ARCP, citing the October 29, 2014 disclosures as the reason for the termination of the agreement.

377. As depicted in the below chart, the price of ARCP's debt securities also declined as a result of the Company's October 29, 2014 corrective disclosure, and continued to decline through November 3, 2014, as news of the corrective disclosure penetrated the market.

|  | 2.00%<br>due 2/6/17 | 3.00%<br>due 2/6/19 | 4.60%<br>due 2/6/24 | 3.00%<br>due 8/1/18 | 3.75%<br>due 12/15/20 |
|---|---|---|---|---|---|
| 10/28/2014 | $1,004.65 | $1,007.24 | $1,038.72 | $995.00 | $1,000.55 |
| 10/29/2014 | $986.86 | $976.97 | $965.18 | $942.50 | $957.50 |
| $ Change | -$17.79 | -$30.27 | -$73.54 | -$52.50 | -$43.05 |
| % Change | -1.8% | -3.0% | -7.1% | -5.3% | -4.3% |

378. ARCP Series F Preferred stock also experienced a substantial decline in price as a result of the corrective disclosures announced on October 29, 2014. On October 28, 2014, the closing price of ARCP Series F Preferred stock was $23.53; on October 29, 2014, the price of ARCP Series F Preferred stock declined to $22.12 on usually heavy trading volume. As the news of ARCP's corrective disclosures penetrated the market, the price of ARCP Series F Preferred stock continued to decline. On November 3, 2014, the closing price of ARCP Series F Preferred stock was $20.91 per share.

379. The declines in the price of ARCP securities pled herein were a direct result of the nature, extent and impact of defendants' prior false and misleading statements and omissions being

revealed to investors and the market.  The timing and magnitude of the price declines of ARCP securities negates any inference that the loss suffered by plaintiffs and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific factors unrelated to defendants' wrongful conduct.

380.    The following charts demonstrate the clear divergence of ARCP's common stock prices from its peer index, and the divergence of the prices of ARCP debt securities from the FINRA-BLP Active Investment Grade U.S. Corporate Bond Index ("NBBIPR"), as the truth became known to the market:





381.    The economic loss suffered by plaintiffs and other members of the Class was a direct result of defendants' wrongful conduct, which inflated the prices of ARCP securities and resulted in the subsequent decline in the value of those securities when defendants' prior false and misleading statements and omissions were revealed.

## CLASS ACTION ALLEGATIONS

382.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class.  The Class is defined as:

> All persons or entities who purchased or otherwise acquired ARCP securities, including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock, between September 7, 2011 and October 29, 2014 (the "Class" and the "Class Period"), and  who were damaged thereby.

- 150 -

Excluded from the Class are defendants herein, members of the immediate families of each of the defendants, any person, firm, trust, corporation, officer, director, or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

383.   The members of the Class are so numerous that joinder of all members is impracticable.  ARCP securities were extensively traded during the Class Period.  As of March 27, 2015, ARCP had more than 905 million shares of common stock issued and outstanding that were actively traded on the NASDAQ and other exchanges, over 42 million shares of preferred stock, and more than $3.5 billion in face value of outstanding debt.  The precise number of Class members is unknown to plaintiffs at this time but is at least in the thousands.  In addition, the names and addresses of the Class members can be ascertained from the books and records of ARCP or its transfer agent.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

384.   Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

385.   Plaintiffs' claims are typical of the claims of the other members of the Class because plaintiffs' and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants.  Plaintiffs do not have any interests antagonistic to, or in conflict with, the Class.

- 151 -

386.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

387.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants during the Class Period misrepresented and/or omitted material facts about ARCP and its business;

(c)     whether the price of ARCP securities was artificially inflated during the Class Period; and

(d)     the extent of injuries sustained by members of the Class and the appropriate measure of damages.

**FIRST CLAIM FOR RELIEF**

**For Violation of §11 of the 1933 Act**

388.     Plaintiffs incorporate ¶¶17-30, 32-34, 42-62, 85,87-92, 114-175, 180-196, 247-248, 262-275, 297-300, 312-337, 354-366 and 382-387 as though fully set forth herein.  For purposes of this Claim, plaintiffs exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Claim is based solely on claims of strict liability and/or negligence.

- 152 -

389.   This Claim is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against

defendants as detailed below:

| Registration Statement For | Date | Individual Defendants/ Registration Statement Signatories | Defendant Underwriters | Defendant Auditor | Named Plaintiff |
|---|---|---|---|---|---|
| $300 million 3% Convertible Senior Notes due 2018 | 7/2013 | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | J.P. Morgan, Citigroup, Barclays, BMO Capital, KeyBanc, JMP Securities, Ladenburg, RCS Securities | Grant Thornton | Union NYC Funds |
| $287.5 million 3% Convertible Senior Notes due 2018 | 12/2013 | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One, JMP Securities | Grant Thornton | Union |
| $402.5 million 3.75% Convertible Senior Notes due 2020 | 12/2013 | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One, JMP Securities | Grant Thornton | Union |
| 79.1 million shares of ARCP stock issued in ARCT IV Merger | 1/3/2014 | Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson | | Grant Thornton | Paul Matten Mitchell Ellis Bonnie Ellis |
| 520.8 million shares of ARCP stock issued in Cole Merger | 2/2014 | Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Kay, Budko, Block, Beeson | | Grant Thornton | TIAA-CREF National Pension Fund Corsair NYC Funds KBC Simon Abadi |
| 138 million shares of ARCP stock issued in May 2014 Offering | 5/2014 | Schorsch, Weil, Stanley, Kahane, Andruskevich, Michelson, Rendell, Bowman, Sealy, Block, Jones | Merrill Lynch, Citigroup, Barclays, JP Morgan, Capital One, Credit Suisse, Deutsche Bank, Wells Fargo, Baird, Ladenburg, BMO Capital, JMP Securities, Janney, Mizuho, PNC Capital, Piper Jaffray, RBS | Grant Thornton | National Pension Fund Tampa Corsair NYC Funds Simon Abadi |
| $2.55 billion of Senior Notes | 9/2014 | Schorsch, Stanley, Frank, Andruskevich, Michelson, Rendell, Bowman, Block, McAlister | | Grant Thornton | National Pension Fund NYC Funds |

390.   The Registration Statements and Prospectuses issued in connection with the offerings

detailed above were false and misleading in that they omitted to state material facts required to be

- 153 -

stated therein, contained untrue statements of material facts, and/or omitted to state facts necessary to make the statements made therein not misleading.

**Registrants**

391.    ARCP is the registrant for the each of the offerings listed in ¶389 above.  As the issuer of the all the securities except for the securities issued in the September 12, 2014 offering listed in ¶389 above, ARCP is strictly liable to plaintiffs and the Class for the misstatements and omissions in the applicable Registration Statements and Prospectuses.

392.    In addition to ARCP, ARC Properties is an additional registrant of the securities registered in the September 12, 2014 Registration Statement listed above.  As the issuer of the securities issued in the September 12, 2014 Registration Statement listed above, ARC Properties is strictly liable to plaintiffs and the Class for the misstatements and omissions in the Registration Statement and Prospectus related to that offering.

**Individual Defendants**

393.    The individual defendants named in ¶389 above were responsible for the contents and dissemination of the Registration Statements and Prospectuses.  Each of the individual defendants participated in the preparation and dissemination, and signed and/or authorized the signing of the Registration Statements and Prospectuses, as described in ¶389 above.  As a signatory to one or more of the Registration Statements and Prospectuses as described in ¶389, each is liable to plaintiffs and members of the Class for the misstatements and omissions contained within those Registration Statements and Prospectuses pursuant to §11 of the 1933 Act.

394.    Each of the individual defendants failed to conduct a reasonable investigation of the statements contained in the offering materials and documents incorporated therein by reference and did not possess reasonable grounds for believing that the statements therein were true and not

- 154 -

materially misstated.  Had these defendants conducted a reasonable investigation, they would have learned that the offering materials contained material misstatements and omissions about ARCP's financial statements, reported AFFO and the effectiveness of the Company's internal controls.

395.    ARCP's directors were responsible for the integrity of the due diligence process in their capacity as the ultimate governing body of ARCP and ARC and were at a minimum knowledgeable about accounting and internal control issues given their collective industry experience, yet failed to reasonably investigate the accuracy of ARCP's financial statements and reported AFFO and the effectiveness of the Company's internal controls, notwithstanding the presence of red flags.

**Grant Thornton**

396.    Grant Thornton consented to the inclusion of its report on ARCP's FY12 and/or FY13 financial statements in the Registration Statements and Prospectuses in connection with the offerings described in ¶389 above.  As an audit firm which issued false and misleading audit opinions incorporated into the Registration Statements and Prospectuses described in ¶389, Grant Thornton is liable to plaintiffs and members of the Class for the misstatements and omissions contained therein pursuant to §11 of the 1933 Act.

397.    The 1933 Act required Grant Thornton to extend its procedures with respect to subsequent events from the date of its audit reports up to the effective date of the Registration Statements and Prospectuses, or as close thereto, as is reasonable and practicable in the circumstances.  Among the procedures Grant Thornton should have undertaken was to:

(i) read the entire prospectus and other pertinent portion of the registration statement;

(ii) inquire of and obtain written representations from officers and other executives responsible for financial and accounting matters about whether any events have occurred other than those reflected in the registration statement that in their opinion have a material

- 155 -

effect on the audited financial statements included therein or that should be disclosed in order to keep those statements from being misleading;

(iii) read the latest available interim financial statements to make any comparisons considered appropriate and inquire as to whether interim statements were prepared on the same basis as that used for the statements under audit;

(iv) inquire whether there have been any changes in the company's related parties or any significant new related party transactions; and

(v) make such additional inquiries or perform such procedures as he considers necessary and appropriate to dispose of questions that arise in carrying out the foregoing procedures, inquiries and discussions. *See* AU 711, AU 560.12.

**Underwriters**

398.    The underwriter defendants named in this claim underwrote the ARCP securities sold in certain of the offerings, as described in ¶389 above.  As underwriters of securities sold pursuant to the false and misleading Registration Statements and Prospectuses, the underwriter defendants are liable to plaintiffs and members of the Class for the misstatements and omissions contained therein pursuant to §11 of the 1933 Act.

399.    Due diligence is a critical component of the issuing and underwriting process. Underwriters are obligated to play a devil's advocate role and conduct a verification process.  The underwriter defendants did not conduct a reasonable investigation and did not possess reasonable grounds for the belief that the statements contained in and incorporated by reference in the offering materials were not false and/or misleading or did not omit a fact necessary to make the statements made therein not false or misleading.  The underwriter defendants were not entitled to blindly rely on ARCP's outside auditors and were obligated to conduct their own independent and reasonable investigation into the accuracy of the Registration Statements detailed herein in ¶389, which included representations about the Company's financial statements and assessments of internal controls.  Had the underwriter defendants conducted a reasonable investigation, they would have

learned that ARCP's financial statements and reported AFFO were inaccurate and that the Company's internal controls were ineffective.

400.     Each of Grant Thornton, the underwriter defendants and individual defendants owed to the Class members who acquired ARCP securities pursuant and/or traceable to those Registration Statements and Prospectuses, the duty to make a reasonable and diligent investigation of the statements contained in those Registration Statements and Prospectuses because of their expertise and/or access to an issuer's non-public information.  The defendants named herein did not conduct a reasonable investigation and did not possess reasonable grounds for believing that the statements made in the Registration Statements and Prospectuses were not false and/or misleading.  Had defendants exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

401.     Plaintiffs and members of the Class acquired the securities described in ¶389 above pursuant and/or traceable to the Registration Statements as described in ¶389.  As a direct and proximate result of the misrepresentations and/or omissions described in this claim, plaintiffs and members of the Class suffered substantial damage in connection with their acquisition of the securities described in herein.  As a result of the conduct herein alleged, each defendant named in ¶389 above violated §11 of the 1933 Act.

402.     At the time of their acquisition of the securities described in ¶389 above, plaintiffs and other members of the Class were not aware of the untrue statements and/or omissions alleged herein and could not have reasonably discovered such untruths or omissions prior to October 29, 2014.  Less than one year elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiffs filed the

Complaint.  Less than three years elapsed between the time that the securities upon which this Claim

is brought were offered to the public and the date the action was commenced.

## SECOND CLAIM FOR RELIEF

### For Violation of §12(a)(2) of the 1933 Act

403.     Plaintiffs incorporate ¶¶17-30, 32-34, 42-62, 85, 87-92, 114-175, 180-196, 247-248,

262-275, 297-300, 312-337 and 382-387 as though fully set forth herein.  For purposes of this Claim,

plaintiffs expressly exclude allegations that could be construed as alleging fraud or intentional

misconduct, as this Claim is based solely on claims of strict liability and/or negligence.

404.     This Claim is asserted by plaintiffs pursuant to §12(a)(2) of the 1933 Act, 15 U.S.C.

§77l(a)(2), on behalf of members of the Class.

405.     Plaintiffs and members of the Class purchased certain securities from defendants as

described below:

| Registration Statement For | Date | Company Defendants | Defendant Underwriters | Named Plaintiff |
|---|---|---|---|---|
| $300 million 3% Convertible Senior Notes due 2018 | 7/2013 | ARCP, Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | J.P. Morgan, Citigroup, Barclays, BMO Capital, KeyBanc, JMP Securities, Ladenburg, RCS Securities | Union NYC Funds |
| $287.5 million 3% Convertible Senior Notes due 2018 | 12/2013 | ARCP, Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One, JMP Securities | Union |
| $402.5 million 3.75% Convertible Senior Notes due 2020 | 12/2013 | ARCP, Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One, JMP Securities | Union |
| 79.1 million shares of stock issued in ARCT IV Merger | 1/2014 | ARCP, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson | | Paul Matten Mitchell Ellis Bonnie Ellis |
| 520.8 million shares of ARCP common stock issued in Cole Merger | 2/2014 | ARCP, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Kay, Budko, Block, Beeson | | TIAA-CREF National Pension Fund Corsair NYC Funds KBC Simon Abadi |

- 158 -

| Registration Statement For | Date | Company Defendants | Defendant Underwriters | Named Plaintiff |
|---|---|---|---|---|
| 138 million shares of ARCP common stock issued in May 2014 Offering | 5/2014 | ARCP, Schorsch, Weil, Stanley, Kahane, Andruskevich, Michelson, Rendell, Bowman, Sealy, Block, Jones | Merrill Lynch, Citigroup, Barclays, JP Morgan, Capital One, Credit Suisse, Deutsche Bank, Wells Fargo, Baird, Ladenburg, BMO Capital, JMP Securities, Janney, Mizuho, PNC Capital, Piper Jaffray, RBS | National Pension Fund Tampa Corsair NYC Funds Simon Abadi |
| $2.55 billion of Senior Notes | 9/2014 | ARCP, ARC Properties, Schorsch, Stanley, Frank, Andruskevich, Michelson, Rendell, Bowman, Block, McAlister | | National Pension Fund NYC Funds |

406.    The Prospectuses and the Prospectus Supplements for the offerings described in ¶405 above contained untrue statements of material fact and/or omitted material facts.  Defendants named in the paragraph above did not conduct a reasonable investigation of the statements contained in and incorporated by reference in Prospectuses and Prospectus Supplements issued for each offering described in ¶405 above and did not possess reasonable grounds for believing that the statements therein were not false or misleading.  In particular, defendants named in ¶405 did not conduct a reasonable investigation into the Company's financial statements, AFFO and internal controls as specified herein.

407.    Defendants described in ¶405 above were statutory sellers who sold and assisted in the sale of securities to plaintiffs and other members of the Class by means of the defective Prospectuses and Prospectus Supplements and they did so for personal gain, including payments directly to these individuals and/or to entities affiliated with in form of fees, commissions and other transactions.

408.    By reason of the conduct alleged herein, defendants described in ¶405 above violated §12(a)(2) of the 1933 Act.  As a direct and proximate result of such violations, plaintiffs and the other members of the Class who purchased the securities described in ¶405 above pursuant and

traceable to the Prospectuses and Prospectus Supplements and sustained substantial damages in connection therewith.

409.    Plaintiffs and the other members of the Class who hold such securities have the right to rescind and recover the consideration paid for their securities, upon tender of their securities to defendants sued herein.  Class members who have sold their securities seek damages to the extent permitted by law.

410.    At the time of their acquisition of the ARCP securities described in ¶405 above, plaintiffs and other members of the Class were not aware of the untrue statements and/or omissions alleged herein and could not have reasonably discovered such untruths or omissions prior the time they acquired the securities for which this claim is asserted.  Less than one year elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiffs filed the Complaint.  Less than three years elapsed between the time that the securities upon which this Claim is brought were offered to the public and the time the action was commenced.

## THIRD CLAIM FOR RELIEF

### For Violation of §15 of the 1933 Act

411.    Plaintiffs incorporate ¶¶34-67, 388-410 as though fully set forth herein.  For purposes of this Claim, plaintiffs expressly exclude allegations that could be construed as alleging fraud or intentional misconduct.

412.    This Claim is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against the individual defendants named below:

| Registration Statement For | Date | Individual Defendants | Named Plaintiff |
|---|---|---|---|
| $300 million 3% Convertible Senior Notes due 2018 | 7/2013 | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Union<br>NYC Funds |
| $287.5 million 3% Convertible Senior Notes due 2018 | 12/2013 | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Union |
| $402.5 million 3.75% Convertible Senior Notes due 2020 | 12/2013 | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman | Union |
| 79.1 million shares of stock issued in ARCT IV Merger | 1/2014 | Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson | Paul Matten<br>Mitchell Ellis<br>Bonnie Ellis |
| 520.8 million shares of ARCP common stock issued in Cole Merger | 2/2014 | Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Kay, Budko, Block, Beeson | TIAA-CREF<br>National Pension Fund<br>Corsair<br>NYC Funds<br>KBC<br>Simon Abadi |
| 138 million shares of ARCP common stock issued in May 2014 Offering | 5/2014 | Schorsch, Weil, Stanley, Kahane, Andruskevich, Michelson, Rendell, Bowman, Sealy, Block, Jones | National Pension Fund<br>Tampa<br>Corsair<br>NYC Funds<br>Simon Abadi |
| $2.55 billion of Senior Notes | 9/2014 | Schorsch, Stanley, Frank, Andruskevich, Michelson, Rendell, Bowman, Block, McAlister | National Pension Fund<br>NYC Funds |

413.    At various times during the Class Period, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson, Jones, Andruskevich, Kay, McAlister, Stanley, Frank and Sealy served as executive officers and/or directors of ARCP and as such, possessed and exercised control directly and indirectly over the actions of ARCP and ARC Properties, including the content of the Registration Statements and Prospectuses in connection with the offerings described in ¶412 above.

414.    At various times during the Class Period, Schorsch, Weil, Kahane, Budko and Block served as executive officers and/or directors of and exercised control over RCAP, AR Capital, ARC Advisors and/or RCS Capital and as such had the power to influence and control, and did influence

- 161 -

and control, directly or indirectly, the actions of ARCP and ARC Properties, including the content of the Registration Statements and Prospectuses in connection with the offerings described in ¶412 above.

415.    This Claim is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against defendants ARCP, ARC Properties, ARC Advisors, AR Capital, RCS Capital and RCAP, and the individual defendants named below:

**ARCP**

416.    ARCP possessed the power to control and did control the actions of ARC Properties. ARC Properties served as the vehicle through which ARCP conducted its business operations, including the means by which ARCP raised billions of dollars of capital from investors.  ARCP served as the General Partner of ARC Properties and as such controlled ARC Properties pursuant to its authority under the ARC Properties' partnership agreement.

**RCS Capital**

417.    RCS Capital possessed the power to control and did control, directly and indirectly, through AR Capital and ARC Advisors, the actions of ARCP and ARC Properties.  RCS Capital was co-founded and controlled during the Class Period by its owners Schorsch (who served as its Chairman) and Kahane.  RCS Capital shared executive officers and board members with ARCP, including Schorsch and Kahane.  RCS Capital controlled ARCP and ARC Properties through agency principles and through RCS Capital's subsidiary, AR Capital, as well as indirectly through AR Capital's own subsidiary ARC Advisors (which served as ARCP's external manager during the Class Period prior to January 8, 2014).

**AR Capital**

418.    AR Capital possessed the power to control and did control, directly and indirectly, the actions of ARCP and ARC Properties.  AR Capital was an entity owned and/or controlled by Schorsch, Kahane, Budko, Block and Weil.  AR Capital served as ARCP's sponsor in connection with the offerings detailed in ¶412 and in connection therewith transferred ownership of real estate properties for inclusion in ARCP's asset base.  AR Capital controlled ARCP through agency and via the executive officers and board members it shared with ARCP, including Schorsch, Weil, Kahane, Block and Budko.

**ARC Advisors**

419.    ARC Advisors possessed the power to control and did control, directly and/or indirectly, the actions of ARCP and ARC Properties.  ARC Advisors shared executive officers and board members with ARCP, including Schorsch, Kahane, Budko, Block and Weil.  Prior to January 8, 2014, ARC Advisors served as the external manager of ARCP and as such was entirely responsible for the "day-to-day management" of ARCP's business.  ARCP had no employees and ARCP's CEO, President and CIO were all employed by ARC Advisors.

**RCAP**

420.    RCAP possessed the power to control and did control, directly and/or indirectly, the actions of ARCP and ARC Properties through agency and through Schorsch and Kahane who together possessed more than 95% voting control of RCAP.  RCAP shared executive officers and board members with ARCP and ARC Properties, including Schorch, Kahane, Budko and Jones, who held executive and/or director positions at both RCAP and ARCP during the Class Period.

421.    Each of the entity defendants named herein exercised control directly and indirectly over the actions of ARCP and ARC Properties in connection with the violations of the 1933 Act

claims asserted herein, including the preparation and dissemination of the Registration Statements and Prospectuses in connection with the offerings described in ¶412 above.

422.    By reason of their control person status, as alleged above, each of the entity defendants and the individuals defendants named in this claim are jointly and severally liable for the underlying violations of the 1933 Act pursuant to §§11 and 12(a)(2) detailed in described above.

## FOURTH CLAIM FOR RELIEF

### For Violation of §14(a) of the 1934 Act and SEC Rule 14a-9 Promulgated Thereunder

423.    Plaintiffs incorporate ¶¶17-30, 32-35, 37, 41-46, 49-66, 68-84, 114-175, 182-196, 221-229, 262-267, 270-275, 322-337, 344-366, 374-387 as though fully set forth herein.

424.    SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to §14(a) of the 1934 Act, 15 U.S.C. §78n(a), provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

425.    Plaintiffs and members of the class who held shares of ARCT III, ARCT IV, Cole Inc and ARCP as of the respective record dates allege that the defendants named below prepared, reviewed and/or disseminated false and misleading proxy statements, which proxy statements misrepresented and/or omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading as detailed below:

| Proxy Statement | Defendants |
| --- | --- |
| Proxy Statement related to the ARCT III Merger dated 1/22/2013 | ARCP, Schorsch, Block, Budko, Weil, Gong, Rendell, Michelson, ARCT III, Bowman |
| Proxy Statement related to the ARCT IV Merger dated 12/4/2013 | ARCP, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson, AR Capital, Radesca, ARCT IV, Stanley, Wenzel, Tuppeny |

| Proxy Statement related to the Cole Merger dated 12/23/2013 | ARCP, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Kay, Budko, Block, Beeson, AR Capital, Radesca, Cole Inc., Cole, Nemer, Audruskevich, Sealy, Wood, Holland, Keller, McAllaster |
|---|---|

426.    Each of the Proxy Statements used in connection with ARCT III Merger, ARCT IV Merger and Cole Merger: (a) contained untrue statements of material fact and/or omitted to state facts necessary to make the statements made therein not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder; and (b) were an essential link in the consummation of the subject merger.

**ARCT III**

427.    The ARCT III board unanimously (with Schorsch and Weil abstaining) determined that the ARCT III Merger was advisable, fair to, and in the best interests of ARCT III and its stockholders and therefore recommended that ARCT stockholders approve the merger.

428.    The ARCT III board represented that the merger would provide a premium over the current implied value of ARCT III common stock and permit ARCT III stockholders to benefit from a combined company of increased size and scale and provide enhanced access to capital and a potential investment grade balance sheet.  That ARCT III stockholders could receive ARCP stock as merger consideration was a purported benefit that the ARCT III board members asserted contributed to their recommendation that ARCT III stockholders vote in favor of the ARCT III Merger.  That recommendation was based on, among others things: (i) the value of the total blended cash and ARCP stock merger consideration; (ii) the ability of ARCT III stockholders to continue to participate in the company through the ownership ARCP stock; (iii) ARCP's future AFFO growth; and (iv) ARCT III's and ARCP's respective businesses, financial performance, condition, operations, management, competitive positions, prospects and stock performance.

- 165 -

429.    Importantly, the ARCT III board claimed that it conducted a due diligence review of ARCP and its assets, liabilities, earnings, financial condition, business and prospects, which the ARCT III board represented confirmed its positive view of ARCP.

430.    The ARCT III Registration Statement/Proxy omitted material facts about the ARCT III Defendants' inquiry into and knowledge concerning ARCP's previously reported financial statements, SOX certifications and AFFO, which omitted facts conflicted with what a reasonable investor would take from the recommendation.

431.    At the time they caused the ARCT III Registration Statement/Proxy to be filed with, and declared effective by the SEC, the statements made by the ARCT III board and the ARCP Board about the ARCT III Merger and were either not believed by these defendants or lacked a reasonable basis in fact as they either knew, or a reasonable investigation would have shown, that ARCP's previously reported financial statements, SOX certifications and AFFO were materially false and misleading.

**ARCT IV**

432.    The ARCT IV board claimed that it had unanimously (with Schorsch and Weil abstaining) determined that the ARCT IV Merger was advisable, fair to, and in the best interests of ARCT IV and its stockholders and therefore recommended that ARCT IV stockholders vote in favor of the merger.

433.    The ARCT IV board claimed that the merger would provide a premium over the implied value of ARCT IV common stock and permit ARCT IV stockholders to benefit from a combined company with enhanced access to capital and a potential investment grade balance sheet.

434.    The fact that ARCT IV stockholders could receive ARCP stock as part of the merger consideration was a purported benefit that the ARCT IV board members asserted contributed to their

- 166 -

decision to enter into the merger agreement with ARCP.  Specifically, the ARCT IV board members noted that ARCT IV stockholders would be able to receive as consideration ARCP stock which represented a premium over the price of ARCT IV stock.  The ARCT IV board also highlighted ARCP's future AFFO growth.

435.    Schorsch, Weil, Stanley, Budko, Block, Wenzel and Tuppeny represented that their understanding of the information concerning ARCP's businesses, financial performance, condition, operations, management, competitive position, prospects and stock performance, as well as their due diligence review of ARCP and its assets, liabilities, earnings, financial condition, business and prospects, confirmed the positive view of ARCP's business and supported their determination that the combined company would have a strong foundation for growth and improved performance.

436.    At the time they caused the ARCT IV Registration Statement/Proxy to be filed with the SEC, however, statements about the ARCT IV Merger were either not believed by these defendants or lacked a reasonable basis in fact as they knew or a reasonable investigation would have shown that ARCP's previously reported financial statements, SOX certifications and AFFO were false and misleading.

437.    The ARCT IV Registration Statement/Proxy further omitted material facts about the inquiry of the ARCP IV Defendants and ARCP Director Defendants into and knowledge concerning ARCP's previously reported financial statements, SOX certifications and AFFO, which omitted facts conflicted with what a reasonable investor would take from the recommendation.

**Cole Merger**

438.    The Cole Inc. board unanimously determined that the Cole Merger was in the best interests of Cole Inc. and its stockholders and recommended that Cole Inc. stockholders vote in favor of the Cole Merger.

- 167 -

439.     That the fact that Cole Inc. shareholders could receive ARCP stock as merger consideration was a basis for the Cole Inc. board's recommendation in favor of the Cole Merger. The Cole Inc. board further represented that its determination and recommendation in favor of the Cole Merger was based, in part, on the Cole Inc. board's understanding of the information concerning ARCP's business, financial performance, condition, operations, management, competitive positions, prospects and stock performance.

440.     The Cole Inc. board also claimed to rely on the results of Cole Inc.'s due diligence review of ARCP and its assets, liabilities, earnings and financial condition. The Cole Defendants, however, failed to conduct reasonable due diligence with respect to ARCP. In fact, Nemer later testified that the he could not recall if the Cole Inc. board even reviewed ARCP's financial controls at all. Nor could Nemer recall any discussion whatsoever about ARCP's calculation or accuracy of ARCP's AFFO in connection with the purported due diligence process conducted in connection with the Cole Merger.

441.     The Cole Defendants also concluded their purported due diligence before ARCP's false 3Q13 financial results were even released and ARCP's 3Q13 financial results – which the Cole Defendants failed to conduct due diligence upon– were included in the Registration Statement/Proxy disseminated in connection with the Cole Merger.

442.     At the time they caused the Cole Inc. Registration Statement/Proxy to be filed with the SEC, statements about the Cole Merger by the Cole Inc. Board and ARCP Board were either not believed by these defendants or lacked a reasonable basis in fact as they knew or a reasonable investigation would have shown that ARCP's previously reported financial statements, SOX certifications and AFFO were false and misleading.

- 168 -

443.     As a direct result of defendants' preparation, review and dissemination of the false and/or misleading Proxy Statements as described in ¶425 above, the false and/or misleading Proxy Statements used to obtain shareholder approval of the ARCT III Merger, ARCT IV Merger and Cole Merger deprived members of the Class of their right to a fully informed shareholder vote in connection therewith.

444.     At all times relevant to the dissemination of the materially false and/or misleading Proxy Statements, defendants described in ¶425 above were aware of and/or had access to the true facts.  Thus, as a direct and proximate result of the dissemination of the false and/or misleading Proxy Statements, defendants described in ¶425 above used to obtain shareholder approval of the ARCT III Merger, ARCT IV Merger and Cole Merger, plaintiffs and the Class suffered damages and actual economic losses in an amount to be determined at trial.

445.     The written communications made by the defendants described herein constitute violations of Rule 14a-9 and §14(a) because such communications are materially false and/or misleading and were provided in at least a negligent manner.

446.     By reason of the misconduct detailed herein, the defendants described in ¶425 above are liable pursuant to §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

**FIFTH CLAIM FOR RELIEF**

**For Violation of §10(b) of the 1934 Act
and SEC Rule 10b-5 Promulgated Thereunder**

447.     Plaintiffs incorporate ¶¶1-446 as though fully set forth herein.

448.     This Claim is brought by persons who purchased and/or acquired ARCP common stock, preferred shares and debt as well as transacted in options contracts during the Class Period against defendants ARCP, ARC Properties, Schorsch, Block, Beeson, Kay, McAlister and Nemer.

1016919_1

449.    During the Class Period, the defendants named herein disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were misleading in that they misrepresented and/or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

450.    Defendants violated §10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5, in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers and/or acquirers of ARCP common stock, preferred stock and/or debt securities as well as those who transacted in options contracts during the Class Period.

451.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ARCP securities.  Plaintiffs and the Class would not have purchased and/or acquired ARCP securities at the prices they paid, or at all, if they had been aware that the prices those ARCP securities were trading at or were offered at had been inflated by defendants' misleading statements and/or omissions.

452.    As a direct and proximate cause of defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases and/or acquisition of ARCP securities during the Class Period.

## SIXTH CLAIM FOR RELIEF

## For Violation of §20(a) of the 1934 Act

453.    Plaintiffs incorporate ¶¶1-452 as though fully set forth herein.

454.    This Claim is brought against defendants ARCP, ARC Properties, ARC Advisors, AR Capital, RCS Capital and RCAP.

455.    This claim is also brought against individual defendants Schorsch, Block, Weil, Kahane, Beeson, Kay, Michelson, Stanley, Rendell, Bowman, Gong, Andurskevich, Sealy and Frank.

456.    At various times during the Class Period, Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson, Gong, Andruskevich, Kay, McAlister, Stanley, Frank and Sealy served as executive officers and/or directors of ARCP and as such, possessed and exercised control directly and indirectly over the actions of ARCP and ARC Properties.

457.    At various times during the Class Period, Schorsch, Weil, Kahane, Budko and Block served as executive officers and/or directors of and exercised control over RCAP, AR Capital, ARC Advisors and/or RCS Capital and as such had the power to influence and control, and did influence and control, directly or indirectly, the actions of ARCP and ARC Properties.

458.    The individuals named herein acted as controlling persons of ARCP, ARC Properties, ARC Advisors, AR Capital, RCAP and/or RCS Capital within the meaning of §20(a) of the 1934 Act, 15 U.S.C. §78t(a).  By reason of their positions as officers and/or directors of ARCP and/or their ownership interest in and/or board members of ARCP, ARC Properties, ARC Advisors, AR Capital, RCAP and/or RCS Capital, the individuals named herein had the power and authority to cause these entities to engage in the wrongful conduct complained of herein.

**ARCP**

459.    ARCP possessed the power to control and did control the actions of ARC Properties. ARC Properties served as the vehicle through which ARCP conducted its business operations during the Class Period, including the means by which ARCP raised billions of dollars of capital from investors.   ARCP served as the General Partner of ARC Properties and as such controlled ARC Properties pursuant to its authority under the partnership agreement.

**RCS Capital**

460.    RCS Capital possessed the power to control, and did control, directly and indirectly, through AR Capital and ARC Advisors, the actions of ARCP and ARC Properties.  RCS Capital was co-founded and controlled during the Class Period by its owners Schorsch (who served as its Chairman) and Kahane.  RCS Capital shared executive officers and board members with ARCP, including Schorsch and Kahane.  RCS Capital controlled ARCP and ARC Properties through agency principles and through RCS Capital's subsidiary AR Capital as well as indirectly through AR Capital's subsidiary ARC Advisors (which served as ARCP's external manager during the Class Period prior to January 8, 2014).

**AR Capital**

461.    AR Capital possessed the power to control, and did, directly and indirectly, control the actions of ARCP and ARC Properties.  AR Capital was an entity owned and/or controlled by Schorsch, Kahane, Budko, Block and Weil.  AR Capital served as ARCP's sponsor in connection with the offerings detailed in ¶412 and in connection therewith transferred ownership of real estate properties for inclusion in ARCP's Asset base.  AR Capital controlled ARCP through agency and otherwise via the executive officers and board members it shared with ARCP, including Schorsch, Weil, Kahane, Block and Budko.

- 172 -

**ARC Advisors**

462.    ARC Advisors possessed the power to control, and did control, directly and/or indirectly, the actions of ARCP and ARC Properties.  ARC Advisors shared executive officers and board members with ARCP, including Schorsch, Kahane, Budko, Block and Weil.  Prior to January 8, 2014, ARC Advisors served as the external manager of ARCP and as such was entirely responsible for the "day-to-day management" of ARCP's business.  ARCP had no employees and ARCP's CEO, President and CIO were all employed by ARC Advisors.

**RCAP**

463.    RCAP possessed the power to control, and did control, directly and/or indirectly, the actions of ARCP and ARC Properties through agency and through Schorsch and Kahane who together possessed more than 95% voting control of RCAP.  RCAP shared executive officers and board members with ARCP and ARC Properties, including Schorsch Kahane, Budko and Jones, who held executive and/or director positions at both RCAP and ARCP during the Class Period.

464.    Each of the entity defendants herein exercised control directly and indirectly over the actions of ARCP and ARC Properties in connection with the violations of the 1934 Act claims asserted herein.  By reason of such conduct, defendants described in ¶¶454-455 above are liable pursuant to §20(a) of the 1934 Act.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment as follows:

A.    Declaring this action to be a class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying plaintiffs as Class Representatives and Robbins Geller Rudman & Dowd LLP as Class Counsel;

B.      Awarding compensatory damages in favor of plaintiffs and other members of the Class against all defendants jointly and generally for all damages sustained as a result of defendants' wrongdoing in an amount to be proven at trial, together with interest thereon;

C.      With respect to the First, Second and Third Claims for Relief, that the Offerings be rescinded or a rescissory measure of damages awarded;

D.      Awarding plaintiffs and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees, and experts' fees, and other costs and disbursements; and

E.      Awarding plaintiffs and other members of the Class injunctive and other equitable relief, including rescission, as appropriate, in addition to any other relief that is just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED:  April 17, 2015                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                          DARREN J. ROBBINS
                                          MICHAEL J. DOWD
                                          JASON A. FORGE


                                          s/ Darren J. Robbins
                                          DARREN J. ROBBINS

                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101-8498
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)
                                          darrenr@rgrdlaw.com
                                          miked@rgrdlaw.com
                                          jforge@rgrdlaw.com

- 174 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARK T. MILLKEY
ERIN W. BOARDMAN
ANDREW L. SCHWARTZ
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com
eboardman@rgrdlaw.com
aschwartz@rgrdlaw.com

*Lead Counsel for Lead Plaintiff TIAA-CREF and
the Class*

MOTLEY RICE LLC
WILLIAM H. NARWOLD (WN-1713)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  860/822-1681
860/882-1682 (fax)
bnarwold@motleyrice.com

MOTLEY RICE LLC
DONALD A. MIGLIORI (DM-1098)
600 Third Avenue, Suite 2101
New York, NY  10016
Telephone:  401/457-7709
401/457-7708 (fax)
dmigliori@motleyrice.com

*Counsel for Sheet Metal Workers' National
Pension Fund, Union Asset Management Holding
AG, and KBC Asset Management NV*

- 175 -

LOWEY DANNENBERG COHEN
  & HART, P.C.
BARBARA J. HART
One North Broadway, Suite 509
White Plains, NY 10601
Telephone: 914/997-0500
914/997-0035 (fax)
bhart@lowey.com

*Counsel for Corsair Select 100 L.P., Corsair Select MF Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd.*

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com

*Counsel for New York City Employees' Retirement System, the New York City Police Pension Fund, the New York City Police Officers' Variable Supplements Fund, the Board of Education Retirement System of the City of New York, the Teachers' Retirement System of the City of New York and the Teachers' Retirement System of the City of New York Variable A, the New York City Fire Department Pension Fund, the New York City Fire Officers' Variable Supplements Fund and the New York City Fire Fighters' Variable Supplements Fund*

STULL, STULL & BRODY
HOWARD T. LONGMAN
6 East 45th Street
New York, NY 10017
Telephone: 212/687-7230
212/490-2022 (fax)
hlongman@ssbny.com

*Counsel for Noah Bender*

- 176 -

LEVI & KORSINSKY LLP
NICHOLAS I. PORRITT
30 Broad Street
24th Floor
New York, NY 10004
Telephone: 212/363-7500
866/367-6510 (fax)
nporritt@zlk.com

*Counsel for Mitchell and Bonnie Ellis*

WEISSLAW LLP
JOSEPH H. WEISS
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
212/682-3010 (fax)
jweiss@weisslawllp.com

*Counsel for Simon Abadi*

MORGAN & MORGAN, P.C.
PETER SAFIRSTEIN
28 W. 44th St., Suite 2001
New York, NY 10036
Telephone: 212/564-1637
212/564-1807 (fax)
psafirstein@MorganSecuritiesLaw.com

*Counsel for The City of Tampa General Employees
Retirement Fund*

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: 212/802-1486
212/602-1592 (fax)
scotth@johnsonandweaver.com

*Counsel for Paul Matten*

- 177 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 17, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 17, 2015.

s/ Darren J. Robbins
DARREN J. ROBBINS

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: darrenr@rgrdlaw.com

# Mailing Information for a Case 1:15-mc-00040-AKH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Simon Abraham**
  jabraham@aftlaw.com

- **Antonia Marie Apps**
  aapps@milbank.com,USANYS.ECF@USDOJ.GOV

- **Adam M. Apton**
  aapton@zlk.com

- **Gary Frederick Bendinger**
  gbendinger@sidley.com,nyefiling@sidley.com

- **Stanley D Bernstein**
  bernstein@bernlieb.com

- **Jeffrey Craig Block**
  jeff@blockesq.com,jason@blockesq.com

- **Bruce Roger Braun**
  bbraun@sidley.com,efilingnotice@sidley.com

- **Kevin Koon-Pon Chan**
  kchan@rosenlegal.com

- **Jessica Caroline Collins**
  jcollins@khhte.com,aadcock@khhte.com

- **Jason Robert D'Agnenica**
  jasondag@ssbny.com

- **Glen DeValerio**
  gdevalerio@bermandevalerio.com,bdentremont@bermandevalerio.com,ecf@bermandevalerio.com,bmccarthy@bermandevalerio.com

- **Bruce Whitney Dona**
  bruce.dona@ksfcounsel.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Scott Alexander Edelman**
  sedelman@milbank.com

- **Meagan Alicia Farmer**
  mfarmer@gardylaw.com

- **Reid Mason Figel**
  rfigel@khhte.com,oames@khhte.com

- **Robert Craig Finkel**
  rfinkel@wolfpopper.com,cdunleavy@wolfpopper.com,mgianfagna@wolfpopper.com,nmackiel@wolfpopper.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Christopher Louis Garcia**
  christopher.garcia@weil.com,evert.christensen@weil.com,MCO.ECF@weil.com

- **James Philip Gillespie**
  jgillespie@kirkland.com,kevin.mccarthy@kirkland.com,kenymanagingclerk@kirkland.com

- **Andrew Edward Goldsmith**
  agoldsmith@khhte.com,zorfanos@khhte.com,cbooth@khhte.com

- **Jeffrey Michael Haber**
  haber@bernlieb.com,birkeland@bernlieb.com,ecf@bernlieb.com

- **Adam Selim Hakki**
  ahakki@shearman.com

- **John Louis Hardiman**
  hardimanj@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Charles Harrison**
  dharrison@lowey.com

- **Barbara J. Hart**
  bhart@lowey.com

- **Steven P. Harte**
  steven@blockesq.com

- **William Scott Holleman**
  ScottH@johnsonandweaver.com,paralegal@johnsonandweaver.com,frankj@johnsonandweaver.com,michaelf@johnsonandweaver.com

- **Geoffrey Coyle Jarvis**
  gjarvis@gelaw.com,cnevers@gelaw.com,jkairis@gelaw.com

- **Frank James Johnson**
  frankj@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Rebecca M Katz**
  rkatz@motleyrice.com,disaacson@motleyrice.com,dabel@motleyrice.com,lkorenblit@motleyrice.com,kweil@motleyrice.com

- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com

- **Robert S. Khuzami**
  robert.khuzami@kirkland.com,kenymanagingclerk@kirkland.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Lawrence Paul Kolker**
  kolker@whafh.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com

- **Michelle Lynn Levin**
  mlevin@steptoe.com,drodriguez@steptoe.com

- **Daniel Craig Lewis**
  daniel.lewis@shearman.com,avani.bhatt@shearman.com,gina.seong@shearman.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **Christopher Lometti**
  clometti@cohenmilstein.com,efilings@cohenmilstein.com

- **Howard Theodore Longman**
  tsvi@aol.com

- **Francis Paul McConville**
  fmcconville@pomlaw.com

- **Donald Alan Migliori**
  dmigliori@motleyrice.com

- **Michael Campion Miller**
  mmiller@steptoe.com,drodriguez@steptoe.com

- **William H. Narwold**
  bnarwold@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Gregory Mark Nespole**
  nespole@whafh.com

- **Jason Parish**
  jason.parish@kirkland.com

- **Fei-Lu Qian**
  fqian@wolfpopper.com

- **Leah Margaret Quadrino**
  lquadrino@steptoe.com

- **Lorin L. Reisner**
  LReisner@paulweiss.com

- **Joseph F. Rice**
  jrice@motleyrice.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com

- **Lara Elizabeth Romansic**
  lromansic@steptoe.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Peter George Safirstein**
  psafirstein@forthepeople.com

- **Danielle Renee Sassoon**
  danielle.sassoon@kirkland.com,kenymanagingclerk@kirkland.com

- **Michael Gerard Scavelli**
  mscavelli@steptoe.com,drodriguez@steptoe.com

- **Jed Mastren Schwartz**
  jschwartz@milbank.com,nblack@milbank.com,ggreen@milbank.com,calipio@milbank.com

- **Joseph R. Seidman**
  seidman@bernlieb.com

- **Jonathan Lucas Shapiro**
  shapirojl@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Thomas Michael Skelton**
  tskelton@lowey.com

- **Richard William Slack**
  richard.slack@weil.com,MCO.ECF@weil.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com

- **Michael Howard Steinberg**
  steinbergm@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Michael Walter Stocker**
  mstocker@labaton.com,electroniccasefiling@labaton.com

- **Anil Karim Vassanji**
  vassanjia@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Reid Weingarten**
  rweingarten@steptoe.com

- **Joseph Harry Weiss**
  jweiss@weisslawllp.com,infony@weisslawllp.com,exec@weisslawllp.com

- **Theodore Von Wells , Jr**
  twells@paulweiss.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
David          C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101
```

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Simon Abadi ("Plaintiff"), hereby certifies as follows:

1.      I have reviewed the Amended Class Action Complaint being filed on my behalf and on behalf of all others similarly situated and authorized its filing.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      I, together with my wife and children, owned 2,085 shares of Cole Real Estate Investments, Inc. ("CREI") at the time of the Merger with American Realty Capital Properties, Inc. ("ARCP").  These shares were exchange in the Merger for ARCP shares, which we continued to hold through October 28, 2014.

5.      I have not served as a class representative in a federal securities case in the last three years.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7.      The matters stated in this certification are true to the best of my current knowledge, information and belief.

8.      I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED: April 17, 2015

SIMON ABADI

<u>CERTIFICATION</u>

Noah Bender ("Plaintiff") hereby states:

1. Plaintiff makes this certification pursuant to the Private Securities Litigation Reform Act of 1995.

2. Plaintiff has reviewed the Amended Class Action Complaint to be filed on his behalf and on behalf of a proposed Class (the "Complaint") and has authorized its filing on his behalf.

3. Plaintiff did not purchase any securities of American Realty Capital Properties, Inc. ("ARCP") at the direction of his counsel or in order to participate in this private action.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in ARCP securities during the class period set forth in Complaint, are set forth on Schedule A attached hereto.

6. Plaintiff has not served nor sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rate share of any recovery, or as ordered or approved by the court including the award of a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury the foregoing is true and correct.

Executed this 13th day of April 2014

_____
Noah Bender

Schedule A

| AssetClass | Symbol | Put/Call | Buy/Sell | Proceeds | Price | OrderType | Quantity | TradeDate |
|---|---|---|---|---|---|---|---|---|
| **Closed positions** | | | | | | | | |
| STK | ARCP | | BUY | -2578 | 12.89 | LMT | 200 | 20131017 |
| STK | ARCP | | BUY | -1289 | 12.89 | LMT | 100 | 20131017 |
| STK | ARCP | | BUY | -2002.5 | 13.35 | LMT | 150 | 20131021 |
| STK | ARCP | | BUY | -1912.5 | 12.75 | LMT | 150 | 20131230 |
| | | | | | | | | |
| STK | ARCP | | BUY | -1410 | 14.1 | LMT | 100 | 20140219 |
| STK | ARCP | | BUY | -1230 | 12.3 | LMT | 100 | 20140530 |
| STK | ARCP | | BUY | -1209.5 | 12.095 | LMT | 100 | 20140619 |
| STK | ARCP | | BUY | -1209.99 | 12.0999 | LMT | 100 | 20140619 |
| STK | ARCP | | BUY | -2488 | 12.44 | LMT | 200 | 20140620 |
| STK | ARCP | | BUY | -2530 | 12.65 | LMT | 200 | 20140701 |
| STK | ARCP | | SELL | 3516 | 8.79 | LMT | -400 | 20141029 |
| STK | ARCP | | SELL | 2808 | 9.36 | LMT | -300 | 20141031 |
| STK | ARCP | | SELL | 6552 | 9.36 | LMT | -700 | 20141031 |
| Total | | | | -4983.49 | | | 0 | |
| | | | | | | | | |
| OPT | ARCP 140222C00012500 | C | BUY | -65 | 0.65 | LMT | 1 | 20140106 |
| OPT | ARCP 140222C00012500 | C | BUY | -65 | 0.65 | LMT | 1 | 20140106 |
| OPT | ARCP 140222C00012500 | C | SELL | 310 | 1.55 | LMT | -2 | 20140127 |
| OPT | ARCP 141018P00012500 | P | BUY | -300 | 0.3 | LMT | 10 | 20140912 |
| OPT | ARCP 141018P00012500 | P | SELL | 1000 | 1 | LMT | -10 | 20140523 |
| OPT | ARCP 150417P00014000 | P | BUY | -13275 | 5.31 | LMT | 25 | 20141031 |
| OPT | ARCP 150417P00014000 | P | SELL | 3925 | 1.57 | LMT | -25 | 20140904 |
| OPT | ARCP 160115P00012500 | P | BUY | -13590 | 4.53 | LMT | 30 | 20141030 |
| OPT | ARCP 160115P00012500 | P | SELL | 2140 | 2.14 | LMT | -10 | 20140623 |
| OPT | ARCP 160115P00012500 | P | SELL | 4100 | 2.05 | LMT | -20 | 20140701 |
| OPT | ARCP 160115P00015000 | P | BUY | -21440 | 6.7 | LMT | 32 | 20141031 |
| OPT | ARCP 160115P00015000 | P | SELL | 7216 | 3.28 | LMT | -22 | 20140729 |
| OPT | ARCP 160115P00015000 | P | SELL | 3500 | 3.5 | LMT | -10 | 20140814 |
| Total | | | | -26544 | | | 0 | |
| | | | | | | | | |
| **Positions still open.** | | | | | | | | |
| OPT | ARCP 160115C00015000 | C | BUY | -1350 | 0.45 | LMT | 30 | 20140701 |
| | | | | | | | | |
| OPT | ARCP 150417P00011000 | P | BUY | -1200 | 0.4 | LMT | 30 | 20140916 |
| OPT | ARCP 150417P00013000 | P | SELL | 1778 | 1.27 | LMT | -14 | 20140916 |
| OPT | ARCP 150417P00013000 | P | SELL | 2032 | 1.27 | LMT | -16 | 20140916 |

## CERTIFICATION

I, Jay Petschek, hereby certify as follows:

1.      I am Managing Member of Corsair Capital Management, L.P., which has legal authority to enter into and execute this Certification on behalf of Corsair Select 100 L.P., Corsair Select Master Fund, Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd. (collectively hereinafter "Corsair").

2.      Corsair has reviewed the proposed amended class action complaint (the "Complaint") to be filed against American Realty Capital Properties ("ARCP") and others, and has discussed the contents of the Complaint with outside counsel.

3.      Corsair did not purchase or acquire the securities of ARCP at the direction of counsel, or in order to participate in any private action under the federal securities laws.

4.      Corsair is willing to serve as a lead plaintiff and representative party on behalf of a class (or classes) of investors who purchased or otherwise acquired ARCP securities during the Class Period, including providing testimony at deposition and trial, if necessary.

5.      Corsair's transactions in ARCP securities during the revised Class Period are identified in the annexed chart.

6.      Corsair has not served nor sought to serve as a lead plaintiff in any class action under the federal securities laws during the last three years.

7.      Corsair will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct. Executed this 14 day of April 2015.

By: _____

Title: Managing Member of the General Partner

On Behalf Of: Corsair Select 100 L.P., Corsair Select Master Fund Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd.

**Corsair Select 100 LP**

| Date | Transaction Type[1] | Quantity | Price |
|---|---|---|---|
| | | | |
| 9/6/2011 | Holdings | - | |
| 6/14/2013 | Purchase | 361 | $  14.99 |
| 6/17/2013 | Purchase | 1,804 | $  14.98 |
| 6/17/2013 | Purchase | 110 | $  14.87 |
| 6/17/2013 | Purchase | 2,255 | $  14.96 |
| 6/18/2013 | Purchase | 4,781 | $  15.03 |
| 6/18/2013 | Purchase | 11,162 | $  15.25 |
| 6/18/2013 | Purchase | 2,706 | $  14.98 |
| 6/18/2013 | Purchase | 386 | $  15.03 |
| 6/18/2013 | Purchase | 1,804 | $  14.86 |
| 6/18/2013 | Purchase | 3,318 | $  15.24 |
| 6/21/2013 | Purchase | 1,353 | $  14.33 |
| 6/27/2013 | Purchase | 451 | $  15.09 |
| 7/1/2013 | Purchase | 1,650 | $  14.85 |
| 7/1/2013 | Purchase | 121 | $  14.76 |
| 7/2/2013 | Purchase | 5,429 | $  15.05 |
| 7/3/2013 | Purchase | 633 | $  14.65 |
| 7/9/2013 | Purchase | 362 | $  14.44 |
| 7/10/2013 | Purchase | 435 | $  14.49 |
| 7/10/2013 | Purchase | 543 | $  14.50 |
| 7/11/2013 | Purchase | 618 | $  14.79 |
| 7/11/2013 | Purchase | 724 | $  14.78 |
| 7/12/2013 | Purchase | 1,307 | $  14.73 |
| 7/17/2013 | Purchase | 1,810 | $  15.16 |
| 10/16/2013 | Purchase | 666 | $  12.76 |
| 10/23/2013 | Sale | 435 | $  13.17 |
| 11/1/2013 | Sale | 1,101 | $  13.27 |
| 12/26/2013 | Sale | 1,053 | $  12.79 |
| 12/31/2013 | Sale | 1,685 | $  12.76 |

[1] For each of the Corsair Funds herein, (a) transactions dated February 7, 2014 reflect shares acquired as part of the Cole Merger, which are valued at the closing price on the date of the merger; and (b) transactions dated May 21, 2014 reflect shares purchased on the secondary offering.

| 2/7/2014 | Acquisition | 8,538 | $ | 13.99 |
|---|---|---|---|---|
| 2/7/2014 | Acquisition | 1,301 | $ | 13.99 |
| 4/1/2014 | Sale | 303 | $ | 14.01 |
| 5/1/2014 | Sale | 513 | $ | 13.01 |
| 5/5/2014 | Purchase | 1,296 | $ | 12.99 |
| 5/5/2014 | Sale | 508 | $ | 12.96 |
| 5/21/2014 | Purchase | 8,913 | $ | 12.00 |
| 10/1/2014 | Sale | 715 | $ | 12.04 |
| 10/29/2014 | Purchase | 3,323 | $ | 9.93 |
| 11/10/2014 | Sale | 360 | $ | 8.49 |
| 11/11/2014 | Sale | 1,533 | $ | 8.54 |
| 11/13/2014 | Sale | 307 | $ | 8.84 |
| 11/14/2014 | Sale | 1,533 | $ | 8.67 |
| 11/14/2014 | Sale | 1,533 | $ | 8.69 |
| 11/14/2014 | Sale | 6,899 | $ | 8.66 |
| 11/14/2014 | Sale | 7,666 | $ | 8.68 |
| 11/14/2014 | Sale | 6,132 | $ | 8.69 |
| 11/14/2014 | Sale | 9,200 | $ | 8.68 |
| 11/17/2014 | Sale | 1,533 | $ | 8.76 |
| 11/18/2014 | Sale | 7,666 | $ | 8.69 |
| 11/19/2014 | Sale | 767 | $ | 8.75 |
| 11/20/2014 | Sale | 1,533 | $ | 9.10 |
| 11/21/2014 | Sale | 767 | $ | 8.99 |
| 11/21/2014 | Sale | 767 | $ | 8.98 |
| 11/21/2014 | Sale | 144 | $ | 8.98 |
| 11/24/2014 | Sale | 1,150 | $ | 9.10 |
| 11/24/2014 | Sale | 767 | $ | 9.12 |
| 11/25/2014 | Sale | 3,066 | $ | 8.99 |
| 11/25/2014 | Sale | 2,300 | $ | 8.97 |
| 11/26/2014 | Sale | 2,682 | $ | 9.34 |

**Corsair Select Master Fund, Ltd.**

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 9/6/2011 | Holdings | - | |
| 6/14/2013 | Purchase | 1,904 | $ 14.99 |
| 6/17/2013 | Purchase | 9,520 | $ 14.98 |
| 6/17/2013 | Purchase | 583 | $ 14.87 |
| 6/17/2013 | Purchase | 11,901 | $ 14.96 |
| 6/18/2013 | Purchase | 25,229 | $ 15.03 |
| 6/18/2013 | Purchase | 58,902 | $ 15.25 |
| 6/18/2013 | Purchase | 14,281 | $ 14.98 |
| 6/18/2013 | Purchase | 2,037 | $ 15.03 |
| 6/18/2013 | Purchase | 9,520 | $ 14.86 |
| 6/18/2013 | Purchase | 17,511 | $ 15.24 |
| 6/21/2013 | Purchase | 7,140 | $ 14.33 |
| 6/27/2013 | Purchase | 2,380 | $ 15.09 |
| 7/1/2013 | Purchase | 9,050 | $ 14.85 |
| 7/1/2013 | Purchase | 6,004 | $ 15.26 |
| 7/1/2013 | Purchase | 663 | $ 14.76 |
| 7/2/2013 | Purchase | 29,648 | $ 15.05 |
| 7/3/2013 | Purchase | 3,459 | $ 14.65 |
| 7/9/2013 | Purchase | 1,976 | $ 14.44 |
| 7/10/2013 | Purchase | 2,379 | $ 14.49 |
| 7/10/2013 | Purchase | 2,965 | $ 14.50 |
| 7/11/2013 | Purchase | 3,374 | $ 14.79 |
| 7/11/2013 | Purchase | 3,953 | $ 14.78 |
| 7/12/2013 | Purchase | 7,136 | $ 14.73 |
| 7/17/2013 | Purchase | 9,883 | $ 15.16 |
| 9/3/2013 | Purchase | 7,780 | $ 13.13 |
| 9/18/2013 | Sale | 2,115 | $ 12.53 |
| 10/16/2013 | Purchase | 3,733 | $ 12.76 |
| 10/23/2013 | Sale | 2,435 | $ 13.17 |
| 11/1/2013 | Purchase | 19,820 | $ 13.27 |
| 12/26/2013 | Sale | 6,530 | $ 12.79 |
| 12/31/2013 | Sale | 10,447 | $ 12.76 |
| 2/7/2014 | Acquisition | 52,978 | $ 13.99 |
| 2/7/2014 | Acquisition | 8,068 | $ 13.99 |
| 3/3/2014 | Purchase | 3,749 | $ 14.69 |

3

| | | | | |
|---|---|---|---|---|
| 4/1/2014 | Purchase | 4,259 | $ | 14.08 |
| 5/1/2014 | Sale | 3,177 | $ | 13.01 |
| 5/5/2014 | Sale | 3,151 | $ | 12.95 |
| 5/5/2014 | Sale | 1,943 | $ | 12.95 |
| 5/21/2014 | Purchase | 55,129 | $ | 12.00 |
| 10/1/2014 | Sale | 1,753 | $ | 12.04 |
| 10/29/2014 | Purchase | 20,731 | $ | 9.93 |
| 11/10/2014 | Sale | 2,249 | $ | 8.49 |
| 11/11/2014 | Sale | 9,571 | $ | 8.54 |
| 11/13/2014 | Sale | 1,914 | $ | 8.84 |
| 11/14/2014 | Sale | 9,571 | $ | 8.67 |
| 11/14/2014 | Sale | 9,571 | $ | 8.69 |
| 11/14/2014 | Sale | 43,071 | $ | 8.66 |
| 11/14/2014 | Sale | 47,857 | $ | 8.68 |
| 11/14/2014 | Sale | 38,284 | $ | 8.69 |
| 11/14/2014 | Sale | 57,428 | $ | 8.68 |
| 11/17/2014 | Sale | 9,571 | $ | 8.76 |
| 11/18/2014 | Sale | 47,856 | $ | 8.69 |
| 11/19/2014 | Sale | 4,786 | $ | 8.75 |
| 11/20/2014 | Sale | 9,571 | $ | 9.10 |
| 11/21/2014 | Sale | 4,786 | $ | 8.99 |
| 11/21/2014 | Sale | 4,786 | $ | 8.98 |
| 11/21/2014 | Sale | 895 | $ | 8.98 |
| 11/24/2014 | Sale | 7,178 | $ | 9.10 |
| 11/24/2014 | Sale | 4,786 | $ | 9.12 |
| 11/25/2014 | Sale | 19,143 | $ | 8.99 |
| 11/25/2014 | Sale | 14,357 | $ | 8.97 |
| 11/26/2014 | Sale | 16,751 | $ | 9.34 |

**Corsair Capital Partners LP**

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 9/6/2011 | Holdings | - | |
| 6/7/2013 | Purchase | 15,585 | $   15.15 |
| 6/10/2013 | Purchase | 7,793 | $   14.95 |
| 6/11/2013 | Purchase | 15,585 | $   14.63 |
| 6/13/2013 | Purchase | 15,585 | $   14.57 |
| 6/14/2013 | Purchase | 9,166 | $   14.99 |
| 6/17/2013 | Purchase | 45,828 | $   14.98 |
| 6/17/2013 | Purchase | 2,805 | $   14.87 |
| 6/17/2013 | Purchase | 57,285 | $   14.96 |
| 6/18/2013 | Purchase | 121,445 | $   15.03 |
| 6/18/2013 | Purchase | 283,541 | $   15.25 |
| 6/18/2013 | Purchase | 68,742 | $   14.98 |
| 6/18/2013 | Purchase | 9,807 | $   15.03 |
| 6/18/2013 | Purchase | 45,828 | $   14.86 |
| 6/18/2013 | Purchase | 84,294 | $   15.24 |
| 6/21/2013 | Purchase | 34,371 | $   14.33 |
| 6/27/2013 | Purchase | 11,457 | $   15.09 |
| 7/1/2013 | Purchase | 40,000 | $   14.85 |
| 7/1/2013 | Purchase | 3,073 | $   14.76 |
| 7/2/2013 | Purchase | 137,355 | $   15.05 |
| 7/3/2013 | Purchase | 16,025 | $   14.65 |
| 7/8/2013 | Purchase | 11,762 | $   14.23 |
| 7/9/2013 | Purchase | 9,157 | $   14.44 |
| 7/10/2013 | Purchase | 11,020 | $   14.49 |
| 7/10/2013 | Purchase | 13,735 | $   14.50 |
| 7/11/2013 | Purchase | 15,631 | $   14.79 |
| 7/11/2013 | Purchase | 18,314 | $   14.78 |
| 7/12/2013 | Purchase | 33,059 | $   14.73 |
| 7/17/2013 | Purchase | 45,785 | $   15.16 |
| 8/1/2013 | Purchase | 9,472 | $   14.45 |
| 10/16/2013 | Purchase | 17,216 | $   12.76 |
| 10/23/2013 | Sale | 11,757 | $   13.17 |
| 11/1/2013 | Purchase | 3,597 | $   13.27 |
| 1/14/2014 | Purchase | 15,013 | $   13.22 |
| 2/7/2014 | Acquisition | 106,126 | $   13.99 |

| 2/7/2014 | Acquisition | 32,594 | $ | 13.99 |
|---|---|---|---|---|
| 3/3/2014 | Purchase | 16,404 | $ | 14.61 |
| 4/1/2014 | Purchase | 25,217 | $ | 14.07 |
| 5/1/2014 | Purchase | 13,767 | $ | 13.04 |
| 5/21/2014 | Purchase | 230,880 | $ | 12.00 |
| 6/2/2014 | Purchase | 21,882 | $ | 12.44 |
| 10/1/2014 | Purchase | 34,590 | $ | 12.06 |
| 10/16/2014 | Purchase | 16,788 | $ | 11.97 |
| 10/21/2014 | Purchase | 62,956 | $ | 12.12 |
| 10/29/2014 | Purchase | 87,732 | $ | 9.93 |
| 11/10/2014 | Sale | 10,877 | $ | 8.49 |
| 11/11/2014 | Sale | 46,271 | $ | 8.54 |
| 11/13/2014 | Sale | 9,254 | $ | 8.84 |
| 11/14/2014 | Sale | 46,271 | $ | 8.67 |
| 11/14/2014 | Sale | 46,271 | $ | 8.69 |
| 11/14/2014 | Sale | 208,217 | $ | 8.66 |
| 11/14/2014 | Sale | 231,352 | $ | 8.68 |
| 11/14/2014 | Sale | 185,085 | $ | 8.69 |
| 11/14/2014 | Sale | 277,623 | $ | 8.68 |
| 11/17/2014 | Sale | 46,271 | $ | 8.76 |
| 11/18/2014 | Sale | 231,352 | $ | 8.69 |
| 11/19/2014 | Sale | 23,135 | $ | 8.75 |
| 11/20/2014 | Sale | 46,270 | $ | 9.10 |
| 11/21/2014 | Sale | 23,135 | $ | 8.99 |
| 11/21/2014 | Sale | 23,135 | $ | 8.98 |
| 11/21/2014 | Sale | 4,327 | $ | 8.98 |
| 11/24/2014 | Sale | 34,703 | $ | 9.10 |
| 11/24/2014 | Sale | 23,135 | $ | 9.12 |
| 11/25/2014 | Sale | 92,545 | $ | 8.99 |
| 11/25/2014 | Sale | 69,408 | $ | 8.97 |
| 11/26/2014 | Sale | 80,977 | $ | 9.34 |

**Corsair Select LP**

| Date | Transaction | Quantity | Price |
|------|-------------|----------|-------|
| 9/6/2011 | Holdings | - | |
| 6/14/2013 | Purchase | 5,973 | $ 14.99 |
| 6/17/2013 | Purchase | 29,866 | $ 14.98 |
| 6/17/2013 | Purchase | 1,828 | $ 14.87 |
| 6/17/2013 | Purchase | 37,332 | $ 14.96 |
| 6/18/2013 | Purchase | 79,144 | $ 15.03 |
| 6/18/2013 | Purchase | 184,779 | $ 15.25 |
| 6/18/2013 | Purchase | 44,799 | $ 14.98 |
| 6/18/2013 | Purchase | 6,391 | $ 15.03 |
| 6/18/2013 | Purchase | 29,866 | $ 14.86 |
| 6/18/2013 | Purchase | 54,934 | $ 15.24 |
| 6/21/2013 | Purchase | 22,399 | $ 14.33 |
| 6/27/2013 | Purchase | 7,467 | $ 15.09 |
| 7/1/2013 | Purchase | 27,350 | $ 14.85 |
| 7/1/2013 | Purchase | 2,008 | $ 14.76 |
| 7/2/2013 | Purchase | 89,755 | $ 15.05 |
| 7/3/2013 | Purchase | 10,471 | $ 14.65 |
| 7/9/2013 | Purchase | 5,984 | $ 14.44 |
| 7/10/2013 | Purchase | 7,201 | $ 14.49 |
| 7/10/2013 | Purchase | 8,976 | $ 14.50 |
| 7/11/2013 | Purchase | 10,214 | $ 14.79 |
| 7/11/2013 | Purchase | 11,967 | $ 14.78 |
| 7/12/2013 | Purchase | 21,602 | $ 14.73 |
| 7/17/2013 | Purchase | 29,918 | $ 15.16 |
| 10/16/2013 | Purchase | 11,064 | $ 12.76 |
| 10/23/2013 | Sale | 7,199 | $ 13.17 |
| 11/1/2013 | Sale | 18,719 | $ 13.27 |
| 12/26/2013 | Sale | 17,417 | $ 12.79 |
| 12/31/2013 | Sale | 27,868 | $ 12.76 |
| 2/7/2014 | Acquisition | 141,566 | $ 13.99 |
| 2/7/2014 | Acquisition | 21,544 | $ 13.99 |
| 3/3/2014 | Sale | 3,749 | $ 14.69 |
| 4/1/2014 | Purchase | 9,413 | $ 14.07 |
| 5/1/2014 | Sale | 8,389 | $ 13.01 |
| 5/5/2014 | Sale | 8,305 | $ 12.94 |

7

| 5/21/2014 | Purchase | 145,292 | $ | 12.00 |
|-----------|----------|---------|---|-------|
| 10/1/2014 | Sale | 8,774 | $ | 12.04 |
| 10/29/2014 | Purchase | 54,397 | $ | 9.93 |
| 11/10/2014 | Sale | 5,902 | $ | 8.49 |
| 11/11/2014 | Sale | 25,115 | $ | 8.54 |
| 11/13/2014 | Sale | 5,023 | $ | 8.84 |
| 11/14/2014 | Sale | 25,115 | $ | 8.67 |
| 11/14/2014 | Sale | 25,115 | $ | 8.69 |
| 11/14/2014 | Sale | 113,017 | $ | 8.66 |
| 11/14/2014 | Sale | 125,575 | $ | 8.68 |
| 11/14/2014 | Sale | 100,460 | $ | 8.69 |
| 11/14/2014 | Sale | 150,689 | $ | 8.68 |
| 11/17/2014 | Sale | 25,115 | $ | 8.76 |
| 11/18/2014 | Sale | 125,575 | $ | 8.69 |
| 11/19/2014 | Sale | 12,557 | $ | 8.75 |
| 11/20/2014 | Sale | 25,115 | $ | 9.10 |
| 11/21/2014 | Sale | 12,557 | $ | 8.99 |
| 11/21/2014 | Sale | 12,557 | $ | 8.98 |
| 11/21/2014 | Sale | 2,349 | $ | 8.98 |
| 11/24/2014 | Sale | 18,836 | $ | 9.10 |
| 11/24/2014 | Sale | 12,557 | $ | 9.12 |
| 11/25/2014 | Sale | 50,224 | $ | 8.99 |
| 11/25/2014 | Sale | 37,668 | $ | 8.97 |
| 11/26/2014 | Sale | 43,946 | $ | 9.34 |

**Corsair Capital Partners 100 LP**

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 9/6/2011 | Holdings | - | |
| 6/7/2013 | Purchase | 1,149 | $   15.15 |
| 6/10/2013 | Purchase | 574 | $   14.95 |
| 6/11/2013 | Purchase | 1,149 | $   14.63 |
| 6/13/2013 | Purchase | 1,149 | $   14.57 |
| 6/14/2013 | Purchase | 675 | $   14.99 |
| 6/17/2013 | Purchase | 3,377 | $   14.98 |
| 6/17/2013 | Purchase | 207 | $   14.87 |
| 6/17/2013 | Purchase | 4,221 | $   14.96 |
| 6/18/2013 | Purchase | 8,949 | $   15.03 |
| 6/18/2013 | Purchase | 20,892 | $   15.25 |
| 6/18/2013 | Purchase | 5,065 | $   14.98 |
| 6/18/2013 | Purchase | 723 | $   15.03 |
| 6/18/2013 | Purchase | 3,377 | $   14.86 |
| 6/18/2013 | Purchase | 6,211 | $   15.24 |
| 6/21/2013 | Purchase | 2,533 | $   14.33 |
| 6/27/2013 | Purchase | 844 | $   15.09 |
| 7/1/2013 | Purchase | 2,950 | $   14.85 |
| 7/1/2013 | Purchase | 226 | $   14.76 |
| 7/2/2013 | Purchase | 10,078 | $   15.05 |
| 7/3/2013 | Purchase | 1,176 | $   14.65 |
| 7/8/2013 | Purchase | 863 | $   14.23 |
| 7/9/2013 | Purchase | 672 | $   14.44 |
| 7/10/2013 | Purchase | 808 | $   14.49 |
| 7/10/2013 | Purchase | 1,008 | $   14.50 |
| 7/11/2013 | Purchase | 1,147 | $   14.79 |
| 7/11/2013 | Purchase | 1,344 | $   14.78 |
| 7/12/2013 | Purchase | 2,426 | $   14.73 |
| 7/17/2013 | Purchase | 3,359 | $   15.16 |
| 10/16/2013 | Purchase | 1,252 | $   12.76 |
| 10/23/2013 | Sale | 858 | $   13.17 |
| 1/14/2014 | Sale | 5,467 | $   13.17 |
| 1/14/2014 | Purchase | 1,015 | $   13.22 |
| 2/7/2014 | Acquisition | 7,243 | $   13.99 |
| 2/7/2014 | Acquisition | 2,204 | $   13.99 |

9

| 3/3/2014 | Sale | 3,523 | $ 14.59 |
|---|---|---|---|
| 4/1/2014 | Sale | 1,833 | $ 14.02 |
| 5/1/2014 | Sale | 164 | $ 13.01 |
| 5/21/2014 | Purchase | 14,234 | $ 12.00 |
| 6/2/2014 | Sale | 1,285 | $ 12.40 |
| 8/4/2014 | Sale | 1,035 | $ 13.19 |
| 10/1/2014 | Purchase | 2,060 | $ 12.06 |
| 10/16/2014 | Purchase | 995 | $ 11.97 |
| 10/21/2014 | Purchase | 3,731 | $ 12.12 |
| 10/29/2014 | Purchase | 5,199 | $ 9.93 |
| 11/10/2014 | Sale | 645 | $ 8.49 |
| 11/11/2014 | Sale | 2,750 | $ 8.54 |
| 11/13/2014 | Sale | 550 | $ 8.84 |
| 11/14/2014 | Sale | 2,750 | $ 8.67 |
| 11/14/2014 | Sale | 2,750 | $ 8.69 |
| 11/14/2014 | Sale | 12,374 | $ 8.66 |
| 11/14/2014 | Sale | 13,748 | $ 8.68 |
| 11/14/2014 | Sale | 10,998 | $ 8.69 |
| 11/14/2014 | Sale | 16,498 | $ 8.68 |
| 11/17/2014 | Sale | 2,750 | $ 8.76 |
| 11/18/2014 | Sale | 13,749 | $ 8.69 |
| 11/19/2014 | Sale | 1,375 | $ 8.75 |
| 11/20/2014 | Sale | 2,750 | $ 9.10 |
| 11/21/2014 | Sale | 1,375 | $ 8.99 |
| 11/21/2014 | Sale | 1,375 | $ 8.98 |
| 11/21/2014 | Sale | 257 | $ 8.98 |
| 11/24/2014 | Sale | 2,062 | $ 9.10 |
| 11/24/2014 | Sale | 1,375 | $ 9.12 |
| 11/25/2014 | Sale | 5,500 | $ 8.99 |
| 11/25/2014 | Sale | 4,125 | $ 8.97 |
| 11/26/2014 | Sale | 4,812 | $ 9.34 |

**Corsair Capital Investors Ltd.**

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 9/6/2011 | Holdings | - | |
| 6/7/2013 | Purchase | 3,266 | $   15.15 |
| 6/10/2013 | Purchase | 1,633 | $   14.95 |
| 6/11/2013 | Purchase | 3,266 | $   14.63 |
| 6/13/2013 | Purchase | 3,266 | $   14.57 |
| 6/14/2013 | Purchase | 1,921 | $   14.99 |
| 6/17/2013 | Purchase | 9,605 | $   14.98 |
| 6/17/2013 | Purchase | 588 | $   14.87 |
| 6/17/2013 | Purchase | 12,006 | $   14.96 |
| 6/18/2013 | Purchase | 25,452 | $   15.03 |
| 6/18/2013 | Purchase | 59,424 | $   15.25 |
| 6/18/2013 | Purchase | 14,407 | $   14.98 |
| 6/18/2013 | Purchase | 2,056 | $   15.03 |
| 6/18/2013 | Purchase | 9,605 | $   14.86 |
| 6/18/2013 | Purchase | 17,667 | $   15.24 |
| 6/21/2013 | Purchase | 7,204 | $   14.33 |
| 6/27/2013 | Purchase | 2,401 | $   15.09 |
| 7/1/2013 | Purchase | 8,000 | $   14.85 |
| 7/1/2013 | Purchase | 620 | $   14.76 |
| 7/1/2013 | Sale | 6,004 | $   15.26 |
| 7/2/2013 | Purchase | 27,735 | $   15.05 |
| 7/3/2013 | Purchase | 3,236 | $   14.65 |
| 7/8/2013 | Purchase | 2,375 | $   14.23 |
| 7/9/2013 | Purchase | 1,849 | $   14.44 |
| 7/10/2013 | Purchase | 2,225 | $   14.49 |
| 7/10/2013 | Purchase | 2,773 | $   14.50 |
| 7/11/2013 | Purchase | 3,156 | $   14.79 |
| 7/11/2013 | Purchase | 3,698 | $   14.78 |
| 7/12/2013 | Purchase | 6,675 | $   14.73 |
| 7/17/2013 | Purchase | 9,245 | $   15.16 |
| 8/1/2013 | Sale | 9,472 | $   14.45 |
| 8/5/2013 | Purchase | 4,954 | $   14.08 |
| 9/3/2013 | Purchase | 8,087 | $   13.13 |
| 9/18/2013 | Purchase | 1,092 | $   12.55 |
| 10/1/2013 | Sale | 8,915 | $   12.49 |

11

| 10/16/2013 | Purchase | 3,355 | $ 12.76 |
|------------|----------|-------|---------|
| 10/23/2013 | Sale | 2,316 | $ 13.17 |
| 11/1/2013 | Sale | 3,597 | $ 13.27 |
| 12/2/2013 | Purchase | 964 | $ 13.37 |
| 12/31/2013 | Sale | 17,495 | $ 12.74 |
| 12/31/2013 | Sale | 1,500 | $ 12.86 |
| 1/14/2014 | Purchase | 2,661 | $ 13.22 |
| 1/31/2014 | Purchase | 2,470 | $ 13.88 |
| 2/3/2014 | Purchase | 2,077 | $ 13.58 |
| 2/7/2014 | Acquisition | 18,929 | $ 13.99 |
| 2/7/2014 | Acquisition | 5,774 | $ 13.99 |
| 3/3/2014 | Purchase | 8,727 | $ 14.61 |
| 4/1/2014 | Purchase | 18,963 | $ 14.08 |
| 5/1/2014 | Purchase | 4,493 | $ 13.04 |
| 5/21/2014 | Purchase | 45,552 | $ 12.00 |
| 6/2/2014 | Sale | 841 | $ 12.40 |
| 7/1/2014 | Sale | 5,551 | $ 12.59 |
| 9/16/2014 | Sale | 8,687 | $ 12.58 |
| 9/17/2014 | Sale | 8,687 | $ 12.60 |
| 9/30/2014 | Sale | 81,036 | $ 12.22 |
| 10/1/2014 | Purchase | 6,619 | $ 12.06 |
| 10/16/2014 | Purchase | 2,217 | $ 11.97 |
| 10/21/2014 | Purchase | 8,313 | $ 12.12 |
| 10/29/2014 | Purchase | 11,584 | $ 9.93 |
| 11/10/2014 | Sale | 1,444 | $ 8.49 |
| 11/11/2014 | Sale | 6,150 | $ 8.54 |
| 11/13/2014 | Sale | 1,230 | $ 8.84 |
| 11/14/2014 | Sale | 6,150 | $ 8.67 |
| 11/14/2014 | Sale | 6,150 | $ 8.69 |
| 11/14/2014 | Sale | 27,675 | $ 8.66 |
| 11/14/2014 | Sale | 30,750 | $ 8.68 |
| 11/14/2014 | Sale | 24,600 | $ 8.69 |
| 11/14/2014 | Sale | 36,900 | $ 8.68 |
| 11/17/2014 | Sale | 6,150 | $ 8.76 |
| 11/18/2014 | Sale | 30,750 | $ 8.69 |
| 11/19/2014 | Sale | 3,075 | $ 8.75 |
| 11/20/2014 | Sale | 6,150 | $ 9.10 |

| 11/21/2014 | Sale | 3,075 | $ 8.99 |
|---|---|---|---|
| 11/21/2014 | Sale | 3,075 | $ 8.98 |
| 11/21/2014 | Sale | 575 | $ 8.98 |
| 11/24/2014 | Sale | 4,613 | $ 9.10 |
| 11/24/2014 | Sale | 3,075 | $ 9.12 |
| 11/25/2014 | Sale | 12,300 | $ 8.99 |
| 11/25/2014 | Sale | 9,226 | $ 8.97 |
| 11/26/2014 | Sale | 10,763 | $ 9.34 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Bonnie Ellis, duly certify and say, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed a complaint filed in this action.

2.    I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transaction(s) in American Realty Capital Properties, Inc. securities which are the subject of this litigation during the class period (are) set forth in the chart attached hereto.

5.    Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case other than in this pending action.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.  Executed this _14_ day of April 2015.

_Bonnie Ellis_
Bonnie Ellis

**Bonnie Ellis**
**Transactions in American Realty Capital Properties, Inc. Securities**

| Date of Transaction | Securities | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|---|
| 10/3/2014 | ARCPP | B | 6,300 | 23.43 |
| 10/3/2014 | ARCPP | B | 4,580 | 23.43 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Mitchell Ellis, duly certify and say, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed a complaint filed in this action.

2.      I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      My transaction(s) in American Realty Capital Properties, Inc. securities which are the subject of this litigation during the class period (are) set forth in the chart attached hereto.

5.      Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case other than in this pending action.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.  Executed this __14__ day of April 2015.

_____
Mitchell Ellis

**Mitchell Ellis**
**Transactions in American Realty Capital Properties, Inc. Securities**

| Date of Transaction | Securities | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|---|
| 12/12/2013 | ARCP | B | 24,350 | 12.36 |
| 12/12/2013 | ARCP | B | 5,100 | 12.36 |
| 10/3/2014 | ARCPP | B | 2,200 | 23.59 |

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Paul Matten, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the Amended Class Action Complaint for Violation of the Federal Securities Laws and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

See Attached Schedule A.

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of April, 2014.

DocuSigned by:

*Paul Matten*

Paul Matten

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|

**PAUL MATTEN - Personal Account**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/7/2013 | 700 | $14.980 |
| Purchase | 6/7/2013 | 1244 | $14.986 |
| Purchase | 6/7/2013 | 2056 | $14.980 |
| Purchase | 6/7/2013 | 4000 | $14.980 |
| Purchase | 6/7/2013 | 4000 | $14.997 |
| Purchase | 6/7/2013 | 4000 | $14.969 |
| Purchase | 6/10/2013 | 600 | $14.787 |
| Purchase | 6/10/2013 | 1200 | $14.877 |
| Purchase | 6/10/2013 | 2800 | $14.880 |
| Purchase | 6/10/2013 | 3400 | $14.790 |
| Purchase | 6/11/2013 | 8000 | $14.510 |
| Purchase | 6/12/2013 | 200 | $14.269 |
| Purchase | 6/12/2013 | 200 | $14.270 |
| Purchase | 6/12/2013 | 300 | $14.288 |
| Purchase | 6/12/2013 | 484 | $14.360 |
| Purchase | 6/12/2013 | 600 | $14.270 |
| Purchase | 6/12/2013 | 3000 | $14.260 |
| Purchase | 6/12/2013 | 3516 | $14.420 |
| Purchase | 6/12/2013 | 3700 | $14.290 |
| Purchase | 6/12/2013 | 4000 | $14.360 |
| Purchase | 6/13/2013 | 8000 | $14.010 |
| Purchase | 6/20/2013 | 627 | $14.360 |
| Purchase | 6/20/2013 | 836 | $14.300 |
| Purchase | 6/20/2013 | 1100 | $14.350 |
| Purchase | 6/20/2013 | 1100 | $14.355 |
| Purchase | 6/20/2013 | 1300 | $14.288 |
| Purchase | 6/20/2013 | 2300 | $14.345 |
| Purchase | 6/20/2013 | 2873 | $14.408 |
| Purchase | 6/20/2013 | 5864 | $14.290 |
| Purchase | 6/20/2013 | 8000 | $14.510 |
| Purchase | 6/20/2013 | 8000 | $14.169 |
| Purchase | 6/24/2013 | 478 | $14.590 |
| Purchase | 6/24/2013 | 800 | $14.340 |
| Purchase | 6/24/2013 | 7200 | $14.340 |
| Purchase | 6/24/2013 | 7522 | $14.590 |
| Purchase | 6/25/2013 | 1000 | $14.710 |

1

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/25/2013 | 7000 | $14.706 |
| Purchase | 7/5/2013 | 500 | $14.240 |
| Purchase | 7/5/2013 | 1382 | $14.240 |
| Purchase | 7/5/2013 | 6618 | $14.260 |
| Purchase | 7/5/2013 | 7500 | $14.250 |
| Purchase | 7/5/2013 | 8000 | $14.169 |
| Purchase | 7/8/2013 | 2800 | $14.250 |
| Purchase | 7/8/2013 | 52 | $14.290 |
| Purchase | 7/8/2013 | 100 | $14.282 |
| Purchase | 7/8/2013 | 105 | $14.200 |
| Purchase | 7/8/2013 | 352 | $14.270 |
| Purchase | 7/8/2013 | 596 | $14.210 |
| Purchase | 7/8/2013 | 700 | $14.250 |
| Purchase | 7/8/2013 | 700 | $14.270 |
| Purchase | 7/8/2013 | 700 | $14.195 |
| Purchase | 7/8/2013 | 966 | $14.278 |
| Purchase | 7/8/2013 | 1500 | $14.288 |
| Purchase | 7/8/2013 | 1800 | $14.270 |
| Purchase | 7/8/2013 | 2400 | $14.210 |
| Purchase | 7/8/2013 | 2700 | $14.380 |
| Purchase | 7/8/2013 | 3000 | $14.270 |
| Purchase | 7/8/2013 | 3148 | $14.290 |
| Purchase | 7/8/2013 | 3300 | $14.200 |
| Purchase | 7/8/2013 | 3517 | $14.280 |
| Purchase | 7/8/2013 | 3895 | $14.200 |
| Purchase | 7/8/2013 | 4648 | $14.250 |
| Purchase | 7/8/2013 | 5300 | $14.380 |
| Purchase | 7/8/2013 | 8000 | $14.290 |
| Purchase | 7/8/2013 | 8000 | $14.220 |
| Purchase | 7/8/2013 | 8000 | $14.210 |
| Purchase | 7/8/2013 | 8000 | $14.210 |
| Purchase | 7/8/2013 | 8000 | $14.210 |
| Purchase | 7/9/2013 | 600 | $14.235 |
| Purchase | 7/9/2013 | 1000 | $14.328 |
| Purchase | 7/9/2013 | 1000 | $14.310 |
| Purchase | 7/9/2013 | 1200 | $14.300 |
| Purchase | 7/9/2013 | 1900 | $14.290 |
| Purchase | 7/9/2013 | 2100 | $14.289 |
| Purchase | 7/9/2013 | 4000 | $14.300 |
| Purchase | 7/9/2013 | 7400 | $14.240 |
| Purchase | 7/9/2013 | 8000 | $14.200 |
| Purchase | 7/25/2013 | 100 | $14.365 |

2

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 7/25/2013 | 100 | $14.328 |
| Purchase | 7/25/2013 | 200 | $14.295 |
| Purchase | 7/25/2013 | 807 | $14.330 |
| Purchase | 7/25/2013 | 7093 | $14.330 |
| Purchase | 7/25/2013 | 7800 | $14.299 |
| Purchase | 7/25/2013 | 7900 | $14.369 |
| Purchase | 7/25/2013 | 8000 | $14.310 |
| Purchase | 7/25/2013 | 8000 | $14.320 |
| Purchase | 7/25/2013 | 8000 | $14.310 |
| Purchase | 7/26/2013 | 100 | $14.265 |
| Purchase | 7/26/2013 | 200 | $14.215 |
| Purchase | 7/26/2013 | 800 | $14.255 |
| Purchase | 7/26/2013 | 1000 | $14.220 |
| Purchase | 7/26/2013 | 1500 | $14.2575 |
| Purchase | 7/26/2013 | 1700 | $14.260 |
| Purchase | 7/26/2013 | 4800 | $14.230 |
| Purchase | 7/26/2013 | 6000 | $14.287 |
| Purchase | 7/26/2013 | 7900 | $14.270 |
| Purchase | 7/26/2013 | 8000 | $14.220 |
| Purchase | 7/31/2013 | 34 | $14.529 |
| Purchase | 7/31/2013 | 100 | $14.530 |
| Purchase | 7/31/2013 | 100 | $14.528 |
| Purchase | 7/31/2013 | 300 | $14.530 |
| Purchase | 7/31/2013 | 300 | $14.530 |
| Purchase | 7/31/2013 | 400 | $14.499 |
| Purchase | 7/31/2013 | 500 | $14.529 |
| Purchase | 7/31/2013 | 700 | $14.497 |
| Purchase | 7/31/2013 | 800 | $14.525 |
| Purchase | 7/31/2013 | 800 | $14.500 |
| Purchase | 7/31/2013 | 1930 | $14.495 |
| Purchase | 7/31/2013 | 2300 | $14.510 |
| Purchase | 7/31/2013 | 2400 | $14.510 |
| Purchase | 7/31/2013 | 3066 | $14.505 |
| Purchase | 7/31/2013 | 4170 | $14.500 |
| Purchase | 7/31/2013 | 5000 | $14.469 |
| Purchase | 7/31/2013 | 6100 | $14.527 |
| Purchase | 7/31/2013 | 7000 | $14.470 |
| Purchase | 7/31/2013 | 8000 | $14.516 |
| Purchase | 7/31/2013 | 8000 | $14.567 |
| Purchase | 7/31/2013 | 8000 | $14.527 |
| Purchase | 7/31/2013 | 8000 | $14.510 |
| Purchase | 8/1/2013 | 100 | $14.305 |

3

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/1/2013 | 200 | $14.135 |
| Purchase | 8/1/2013 | 398 | $14.160 |
| Purchase | 8/1/2013 | 700 | $14.152 |
| Purchase | 8/1/2013 | 1500 | $14.307 |
| Purchase | 8/1/2013 | 2000 | $14.150 |
| Purchase | 8/1/2013 | 2300 | $14.050 |
| Purchase | 8/1/2013 | 4000 | $14.340 |
| Purchase | 8/1/2013 | 6400 | $14.310 |
| Purchase | 8/1/2013 | 6702 | $14.140 |
| Purchase | 8/1/2013 | 7700 | $14.045 |
| Purchase | 8/1/2013 | 8000 | $14.320 |
| Purchase | 8/1/2013 | 10000 | $14.150 |
| Purchase | 8/1/2013 | 10000 | $14.050 |
| Purchase | 8/6/2013 | 1100 | $13.745 |
| Purchase | 8/6/2013 | 1900 | $13.720 |
| Purchase | 8/6/2013 | 2100 | $13.715 |
| Purchase | 8/6/2013 | 2900 | $13.750 |
| Purchase | 8/6/2013 | 8000 | $13.770 |
| Purchase | 8/7/2013 | 8000 | $13.610 |
| Purchase | 8/8/2013 | 100 | $13.578 |
| Purchase | 8/8/2013 | 100 | $13.595 |
| Purchase | 8/8/2013 | 100 | $13.578 |
| Purchase | 8/8/2013 | 200 | $13.575 |
| Purchase | 8/8/2013 | 200 | $13.579 |
| Purchase | 8/8/2013 | 400 | $13.575 |
| Purchase | 8/8/2013 | 600 | $13.590 |
| Purchase | 8/8/2013 | 700 | $13.557 |
| Purchase | 8/8/2013 | 1500 | $13.578 |
| Purchase | 8/8/2013 | 1500 | $13.578 |
| Purchase | 8/8/2013 | 1500 | $13.588 |
| Purchase | 8/8/2013 | 1800 | $13.600 |
| Purchase | 8/8/2013 | 2100 | $13.580 |
| Purchase | 8/8/2013 | 2100 | $13.598 |
| Purchase | 8/8/2013 | 2500 | $13.580 |
| Purchase | 8/8/2013 | 2500 | $13.590 |
| Purchase | 8/8/2013 | 3400 | $13.590 |
| Purchase | 8/8/2013 | 3500 | $13.580 |
| Purchase | 8/8/2013 | 3900 | $13.580 |
| Purchase | 8/8/2013 | 4000 | $13.580 |
| Purchase | 8/8/2013 | 7300 | $13.560 |
| Purchase | 8/8/2013 | 8000 | $13.610 |
| Purchase | 8/8/2013 | 8000 | $13.660 |

4

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/9/2013 | 400 | $13.959 |
| Purchase | 8/9/2013 | 500 | $13.850 |
| Purchase | 8/9/2013 | 700 | $13.905 |
| Purchase | 8/9/2013 | 1500 | $13.848 |
| Purchase | 8/9/2013 | 1600 | $13.910 |
| Purchase | 8/9/2013 | 1700 | $13.900 |
| Purchase | 8/9/2013 | 2000 | $13.840 |
| Purchase | 8/9/2013 | 3600 | $13.960 |
| Purchase | 8/9/2013 | 4000 | $13.920 |
| Purchase | 8/9/2013 | 4000 | $13.820 |
| Purchase | 8/9/2013 | 8000 | $13.959 |
| Purchase | 8/9/2013 | 8000 | $13.960 |
| Purchase | 8/9/2013 | 12000 | $13.900 |
| Purchase | 8/12/2013 | 100 | $13.720 |
| Purchase | 8/12/2013 | 1500 | $13.717 |
| Purchase | 8/12/2013 | 2000 | $13.780 |
| Purchase | 8/12/2013 | 2000 | $13.670 |
| Purchase | 8/12/2013 | 4000 | $13.650 |
| Purchase | 8/12/2013 | 4400 | $13.715 |
| Purchase | 8/12/2013 | 8000 | $13.820 |
| Purchase | 8/13/2013 | 2000 | $13.528 |
| Purchase | 8/13/2013 | 4000 | $13.600 |
| Purchase | 8/13/2013 | 4000 | $13.558 |
| Purchase | 8/13/2013 | 10000 | $13.440 |
| Purchase | 8/14/2013 | 200 | $13.335 |
| Purchase | 8/14/2013 | 2500 | $13.340 |
| Purchase | 8/14/2013 | 7300 | $13.360 |
| Purchase | 8/14/2013 | 10000 | $13.440 |
| Purchase | 8/15/2013 | 10000 | $13.330 |
| Purchase | 8/15/2013 | 200 | $13.155 |
| Purchase | 8/15/2013 | 400 | $13.159 |
| Purchase | 8/15/2013 | 3100 | $13.170 |
| Purchase | 8/15/2013 | 6900 | $13.177 |
| Purchase | 8/15/2013 | 9400 | $13.160 |
| Purchase | 8/15/2013 | 10000 | $13.200 |
| Purchase | 8/15/2013 | 10000 | $13.110 |
| Purchase | 8/16/2013 | 100 | $12.990 |
| Purchase | 8/16/2013 | 100 | $12.989 |
| Purchase | 8/16/2013 | 400 | $12.845 |
| Purchase | 8/16/2013 | 700 | $12.928 |
| Purchase | 8/16/2013 | 1100 | $12.988 |
| Purchase | 8/16/2013 | 1500 | $12.998 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/16/2013 | 1500 | $13.000 |
| Purchase | 8/16/2013 | 1500 | $12.938 |
| Purchase | 8/16/2013 | 2000 | $12.908 |
| Purchase | 8/16/2013 | 2500 | $13.000 |
| Purchase | 8/16/2013 | 2500 | $12.998 |
| Purchase | 8/16/2013 | 2500 | $12.940 |
| Purchase | 8/16/2013 | 2700 | $12.990 |
| Purchase | 8/16/2013 | 3300 | $12.930 |
| Purchase | 8/16/2013 | 3600 | $12.850 |
| Purchase | 8/16/2013 | 4000 | $12.908 |
| Purchase | 8/16/2013 | 4000 | $12.910 |
| Purchase | 8/16/2013 | 6000 | $12.847 |
| Purchase | 8/19/2013 | 1000 | $12.658 |
| Purchase | 8/19/2013 | 2000 | $12.650 |
| Purchase | 8/19/2013 | 3000 | $12.659 |
| Purchase | 8/19/2013 | 3000 | $12.660 |
| Purchase | 8/19/2013 | 5000 | $12.660 |
| Purchase | 8/19/2013 | 6000 | $12.680 |
| Purchase | 8/20/2013 | 58 | $12.899 |
| Purchase | 8/20/2013 | 500 | $12.880 |
| Purchase | 8/20/2013 | 842 | $12.860 |
| Purchase | 8/20/2013 | 2000 | $12.900 |
| Purchase | 8/20/2013 | 2600 | $12.900 |
| Purchase | 8/20/2013 | 4000 | $12.900 |
| Purchase | 8/20/2013 | 10000 | $12.900 |
| Purchase | 8/30/2013 | 100 | $13.365 |
| Purchase | 8/30/2013 | 100 | $13.399 |
| Purchase | 8/30/2013 | 300 | $13.345 |
| Purchase | 8/30/2013 | 300 | $13.399 |
| Purchase | 8/30/2013 | 800 | $13.395 |
| Purchase | 8/30/2013 | 800 | $13.395 |
| Purchase | 8/30/2013 | 1000 | $13.350 |
| Purchase | 8/30/2013 | 1000 | $13.330 |
| Purchase | 8/30/2013 | 1300 | $13.350 |
| Purchase | 8/30/2013 | 1500 | $13.340 |
| Purchase | 8/30/2013 | 1600 | $13.320 |
| Purchase | 8/30/2013 | 2125 | $13.395 |
| Purchase | 8/30/2013 | 2200 | $13.330 |
| Purchase | 8/30/2013 | 2900 | $13.400 |
| Purchase | 8/30/2013 | 3359 | $13.360 |
| Purchase | 8/30/2013 | 3600 | $13.340 |
| Purchase | 8/30/2013 | 4000 | $13.330 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/30/2013 | 4000 | $13.357 |
| Purchase | 8/30/2013 | 4000 | $13.357 |
| Purchase | 8/30/2013 | 4000 | $13.360 |
| Purchase | 8/30/2013 | 5775 | $13.400 |
| Purchase | 8/30/2013 | 6641 | $13.350 |
| Purchase | 8/30/2013 | 7800 | $13.330 |
| Purchase | 8/30/2013 | 8000 | $13.356 |
| Purchase | 8/30/2013 | 8000 | $13.396 |
| Purchase | 8/30/2013 | 8300 | $13.370 |
| Purchase | 8/30/2013 | 9000 | $13.350 |
| Purchase | 8/30/2013 | 9000 | $13.340 |
| Purchase | 8/30/2013 | 9200 | $13.400 |
| Purchase | 8/30/2013 | 10000 | $13.330 |
| Purchase | 8/30/2013 | 10000 | $13.340 |
| Purchase | 8/30/2013 | 10000 | $13.390 |
| Purchase | 8/30/2013 | 10000 | $13.390 |
| Purchase | 8/30/2013 | 10800 | $13.350 |
| Purchase | 8/30/2013 | 18500 | $13.360 |
| Purchase | 8/30/2013 | 20000 | $13.340 |
| Purchase | 9/5/2013 | 100 | $12.690 |
| Purchase | 9/5/2013 | 500 | $12.665 |
| Purchase | 9/5/2013 | 900 | $12.675 |
| Purchase | 9/5/2013 | 900 | $12.690 |
| Purchase | 9/5/2013 | 1000 | $12.687 |
| Purchase | 9/5/2013 | 1500 | $12.670 |
| Purchase | 9/5/2013 | 2000 | $12.750 |
| Purchase | 9/5/2013 | 2000 | $12.650 |
| Purchase | 9/5/2013 | 3100 | $12.680 |
| Purchase | 9/5/2013 | 4000 | $12.670 |
| Purchase | 9/5/2013 | 4000 | $12.680 |
| Purchase | 9/5/2013 | 4000 | $12.687 |
| Purchase | 9/9/2013 | 100 | $12.770 |
| Purchase | 9/9/2013 | 100 | $12.759 |
| Purchase | 9/9/2013 | 200 | $12.780 |
| Purchase | 9/9/2013 | 300 | $12.765 |
| Purchase | 9/9/2013 | 3600 | $12.770 |
| Purchase | 9/9/2013 | 3800 | $12.780 |
| Purchase | 9/9/2013 | 3900 | $12.760 |
| Purchase | 9/9/2013 | 4000 | $12.770 |
| Purchase | 9/9/2013 | 4000 | $12.710 |
| Purchase | 9/9/2013 | 4000 | $12.720 |
| Purchase | 9/9/2013 | 4000 | $12.720 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 9/9/2013 | 4000 | $12.717 |
| Purchase | 9/9/2013 | 4000 | $12.720 |
| Purchase | 9/9/2013 | 8000 | $12.750 |
| Purchase | 9/10/2013 | 1000 | $12.630 |
| Purchase | 9/10/2013 | 2000 | $12.640 |
| Purchase | 9/10/2013 | 2000 | $12.637 |
| Purchase | 9/10/2013 | 2000 | $12.627 |
| Purchase | 9/10/2013 | 5000 | $12.640 |
| Purchase | 9/11/2013 | 4000 | $12.400 |
| Purchase | 9/11/2013 | 4000 | $12.400 |
| Purchase | 9/11/2013 | 4000 | $12.370 |
| Purchase | 9/12/2013 | 100 | $12.409 |
| Purchase | 9/12/2013 | 775 | $12.405 |
| Purchase | 9/12/2013 | 1000 | $12.407 |
| Purchase | 9/12/2013 | 2000 | $12.410 |
| Purchase | 9/12/2013 | 4125 | $12.410 |
| Purchase | 9/16/2013 | 600 | $12.264 |
| Purchase | 9/16/2013 | 1000 | $12.265 |
| Purchase | 9/16/2013 | 2300 | $12.260 |
| Purchase | 9/16/2013 | 4000 | $12.405 |
| Purchase | 9/16/2013 | 4100 | $12.270 |
| Purchase | 9/23/2013 | 1100 | $12.510 |
| Purchase | 9/23/2013 | 2900 | $12.509 |
| Purchase | 9/23/2013 | 4000 | $12.510 |
| Purchase | 9/24/2013 | 100 | $12.330 |
| Purchase | 9/24/2013 | 1900 | $12.410 |
| Purchase | 9/24/2013 | 2000 | $12.410 |
| Purchase | 9/24/2013 | 8000 | $12.369 |
| Purchase | 9/24/2013 | 8000 | $12.460 |
| Purchase | 9/25/2013 | 8000 | $12.510 |
| Purchase | 9/25/2013 | 300 | $12.475 |
| Purchase | 9/25/2013 | 3700 | $12.480 |
| Purchase | 9/25/2013 | 8000 | $12.479 |
| Purchase | 9/26/2013 | 100 | $12.495 |
| Purchase | 9/26/2013 | 300 | $12.465 |
| Purchase | 9/26/2013 | 500 | $12.499 |
| Purchase | 9/26/2013 | 601 | $12.478 |
| Purchase | 9/26/2013 | 1000 | $12.477 |
| Purchase | 9/26/2013 | 2000 | $12.497 |
| Purchase | 9/26/2013 | 2000 | $12.467 |
| Purchase | 9/26/2013 | 2508 | $12.500 |
| Purchase | 9/26/2013 | 2892 | $12.500 |

8

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 9/26/2013 | 3000 | $12.480 |
| Purchase | 9/26/2013 | 3499 | $12.470 |
| Purchase | 9/26/2013 | 3600 | $12.469 |
| Purchase | 9/26/2013 | 4000 | $12.500 |
| Purchase | 9/26/2013 | 4000 | $12.480 |
| Purchase | 9/26/2013 | 4000 | $12.470 |
| Purchase | 9/26/2013 | 4000 | $12.457 |
| Purchase | 9/26/2013 | 4406 | $12.490 |
| Purchase | 9/26/2013 | 8000 | $12.510 |
| Purchase | 9/27/2013 | 1100 | $12.450 |
| Purchase | 9/27/2013 | 2900 | $12.450 |
| Purchase | 9/27/2013 | 4000 | $12.490 |
| Purchase | 9/27/2013 | 8000 | $12.380 |
| Purchase | 9/27/2013 | 8000 | $12.270 |
| Purchase | 9/30/2013 | 100 | $12.225 |
| Purchase | 9/30/2013 | 200 | $12.265 |
| Purchase | 9/30/2013 | 347 | $12.290 |
| Purchase | 9/30/2013 | 400 | $12.285 |
| Purchase | 9/30/2013 | 1000 | $12.187 |
| Purchase | 9/30/2013 | 1700 | $12.290 |
| Purchase | 9/30/2013 | 3000 | $12.190 |
| Purchase | 9/30/2013 | 3729 | $12.280 |
| Purchase | 9/30/2013 | 4000 | $12.190 |
| Purchase | 9/30/2013 | 4071 | $12.260 |
| Purchase | 9/30/2013 | 5553 | $12.300 |
| Purchase | 9/30/2013 | 7900 | $12.230 |
| Purchase | 9/30/2013 | 8000 | $12.400 |
| Purchase | 9/30/2013 | 8000 | $12.220 |
| Purchase | 10/8/2013 | 100 | $12.307 |
| Purchase | 10/8/2013 | 200 | $12.295 |
| Purchase | 10/8/2013 | 400 | $12.310 |
| Purchase | 10/8/2013 | 3800 | $12.305 |
| Purchase | 10/8/2013 | 7700 | $12.310 |
| Purchase | 10/8/2013 | 8000 | $12.310 |
| Purchase | 10/8/2013 | 19800 | $12.300 |
| Purchase | 10/9/2013 | 1200 | $12.350 |
| Purchase | 10/9/2013 | 3281 | $12.260 |
| Purchase | 10/9/2013 | 4000 | $12.260 |
| Purchase | 10/9/2013 | 4900 | $12.290 |
| Purchase | 10/9/2013 | 5100 | $12.290 |
| Purchase | 10/9/2013 | 6719 | $12.270 |
| Purchase | 10/9/2013 | 8800 | $12.350 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 10/9/2013 | 10000 | $12.310 |
| Purchase | 10/10/2013 | 700 | $12.330 |
| Purchase | 10/10/2013 | 1000 | $12.310 |
| Purchase | 10/10/2013 | 1000 | $12.308 |
| Purchase | 10/10/2013 | 1500 | $12.289 |
| Purchase | 10/10/2013 | 1800 | $12.350 |
| Purchase | 10/10/2013 | 2000 | $12.348 |
| Purchase | 10/11/2013 | 3200 | $12.329 |
| Purchase | 10/11/2013 | 4800 | $12.330 |
| Purchase | 10/14/2013 | 703 | $12.310 |
| Purchase | 10/23/2013 | 100 | $13.200 |
| Purchase | 10/23/2013 | 8701 | $13.050 |
| Purchase | 10/23/2013 | 11299 | $13.045 |
| Purchase | 10/23/2013 | 19900 | $13.200 |
| Purchase | 10/23/2013 | 20000 | $13.810 |
| Purchase | 10/30/2013 | 700 | $13.440 |
| Purchase | 10/30/2013 | 19300 | $13.440 |
| Purchase | 10/31/2013 | 20000 | $13.020 |
| Purchase | 11/1/2013 | 20000 | $13.170 |
| Purchase | 11/4/2013 | 300 | $13.320 |
| Purchase | 11/4/2013 | 6900 | $13.315 |
| Purchase | 11/4/2013 | 12800 | $13.320 |
| Purchase | 11/5/2013 | 500 | $13.145 |
| Purchase | 11/5/2013 | 19500 | $13.150 |
| Purchase | 11/6/2013 | 20000 | $12.930 |
| Purchase | 11/8/2013 | 100 | $12.755 |
| Purchase | 11/8/2013 | 100 | $12.575 |
| Purchase | 11/8/2013 | 900 | $12.580 |
| Purchase | 11/8/2013 | 1000 | $12.530 |
| Purchase | 11/8/2013 | 1800 | $12.586 |
| Purchase | 11/8/2013 | 1900 | $12.550 |
| Purchase | 11/8/2013 | 3000 | $12.760 |
| Purchase | 11/8/2013 | 3826 | $12.530 |
| Purchase | 11/8/2013 | 4000 | $12.530 |
| Purchase | 11/8/2013 | 5000 | $12.520 |
| Purchase | 11/8/2013 | 9000 | $12.580 |
| Purchase | 11/8/2013 | 10000 | $12.570 |
| Purchase | 11/8/2013 | 10000 | $12.530 |
| Purchase | 11/8/2013 | 16174 | $12.570 |
| Purchase | 11/8/2013 | 16900 | $12.760 |
| Purchase | 11/8/2013 | 18100 | $12.560 |
| Purchase | 11/8/2013 | 18200 | $12.580 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 11/8/2013 | 20000 | $12.610 |
| Purchase | 11/8/2013 | 20000 | $12.610 |
| Purchase | 11/19/2013 | 100 | $12.965 |
| Purchase | 11/19/2013 | 200 | $12.940 |
| Purchase | 11/19/2013 | 952 | $12.960 |
| Purchase | 11/19/2013 | 9300 | $12.970 |
| Purchase | 11/19/2013 | 9448 | $12.950 |
| Purchase | 11/21/2013 | 100 | $12.935 |
| Purchase | 11/21/2013 | 100 | $12.945 |
| Purchase | 11/21/2013 | 100 | $12.950 |
| Purchase | 11/21/2013 | 1327 | $12.940 |
| Purchase | 11/21/2013 | 18473 | $12.950 |
| Purchase | 12/10/2013 | 20000 | $12.800 |
| Purchase | 12/10/2013 | 20000 | $12.800 |
| Purchase | 12/11/2013 | 100 | $12.598 |
| Purchase | 12/11/2013 | 154 | $12.690 |
| Purchase | 12/11/2013 | 200 | $12.685 |
| Purchase | 12/11/2013 | 300 | $12.430 |
| Purchase | 12/11/2013 | 800 | $12.680 |
| Purchase | 12/11/2013 | 800 | $12.600 |
| Purchase | 12/11/2013 | 2000 | $12.599 |
| Purchase | 12/11/2013 | 3500 | $12.675 |
| Purchase | 12/11/2013 | 4524 | $12.680 |
| Purchase | 12/11/2013 | 6100 | $12.600 |
| Purchase | 12/11/2013 | 7895 | $12.595 |
| Purchase | 12/11/2013 | 9700 | $12.430 |
| Purchase | 12/11/2013 | 10000 | $12.510 |
| Purchase | 12/11/2013 | 10000 | $12.505 |
| Purchase | 12/11/2013 | 10822 | $12.690 |
| Purchase | 12/11/2013 | 11100 | $12.590 |
| Purchase | 12/11/2013 | 12005 | $12.600 |
| Purchase | 12/11/2013 | 20000 | $12.690 |
| Purchase | 12/11/2013 | 20000 | $12.590 |
| Purchase | 12/11/2013 | 20000 | $12.585 |
| Purchase | 12/12/2013 | 2039 | $12.420 |
| Purchase | 12/12/2013 | 3100 | $12.460 |
| Purchase | 12/12/2013 | 4861 | $12.460 |
| Purchase | 12/19/2013 | 3500 | $12.620 |
| Purchase | 12/19/2013 | 16500 | $12.620 |
| Purchase | 12/19/2013 | 20000 | $12.600 |
| Purchase | 12/20/2013 | 444 | $12.609 |
| Purchase | 12/20/2013 | 1000 | $12.577 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 12/20/2013 | 1056 | $12.605 |
| Purchase | 12/20/2013 | 5000 | $12.590 |
| Purchase | 12/20/2013 | 5500 | $12.610 |
| Purchase | 12/20/2013 | 6256 | $12.620 |
| Purchase | 12/20/2013 | 8000 | $12.610 |
| Purchase | 12/20/2013 | 9744 | $12.630 |
| Purchase | 12/23/2013 | 3000 | $12.615 |
| Purchase | 12/24/2013 | 100 | $12.736 |
| Purchase | 12/31/2013 | 10000 | $12.720 |
| Purchase | 1/9/2014 | 10000 | $12.640 |
| Purchase | 1/10/2014 | 1900 | $12.715 |
| Purchase | 1/10/2014 | 4100 | $12.720 |
| Purchase | 02/11/2014 | 8000 | $13.79 |
| Purchase | 02/12/2014 | 192 | $13.52 |
| Purchase | 02/12/2014 | 3000 | $13.56 |
| Purchase | 02/12/2014 | 3000 | $13.52 |
| Purchase | 02/12/2014 | 3912 | $13.53 |
| Purchase | 02/12/2014 | 4088 | $13.53 |
| Purchase | 02/12/2014 | 4808 | $13.51 |
| Purchase | 02/12/2014 | 5000 | $13.56 |
| Purchase | 02/12/2014 | 8000 | $13.52 |
| Purchase | 02/12/2014 | 8000 | $13.55 |
| Purchase | 03/19/2014 | 378 | $14.12 |
| Purchase | 03/19/2014 | 900 | $14.15 |
| Purchase | 03/19/2014 | 1322 | $14.12 |
| Purchase | 03/19/2014 | 1500 | $14.23 |
| Purchase | 03/19/2014 | 1500 | $14.17 |
| Purchase | 03/19/2014 | 1500 | $14.12 |
| Purchase | 03/19/2014 | 2500 | $14.23 |
| Purchase | 03/19/2014 | 2500 | $14.17 |
| Purchase | 03/19/2014 | 3100 | $14.15 |
| Purchase | 03/19/2014 | 4800 | $14.12 |
| Purchase | 03/19/2014 | 20000 | $14.24 |
| Purchase | 03/31/2014 | 100 | $13.87 |
| Purchase | 03/31/2014 | 1000 | $13.89 |
| Purchase | 03/31/2014 | 6900 | $13.87 |
| Purchase | 04/01/2014 | 1500 | $13.95 |
| Purchase | 04/01/2014 | 1900 | $13.95 |
| Purchase | 04/01/2014 | 2200 | $13.90 |
| Purchase | 04/01/2014 | 4000 | $13.92 |
| Purchase | 04/01/2014 | 4000 | $13.90 |
| Purchase | 04/01/2014 | 4600 | $13.94 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 04/01/2014 | 5800 | $13.90 |
| Purchase | 04/01/2014 | 8000 | $13.99 |
| Purchase | 04/01/2014 | 8000 | $13.90 |
| Purchase | 04/03/2014 | 1 | $13.95 |
| Purchase | 04/03/2014 | 3566 | $13.95 |
| Purchase | 04/03/2014 | 8000 | $13.93 |
| Purchase | 04/03/2014 | 13800 | $13.96 |
| Purchase | 04/03/2014 | 14633 | $13.97 |
| Purchase | 04/07/2014 | 200 | $13.85 |
| Purchase | 04/07/2014 | 8000 | $13.99 |
| Purchase | 04/07/2014 | 8000 | $13.88 |
| Purchase | 04/07/2014 | 11800 | $13.85 |
| Purchase | 04/07/2014 | 20000 | $13.85 |
| Purchase | 04/08/2014 | 2000 | $13.68 |
| Purchase | 04/08/2014 | 4000 | $13.74 |
| Purchase | 04/08/2014 | 4000 | $13.74 |
| Purchase | 04/08/2014 | 4000 | $13.70 |
| Purchase | 04/08/2014 | 6000 | $13.68 |
| Purchase | 04/08/2014 | 8000 | $13.69 |
| Purchase | 04/08/2014 | 8000 | $13.69 |
| Purchase | 04/08/2014 | 12000 | $13.70 |
| Purchase | 04/09/2014 | 100 | $13.55 |
| Purchase | 04/09/2014 | 200 | $13.63 |
| Purchase | 04/09/2014 | 300 | $13.55 |
| Purchase | 04/09/2014 | 852 | $13.55 |
| Purchase | 04/09/2014 | 1200 | $13.63 |
| Purchase | 04/09/2014 | 1248 | $13.56 |
| Purchase | 04/09/2014 | 1500 | $13.63 |
| Purchase | 04/09/2014 | 1500 | $13.52 |
| Purchase | 04/09/2014 | 1500 | $13.55 |
| Purchase | 04/09/2014 | 1500 | $13.56 |
| Purchase | 04/09/2014 | 2500 | $13.63 |
| Purchase | 04/09/2014 | 2500 | $13.52 |
| Purchase | 04/09/2014 | 2500 | $13.55 |
| Purchase | 04/09/2014 | 2600 | $13.63 |
| Purchase | 04/09/2014 | 4000 | $13.62 |
| Purchase | 04/09/2014 | 4000 | $13.59 |
| Purchase | 04/09/2014 | 4000 | $13.56 |
| Purchase | 04/17/2014 | 8000 | $13.21 |
| Purchase | 04/21/2014 | 800 | $13.21 |
| Purchase | 04/21/2014 | 7200 | $13.21 |
| Purchase | 04/23/2014 | 4000 | $13.32 |

13

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 04/23/2014 | 4000 | $13.40 |
| Purchase | 04/23/2014 | 4000 | $13.38 |
| Purchase | 04/23/2014 | 4000 | $13.38 |
| Purchase | 04/23/2014 | 4000 | $13.35 |
| Purchase | 04/23/2014 | 4000 | $13.35 |
| Purchase | 04/23/2014 | 4000 | $13.28 |
| Purchase | 04/23/2014 | 4000 | $13.28 |
| Purchase | 04/23/2014 | 8000 | $13.28 |
| Purchase | 04/24/2014 | 3300 | $13.21 |
| Purchase | 04/24/2014 | 4000 | $13.22 |
| Purchase | 04/24/2014 | 4000 | $13.26 |
| Purchase | 04/24/2014 | 4700 | $13.21 |
| Purchase | 04/25/2014 | 4000 | $13.15 |
| Purchase | 04/25/2014 | 4000 | $13.11 |
| Purchase | 04/25/2014 | 100 | $13.17 |
| Purchase | 04/25/2014 | 500 | $13.12 |
| Purchase | 04/25/2014 | 900 | $13.12 |
| Purchase | 04/25/2014 | 900 | $13.14 |
| Purchase | 04/25/2014 | 1500 | $13.13 |
| Purchase | 04/25/2014 | 1500 | $13.01 |
| Purchase | 04/25/2014 | 1702 | $13.12 |
| Purchase | 04/25/2014 | 1900 | $13.17 |
| Purchase | 04/25/2014 | 2000 | $13.16 |
| Purchase | 04/25/2014 | 3998 | $13.15 |
| Purchase | 04/25/2014 | 4000 | $13.17 |
| Purchase | 04/25/2014 | 4000 | $13.19 |
| Purchase | 04/25/2014 | 4000 | $13.16 |
| Purchase | 04/25/2014 | 4000 | $13.14 |
| Purchase | 04/25/2014 | 4000 | $13.11 |
| Purchase | 04/25/2014 | 4000 | $13.10 |
| Purchase | 04/25/2014 | 4000 | $13.10 |
| Purchase | 04/25/2014 | 4000 | $13.00 |
| Purchase | 04/25/2014 | 6500 | $13.13 |
| Purchase | 04/25/2014 | 6500 | $13.01 |
| Purchase | 04/25/2014 | 8000 | $13.09 |
| Purchase | 04/28/2014 | 1000 | $12.91 |
| Purchase | 04/28/2014 | 3000 | $12.91 |
| Purchase | 04/28/2014 | 4000 | $13.00 |
| Purchase | 04/28/2014 | 4000 | $12.97 |
| Purchase | 04/28/2014 | 4000 | $12.87 |
| Purchase | 04/29/2014 | 100 | $13.00 |
| Purchase | 04/29/2014 | 200 | $12.98 |

14

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| <u>Transaction</u> | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|
| Purchase | 04/29/2014 | 300 | $12.89 |
| Purchase | 04/29/2014 | 700 | $12.88 |
| Purchase | 04/29/2014 | 700 | $12.97 |
| Purchase | 04/29/2014 | 1000 | $12.91 |
| Purchase | 04/29/2014 | 1000 | $13.00 |
| Purchase | 04/29/2014 | 1000 | $13.00 |
| Purchase | 04/29/2014 | 1000 | $12.92 |
| Purchase | 04/29/2014 | 1100 | $13.00 |
| Purchase | 04/29/2014 | 1900 | $12.92 |
| Purchase | 04/29/2014 | 4000 | $13.00 |
| Purchase | 04/29/2014 | 4000 | $13.00 |
| Purchase | 04/29/2014 | 4000 | $13.00 |
| Purchase | 04/29/2014 | 7000 | $12.92 |
| Purchase | 04/30/2014 | 8000 | $12.87 |
| Purchase | 05/05/2014 | 400 | $13.04 |
| Purchase | 05/05/2014 | 1000 | $12.95 |
| Purchase | 05/05/2014 | 3600 | $12.96 |
| Purchase | 05/05/2014 | 4000 | $12.96 |
| Purchase | 05/05/2014 | 7000 | $12.95 |
| Purchase | 05/05/2014 | 8000 | $12.95 |
| Purchase | 05/14/2014 | 6000 | $13.19 |
| Purchase | 05/21/2014 | 50 | $12.57 |
| Purchase | 05/21/2014 | 8000 | $12.20 |
| Purchase | 05/21/2014 | 19950 | $12.57 |
| Purchase | 05/21/2014 | 20000 | $12.57 |
| Purchase | 05/22/2014 | 2500 | $12.10 |
| Purchase | 05/22/2014 | 9500 | $12.08 |
| Purchase | 05/23/2014 | 20000 | $12.33 |
| Purchase | 05/29/2014 | 600 | $12.35 |
| Purchase | 05/29/2014 | 1400 | $12.31 |
| Purchase | 05/29/2014 | 1403 | $12.30 |
| Purchase | 05/29/2014 | 6597 | $12.30 |
| Purchase | 05/29/2014 | 30000 | $12.35 |
| Purchase | 06/02/2014 | 1100 | $12.31 |
| Purchase | 06/02/2014 | 4347 | $12.35 |
| Purchase | 06/02/2014 | 4553 | $12.31 |
| Purchase | 06/02/2014 | 5000 | $12.29 |
| Purchase | 06/02/2014 | 5000 | $12.29 |
| Purchase | 06/02/2014 | 20000 | $12.31 |
| Purchase | 06/09/2014 | 8000 | $12.25 |
| Purchase | 06/12/2014 | 5000 | $11.78 |
| Purchase | 06/12/2014 | 7000 | $11.78 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 06/17/2014 | 4000 | $12.06 |
| Purchase | 06/17/2014 | 8000 | $11.98 |
| Purchase | 06/18/2014 | 8000 | $12.02 |
| Purchase | 08/18/2014 | 8000 | $12.91 |
| Purchase | 08/18/2014 | 8000 | $12.91 |
| Purchase | 08/18/2014 | 8000 | $12.89 |
| Purchase | 08/18/2014 | 8000 | $12.90 |
| Purchase | 08/18/2014 | 8000 | $12.90 |
| Purchase | 08/18/2014 | 8000 | $12.85 |
| Purchase | 08/19/2014 | 8000 | $12.98 |
| Purchase | 08/20/2014 | 800 | $13.10 |
| Purchase | 08/20/2014 | 1000 | $12.93 |
| Purchase | 08/20/2014 | 6000 | $12.94 |
| Purchase | 08/21/2014 | 200 | $13.14 |
| Purchase | 09/03/2014 | 8000 | $13.26 |
| Purchase | 09/04/2014 | 6000 | $13.09 |
| Purchase | 09/04/2014 | 6000 | $13.06 |
| Purchase | 09/11/2014 | 1000 | $12.97 |
| Purchase | 09/12/2014 | 950 | $12.82 |
| Purchase | 09/15/2014 | 550 | $12.74 |
| Purchase | 09/15/2014 | 1000 | $12.46 |
| Purchase | 09/15/2014 | 5000 | $12.53 |
| Purchase | 09/15/2014 | 5500 | $12.53 |
| Purchase | 09/17/2014 | 1000 | $12.67 |
| Purchase | 09/19/2014 | 150 | $12.37 |
| Purchase | 09/23/2014 | 390 | $12.30 |
| Purchase | 10/01/2014 | 1460 | $12.07 |
| Purchase | 10/02/2014 | 800 | $12.00 |
| Purchase | 10/06/2014 | 2000 | $12.00 |
| Purchase | 10/08/2014 | 200 | $11.84 |
| Purchase | 10/09/2014 | 400 | $11.88 |
| Purchase | 10/13/2014 | 2800 | $11.58 |
| Purchase | 10/16/2014 | 200 | $11.60 |
| Purchase | 10/16/2014 | 800 | $11.75 |
| Purchase | 10/16/2014 | 5800 | $11.65 |
| Purchase | 10/16/2014 | 5800 | $11.67 |
| Purchase | 10/17/2014 | 500 | $12.09 |
| Purchase | 10/23/2014 | 400 | $12.11 |
| Purchase | 10/28/2014 | 50 | $12.42 |
| Purchase | 10/28/2014 | 1150 | $12.42 |
| | | | |
| Sale | 6/13/2013 | 100 | $14.695 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 6/13/2013 | 500 | $14.670 |
| Sale | 6/13/2013 | 1000 | $14.690 |
| Sale | 6/13/2013 | 1200 | $14.712 |
| Sale | 6/13/2013 | 2900 | $14.692 |
| Sale | 6/13/2013 | 3500 | $14.671 |
| Sale | 6/13/2013 | 6800 | $14.710 |
| Sale | 6/13/2013 | 8000 | $14.240 |
| Sale | 6/13/2013 | 8000 | $14.490 |
| Sale | 6/13/2013 | 8000 | $14.490 |
| Sale | 6/13/2013 | 8000 | $14.550 |
| Sale | 6/20/2013 | 2763 | $14.611 |
| Sale | 6/20/2013 | 5237 | $14.650 |
| Sale | 6/20/2013 | 8000 | $14.662 |
| Sale | 6/24/2013 | 300 | $14.690 |
| Sale | 6/24/2013 | 800 | $14.670 |
| Sale | 6/24/2013 | 3400 | $14.690 |
| Sale | 6/24/2013 | 3500 | $14.670 |
| Sale | 6/24/2013 | 8000 | $14.590 |
| Sale | 6/24/2013 | 8000 | $14.590 |
| Sale | 6/25/2013 | 1940 | $14.751 |
| Sale | 6/25/2013 | 2100 | $14.790 |
| Sale | 6/25/2013 | 3960 | $14.790 |
| Sale | 6/25/2013 | 8000 | $14.774 |
| Sale | 7/5/2013 | 3100 | $14.233 |
| Sale | 7/5/2013 | 4900 | $14.234 |
| Sale | 7/5/2013 | 8000 | $14.290 |
| Sale | 7/5/2013 | 8000 | $14.291 |
| Sale | 7/8/2013 | 2800 | $14.380 |
| Sale | 7/8/2013 | 100 | $14.230 |
| Sale | 7/8/2013 | 1500 | $14.210 |
| Sale | 7/8/2013 | 2300 | $14.230 |
| Sale | 7/8/2013 | 3627 | $14.250 |
| Sale | 7/8/2013 | 4000 | $14.220 |
| Sale | 7/8/2013 | 4000 | $14.220 |
| Sale | 7/8/2013 | 4373 | $14.250 |
| Sale | 7/8/2013 | 4483 | $14.310 |
| Sale | 7/8/2013 | 6500 | $14.215 |
| Sale | 7/8/2013 | 8000 | $14.290 |
| Sale | 7/8/2013 | 8000 | $14.290 |
| Sale | 7/8/2013 | 8596 | $14.270 |
| Sale | 7/9/2013 | 2000 | $14.230 |
| Sale | 7/9/2013 | 2300 | $14.245 |

17

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 7/9/2013 | 3700 | $14.240 |
| Sale | 7/9/2013 | 4041 | $14.340 |
| Sale | 7/9/2013 | 7159 | $14.370 |
| Sale | 7/9/2013 | 8000 | $14.290 |
| Sale | 7/9/2013 | 8000 | $14.340 |
| Sale | 7/9/2013 | 8000 | $14.290 |
| Sale | 7/9/2013 | 8000 | $14.290 |
| Sale | 7/26/2013 | 100 | $14.661 |
| Sale | 7/26/2013 | 200 | $14.660 |
| Sale | 7/26/2013 | 300 | $14.623 |
| Sale | 7/26/2013 | 700 | $14.664 |
| Sale | 7/26/2013 | 700 | $14.664 |
| Sale | 7/26/2013 | 895 | $14.660 |
| Sale | 7/26/2013 | 1300 | $14.660 |
| Sale | 7/26/2013 | 1500 | $14.523 |
| Sale | 7/26/2013 | 1500 | $14.584 |
| Sale | 7/26/2013 | 1500 | $14.660 |
| Sale | 7/26/2013 | 1600 | $14.660 |
| Sale | 7/26/2013 | 1700 | $14.663 |
| Sale | 7/26/2013 | 1700 | $14.661 |
| Sale | 7/26/2013 | 2405 | $14.640 |
| Sale | 7/26/2013 | 2500 | $14.520 |
| Sale | 7/26/2013 | 2825 | $14.665 |
| Sale | 7/26/2013 | 2875 | $14.660 |
| Sale | 7/26/2013 | 4000 | $14.490 |
| Sale | 7/26/2013 | 5500 | $14.665 |
| Sale | 7/26/2013 | 6500 | $14.580 |
| Sale | 7/26/2013 | 7700 | $14.620 |
| Sale | 7/26/2013 | 8000 | $14.390 |
| Sale | 7/26/2013 | 8000 | $14.440 |
| Sale | 7/26/2013 | 8000 | $14.540 |
| Sale | 7/26/2013 | 8000 | $14.660 |
| Sale | 7/31/2013 | 500 | $14.675 |
| Sale | 7/31/2013 | 7500 | $14.670 |
| Sale | 8/9/2013 | 100 | $13.941 |
| Sale | 8/9/2013 | 200 | $13.955 |
| Sale | 8/9/2013 | 1000 | $13.960 |
| Sale | 8/9/2013 | 1100 | $13.970 |
| Sale | 8/9/2013 | 1300 | $13.950 |
| Sale | 8/9/2013 | 1500 | $13.943 |
| Sale | 8/9/2013 | 2300 | $13.970 |
| Sale | 8/9/2013 | 2652 | $13.940 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 8/9/2013 | 3200 | $13.970 |
| Sale | 8/9/2013 | 3548 | $13.950 |
| Sale | 8/9/2013 | 3700 | $13.961 |
| Sale | 8/9/2013 | 5700 | $13.971 |
| Sale | 8/9/2013 | 6700 | $13.940 |
| Sale | 8/9/2013 | 7000 | $13.950 |
| Sale | 8/29/2013 | 147 | $13.490 |
| Sale | 8/29/2013 | 200 | $13.565 |
| Sale | 8/29/2013 | 200 | $13.545 |
| Sale | 8/29/2013 | 200 | $13.545 |
| Sale | 8/29/2013 | 300 | $13.530 |
| Sale | 8/29/2013 | 600 | $13.540 |
| Sale | 8/29/2013 | 600 | $13.535 |
| Sale | 8/29/2013 | 667 | $13.520 |
| Sale | 8/29/2013 | 718 | $13.540 |
| Sale | 8/29/2013 | 800 | $13.540 |
| Sale | 8/29/2013 | 1500 | $13.545 |
| Sale | 8/29/2013 | 2200 | $13.545 |
| Sale | 8/29/2013 | 2400 | $13.540 |
| Sale | 8/29/2013 | 3572 | $13.520 |
| Sale | 8/29/2013 | 3589 | $13.520 |
| Sale | 8/29/2013 | 4757 | $13.530 |
| Sale | 8/29/2013 | 4800 | $13.580 |
| Sale | 8/29/2013 | 5614 | $13.550 |
| Sale | 8/29/2013 | 6411 | $13.510 |
| Sale | 8/29/2013 | 8400 | $13.540 |
| Sale | 8/29/2013 | 9076 | $13.540 |
| Sale | 8/29/2013 | 9682 | $13.560 |
| Sale | 8/29/2013 | 10000 | $13.510 |
| Sale | 8/29/2013 | 10024 | $13.530 |
| Sale | 8/29/2013 | 13743 | $13.540 |
| Sale | 8/29/2013 | 20000 | $13.580 |
| Sale | 8/29/2013 | 20000 | $13.580 |
| Sale | 8/29/2013 | 20000 | $13.550 |
| Sale | 8/29/2013 | 39800 | $13.560 |
| Sale | 9/18/2013 | 500 | $12.850 |
| Sale | 9/18/2013 | 600 | $12.850 |
| Sale | 9/18/2013 | 1000 | $12.853 |
| Sale | 9/18/2013 | 1900 | $12.855 |
| Sale | 9/18/2013 | 2000 | $12.850 |
| Sale | 9/18/2013 | 2000 | $12.853 |
| Sale | 9/18/2013 | 4000 | $12.850 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 9/18/2013 | 20000 | $12.850 |
| Sale | 9/26/2013 | 4406 | $12.560 |
| Sale | 9/26/2013 | 8000 | $12.520 |
| Sale | 9/27/2013 | 2609 | $12.520 |
| Sale | 9/27/2013 | 7391 | $12.490 |
| Sale | 9/27/2013 | 8000 | $12.490 |
| Sale | 9/27/2013 | 8000 | $12.441 |
| Sale | 10/1/2013 | 1000 | $12.554 |
| Sale | 10/1/2013 | 1500 | $12.550 |
| Sale | 10/1/2013 | 5500 | $12.550 |
| Sale | 10/1/2013 | 8000 | $12.490 |
| Sale | 10/1/2013 | 8000 | $12.590 |
| Sale | 10/1/2013 | 8000 | $12.550 |
| Sale | 10/2/2013 | 300 | $12.755 |
| Sale | 10/2/2013 | 500 | $12.850 |
| Sale | 10/2/2013 | 1000 | $12.854 |
| Sale | 10/2/2013 | 2000 | $12.654 |
| Sale | 10/2/2013 | 4000 | $12.850 |
| Sale | 10/2/2013 | 6000 | $12.650 |
| Sale | 10/2/2013 | 6500 | $12.850 |
| Sale | 10/2/2013 | 7700 | $12.750 |
| Sale | 10/2/2013 | 8000 | $12.850 |
| Sale | 10/2/2013 | 8000 | $12.854 |
| Sale | 10/2/2013 | 8000 | $12.864 |
| Sale | 10/10/2013 | 4000 | $12.390 |
| Sale | 10/11/2013 | 8000 | $12.370 |
| Sale | 10/11/2013 | 8000 | $12.390 |
| Sale | 10/14/2013 | 703 | $12.370 |
| Sale | 10/15/2013 | 100 | $13.005 |
| Sale | 10/15/2013 | 5000 | $13.000 |
| Sale | 10/15/2013 | 13600 | $12.800 |
| Sale | 10/15/2013 | 66400 | $12.810 |
| Sale | 10/15/2013 | 74900 | $12.990 |
| Sale | 10/17/2013 | 200 | $13.105 |
| Sale | 10/17/2013 | 20000 | $13.220 |
| Sale | 10/17/2013 | 39800 | $13.100 |
| Sale | 10/17/2013 | 40000 | $13.160 |
| Sale | 10/18/2013 | 300 | $13.446 |
| Sale | 10/18/2013 | 600 | $13.435 |
| Sale | 10/18/2013 | 700 | $13.450 |
| Sale | 10/18/2013 | 1300 | $13.448 |
| Sale | 10/18/2013 | 2700 | $13.445 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 10/18/2013 | 3000 | $13.440 |
| Sale | 10/18/2013 | 4600 | $13.345 |
| Sale | 10/18/2013 | 5400 | $13.350 |
| Sale | 10/18/2013 | 10000 | $13.340 |
| Sale | 10/18/2013 | 12000 | $13.440 |
| Sale | 10/18/2013 | 19400 | $13.430 |
| Sale | 10/18/2013 | 20000 | $13.290 |
| Sale | 10/18/2013 | 20000 | $13.390 |
| Sale | 10/18/2013 | 20000 | $13.400 |
| Sale | 10/21/2013 | 20000 | $13.450 |
| Sale | 10/22/2013 | 14000 | $13.690 |
| Sale | 10/22/2013 | 16000 | $13.590 |
| Sale | 10/23/2013 | 100 | $13.920 |
| Sale | 10/23/2013 | 500 | $13.870 |
| Sale | 10/23/2013 | 1000 | $13.890 |
| Sale | 10/23/2013 | 1500 | $13.910 |
| Sale | 10/23/2013 | 4400 | $13.850 |
| Sale | 10/23/2013 | 5000 | $13.860 |
| Sale | 10/23/2013 | 5600 | $13.840 |
| Sale | 10/23/2013 | 9000 | $13.850 |
| Sale | 10/23/2013 | 10000 | $13.790 |
| Sale | 10/23/2013 | 14500 | $13.850 |
| Sale | 10/23/2013 | 18400 | $13.900 |
| Sale | 10/25/2013 | 1300 | $13.645 |
| Sale | 10/25/2013 | 18700 | $13.640 |
| Sale | 10/31/2013 | 20000 | $13.260 |
| Sale | 11/4/2013 | 464 | $13.450 |
| Sale | 11/4/2013 | 19536 | $13.440 |
| Sale | 11/4/2013 | 20000 | $13.360 |
| Sale | 11/11/2013 | 20000 | $12.790 |
| Sale | 11/12/2013 | 7200 | $12.860 |
| Sale | 11/12/2013 | 12800 | $12.860 |
| Sale | 11/13/2013 | 1000 | $13.090 |
| Sale | 11/13/2013 | 2000 | $13.110 |
| Sale | 11/13/2013 | 2700 | $13.005 |
| Sale | 11/13/2013 | 2900 | $12.950 |
| Sale | 11/13/2013 | 17000 | $13.100 |
| Sale | 11/13/2013 | 17100 | $12.950 |
| Sale | 11/13/2013 | 17300 | $13.000 |
| Sale | 11/13/2013 | 20000 | $13.000 |
| Sale | 11/13/2013 | 20000 | $13.000 |
| Sale | 11/13/2013 | 20000 | $12.950 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 11/21/2013 | 100 | $13.000 |
| Sale | 11/22/2013 | 6800 | $13.040 |
| Sale | 11/22/2013 | 7500 | $13.000 |
| Sale | 11/22/2013 | 12500 | $13.001 |
| Sale | 11/22/2013 | 13200 | $13.040 |
| Sale | 12/16/2013 | 20000 | $12.800 |
| Sale | 12/18/2013 | 3600 | $12.860 |
| Sale | 12/18/2013 | 16400 | $12.870 |
| Sale | 12/24/2013 | 500 | $12.745 |
| Sale | 12/24/2013 | 2200 | $12.740 |
| Sale | 12/24/2013 | 8376 | $12.731 |
| Sale | 12/24/2013 | 11724 | $12.740 |
| Sale | 12/24/2013 | 17300 | $12.740 |
| Sale | 12/26/2013 | 400 | $12.800 |
| Sale | 12/26/2013 | 1639 | $12.800 |
| Sale | 12/26/2013 | 3900 | $12.805 |
| Sale | 12/26/2013 | 5700 | $12.800 |
| Sale | 12/26/2013 | 10000 | $12.790 |
| Sale | 12/26/2013 | 18361 | $12.810 |
| Sale | 12/27/2013 | 20000 | $12.790 |
| Sale | 12/30/2013 | 2700 | $12.910 |
| Sale | 12/30/2013 | 7300 | $12.901 |
| Sale | 12/30/2013 | 10000 | $12.880 |
| Sale | 12/31/2013 | 900 | $12.830 |
| Sale | 12/31/2013 | 1500 | $12.835 |
| Sale | 12/31/2013 | 7600 | $12.831 |
| Sale | 12/31/2013 | 10000 | $12.890 |
| Sale | 12/31/2013 | 10000 | $12.910 |
| Sale | 1/2/2014 | 3595 | $12.880 |
| Sale | 1/2/2014 | 6405 | $12.870 |
| Sale | 1/2/2014 | 10000 | $12.990 |
| Sale | 1/10/2014 | 100 | $13.025 |
| Sale | 1/10/2014 | 300 | $12.815 |
| Sale | 1/10/2014 | 4404 | $12.830 |
| Sale | 1/10/2014 | 5596 | $12.820 |
| Sale | 1/10/2014 | 5700 | $12.811 |
| Sale | 1/10/2014 | 9900 | $13.020 |
| Sale | 1/10/2014 | 10000 | $12.990 |
| Sale | 1/13/2014 | 614 | $13.025 |
| Sale | 1/13/2014 | 1100 | $13.040 |
| Sale | 1/13/2014 | 1900 | $13.040 |
| Sale | 1/13/2014 | 3000 | $13.040 |

22

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 1/13/2014 | 3000 | $13.040 |
| Sale | 1/13/2014 | 7000 | $13.040 |
| Sale | 1/13/2014 | 7000 | $13.040 |
| Sale | 1/13/2014 | 8100 | $13.040 |
| Sale | 1/13/2014 | 8900 | $13.040 |
| Sale | 1/13/2014 | 9386 | $13.021 |
| Sale | 1/13/2014 | 10000 | $13.020 |
| Sale | 1/16/2014 | 1000 | $13.620 |
| Sale | 1/16/2014 | 1000 | $13.615 |
| Sale | 1/16/2014 | 8000 | $13.610 |
| Sale | 1/16/2014 | 10000 | $13.610 |
| Sale | 1/21/2014 | 3000 | $13.820 |
| Sale | 1/21/2014 | 7000 | $13.820 |
| Sale | 1/21/2014 | 10000 | $13.720 |
| Sale | 02/13/2014 | 8000 | $13.82 |
| Sale | 03/31/2014 | 8000 | $14.01 |
| Sale | 04/07/2014 | 100 | $14.02 |
| Sale | 04/07/2014 | 3400 | $14.01 |
| Sale | 04/07/2014 | 4500 | $14.01 |
| Sale | 04/21/2014 | 8000 | $13.37 |
| Sale | 04/21/2014 | 8000 | $13.36 |
| Sale | 04/23/2014 | 4000 | $13.41 |
| Sale | 04/23/2014 | 4000 | $13.44 |
| Sale | 05/13/2014 | 5900 | $13.47 |
| Sale | 05/13/2014 | 100 | $13.47 |
| Sale | 6/7/2013 | 1400 | $15.004 |
| Sale | 6/7/2013 | 6600 | $15.000 |
| Sale | 08/18/2014 | 8000 | $12.96 |
| Sale | 08/19/2014 | 8000 | $12.94 |
| Sale | 09/02/2014 | 8000 | $13.32 |
| Sale | 09/05/2014 | 100 | $13.20 |
| Sale | 09/05/2014 | 200 | $13.30 |
| Sale | 09/05/2014 | 4000 | $13.22 |
| Sale | 09/05/2014 | 4000 | $13.25 |
| Sale | 09/05/2014 | 4800 | $13.29 |
| Sale | 09/05/2014 | 5900 | $13.19 |
| Sale | 09/05/2014 | 6000 | $13.16 |
| Sale | 9/24/2013 | 100 | $12.565 |
| Sale | 9/24/2013 | 1000 | $12.544 |
| Sale | 9/24/2013 | 3300 | $12.560 |
| Sale | 9/24/2013 | 3300 | $12.560 |
| Sale | 9/24/2013 | 4300 | $12.540 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 9/24/2013 | 8000 | $12.521 |
| Sale | 9/24/2013 | 8000 | $12.550 |
| Sale | 9/25/2013 | 2000 | $12.524 |
| Sale | 9/25/2013 | 4000 | $12.521 |
| Sale | 9/25/2013 | 6000 | $12.520 |
| Sale | 9/25/2013 | 8000 | $12.520 |
| Sale | 10/21/2014 | 100 | $12.15 |

**PAUL MATTEN**
**(pfd stock-6.7%,**
**Ser. F)**

| | | | |
|---|---|---|---|
| Purchase | 01/22/2014 | 100 | $21.330 |
| Purchase | 01/22/2014 | 200 | $21.340 |
| Purchase | 01/22/2014 | 200 | $21.390 |
| Purchase | 01/22/2014 | 500 | $21.290 |
| Purchase | 01/22/2014 | 1500 | $21.390 |
| Purchase | 01/22/2014 | 2901 | $21.400 |
| Purchase | 01/22/2014 | 3099 | $21.300 |
| Purchase | 01/22/2014 | 3600 | $21.293 |
| Purchase | 01/22/2014 | 4400 | $21.292 |
| Purchase | 01/22/2014 | 7500 | $21.400 |
| Purchase | 1/24/2014 | 3600 | $21.214 |
| Purchase | 1/24/2014 | 4400 | $21.214 |
| Purchase | 1/27/2014 | 1000 | $21.030 |
| Purchase | 1/27/2014 | 3000 | $21.026 |
| Purchase | 1/27/2014 | 3600 | $21.098 |
| Purchase | 1/27/2014 | 4000 | $21.027 |
| Purchase | 1/27/2014 | 4400 | $21.098 |
| Sale | 01/29/2014 | 200 | $21.150 |
| Sale | 01/29/2014 | 400 | $21.156 |
| Sale | 01/29/2014 | 594 | $21.270 |
| Sale | 01/29/2014 | 881 | $21.159 |
| Sale | 01/29/2014 | 1700 | $21.275 |
| Sale | 01/29/2014 | 2606 | $21.204 |
| Sale | 01/29/2014 | 2954 | $21.200 |
| Sale | 01/29/2014 | 3100 | $21.200 |
| Sale | 01/29/2014 | 3565 | $21.180 |
| Sale | 1/30/2014 | 1800 | $21.420 |

24

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 1/30/2014 | 1800 | $21.420 |
| Sale | 1/30/2014 | 2200 | $21.427 |
| Sale | 1/30/2014 | 2200 | $21.427 |
| Sale | 1/30/2014 | 3400 | $21.250 |
| Sale | 1/30/2014 | 4600 | $21.257 |
| Sale | 3/19/2014 | 2500 | $22.900 |
| Sale | 3/19/2014 | 13418 | $22.880 |
| Sale | 3/19/2014 | 82 | $22.895 |

**MATTEN
FAMILY TRUST
DECENDENTS
(pfd stock-6.7%,
Ser. F)**

| | | | |
|---|---|---|---|
| Purchase | 1/22/2014 | 600 | $21.39 |
| Purchase | 1/22/2014 | 1400 | $21.41 |
| Purchase | 1/22/2014 | 2000 | $21.40 |
| Purchase | 1/24/2014 | 100 | $21.09 |
| Purchase | 1/24/2014 | 800 | $21.10 |
| Purchase | 1/24/2014 | 1100 | $21.10 |
| Purchase | 1/27/2014 | 900 | $21.04 |
| Purchase | 1/27/2014 | 1100 | $21.04 |
| Purchase | 1/31/2014 | 2000 | $20.98 |
| Sale | 01/30/2014 | 400 | $21.41 |
| Sale | 01/30/2014 | 607 | $21.41 |
| Sale | 01/30/2014 | 900 | $21.26 |
| Sale | 01/30/2014 | 993 | $21.42 |
| Sale | 01/30/2014 | 1100 | $21.26 |
| Sale | 02/06/2014 | 2000 | $21.22 |
| Sale | 03/19/2014 | 2000 | $22.91 |
| Sale | 03/19/2014 | 2000 | $22.83 |

**PAUL MATTEN
09/20/2014 CALL
13**

| | | | |
|---|---|---|---|
| Purchase | 09/08/2014 | 5000 | $0.35 |

25

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 09/08/2014 | 2000 | $0.30 |
| Purchase | 09/10/2014 | 6000 | $0.25 |
| Purchase | 09/10/2014 | 500 | $0.20 |
| Sell | 09/10/2014 | 500 | $0.20 |
| Sell | 09/11/2014 | 1000 | $0.10 |

**PAUL MATTEN**
**CF**

| | | | |
|---|---|---|---|
| Purchase | 7/5/2013 | 100 | $14.18 |
| Purchase | 8/12/2013 | 100 | $13.77 |
| Purchase | 8/13/2013 | 118 | $13.39 |
| Purchase | 11/20/2013 | 82 | $12.95 |
| Purchase | 1/10/2014 | 100 | $12.70 |
| Purchase | 04/28/2014 | 160 | $12.83 |
| Purchase | 05/21/2014 | 149 | $12.31 |
| Purchase | 06/27/2014 | 91 | $12.43 |
| Purchase | 08/18/2014 | 244 | $12.96 |
| Purchase | 09/12/2014 | 156 | $12.97 |
| Purchase | 10/03/2014 | 200 | $11.96 |
| | | | |
| Sale | 1/21/2014 | 100 | $13.84 |

**MATTEN**
**FAMILY TRUST**
**DECENDENTS***

| | | | |
|---|---|---|---|
| Purchase | 3/5/2013 | 1000 | $13.420 |
| Purchase | 3/5/2013 | 100 | $13.479 |
| Purchase | 3/5/2013 | 1100 | $13.480 |
| Purchase | 3/5/2013 | 1,800 | $13.500 |
| Purchase | 3/5/2013 | 2,000 | $13.350 |
| Purchase | 3/20/2013 | 200 | $14.179 |
| Purchase | 3/20/2013 | 800 | $14.180 |
| Purchase | 3/22/2013 | 1,000 | $14.4068 |
| Purchase | 3/22/2013 | 1,000 | $14.3568 |
| Purchase | 3/22/2013 | 1,000 | $14.3099 |
| Purchase | 3/25/2013 | 1,000 | $14.0200 |
| Purchase | 3/25/2013 | 1,000 | $14.0870 |

26

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 3/26/13 | 400 | $14.1172 |
| Purchase | 3/26/13 | 600 | $14.1199 |
| Purchase | 3/26/13 | 1,000 | $14.0399 |
| Purchase | 3/27/2013 | 1,000 | $14.61 |
| Purchase | 3/27/2013 | 1,000 | $14.57 |
| Purchase | 3/27/2013 | 1,000 | $14.4682 |
| Purchase | 3/27/2013 | 1,000 | $14.41 |
| Purchase | 3/28/2013 | 1,000 | $14.36 |
| Purchase | 3/28/2013 | 1,000 | $14.6982 |
| Purchase | 4/1/2013 | 500 | $14.36 |
| Purchase | 4/1/2013 | 500 | $14.3599 |
| Purchase | 4/1/2013 | 1,000 | $14.4599 |
| Purchase | 4/1/2013 | 1,000 | $14.5383 |
| Purchase | 4/3/2013 | 1,000 | $14.46 |
| Purchase | 4/3/2013 | 1,000 | $14.3699 |
| Purchase | 4/4/2013 | 1,000 | $14.5685 |
| Purchase | 4/5/2013 | 400 | $14.7372 |
| Purchase | 4/5/2013 | 600 | $14.7399 |
| Purchase | 4/5/2013 | 1,000 | $14.49 |
| Purchase | 4/5/2013 | 1,000 | $14.6388 |
| Purchase | 4/5/2013 | 1,000 | $14.76 |
| Purchase | 6/3/2013 | 1,200 | $15.01 |
| Purchase | 6/5/2013 | 100 | $15.18 |
| Purchase | 6/5/2013 | 400 | $15.18 |
| Purchase | 6/5/2013 | 700 | $15.18 |
| Purchase | 6/7/2013 | 200 | $15.05 |
| Purchase | 6/7/2013 | 406 | $15.00 |
| Purchase | 6/7/2013 | 794 | $14.99 |
| Purchase | 6/7/2013 | 1,000 | $15.05 |
| Purchase | 6/7/2013 | 1,200 | $14.90 |
| Purchase | 6/10/2013 | 1,000 | $14.79 |
| Purchase | 6/11/2013 | 1,000 | $14.51 |
| Purchase | 6/13/2013 | 2,000 | $14.01 |
| Purchase | 6/27/2013 | 2,000 | $15.15 |
| Purchase | 7/1/2013 | 2,000 | $14.84 |
| Purchase | 7/2/2013 | 800 | $14.69 |
| Purchase | 7/2/2013 | 1,200 | $14.69 |
| Purchase | 7/2/2013 | 2,000 | $14.82 |
| Purchase | 7/8/2013 | 100 | $14.35 |
| Purchase | 7/8/2013 | 100 | $14.35 |
| Purchase | 7/8/2013 | 100 | $14.35 |
| Purchase | 7/8/2013 | 100 | $14.35 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 7/8/2013 | 300 | $14.25 |
| Purchase | 7/8/2013 | 1,300 | $14.35 |
| Purchase | 7/25/2013 | 2,000 | $14.33 |
| Purchase | 7/26/2013 | 2,000 | $14.27 |
| Purchase | 7/31/2013 | 2,000 | $14.54 |
| Purchase | 8/1/2013 | 2000 | $14.28 |
| Purchase | 8/8/2013 | 2000 | $13.58 |
| Purchase | 8/12/2013 | 2000 | $13.79 |
| Purchase | 10/23/2013 | 600 | $13.07 |
| Purchase | 10/23/2013 | 2000 | $13.02 |
| Purchase | 10/23/2013 | 3400 | $13.07 |
| Purchase | 10/30/2013 | 2000 | $13.44 |
| Purchase | 10/30/2013 | 2000 | $13.27 |
| Purchase | 10/31/2013 | 2000 | $13.02 |
| Purchase | 11/4/2013 | 2000 | $13.30 |
| Purchase | 02/06/2014 | 3,000 | $13.72 |
| Purchase | 02/12/2014 | 1,000 | $13.54 |
| Purchase | 03/19/2014 | 200 | $13.88 |
| Purchase | 03/19/2014 | 1,800 | $13.89 |
| Purchase | 03/19/2014 | 2,000 | $14.31 |
| Purchase | 03/19/2014 | 2,000 | $14.31 |
| Purchase | 03/19/2014 | 2,000 | $14.23 |
| Purchase | 03/19/2014 | 2,000 | $13.90 |
| Purchase | 03/27/2014 | 2,000 | $13.80 |
| Purchase | 04/01/2014 | 1,400 | $13.98 |
| Purchase | 04/01/2014 | 2,600 | $13.98 |
| Purchase | 04/03/2014 | 100 | $13.91 |
| Purchase | 04/03/2014 | 662 | $13.92 |
| Purchase | 04/03/2014 | 900 | $13.91 |
| Purchase | 04/03/2014 | 2,338 | $13.91 |
| Purchase | 04/10/2014 | 2,000 | $13.37 |
| Purchase | 04/11/2014 | 800 | $13.25 |
| Purchase | 04/11/2014 | 1,200 | $13.25 |
| Purchase | 04/25/2014 | 2,000 | $13.00 |
| Purchase | 04/25/2014 | 2,000 | $13.00 |
| Purchase | 04/25/2014 | 2,000 | $13.02 |
| Purchase | 04/28/2014 | 2,000 | $12.84 |
| Purchase | 05/08/2014 | 2,000 | $12.68 |
| Purchase | 05/21/2014 | 702 | $12.19 |
| Purchase | 05/21/2014 | 1,298 | $12.20 |
| Purchase | 05/21/2014 | 3,000 | $12.65 |
| Purchase | 05/21/2014 | 3,000 | $12.62 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 05/21/2014 | 4,000 | $12.29 |
| Purchase | 05/21/2014 | 6,000 | $12.26 |
| Purchase | 05/22/2014 | 4,000 | $12.10 |
| Purchase | 05/22/2014 | 4,000 | $12.07 |
| Purchase | 06/11/2014 | 2,000 | $12.02 |
| Purchase | 06/11/2014 | 2,000 | $11.93 |
| Purchase | 06/11/2014 | 2,000 | $11.79 |
| Purchase | 06/12/2014 | 2,000 | $11.82 |
| Purchase | 06/17/2014 | 2,000 | $12.06 |
| Purchase | 06/18/2014 | 600 | $11.95 |
| Purchase | 06/18/2014 | 1,400 | $11.94 |
| Purchase | 06/18/2014 | 2,000 | $12.02 |
| Purchase | 06/18/2014 | 2,000 | $12.01 |
| Purchase | 07/09/2014 | 2,000 | $12.37 |
| Purchase | 07/09/2014 | 2,000 | $12.36 |
| Purchase | 09/12/2014 | 2,000 | $12.55 |
| Purchase | 09/12/2014 | 2,000 | $12.56 |
| Purchase | 09/12/2014 | 2,000 | $12.55 |
| Purchase | 09/12/2014 | 4,000 | $12.68 |
| Purchase | 09/15/2014 | 2,000 | $12.47 |
| Purchase | 09/16/2014 | 2,000 | $12.43 |
| Purchase | 09/16/2014 | 2,000 | $12.57 |
| Purchase | 09/17/2014 | 2,000 | $12.61 |
| Purchase | 09/18/2014 | 4,000 | $12.49 |
| Purchase | 09/18/2014 | 4,000 | $12.39 |
| Purchase | 09/24/2014 | 500 | $12.18 |
| Purchase | 09/25/2014 | 4,000 | $12.06 |
| Purchase | 09/30/2014 | 3,500 | $12.11 |
| Purchase | 10/01/2014 | 1,000 | $12.04 |
| Purchase | 10/08/2014 | 2,000 | $11.84 |
| Purchase | 10/08/2014 | 4,000 | $11.86 |
| Purchase | 10/09/2014 | 2,000 | $11.88 |
| Purchase | 10/29/2014 | 10,000 | $10.15 |
| Purchase | 10/29/2014 | 10,000 | $9.91 |
| | | | |
| Sale | 3/11/2013 | 2,000 | $14.3202 |
| Sale | 3/20/2013 | 1,000 | $14.3001 |
| Sale | 3/25/2013 | 300 | $14.1915 |
| Sale | 3/25/2013 | 700 | $14.1900 |
| Sale | 3/26/2013 | 1,000 | $14.1825 |
| Sale | 3/26/2013 | 1,000 | $14.2018 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 3/27/2013 | 1,000 | $14.69 |
| Sale | 3/27/2013 | 1,000 | $14.48 |
| Sale | 3/27/2013 | 1,000 | $14.7218 |
| Sale | 3/27/2013 | 1,000 | $14.57 |
| Sale | 3/27/2013 | 1,000 | $14.5210 |
| Sale | 3/28/2013 | 200 | $14.8301 |
| Sale | 3/28/2013 | 800 | $14.8328 |
| Sale | 3/28/2013 | 1,000 | $14.4718 |
| Sale | 3/28/2013 | 1,000 | $14.69 |
| Sale | 4/1/2013 | 1,000 | $14.4617 |
| Sale | 4/2/2013 | 100 | $14.655 |
| Sale | 4/2/2013 | 900 | $14.6501 |
| Sale | 4/2/2013 | 1,000 | $14.6701 |
| Sale | 4/3/2013 | 200 | $14.535 |
| Sale | 4/3/2013 | 300 | $14.6415 |
| Sale | 4/3/2013 | 300 | $14.65 |
| Sale | 4/3/2013 | 400 | $14.66 |
| Sale | 4/3/2013 | 800 | $14.5301 |
| Sale | 4/4/2013 | 2 | $14.785 |
| Sale | 4/4/2013 | 400 | $14.6728 |
| Sale | 4/4/2013 | 600 | $14.6715 |
| Sale | 4/4/2013 | 998 | $14.78 |
| Sale | 4/4/2013 | 1,000 | $14.69 |
| Sale | 4/5/2013 | 1,000 | $14.69 |
| Sale | 4/5/2013 | 1,000 | $14.79 |
| Sale | 4/5/2013 | 2,000 | $14.79 |
| Sale | 4/8/2013 | 1,000 | $14.9812 |
| Sale | 5/9/2013 | 1,000 | $17.36 |
| Sale | 5/28/2013 | 200 | $17.53 |
| Sale | 5/28/2013 | 1,800 | $17.34 |
| Sale | 6/13/2013 | 800 | $14.76 |
| Sale | 6/13/2013 | 1,200 | $14.65 |
| Sale | 6/27/2013 | 100 | $15.18 |
| Sale | 6/27/2013 | 811 | $15.15 |
| Sale | 6/27/2013 | 1,089 | $15.18 |
| Sale | 7/26/2013 | 700 | $14.63 |
| Sale | 7/26/2013 | 1,300 | $14.63 |
| Sale | 7/30/2013 | 100 | $14.94 |
| Sale | 7/30/2013 | 1900 | $14.90 |
| Sale | 10/23/2013 | 4000 | $13.85 |
| Sale | 10/23/2013 | 4000 | $13.85 |
| Sale | 10/25/2013 | 2000 | $13.64 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 11/4/2013 | 2000 | $13.69 |
| Sale | 1/16/2014 | 4000 | $13.60 |
| Sale | 1/21/2014 | 3000 | $13.82 |
| Sale | 1/21/2014 | 3000 | $13.98 |
| Sale | 9/15/2014 | 2000 | $12.46 |
| Sale | 10/29/2014 | 10000 | $9.97 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf the New York City Fire Officers' Variable Supplements Fund ("FOSVF") hereby certify, as to the claims asserted under the federal securities laws, that:

1.     I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  FOSVF has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.     FOSVF did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     FOSVF is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     FOSVF's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.     There are no other federal securities action filed during the three years prior to the date of this certification, in which FOSVF has sought to serve as a representative party on behalf of a class.

6.     FOSVF will not accept any payment for serving as a representative party on behalf of the class beyond Fire Officers' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**CERTIFICATION PURSUANT TO**
**FEDERAL SECURITIES LAWS**

I, Kathryn Diaz, on behalf of the Board of Education Retirement System of the City of New York ("BERS") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  BERS has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      BERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      BERS is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      BERS' transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There is one other federal securities action filed during the three years prior to the date of this certification in which BERS has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.      BERS will not accept any payment for serving as a representative party on behalf of the class beyond BERS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Fire Department Pension Fund ("Fire") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  Fire has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      Fire did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      Fire is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Fire's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There are no other federal securities action filed during the three years prior to the date of this certification, in which Fire has sought to serve as a representative party on behalf of a class.

6.      Fire will not accept any payment for serving as a representative party on behalf of the class beyond Fire's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.


Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Police Pension Fund ("Police") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  Police has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      Police did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      Police is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Police's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There is one other federal securities action filed during the three years prior to the date of this certification, in which Police has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.      Police will not accept any payment for serving as a representative party on behalf of the class beyond Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Police Officers' Variable Supplements Fund ("POVSF") hereby certify, as to the claims asserted under the federal securities laws, that:

1.    I am General Counsel at the New York City Office of the Comptroller. I have reviewed a complaint filed in this matter. POVSF has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.    POVSF did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.    POVSF is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    POVSF's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.    There are no other federal securities action filed during the three years prior to the date of this certification in which POVSF has sought to serve as a representative party on behalf of a class.

6.    POVSF will not accept any payment for serving as a representative party on behalf of the class beyond POVSF's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Employees' Retirement System ("NYCERS") hereby certify, as to the claims asserted under the federal securities laws, that:

1.     I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  NYCERS has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.     NYCERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     NYCERS is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     NYCERS' transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.     There is one other federal securities action filed during the three years prior to the date of this certification, in which NYCERS has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.     NYCERS will not accept any payment for serving as a representative party on behalf of the class beyond NYCERS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this *1*th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the Teachers' Retirement System of the City of New York ("TRS") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller. I have reviewed a complaint filed in this matter. TRS has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      TRS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      TRS is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      TRS' transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There is one other federal securities action filed during the three years prior to the date of this certification, in which TRS has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.      TRS will not accept any payment for serving as a representative party on behalf of the class beyond TRS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf the New York City Fire Fighters' Variable Supplements Fund ("FFVSF") hereby certify, as to the claims asserted under the federal securities laws, that:

1.     I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  FFVSF has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.     FFVSF did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     FFVSF is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     FFVSF's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.     There are no other federal securities action filed during the three years prior to the date of this certification, in which FFVSF has sought to serve as a representative party on behalf of a class.

6.     FFVSF will not accept any payment for serving as a representative party on behalf of the class beyond Fire Officers' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Valerie Budzik, on behalf the Teachers' Retirement System of the City of New York Variable A ("TRS Var-A.") hereby certify, as to the claims asserted under the federal securities laws, that:

1.　I am General Counsel at the Teachers' Retirement System of the City of New York. I have reviewed a complaint filed in this matter. TRS Var-A has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.　TRS Var-A did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.　TRS Var-A is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.　Based on initial research, TRS Var-A's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A; research is coninuting.

5.　There are no other federal securities action filed during the three years prior to the date of this certification, in which TRS Var-A has sought to serve as a representative party on behalf of a class.

6.　TRS Var-A will not accept any payment for serving as a representative party on behalf of the class beyond TRS V.A.'s pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 16th day of April, 2015.

Valerie Budzik
General Counsel
*New York City Teachers' Retirement System*

**The Teachers' Retirement System of the City of New York**
**Schedule of Transactions**

| Equity | | | | |
|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
| 02917T104 | 5/7/2013 | Purchase | 5,505 | $ 17.040 |
| 02917T104 | 6/4/2013 | Sale | 5,505 | $ 15.950 |
| 02917T104 | 6/28/2013 | Purchase | 4,654 | $ 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 68,333 | $ 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 71,100 | $ 15.250 |
| 02917T104 | 7/19/2013 | Purchase | 128 | $ 14.760 |
| 02917T104 | 8/30/2013 | Purchase | 584 | $ 13.410 |
| 02917T104 | 9/30/2013 | Purchase | 981 | $ 12.190 |
| 02917T104 | 10/31/2013 | Purchase | 460 | $ 13.270 |
| 02917T104 | 10/31/2013 | Purchase | 944 | $ 13.270 |
| 02917T104 | 11/5/2013 | Sale | 2,083 | $ 13.150 |
| 02917T104 | 11/5/2013 | Sale | 13,298 | $ 13.150 |
| 02917T104 | 12/20/2013 | Purchase | 57 | $ 12.605 |
| 02917T104 | 12/20/2013 | Purchase | 1,103 | $ 12.610 |
| 02917T104 | 1/22/2014 | Purchase | 2,189.08 | $ 13.950 |
| 02917T104 | 1/31/2014 | Purchase | 103 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 377 | $ 13.840 |
| 02917T104 | 1/31/2014 | Purchase | 426 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 1,560 | $ 13.840 |
| 02917T104 | 2/19/2014 | Sale | 0.08 | $ 13.924 |
| 02917T104 | 2/28/2014 | Purchase | 19,227 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 98,630 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 136,900 | $ 14.687 |
| 02917T104 | 3/26/2014 | Sale | 10,249 | $ 13.915 |
| 02917T104 | 3/27/2014 | Sale | 360 | $ 13.800 |
| 02917T104 | 3/31/2014 | Sale | 479 | $ 14.020 |
| 02917T104 | 4/30/2014 | Purchase | 300 | $ 13.082 |
| 02917T104 | 4/30/2014 | Purchase | 397 | $ 13.082 |
| 02917T104 | 5/21/2014 | Purchase | 2,400 | $ 12.300 |
| 02917T104 | 5/21/2014 | Purchase | 16,620 | $ 12.351 |
| 02917T104 | 5/21/2014 | Purchase | 38,790 | $ 12.228 |
| 02917T104 | 5/21/2014 | Purchase | 55,910 | $ 12.297 |
| 02917T104 | 5/21/2014 | Purchase (Offering) | 67,930 | $ 12.000 |
| 02917T104 | 5/22/2014 | Sale | 22,600 | $ 12.382 |
| 02917T104 | 5/22/2014 | Sale | 45,330 | $ 12.301 |
| 02917T104 | 5/30/2014 | Purchase | 24 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 357 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 900 | $ 12.407 |
| 02917T104 | 5/30/2014 | Purchase | 1,935 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 28,872 | $ 12.400 |
| 02917T104 | 5/30/2014 | Sale | 113,720 | $ 12.262 |
| 02917T104 | 6/27/2014 | Purchase | 189,500 | $ 12.498 |
| 02917T104 | 6/27/2014 | Purchase | 441,937 | $ 12.500 |

**The Teachers' Retirement System of the City of New York**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|---|---|---|---|---|
| 02917T104 | 6/27/2014 | Sale | 9,702 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 12,994 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 77,066 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 103,221 | $ 12.500 |
| 02917T104 | 7/29/2014 | Sale | 29,425 | $ 13.230 |
| 02917T104 | 10/22/2014 | Sale | 56,300 | $ 12.070 |

| Fixed Income | | | | |
|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Units | Unit Price |
| 02917TAA2 | 7/24/2013 | Purchase | 68,000 | 0.9942 |
| 02917TAA2 | 7/24/2013 | Purchase | 262,000 | 0.9948 |
| 02917TAA2 | 7/25/2013 | Purchase | 90,000 | 0.9926 |
| 02917TAA2 | 7/25/2013 | Purchase | 240,000 | 0.9926 |
| 02917TAA2 | 10/28/2014 | Purchase | 450,000 | 0.9988 |
| 03879QAA2 | 2/4/2014 | Purchase | 3,830,000 | 0.9997 |
| 03879QAA2 | 2/4/2014 | Sale | 2,685,000 | 1.0007 |
| 03879QAA2 | 2/5/2014 | Sale | 1,145,000 | 1.0020 |
| 03879QAA2 | 6/5/2014 | Purchase | 2,625,000 | 1.0065 |
| 03879QAA2 | 6/27/2014 | Purchase | 1,790,000 | 1.0040 |
| 03879QAA2 | 10/16/2014 | Sale | 4,415,000 | 1.0054 |
| 03879QAB0 | 10/16/2014 | Purchase | 4,415,000 | 1.0054 |
| 03879QAE4 | 4/3/2014 | Purchase | 620,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 1,577,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 2,197,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 2,197,000 | 1.0058 |

**New York City Employees' Retirement System**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 5/7/2013 | Purchase | 3,774 | $ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 3,774 | $ | 15.950 |
| 02917T104 | 6/20/2013 | Purchase | 16,100 | $ | 14.210 |
| 02917T104 | 6/21/2013 | Purchase | 24,600 | $ | 14.200 |
| 02917T104 | 6/24/2013 | Purchase | 24,070 | $ | 14.250 |
| 02917T104 | 6/24/2013 | Purchase | 30,239 | $ | 14.270 |
| 02917T104 | 6/28/2013 | Purchase | 1,139 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 2,389 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 16,731 | $ | 15.240 |
| 02917T104 | 6/28/2013 | Purchase | 17,700 | $ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 35,072 | $ | 15.250 |
| 02917T104 | 7/5/2013 | Purchase | 6,048 | $ | 14.200 |
| 02917T104 | 7/5/2013 | Purchase | 18,143 | $ | 14.220 |
| 02917T104 | 7/10/2013 | Purchase | 9,061 | $ | 14.470 |
| 02917T104 | 7/10/2013 | Purchase | 11,839 | $ | 14.450 |
| 02917T104 | 7/24/2013 | Purchase | 1,453 | $ | 14.510 |
| 02917T104 | 7/24/2013 | Purchase | 2,838 | $ | 14.550 |
| 02917T104 | 7/24/2013 | Purchase | 6,909 | $ | 14.520 |
| 02917T104 | 7/26/2013 | Purchase | 9,057 | $ | 14.670 |
| 02917T104 | 7/26/2013 | Purchase | 10,143 | $ | 14.650 |
| 02917T104 | 7/30/2013 | Purchase | 1,600 | $ | 14.860 |
| 02917T104 | 7/31/2013 | Purchase | 3,789 | $ | 14.610 |
| 02917T104 | 7/31/2013 | Purchase | 8,411 | $ | 14.630 |
| 02917T104 | 8/1/2013 | Purchase | 1,933 | $ | 14.170 |
| 02917T104 | 8/1/2013 | Purchase | 4,567 | $ | 14.200 |
| 02917T104 | 8/30/2013 | Purchase | 238 | $ | 13.410 |
| 02917T104 | 10/16/2013 | Sale | 6,974 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 297 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 383 | $ | 13.280 |
| 02917T104 | 11/26/2013 | Sale | 2,757 | $ | 13.280 |
| 02917T104 | 12/20/2013 | Sale | 201 | $ | 12.610 |
| 02917T104 | 12/20/2013 | Sale | 406 | $ | 12.610 |
| 02917T104 | 1/7/2014 | Sale | 1,606 | $ | 12.876 |
| 02917T104 | 1/7/2014 | Sale | 3,211 | $ | 12.870 |
| 02917T104 | 1/7/2014 | Sale | 6,159 | $ | 12.860 |
| 02917T104 | 1/7/2014 | Sale | 11,824 | $ | 12.864 |
| 02917T104 | 1/8/2014 | Sale | 1,711 | $ | 12.699 |
| 02917T104 | 1/8/2014 | Sale | 4,667 | $ | 12.707 |
| 02917T104 | 1/8/2014 | Sale | 6,339 | $ | 12.712 |
| 02917T104 | 1/8/2014 | Sale | 27,383 | $ | 12.690 |
| 02917T104 | 1/9/2014 | Sale | 21,000 | $ | 12.646 |
| 02917T104 | 1/10/2014 | Sale | 796 | $ | 12.715 |
| 02917T104 | 1/10/2014 | Sale | 3,995 | $ | 12.720 |

**New York City Employees' Retirement System**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|---|---|---|---|---|
| 02917T104 | 1/10/2014 | Sale | 5,718 | $ 12.819 |
| 02917T104 | 1/10/2014 | Sale | 7,750 | $ 12.985 |
| 02917T104 | 1/10/2014 | Sale | 15,882 | $ 12.798 |
| 02917T104 | 1/10/2014 | Sale | 15,900 | $ 12.971 |
| 02917T104 | 1/10/2014 | Sale | 17,109 | $ 12.711 |
| 02917T104 | 1/10/2014 | Sale | 39,750 | $ 12.970 |
| 02917T104 | 1/22/2014 | Purchase | 1,092.9 | $ 13.950 |
| 02917T104 | 1/28/2014 | Sale | 7,200 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 30 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 112 | $ 13.840 |
| 02917T104 | 1/31/2014 | Purchase | 466 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 1,709 | $ 13.840 |
| 02917T104 | 2/14/2014 | Purchase | 600 | $ 13.868 |
| 02917T104 | 2/19/2014 | Sale | 0.9 | $ 13.933 |
| 02917T104 | 2/28/2014 | Purchase | 13,942 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 25,900 | $ 14.769 |
| 02917T104 | 2/28/2014 | Purchase | 72,831 | $ 14.686 |
| 02917T104 | 3/26/2014 | Sale | 47,340 | $ 13.915 |
| 02917T104 | 3/27/2014 | Sale | 293 | $ 13.800 |
| 02917T104 | 3/31/2014 | Sale | 188 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 496 | $ 14.020 |
| 02917T104 | 4/30/2014 | Purchase | 314 | $ 13.082 |
| 02917T104 | 5/30/2014 | Purchase | 25 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 145 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 2,045 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 11,853 | $ 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 39,900 | $ 12.498 |
| 02917T104 | 6/27/2014 | Purchase | 228,540 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 10,573 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 14,161 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 32,048 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 42,924 | $ 12.500 |
| 02917T104 | 7/17/2014 | Purchase | 300 | $ 12.890 |

**New York City Employees' Retirement System**
**Schedule of Transactions**

| Fixed Income | | | | |
|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Units** | **Unit Price** |
| 03879QAA2 | 2/4/2014 | Purchase | 6,005,000 | 0.9997 |
| 03879QAA2 | 2/4/2014 | Sale | 4,200,000 | 1.0007 |
| 03879QAA2 | 2/5/2014 | Sale | 1,805,000 | 1.0020 |
| 03879QAA2 | 6/5/2014 | Purchase | 3,975,000 | 1.0065 |
| 03879QAA2 | 6/27/2014 | Purchase | 2,710,000 | 1.0040 |
| 03879QAA2 | 10/16/2014 | Sale | 6,685,000 | 1.0054 |
| 03879QAB0 | 10/16/2014 | Purchase | 6,685,000 | 1.0054 |
| 03879QAE4 | 4/3/2014 | Purchase | 310,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 810,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 1,120,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 1,120,000 | 1.0058 |

**The New York City Police Pension Fund**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 5/7/2013 | Purchase | 2,099 | $ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 2,099 | $ | 15.950 |
| 02917T104 | 6/20/2013 | Purchase | 6,100 | $ | 14.210 |
| 02917T104 | 6/21/2013 | Purchase | 9,300 | $ | 14.200 |
| 02917T104 | 6/24/2013 | Purchase | 9,107 | $ | 14.250 |
| 02917T104 | 6/24/2013 | Purchase | 11,440 | $ | 14.270 |
| 02917T104 | 6/28/2013 | Purchase | 2,621 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 27,700 | $ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 38,488 | $ | 15.250 |
| 02917T104 | 7/5/2013 | Purchase | 2,288 | $ | 14.200 |
| 02917T104 | 7/5/2013 | Purchase | 6,865 | $ | 14.220 |
| 02917T104 | 7/10/2013 | Purchase | 3,425 | $ | 14.470 |
| 02917T104 | 7/10/2013 | Purchase | 4,475 | $ | 14.450 |
| 02917T104 | 7/19/2013 | Purchase | 69 | $ | 14.760 |
| 02917T104 | 7/24/2013 | Purchase | 545 | $ | 14.510 |
| 02917T104 | 7/24/2013 | Purchase | 1,064 | $ | 14.550 |
| 02917T104 | 7/24/2013 | Purchase | 2,591 | $ | 14.520 |
| 02917T104 | 7/26/2013 | Purchase | 3,443 | $ | 14.670 |
| 02917T104 | 7/26/2013 | Purchase | 3,857 | $ | 14.650 |
| 02917T104 | 7/30/2013 | Purchase | 600 | $ | 14.860 |
| 02917T104 | 7/31/2013 | Purchase | 1,429 | $ | 14.610 |
| 02917T104 | 7/31/2013 | Purchase | 3,171 | $ | 14.630 |
| 02917T104 | 8/1/2013 | Purchase | 743 | $ | 14.170 |
| 02917T104 | 8/1/2013 | Purchase | 1,757 | $ | 14.200 |
| 02917T104 | 8/30/2013 | Purchase | 266 | $ | 13.410 |
| 02917T104 | 9/20/2013 | Purchase | 30,300 | $ | 12.677 |
| 02917T104 | 10/16/2013 | Sale | 1,626 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 473 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 1,503 | $ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 925 | $ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 3,452 | $ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 256 | $ | 12.610 |
| 02917T104 | 1/7/2014 | Sale | 606 | $ | 12.876 |
| 02917T104 | 1/7/2014 | Sale | 1,211 | $ | 12.870 |
| 02917T104 | 1/7/2014 | Sale | 2,323 | $ | 12.860 |
| 02917T104 | 1/7/2014 | Sale | 4,460 | $ | 12.864 |
| 02917T104 | 1/8/2014 | Sale | 649 | $ | 12.699 |
| 02917T104 | 1/8/2014 | Sale | 1,769 | $ | 12.707 |
| 02917T104 | 1/8/2014 | Sale | 2,403 | $ | 12.712 |
| 02917T104 | 1/8/2014 | Sale | 10,379 | $ | 12.690 |
| 02917T104 | 1/9/2014 | Sale | 8,000 | $ | 12.646 |
| 02917T104 | 1/10/2014 | Sale | 298 | $ | 12.715 |
| 02917T104 | 1/10/2014 | Sale | 1,496 | $ | 12.720 |

**The New York City Police Pension Fund**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|---|---|---|---|---|
| 02917T104 | 1/10/2014 | Sale | 2,171 | $ 12.819 |
| 02917T104 | 1/10/2014 | Sale | 2,934 | $ 12.985 |
| 02917T104 | 1/10/2014 | Sale | 6,019 | $ 12.971 |
| 02917T104 | 1/10/2014 | Sale | 6,029 | $ 12.798 |
| 02917T104 | 1/10/2014 | Sale | 6,406 | $ 12.711 |
| 02917T104 | 1/10/2014 | Sale | 15,047 | $ 12.970 |
| 02917T104 | 1/14/2014 | Purchase | 1,300 | $ 13.180 |
| 02917T104 | 1/21/2014 | Purchase | 8,700 | $ 13.988 |
| 02917T104 | 1/28/2014 | Sale | 234 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 205 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 751 | $ 13.840 |
| 02917T104 | 2/7/2014 | Purchase (Merger) | 86,994.84 | $ 13.990 |
| 02917T104 | 2/19/2014 | Sale | 0.84 | $ 13.929 |
| 02917T104 | 2/28/2014 | Purchase | 12,858 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 48,700 | $ 14.687 |
| 02917T104 | 2/28/2014 | Purchase | 61,057 | $ 14.686 |
| 02917T104 | 3/21/2014 | Sale | 900 | $ 14.270 |
| 02917T104 | 3/21/2014 | Sale | 1,800 | $ 14.270 |
| 02917T104 | 3/26/2014 | Sale | 15,740 | $ 13.915 |
| 02917T104 | 3/31/2014 | Purchase | 100 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 997 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 247 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 343 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 295 | $ 13.082 |
| 02917T104 | 5/21/2014 | Purchase | 1,900 | $ 12.260 |
| 02917T104 | 5/28/2014 | Sale | 3,047 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 40 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 154 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 3,336 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 12,533 | $ 12.400 |
| 02917T104 | 6/3/2014 | Purchase | 25,500 | $ 12.726 |
| 02917T104 | 6/20/2014 | Sale | 2,700 | $ 12.590 |
| 02917T104 | 6/27/2014 | Purchase | 86,700 | $ 12.498 |
| 02917T104 | 6/27/2014 | Purchase | 241,632 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 12,290 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 9,176 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 33,328 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 44,639 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 1,304 | $ 13.108 |

**The New York City Police Pension Fund**
**Schedule of Transactions**

| Fixed Income | | | | |
|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Units** | **Unit Price** |
| 03879QAE4 | 4/3/2014 | Purchase | 260,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 680,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 940,000 | 1.0058 |
| 03879QAF1 | 10/17/2014 | Purchase | 940,000 | 1.0058 |

**The New York City Fire Department Pension Fund**
**Schedule of Transactions**

| | | Equity | | | |
|---|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Shares | \$ Share Price | |
| 02917T104 | 6/20/2013 | Purchase | 4,400 | \$ | 14.210 |
| 02917T104 | 6/21/2013 | Purchase | 6,700 | \$ | 14.200 |
| 02917T104 | 6/24/2013 | Purchase | 6,623 | \$ | 14.250 |
| 02917T104 | 6/24/2013 | Purchase | 8,321 | \$ | 14.270 |
| 02917T104 | 6/28/2013 | Purchase | 737 | \$ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 8,300 | \$ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 10,826 | \$ | 15.250 |
| 02917T104 | 7/5/2013 | Purchase | 1,664 | \$ | 14.200 |
| 02917T104 | 7/5/2013 | Purchase | 4,992 | \$ | 14.220 |
| 02917T104 | 7/10/2013 | Purchase | 2,514 | \$ | 14.470 |
| 02917T104 | 7/10/2013 | Purchase | 3,286 | \$ | 14.450 |
| 02917T104 | 7/24/2013 | Purchase | 389 | \$ | 14.510 |
| 02917T104 | 7/24/2013 | Purchase | 760 | \$ | 14.550 |
| 02917T104 | 7/24/2013 | Purchase | 1,851 | \$ | 14.520 |
| 02917T104 | 7/26/2013 | Purchase | 2,500 | \$ | 14.670 |
| 02917T104 | 7/26/2013 | Purchase | 2,800 | \$ | 14.650 |
| 02917T104 | 7/30/2013 | Purchase | 500 | \$ | 14.860 |
| 02917T104 | 7/31/2013 | Purchase | 1,025 | \$ | 14.610 |
| 02917T104 | 7/31/2013 | Purchase | 2,275 | \$ | 14.630 |
| 02917T104 | 8/1/2013 | Purchase | 535 | \$ | 14.170 |
| 02917T104 | 8/1/2013 | Purchase | 1,265 | \$ | 14.200 |
| 02917T104 | 10/16/2013 | Sale | 458 | \$ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 133 | \$ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 250 | \$ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 149 | \$ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 575 | \$ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 42 | \$ | 12.610 |
| 02917T104 | 1/7/2014 | Sale | 437 | \$ | 12.876 |
| 02917T104 | 1/7/2014 | Sale | 873 | \$ | 12.870 |
| 02917T104 | 1/7/2014 | Sale | 1,675 | \$ | 12.860 |
| 02917T104 | 1/7/2014 | Sale | 3,215 | \$ | 12.864 |
| 02917T104 | 1/8/2014 | Sale | 469 | \$ | 12.699 |
| 02917T104 | 1/8/2014 | Sale | 1,280 | \$ | 12.707 |
| 02917T104 | 1/8/2014 | Sale | 1,739 | \$ | 12.712 |
| 02917T104 | 1/8/2014 | Sale | 7,512 | \$ | 12.690 |
| 02917T104 | 1/9/2014 | Sale | 5,800 | \$ | 12.646 |
| 02917T104 | 1/10/2014 | Sale | 218 | \$ | 12.715 |
| 02917T104 | 1/10/2014 | Sale | 1,094 | \$ | 12.720 |
| 02917T104 | 1/10/2014 | Sale | 1,588 | \$ | 12.819 |
| 02917T104 | 1/10/2014 | Sale | 2,127 | \$ | 12.985 |
| 02917T104 | 1/10/2014 | Sale | 4,364 | \$ | 12.971 |
| 02917T104 | 1/10/2014 | Sale | 4,412 | \$ | 12.798 |
| 02917T104 | 1/10/2014 | Sale | 4,688 | \$ | 12.711 |

**The New York City Fire Department Pension Fund**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|-------|-----------|-----------------|--------|------------|
| 02917T104 | 1/10/2014 | Sale | 10,909 | $ 12.970 |
| 02917T104 | 1/28/2014 | Sale | 30 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 27 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 98 | $ 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 1,557 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 7,934 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 14,200 | $ 14.687 |
| 02917T104 | 3/26/2014 | Sale | 2,045 | $ 13.915 |
| 02917T104 | 3/31/2014 | Sale | 121 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 32 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 60 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 31 | $ 13.082 |
| 02917T104 | 5/28/2014 | Sale | 533 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 5 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 27 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 404 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 2,193 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 7,000 | $ 12.407 |
| 02917T104 | 6/27/2014 | Purchase | 70,055 | $ 12.500 |
| 02917T104 | 6/27/2014 | Purchase | 15,400 | $ 12.498 |
| 02917T104 | 6/27/2014 | Sale | 1,488 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 1,111 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 5,831 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 7,811 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 378 | $ 13.108 |
| 02917T104 | 10/22/2014 | Sale | 4,900 | $ 12.070 |

| Fixed Income | | | | |
|-------|-----------|-----------------|--------|------------|
| CUSIP | Trade Date | Transaction Type | Units | Unit Price |
| 03879QAE4 | 4/3/2014 | Purchase | 60,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 160,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 220,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 220,000 | 1.0058 |

**The New York City Fire Officers' Variable Supplements Fund**
**Schedule of Transactions**

| Equity | | | | |
|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** |
| 02917T104 | 6/28/2013 | Purchase | 83 | $ 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 1,219 | $ 15.250 |
| 02917T104 | 10/16/2013 | Sale | 15 | $ 12.710 |
| 02917T104 | 10/16/2013 | Sale | 51 | $ 12.710 |
| 02917T104 | 11/26/2013 | Sale | 47 | $ 13.280 |
| 02917T104 | 12/10/2013 | Sale | 29 | $ 12.770 |
| 02917T104 | 12/10/2013 | Sale | 108 | $ 12.770 |
| 02917T104 | 12/20/2013 | Sale | 8 | $ 12.610 |
| 02917T104 | 1/28/2014 | Sale | 8 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 27 | $ 13.840 |
| 02917T104 | 1/31/2014 | Purchase | 7 | $ 13.832 |
| 02917T104 | 2/28/2014 | Purchase | 239 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 1,063 | $ 14.686 |
| 02917T104 | 3/26/2014 | Sale | 274 | $ 13.915 |
| 02917T104 | 3/31/2014 | Sale | 19 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 4 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 8 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 7 | $ 13.082 |
| 02917T104 | 5/28/2014 | Sale | 71 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 62 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 1 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 294 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 3 | $ 12.410 |
| 02917T104 | 6/27/2014 | Sale | 171 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 228 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 1,047 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 782 | $ 12.500 |
| 02917T104 | 6/27/2014 | Purchase | 7,005 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 38 | $ 13.108 |

**The New York City Fire Fighters' Variable Supplements Fund**
**Schedule of Transactions**

| Equity | | | | |
|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
| 02917T104 | 6/28/2013 | Purchase | 123 | $ 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 1,812 | $ 15.250 |
| 02917T104 | 10/16/2013 | Sale | 76 | $ 12.710 |
| 02917T104 | 10/16/2013 | Sale | 22 | $ 12.710 |
| 02917T104 | 11/26/2013 | Sale | 71 | $ 13.280 |
| 02917T104 | 12/10/2013 | Sale | 43 | $ 12.770 |
| 02917T104 | 12/10/2013 | Sale | 162 | $ 12.770 |
| 02917T104 | 12/20/2013 | Sale | 12 | $ 12.610 |
| 02917T104 | 1/28/2014 | Sale | 11 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 10 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 35 | $ 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 594 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 2,833 | $ 14.686 |
| 02917T104 | 3/26/2014 | Sale | 730 | $ 13.915 |
| 02917T104 | 3/31/2014 | Sale | 46 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 12 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 21 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 18 | $ 13.082 |
| 02917T104 | 5/28/2014 | Sale | 190 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 2 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 10 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 154 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 783 | $ 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 9,208 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 568 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 424 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,083 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,789 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 50 | $ 13.108 |

**The Board of Education Retirement System of the City of New York**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 5/7/2013 | Purchase | 2,727 | $ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 2,727 | $ | 15.950 |
| 02917T104 | 6/28/2013 | Purchase | 612 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 8,982 | $ | 15.250 |
| 02917T104 | 10/16/2013 | Sale | 375 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 108 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 346 | $ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 212 | $ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 796 | $ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 59 | $ | 12.610 |
| 02917T104 | 1/28/2014 | Sale | 63 | $ | 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 55 | $ | 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 202 | $ | 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 3,409 | $ | 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 16,386 | $ | 14.686 |
| 02917T104 | 3/26/2014 | Sale | 4,224 | $ | 13.915 |
| 02917T104 | 3/31/2014 | Sale | 264 | $ | 14.020 |
| 02917T104 | 3/31/2014 | Sale | 66 | $ | 14.020 |
| 02917T104 | 4/7/2014 | Sale | 124 | $ | 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 106 | $ | 13.082 |
| 02917T104 | 5/28/2014 | Sale | 1,101 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 11 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 56 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 884 | $ | 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 4,529 | $ | 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 57,191 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 3,258 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,432 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 12,044 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 16,132 | $ | 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 309 | $ | 13.108 |

**The New York City Police Officers' Variable Supplements Fund**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Shares | Share Price | |
| 02917T104 | 6/28/2013 | Purchase | 183 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 2,694 | $ | 15.250 |
| 02917T104 | 8/30/2013 | Purchase | 39 | $ | 13.410 |
| 02917T104 | 10/16/2013 | Sale | 113 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 33 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 105 | $ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 64 | $ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 240 | $ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 18 | $ | 12.610 |
| 02917T104 | 1/28/2014 | Sale | 13 | $ | 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 11 | $ | 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 40 | $ | 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 629 | $ | 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 3,270 | $ | 14.686 |
| 02917T104 | 3/26/2014 | Sale | 843 | $ | 13.915 |
| 02917T104 | 3/31/2014 | Sale | 49 | $ | 14.020 |
| 02917T104 | 3/31/2014 | Sale | 13 | $ | 14.020 |
| 02917T104 | 4/7/2014 | Sale | 25 | $ | 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 21 | $ | 13.082 |
| 02917T104 | 5/28/2014 | Sale | 220 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 2 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 11 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 163 | $ | 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 904 | $ | 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 10,804 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 602 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 449 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,404 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 3,219 | $ | 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 58 | $ | 13.108 |

**The Teachers' Retirement System of the City of New York Variable A**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 6/28/2013 | Purchase | 39,239 | $ | 15.255 |
| 02917T104 | 2/28/2014 | Purchase | 62,147 | $ | 14.686 |
| 02917T104 | 3/31/2014 | Purchase | 19,184 | $ | 14.016 |
| 02917T104 | 5/30/2014 | Purchase | 22,439 | $ | 12.406 |
| 02917T104 | 6/27/2014 | Purchase | 26,584 | $ | 12.497 |
| 02917T104 | 6/27/2014 | Purchase | 57,700 | $ | 12.500 |
| 02917T104 | 8/14/2014 | Sale | 2,900 | $ | 13.020 |
| 02917T104 | 9/15/2014 | Sale | 1,200 | $ | 12.430 |
| 02917T104 | 10/21/2014 | Sale | 2,200 | $ | 12.080 |

## PLAINTIFF'S CERTIFICATION
## <u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

The undersigned, Marc Le Blanc, on behalf of Sheet Metal Workers' National Pension Fund ("SMWNPF"), declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed an amended complaint against American Realty Capital Properties, Inc. ("American Realty") and designate Motley Rice LLC as counsel for SMWNPF in this action for all purposes.

2.      I am duly authorized to institute legal action on SMWNPF's behalf, including litigation against American Realty and the other defendants.

3.      SMWNPF did not acquire American Realty securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.      SMWNPF is willing to serve as a representative plaintiff and understands that a representative plaintiff is a party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.  SMWNPF also understands that, as a representative plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.      SMWNPF will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6.      SMWNPF has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification, except as detailed below:

> *City of Westland Police and Fire Retirement System v. SAIC, Inc. et al.*, 12-cv-01353-DAB (S.D.N.Y. 2012);

> *Construction Workers Pension Trust Fund – Lake County and Vicinity v. Navistar International Corp., et al.*, 13-cv-02111 (N.D. Ill. 2013);

> *Bodner v. Aegerion Pharmaceuticals, Inc., et al.*, 14-cv-10105 (D. Mass. 2014);

> *In re NII Holdings, Inc. Securities Litigation*, 14-cv-00227 (E.D. Va. 2014); and

> *Irving Firemen's Relief and Retirement Fund v. Tesco PLC, et al.*, 14-cv-08495 (S.D.N.Y. 2014).

*Ciraulu v. American Realty Capital Properties, Inc., et al.*, No. 14-cv-08659 (S.D.N.Y. 2014;

7.      SMWNPF understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8.      Attached hereto as Schedule A is a complete listing of all transactions SMWNPF made during the time period in the securities that are the subject of the amended complaint.

**I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.**

Executed this <u>13</u> day of April 2015.

_____
Marc Le Blanc
Fund Administrator
Sheet Metal Workers' National Pension Fund

**Schedule A**

**American Realty Capital Properties, Inc.**
**Class Period: 09/07/11 - 10/29/14**

| **Sheet Metal Workers' National Pension Fund** | | **Date** | **Shares** | **Price** |
|---|---|---|---|---|
| **(ISIN: US02917T1043)** | | | | |
| | Purchases: | 03/06/13 | 17,600 | $13.8270 |
| | | 03/07/13 | 9,300 | $14.1052 |
| | | 03/08/13 | 3,300 | $14.1501 |
| | | 03/11/13 | 2,100 | $14.1472 |
| | | 03/12/13 | 100 | $14.1000 |
| | | 03/13/13 | 1,700 | $13.9886 |
| | | 03/14/13 | 1,400 | $14.0256 |
| | | 03/15/13 | 900 | $14.0297 |
| | | 03/18/13 | 2,000 | $13.9095 |
| | | 03/19/13 | 500 | $13.8990 |
| | | 05/20/13 | 7,100 | $17.7700 |
| | | 05/21/13 | 1,700 | $17.7130 |
| | | 05/22/13 | 1,900 | $17.7857 |
| | | 05/28/13 | 4,000 | $16.8532 |
| | | 08/02/13 | 5,600 | $14.1033 |
| | | 01/23/14 (1) | 65,028 | $14.5900 |
| | | 04/11/14 | 8,000 | $13.3586 |
| | | 05/21/14 | 30,100 | $12.0000 |
| | | 05/22/14 | 1,900 | $12.3643 |
| | | 05/23/14 | 1,900 | $12.3937 |
| | | 07/11/14 | 13,800 | $12.5684 |
| | | 10/15/14 | 9,900 | $11.6536 |
| | Sales: | 04/19/13 | 800 | $16.4257 |
| | | 10/30/13 | 3,200 | $13.3984 |
| | | 11/26/13 | 500 | $13.2400 |
| | | 11/26/13 | 3,400 | $13.2762 |
| | | 11/27/13 | 3,100 | $13.2923 |
| | | 11/29/13 | 200 | $13.2062 |
| | | 12/02/13 | 5,700 | $13.3633 |
| | | 12/03/13 | 400 | $13.2735 |
| | | 12/03/13 | 3,400 | $13.3156 |
| | | 12/04/13 | 1,200 | $13.2487 |
| | | 12/05/13 | 1,000 | $12.9581 |
| | | 12/06/13 | 4,500 | $12.8199 |
| | | 12/09/13 | 2,900 | $12.8711 |
| | | 12/10/13 | 3,500 | $12.8376 |

| | | |
|---|---|---|
| 12/11/13 | 2,300 | $12.6005 |
| 12/12/13 | 1,400 | $12.3818 |
| 12/13/13 | 2,500 | $12.5532 |
| 12/13/13 | 3,600 | $12.6279 |
| 12/16/13 | 800 | $12.7451 |
| 12/17/13 | 300 | $12.7817 |
| 12/18/13 | 800 | $12.8197 |
| 12/23/13 | 200 | $12.6524 |
| 12/24/13 | 500 | $12.7037 |
| 01/27/14 | 1,100 | $13.9405 |
| 02/11/14 | 1 | $13.7636 |
| 03/11/14 | 3,300 | $14.4515 |

**(ISIN: US03879QAA22 / US03879QAB05)**

| | | | |
|---|---|---|---|
| Purchases (US03879QAA22): | 09/16/14 | 4,000 | $100.1000 |
| Exchange US03879QAA22 Notes for US03879QAB05 Notes: | 10/15/14 | 4,000 | $0.0000 |

**(ISIN: US03879QAE44 / US03879QAF19)**

| | | | |
|---|---|---|---|
| Purchases (US03879QAE44): | 05/15/14 | 300 | $102.1500 |
| | 05/15/14 | 200 | $102.1500 |
| | 05/15/14 | 400 | $102.1800 |
| | 05/15/14 | 300 | $102.1500 |
| | 05/21/14 | 300 | $102.5000 |
| | 05/28/14 | 300 | $103.2100 |
| Exchange US03879QAE44 Notes for US03879QAF19 Notes: | 10/15/14 | 1,800 | $0.0000 |

(1) Shares acquired from the CREI merger with an implied value of $14.59 per share.

## PLAINTIFF'S CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned, Ernest P. Carrera, on behalf of City of Tampa General Employees Retirement Fund declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.  I have reviewed the Amended Complaint against American Realty Capital Properties, Inc. defendants ("American Realty Capital") and designate Morgan & Morgan, P.C. as counsel for the City of Tampa General Employees Retirement Fund in this action for all purposes.

2.  As Chairman of City of Tampa General Employees Retirement Fund, I am duly authorized to institute legal action on behalf of City of Tampa General Employees Retirement Fund including litigation against American Realty Capital and the other defendants.

3.  City of Tampa General Employees Retirement Fund did not acquire American Realty Capital securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.  City of Tampa General Employees Retirement Fund is willing to serve as a lead plaintiff and understands that a lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial. City of Tampa General Employees Retirement Fund also understands that, if appointed lead Plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.  City of Tampa General Employees Retirement Fund will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6.  Within the past three years, City of Tampa General Employees Retirement Fund has not sought to serve as a representative party for a class in an action under the federal securities laws.

7.  City of Tampa General Employees Retirement Fund understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8.  Attached hereto as Schedule A is a complete listing of all transactions City of Tampa General Employees Retirement Fund made during the Class Period in the security that is the subject of the complaint. City of Tampa General Employees Retirement Fund will provide records of those transactions upon request.

**I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.**

Executed this 14 day of April , 2015

City of Tampa General Employees Retirement Fund

Ernest P. Carrera - Chairman

Schedule A

City of Tampa General Employees Retirement Plan

Transactions in

**American Realty Capital Properties, Inc.**

| | Date | Quantity | Price |
|---|---|---|---|
| Purchases: | | | |
| | 5/16/2014 | 7,300 | $13.05 |
| | 5/19/2014 | 7,200 | $12.91 |
| | 5/20/2014 | 4,100 | $12.88 |
| | 5/21/2014 | 1,000 | $12.36 |
| | 5/21/2014 | 11,300 | $12.00 |
| | 5/22/2014 | 700 | $12.36 |
| | 5/23/2014 | 700 | $12.39 |
| | 9/5/2014 | 290 | $13.22 |
| | 9/5/2014 | 2,220 | $13.30 |
| | 9/8/2014 | 390 | $13.25 |

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

Teachers Insurance and Annuity Association, College Retirement Equities Fund, TIAA-CREF Equity Index Fund, TIAA-CREF Real Estate Securities Fund, TIAA-CREF Life Equity Index Fund, TIAA-CREF Life Real Estate Securities Fund, TIAA-CREF Large Cap Value Index Fund, TIAA-CREF Small Cap Blend Index Fund, TIAA-CREF Bond Index Fund (collectively "TIAA-CREF" or "Plaintiff") declares:

1.      Plaintiff has reviewed a complaint and authorized its filing.

2.      Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or to participate in this private action or any other litigation under the federal securities laws.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Plaintiff's transactions in the securities that are the subject of this action are detailed in the attached Schedule A.

5.      Plaintiff has not sought to serve or served as a representative party in a class action that was filed within the three-year period before the date of this Certification pursuant to the Securities Act of 1933 or the Securities Exchange Act of 1934.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of April, 2015.

TIAA-CREF

By: _____

Jonathan Feigelson
Senior Managing Director, General Counsel
and Head of Corporate Governance

AMERICAN REALTY

SCHEDULE A

SECURITIES TRANSACTIONS

College Retirement Equities Fund

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 116,652 | $15.25 |
| 06/28/2013 | 89,600 | $15.25 |
| 06/28/2013 | 45,741 | $15.25 |
| 06/28/2013 | 318,129 | $15.25 |
| 06/28/2013 | 138,142 | $15.25 |
| 07/02/2013 | 4,330 | $14.90 |
| 07/08/2013 | 16,400 | $14.23 |
| 07/09/2013 | 14,500 | $14.36 |
| 07/16/2013 | 16,200 | $14.90 |
| 09/10/2013 | 12,690 | $12.63 |
| 12/27/2013 | 15,410 | $12.77 |
| 2/7/2014[A] | 1,780 | $13.99 |
| 2/7/2014[A] | 23,754 | $13.99 |
| 2/7/2014[A] | 50,102 | $13.99 |
| 2/7/2014[A] | 6,120 | $13.99 |
| 02/28/2014 | 244,000 | $14.69 |
| 02/28/2014 | 130,000 | $14.69 |
| 02/28/2014 | 89,810 | $14.69 |
| 02/28/2014 | 711,396 | $14.69 |
| 02/28/2014 | 105,900 | $14.69 |
| 02/28/2014 | 21,793 | $14.69 |
| 03/04/2014 | 43,300 | $14.87 |
| 03/20/2014 | 19,635 | $13.83 |
| 04/30/2014 | 45,072 | $13.08 |
| 05/30/2014 | 67,000 | $12.41 |
| 05/30/2014 | 29,250 | $12.41 |
| 05/30/2014 | 219,280 | $12.41 |
| 05/30/2014 | 25,900 | $12.41 |
| 05/30/2014 | 10,748 | $12.40 |
| 06/05/2014 | 4,010 | $12.44 |
| 06/27/2014 | 258,186 | $12.50 |
| 06/27/2014 | 42,064 | $12.50 |
| 06/27/2014 | 83,202 | $12.50 |
| 06/27/2014 | 49,034 | $12.50 |
| 07/10/2014 | 316,655 | $12.49 |
| 07/10/2014 | 56,900 | $12.45 |
| 07/10/2014 | 488,430 | $12.51 |
| 07/11/2014 | 98,474 | $12.57 |
| 07/11/2014 | 64,100 | $12.57 |
| 07/11/2014 | 217,298 | $12.57 |
| 08/04/2014 | 3,705 | $13.32 |
| 08/11/2014 | 2,346 | $13.02 |
| 08/21/2014 | 12,631 | $13.30 |
| 08/29/2014 | 4,570 | $13.16 |
| 10/13/2014 | 800 | $11.62 |

| 10/13/2014 | 2,400 | $11.58 |
| 10/13/2014 | 6,490 | $11.59 |
| 10/20/2014 | 2,900 | $12.08 |
| 10/20/2014 | 4,195 | $12.08 |
| 10/29/2014 | 981 | $10.00 |
| 10/29/2014 | 3,058 | $10.00 |

| Date Sold | Type/Amount of Securities Sold | Price |
| --- | --- | --- |
| 08/02/2013 | 1,262 | $14.10 |
| 08/13/2013 | 2,559 | $13.44 |
| 08/29/2013 | 1,879 | $13.42 |
| 09/04/2013 | 1,535 | $12.87 |
| 11/20/2013 | 3,862 | $12.96 |
| 12/02/2013 | 1,100 | $13.34 |
| 12/03/2013 | 3,735 | $13.30 |
| 12/13/2013 | 8,059 | $12.59 |
| 12/20/2013 | 8,491 | $12.61 |
| 02/20/2014 | 2,500 | $14.11 |
| 06/25/2014 | 6,418 | $12.39 |
| 06/27/2014 | 66,735 | $12.50 |
| 06/27/2014 | 262,900 | $12.50 |
| 06/27/2014 | 164,801 | $12.50 |
| 06/27/2014 | 1,364,040 | $12.50 |
| 07/29/2014 | 5,886 | $13.20 |
| 07/31/2014 | 4,678 | $13.11 |
| 07/31/2014 | 15,397 | $13.13 |
| 07/31/2014 | 8,357 | $13.12 |
| 09/03/2014 | 1,893 | $13.26 |
| 09/03/2014 | 18,223 | $13.29 |
| 09/03/2014 | 439 | $13.26 |
| 09/03/2014 | 4,230 | $13.26 |
| 09/08/2014 | 2,246 | $13.25 |
| 09/10/2014 | 200 | $13.20 |
| 09/16/2014 | 2,414 | $12.64 |
| 09/16/2014 | 11,488 | $12.57 |
| 09/17/2014 | 12,593 | $12.62 |
| 09/18/2014 | 2,505 | $12.44 |
| 09/23/2014 | 1,818 | $12.37 |
| 09/24/2014 | 11,055 | $12.18 |
| 09/25/2014 | 2,998 | $12.09 |
| 09/30/2014 | 5,602 | $12.14 |
| 10/01/2014 | 12,987 | $12.02 |
| 10/08/2014 | 702 | $11.91 |
| 10/08/2014 | 6,325 | $11.90 |
| 10/08/2014 | 4,231 | $11.90 |
| 10/23/2014 | 3,631 | $12.22 |
| 10/24/2014 | 4,059 | $12.35 |
| 10/29/2014 | 981 | $10.00 |
| 10/29/2014 | 1,920 | $8.98 |
| 10/29/2014 | 3,058 | $10.00 |
| 10/29/2014 | 4,039 | $10.00 |
| 10/29/2014 | 14,290 | $9.02 |
| 10/29/2014 | 1,780 | $9.29 |
| 10/29/2014 | 11,706 | $8.03 |

**TIAA Account**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/21/2013 | 214,290 | $14.47 |
| 06/25/2013 | 142,860 | $14.71 |
| 06/28/2013 | 7,027 | $15.25 |
| 07/26/2013 | 37,330 | $14.40 |
| 08/20/2013 | 75,000 | $13.05 |
| 01/21/2014 | 124,600 | $13.99 |
| 01/23/2014 | 23,880 | $14.07 |
| 2/7/2014[A] | 1,244,638 | $13.99 |
| 02/28/2014 | 14,680 | $14.69 |
| 05/30/2014 | 4,325 | $12.41 |
| 06/03/2014 | 340,640 | $12.71 |
| 06/27/2014 | 14,074 | $12.50 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 09/20/2013 | 12,180 | $12.68 |
| 12/20/2013 | 5,970 | $12.61 |
| 01/07/2014 | 6,334 | $12.86 |
| 01/08/2014 | 10,596 | $12.72 |
| 2/11/2014[B] | 1 | $13.78 |
| 03/21/2014 | 14,880 | $14.28 |
| 04/23/2014 | 103,950 | $13.35 |
| 06/20/2014 | 32,460 | $12.59 |
| 07/10/2014 | 3,224 | $12.54 |
| 09/29/2014 | 1,000 | $12.31 |
| 10/16/2014 | 1,500 | $12.01 |

**TIAA CREF Equity Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 57,343 | $15.25 |
| 08/28/2013 | 1,228 | $13.31 |
| 02/28/2014 | 124,400 | $14.69 |
| 04/15/2014 | 6,400 | $13.44 |
| 05/30/2014 | 43,030 | $12.41 |
| 06/27/2014 | 129,138 | $12.50 |

**TIAA CREF Large Cap Value Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/27/2014 | 198,676 | $12.50 |
| 07/02/2014 | 3,359 | $12.62 |
| 07/16/2014 | 6,931 | $12.88 |
| 07/22/2014 | 2,294 | $12.94 |
| 08/04/2014 | 3,339 | $13.32 |
| 08/08/2014 | 2,326 | $12.99 |
| 08/21/2014 | 4,664 | $13.30 |
| 08/22/2014 | 2,256 | $13.19 |
| 09/03/2014 | 439 | $13.26 |
| 09/03/2014 | 1,893 | $13.26 |
| 09/08/2014 | 2,246 | $13.25 |
| 09/16/2014 | 2,414 | $12.64 |
| 10/02/2014 | 2,493 | $11.85 |
| 10/16/2014 | 2,899 | $12.08 |
| 10/17/2014 | 5,042 | $11.92 |
| 10/29/2014 | 4,039 | $10.00 |

**TIAA CREF Small Cap Blend Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 136,920 | $15.25 |
| 07/10/2013 | 3,550 | $14.45 |
| 07/18/2013 | 2,010 | $15.00 |
| 08/06/2013 | 2,320 | $13.72 |
| 10/07/2013 | 3,900 | $12.66 |
| 10/10/2013 | 3,270 | $12.34 |
| 10/18/2013 | 3,800 | $13.29 |
| 12/05/2013 | 4,050 | $12.90 |
| 01/30/2014 | 3,580 | $13.92 |
| 02/28/2014 | 318,370 | $14.69 |
| 03/05/2014 | 8,310 | $14.64 |
| 05/30/2014 | 95,140 | $12.41 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 08/28/2013 | 1,228 | $13.31 |
| 08/28/2013 | 82 | $13.31 |
| 10/11/2013 | 3,300 | $12.42 |
| 12/20/2013 | 2,770 | $12.61 |
| 05/08/2014 | 4,690 | $12.86 |
| 05/13/2014 | 8,140 | $13.39 |
| 06/18/2014 | 8,210 | $12.07 |
| 06/27/2014 | 556,800 | $12.50 |

TIAA CREF Life Equity Index Fund

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 2,013 | $15.25 |
| 02/28/2014 | 3,843 | $14.69 |
| 03/17/2014 | 970 | $14.27 |
| 06/27/2014 | 5,355 | $12.50 |
| 07/02/2014 | 1,080 | $12.62 |

TIAA CREF Life Real Estate Securities Fund

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 05/22/2013 | 10,000 | $17.45 |
| 01/24/2014 | 10,000 | $14.02 |
| 2/7/2014[A] | 81,967 | $13.99 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 06/21/2013 | 1,656 | $14.30 |
| 06/21/2013 | 844 | $14.22 |
| 06/21/2013 | 7,500 | $14.14 |
| 02/21/2014 | 11,967 | $14.19 |
| 05/13/2014 | 20,000 | $13.41 |
| 08/20/2014 | 15,000 | $13.09 |

TIAA Real Estate Securities Fund

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 05/22/2013 | 150,000 | $17.45 |
| 01/24/2014 | 150,000 | $14.02 |
| 2/7/2014[A] | 1,092,900 | $13.99 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 06/21/2013 | 24,844 | $14.30 |
| 06/21/2013 | 12,656 | $14.22 |
| 06/21/2013 | 112,500 | $14.14 |
| 02/21/2014 | 142,900 | $14.19 |
| 05/13/2014 | 250,000 | $13.41 |

**TIAA CREF Bond Index Fund**

Bonds

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 2/4/2014[C] | 3.0% due 02/06/2019 | 300,000 | $99.59 |
| 2/4/2014[C] | 4.6% due 02/06/2024 | 200,000 | $99.84 |

[A]Shares exchanged in Cole Merger. Valued at closing price on date of merger.

[B]Delivery of share valued at closing price.

[C]Exchanged for registered notes in connection with an exchange offer announced in September 2014 and declared effective on October 16, 2014.