UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ———————————————— x | | |
| In re AMERICAN REALTY CAPITAL PROPERTIES, INC. LITIGATION | : | Civil Action No. 1:15-mc-00040-AKH |
| | : | |
| | : | CLASS ACTION |
| ———————————————— | : | |
| | : | |
| This Document Relates To: | : | |
| | : | |
| ALL ACTIONS. | : | |
| | : | DEMAND FOR JURY TRIAL |
| ———————————————— x | | |

THIRD AMENDED CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1186483_1

# TABLE OF CONTENTS

**Page**

SUMMARY OF CLAIMS.................................................................................................1

JURISDICTION AND VENUE .....................................................................................2

PARTIES .........................................................................................................................2

    Plaintiffs.....................................................................................................................2

    Defendants .................................................................................................................6

1933 ACT CLAIMS .....................................................................................................19

    ARCP's Materially False and Misleading SEC Filings Were Incorporated by
        Reference into the Offering Materials ...................................................20

    Reasons Why the Financial and Internal Control-Related Information
        Incorporated into ARCP's Offering Materials Were Materially False and
        Misleading...........................................................................................23

    GT's False and Misleading Statements..............................................................25

    Defendants' Failure to Exercise Due Diligence................................................31

COUNT I - Violation of §11 of the 1933 Act in Connection with the July 2013 Offering
    of 3% Senior Notes ..............................................................................................32

COUNT II - Violation of §11 of the 1933 Act in Connection with the December 2013
    Offering of 3% Senior Notes ...............................................................................33

COUNT III - Violation of §11 of the 1933 Act in Connection with the December 2013
    Offering of 3.75% Senior Notes ..........................................................................35

COUNT IV - Violation of §11 of the 1933 Act in Connection with the ARCT IV Merger..........36

COUNT V - Violation of §11 of the 1933 Act in Connection with the Cole Merger ..................38

COUNT VI - Violation of §11 of the 1933 Act in Connection with the May 2014
    Offering ARCP Stock ...........................................................................................39

COUNT VII - Violation of §11 of the 1933 Act in Connection with the September 2014
    Registration of $2.55 Billion of Senior Notes ..................................................41

COUNT VIII - Violation of §15 of the 1933 Act .......................................................43

1934 ACT CLAIMS .....................................................................................................47

**Page**

    ARCP Acknowledged that It Falsified Its Financial Statements and AFFO ....................53

    ARCP's Financial Reporting During the Class Period Was Materially False and
        Misleading............................................................................................................60

    Defendants' Dissemination of False and Misleading Statements in Furtherance of
        Their Wrongful Course of Business .....................................................................73

APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET
    DOCTRINE ....................................................................................................................110

LOSS CAUSATION/ECONOMIC LOSS ..............................................................................112

CLASS ACTION ALLEGATIONS ......................................................................................116

COUNT IX - Violation of §10(b) of the 1934 Act ..............................................................118

COUNT X - Violation of §20(a) of the 1934 Act................................................................120

PRAYER FOR RELIEF ........................................................................................................125

JURY DEMAND ...................................................................................................................126

Plaintiffs, by their undersigned attorneys, on behalf of themselves and the class they seek to represent, for their Third Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), allege the following upon knowledge as to their own acts and upon the investigation of counsel, which investigation included the examination and analysis of information obtained from public and proprietary sources – including, *inter alia*, United States Securities and Exchange Commission ("SEC") filings, the sworn allegations in *Lisa Pavelka McAlister v. American Realty Capital Properties, Inc., et al.*, Index No. 162499/2014 (Sup. Ct. N.Y. Cnty.), other court filings related to American Realty Capital Properties, Inc. ("ARCP" or the "Company"), public reports, releases, investor presentations, published interviews, news articles and other media reports, interviews with former employees of the Company and reports of securities analysts and investor advisory services. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Pursuant to the Court's September 8, 2016 Order (Dkt. No. 299), defendants' previously-filed Answers to the Second Amended Complaint shall be considered applicable to the Third Amended Complaint, without need for additional filings.

## SUMMARY OF CLAIMS

1. This securities class action is brought on behalf of those who purchased or otherwise acquired ARCP securities, including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock between September 7, 2011 and October 29, 2014 (the "Class" and the "Class Period"), seeking to pursue remedies under §§11 and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act"), and §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act" or "Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

- 1 -

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act [15 U.S.C. §§77k and 77o], and §§10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)], and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over this action pursuant to §22 of the Securities Act [15 U.S.C. §77v], §27 of the Exchange Act [15 U.S.C. §78aa] and 28 U.S.C. §1331.

4.      Venue is properly laid in this District pursuant to §22 of the Securities Act, §27 of the Exchange Act, and 28 U.S.C. §1391(b) and (c).  The acts and conduct complained of herein occurred in substantial part in this District.

5.      In connection with the acts and conduct alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of the NASDAQ stock market (the "NASDAQ").

## PARTIES

**Plaintiffs**

6.      Lead Plaintiff is Teachers Insurance and Annuity Association of America ("TIAA"), College Retirement Equities Fund ("CREF"), TIAA-CREF Equity Index Fund, TIAA-CREF Real Estate Securities Fund, TIAA-CREF Large Cap Value Index Fund, TIAA-CREF Small Cap Blend Index Fund, TIAA-CREF Life Real Estate Securities Fund, TIAA-CREF Life Equity Index Fund and TIAA-CREF Bond Index Fund (collectively, "TIAA-CREF").  TIAA was founded in 1918 and is a joint stock life insurance company incorporated in New York with its principal place of business in New York.  TIAA offers traditional annuities, as well as variable annuities that invest, among other things, in real estate and in mutual funds that invest in equities and fixed income investments.

- 2 -

CREF, a companion organization to TIAA, is a not-for-profit membership corporation incorporated in New York with its principal place of business in New York. Together, TIAA and CREF constitute a Fortune 100 financial services organization that forms the principal retirement system for the nation's education and research communities and one of the largest retirement systems in the world based on assets under management. As of October 31, 2014, TIAA-CREF served over five million individuals overall (with more than 3.7 million clients in institutional retirement plans) and managed in excess of $500 billion in assets. As set forth in TIAA-CREF's certification attached hereto and incorporated herein, TIAA-CREF purchased and/or acquired ARCP securities during the Class Period, including ARCP common stock and debt securities, and was damaged thereby.

7.     Plaintiff Sheet Metal Workers' National Pension Fund ("National Pension Fund"), with assets of nearly $4 billion, is a defined benefit pension fund organized to provide retirement benefits to sheet metal workers and their families. As set forth in National Pension Fund's certification attached hereto and incorporated herein, National Pension Fund purchased and/or acquired ARCP securities during the Class Period, including ARCP debt securities and ARCP common stock issued in the May 21, 2014 offering and via exchange in the Cole Merger (defined below in ¶232), and was damaged thereby.

8.     Plaintiff Union Asset Management Holding AG ("Union") is an investment company based in Germany that manages assets of approximately $279 billion. As set forth in Union's certification attached hereto and incorporated herein, Union's funds purchased and/or acquired ARCP debt securities during the Class Period and were damaged thereby.

9.     Plaintiff KBC Asset Management NV ("KBC") is an investment company based in Belgium that manages assets of approximately $212 billion. As set forth in KBC's certification attached hereto and incorporated herein, KBC's funds purchased and/or acquired ARCP securities,

including ARCP common stock issued via exchange in the Cole Merger, during the Class Period and were damaged thereby.

10.     Plaintiffs Corsair Select 100 L.P., Corsair Select Master Fund, Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd. (collectively "Corsair") are private investment funds that operate under the common management of Corsair Capital Management, L.P., which makes decisions for the Corsair funds.  As set forth in its certification attached hereto and incorporated herein, Corsair purchased and/or acquired ARCP securities during the Class Period, including ARCP common stock issued via exchange in the Cole Merger and in the May 21, 2014 offering, and was damaged thereby.

11.     Plaintiffs the New York City Employees' Retirement System, the New York City Police Pension Fund, the New York City Police Officers' Variable Supplements Fund, the Board of Education Retirement System of the City of New York, the Teachers' Retirement System of the City of New York and the Teachers' Retirement System of the City of New York Variable A, the New York City Fire Department Pension Fund, the New York City Fire Officers' Variable Supplements Fund and the New York City Fire Fighters' Variable Supplements Fund (collectively, the "NYC Funds") are defined benefit pension funds organized to provide retirement benefits to New York City employees and their spouses.  As set forth in the certification attached hereto and incorporated herein, the NYC Funds purchased and/or acquired ARCP securities, including ARCP common stock and ARCP debt securities, and were damaged thereby.

12.     Plaintiff the City of Tampa General Employees Retirement Fund ("Tampa") is a defined benefit pension fund organized to provide retirement benefits to City of Tampa employees and their spouses.  As set forth in its certification attached hereto and incorporated herein, Tampa

- 4 -

purchased and/or acquired ARCP securities during the Class Period, including ARCP common stock issued in the May 21, 2014 offering, and was damaged thereby.

13.     Plaintiff Paul Matten ("Matten") purchased and/or acquired ARCP securities during the Class Period, including ARCP Series F Preferred stock issued in the ARCT IV Merger (described in ¶238) and option contracts on ARCP stock as set forth in his certification attached hereto and incorporated herein, and was damaged thereby.

14.     Plaintiff Simon Abadi ("Abadi") purchased and/or acquired ARCP securities, including ARCP common stock issued in the Cole Merger and in the May 21, 2014 offering, during the Class Period, as set forth in his certification attached hereto and incorporated herein, and was damaged thereby.

15.     Plaintiffs Mitchell Ellis and Bonnie Ellis (collectively "Ellis") purchased and/or acquired ARCP securities, including ARCP Series F Preferred stock issued in the ARCT IV Merger, during the Class Period, as set forth in their certifications attached hereto and incorporated herein, and were damaged thereby.

16.     Plaintiff Noah Bender ("Bender") made transactions in ARCP securities and ARCP option contracts during the Class Period, as set forth in his certification attached hereto and incorporated herein, and was damaged thereby.

17.     Plaintiff IRA FBO John Esposito ("Esposito") purchased ARCP common stock and acquired ARCP common stock and Series F Preferred stock via exchange of ARCT IV shares in the ARCT IV Merger, as set forth in its certification attached hereto and incorporated herein, and was damaged thereby.

- 5 -

**Defendants**

**Entity Defendants**

18.     ARCP is a corporation organized under the laws of the State of Maryland, headquartered during the Class Period at 405 Park Avenue, 15th Floor, New York, New York 10022, and qualifies as a REIT for federal income tax purposes.  On July 28, 2015, ARCP changed its name to VEREIT, Inc.  ARCP's common stock began trading on NASDAQ under the symbol "ARCP" on September 7, 2011.  On February 28, 2013, ARCP common stock was transferred to The NASDAQ Global Select Market, or the NASDAQ.  ARCP owns freestanding commercial real estate leased on a medium-term basis pursuant to what are colloquially referred to as "Triple Net Leases," primarily to investment credit rated and other creditworthy tenants.  As of December 31, 2014, ARCP owned more than 4,100 commercial properties representing more than 108 million square feet. Substantially all of ARCP's business is conducted through its operating partnership, ARC Properties Operating Partnership L.P., of which ARCP is the sole general partner.

19.     ARC Properties Operating Partnership L.P. ("ARC Properties") is a subsidiary and the operating partnership of ARCP.  ARCP is ARC Properties' sole general partner, an entity formed on January 13, 2011 to conduct the primary business of acquiring, owning and operating single-tenant, freestanding commercial real estate properties.  ARC Properties is the entity through which substantially all of ARCP's operations are conducted.  As of June 30, 2014, ARCP owned 97.3% of the common equity interest in ARC Properties, and several persons affiliated with ARCP as of June 30, 2014 were limited partners who owned an additional 1.7%.  According to ARCP's financial statements, ARCP together with ARC Properties is known as the Company, rendering ARCP and ARC Properties indistinguishable.  ARC Properties is organized under the laws of the state of

Delaware and listed its address during the Class Period as 405 Park Avenue, 15th Floor, New York, New York 10022.

20.     AR Capital LLC ("AR Capital") is a Delaware limited liability company that provided management and advisory services to ARCP and its affiliates.  AR Capital was directly or indirectly owned and/or controlled by Nicholas S. Schorsch, William M. Kahane, Peter M. Budko, Brian Block and Edward M. Weil during the Class Period.  AR Capital also owns ARC Properties Advisors LLC, which served as ARCP's external manager during the Class Period.  AR Capital is located at 405 Park Avenue, 12th Floor, New York, New York 10022.  During the Class Period, Schorsch, Weil, Block and Budko held executive officer positions at AR Capital.

21.     ARC Properties Advisors LLC ("ARC Advisors") is a Delaware limited liability company and was ARCP's external manager during the Class Period until at least January 8, 2014 and continued to provide the same services and control ARCP for no less than 60 days thereafter, with an option to extend that control for an even longer period.  ARC Advisors is directly or indirectly owned and/or controlled by Schorsch, Kahane, Budko, Block, and Weil.  ARC Advisors was a wholly-owned subsidiary of RCS Capital from the beginning of the Class Period until December 27, 2012.  Thereafter, ARC Advisors was a wholly-owned subsidiary of AR Capital. ARC Advisors had its principal office at 405 Park Avenue, New York, NY 10022.  During the Class Period, ARC Advisors and "its affiliates" received payments in excess of $900 million from ARCP, ARCT III and ARCT IV.

22.     Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

23.     Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

- 7 -

**ARCP Management Defendants**

24.     Nicholas S. Schorsch ("Schorsch") founded ARCP in 2010, and served as its CEO and Chairman of its Board of Directors during the Class Period.  Effective October 1, 2014, Schorsch ceased serving as ARCP's CEO, but remained Chairman until December 15, 2014, when he was forced to "step[] down" from ARCP's Board of Directors.  During the Class Period, Schorsch also served as an officer and/or director at more than 40 ARCP-related entities.  Schorsch was the Chairman/CEO of ARC Advisors during the Class Period; the CEO/Chairman and a beneficial owner of RCS Capital (aka RCAP Holdings, Inc.); the CEO/Chairman and a beneficial owner of AR Capital; and the Chairman and a beneficial owner of RCAP from its formation in February 2013 until the end of the Class Period.  Throughout the Class Period, Schorsch acted and/or made the statements detailed herein in his capacity as an officer, member, beneficial owner or director of ARCP, AR Capital, RCAP, RCS Capital, ARC Properties, ARC Advisors, ARCT III and ARCT IV, as well as the other entities in which he held ownership, executive and/or director positions.  Schorsch signed every 10-K, 10-Q and offering document ARCP filed with the SEC during the Class Period.

25.     David S. Kay ("Kay") served as ARCP's President from December 2013 until October 1, 2014, when he replaced Schorsch as the Company's CEO and also joined the Company's Board of Directors.  On December 15, 2014, ARCP announced that Kay had "stepped down" as the Company's CEO, as well as from its Board of Directors.  Kay signed ARCP's 2013 Form 10-K and the Cole Merger Registration Statement.  Between December 2013 and the end of the Class Period, Kay acted and/or made the statements detailed herein in his capacity as an officer and director of ARCP.

26.     Brian S. Block ("Block") served as ARCP's CFO and Executive Vice President from its formation in December 2010 and was appointed as its Treasurer and Secretary effective December 2013.  On October 28, 2014, Block abruptly "resigned" from the Company after being asked to do so.  Block was AR Capital's Executive Vice President and CFO during the Class Period, positions he held as well with a number of publicly registered, non-traded direct investments sponsored by AR Capital and/or controlled by Schorsch.  Block also served as the CFO and Executive Vice President of ARC Advisors from November 2010 until at least January 2014.  Block was the CFO and Executive Vice President and a beneficial owner of RCS Capital (aka RCAP Holdings, Inc.) during the Class Period.  Block was also a director of RCAP from February 2013 until July 2014.  Throughout the Class Period, Block acted and/or made the statements detailed herein in his capacity as an officer, member or director of each of ARCP, ARC Advisors, ARCT III, ARCT IV, AR Capital and RCAP.  Block signed every 10-K, 10-Q, and offering document ARCP filed with the SEC during the Class Period.  Block is a licensed Certified Public Accountant ("CPA").

27.     Edward M. Weil ("Weil") served as ARCP's President, Treasurer and Secretary from its formation until January 2014.  Weil was a member of ARCP's Board of Directors from March 2012 through June 2014, when he "resigned" from the Board in an effort to "enhance corporate governance."  Weil also served as President, COO, Treasurer, Secretary and Director of ARCT III and ARCT IV from their formation until their mergers with ARCP.  Weil is currently President, COO and a beneficial owner of AR Capital.  Weil was the Executive Vice President of ARC Advisors from November 2010 until at least January 2014.  He previously served as CEO of RCAP from its formation until November 2015, and currently remains a director of RCAP.  Prior to being appointed CEO of RCAP, Weil was RCAP's President, Treasurer, Secretary and a Director.  Weil

- 9 -

was the Executive Vice President of RCS Capital (aka RCAP Holdings, Inc.) from its formation until February 2012 and was a beneficial owner of RCS Capital throughout the Class Period. During the Class Period, Weil served and/or continues to serve as an officer and/or director at more than a dozen ARCP-related entities, including Business Development Corporation of America (Executive Vice President and Secretary). Weil signed ARCP's 2011 and 2012 Form 10-K; ARCP's 2012 and 2013 Shelf Registration Statements used for the July 2013 Offering, the December 2013 Offerings and the May 2014 Offering; the ARCT IV and the Cole Merger Registration Statements; and permitted the use of his name to solicit proxies for the ARCT III, ARCT IV and Cole Mergers. Throughout the Class Period, Weil took the actions and/or made the statements detailed herein in his capacity as an officer, member and director of ARCP, AR Capital, ARC Advisors, RCAP, ARCT III and ARCT IV.

28.     Peter M. Budko ("Budko") was ARCP's Executive Vice President and Chief Investment Officer from December 2010 until January 8, 2014. During the Class Period, Budko served and/or continues to serve as an officer and/or director at numerous ARCP-related entities, including: AR Capital (CIO and Executive Vice President from December 2012 until the end of the Class Period and a beneficial owner of that entity); RCAP (Director from February 2013 until December 2014 and CIO/Executive Vice President from February 2013 until August 2015); ARC Advisors (CIO and Executive Vice President from November 2010 until at least January 2014); RCS Capital, aka RCAP Holdings (CIO/Executive Vice President from its formation; Budko is also a beneficial owner of that entity); and Business Development Corporation of America (President and CEO). Budko signed the Registration Statements, which incorporated the false financial statements, for the ARCT IV and Cole Mergers and permitted ARCP to use his name to solicit proxies for those mergers. Throughout the Class Period, Budko acted and/or made the statements detailed herein in

- 10 -

his capacity as an officer, member and/or director of ARCP, AR Capital, RCAP, ARC Advisors, ARCT III and ARCT IV, as well as the other ARCP-related entities in which he held ownership, executive and/or director positions.

29.     Brian D. Jones ("Jones") was ARCP's COO from February 2013 until November 2013.  Since December 2013, Jones has been the CFO, Assistant Secretary and Manager of RCAP. Jones also has served as head of the investment banking division of Realty Capital Securities since February 2013.  Jones was a Senior Vice President, Managing Director and Head of Investment Banking at Realty Capital Securities from December 2010 until February 2012.  Jones then moved to ARCT in March 2012 as CFO and Treasurer until February 2013.  Jones signed ARCP's 2013 Shelf Registration Statement used for the July 2013, December 2013 and May 2014 Offerings, as well as the registration statements for the ARCT IV and Cole Mergers.  Throughout the Class Period, Jones acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and RCAP, as well as the other ARCP-related entities listed above in which he held ownership, executive and/or director positions.  Jones is a licensed CPA.

30.     Lisa P. McAlister ("McAlister") served as ARCP's Senior Vice President and CAO from November 2013 through October 28, 2014, when she was fired.  McAlister signed ARCP's 2013 Form 10-K, Form 10-Q for the second quarter of 2014 and the registration statement for the September 2014 Senior Notes.  During the Class Period, McAlister acted and/or made the statements detailed herein in her capacity as an officer of ARCP.  McAlister is a licensed CPA.

31.     Lisa E. Beeson ("Beeson") began serving as ARCP's COO on November 4, 2013, and became President on October 1, 2014.  On December 15, 2014, Beeson "stepped down" as President and COO.  Beeson signed ARCP's Form 10-K for 2013, as well as the registration

1186483_1

statements for the ARCT IV and Cole Mergers.  During the Class Period, Beeson acted and/or made the statements detailed herein in her capacity as an officer ARCP.

**ARCP Director Defendants**

32.     William M. Kahane ("Kahane") was a member of ARCP's Board of Directors from ARCP's formation until March 2012, and then again from February 2013 until June 24, 2014, when he resigned from the Board.  Between November 2010 and March 2012,  Kahane was the President, COO and a beneficial owner of ARC Advisors.  Kahane was also the co-founder of AR Capital. Kahane was a beneficial owner of, and served as the President and COO, of RCS Capital (aka RCAP Holdings).  From February 2013 until September 2014, Kahane served as the CEO of RCAP and served as a Director from its formation until December 2014.  During the Class Period, Kahane also served and/or continues to serve as an officer and/or director at more than a dozen ARCP-related entities.  Kahane signed the 2013 Shelf Registration Statement used for the July 2013 Offering, the December 2013 Offerings and the May 2014 Offering; the registration statements for the January 2014 ARCT IV Merger and the February 2014 Cole Merger; and permitted use of his name to solicit proxies for the ARCT IV and Cole Mergers.  Throughout the Class Period, Kahane acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, RCAP, AR Capital and ARC Advisors, as well as the other ARCP-related entities in which he held ownership, executive and/or director positions.

33.     Leslie D. Michelson ("Michelson") served as a member of ARCP's Board of Directors, and sat on its Audit Committee, during the Class Period from October 2012 until April 1, 2015.  During the Class Period, Michelson also served as a Director at American Realty Capital Healthcare Trust, Inc. and Business Development Corporation of America.  Michelson signed the 2012 and 2013 Forms 10-K; ARCP's 2013 Shelf Registration Statement used for the July 2013,

- 12 -

December 2013 and May 2014 Offerings; the registration statements for the ARCT IV and Cole Mergers; the registration statement for the September 2014 Senior Notes; and permitted the use of his name to solicit proxies for the ARCT III, ARCT IV and Cole Mergers.  Throughout the Class Period, Michelson acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP, American Realty Capital Healthcare Trust, Inc. and Business Development Corporation of America.

34.     William G. Stanley ("Stanley") was appointed as an ARCP Director in connection with the Company's acquisition of ARCT IV in January 2014, and remained a Director, and member of the Audit committee, through the end of the Class Period.  Stanley served as the interim Chairman and CEO at ARCP between December 2014 and April 1, 2015, assuming those roles when Schorsch's and Kay's employment at ARCP was terminated.  Formerly, Stanley served as a Director of two REITs sponsored by AR Capital, as a Director of a non-traded business development company sponsored by AR Capital, and as a director of ARCT IV (appointed in January 2013). When Stanley became ARCP's Chairman and CEO in December 2014, the Company announced that he had resigned, or was in the process of resigning, his positions with all entities related to Schorsch other than ARCP.  Stanley signed ARCP's 2013 Form 10-K and the registration statement for the September 2014 Senior Notes.  Throughout the Class Period, Stanley acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and ARCT IV, as well as the other ARCP-related entities in which he held ownership, executive and/or director positions.

35.     Edward G. Rendell ("Rendell") served as an ARCP Board member, and member of its Audit Committee, between July 2011 and October 2012 and again between February 2013 and the end of the Class Period.  During the Class Period, Rendell also served and/or continues to serve

- 13 -

as an officer and/or director at numerous related entities, including: ARCT III (Director); American Realty Capital Trust (Director); and American Realty Capital – Retail Centers of America, Inc. (Director).  Rendell signed ARCP's 2011 and 2013 Form 10-K; ARCP's 2013 Shelf Registration Statement used for the July 2013 Offering, the December 2013 Offerings and the May 2014 Offering; registration statement for the September 2014 Senior Notes; and permitted the use of his name to solicit proxies for the ARCT III, ARCT IV and Cole Mergers.  During the Class Period, Rendell acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and ARCT III, as well as the other ARCP-related entities listed above at which he held ownership, executive and/or director positions.

36.     Scott J. Bowman ("Bowman") served as an ARCP Board member, and sat on its Audit Committee, during the Class Period from February 2013 until September 9, 2014.  During the Class Period, Bowman served and/or continues to serve as an officer and/or director at numerous ARCP-related entities, including: ARCT III (Director), American Realty Capital Global Trust, Inc. (Director and CEO), and American Realty Capital Daily Net Asset Value Trust, Inc. (Director). Bowman signed ARCP's 2013 Form 10-K; 2013 Shelf Registration Statement used for the July 2013 Offering, the December 2013 Offerings and the May 2014 Offering; registration statements for the ARCT IV and Cole Mergers; registration statement for the September 2014 Senior Notes; and permitted the use of his name to solicit proxies for the ARCT III, ARCT IV, and Cole Merger. Throughout the Class Period, Bowman acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP and ARCT III, as well as the other ARCP-related entities in which he held ownership, executive and/or director positions.

37.     Thomas A. Andruskevich ("Andruskevich") served as an ARCP Board member from the Company's acquisition of Cole Inc. in February 2014 through the end of the Class Period.

- 14 -

Andruskevich previously served as a Director of Cole Inc. from October 2008 until Cole Inc.'s merger with ARCP in February 2014. Andruskevich signed ARCP's 2013 Form 10-K and the September 2014 Senior Notes. During the Class Period, Andruskevich acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP.

38. Scott P. Sealy, Sr. ("Sealy") was appointed as an ARCP Board member as a result of the Company's acquisition of Cole Inc. in February 2014. Sealy previously had served as a director of Cole Inc. Sealy resigned from ARCP's Board effective June 10, 2014. Sealy signed ARCP's 2013 Form 10-K. During the Class Period, Sealy acted and/or made the statements detailed herein in his capacity as an officer, member and/or director of ARCP.

39. Bruce D. Frank ("Frank") served as an ARCP Board member from July 8, 2014 through the end of the Class Period, and served on the Board's Audit Committee. At the time that Frank joined the Board of Directors, ARCP announced that he was an "audit committee financial expert." Frank signed the registration statement for the September 2014 Senior Notes.

**Grant Thornton**

40. Grant Thornton ("GT") is the U.S. member firm of Grant Thornton International Ltd, an international firm that provides independent audit, tax and advisory services. GT served as ARCP's outside auditor throughout the Class Period until it was terminated by ARCP in June 2015. While serving as ARCP's auditor, GT received millions of dollars in payments from ARCP and other Schorsch-related entities. GT certified ARCP's FY12 and FY13 financial statements, which were restated on March 2, 2015 due to material misstatements in ARCP's financial statements filed with the SEC. GT also consented to including its 2012 and/or 2013 clean, unqualified Audit Reports in the Registration Statements filed with the SEC in connection with the July 2013, December 2013,

- 15 -

and September 2014 debt registration; the May 2014 equity offering; and the Cole and ARCT IV mergers in January and February 2014, respectively.

**Underwriter Defendants**

**July 2013 Offering**

41.      J.P. Morgan Securities LLC ("JP Morgan"), Citigroup Global Markets Inc. ("Citigroup"), Barclays Capital Inc. ("Barclays"),  BMO Capital Markets Corp. ("BMO Capital"), and KeyBanc Capital Markets Inc. ("KeyBanc") acted as Joint Book Running Managers, and JMP Securities LLC ("JMP Securities"), Ladenburg Thalmann & Co. Inc. ("Ladenburg"), and Realty Capital Securities, LLC ("RCS Securities") acted as Co-Managers, of the July 24, 2013 underwriting of $300 million Senior Notes.

42.      The underwriter defendants listed above in ¶41 collectively acted as the underwriting syndicate and participated in the drafting and/or dissemination of the registration statement, as well as in the sale of those Senior Notes to plaintiffs and the Class, in connection with the July 2013 offering.  The underwriter defendants listed above in ¶41 served as the underwriters of the July 2013 offering and were responsible for ensuring the completeness and accuracy of the statements contained in, or incorporated by reference into, the registration statement used in connection with the July 2013 offering. The underwriter defendants listed above collectively received more than $8 million in connection therewith.

**December 2013 Offerings**

43.      Barclays, Citigroup, Credit Suisse Securities (USA) LLC ("Credit Suisse"),  Morgan Stanley & Co. LLC ("Morgan Stanley"), and Wells Fargo Securities, LLC ("Wells Fargo") acted as Joint Book Running Managers, and Capital One Securities, Inc. ("Capital One") and JMP Securities acted as Co-Managers, of the December 2013 offerings of $690 million of Convertible Senior Notes,

- 16 -

and participated in the drafting and/or dissemination of the registration statements, as well as the sale of those Senior Notes to plaintiffs and the Class.

44.     The underwriter defendants listed above in ¶43 served as the underwriters of the December 2013 offering and were responsible for ensuring the completeness and accuracy of the various statements contained in, or incorporated by reference into, the registration statements used in connection with the December 2013 offering, as they collectively acted as the underwriting syndicate that drafted and disseminated the offering documents in connection with the December 2013 offering.  The Underwriter Defendants listed above were paid nearly $22 million in connection with the December 2013 offering.

**May 2014 Offering**

45.     Merrill, Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), Citigroup, Barclays, J.P. Morgan, Capital One, Credit Suisse, Deutsche Bank Securities Inc. ("Deutsche Bank"), Wells Fargo, Robert W. Baird & Co. ("Baird"), Ladenburg, BMO Capital, JMP Securities, Janney Montgomery Scott, LLC ("Janney"), Mizuho Securities USA Inc. ("Mizuho"), PNC Capital Markets LLC ("PNC Capital"), Piper Jaffray & Co. ("Piper Jaffray"), and RBS Securities Inc. ("RBS Securities") acted as underwriters of the May 21, 2014 offering of 138 million shares of ARCP common stock, and participated in the drafting and/or dissemination of the registration statement, as well as in the sale of the common stock offered to plaintiffs and the Class.

46.     The underwriter defendants listed above in ¶45 served as the underwriters of the May 21, 2014 offering and were responsible for ensuring the completeness and accuracy of the various statements contained in, or incorporated by reference into, the registration statement used in connection with the May 2014 offering, as they collectively acted as the underwriting syndicate that drafted and disseminated the offering documents in connection with the May 2014 Offering.  The

- 17 -

Underwriter Defendants listed above were paid nearly $57 million in connection with the May 21, 2014 offering.  The underwriters of this offering exercised the greenshoe over-allotment option, bringing the total number of shares sold in the May 21, 2014 offering to 138 million shares, and total gross proceeds to $1.656 billion.

# 1933 ACT CLAIMS

# 1933 ACT CLAIMS

47.     During the Class Period, ARCP completed seven offerings of debt and equity securities.  In the offering materials for each of these offerings, ARCP incorporated by reference, *inter alia*: (i) certain GAAP financial statements previously filed with the SEC, including financial statements receiving unqualified Audit Reports from ARCP's auditor, GT; and (ii) ARCP's adjusted funds from operations, or "AFFO."

48.     AFFO is a measure of operating performance that is critical to analysts and investors in valuing a REIT.  As the Company stated in its 2013 Amended Form 10-K, ARCP's "***[s]enior management considered AFFO to be an important metric used by analysts and investors in evaluating the Company's performance***."  (All emphasis in quotations is added unless otherwise noted.)  AFFO is generally equal to a REIT's funds from operations ("FFO") with adjustments made for recurring capital expenditures used to maintain the quality of the REIT's underlying assets.  Thus, AFFO provides useful information for investors and analysts to assess the quality and sustainability of a REIT's operating performance.

49.     The SEC filings in question also represented that ARCP's internal controls were effective, and that any material changes to ARCP's internal controls over financial reporting were disclosed.

50.     As alleged herein, the financial information incorporated by reference into the relevant offering materials, including the internal control-related representations and unqualified Audit Reports, contained untrue statements of material fact, or omitted to state material facts required to be stated therein or necessary to make the statements therein not misleading.

### ARCP's Materially False and Misleading SEC Filings Were Incorporated by Reference into the Offering Materials

51.     At issue in this case are the Company's financial statements for the years ended December 31, 2012 and 2013; the quarters ended March 31, 2013, June 30, 2013, and September 30, 2013; and the quarters ended March 31, 2014 and June 30, 2014, as well as certain ARCP pro-forma financial statements and key financial measures (*e.g.*, AFFO) issued by the Company during the Class Period, and defendants' statements related thereto.

52.     ARCP violated GAAP standards and SEC rules because, as ARCP has admitted, the financial information contained in ARCP's financial statements was not prepared in conformity with applicable GAAP and SEC requirements, nor was the financial information a fair presentation of the Company's operations.  ARCP understated its operating expenses, as well as its operating and net losses, and misclassified expenses in order to give the false impression to investors that those expenses were non-recurring.

**2012 Form 10-K**

53.     On February 28, 2013, ARCP filed with the SEC its Form 10-K for the period ended December 31, 2012 (the "2012 Form 10-K").  The 2012 Form 10-K was prepared, reviewed and signed by Schorsch, Block, Weil and Michelson.  The 2012 Form 10-K set forth ARCP's financial results, including AFFO, and stated that the financial statements were accurate and presented in accordance with GAAP.  The 2012 Form 10-K also represented that the Company's internal controls were effective, and that any material changes to the Company's internal controls over financial reporting were disclosed.

54.     The 2012 Form 10-K also included Schorsch's and Block's certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX"), attesting that the financial information contained in the

- 20 -

filing was true, that the 2012 Form 10-K did not omit material facts and that the Company's internal and disclosure controls were effective.  The certification stated:

I, [Schorsch and Block], certify that:

1. I have reviewed this . . . Report . . . of [ARCP];

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    (c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably

- 21 -

likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

55.    Likewise, the 2012 Form 10-K represented that:

In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this . . . [report] and determined that the disclosure controls and procedures are effective . . . .

**The 1Q, 2Q and 3Q Forms 10-Q for 2013**

56.    ARCP filed with the SEC its Form 10-Q for the period ended March 31, 2013 (the "1Q13 Form 10-Q") on May 6, 2013; its Form 10-Q for the period ended June 30, 2013 (the "2Q13 Form 10-Q") on August 6, 2013; and its Form 10-Q for the period ended September 30, 2013 (the "3Q13 Form 10-Q") on November 7, 2013.  The 2013 Forms 10-Q set forth ARCP's financial results, including AFFO, and represented that the financial statements were accurate and presented in accordance with GAAP.  The 2013 Forms 10-Q also represented that the Company's internal controls were effective and that any material changes to the Company's internal controls that occurred during the financial reporting were disclosed therein.  The 2013 Forms 10-Q also included

- 22 -

Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶54-55.

**2013 Form 10-K**

57.     On February 27, 2014, ARCP filed with the SEC its Form 10-K for the period ended December 31, 2013 (the "2013 Form 10-K").  The 2013 Form 10-K set forth ARCP's financial results, including AFFO, and represented that the financial statements were accurate and presented in accordance with GAAP.  The 2013 Form 10-K also represented that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed.  It also included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶54-55.

**The 1Q14 and 2Q14 Forms 10-Q**

58.     ARCP filed with the SEC its Form 10-Q for the period ended March 31, 2014 (the "1Q14 Form 10-Q") on May 8, 2014 and its Form 10-Q for the period ended June 30, 2014 (the "2Q14 Form 10-Q") on July 29, 2014.  The 2014 Forms 10-Q set forth ARCP's financial results, including AFFO, and represented that the financial statements were accurate and presented in accordance with GAAP.  The 2014 Forms 10-Q also represented that the Company's internal controls were effective and that any material changes to the Company's internal controls over financial reporting were disclosed.  The 1Q14 and 2Q14 Forms 10-Q included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶54-55.

**Reasons Why the Financial and Internal Control-Related Information
Incorporated into ARCP's Offering Materials Were Materially False and Misleading**

59.     On March 2, 2015, ARCP filed its restated financial results for FY 2012, FY 2013, 1Q14 and 2Q14 ("Restatement"), admitting that the financial results reported in ARCP's 2012, 2013

- 23 -

and interim 2014 SEC filings were false and misleading when issued because the financial information contained therein did not fairly or accurately portray ARCP's financial performance during the relevant periods, in that ARCP omitted and/or misstated material facts.  The true facts were that:

- ARCP regularly and improperly classified ordinary business expenses as "merger-related," which, in turn, inflated AFFO and gave investors the false impression that such expenses were not recurring in nature.  As restated, the expenses were reclassified as general and administrative expenses.

- Numerous expenses were recorded in the incorrect accounting period. This delayed expense recognition and understated reported expenses and net losses.  As restated, the expenses were recorded in the periods in which they were actually incurred.

- On multiple occasions, ARCP improperly classified management fees paid to ARCP-related entities as being merger and other non-routine transaction-related. This masked related-party transactions, inflated AFFO, and gave investors the false impression that such expenses were not recurring in nature.  As restated, the expenses were reclassified as management fees to affiliates.

- On multiple occasions, ARCP recorded payments made to Schorsch-controlled entities as being for the purchase of furniture and equipment, when in fact there was "no evidence of the receipt" to substantiate the existence of any such furniture or equipment.  This overstated assets and understated expenses and net losses.  ARCP restated the payments by writing off the amounts.

- On multiple occasions, ARCP failed to record expenses for stock awards granted to directors.  This understated expenses and net losses.  As restated, these expenses were recognized and recorded.

- ARCP failed to record expenses to recognize impairment of its properties.  This understated expenses and losses and inflated AFFO.  As restated, these expenses were recognized and recorded.

60.    ARCP's misstatements during the Class Period caused operating loss to be understated by as much as 15%, and net loss attributable to stockholders to be understated by as much as 26%.  Additionally, ARCP's cash flow was understated by 27.2% and 13.6% in 1Q13 and 1Q14, respectively.

61.     These material misstatements, along with other accounting manipulations, also caused the Company's AFFO to be materially overstated throughout the Class Period, as depicted in the chart below:

| American Realty Capital Properties, Inc. AFFO Per Share Misstatements | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | **FY11** | **FY12** | **1Q13** | **2Q13** | **3Q13** | **4Q13** | **FY13** | **1Q14** | **2Q14** |
| AFFO per share - Reported | $ 0.60 | $ 0.47 | $ 0.20 | $ 0.19 | $ 0.30 | $ 0.38 | $ 1.07 | $ 0.26 | $ 0.24 |
| AFFO per share - Restated | $ 0.56 | $ 0.46 | $ 0.10 | $ 0.18 | $ 0.28 | $ 0.29 | $ 0.87 | $ 0.19 | $ 0.21 |
| % Overstated | 7.1% | 2.2% | 100.0% | 5.6% | 7.1% | 31.0% | 23.0% | 36.8% | 14.3% |

62.     The SEC filings listed in ¶¶53-58, above, were also false and misleading in that the internal control-related information set forth therein, including the SOX certifications signed by Schorsch and Block, omitted and/or misstated material facts.  The true facts were that ARCP had inadequate and deficient internal controls that permitted the misstatement of ARCP's financial results and reported AFFO.  Among these deficiencies were (i) a lack of controls that would have prevented senior management from changing ARCP's financial statements without a proper basis, review and approval; and (ii) a lack of control over AFFO formulation and the evaluation of ARCP's ability to meet AFFO guidance.

**GT's False and Misleading Statements**

**GT'S Certification of ARCP's False and Misleading Financial Statements**

63.     Section 11 of the 1933 Act explicitly extends liability to auditors, like GT, who certified ARCP's false and misleading statements contained in the Registration Statements.  GT, ARCP's auditors throughout the Class Period, certified ARCP's financial statements for the years ended December 31, 2012 and 2013.[1]  ARCP admitted that its financial statements were materially false: ARCP restated both its FY 2012 and FY 2013 financial statements on March 2, 2015 because

---

[1]     GT issued its 2012 Audit Report on February 28, 2013, issued its 2013 Audit Report on February 27, 2014, and reissued and recertified its 2013 Audit Report on May 20, 2014.

- 25 -

those financial statements did not present fairly, in all material respects, ARCP's financial position. The financial statements were materially false and misleading due to dozens of material GAAP violations.

64.     The false and misleading FY 2012 financial statements that GT certified were included, or incorporated by reference, in all seven Registration Statements at issue in this case: the debt offerings in July 2013, December 2013 and September 2014; the May 2014 equity offering; the February 2014 Cole Merger; and the January 2014 ARCT IV Merger, as described in ¶¶75-111.  The false and misleading FY13 financial statements certified by GT were included, or incorporated by reference, in the Registration Statements issued in connection with the May 2014 equity offering and the September 2014 debt registration.

**GT's False and Misleading Audit Reports**

65.     GT's Audit Reports for 2012 and 2013 were identical in all material respects and contained the following misleading statements:

- In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of American Realty Capital Properties, Inc. and subsidiaries as of December 31, 2013 and 2012, and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2013 in conformity with accounting principles generally accepted in the United States of America. Also in our opinion, the related financial statement schedules, when considered in relation to the basic consolidated financial statements taken as a whole, presents fairly, in all material respects, the information set forth therein.

- We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board.

- We have audited the internal control over financial reporting of American Realty Capital Properties, Inc. (a Maryland corporation) and subsidiaries.

- In our opinion, the Company maintained, in all material respects, effective internal control over financial reporting. . . , based on criteria established in *Internal Control-Integrated Framework* issued by COSO.

- 26 -

66.     The statements in GT's Audit Reports (listed in ¶65) were false and omitted the following material facts, which rendered them misleading to an ordinary investor:

(a)     ARCP's financial statements did not "present[] fairly, in all material respects, the information set forth therein" because ARCP's assets, earnings and cash flow were materially misstated;

(b)     GT did not conduct its 2012 and 2013 audits "in accordance with the standards of the PCAOB" because:

- GT did not place emphasis on testing, or apply heightened skepticism to, transactions ARCP engaged in with other Schorsch-related entities (which GT also audited), as PCAOB standards require.  This enabled ARCP to misclassify and understate expenses related to those related-party transactions, in violation of GAAP.  GT not only audited and reviewed ARCP's financial statements, but it also audited and reviewed the majority of ARCP's affiliates.[2]  Many of ARCP's accounting misstatements involved transactions with those affiliates.  Thus, as auditor to both ARCP and its affiliates, GT was uniquely positioned to see both sides of ARCP's transactions with its affiliates.  This unique knowledge created various obligations under the auditing standards that required GT to emphasize audit testing with known related parties;[3]

- ARCP violated some of the most basic and fundamental GAAP requirements when it misstated its financials, which GT would have detected had it performed its audits in compliance with PCAOB standards; and

---

[2]     Other Schorsch-related entities that GT audited include: American Energy Capital Partners, LP; American Realty Capital – Retail Centers of America, Inc.; American Realty Capital – Retail Centers of America II, Inc.; American Realty Capital Daily Net Asset Value Trust, Inc.; American Realty Capital Global Trust, Inc.; American Realty Capital Global Trust II, Inc.; American Realty Capital Healthcare Trust, Inc.; American Realty Capital Healthcare Trust II, Inc.; American Realty Capital Healthcare Trust III, Inc.; American Realty Capital New York City REIT, Inc.; American Realty Capital New York Recovery REIT, Inc. (now New York REIT); American Realty Capital Trust, Inc.; American Realty Capital Trust III, Inc.; American Realty Capital Trust IV, Inc.; American Realty Capital Trust V, Inc.; ARC Properties Operating Partnership L.P.; ARC Realty Finance Trust Inc. (now Realty Finance Trust, Inc.); and Business Development Corporation of America.

[3]     GT resigned or, in some cases, was dismissed as the auditor on the ARCP-affiliate engagements in January 2015.  GT was dismissed as ARCP's auditor on June 1, 2015.

- 27 -

- GT did not identify or address any "misstatements of fact" or "inconsistencies" in ARCP's AFFO.

(c)    ARCP did not "maintain in material respects, effective control over financial reporting."  For example, ARCP lacked effective controls:

- To ensure that the information contained in ARCP's periodic reports and other SEC filings correctly reflected the information contained in ARCP's accounting records and other supporting information or that AFFO per share was correctly calculated;

- To ensure that its SEC filings were reviewed on a timely basis by senior management or that significant changes to amounts or other disclosures contained in a document that had previously been reviewed and approved by the Audit Committee were brought to the attention of the Audit Committee or its Chair for review and approval before the documents were filed with the SEC;

- Concerning the formulation of AFFO per share guidance or the periodic re-assessment of ARCP's ability to meet its guidance;

- Concerning related-party transactions and conflicts of interest;

- Concerning grants of equity-based compensation;

- Concerning the aggregation of significant deficiencies within business process-level control activities and financial reporting controls;

- Concerning ARCP's accounting close process;

- Concerning critical accounting estimates and non-routine transactions;

- Concerning cash reconciliations and monitoring; and

- Concerning information technology controls.

(d)    In July 2014, ARCP's Chief Accounting Officer, McAlister, explicitly described to GT how ARCP was engaging in accounting improprieties.  This information was conveyed to GT prior to GT consenting to the inclusion of its clean, unqualified 2012 and 2013 Audit Reports into the September 2014 Registration Statement.

(e)      On September 7, 2014, several days before ARCP filed its September 2014 Registration Statement, a different ARCP employee (not McAlister) reported accounting improprieties to ARCP's Audit Committee – further corroborating the previous accounting improprieties reported by McAlister.

67.      None of the above material facts were included in GT's 2012 and 2013 Audit Reports, thereby rendering them misleading to an ordinary investor.

68.      GT's false and misleading 2012 Audit Report was included, or incorporated by reference, into the Registration Statements utilized in connection with the debt offerings in July 2013 and December 2013; the May 2014 equity offering; the January 2014 ARCT IV Merger; the February 2014 Cole Merger; and the September 2014 debt registration.  GT's false and misleading 2013 Audit Report was included, or incorporated by reference, into the Registration Statements for the May 2014 equity offering and the September 2014 debt registration.

**GT's False and Misleading Auditor Consents**

69.      The auditor consents that GT issued throughout the Class Period were also misleading.  GT's consents gave contemporaneous assurance to investors that ARCP's financial information included in the Registration Statements was accurate, and there were no omissions that would make the statements in the Registration Statements misleading.  As part of issuing its consents, GT was required, under the 1933 Act and auditing standards, to extend its procedures with respect to subsequent events from the date of its Audit Reports up to the effective date of the Registration Statements, or as close thereto as is reasonable and practicable under the circumstances. Procedures that GT should have undertaken prior to issuing its consents included:

- reading the entire prospectus and other pertinent portions of the Registration Statement;

- inquiring of and obtaining written representations from officers and other executives responsible for financial and accounting matters about whether any events occurred, other than those reflected in the Registration Statement, that in their opinion had a material effect on the audited financial statements included therein or that should be disclosed in order to keep those statements from being misleading;

- reading the latest available interim financial statements to make any appropriate comparisons and inquiring as to whether interim statements were prepared on the same basis as that used for the statements under audit;

- inquiring whether there had been any changes in the Company's related parties or any significant new related-party transactions; and

- making such additional inquiries or performing such procedures as considered necessary and appropriate to dispose of questions that arise in carrying out the foregoing procedures, inquiries and discussions.

70.     For the same reasons set forth above (¶66), GT's consents omitted material facts, making them misleading to an ordinary investor.

71.     GT consented to the inclusion of its unqualified reports on ARCP's false financial statements for 2012 in the Registration Statements and Prospectuses in connection with the debt offerings in July 2013 and December 2013, the May 2014 equity offering, the January 2014 ARCT IV Merger, the February 2014 Cole Merger and the September 2014 debt registration.  GT also consented to the inclusion of its unqualified report on ARCP's false financial statements for 2013 in the Registration Statements and Prospectuses in connection with the May 2014 equity offering and the September 2014 debt registration.  GT also consented to be referred to in the Registration Statements as "experts in accounting and auditing," whose Audit Reports were being relied upon. GT further reviewed ARCP's financial results included in its 1Q14 and 2Q14 Forms 10-Q, which were incorporated into the Prospectuses for the May 2014 (1Q14) equity and September 2014 (1Q14 and 2Q14) debt offerings.

### Defendants' Failure to Exercise Due Diligence

72.     Each of the defendants against whom a §11 claim is asserted herein were obligated by law to make a reasonable and diligent investigation of the statements contained in the applicable offering materials, including financial statements and statements regarding AFFO and ARCP's internal controls.  They failed to do so.  Had defendants exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

### COUNTS

73.     In each of the seven offerings alleged in Counts I to VII below, plaintiffs and members of the Class acquired securities traceable to the 2013 Shelf Registration Statement, the December 3, 2013 Registration Statement or the December 23, 2013 Registration Statement.  As a direct and proximate result of misrepresentations and/or omissions therein, plaintiffs and Class members suffered substantial damage in connection with their acquisition of the securities described herein.  As a result of the conduct herein alleged, each defendant named in Counts I to VII violated §11 of the 1933 Act.

74.     At the time of their acquisition of the securities issued in each of the offerings set forth below, plaintiffs and the other Class members were not aware of the untrue or misleading nature of the statements and/or the omissions alleged herein and could not have reasonably discovered such untruths or omissions before October 29, 2014.  Less than one year elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this Complaint is based until the time that plaintiffs filed their Complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the date the action commenced.

**COUNT I - Violation of §11 of the 1933 Act in Connection with the July 2013 Offering of
3% Senior Notes**

75.    Plaintiffs incorporate ¶¶1-5, 8, 11, 18-19, 24, 26-27, 29, 32-33, 35-36, 40-42, 47-56,

59-74, 302-307 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude

allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based

solely on claims of strict liability and/or negligence.

76.    On July 23, 2013, ARCP announced a $300 million offering of 3.0% Convertible

Senior Notes due August 1, 2018 (the "2018 Notes") (the "July 2013 Offering").  The July 2013

Offering was conducted pursuant to Form S-3ASR which ARCP filed with the SEC on March 14,

2013 (the "2013 Shelf Registration Statement"), Prospectus Supplements dated July 23 and 25, 2013

that "form a part of" the 2013 Shelf Registration Statement, and a Free Writing Prospectus for the

July 2013 Offering containing a Pricing Term Sheet dated July 23, 2013, filed on July 24, 2013

(collectively, the "July 2013 Offering Materials").

77.    The July 2013 Offering Materials specifically incorporated by reference the 2012

Form 10-K and the 1Q13 Form 10-Q, both of which included GAAP and other financial information

(including statements regarding AFFO) and representations concerning ARCP's internal controls.

78.    For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the July 2013 Offering

Materials were false and misleading in that they contained untrue statements of material fact and/or

omitted to state material facts required to be stated therein or necessary to make the statements made

therein not false or misleading.

79.    As set forth in their respective certifications, Union's funds  and the NYC Funds each

acquired 2018 Notes in the July 2013 Offering traceable to the 2013 Shelf Registration Statement,

and bring this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C.

§77k, against:

- 32 -

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Registrant** | ARCP | As registrant, strictly liable for misstatements and omissions in the July 2013 Offering Materials and statements incorporated therein. |
| **Individual Defendants** | Schorsch, Weil, Block, Jones Kahane, Michelson, Rendell and Bowman | Each signed and/or authorized the signing of the 2013 Shelf Registration Statement, which includes the information incorporated therein by reference, as alleged in ¶76, above. |
| **Auditor Defendant** | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 financial statements contained in the July 2013 Offering Materials; consented to the inclusion of its false FY 2012 Audit Report in the July 2013 Offering Materials. |
| **Underwriter Defendants** | JP Morgan, Citigroup, Barclays, BMO Capital, KeyBanc, JMP Securities, Ladenburg and RCS Securities | As underwriters, liable for misstatements and omissions in July 2013 Offering Materials. |

**COUNT II - Violation of §11 of the 1933 Act in Connection with the December 2013 Offering of 3% Senior Notes**

80.     Plaintiffs incorporate ¶¶1-5, 8, 18-19, 24, 26-27, 29, 32-33, 35-36, 40, 43-44, 47-56, 59-74, 302-305 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence.

81.     On December 4, 2013, ARCP announced a reopening of the 2018 Notes, which were ultimately priced at $287.5 million (the "December 2013 Reopening").  The December 2013 Reopening was conducted pursuant to the 2013 Shelf Registration Statement, Prospectus Supplements dated December 5, 6, and 9, 2013 that "form a part of" the 2013 Shelf Registration Statement, and a Free Writing Prospectus for the December 2013 Reopening containing a Pricing Term Sheet dated December 5, 2013 (collectively, the "December 2013 Reopening Materials").

- 33 -

82.     The December 2013 Reopening Materials specifically incorporated by reference the 2012 Form 10-K, the 1Q13 Form 10-Q, the 2Q13 Form 10-Q, and the 3Q13 Form 10-Q, all of which included GAAP and other financial information (including statements regarding AFFO) and representations concerning ARCP's internal controls.

83.     For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the December 2013 Reopening Materials were false and misleading in that they contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements made therein not false or misleading.

84.     As set forth in Union's certification, Union's funds acquired the 2018 Notes in the December 2013 Reopening traceable to the 2013 Shelf Registration Statement, and brings this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against:

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| Registrant | ARCP | As registrant, strictly liable for misstatements and omissions in the December 2013 Reopening Materials and statements incorporated therein. |
| Individual Defendants | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell and Bowman | Each signed and/or authorized the signing of the 2013 Shelf Registration Statement, which includes the information incorporated therein by reference, as alleged in ¶81, above. |
| Auditor Defendant | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 financial statements contained in the December 2013 Reopening Materials; consented to the inclusion of its false FY 2012 Audit Report into the December 2013 Reopening Materials. |
| Underwriter Defendants | Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One and JMP Securities | As underwriters, liable for misstatements and omissions in December 2013 Reopening Materials. |

**COUNT III - Violation of §11 of the 1933 Act in Connection with the December 2013 Offering of 3.75% Senior Notes**

85.     Plaintiffs incorporate ¶¶1-5, 8, 18-19, 24, 26-27, 29, 32-33, 35-36, 40, 43-44, 47-56, 59-74, 302-307 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence.

86.     On December 4, 2013, ARCP announced an offering of 3.75% Convertible Senior Notes due December 15, 2020, which were ultimately priced at $402.5 million (the "2020 Notes") (the "December 2013 Offering").  The December 2013 Offering was conducted pursuant to the 2013 Shelf Registration Statement, Prospectus Supplements dated December 5, 6, and 9, 2013 that "form a part of" the 2013 Shelf Registration Statement, and a Free Writing Prospectus for the December 2013 Offering containing a Pricing Term Sheet dated December 5, 2013 (collectively, the "December 2013 Offering Materials").

87.     The December 2013 Offering specifically incorporated by reference the 2012 Form 10-K, the 1Q13 Form 10-Q, the 2Q13 Form 10-Q and the 3Q13 Form 10-Q, all of which included GAAP and other financial information (including statements regarding AFFO) and representations concerning ARCP's internal controls.

88.     For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the December 2013 Offering Materials were false and misleading in that they contained untrue statements of material facts and/or omitted to state material facts required to be stated therein or necessary to make the statements made therein not false or misleading.

89.     As set forth in Union's certification, Union's funds acquired the 2020 Notes in the December 2013 Offering traceable to the 2013 Shelf Registration Statement, and brings this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against:

- 35 -

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Registrant** | ARCP | As registrant, strictly liable for misstatements and omissions in December 2013 Offering Materials and statements incorporated therein. |
| **Individual Defendants** | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell and Bowman | Each signed and/or authorized the signing of the 2013 Shelf Registration Statement, which includes the information incorporated therein by reference, as alleged in ¶86, above. |
| **Auditor Defendant** | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 financial statements contained in the December 2013 Offering Materials; consented to the inclusion of its false FY 2012 Audit Report into the December 2013 Offering Materials. |
| **Underwriter Defendants** | Citigroup, Barclays, Credit Suisse, Morgan Stanley, Wells Fargo, Capital One and JMP Securities | As underwriters, liable for misstatements and omissions in December 2013 Offering Materials. |

**COUNT IV - Violation of §11 of the 1933 Act in Connection with the ARCT IV Merger**

90.     Plaintiffs incorporate ¶¶1-5, 13, 15, 17-19, 24, 26-28, 31-33, 35-36, 40, 47-56, 59-74, 302-307 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence.

91.     On July 2, 2013, ARCP announced that it had entered into a definitive merger agreement to acquire the outstanding shares of American Realty Capital Trust, IV, Inc. ("ARCT IV").  Under the terms of the merger agreement (the "ARCT IV Merger"), ARCT IV shareholders would, contingent upon a shareholder vote, receive 0.519 of a share of ARCP common stock, 0.5937 of a share of Series F Preferred Stock, and $9 in cash for each share of ARCT IV they owned.

92.     The ARCT IV Merger was conducted pursuant to a Registration Statement on Form S-4 filed with the SEC on December 3, 2013 (the "December 3, 2013 Registration Statement"), and a Proxy Statement/Prospectus dated December 4, 2013 that "forms a part" of the registration

statement (collectively, the "ARCT IV Merger Materials"). 79.1 million shares of ARCP common stock were issued in the ARCT IV Merger.

93. The ARCT IV Merger Materials specifically incorporated by reference the 2012 Form 10-K, the 1Q13 Form 10-Q, the 2Q13 Form 10-Q and the 3Q13 Form 10-Q, all of which included GAAP and other financial information (including statements regarding AFFO) and representations concerning ARCP's internal controls.

94. For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the ARCT IV Merger Materials were false and misleading in that they contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements made therein not false or misleading.

95. Plaintiffs Matten, Ellis and Esposito acquired ARCP stock common and/or Series F Preferred Shares in the ARCT IV Merger or traceable thereto, and thereby acquired those shares traceable to the December 3, 2013 Registration Statement. Matten, Ellis and Esposito bring this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against:

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Registrant** | ARCP | As registrant, strictly liable for misstatements and omissions in ARCT IV Merger Materials and statements incorporated therein. |
| **Individual Defendants** | Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block and Beeson | Each signed and/or authorized the signing of the December 3, 2013 Registration Statement, which includes the information incorporated therein by reference, as alleged in ¶92, above. |
| **Auditor Defendant** | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 financial statements contained in the ARCT IV Merger Materials; consented to the inclusion of its false FY 2012 Audit Report into the ARCT IV Merger Materials. |

**COUNT V - Violation of §11 of the 1933 Act in Connection with the Cole Merger**

96.     Plaintiffs incorporate ¶¶1-7, 9-11, 14, 18-19, 24, 26-28, 31-33, 35-36, 40, 47-56, 59-74, 302-307 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence.

97.     On or about October 22, 2013, ARCP and Cole Inc. entered into an Agreement and Plan of Merger (the "Cole Merger Agreement").  Under the terms of the merger agreement (the "Cole Merger"), Cole Inc. shareholders were to receive, at their election, 1.0929 shares of ARCP common stock or cash per Cole Inc. share, with the cash consideration limited to no more than 20% of Cole Inc.'s shares.

98.     The Cole Merger was conducted pursuant to a Registration Statement on Form S-4 filed with the SEC on December 23, 2013 (the "December 23, 2013 Registration Statement"), and a Joint Proxy Statement/Prospectus dated December 23, 2013 that "forms a part" of the registration statement (collectively, the "Cole Merger Materials").  520.8 million shares of ARCP common stock were issued in the Cole Merger.

99.     The Cole Merger Materials specifically incorporated by reference the 2012 Form 10-K, the 1Q13 Form 10-Q, the 2Q13 Form 10-Q and the 3Q13 Form 10-Q, all of which included GAAP and other financial information (including statements regarding AFFO) and representations concerning ARCP's internal controls.

100.    For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the Cole Merger Materials were false and misleading in that they contained untrue statements of material facts and/or omitted to state material facts required to be stated therein or necessary to make the statements made therein not false or misleading.

- 38 -

101.     TIAA-CREF, National Pension Fund, Corsair, the NYC Funds, KBC's funds and Abadi acquired ARCP common stock in the Cole Merger traceable to the December 23, 2013 Registration Statement, and bring this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against:

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Registrant** | ARCP | As registrant, strictly liable for misstatements and omissions in Cole Merger Materials and statements incorporated therein. |
| **Individual Defendants** | Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block and Beeson | Each signed and/or authorized the signing of the December 23, 2013 Registration Statement, which includes the information incorporated therein by reference, as alleged in ¶98, above. |
| **Auditor Defendant** | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 financial statements incorporated in the Cole Merger Materials; and consented to the inclusion of its false FY 2012 Audit Report into the Cole Merger Materials. |

**COUNT VI - Violation of §11 of the 1933 Act in Connection with the May 2014 Offering ARCP Stock**

102.     Plaintiffs incorporate ¶¶1-5, 7, 10-12, 14, 18-19, 24, 26-27, 29, 32-38, 40, 45-74, 302-307 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence.

103.     On May 21, 2014, ARCP entered into an agreement related to the sale of 138 million newly issued shares of ARCP common stock at $12.00 per share (the "May 21 Equity Offering"), raising $1.65 billion from investors.  The May 21 Equity Offering was conducted pursuant to the 2013 Shelf Registration Statement, along with a preliminary Prospectus Supplement filed May 21,

2014 and a Prospectus Supplement filed May 23, 2014, both of which "form a part" of the 2013 Shelf Registration Statement (collectively, the "May 21 Equity Offering Materials").[4]

104.    The May 21 Equity Offering Materials specifically incorporated by reference the 2012 Form 10-K, the 2013 Form 10-K and the 1Q14 Form 10-Q, all of which included GAAP and other financial information (including statements regarding AFFO) and representations concerning ARCP's internal controls.

105.    For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the May 21 Equity Offering Materials were false and misleading in that they contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements made therein not false or misleading.

106.    Plaintiffs National Pension Fund, Tampa, Corsair, the NYC Funds and Abadi acquired ARCP common stock in the May 21 Equity Offering traceable to the 2013 Shelf Registration Statement, and bring this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against:

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Registrant** | ARCP | As registrant, strictly liable for misstatements and omissions in May 21 Equity Offering Materials and statements incorporated therein. |

---

[4]    The underwriters also exercised the "green shoe," selling an additional 18 million newly issued shares beyond the first 120 million shares, for a total of 138 million shares in connection with the May 21 Equity Offering.

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Individual Defendants** | Schorsch, Weil, Block, Jones, Kahane, Michelson, Rendell, Bowman, Stanley, Andruskevich and Sealy | Each signed and/or authorized the signing of the 2013 Shelf Registration Statement, which includes the information incorporated therein by reference, as alleged in ¶103, above, or was a director of ARCP at the time of the filing of the part of the Registration Statement with respect to which his or her liability is asserted. |
| **Auditor Defendant** | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 and 2013 financial statements contained in the May 21 Equity Offering Materials; consented to the inclusion of its false FY 2013 Audit Reports into the May 21 Equity Offering Materials. |
| **Underwriter Defendants** | Merrill Lynch, Citigroup, Barclays, J.P. Morgan, Capital One, Credit Suisse, Deutsche Bank, Wells Fargo, Baird, Ladenburg, BMO Capital, JMP Securities, Janney, Mizuho, PNC Capital, Piper Jaffray and RBS | As underwriters, liable for misstatements and omissions in May 21 Equity Offering Materials. |

**COUNT VII - Violation of §11 of the 1933 Act in Connection with the September 2014 Registration of $2.55 Billion of Senior Notes**

107.    Plaintiffs incorporate ¶¶1-5, 7, 11, 18-19, 24, 26, 29, 30, 33-37, 39-40, 47-74, 302-307 as though fully set forth herein.  With respect to this Count, plaintiffs also exclude allegations that could be construed as alleging fraud or intentional misconduct, as this Count is based solely on claims of strict liability and/or negligence.

108.    On September 12, 2014, ARCP and ARC Properties registered the $2.55 billion worth of Senior Notes previously issued in the February 2014 Notes Offering (the "Exchange Offer").  The Exchange Offer was conducted pursuant to the 2013 Shelf Registration Statement and a Prospectus incorporated therein dated September 12, 2014 (the "Exchange Offer Materials").

- 41 -

109.    The Exchange Offer Materials specifically incorporated by reference the 2012 Form 10-K, the 2013 Form 10-K, the 1Q14 Form 10-Q and the 2Q14 Form 10-Q, all of which included GAAP and other financial information (including statements regarding AFFO) and representations concerning ARCP's internal controls.

110.    For all the reasons set forth in ¶¶59-62, 66-67, 70 above, the Exchange Offer Materials were false and misleading in that they contained untrue statements of material fact and/or omitted to state material facts required to be stated therein or necessary to make the statements made therein not false or misleading.

111.    Plaintiffs National Pension Fund and the NYC Funds acquired Senior Notes in the Exchange Offer traceable to the 2013 Shelf Registration Statement, and bring this claim on behalf of members of the Class pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, against:

| DEFENDANT | | SECTION 11 LIABILITY |
|---|---|---|
| **Registrant** | ARCP and ARC Properties Operating Partnership L.P. | As registrants, strictly liable for misstatements and omissions in Exchange Offer Materials and statements incorporated therein. |
| **Individual Defendants** | Schorsch, Stanley, Frank, Andruskevich, Michelson, Rendell, Bowman, Block and McAlister | Each signed and/or authorized signing of Exchange Offer Materials and participated in their preparation and dissemination. |
| **Auditor Defendant** | Grant Thornton | As accounting experts, certified ARCP's false and misleading FY 2012 and 2013 financial statements contained in the Exchange Offer Materials; consented to the inclusion of its false FY 2013 Audit Reports into the Exchange Offer Materials. |

112.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

113.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

- 42 -

114.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

115.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

116.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

117.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

118.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

119.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

120.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

## COUNT VIII - Violation of §15 of the 1933 Act

121.    This claim is brought against defendants ARC Advisors and AR Capital for their control of defendant ARCP in connection with ARCP's violation of §11 of the 1933 Act relating to:

| Registration Statement | Date |
|---|---|
| $300 million 3% Convertible Senior Notes due 2018 | 7/2013 |
| $287.5 million 3% Convertible Senior Notes due 2018 | 12/2013 |
| $402.5 million 3.75% Convertible Senior Notes due 2020 | 12/2013 |
| 79.1 million shares of ARCP stock issued in ARCT IV Merger | 1/3/2014 |
| 520.8 million shares of ARCP stock issued in Cole Merger | 2/2014 |
| 138 million shares of ARCP stock issued in May 2014 Offering | 5/2014 |
| $2.55 billion of Senior Notes | 9/2014 |

- 43 -

122.     Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

**Control of ARCP**

123.     Schorsch, Kahane, Weil, Budko and Block operated numerous interrelated companies out of their offices at 405 Park Avenue in New York.  ARCP, ARC Advisors and AR Capital all shared that address.  ARCP paid more than $900 million to ARC Advisors and these other entities in a series of related-party transactions, including millions of dollars transferred without any supporting documentation.

124.     Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

125.     Schorsch, Kahane, Weil, Budko and Block held executive and director positions and/or were beneficial owners at both of these companies and at ARCP, as detailed below:

|  | **ARCP** | **ARC Advisors** | **AR Capital** |
|---|---|---|---|
| **Schorsch** | CEO:<br>Dec. 2010 – Oct. 1, 2014<br>Chairman:<br>Dec. 2010 – Dec. 15, 2014<br>Beneficial owner | Chairman/CEO:<br>Nov. 2010 – at least Jan. 2014 | CEO/Chairman:<br>Dec. 2012 – Present<br>Beneficial owner |
| **Kahane** | Director:<br>Dec. 2010 – Mar. 2012;<br>Feb. 2013 – June 24, 2014<br>Beneficial owner | President/COO:<br>Nov. 2010 – Mar. 2012 | Beneficial owner |
| **Weil** | President/Treasurer/Secretary:<br>Dec. 2010 – Jan. 2014<br>Director:<br>Mar. 2012 – June 2014 | EVP:<br>Nov. 2010 – at least Jan. 2014 | President/COO:<br>Dec. 2012 – Present<br>Beneficial owner |
| **Block** | CFO/EVP:<br>Dec. 2010 – Oct. 28, 2014<br>Beneficial owner | CFO/EVP:<br>Nov. 2010 – at least Jan. 2014 | CFO/EVP:<br>Dec. 2012 – Nov. 2013<br>Beneficial owner |
| **Budko** | CIO/EVP:<br>Dec. 2010 – 2014<br>Beneficial owner | CIO/EVP:<br>Nov. 2010 – at least Jan. 2014 | CIO/EVP:<br>Dec. 2012 – Present<br>Beneficial owner |

126.     ARC Advisors and AR Capital possessed the power to control, and did control, directly and/or indirectly, the actions of ARCP during the Class Period.  ARCP had *zero* employees

- 44 -

at the time of its IPO in September 2011 and continued to have no employees until sometime in 2014. Instead, the Company was externally managed by ARC Advisors. ARC Advisors managed ARCP's activities on a day-to-day basis, provided ARCP with its management team and support personnel and employed ARCP's CEO, President, CIO and other executive officers. ARC Advisors also supplied the compensation for ARCP's executive officers. ARCP consistently stated in SEC filings that it was "completely reliant" on ARC Advisors and its parent companies (RCS Capital, LLC until December 27, 2012 and AR Capital, LLC thereafter), which had "the power to direct the activities of [ARCP] through advisory/management agreements." ARC Advisors, through this management relationship, controlled the actions of ARCP, thereby reaping, together with its "affiliates," over $900 million in fees during the Class Period – fees that ARCP has now acknowledged included transactions that were not documented or that otherwise warranted scrutiny.

127. AR Capital is wholly owned by Schorsch, Kahane, Weil, Budko and Block. From December 27, 2012 until the end of the Class Period, AR Capital owned and possessed the power to control, and did control, directly and/or indirectly, the actions of ARC Advisors, which was the external manager of ARCP and exerted day-to-day control over ARCP's affairs. According to ARCP, ARC Advisors and its parent companies (including AR Capital, LLC) have "the power to direct the activities of [ARCP] through advisory/management agreements." The resources of ARC Advisors' parent companies were vital to the implementation and execution of ARCP's business and growth strategies, including the acquisition of ARCP's numerous properties.

128. Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

129. Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

130.    Defendants ARC Advisors and AR Capital exercised control directly and indirectly over the actions of ARCP in connection with its violations of §11 of the 1933 Act as described in ¶¶75-111.  By reason of such conduct, these defendants are liable pursuant to §15 of the 1933 Act.

131.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

# 1934 ACT CLAIMS

# 1934 ACT CLAIMS

132.    ARCP is a REIT, focused on single-tenant freestanding commercial properties subject to medium-term leases with high credit-quality tenants.  Between its IPO and 2014, ARCP grew into one of the largest REITs in the United States.  By 2014, ARCP owned more than 4,400 properties spanning almost 100 million square feet.[5]

133.    When ARCP went public on September 7, 2011, it sold just over 5.5 million shares of ARCP common stock at $12.50 per share.  As of December 31, 2011, the Company reported total assets of $132 million.  By December 31, 2012, ARCP's assets had almost doubled (to $256 million), as ARCP embarked on one of the most aggressive merger-and-acquisition campaigns ever undertaken in the real estate industry.  The table below shows ARCP's rapid-fire pattern of acquisitions:

| Acquisition | Close Date | Transaction Value |
|---|---|---|
| ARCT III | 02/28/13 | **$2.2 billion** |
| GE Capital Properties | 06/27/13 | **$774 million** |
| CapLease, Inc. | 11/03/13 | **$2.2 billion** |
| ARCT IV | 01/03/14 | **$3 billion**, including 79.1 million ARCP shares |
| Fortress Group Properties | 01/08/14 | **$601 million** |
| Cole Inc. | 02/07/14 | **$11.2 billion**, including 520 million ARCP shares |
| Red Lobster Properties | 07/28/14 | **$1.5 billion** |

134.    Describing itself publicly as an "acquisition machine," ARCP became the largest REIT of its kind in the United States.  It grew by acquiring hundreds of millions of dollars of real

---

[5]    REITs own – and typically operate – income-producing real estate or real estate-related assets. REITs provide investors with the ability to receive a share of the income produced through real estate ownership, without owning the underlying real estate.  To qualify as a REIT, a company must, *inter alia*, have the bulk of its assets and income connected to real estate investment and must distribute at least 90% of its taxable income to shareholders annually in the form of dividends.

estate assets at a time (and in some cases billions of dollars), increasing its total assets more than

***16,036%*** in two and a half years, as the following chart demonstrates:



135.     ARCP is one of an array of companies owned and/or controlled by Schorsch, which

were used to effectuate the scheme and wrongful course of conduct alleged in this cause of action.

Schorsch, Kahane, Weil, Budko and Block used ARCP to acquire other REITs and, in the process,

ARCP paid commissions, fees and other expenses to RCAP, RCS Capital, Realty Capital Securities,

AR Capital and ARC Advisors – all entities owned or controlled by these same individual

defendants.  Forbes.com described the Schorsch empire as "[a] fully integrated operation [that] not

only manufactured nontraded, high-yielding REITs, it also provided research and advisory services

to them, and controlled the second-largest independent financial advisory operation in the nation

(and 9,200 brokers) who peddled them."  In fact, in Schorsch's resignation agreement with ARCP

entered into on December 12, 2014, he agreed to resign from no fewer than ***47*** other related entities.

**ARCP's Growth During the Class Period Was Fueled by Its False Financial Statements**

136.     ARCP's rapid-fire acquisition strategy was predicated upon a massive accounting scheme.  Arguably the single most critical metric relied upon by analysts and investors in valuing ARCP was a measure of operating performance called AFFO.  AFFO is based on another commonly accepted measure of operating performance for REITs called Funds from Operations, or FFO.  ARCP defines FFO as "net income or loss computed in accordance with GAAP, excluding gains or losses from sales of property but including asset impairment write-downs, plus depreciation and amortization, after adjustments for unconsolidated partnerships and joint ventures."  AFFO, in turn, equals FFO adjusted to exclude (in the case of ARCP) acquisition-related fees and expenses, amortization of above-marketplace assets and liabilities, amortization of deferred financing costs, straight-line rent, non-cash mark-to-market adjustments, amortization of restricted stock, non-cash compensation and gains and losses.  As ARCP has acknowledged, AFFO:

> [P]rovides information consistent with management's analysis of the operating performance of the properties.  By providing AFFO, ***ARCP believes it is presenting useful information that assists investors and analysts to better assess the sustainability of our operating performance***.  Further, ARCP believes AFFO is ***useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies, including exchange-traded and non-traded REITs***.

137.     By early 2012, however, ARCP's senior insiders realized that their existing practice of artificially inflating ARCP's AFFO by failing to adjust for non-controlling interests was not going to adequately boost ARCP's share price performance, which, in turn, was impeding ARCP's ability to raise meaningful amounts of capital.  ARCP's senior insiders recognized that the only way to generate the substantial fees, commissions and compensation payments they sought would be to supercharge ARCP's reported AFFO growth.

- 49 -

138.    Beginning in late 2012, ARCP's Chairman and CEO (Schorsch) and its CFO (Block) assured ARCP investors and potential merger partners that ARCP's performance was "exceed[ing] our financial projections across the board."  In February 2013, ARCP reported strong 2012 AFFO of $10.5 million, and declared that it was "positioned for dynamic growth."  By late 2013, ARCP's senior insiders were emphasizing to the market that ARCP would report for 2014 "*a growth rate of about 30% over 2013 AFFO per share*."

139.    Defendants' scheme reached its apex in the second quarter of 2014 ("2Q14"), when ARCP reported quarterly AFFO of $205.3 million, *a 429% increase over 2Q13*.  By that time, ARCP's senior insiders had caused ARCP to issue and/or sell $3.5 billion of ARCP debt securities and well over 800 million shares of ARCP stock at artificially inflated levels.  They had also used the billions of dollars ARCP had raised, together with artificially inflated shares of ARCP stock, to consummate no fewer than five multi-billion dollar acquisitions of other REITs and real estate portfolios.

140.    The external manager responsible for ARCP's "affairs on a day-to-day basis" was ARC Properties Advisors, LLC (defined above as ARC Advisors) (whose CEO was also Schorsch), which was controlled by Schorsch, Block, Budko, Weil and Kahane, initially through RCS Capital and later through AR Capital.  *ARC Advisors is a separate legal entity that ARCP does not own and whose revenues and profits do not benefit ARCP's shareholders*.

141.    The ARCP "acquisition machine" was designed to and did effectively transfer hundreds of millions of dollars from ARCP to entities owned and/or controlled by Schorsch, Weil, Kahane, Block and Budko.  In just three years, ARCP paid ARC Advisors "and its affiliates" over $900 million – most of which was purportedly for offering/acquisition-related "commissions," "fees," "services" and "acquisition related expenses," including:

- 50 -

- $15.4 million paid for "post-transaction support services," including $10 million paid to a Schorsch-controlled entity to provide, among other things, "public relations support" and "services relating to office supplies";

- $17.7 million for so-called "financing coordination fees";

- $21.6 million for the purported sale to ARCP of "furniture, fixtures, and equipment," for which "no evidence" could be found with respect to at least a third of such furniture, fixtures or equipment were received;

- $31.6 million for "management fees";

- $63.4 million for "strategic advisory services";

- $67.9 million in "acquisition related expenses";

- $120.1 million in "general and administrative expenses";

- $176.6 million in payments denominated as "subordinated distribution fees," which were triggered solely by ARCP's purchase of American Realty Capital Trust, III, Inc. ("ARCT III") and ARCT IV; and

- $333 million in "commissions and fees."

142.    ARCP also paid $7.66 million to RCS Securities for "financial advisory and strategic services to **ARCP** prior to the consummation of the ARCT IV Merger," with ARCT IV paying **another** $7.66 million to RCS Securities for the "[p]rovision of financial advisory and strategic services to **ARCT IV** prior to the consummation of the ARCT IV Merger."  Put another way, one Schorsch-controlled entity (RCS Securities) advised **both** sides of the ARCT IV Merger (the Company and ARCT IV) – both of which were **also** Schorsch-controlled entities – and received $7.66 million from **each** of them.

143.    The various ways defendants diverted money from ARCP was so complex and opaque that a months-long Audit Committee investigation resulted in no more than vague findings of "certain payments" to Schorsch-related entities "that were not sufficiently documented or [that] otherwise warrant scrutiny," and a lingering question as to "whether [ARCP] has a right to seek recovery for any other such payments and, if so, its alternatives for recovery."

**ARCP's Acquisition Spree Was Designed to and Did Boost Executive Incentive Payments**

144.     The "acquisition machine" was also a fundamental part of defendants' efforts to expand ARCP's asset base, thereby increasing the basis for incentive compensation under ARCP's executive compensation plan, the Multi-Year Outperformance Plan (the "OPP").  The OPP has two components, one "absolute" and one "relative," both measured over a three-year period in terms of total return to stockholders, including both share price appreciation and common stock distributions.  First, if ARCP achieved a total return to stockholders of more than 7% a year, the plan paid out 4% of the dollar amount exceeding that benchmark.  Second, if ARCP's annual performance exceeded the median total return of a group of peer companies by six percentage points or more, then the OPP paid out an additional 4% of that excess total return.[6]

145.     The Compensation Committee of ARCP's Board of Directors approved the adoption of the OPP in October 2013, and allocated the bulk of its $120 million executive-incentive compensation pool – **_42.5%_** – to Schorsch alone (over a five-year period).

146.     Despite the OPP's obvious extravagance, Schorsch and Block by fiat increased the OPP by $100 million simply by altering the plan and the ARCP Board then disseminated a Proxy stating that the "maximum award value" of the Plan was $222.1 million.  ARCP's shareholders rejected the OPP in a non-binding vote at the Company's annual meeting on May 29, 2014, with only 32.4% of the shares represented voting in favor of the package.  Nonetheless, the Company apparently ignored the shareholder vote and all indications are that the plan, with the

---

[6]     With respect to this second component, however, the recipients were to receive 50% of their incentive compensation even if ARCP posted a cumulative total return of **_zero percent_**.  That is, **_even with no total return to shareholders whatsoever_**, the OPP entitled certain defendants, including Schorsch and Block, to **_half_** of this component of their incentive compensation.

Schorsch/Block-decreed $100 million OPP pool increase, was later adopted by the ARCP defendants, notwithstanding its repudiation by shareholders.

147.    Schorsch's compensation from the OPP was in addition to: (i) his guaranteed base salary for 2014 of $1.1 million; (ii) an estimated $8.8 million of nonguaranteed cash bonus and equity awards; and (iii) a "retention grant" worth $24.9 million, paid out over nine annual installments of $2.8 million.  Schorsch's total awarded compensation for 2014 – and for ARCP alone – was estimated at *$28.4 million*, assuming he achieved only the *midrange* of the OPP plan, or almost *26 times* his guaranteed salary of $1.1 million.

### ARCP Acknowledged that It Falsified Its Financial Statements and AFFO

148.    Before the market opened on October 29, 2014, ARCP issued a release and filed a Form 8-K with the SEC revealing that ARCP's previously reported FY13 financial results (which incorporated the Company's 2012 and 2011 financial results), as well as its financial results for 1Q14 and 2Q14, "*should no longer be relied upon*," and that ARCP intended to restate its financial results for those periods.  ARCP further admitted that:

> (1) the Company's AFFO was overstated during the first quarter of 2014 by an estimated $17,638,000 on a net basis (or $11,974,000 on a gross basis), and was overstated during the second quarter of 2014 by an estimated $10,869,000 on a gross basis; and

> (2) the Company's net loss attributable to common stockholders was understated during the second quarter of 2014 by an estimated *$9,242,000*.

In addition, ARCP's Audit Committee had concluded that the first-quarter error "was *identified but intentionally not corrected*," and the second-quarter errors were "*intentionally made*."  As a result, ARCP was "reevaluating its internal control over financial reporting and its disclosure controls and procedures."

149.    The Form 8-K stated, in pertinent part:

- 53 -

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**.

. . . *On October 24, 2014, the Audit Committee* of the Board of Directors (the "Audit Committee") *of [ARCP]* . . . *concluded that the previously issued audited consolidated financial statements and other financial information contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013, the previously issued unaudited financial statements and other financial information contained in the Company's Quarterly Reports on Form 10-Q for the fiscal periods ended March 31, 2014 and June 30, 2014, and the Company's earnings releases and other financial communications for these periods (collectively, the "Prior Financial Information") should no longer be relied upon*.

The Audit Committee based its conclusion on the preliminary findings of its investigation into *concerns regarding accounting practices and other matters* that first were reported to the Audit Committee on September 7, 2014. The Audit Committee promptly initiated an investigation, which is being conducted with the assistance of independent counsel and forensic experts.

The investigation conducted to date has not uncovered any errors in the consolidated financial statements (prepared in accordance with U.S. GAAP) for the three months ended March 31, 2014.  However, *based on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO")*, a non-U.S. GAAP financial measure, *for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period.  The Audit Committee believes that [1] this error was identified but intentionally not corrected, and [2] other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014*.

\*          \*          \*

*Based on the preliminary findings of the investigation, the Company has identified the potential adjustments* set forth in Exhibit 99.1 to this Report *[1] to the Company's reported net loss in accordance with U.S. GAAP for the three and six months ended June 30, 2014 and [2] to reported AFFO . . . for the three months ended March 31, 2014 and the three and six months ended June 30, 2014*.  Note that, in calculating AFFO for the first quarter of 2014, the Company presented activity from non-controlling interests on a net basis, while in the second quarter of 2014, as permitted, the Company presented its activity from non-controlling interests on a gross basis (which it will continue to do in calculating AFFO in future periods). The weighted average number of shares used in calculating AFFO differs depending on whether the net or gross method is used (but does not change for purposes of calculating net loss per share in accordance with U.S. GAAP). *The investigation is ongoing and there can be no assurance that the potential adjustments* set forth in

- 54 -

the table below *will not change based upon the final results of the investigation, and any such change could be material*.

The Company will work with the Audit Committee and the Audit Committee's independent advisors to determine the adjustments required to be made to the Prior Financial Information as expeditiously as possible. *Upon the completion of this process, which could identify further adjustments in addition to those discussed above, the Company will restate the Prior Financial Information and amend its prior periodic filings to the extent required [and update its earnings guidance at that time]*.[7]   The Company will file its Quarterly Report on Form 10-Q for the quarter ended September 30, 2014 after the amended filings have been made.

In light of the preliminary findings of the Audit Committee's investigation, *the Company is reevaluating its internal control over financial reporting and its disclosure controls and procedures. The Company intends to make the necessary changes to its control environment to remediate all control deficiencies that are identified as a result of the ongoing investigation and the restatement process*.

150.   The Form 8-K also announced the abrupt resignations of ARCP's CFO, defendant Block, as well as defendant McAlister, the Company's CAO.

151.   The release and Form 8-K contained identical tables setting forth "Potential Adjustments" to the Company's: (1) previously reported AFFO for the first and second quarters of 2014; and (2) previously reported net loss attributable to common stockholders (a GAAP measure) for the 2Q14.   According to those tables, AFFO was overstated during 1Q14 by an estimated *$11,974,000* on a gross basis, and during 2Q14 by an estimated *$10,869,000* on a gross basis.[8]   In addition, ARCP's 2Q14 AFFO overstatement included an understatement of its net loss attributable to common stockholders of an estimated *$9,242,000*.

152.   Later that day, defendants held a conference call with analysts and investors, during which Kay admitted that ARCP had inappropriately accounted for various accruals and expenses, which affected, among other things, ARCP's reported GAAP earnings per share ("EPS").   Kay

---

[7]   Bracketed language is contained in the Company's October 29, 2014 release.

[8]   These estimates were low.  The amended SEC filings revealed that on a gross basis, 1Q14 AFFO was overstated by $33,008,000, and 2Q14 AFFO was overstated by $19,344,000.

explained that "various accruals and expenses . . . should[] [have] been accrued in the second quarter that ended up resulting in an accrual in the third quarter instead. . . .  That does impact our GAAP statements.  Accruals are an expense item.  They affect both AFFO as well as EPS."

153.   In response to these announcements, ARCP common stock traded as low as $7.85 per share on October 29, 2014, a decline of more than 36% from the prior day's closing price of $12.38 per share, before closing at $10 per share, a decline of more than 19%, on 231 million shares traded, or more than 50 times the average daily trading volume during the Class Period.

154.   ARCP's common stock price continued to decline as the market absorbed the import of ARCP's October 29, 2014 announcements and analysts issued reports downgrading and lowering their estimates for the Company, closing at $9.42 per share on October 30, 2014, and ultimately tumbling to a closing price of $7.85 per share on November 3, 2014.

155.   On October 29, 2014, *The Wall Street Journal* reported that the SEC "intends to launch an inquiry into the accounting irregularities" at ARCP.  According to the October 29, 2014 *Wall Street Journal* article:

> The incident might make it harder for [ARCP], which manages nearly $30 billion in real estate, . . . to raise capital for purchasing properties, analysts said.
>
> *           *           *
>
> Others said the errors could directly undermine [ARCP's] growth strategy, which has relied on tapping the debt and equity markets for capital to pay for acquisitions.
>
> The company's "credibility is likely impugned for some period of time," wrote J.P. Morgan analyst Anthony Paolone, adding that "capital costs will be higher in the near term . . . thus making growth more difficult."
>
> Investors also are worried the timing of the accounting revelations could imperil a deal that [ARCP] announced earlier this month, according to a person familiar with the matter.
>
> On Oct. 1, the company said that it would sell its private capital-management business, Cole Capital, which raises money for nontraded REITs, for $700 million to RCS Capital Corp., another company chaired by Mr. Schorsch.

- 56 -

156.   On October 31, 2014, *Reuters* reported that the FBI and the United States Attorney's Office for the Southern District of New York had "opened a criminal probe of [ARCP] . . . in the wake of the . . . accounting errors."

157.   On November 3, 2014, Wells Fargo suspended equity research coverage on ARCP, citing news reports "that the FBI and the U.S. attorneys' office have both opened a criminal probe into ARCP."  Ladenburg also suspended coverage.

158.   On December 15, 2014, ARCP filed a Form 8-K with the SEC announcing that Schorsch had "resigned as Executive Chairman and a director of [ARCP]" and had "also resigned from all other employment and board positions that he held at the Company and its subsidiaries and certain Company-related entities."  According to a release issued that day, ARCP was "unwinding all of its relationships with entities in which Mr. Schorsch maintains an executive or director-level role or is a significant stockholder."  The December 15, 2015 Form 8-K also announced the resignations of Kay, ARCP's CEO and a member of the Board of Directors, and Beeson, ARCP's President and COO.  According to a J.P. Morgan research report dated December 18, 2014, "[w]e were surprised (and so was the market) by the resignation of David Kay (former CEO) this week since, up until recently Mr. Kay stated that he was there for the long haul."

159.   On December 18, 2014, the reason for Schorsch, Kay and Beeson's December 15, 2014 dramatic departures became clear.  Former CAO McAlister filed a Verified Complaint in the Supreme Court of the State of New York, County of New York, asserting claims of defamation per se against ARCP, Schorsch and Kay.  In an action captioned *Lisa Pavelka McAlister v. American Realty Capital Properties, Inc., et al.*, Index No. 162499/2014 (N.Y. Sup. Ct. N.Y. Cnty.), McAlister disputed ARCP's and Kay's account of events on October 29, 2014, including their representation that she had "resigned."

160.     McAlister had been one of the first executives to be hired from outside Schorsch's inner circle.  Specifically, McAlister alleged that, beginning in or about **February 2014**, she "**repeatedly informed Mr. Schorsch, Mr. Kay and senior management** [that] she had discovered that the Company had, in the fourth quarter of 2013 ('2013 Q4'), and possibly in earlier quarters, suddenly and without any apparent justification or basis, changed the method by which it had historically reported its adjusted funds from operations ('AFFO') relative to previous financial quarters."  Verified Complaint, ¶1.

161.     In an explanation facially similar to the one given by Kay during the October 29, 2014 investor and analyst call, McAlister – who described AFFO as "arguably the single most critical metric" for publicly traded REITs (*id.*, ¶33) – alleged:

> Specifically, the Company ceased pro-rating the added-back-to-AFFO non-recurring transaction and deferred financing costs on its 10K and 10Q reports, opting instead to add to and increase the Company's AFFO by the entirety of the added-back costs, including the portion thereof that should have been attributed to non-controlling interests in the operating partnership, ARC Properties Operating Partnership LP, instead of adding to AFFO only the Company's *pro rata* share of the added-back costs.

*Id.*, ¶31.

162.     According to McAlister's verified petition, she made senior management, **which she defined to include Schorsch, Kay and Beeson**, aware of the problem in or about the previous **February**.

163.     Moreover, McAlister alleged that, upon apprising Kay of the problem she had identified, he directed her and Block "not to change or correct the fraudulent reports, **in an apparent effort to avoid public disclosure of the Company's faltering financial performance**."  *Id.*, ¶37.  Not long after receiving and following Kay's instruction, McAlister was rewarded with a bonus, raise and promotion.

- 58 -

164.    She also alleged that, during a conference call with her and Block on or around July 28, 2014:

> *Mr. Schorsch directed Mr. Block* to reallocate the funds used to calculate the AFFO and shift the numbers in the 2014 Q2 report *in an effort to conceal the previous improper reporting*, by having Mr. Block prepare a schedule changing the add-back amortization and write off of deferred financing costs.

*Id.*, ¶39.

165.    In addition, she alleged that Schorsch and Kay directed the Company to "change[] the beginning point for its AFFO calculation from 'net loss attributable to stockholders (in accordance with U.S. GAAP)' to 'net loss (in accordance with U.S. GAAP).'"  *Id.*, ¶40.  While this change was not improper in and of itself, she alleged, "it made it more difficult for stockholders to see the fraudulent change in the add-backs of non-recurring transaction and deferred financing costs."  *Id.*

166.    Although McAlister "repeatedly expressed her concerns regarding Mr. Schorsch's instruction to shift and reallocate the funds in the 2014 Q2 report, . . . her objections went ignored." *Id.*, ¶42.  Therefore, after she was appointed to be the "'principal accountant' on the 2014 Q2 report" (*id.*, ¶43), she "emailed Jessica Estrada, a Manager at GT, the Company's auditors, and called attention to the manipulative accounting practice reflected in the Q2 report."  *Id.*, ¶44.  In response to her email, according to McAlister: "Ms. Estrada and Richard LeFleur, a Partner at GT, told Ms. McAlister that she could sign and file the 2014 Q2 report 'as is.'"  *Id.*, ¶45.  On GT's instruction, McAlister filed the 2014 Q2 report.  *Id.*, ¶46.

167.    Finally, McAlister alleged that the issues she had raised concerning ARCP's accounting resulted in the Audit Committee's internal investigation (*id.*, ¶48), that she was later "terminated" on or about October 28, 2014 (*id.*, ¶51), in "retaliation for her blowing the whistle on ARCP's unlawful accounting and financial reporting practices," and to make McAlister the scapegoat for defendants' fraudulent conduct (*id.*, ¶52).  After learning about McAlister's complaint,

- 59 -

which "suggest[ed] a more broad knowledge of the intentional misstatement," J.P. Morgan surmised that the resignations could be because the lawsuit could "impugn Mr. Kay's credibility," and signify that the Audit Committee's "investigation . . . [had] uncovered evidence that Mr. Kay knew more than previously thought."

168.    On September 7, 2014, an "unidentified person," not McAlister, made a report to the Audit Committee, spurring the internal investigation that resulted in the October 29, 2014 announcement.

169.    On March 2, 2015, ARCP admitted that it had falsified its reported operating performance and/or financial statements for **_each and every reporting period since it went public in 2011_**.  ARCP and its accountants, GT, have now confirmed that the falsification of ARCP's financial performance was achieved via no fewer than three dozen different artifices, many of which were designed to inflate ARCP's AFFO and/or line its senior insiders' pocketbooks.

### ARCP's Financial Reporting During the Class Period Was Materially False and Misleading

170.    On March 2, 2015, ARCP restated the financial statements it had reported to investors and filed with the SEC during the Class Period  because they were not prepared in accordance with GAAP and did not accurately reflect ARCP's operational performance.  In fact, the Restatement showed that ARCP's Class Period consolidated financial statements (*i.e.*, balance sheets, statements of operations, statements of comprehensive loss, statements of changes in equity and statements of cash flows) contained numerous material accounting errors and misstatements achieved via no fewer than three dozen different artifices.  For example, the Restatement showed that ARCP understated net losses attributable to stockholders by as much as 26%, and understated operating losses by as much as 15%.

- 60 -

171.    The Restatement was required to correct myriad GAAP violations and financial reporting improprieties, including:

- ARCP regularly and improperly classified ordinary business expenses as "merger-related," which, in turn, inflated AFFO and gave investors the false impression that such expenses were not recurring in nature.  As restated, the expenses were reclassified as general and administrative expenses.

- Numerous expenses were recorded in the incorrect accounting period.  This practice delayed expense recognition and understated reported expenses and net losses.  As restated, the expenses were recorded in the periods in which they were actually incurred.

- On multiple occasions, ARCP improperly classified management fees paid to ARCP-related entities as being merger and other non-routine transaction-related.  This practice masked related-party transactions, inflated AFFO, and gave investors the false impression that such expenses were not recurring in nature.  As restated, the expenses were reclassified as management fees to affiliates.

- On multiple occasions, ARCP recorded payments made to Schorsch-controlled entities as a purchase of furniture and equipment, when in fact, there was "no evidence of the receipt" to substantiate the existence of any such furniture or equipment.  This practice overstated assets and understated expenses and net losses.  ARCP restated the payments by writing off the amounts.

- On multiple occasions, ARCP failed to record expenses for stock awards granted to directors.  This practice understated expenses and net losses.  As restated, these expenses were recognized and recorded.

- ARCP failed to record expenses to recognize impairment of its properties.  This practice understated expenses and losses and inflated AFFO.  When restated, these expenses were recognized and recorded.

172.    Importantly, ARCP's GAAP violations were inextricably tied to the overstatement of FFO and AFFO.  In other words, because ARCP's GAAP amounts were incorrect, the Company's FFO and AFFO, which were calculated using those GAAP amounts, were incorrect as well.  For example, the starting point for calculating FFO and AFFO was ARCP's GAAP net loss/net income.  Thus, when ARCP understated its net loss or overstated its net income, this necessarily inflated ARCP's FFO and AFFO.  Similarly, the expense adjustments, which were also used to calculate

- 61 -

AFFO, were GAAP-based expenses as well.  Again, since those GAAP-based adjustments were incorrect, AFFO was also misstated.

**ARCP's Financial Statements Did Not Comply with GAAP**

173.   ARCP's Restatement confirmed that defendants committed numerous and varied GAAP violations and financial reporting improprieties.[9]

174.   The Restatement was due to the material misstatement of, among other things, ARCP's: (i) operating loss; (ii) loss from continuing operations; (iii) net loss; and (iv) net loss per share, as detailed in ARCP's Amended 2013 Form 10-K, Amended 1Q14 Form 10-Q and Amended 2Q14 Form 10-Q.  For example, reported net loss was understated in FY13 and in three of the six restated quarters.

175.   Defendants perpetrated these improprieties through a host of accounting schemes and manipulations, the majority of which can be generally classified as one of the following: (i) misclassification of expenses (described at ¶176); (ii) understatement of expenses (described at ¶¶177-183); (iii) equity awards for defendants contained provisions more favorable than had been authorized (described at ¶184); and (iv) improperly accounting for losses on disposal and goodwill (described at ¶¶185-188).  Defendants also exploited ARCP's deficient controls, which facilitated the accounting manipulations (described at ¶¶196-202).

**ARCP Misclassified Expenses**

176.   ARCP misled investors and violated GAAP by misclassifying ordinary business expenses (*i.e.*, recurring operating expenses) as merger and other non-routine transaction-related

---

[9]   The filings amended due to falsity include ARCP's amended Form 10-K for the year ended December 31, 2013 (the "2013 Amended Form 10-K") and its amended Forms 10-Q for the quarter ended March 31, 2014 (the "1Q14 Amended Form 10-Q") and the quarter ended June 30, 2014 (the "2Q14 Amended Form 10-Q").  The 2013 Amended Form 10-K, 1Q14 Amended Form 10-Q and 2Q14 Amended Form 10-Q are collectively referred to herein as the "amended SEC filings."

expenses.  These GAAP violations had the effect of inflating AFFO and giving investors the false impression that such expenses were not routine in nature and thus would not be recurring in future accounting periods.  Investors would not have considered merger-related expenses as normal costs the Company incurs as a result of performing its normal business operations, but rather as one-time expenses that were related to the particular merger(s) entered into during that period.  Such acquisition-related expenses are excluded in the calculation of AFFO.  Thus, ARCP's mischaracterization of operating expenses as expenses that would not continue in future periods, including those described below, violated GAAP, inflated AFFO and misled investors to believe that such expenses would not have a negative impact on future profits:

- **General & Administrative Expenses**.  ARCP improperly classified $75.7 million of general and administrative expenses as "merger-related" in FY13.  ARCP also improperly classified $14.5 million of general and administrative expenses as "merger-related" in the six months ended June 30, 2014.  The largest component of the amount misclassified in FY13 was $59.6 million of equity-based compensation expense relating to the OPP.

- **Management Fees**.  On multiple occasions, the Company improperly classified management fees paid to affiliates as merger-related which masked related-party transactions and gave investors the false impression that such expenses were not routine in nature.  ARCP identified $13.0 million and $13.9 million of management fees that were improperly classified as merger and other non-routine transaction-related expenses in 1Q13 and 1Q14, respectively.

- **Deferred Financing Costs**.  ARCP improperly recorded as merger and other non-routine transaction-related expenses costs that should have been capitalized as deferred financing costs and amortized accordingly in the amount of $1.0 million (1Q13), $1.2 million (3Q13), $5.9 million (FY13), $20.6 million (1Q14) and $0.8 million (2Q14).  As a result of capitalizing these deferred financing costs, additional interest expense of $0.6 million (1Q13), $2.3 million (FY13), $8.7 million (1Q14), and $1.3 million (2Q14) was recorded.

**ARCP's Understated Expenses**

177.    ARCP understated its net losses by improperly and continually understating expenses throughout the Class Period.  GAAP requires expenses to be recorded in the period they are incurred.

- 63 -

This concept, that expenses be recorded in the same period in which the corresponding benefit is realized, is one of the most basic tenets underlying accrual accounting. ARCP instead systematically engaged in a scheme of improperly timing expense recognition, typically understating its expenses in a current period and/or improperly delaying expense recognition for as long as possible.

178.     ARCP achieved this improper timing of expense recognition in at least the following ways, detailed below in ¶¶179-183.

**ARCP Deferred Expenses to Later Periods**

179.     Defendants understated ARCP's loss by improperly deferring current period expenses to subsequent periods, using a variety of methods, including the following examples:

- **Deferred Merger-Related Expenses**.  ARCP failed to record $14.5 million of merger and other non-routine transaction-related expenses that were "incorrectly excluded" from the 2013 financial statements.  Instead, ARCP delayed recording this expense, and the associated increase in net loss, until 1Q14.  ARCP also failed to record $1.2 million of merger and other non-routine transaction-related expenses that were incorrectly excluded from the 2Q14 financial statements.

- **Deferred Bonus Accruals**.  ARCP admittedly failed to record bonus expenses on a timely basis.  $1.8 million in bonuses paid in 2014 should have been, but were not, recorded as an accrued expense for FY13.  Additionally, annual bonuses of $5.8 million should have been accrued for and expensed as of and for 2Q14, in accordance with ARCP's accounting policy of accruing estimated bonuses throughout the year, but were not.

- **Deferred Merger-Related Transfer Tax Liability**.  ARCP recorded transfer tax liabilities in incorrect accounting periods.  ARCP improperly understated its loss by excluding certain merger and non-routine transaction-related expenses during 2013.  ARCP should have recorded a controlling interest transfer tax liability upon consummation of the ARCT III Merger and ARCP's merger with CapLease totaling $1.1 million and $8.9 million for 1Q13 and FY13, respectively.  These accruals and corresponding merger and other non-routine transaction-related expenses were improperly excluded from the 2013 financial statements.

- **Deferred Accounting for Stock Awards Granted**.  The documentation of awards granted to ARCP directors provided for accelerated vesting of shares upon voluntary resignation of the directors.  As a result, there was no required service period for the vesting of such awards and, thus, GAAP required that the full amount be expensed because awards that vest immediately should be recognized at the grant date.  In

connection with the Restatement, ARCP corrected this accounting by recording $3.3 million as a general and administrative expense during 1Q14.

- **Deferred General and Administrative Expenses**.  ARCP restated its financial statements to reflect general and administrative expenses that were recorded in the incorrect period.   This correction required recording additional general and administrative expenses of $1.7 million (1Q14) and $0.9 million (2Q14).

- **Deferred Depreciation and Acquisition Related Expenses**.  The Restatement admits that ARCP's 1Q14 depreciation expense and acquisition related expenses were under-expensed by $2.3 million and $0.6 million, respectively, based on its accounting for certain properties acquired in 2013.  ARCP delayed recording these amounts until 2Q14 instead of in 1Q14.  ARCP has also admitted that it did not properly record $6.0 million of depreciation expense for real estate properties acquired during 1Q14, and that this too had been expensed in 2Q14 instead of 1Q14.

- **Deferred Interest Expense**.  ARCP admittedly understated interest expense related to a swap by $1.4 million in 1Q14.

## ARCP Improperly Capitalized Expenses

180.    ARCP also improperly capitalized non-capitalizable expenses as assets and improperly amortized them over time rather than properly expensing them when incurred.  GAAP requires that acquisition-related costs be recorded as expenses in the periods in which the costs are incurred.  By improperly capitalizing these costs, ARCP recorded assets so that they would slowly be depreciated over the estimated life of the asset, rather than expensed immediately as incurred, which resulted in an artificial inflation in ARCP's reported financial performance.

181.    On multiple occasions, ARCP recorded the supposed acquisition of furniture, fixtures and equipment ("FF&E") from other ARCP-related entities when there was "*no evidence*" to substantiate the existence of any such assets.  For example, as admitted in the Restatement, upon consummation of the ARCT III Merger in 1Q13, ARCP entered into an agreement with an ARCP affiliate to acquire certain FF&E and other assets.  ARCP originally capitalized $4.1 million of FF&E costs and expensed $1.7 million of costs in 1Q13.  However, there was no evidence of the receipt of any FF&E and ARCP has now acknowledged it could not support the value of the FF&E

- 65 -

purportedly acquired.  The same situation occurred in 1Q14 upon consummation of the ARCT IV Merger, resulting in the improper capitalization of $2.1 million in that quarter.  As part of the Restatement, ARCP expensed the amounts originally capitalized – $4.1 million and $2.1 million – and recognized the expenses in merger and other non-routine transaction-related expenses in 1Q13 and 1Q14, respectively.

**ARCP Failed to Write Down the Value of Impaired Assets**

182.    ARCP failed to monitor events and changes in circumstances that could indicate that the carrying amount of its real estate and related assets may not be recoverable, in violation of GAAP.  ARCP belatedly performed a detailed analysis of the portfolio in connection with the Restatement and noted four properties with impairment indicators.  ARCP assessed the recoverability of the carrying amounts of such properties as of the date in which such indicators existed, and noted two properties with carrying amounts in excess of their expected undiscounted cash flows.  As a result, ARCP reduced the carrying amount of the real estate and related net assets to their estimated fair values by recognizing an impairment loss of $2.1 million and $3.3 million for 3Q13 and FY13 in accordance with GAAP, which requires that an impairment loss be measured as the amount by which the carrying amount of a long-lived asset exceeds its fair value.

183.    Additionally, ARCP failed to properly classify certain property as held for sale as of June 30, 2014.  GAAP requires that a long-lived asset classified as held for sale be measured at the lower of its carrying amount or fair value less cost to sell.  In connection with the Restatement, ARCP classified the property as held for sale, adjusted the fair value of the property at that date and recognized a loss on held for sale assets of $1.8 million for 2Q14.

**ARCP's Equity Awards for Defendants Contained Provisions More Favorable than Had Been Authorized**

184.    The ARCP Management Defendants failed to comply with the directives set by the Compensation Committee.  As ARCP later admitted, equity awards made to Schorsch and Block in connection with ARCP's transition from external to internal management were altered such that they "contained vesting provisions that, as drafted, were more favorable to them than the Compensation Committee had authorized."   In addition, the Compensation Committee approved the OPP that contained a maximum award pool opportunity based upon ARCP's equity market capitalization as of the date of the OPP's approval in October 2013, equaling approximately $120 million.  Yet, the ARCP Management Defendants implemented the OPP with a maximum award pool approximately $100 million greater, which was derived from a pro forma equity market capitalization as of January 8, 2014.[10]   These manipulations resulted in a misstatement of $8.4 million to stock-based compensation reported in general and administrative expense for the six months ended June 30, 2014 – $6.3 million in 1Q14 and $2.2 million in 2Q14.

**ARCP Improperly Accounted for Losses on Disposals and Goodwill**

185.    Subsequent to the CapLease Merger in 2013, ARCP disposed of certain properties acquired in that transaction.  The disposition of such properties resulted in a net loss on disposition; however, ARCP improperly accounted for such losses by adjusting its purchase price allocation to increase the amount of goodwill and decrease the associated real estate investments recorded in connection with the CapLease Merger by $12 million when it reissued its recast financial statements to reflect the common control merger with ARCT IV.  In the Restatement, ARCP reversed the

---

[10]    The amended 2Q14 Form 10-Q filed March 2, 2015, states that the maximum award pool as altered by ARCP management was $218.1 million, but ARCP had previously claimed in the April 29, 2014 Proxy Statement that the award pool would be $222.1 million.

measurement period adjustments made to goodwill and related assets and liabilities acquired in the CapLease Merger and recognized a net loss on the dispositions in 2014 when the dispositions occurred.

186.     Similarly, in 1Q14, subsequent to both the CapLease and Cole Mergers, ARCP disposed of certain properties acquired in those mergers.  The disposition of such properties resulted in a net loss on disposition in 1Q14 and a net gain in 2Q14; however, ARCP incorrectly adjusted its purchase price allocation by increasing its goodwill recorded in connection with the mergers by $13.6 million in 1Q14 and by $2.6 million in 2Q14.  In the Restatement, ARCP reversed the measurement period adjustments made to goodwill and recognized a net loss on dispositions for 1Q14 and a net gain on disposition for 2Q14.

187.     In addition, ARCP recorded a decrease to goodwill of $0.6 million for FY13 to reflect valid measurement period adjustments that were identified subsequent to the initial purchase price allocation.  ARCP also identified certain liabilities assumed and subsequent payments of such liabilities by the former manager from the CapLease Merger that were not recorded properly.  To correct the inaccurate accounting, ARCP increased goodwill by $3.0 million, decreased merger and non-routine transaction-related expenses by $0.7 million and increased the equity contributions by $2.3 million.

188.     Furthermore, ARCP assigned goodwill associated with certain mergers to ARCP'S Real Estate Investment segment.  However, ARCP determined that it did not properly account for disposals of real estate because a portion of goodwill was not included in the carrying amount of the associated real estate in its determination of the gain or loss on disposition.  To correct the inaccurate accounting, ARCP allocated $7.0 million and $2.2 million of goodwill to real estate dispositions in 1Q14 and 2Q14, respectively, which increased the loss on disposition of properties recognized.

- 68 -

**ARCP's AFFO and FFO Were Also Materially False and Misleading**

189.     As part of the March 2, 2015 Restatement, ARCP further admitted that it materially

misstated its FFO and AFFO *for each and every year that ARCP has been a public company*:

fiscal years 2011, 2012 and 2013, and interim quarters ended March 31, 2013, June 30, 2013,

September 30, 2013, December 31, 2013, March 31, 2014 and June 30, 2014, as detailed in the chart

below:

| American Realty Capital Properties, Inc. AFFO Per Share Misstatements | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | FY11 | FY12 | 1Q13 | 2Q13 | 3Q13 | 4Q13 | FY13 | 1Q14 | 2Q14 |
| AFFO per share - Reported | $ 0.60 | $ 0.47 | $ 0.20 | $ 0.19 | $ 0.30 | $ 0.38 | $ 1.07 | $ 0.26 | $ 0.24 |
| AFFO per share - Restated | $ 0.56 | $ 0.46 | $ 0.10 | $ 0.18 | $ 0.28 | $ 0.29 | $ 0.87 | $ 0.19 | $ 0.21 |
| % Overstated | 7.1% | 2.2% | 100.0% | 5.6% | 7.1% | 31.0% | 23.0% | 36.8% | 14.3% |

190.     The 2013 Amended Form 10-K filed in connection with the Restatement also

included, in pertinent part, the following admissions with respect to the Company's previously

disclosed AFFO:

> The investigation found that Adjusted Funds From Operations ("AFFO"), a non-
> GAAP measure presented in the Company's SEC filings and other financial
> communications, was overstated for fiscal year 2011, fiscal year 2012, fiscal year
> 2013 (including each fiscal quarter of 2013) and, as previously disclosed in the
> October 29 8-K, the first two fiscal quarters of 2014. *Senior management
> considered AFFO to be an important metric used by analysts and investors in
> evaluating the Company's performance and, for the first two quarters of 2014,
> sought to maintain reported AFFO within the 2014 guidance range of $1.13 to
> $1.19 per share announced at the end of 2013*. The overstatements of AFFO were
> due in part to errors in reflecting amounts attributable to the limited partnership
> interests in the Company's operating partnership, ARC Properties Operating
> Partnership, L.P., held by holders other than the Company (known as non-controlling
> interests or "NCI"). *Prior to the filing of the Quarterly Report on Form 10-Q for
> the first quarter of 2014, some members of senior management were aware of NCI
> errors but allowed the report to be filed without completing an analysis of the
> errors*. In the Company's Quarterly Report on Form 10-Q for the second quarter of
> 2014, as previously reported in the October 29 8-K, *the NCI errors in the first
> quarter were intentionally not corrected, and other AFFO and financial statement
> errors were intentionally made, resulting in an overstatement of AFFO and an
> understatement of the Company's net loss for the three and six months ended June
> 30, 2014*.

- 69 -

191.   The amended SEC filings also disclose that the financials defendants reported to investors during the Class Period were false because:

- "The Company failed to implement and maintain an effective internal control environment that had appropriate processes to manage the changes in business conditions resulting from the volume and complexity of its 2013 and first quarter 2014 transactions, combined with the pressure of market expectations inherent in announcing AFFO per share guidance for 2014";

- "[T]he Company has determined that it is appropriate to include certain adjustments that were not included in the previously reported AFFO calculation"; and

- "[T]he Company has determined that it was not appropriate to adjust for operating fees incurred to affiliates as these expenses represent operating expenses that are typical for the industry."

**ARCP's Financial Misstatements Were Material**

192.   ARCP restated its financial statements for FY12, FY13, and 1Q13-4Q13, 1Q14 and 2Q14, due to numerous and varied violations of GAAP and financial reporting improprieties, which were *material*.  For example, these GAAP violations and financial reporting improprieties caused operating loss to be understated by as much as 15% and net loss attributable to stockholders to be understated as much as 26%; ARCP's cash flow to be understated by 27.2% and 13.6% in 1Q13 and 1Q14, respectively.  These misstatements, among others, were quantitatively material.

193.   In addition, ARCP has admitted that its previously issued FFO and AFFO financial measures for each of the above periods, as well as for the fiscal year ended December 31, 2011, were *materially* misstated, as depicted above in the chart in ¶189.  These AFFO misstatements were quantitatively material.

194.   Moreover, even quantitatively small financial misstatements may be material if management has *intentionally* made adjustments to various financial statement items in a manner inconsistent with GAAP.  ARCP's financial misstatements during the Class Period were admittedly

- 70 -

caused by "intentional" acts of ARCP's senior management, and thus were also qualitatively material.

195.    Volatility of the price of a registrant's securities in response to certain types of disclosures may provide guidance as to whether investors regard quantitatively small misstatements as material.  When ARCP first disclosed its financial misstatements to the market, the price of its common stock declined more than ***19%***, and its market capitalization collapsed by more than ***$3 billion***.  This also demonstrates the qualitative materiality of ARCP's misstatements.

**ARCP's Material Weaknesses in Internal Controls**

196.    In each quarter during the Class Period, ARCP's annual and quarterly SEC filings contained certifications signed by Schorsch and Block pursuant to §302 of SOX, attesting that the financial information contained in the filing was true, that it did not omit material facts, and that the Company's internal and disclosure controls were effective.  *See* ¶¶204-284.

197.    The Restatement shows that ARCP's internal controls over finance reporting were materially deficient and were circumvented by defendants.  Among the key controls that were improperly designed or implemented are controls:

- to ensure that the information contained in ARCP's periodic reports and other SEC filings correctly reflected the information contained in ARCP's accounting records and other supporting information and that AFFO per share was correctly calculated;

- to ensure that its SEC filings were reviewed on a timely basis by senior management or that significant changes to amounts or other disclosures contained in a document that had previously been reviewed and approved by the Audit Committee were brought to the attention of the Audit Committee or its Chair for review and approval before the documents were filed with the SEC; and

- over the formulation of AFFO per share guidance or the periodic re-assessment of the Company's ability to meet its guidance.

198.    As detailed in the Restatement, there were also material weaknesses in ARCP's internal control over financial reporting relating to:

- 71 -

- related-party transactions and conflicts of interest;

- grants of equity-based compensation;

- business process-level control activities and financial reporting controls;

- critical accounting estimates and non-routine transactions;

- cash reconciliations and monitoring;

- information technology controls; and

- the control environment.

199.    With regard to the related-party transactions and conflicts of interest, ARCP did not maintain appropriate controls to assess, authorize and monitor related-party transactions, validate the appropriateness of such transactions or manage the risks arising from contractual relationships with affiliates.  Without the appropriate controls, ARCP was able to make certain payments to the ARC Advisors and its affiliates that went unchallenged and were not sufficiently documented.

200.    With regard to the failure to maintain appropriate controls over various grants of equity-based compensation, in 4Q13, the Company entered into employment agreements with Schorsch and Block and also approved the OPP pursuant to which awards were made to them on January 8, 2014.  Without the appropriate controls, Schorsch and Block would receive compensation that was inconsistent with the terms authorized by the Compensation Committee.  Additionally, ARCP did not obtain copies of or administer the equity awards made by means of block grants allocated by ARC Advisors and its affiliates, nor did ARCP review the awards for consistency with the Compensation Committee's authorization.

201.    Further, the material weakness resulting from business process-level control activities and financial reporting controls affected the accounting close process and critical accounting estimates and non-routine transactions.  ARCP did not have consistent policies and procedures relating to purchase accounting, accounting for gain or loss on disposition and testing for

impairment.   In addition, senior management did not establish clear reporting lines and job responsibilities or promote accountability over business process control activities.   ARCP did not maintain effective controls or develop standardized policies and procedures for critical accounting estimates and non-routine transactions, including management review and approval of the accounting treatment of all critical and significant estimates on a periodic basis.

202.   The Restatement confirmed that ARCP also failed to implement procedures reasonably designed to prevent accounting irregularities.   For example, ARCP failed to ensure that controls were in place to develop necessary accounting policies and procedures, to properly monitor related-party transactions, to review equity awards for compliance with authorized terms, and to review and approve critical and significant estimates.   It failed to ensure that transactions were reported in accordance with its own policies and with GAAP.

### Defendants' Dissemination of False and Misleading Statements in Furtherance of Their Wrongful Course of Business

### ARCP Initial Public Offering

203.   The Class Period begins on September 7, 2011, with the closing of ARCP's IPO of its common stock through a registration statement and prospectus ("IPO Registration Statement"), which raised proceeds of $69,750,000.   The IPO Registration Statement stated that ARCP had prepared its financial statements "in conformity with accounting principles generally accepted in the United States of America [which] requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period."

- 73 -

**Third Quarter 2011 Financial Results**

204.    On November 14, 2011, ARCP issued a release announcing its financial results for the third quarter, ended September 30, 2011 ("3Q11").  The Company reported 3Q11 AFFO of $287,000, or $0.17 per share, and a net loss of ($634,000) or ($0.42) per share.  That same day, ARCP also filed with the SEC its Form 10-Q for the period ended September 30, 2011 (the "3Q11 Form 10-Q").  The 3Q11 Form 10-Q was signed by Schorsch and Block and reiterated ARCP's previously reported financial results.  It also represented that these financial results were accurate.  In addition, the 3Q11 Form 10-Q (and each of ARCP's quarterly and annual reports filed with the SEC described herein) contained certifications signed by Schorsch and Block identical in all material respects to the certification quoted in ¶¶54-55.

**Fourth Quarter 2011 Financial Results**

205.    On March 19, 2012, ARCP issued a release announcing its financial results for the fourth quarter, ended December 31, 2011 ("4Q11").  ARCP reported AFFO of $1,491,000, or $0.23 per share, and a net loss of ($1,117,000), or ($0.17) per share. That same day, ARCP filed with the SEC its Form 10-K for the fiscal year ended December 31, 2011 (the "2011 Form 10-K").  Schorsch, Block, Weil and Rendell signed the 2011 Form 10-K, which reiterated ARCP's previously reported financial results.  It also represented that these financial results were accurate.  The 2011 Form 10-K further stated that ARCP's internal controls were effective and that any material changes to its internal controls over financial reporting were disclosed therein.  The Form 10-K included certifications by Schorsch and Block pursuant to SOX, which were identical in all material respects to the certifications quoted in ¶¶54-55.

206.    The statements made above in ¶¶203-205 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that as to ¶¶204-205, reported 3Q11 and 4Q11 AFFO of $287,000 and $1.49 million, respectively, were false and the product of fraudulent accounting manipulations, including changes made to accounting entries without evidentiary support;

(b)    that as to ¶¶204-205, the financial statements and/or AFFO calculations in ARCP's 3Q11 Form 10-Q and 2011 Form 10-K were false and misleading, as detailed in ¶¶170-195, *supra*;

(c)    that ARCP lacked the internal controls necessary to ensure that: (i) ARCP's SEC filings were timely reviewed for accuracy, (ii) the estimates used to formulate ARCP's AFFO were reasonable and appropriately calculated; (iii) ARCP's reported AFFO was accurate; and (iv) ARCP was able to assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as detailed in ¶¶196-202;

(d)    that Schorsch and Block were aware from their review and evaluation of the effectiveness of ARCP's internal controls and financial reporting processes that ARCP lacked reliable internal controls over financial reporting;

(e)    that as a result of (a)-(d), above ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements were accurate and free from material misstatements.

**First Quarter 2012 Financial Results**

207.     On May 8, 2012, ARCP issued a release announcing its financial results for the first quarter, ended March 31, 2012 ("1Q12").  ARCP reported a 1Q12 AFFO of $1,583,000, or $0.22 per share, and a net loss of ($630,000), or ($0.09) per share.

208.     On May 9, 2012, ARCP filed its Form 10-Q for the period ended March 30, 2012 with the SEC (the "1Q12 Form 10-Q").  Schorsch and Block signed the 1Q12 Form 10-Q, which reiterated ARCP's previously reported financial results.  It also represented that the financial results contained therein were accurate, that ARCP's internal controls were effective and that any material changes to ARCP's internal controls over financial reporting were disclosed.  The 1Q12 Form 10-Q also included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶54-55.

209.     On or about June 18, 2012, ARCP raised $30.5 million via the sale of 3.25 million newly issued shares of ARCP common stock at $10 per share (the "June 2012 Equity Offering"), pursuant to a false registration statement filed May 25, 2012, along with a prospectus filed June 14, 2012, which was incorporated therein (collectively, the "June 2012 Equity Offering Documents").  The June 2012 Equity Offering Documents included ARCP's 1Q12 financial results, as well as its 1Q12 AFFO.

210.     The statements detailed above in ¶¶207-209 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP's 1Q12 financial statements, including its reported 1Q12 AFFO of $1,583,000, were materially false, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)      that as a result of Schorsch and Block's review and evaluation of the effectiveness of ARCP's internal controls and financial reporting processes in connection with the filing of ARCP's 1Q12 Form 10-Q, they were aware that ARCP lacked reliable internal financial controls, including procedures and controls necessary to allow ARCP to: (i) calculate basic performance information, such as the calculation of AFFO – the most fundamental metric to a REIT investor; (ii) formulate AFFO guidance or periodically reassess ARCP's ability to meet its AFFO guidance; (iii) ensure that the Audit Committee approved material changes management made to ARCP's SEC filings and public statements before dissemination; (iv) calculate and track multimillion dollar grants of equity-based compensation; and (v) undertake basic reconciliation and monitoring functions necessary to enable ARCP to timely record and reconcile cash payments received by ARCP; and

(c)      that ARCP lacked the controls necessary to assess, authorize or monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entitied owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as detailed in ¶¶196-202.

**Second Quarter 2012 Financial Results**

211.    On July 31, 2012, ARCP issued a release announcing its financial results for the second quarter, ended June 30, 2012 ("2Q12"), including a net loss of ($2.04 million), or ($0.28) per share, and AFFO of $1.9 million, or $0.25 per share.

212.    On August 1, 2012, ARCP filed its Form 10-Q with the SEC for the period ended June 30, 2012 (the "2Q12 Form 10-Q").  The 2Q12 Form 10-Q was signed by Schorsch and Block. The 2Q12 Form 10-Q reiterated ARCP's previously reported financial results and represented that those financial results were accurate.  It also represented that ARCP's internal controls were

- 77 -

effective and that any material changes to internal controls over financial reporting were disclosed therein. The 2Q12 Form 10-Q also included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶54-55.

213. The statements referenced above in ¶¶211-212 were each false and misleading when made in that each omitted and/or misrepresented material facts. The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP's 1Q12 and 2Q12 financial statements, including its 1Q12 AFFO and 2Q12 AFFO of $1.583 million and $1.9 million, respectively, were false, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)     that ARCP lacked internal financial controls sufficient to enable it to: (i) accurately calculate AFFO or future estimates thereof; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as detailed in ¶¶196-202; and

(c)     that the earnings and AFFO ARCP reported for the last half of 2011 and the first half of 2012 were the product of accounting manipulations overseen by Block and Schorsch, as detailed in ¶¶170-202.

**Third Quarter 2012 Financial Results**

214. On October 29, 2012, ARCP issued a release announcing its financial results for the third quarter, ended September 30, 2012 ("3Q12"). ARCP reported 3Q12 AFFO of $3.1 million, or $0.28 per share, and a net loss of ($804,000), or ($0.09) per share. Commenting on ARCP's "core earnings," Block remarked:

*During the quarter ended September 30, 2012, the Company generated AFFO of $3.1 million, or $0.28 per share computed using basic weighted average shares outstanding. This represents a 15.0% increase in AFFO per share compared to the second quarter ended June 30, 2012*.

215.    Also on October 29, 2012, ARCP filed its Form 10-Q with the SEC for the period ended September 30, 2012 (the "3Q12 Form 10-Q"), which was signed by Schorsch and Block, and reiterated ARCP's previously reported financial results, represented that those financial results were accurate, represented that ARCP's internal controls were effective, represented that any material changes to internal controls over financial reporting were disclosed, and included Schorsch's and Block's certifications pursuant to SOX, identical in all material respects to the certification quoted in ¶¶54-55.

216.    On October 30, 2012, ARCP also held a conference call with analysts and investors to discuss ARCP's 3Q12 financial results.  During the conference call, Block reiterated the 3Q12 AFFO results disclosed in the October 29, 2012 release, while Schorsch commented that the 3Q12 results demonstrated that their strategy permitted them to "grow three quarters in a row substantially our AFFO, which we believe is our primary measure."

217.    The statements referenced above in ¶¶214-216 were each false and misleading when made in that each omitted and/or they misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's reported 2Q12 AFFO of $1.9 million, as well as ARCP's 3Q12 financial results, including its AFFO of $3.1 million, were false and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)    that ARCP had not grown its AFFO "substantially" for three sequential quarters but rather ARCP had been able to report purportedly strong and consistent AFFO growth only by falsifying its reported financial performance, as detailed in ¶¶170-195;

- 79 -

(c)      that ARCP's acquisition program was not designed to bolster ARCP's "core earnings" but rather to generate hundreds of millions in related-party transactional fees and compensation payments for ARCP executives and other parties affiliated with Schorsch-controlled companies, as detailed in ¶¶133-135, 141-143;

(d)      that ARCP lacked reliable internal financial controls sufficient to enable it to: (i) accurately calculate its AFFO and future estimates thereof, or periodically reassess its ability to meet existing AFFO guidance; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as described in ¶¶196-202; and

(e)      that Schorsch's and Block's review and evaluation of the effectiveness of ARCP's internal controls and financial reporting processes had confirmed that ARCP lacked reliable internal financial controls.

**ARCT III Merger**

218.      On January 22, 2013, ARCP caused a Registration Statement on Form S-4 and Joint Proxy Statement/Prospectus (collectively, the "ARCT III Registration Statement/Proxy") to be filed with the SEC.  A copy of the merger agreement for the transaction was attached as Annex A to the ARCT III Registration Statement/Proxy and was incorporated by reference therein.  The ARCT III Registration Statement/Proxy was signed by Schorsch, Weil, Michelson and Block and incorporated by reference in ARCP's 2011 Form 10-K, 1Q12 Form 10-Q, 2Q12 Form 10-Q and 3Q12 Form 10-Q, each of which was signed by Schorsch and Block and contained ARCP's financial results for the respective quarter.

219.      Section 5.7(c) of the ARCT III Merger Agreement represented that:

(a)     ARCP and its subsidiaries "maintain a system of internal accounting controls sufficient to provide reasonable assurances regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP."

(b)     the members of the audit committee of ARCP's Board of Directors had been informed of "all significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting that are reasonably likely to adversely affect [ARCP's] ability to record, process, summarize and report financial data."

220.     5.7(c) of the ARCT III Merger Agreement further represented that:

[ARCP] ha[d] established and maintains disclosure controls and procedures (as such term is defined in Rule 13a-15 promulgated under the Exchange Act) designed to ensure that material information relating to [ARCP] required to be included in reports filed under the Exchange Act, including its consolidated subsidiaries, is made known to [ARCP's] principal executive officer and its principal financial officer by others within those entities, particularly during the periods in which the periodic reports required under the Exchange Act are being prepared, and, to the knowledge of [ARCP], such disclosure controls and procedures are effective in timely alerting [ARCP's] principal executive officer and its principal financial officer to material information required to be included in [ARCP's] periodic reports required under the Exchange Act.

221.     The statements referenced above in ¶¶218-219 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP lacked internal financial controls sufficient to enable it to: (i) accurately calculate AFFO and future estimates thereof, and periodically reassess ARCP's ability to meet existing AFFO guidance; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as described in ¶¶196-202;

(b)     that ARCP's FY11, 1Q12, 2Q12 and 3Q12 reported financial results, including AFFO, were false and could not be relied upon, as they were the product of improper

accounting and inadequate internal controls, as detailed in ¶¶170-202, and, *ex post facto*, have been restated;

(c)    that the ARCT III Merger was designed to generate hundreds of millions in related-party transactional fees and compensation payments to ARCP executives and other parties affiliated with Schorsch-controlled companies, as detailed in ¶¶133-135, 141-143, including the payment of more than $100 million in fees and expenses relating specifically to the ARCT III Merger;

(d)    that significant deficiencies and material weaknesses over financial controls then existed and were likely to adversely affect ARCP's ability to accurately report financial data, including that ARCP did not maintain disclosure controls and procedures necessary to timely alert its principal executive officer and principal financial officer to material information required to be included in the Company's periodic reports;

(e)    that ARCP's SEC filings did not comply with the requirements of the federal securities laws in that the financial statements incorporated therein did not include all adjustments necessary for a fair presentation of the Company's financial information; and

(f)    that the evaluation of the effectiveness of ARCP's disclosure controls and procedures, which Block and Schorsch supervised and participated in, in connection with the preparation and dissemination of the Company's interim 2012 financial statements, confirmed that the Company's disclosure controls and procedures were neither adequate nor reliable, as detailed in ¶¶196-202.

**Fourth Quarter 2012 Financial Results**

222.    On February 28, 2013, ARCP issued a release announcing its financial results for the fourth quarter of 2012 ("4Q12") and FY12, including 4Q12 AFFO of $3.4 million, or $0.28 per

share, and FY12 AFFO of $10.5 million, or $1.08 per share, a net loss of ($7.3 million), or ($0.84) per share. Schorsch extolled the success and growth ARCP reported during FY12, stating that, "[o]ur first full calendar year of operations has seen us exceed our financial projections across the board . . . ." That same day, ARCP filed with the SEC the 2012 Form 10-K, signed by Schorsch and Block, that contained the false and misleading statements described in ¶¶53-55.

223.    Later that day, ARCP held a conference call with analysts and investors to discuss the Company's 4Q12 and FY12 financial results. During the conference call, Block discussed ARCP's 4Q12 and FY12 AFFO, and reiterated the 2013 AFFO guidance of $0.91 to $0.95 per share and 2014 AFFO guidance of $1.06 to $1.10 per share. Block emphasized that the Company expected to see a "*16% AFFO growth year over year*."

224.    The statements referenced above in ¶¶222-223 were each false and misleading when made in that each omitted and/or misrepresented material facts. The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's 4Q12 and FY12 financial statements were false, did not accurately portray ARCP's financial performance during those periods and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)    that ARCP had not exceeded its FY12 financial projections, as its reported FY12 financial performance and AFFO were the product of financial engineering, as detailed in ¶¶170-195;

(c)    that ARCP lacked reliable internal financial controls sufficient to enable it to: (i) accurately calculate AFFO and future estimates thereof, or periodically reassess its ability to meet existing AFFO guidance; and (ii) assess, authorize and monitor related-party transactions that were generating millions of dollars in payments to ARC Advisors and its affiliates – all entities owned

- 83 -

and/or controlled by Schorsch, Block, Kahane, Budko and Weil – without proper documentation, as detailed in ¶¶196-202;

(d)      that Schorsch's and Block's review of the Company's internal controls and financial reporting processes in connection with filing the 2012 Form 10-K confirmed that ARCP lacked reliable internal financial controls;

(e)      that in issuing guidance of 16% AFFO growth for 2014, Block and Schorsch assumed their ability to continue to (i) manipulate ARCP's financial statements by misclassifying ordinary general and administrative expenses as extraordinary merger and other non-routine transaction-related expenses; and (ii) conceal the ongoing transfer of assets to ARC Advisors and other entities affiliated with Schorsch and Block under the guise of acquisition related costs;

(f)      that as a result of (a)-(e), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, ARCP's financial statements did not contain material misstatements; and

(g)      that as a result of (a)-(f), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, their 2013 and 2014 AFFO guidance of $0.91-$0.95 per share and $1.06-$1.10 per share, respectively, was achievable.

225.     On March 14, 2013, ARCP filed the 2013 Shelf Registration Statement with the SEC. The 2013 Shelf Registration Statement incorporated by reference certain documents to be filed with the SEC, including reports on Form 10-K and 10-Q. Schorsch, Weil, Block, Jones, Kahane, Rendell, Michelson and Bowman signed the 2013 Shelf Registration Statement.

**First Quarter 2013 Financial Results**

226.     On May 6, 2013, ARCP issued a release announcing its financial results for 1Q13. ARCP reported 1Q13 AFFO of $30.8 million, or $0.20 per fully diluted share, compared to AFFO of

- 84 -

$3.4 million during the fourth quarter of 2012.  ARCP further reported a net loss of ($137.9 million), or ($0.90) per share.  That same day, ARCP also filed with the SEC the 1Q13 Form 10-Q, signed by Schorsch and Block, that contained the false and misleading statements described in ¶¶54-56.

227.    The statements referenced above in ¶226 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's reported AFFO of $0.20 per share represented an overstatement of 100% and as such did not accurately reflect ARCP'S actual performance, as detailed in ¶¶170-195;

(b)    that ARCP's 1Q13 financial statements were materially false and misleading, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(c)    that ARCP lacked adequate internal controls, which prevented it from accurately computing its reported AFFO and net earnings/losses, including: (i) basic systems to reconcile cash accounts; and (ii) a process by which senior management approved critical accounting estimates and non-routine transactions and/or provided for audit committee review of the same; and

(d)    that ARCP lacked the internal controls to assess, calculate and account for payments made to ARC Advisors, ARCP's external manager, and its affiliates and/or provide for review and approval of equity awards allocated to ARC Advisors' employees responsible for ARCP's operations.

**ARCT IV Merger Announcement**

228.    On July 2, 2013, ARCP issued a release announcing that it had entered into a definitive merger agreement to acquire the outstanding shares of ARCT IV – a publicly registered,

- 85 -

non-traded REIT controlled by Schorsch.  Block commented on the proposed merger, stating in pertinent part, "[d]ue to the relative value of our stock offer versus cash consideration, we reasonably expect the acquisition of ARCT IV will be completed primarily through the issuance of ARCP common stock."

**July 2013 Offering**

229.    On July 23, 2013, ARCP announced a $300 million offering of 3.0% Convertible Senior Notes due August 1, 2018.  The July 2013 Offering was conducted pursuant to the 2013 Shelf Registration Statement, a Pricing Term Sheet dated July 23, 2013, Free Writing Prospectuses dated July 23 and filed on July 24, 2013, and Prospectus Supplements dated July 23 and 25, 2013.  The July 2013 Offering Materials, signed by Schorsch and Block, specifically incorporated by reference the 2012 Form 10-K and 1Q13 Form 10-Q.

**Second Quarter 2013 Financial Results**

230.    On August 6, 2013, ARCP issued a release announcing "[r]ecord" results for 2Q13.  For the quarter, ARCP reported AFFO of $32.8 million, or $0.19 per share, and a net loss of ($51.7 million), or ($0.32) per share.  That same day, ARCP also filed with the SEC the 2Q13 Form 10-Q, signed by Schorsch and Block, that contained the false and misleading statements described in ¶¶54-56.

231.    The statements referenced above in ¶¶229-230 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's FY12, 1Q13 and 2Q13 financial statements and reported AFFO were materially false and misleading, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

- 86 -

(b)      that ARCP lacked adequate internal controls in several respects, as detailed in ¶¶196-202, including controls necessary to (i) enable ARCP to ensure that its 2Q13 SEC filings were reviewed timely; (ii) formulate AFFO guidance and/or periodically reassess ARCP's ability to meet that guidance; and (iii) assess, authorize and monitor related-party transactions that were resulting in payments to ARCP's external manager and its affiliates – all entities controlled by Schorsch – that were not sufficiently documented or otherwise warrant scrutiny; and

(c)      that as a result of (a)-(b), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, ARCP's financial statements did not contain material misstatements.

**Cole Merger Announcement**

232.     On or about October 22, 2013, ARCP and Cole Inc. entered into the Cole Merger Agreement whereby Cole Inc. shareholders were to receive, at their election, 1.0929 shares of ARCP common stock or $13.82 in cash per Cole Inc. share.

233.     The following day, on October 23, 2013, ARCP and Cole Inc. issued a joint release concerning the proposed $11.2 billion merger, which, if consummated, would create the country's largest net REIT.  In connection with the proposed merger, ARCP issued "updated 2014 AFFO guidance of $1.13 to $1.19 per share, an increase of approximately 25% over . . . 2013 AFFO per share guidance of $0.91 to $0.95."  Schorsch commented on the proposed Cole Merger, in pertinent part, "[b]oth companies share the same vision, namely to drive *value for stockholders by placing their interests ahead of our own*, aligning pay with performance, *and reporting fully and transparently*."

234.     Later that day, ARCP held a conference call with analysts and investors.  During the conference call, Schorsch extolled the benefits of the proposed Cole Merger:

*This is an epic transaction.  Great companies combining in a win-win to the shareholders*, the employees and the broker-dealer systems that we work with.

The portfolios just fit.  They fit very, very well.  *We're a much stronger company*. We . . . have both proven ourselves.  And if you look back at the last six months, as we've gone through this transaction, *we as a company have improved at ARCP – we've become investment-grade rated; we've managed our balance sheet and a number of other mergers to build a larger company of over $10 billion on a pro forma basis. . . . And today, we have created, with this merger, the largest net lease company on the globe*.

### Third Quarter 2013 Financial Results

235.    On November 7, 2013, ARCP issued a release announcing its financial results for 3Q13.  For the quarter, ARCP reported AFFO of $46.7 million, or $0.21 per share, representing a quarter-to-quarter increase of over 42%.  Schorsch commented on ARCP's financial results, stating in pertinent part:

*We have continued to build enterprise value during this third quarter, and for now are intently focused on execution* . . . .  In this regard, we have identified several near-term key objectives: completing the announced ARCT IV and Cole transactions; becoming self-managed and significantly broadening our intellectual capital by continuing to attract the best and brightest managers in the industry; deleveraging and terming out our balance sheet utilizing long-term, fixed rate debt; and effectively and seamlessly integrating Cole organization.

*             *             *

We are fully committed to becoming self-managed, as promised . . . . In fact, it is a closing condition for our merger with Cole.  We will announce the President of ARCP before year-end.  We have already moved to bolster our team with several key hires.  Brian Block, our CFO, will now be focused exclusively on ARCP.  Lisa Beeson joins us as COO after 25 years as an investment banker with tremendous M&A and capital markets expertise.  Lisa Pavelka McAlister is our new CAO with 25 years' experience in senior financial roles versed in all aspects of financial and accounting operations.

236.    On November 7, 2013, ARCP also filed with the SEC the 3Q13 Form 10-Q, signed by Schorsch and Block, that contained the false and misleading statements described in ¶¶54-56.

- 88 -

237.     The statements referenced above in ¶¶233-236 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP's 3Q13 financial statements were false, did not accurately portray ARCP's financial performance during those periods and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)     that ARCP, Schorsch and Block's representations in ARCP's 3Q13 SEC filings with respect to internal controls and financial reporting processes were false and misleading, as detailed in ¶¶196-202, in that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were reviewed timely; (ii) formulate AFFO guidance and periodically reassess ARCP's ability to meet AFFO guidance; and (iii) assess, authorize and monitor millions of dollars of related-party payments to ARCP's external manager and its affiliates – all entities owned and/or controlled by Schorsch, Block, Kahane, Budko and Weil;

(c)     that the Cole Merger was designed to and did permit the payment of $37 million in related-party transactional fees and compensation payments to ARCP insiders and other parties affiliated with Schorsch;

(d)     that as a result of (a)-(c) above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements did not contain material misstatements; and

(e)     that as a result of (a)-(d) above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, their 2014 AFFO guidance of $1.13 to $1.19 per share.

**ARCT IV Merger**

238.    On December 3, 2013, a Registration Statement and Joint Proxy Statement/Prospectus relating to the ARCT IV merger (collectively, the "ARCT IV Registration Statement/Proxy") was filed with the SEC.  A copy of the merger agreement for the transaction was attached as Annex A and was incorporated by reference therein.  The ARCT IV Registration Statement/Proxy was reviewed and signed by Schorsch, Weil, Kahane, Michelson, Rendell, Bowman, Budko, Block, Beeson and Stanley.

239.    ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q and 3Q13 Form 10-Q, which Schorsch and Block signed, were each incorporated by reference in the ARCT IV Registration Statement/Proxy, which itself assured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

240.    The ARCT IV Merger Agreement repeated in all material respects the same representations concerning ARCP's internal controls, disclosures and SEC filings quoted in ¶¶219-220 from the ARCT III Merger Agreement.

241.    On December 3, 2013, the ARCT IV Registration Statement/Proxy was disseminated to shareholders and, among other things, presented ARCP's audited FY12 financial data and unaudited financial data for the first nine months of 2013, ended September 30, 2013, and represented that "[i]n ARCP's opinion, such unaudited financial statements include all adjustments (consisting of normal recurring adjustments) necessary for a fair presentation of the interim September 30, 2013 financial information."  All of these financial statements have been restated.

242.     The statements referenced above in ¶¶238-241 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP's financial statements for FY12, 1Q 2013, 2Q13, and 3Q13 were false, did not accurately portray ARCP's financial performance for those periods and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)     that ARCP, Schorsch and Block's representations with respect to internal controls and financial reporting processes were false and misleading, as detailed in ¶¶196-202, in that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were reviewed timely; (ii) formulate AFFO guidance and periodically reassess ARCP's ability to meet AFFO guidance; and (iii) assess, authorize and monitor millions of dollars of related-party payments to ARCP's external manager and its affiliates; and

(c)     that as a result of (a)-(b) above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements did not contain material misstatements.

**December 2013 Debt Offerings**

243.     On December 4, 2013, ARCP announced the December 2013 Reopening.  The December 2013 Reopening was conducted pursuant to the 2013 Shelf Registration Statement, which incorporated a Pricing Term Sheet and Free Writing Prospectuses dated December 5, 2013, and Prospectus Supplements dated December 5, 6, and 9, 2013; an offering of 3.75% Convertible Senior Notes due December 15, 2020, which were ultimately priced at $402.5 million.  The December 2013 Offering was conducted pursuant to the 2013 Shelf Registration Statement, which incorporated a Pricing Term Sheet dated December 5, 2013, and Prospectus Supplements dated December 5, 6 and

- 91 -

9, 2013; and the December 2013 Reopening Materials and the December 2013 Offering Materials were signed by Schorsch and Block and specifically incorporated by reference ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q, and 3Q13 Form 10-Q.

244.    The statements referenced above in ¶243 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's financial statements for FY12, 1Q13, 2Q13, and 3Q13 were false, did not accurately portray ARCP's financial performance for those periods and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)    that ARCP, Schorsch and Block's representations with respect to internal controls and financial reporting processes were false and misleading, as detailed in ¶¶196-202, in that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were reviewed timely; (ii) formulate AFFO guidance and periodically reassess ARCP's ability to meet AFFO guidance; and (iii) assess, authorize and monitor millions of dollars of related-party payments to ARCP's external manager and its affiliates; and

(c)    that as a result of (a)-(b) above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements did not contain material misstatements.

**Cole Merger**

245.    On or about December 23, 2013, ARCP filed a Registration Statement on Form S-4, which incorporated a Joint Proxy Statement/Prospectus in connection with the proposed merger (collectively, the "Cole Registration Statement/Proxy").  The Cole Registration Statement/Proxy,

- 92 -

which Schorsch and Block signed,  attached a copy of the Cole Merger Agreement, which was incorporated therein.

246.    ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q and 3Q13 Form 10-Q, each were incorporated by reference into the Cole Registration Statement/Proxy, which itself assured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

247.    The Cole Merger Agreement repeated in all material respects the same representations concerning ARCP's internal controls, disclosures and SEC filings quoted in ¶¶219-220 of the ARCT III Merger Agreement.

248.    On December 23, 2013, the Cole Registration Statement/Proxy was disseminated to Cole Inc. and ARCP shareholders and, among other things, presented ARCP's audited FY12 financial data and unaudited financial data for the first nine months of 2013, ended September 30, 2013, and represented that "[i]n ARCP's opinion, such unaudited financial statements include all adjustments (consisting of normal recurring adjustments) necessary for a fair presentation of the interim September 30, 2013 financial information."  All of these financial statements have been restated.

249.    The statements referenced above in ¶¶245-248 were each materially false and misleading when made in that it omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)    that ARCP's reported financial results for FY12, 1Q13, 2Q13 and 3Q13, including ARCP's reported AFFO and net loss, were false and the product of improper accounting

- 93 -

and inadequate internal controls.  Indeed, as detailed in ¶¶170-195, ARCP since has restated its 2012 and 2013 financial statements and 2012 and 2013 AFFO;

      (b)     that ARCP did not maintain a system of internal controls sufficient to provide reasonable assurances regarding the reliability of its financial reporting, or to formulate or evaluate ARCP's ability to meet its AFFO guidance, as described in ¶¶196-202;

      (c)     that ARCP, Schorsch and Block failed to disclose material weaknesses that they were aware had been and would continue to adversely affect ARCP's ability to accurately report financial data, including the fact that ARCP lacked disclosure controls and procedures necessary to timely alert its principal executive officer and principal financial officer to material information required to be included in ARCP's periodic reports;

      (d)     that ARCP's filings with the SEC did not comply with the federal securities laws, as its financial statements failed to include all adjustments necessary for a fair presentation of ARCP's financial information;

      (e)     that ARCP was in the midst of an acquisition campaign designed to generate hundreds of millions in transactional fees and compensation payments for Schorsch and ARCP insiders, as well as other ARCP-affiliated entities, without regard to the fairness or merits of the underlying transaction;

      (f)     that the evaluation of the effectiveness of ARCP's disclosure controls and procedures, which Block and Schorsch supervised and participated in relating to the preparation and dissemination of ARCP's interim 2013 financial statements and its 2012 Form 10-K, confirmed that ARCP's disclosure controls and procedures were inadequate in several regards, as detailed in ¶¶196-202; and

(g)     that as a result of (a)-(f), above, ARCP, Schorsch and Block had no reasonable basis to believe, and did not in fact believe, their statements detailed herein about ARCP, its financial performance or its AFFO estimates.

**February 2014 Notes Offering**

250.    On February 6, 2014, ARCP completed a $2.55 billion February Notes Offering of 2.0% Senior Notes due February 6, 2017, 3.0% Senior Notes due February 6, 2019, and 4.6% Senior Notes due February 6, 2024 (the "Senior Notes") (the "February Notes Offering").  The February Notes Offering was conducted by way of an Offering Memorandum pursuant to Securities Act Rule 144A, by which the initial purchasers purchase the securities from the issuers and resell them pursuant to an SEC regulation providing for re-sales of unregistered securities to "Qualified Institutional Buyers."[11]

251.    TIAA-CREF, National Pension Fund and other members of the Class purchased the Senior Notes sold by ARC Properties with the understanding and expectation that the Senior Notes would later be exchanged for freely tradable registered bonds in the second step Exxon Capital Exchange Offer.

252.    TIAA-CREF, National Pension Fund and other members of the Class purchased the unregistered Senior Notes based upon the statements contained in the Prospectus.  The Prospectus stated that ARCP and ARC Properties "furnished the information contained or incorporated by reference in this offering memorandum" and set forth ARCP's reported financial and operating

---

[11]   The February Notes Offering was the first step in a two-step process known as an "Exxon Capital Exchange."  The second step, the "Exxon Capital Exchange Offer," is the means by which the 144A notes are converted into registered, freely tradable securities.  In practice, the Rule 144A/Exxon Capital framework does not differ from registration.  Issuers and their underwriters prepare the offering memoranda for Rule 144A offerings in contemplation of the Exxon Capital Exchange Offer and, accordingly, prepare such documents to conform in all material respects to a registered offering.

results, including AFFO, for FY12 and the nine-months ended September 30, 2013, while incorporating by reference ARCP's 2012 Form 10-K, 1Q13 Form 10-Q, 2Q13 Form 10-Q and 3Q13 Form 10-Q, each signed by Schorsch and Block. The Offering Memorandum also ensured investors that:

> [W]e, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

253.     The Offering Memorandum also represented that ARCP's January 8, 2014 transition to internal management "has eliminated conflicts of interests associated with an external advisor."

254.     The statements referenced above in ¶¶250-253 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)      that ARCP's financial statements for FY12, 1Q13, 2Q13, and 3Q13 were false, did not accurately portray ARCP's financial performance for those periods and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)      that ARCP, Schorsch and Block's representations with respect to internal controls and financial reporting processes were false and misleading, as detailed in ¶¶196-202, in that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were reviewed timely; (ii) formulate AFFO guidance and periodically reassess ARCP's ability to meet AFFO guidance; and (iii) assess, authorize and monitor millions of dollars of related-party payments to ARCP's external manager and its affiliates; and

       (c)     that as a result of (a)-(b) above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, that ARCP's financial statements did not contain material misstatements.

**Fourth Quarter 2013 Financial Results**

255.    On February 27, 2014, ARCP issued a release announcing its financial results for 4Q13 and FY13.  The release emphasized that ARCP generated "record operating results for the full year ended December 31, 2013[.]"  For 4Q13, ARCP reported AFFO of $55.8 million, a year-over-year increase of 153%, or $0.25 per share, a year-over-year increase of 108% and a net loss of ($157.8 million), or ($0.85) per share.  For FY13, ARCP reported AFFO of $163.9 million, an increase of 240% from 2012, or $0.86 per share, an increase of over 80% from 2012 and a net loss of ($406.5 million), or ($2.36) per share.

256.    On February 27, 2014, ARCP also filed the 2013 Form 10-K that contained the false and misleading statements described in ¶¶54-55, 57.  The 2013 Form 10-K was signed by Schorsch, Beeson, Block, Kay and McAlister.

257.    Later that day, ARCP held a conference call with analysts and investors to discuss ARCP's 4Q13 and FY13 financial results.  During the conference call, Schorsch confirmed that "*[o]ur earnings guidance is solid," and even "with room for upside*[.]"  Block likewise stated in pertinent part:

> Based on the strength of our acquisitions, success in our private capital management business, strategic execution of our balance sheet initiatives, and the continued savings in G&A costs, *we comfortably affirm our 2014 AFFO guidance of $1.13 to $1.19 per share*.
>
>            *        *        *
>
> We currently have today 812.5 million shares and share equivalents outstanding on a fully diluted basis.  *The end result of all these numbers I just mentioned is a run*

*rate of around $1.11 to $1.13 per share AFFO*.  Again, this number is a run rate through what we know today.

*If we didn't do anything else as of April 1, we would achieve this roughly $1.12 per share for the prospective 12 months.  We of course will continue to acquire more than the $1 billion we've discussed over the next nine months, and therefore achieve higher results*.

258.    During the conference call, Block responded to an analyst's question about ARCP's

full year 2014 AFFO per share guidance, stating in pertinent part:

Chris Lucas – Capital One Securities – Analyst:

Okay.  And then, again related to guidance, Brian, just in terms of getting to the low end of the numbers *we should just assume that $1.13 at the low end is reflective of* just essentially what you talked about before, which is *what's done and nothing more?  Is that effectively how we should be thinking about the low end*?

Defendant Block:

*That's correct*.  To repeat Chris, *if we didn't do anything past March 31, we would be at the low end of the range, notwithstanding the fact that we have a lot more acquisition potential for the duration of the year*.

259.    Also during the call, Beeson highlighted ARCP's "acquisition machine" as the

mechanism driving ARCP's strong performance.  Beeson stated in pertinent part:

Josh Patinkin – BMO Capital Markets – Analyst:

Okay.  And is that, you think, what enabled you such an attractive initial yield, going into smaller deal size?

Defendant Beeson:

Absolutely.  That is how we distinguish ourselves.  *No other company has the acquisition machine that we have built here*, that enables us to cost effectively do smaller one-off transactions, *and that's how we're able to get the pricing differential*.

We can buy three assets at a 7.75% or an 8% cap that another competitor buys in a portfolio at a 6, 7% cap.  That's a significant spread differential, and we do that because we're able to, and we'll do granular level acquisitions.

- 98 -

260.    The statements referenced above in ¶¶255-259 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch, Block, Beeson, Kay and McAlister, were:

(a)    that ARCP's reported 4Q13 AFFO was overstated by 31%, while its FY13 AFFO was overstated by 23%, as detailed in ¶¶170-195;

(b)    that ARCP's 4Q13 and FY13 financial statements were false, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(c)    that ARCP, Schorsch, Block, Beeson, Kay and McAlister were aware that the AFFO reported by ARCP was false because McAlister had repeatedly informed Schorsch, Kay, Block and other members of senior management, including Beeson, by at least February 2014 that ARCP's AFFO calculations improperly accounted for costs attributed to non-controlling interests in ARC Properties, thus falsifying the AFFO numbers disseminated by ARCP;

(d)    that the AFFO provided to investors remained inflated as a result of Kay's instruction to Block and McAlister not to correct ARCP's fraudulent reports, thereby avoiding public disclosure of ARCP's faltering financial performance;

(e)    that ARCP lacked adequate internal controls to: (i) ensure that its SEC filings were timely reviewed; (ii) ensure that grants of equity-based compensation were consistent with those approved by the Board; (iii) formulate AFFO guidance and periodically reassess the Company's ability to meet its AFFO guidance; and (iv) assess, authorize and monitor improperly documented related-party transactions that resulted in payments to ARCP's external manager and its affiliates – all entities controlled by Schorsch and other ARCP insiders;

(f)     that the "acquisition machine" that Beeson contended was driving ARCP's performance was predicated on Block, Beeson, Kay, Schorsch and McAlister's falsification of ARCP's financial results; and

(g)     that the ARCP "acquisition machine" was designed to generate nearly $200 million in compensation payments and fees for Schorsch-controlled entities in 2013; and

(h)     that as a result of (a)-(g), above, ARCP, Schorsch and Block had no reasonable basis to believe, and in fact did not believe, their 2014 AFFO guidance of $1.13-$1.19 per share or that their AFFO guidance had "room for upside."

**First Quarter 2014 Financial Results**

261.    On May 8, 2014, ARCP issued a release announcing its financial results for 1Q14. The release emphasized that ARCP had achieved "***Record First Quarter 2014 Operating Results***." ARCP reported AFFO available to common stockholders of $147.4 million, or $0.26 per share, representing a year-over-year increase of 334.6%. Kay commented on ARCP's financial results, stating in pertinent part:

> With our acquisitions team firing on all cylinders, ***every aspect of our business is exceeding our expectations*** . . . . ***With strong earnings, our acquisition volume is outpacing our guidance***, our cap rates surpass all industry peers, Cole Capital launched two new products, and we successfully integrated our management and systems, all of which is allowing us to execute with a disciplined intensity. The $1.7 billion of acquisitions we have closed or placed under contract were at a 7.92% cash cap rate or 8.26% GAAP cap rate. These 150 self-originated transactions are indicative of ***the scale and expertise of our platform, providing a significant competitive advantage***.

262.    Beeson further noted that ARCP's "***improved operational and financial efficiencies***" had positioned ARCP "***well to drive meaningful growth***."

263.    On May 8, 2014, ARCP also filed with the SEC the 1Q14 Form 10-Q, signed by Schorsch and Block, that contained the false and misleading statements described in ¶¶54-55, 58.

- 100 -

264.     Later that day, ARCP held a conference call with analysts and investors to discuss ARCP's 1Q14 financial results.  During the conference call, Beeson discussed various aspects of the Company's operations and net lease portfolio, noting how ARCP had "*successfully* integrated over 300 individuals from the multiple entities into one cohesive enterprise," and confirming that the respective accounting systems had likewise been "*fully integrated as well*."

265.     When Schorsch, Kay, Block and Beeson completed their prepared remarks, the call was opened up for questions.  In response to questions from one analyst, Schorsch emphasized that investors should be buyers of ARCP stock as "*we're way undervalued*," noting that "*our stock is cheap*."

266.     The statements referenced above in ¶¶261-265 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch, Block, Beeson and Kay, were:

(a)     that ARCP's reported 1Q14 AFFO of $147 million, or $0.26 per share, represented overstatements of 35% and 37% respectively, as detailed in ¶¶170-195;

(b)     that ARCP was not experiencing "improved operational efficiencies" nor was it positioned for meaningful growth, as ARCP lacked reliable financial controls and, as a result, was issuing false financial reports, including inflated AFFO, to the market;

(c)     that ARCP, Schorsch, Block, Kay and Beeson were aware that the 1Q14 Form 10-Q was false as McAlister had "repeatedly" informed Schorsch, Kay, Block and other members of senior management, including Beeson, that ARCP's AFFO calculation improperly accounted for costs that should have been attributed to non-controlling interests in ARC Properties;

(d)      that ARCP provided false AFFO to investors for 1Q14 upon Kay's instruction to Block and McAlister not to change or correct the fraudulent reports, in an effort to conceal ARCP's faltering financial performance;

(e)      that ARCP's 1Q14 financial statements were false, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(f)      that, as detailed in ¶¶196-202, ARCP lacked adequate internal controls, including controls to ensure, among other things, that ARCP's Code of Conduct was adhered to and that employees would not be pressured to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO;

(g)      that ARCP had not successfully integrated its financial systems or operations "into one cohesive enterprise," as it lacked even the most basic accounting functions, including a standardized internal accounting close and cash reconciliation process; and

(h)      that ARCP was not generating "strong earnings" nor was its stock cheap nor undervalued, as its financial results for FY13 and 1Q14 were the product of fraudulent manipulations, as detailed in ¶¶159-163, including its AFFO per share, which was overstated by 23% and 37%, respectively.

**May 21, 2014 Secondary Offering**

267.     On May 21, 2014, ARCP entered into the May 21 Equity Offering, raising $1.65 billion from investors pursuant to the false and misleading 2013 Shelf Registration Statement, which incorporated a preliminary Prospectus Supplement filed May 21, 2014 and a Prospectus Supplement filed May 23, 2014.  The May 21 Equity Offering Materials were signed by ARCP, Schorsch and Block.

- 102 -

268.     The May 21 Equity Offering Materials incorporated by reference ARCP's 2012 Form 10-K, 2013 Form 10-K and its 1Q14 Form 10-Q, each of which represented that: (i) the financial results contained therein were accurate and presented in accordance with GAAP; and (ii) ARCP's internal controls were effective and any material changes to internal controls over financial reporting had been disclosed.  Each of the 2012 Form 10-K, 2013 Form 10-K and 1Q14 Form 10-Q also included false and misleading certifications Schorsch and Block executed and filed pursuant to SOX.

269.     The statements referenced above in ¶¶267-268 were each false and misleading when made in that each omitted and/or misrepresented material facts.  The true facts, which were then known to or recklessly disregarded by ARCP, Schorsch and Block, were:

(a)     that ARCP's financial statements for FY12, FY13 and 1Q14, which were incorporated into the May 21 Equity Offering Materials, were false, did not accurately portray ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in ¶¶170-195;

(b)     that ARCP, Schorsch and Block were aware that the financial statements for FY13 and 1Q14 were false as McAlister had "repeatedly" informed Schorsch, Kay, Block and other members of senior management, including Beeson, that ARCP's AFFO calculation improperly accounted for costs that should have been attributed to non-controlling interests in ARC Properties;

(c)     that ARCP provided false AFFO to investors for FY13 and 1Q14 upon Kay's instruction to Block and McAlister not to change or correct the fraudulent reports, in an effort to conceal ARCP's faltering financial performance; and

(d)     that, as detailed in ¶¶196-202, ARCP lacked adequate internal controls, including controls to ensure, among other things, that ARCP's Code of Conduct was adhered to and

that employees would not be pressured to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO.

**Second Quarter 2014 Financial Results**

270.     On July 29, 2014, ARCP issued a release announcing its financial results for 2Q14. For the quarter, ARCP reported AFFO of $205.3 million, representing a year-over-year increase of 429.0%, or $0.24 per fully diluted share, representing a year-over-year increase of 26%. ARCP also reported a net loss of ($40.3 million), or ($0.08) per share.

271.     Noting that ARCP's use of AFFO was designed to "provide a more complete understanding of our performance relative to our peers and a more informed and appropriate basis on which to make decisions involving operating, financing and investing activities," Kay and Schorsch commented on ARCP's financial results, stating in pertinent part:

Defendant Kay:

***Our second quarter results and accomplishments are indicative of our focus on driving long-term value by delivering on our commitments . . . . we are positioned for long-term success.***

Defendant Schorsch:

. . . I have continued to focus my attention on improving corporate governance . . . . With the support of our Board of Directors, we are improving our practices by eliminating related-party transactions, enhancing disclosures, evaluating executive compensation, opting out of the MUTA to assure our stockholders' right to elect the entire Board at each annual meeting, and implementing other policies designed to improve our reporting and transparency, further align interest with our stockholders, and eliminate potential conflicts of interest. Our goal is to constantly improve our corporate governance, which we expect will ultimately be reflected in our corporate governance scores. All of these efforts are taken with a view toward creating long-term value for stockholders.

272.     On July 29, 2014, ARCP also filed with the SEC the 2Q14 Form 10-Q, signed by Schorsch, Block and McAlister, that contained the false and misleading statements described in ¶¶54-55, 58.

- 104 -

273.    Later that day, ARCP held a conference call with analysts and investors to discuss

ARCP's 2Q14 financial results.  During the conference call, Kay and Block stated in pertinent part:

Defendant Kay:

. . . From afar, ***it may appear at times our rapid growth is hard to understand.  I can
assure you, however, that everything we do is directed towards a singular objective:
to create value for our shareholders***. . . .

*        *        *

Defendant Block:

Our second-quarter results are in line with our expectations. . . . AFFO was $198.6
million, or $0.24 per fully diluted share, which represents a 26% increase from this
period last year. . . .

*        *        *

Additionally, ***our internal operations continues to strengthen.  The synergy created
by the integration of the Cole team and the adoption of new technology has
allowed us to be more timely and efficient in our financial reporting***.  In fact, this
enhanced scale allowed us to move up the timing of our 10-Q filing and earnings call
as a result of these improvements by roughly a week.

274.    The statements referenced above in ¶¶270-273 were each false and misleading when

made in that each omitted and/or misrepresented material facts.  The true facts, which were then

known to or recklessly disregarded by ARCP, Schorsch, Block, Kay and McAlister, were:

(a)      that ARCP's reported financial results for 2Q14 were false, including its

reported AFFO of $0.24 per share, which represented an overstatement of more than 14%, and its

reported net loss of $40.3 million which represented an overstatement of more than 26%.

(b)      that ARCP's 2Q14 financial statements were false, did not accurately portray

ARCP's financial performance and were not prepared in accordance with GAAP, as detailed in

¶¶170-195;

(c)      that, as described in ¶¶196-202, ARCP lacked appropriate controls to ensure,

among other things, that ARCP's Code of Conduct was adhered to and that employees would not be

- 105 -

pressured to make inappropriate decisions concerning the formulation of ARCP's financial statements or calculation of AFFO;

(d)     that ARCP was not improving its governance practices, reporting practices, transparency or practices concerning related-party transactions, as during the very quarter Schorsch, Kay and Block made these representations, these defendants had actively falsified ARCP's reported AFFO by tens of millions of dollars and its AFFO per share by more than 14%;

(e)     that ARCP, Schorsch, Block, Kay and McAlister knew that ARCP's AFFO as reported was false because McAlister had repeatedly informed Schorsch, Kay, Block and other members of senior management that ARCP's AFFO calculation improperly accounted for costs attributed to non-controlling interests in ARC Properties;

(f)     that ARCP's 2Q14 AFFO reported to investors and incorporated in ARCP's 2Q14 Form 10-Q was inflated based upon Kay's instruction to Block and McAlister not to change or correct ARCP's fraudulent financial statements and AFFO, thus concealing ARCP's faltering financial performance;

(g)     that on July 28, 2014, Schorsch instructed Block to falsify ARCP's 2Q14 AFFO by shifting numbers in ARCP's 2Q14 Form 10-Q in an effort to conceal ARCP's previous improper reporting;

(h)     that Schorsch and Kay directed Block to take steps in formulating ARCP's 2014 financial statements to make it more difficult for stockholders to discover the fraudulent changes regarding add-backs of non-recurring transaction and deferred financing costs;

(i)     that the Schorsch, Kay and Block had did not have a singular objective of creating value for ARCP shareholders, but rather their conduct was designed to ensure their primary objective of facilitating rapid growth in ARCP's asset base to generate higher executive

- 106 -

compensation payments and payments to affiliated parties controlled by ARCP insiders and their affiliates, which totaled more than $475 million in 2013 alone;

(j)    that ARCP's internal operations did not "continue to strengthen," but rather were riddled with no fewer than three dozen different accounting manipulations as ARCP itself acknowledged just three months later;

(k)    that ARCP's financial reporting was neither "timely" nor "efficient," but rather was grossly inadequate and the product of fraudulent manipulation, as detailed in ¶¶170-202, 159-167; and

(l)    that ARCP's 2Q14 results had not positioned ARCP for "long term success," nor were they the product of defendants' focus on driving long term value for ARCP shareholders, but were the result of the systematic manipulation by defendants Schorsch, Block, Kay and McAlister of ARCP's financial results, including its AFFO, as detailed in ¶¶159-167.

**Exchange Pursuant to September 12, 2014 Senior Notes Offering**

275.    On September 12, 2014, ARCP and ARC Properties registered the $2.55 billion of Senior Notes previously issued in the February 2014 Notes Offering (discussed above in ¶¶250-253) via an Exchange Offer.

276.    The Exchange Offer was conducted pursuant to the 2013 Shelf Registration Statement and a Prospectus dated September 12, 2014 (the "Senior Notes Registration Statement"). The Senior Notes Registration Statement contained untrue statements of material fact and failed to disclose material information required to be disclosed therein pursuant to the regulations governing its preparation.

277.    Specifically, the Senior Notes Registration Statement incorporated by reference ARCP's: (i) 2012 Form 10-K; (ii) 2013 Form 10-K; (iii) 1Q14 Form 10-Q; and (iv) 2Q14 Form 10-

- 107 -

Q, each of which contained ARCP's financial statements for those periods, which ARCP now admits were materially inaccurate and have been restated. The Senior Notes Registration Statement also incorporated by reference the materially false and misleading internal control disclosures and SOX certifications contained in those filings.

278. The Senior Notes Registration Statement contained the following false and misleading statements: (i) pro-forma financial information; (ii) AFFO financial measures; (iii) risk disclosures; and (iv) representations about ARCP's internal controls. ARCP now admits that all of these financial statements violated GAAP, largely due to the understatement and misclassification of numerous expenses, as described in ¶¶170-202 herein. Such GAAP violations caused the reported net loss attributable to ARCP to be understated by approximately 3.4% for the year ended December 31, 2013, and 26.3% for 2Q14.

279. The Senior Notes Registration Statement also contained pro-forma financial statements based upon ARCP's false 2Q14 financial statements. Accordingly, the pro-forma financial statements included in the Senior Notes Registration Statement, including the unaudited selected pro-forma consolidated operating data for the six months ended June 30, 2014 and the disclosures related thereto, were materially false.

280. The Senior Notes Registration Statement was also false and misleading because it contained ARCP's false AFFO for 2012, 2013, 1Q14 and 2Q14, contained in the 2013 Form 10-K, 1Q14 Form 10-Q and 2Q14 Form 10-Q, which were each incorporated by reference into the September 12, 2014 Prospectus Supplement. AFFO per share was overstated by 2.2% for 2012, 23% for 2013, 36.8% for 1Q14, and 14.3% for 2Q14.

281. Additionally, the 1Q14 Form 10-Q and the 2Q14 Form 10-Q incorporated by reference in the Senior Notes Registration Statement contained materially inaccurate disclosures in

- 108 -

the MD&A (*Management's Discussion and Analysis of Financial Condition and Results of Operations* under Regulation S-K [17 C.F.R. §229.303]).  The disclosures in the MD&A were materially false and misleading because they were based, in part, upon ARCP's admittedly misstated AFFO for 1Q14, 2Q14 and the six months ended June 30, 2014.

282.    Additionally, Item 3 of Form S-4 required that the Senior Notes Registration Statement furnish the information, including, among other things, a "discussion of the most significant factors that make the offering risky or speculative."  The risk disclosures in the Senior Notes Registration Statement were materially inaccurate because they failed to advise investors about significant, then-existing factors that made the offering speculative or risky, including ARCP's management's ongoing effort to intentionally inflate ARCP's reported operating performance and intentionally file unreliable and material misstated financial statements with the SEC.

283.    Finally, the Senior Notes Registration Statement represented that ARCP was implementing "additional enhancements to its corporate governance practices as it remains focused on 'best practices[.]'"

284.    The statements referenced above in ¶¶275-283 were false and misleading in that they failed to disclose and/or misrepresented that ARCP lacked the necessary internal controls over its accounting systems to prepare reliable financial statements, and accordingly, was not enhancing its corporate governance practices or focusing on best practices.  And just weeks after the September 2014 offering, ARCP admitted that the 1Q14 financial statements incorporated into the Senior Note Registration Statement contained errors that had been "identified but intentionally not corrected," and that the 2Q14 financial statements incorporated into the Senior Note Registration Statement contained errors that were "intentionally made[.]"

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

285.    At all relevant times, the markets for ARCP securities were efficient for the following reasons, among others:

(a)    ARCP stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    as a regulated issuer, ARCP filed periodic public reports with the SEC and the NASDAQ;

(c)    ARCP regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    ARCP was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

286.    As a result of the foregoing, the markets for ARCP securities promptly digested current information regarding ARCP from all publicly available sources and reflected such information in the prices of ARCP's securities.  Under these circumstances, all purchasers of ARCP securities during the Class Period suffered similar injury through their purchase of ARCP securities at artificially inflated prices and a presumption of reliance applies.

287.    A class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the Class's claims are grounded on defendants' material omissions.  Because this action involves

defendants' failure to disclose material adverse information regarding ARCP's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**Additional Averments Regarding the February 2014 Notes Offering**

288.    As alleged here, in connection with the offering and sale of the Senior Notes pursuant to the February 2014 Notes Offering, defendants employed devices, schemes and artifices to defraud, and engaged in acts, practices and a course of business, which would and did operate as a fraud and deceit upon certain plaintiffs and other members of the Class.  This scheme included the offering and sale of the Senior Notes based on materially false and misleading information, and without disclosing material facts.

289.    Named plaintiffs and members of the Class need not prove individualized reliance, or may prove reliance through common evidence, when, as here, uniform written representations form the basis of their claims.  Because named plaintiffs can show that uniform and material written representations were communicated to the Class as a whole, a presumption of class-wide reliance is proper.

290.    Defendants' scheme included the dissemination of written offering materials that contained material misrepresentations and omissions.  These misrepresentations and omissions were made to all potential investors, and included: (a) ARCP's false 2012, 2013 and 2014 financial results; (b) misrepresentations about the effectiveness of ARCP's internal controls over financial reporting; and (c) overstated 2014 AFFO guidance.  The alleged misrepresentations and omissions

- 111 -

here were so fundamental to the value of the notes that it is impossible to imagine any market existing for the Senior Notes, or any reasonable investor purchasing them, if the offering materials had revealed their true nature.

291.    As detailed herein, defendants' sale of Senior Notes was completed via fraudulent conduct involving uniform misrepresentations and omissions made to plaintiffs and the other members of the Class.  And, since the material misrepresentations and omissions in connection with the sale of the Senior Notes were perpetrated through uniform Offering Materials, plaintiffs and the other members of the Class are entitled to a presumption of reliance.

### LOSS CAUSATION/ECONOMIC LOSS

292.    During the Class Period, as detailed herein, defendants engaged in a scheme and wrongful course of business that artificially inflated the price of ARCP securities by making false and misleading statements, and omitting material information, about ARCP's operations and financial results.  As defendants' false and misleading statements and omissions became apparent to the market, beginning on October 29, 2014, the price of ARCP securities fell, as the prior artificial inflation came out.  As a result of their acquisitions of ARCP securities during the Class Period, plaintiffs and other members of the Class suffered economic loss.

293.    In direct response to the October 29, 2014 disclosure, ARCP common stock plummeted, trading as low as $7.85 per share on October 29, 2014, on an extremely heavy trading volume.  Before the market closed on October 29, 2014, ARCP held a conference call, which over 1,000 analysts and investors listened to telephonically.  During the call, Kay characterized the fraud as "a one-quarter adjustment," implying that culpability was limited to two Company executives, and emphasizing that ARCP's "controls and processes [had] continued to improve" over the last ten months.  Following Kay's reassurances, the price of ARCP common stock rebounded slightly,

- 112 -

closing at $10 per share on October 29, 2014, a decline of more than 19% from the prior day's closing price, with over 230 million shares traded, 50 times the average daily trading volume during the Class Period.

294.    Analysts reacted negatively to ARCP's October 29, 2014 disclosures.  For example, Wells Fargo Securities noted, "we believe this morning's announcement will be a significant setback for the company in terms of earning or maintaining investor trust, credibility, and allaying investor skepticism."

295.    Credit rating agencies likewise reacted negatively.  On October 29 and October 30, 2014, S&P and Moody's, respectively, placed the corporate debt ratings of ARCP under review for possible downgrade as the markets digested the revelations about ARCP.

296.    The price of ARCP's common stock continued to decline on October 30, 2014, closing at $9.42 per share as the market absorbed the import of the October 29, 2014 announcements and analysts issued reports downgrading and lowering their estimates.  ARCP's common stock price ultimately tumbled to a closing price of $7.85 per share on November 3, 2014, after investors learned that RCAP was terminating its $700 million agreement to purchase Cole Capital from ARCP, citing the October 29, 2014 disclosures as the reason for the termination of the agreement.

297.    As depicted in the below chart, the price of ARCP's debt securities also declined as a result of its October 29, 2014 corrective disclosure, and continued to decline through November 3, 2014, as news of the corrective disclosure penetrated the market.

|  | 2.00% due 2/6/17 | 3.00% due 2/6/19 | 4.60% due 2/6/24 | 3.00% due 8/1/18 | 3.75% due 12/15/20 |
|---|---|---|---|---|---|
| 10/28/2014 | $1,004.65 | $1,007.24 | $1,038.72 | $995.00 | $1,000.55 |
| 10/29/2014 | $986.86 | $976.97 | $965.18 | $942.50 | $957.50 |
| $ Change | -$17.79 | -$30.27 | -$73.54 | -$52.50 | -$43.05 |
| % Change | -1.8% | -3.0% | -7.1% | -5.3% | -4.3% |

- 113 -

298.     ARCP Series F Preferred stock also experienced a substantial decline in price as a result of the corrective disclosures announced on October 29, 2014.  On October 28, 2014, the closing price of ARCP Series F Preferred stock was $23.53 per share; on October 29, 2014, the price of ARCP Series F Preferred stock declined to $22.12 per share on usually heavy trading volume.  As the news of ARCP's corrective disclosures penetrated the market, the price of ARCP Series F Preferred stock continued to decline.  On November 3, 2014, the closing price of ARCP Series F Preferred stock was $20.91 per share.

299.     The declines in the price of ARCP securities pled herein were a direct result of the nature, extent and impact of defendants' prior false and misleading statements and omissions being revealed to investors and the market.  The timing and magnitude of the price declines of ARCP securities negates any inference that the loss suffered by plaintiffs and other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific factors unrelated to defendants' wrongful conduct.

300.     The following charts demonstrate the clear divergence of ARCP's common stock prices from its peer index, and the divergence of the prices of ARCP debt securities from the FINRA-BLP Active Investment Grade U.S. Corporate Bond Index ("NBBIPR"), as the truth became known to the market:



1186483_1



301.    The economic loss suffered by plaintiffs and other members of the Class was a direct result of defendants' wrongful conduct, which inflated the prices of ARCP securities and resulted in the subsequent decline in the value of those securities when defendants' prior false and misleading statements and omissions were revealed.

## CLASS ACTION ALLEGATIONS

302.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class.  The Class is defined as:

All persons or entities who purchased or otherwise acquired ARCP securities, including ARCP common stock, preferred stock and debt securities, as well as those who traded in option contracts on ARCP stock, between September 7, 2011 and October 29, 2014 (the "Class" and the "Class Period"), and who were damaged thereby.

- 116 -

Excluded from the Class are defendants herein, members of the immediate families of each of the defendants, any person, firm, trust, corporation, officer, director, or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

303.   The members of the Class are so numerous that joinder of all members is impracticable.  ARCP securities were extensively traded during the Class Period.  As of March 27, 2015, ARCP had more than 905 million shares of common stock issued and outstanding that were actively traded on the NASDAQ and other exchanges, over 42 million shares of preferred stock, and more than $3.5 billion in face value of outstanding debt.  The precise number of Class members is unknown to plaintiffs at this time but is at least in the thousands.  In addition, the names and addresses of the Class members can be ascertained from the books and records of ARCP or its transfer agent.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

304.   Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

305.   Plaintiffs' claims are typical of the claims of the other members of the Class because plaintiffs' and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants.  Plaintiffs do not have any interests antagonistic to, or in conflict with, the Class.

- 117 -

306.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

307.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants during the Class Period misrepresented and/or omitted material facts about ARCP and its business;

(c)     whether the price of ARCP securities was artificially inflated during the Class Period; and

(d)     the extent of injuries sustained by members of the Class and the appropriate measure of damages.

**COUNT IX - Violation of §10(b) of the 1934 Act**

308.     Plaintiffs incorporate ¶¶1-19, 24-26, 30-31, 132-307 as though fully set forth herein.

- 118 -

309.     This Claim is brought by persons who purchased and/or acquired ARCP common stock, preferred shares and debt as well as transacted in options contracts during the Class Period against defendants ARCP, ARC Properties, Schorsch, Block, Beeson, Kay[12] and McAlister.

310.     During the Class Period, the defendants named herein disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were misleading in that they misrepresented and/or omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

311.     Defendants violated §10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. §240.10b-5, in that they:

> (a)     employed devices, schemes and artifices to defraud;

> (b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

> (c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers and/or acquirers of ARCP common stock, preferred stock and/or debt securities as well as those who transacted in options contracts during the Class Period.

312.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for ARCP securities.  Plaintiffs and the Class would not have purchased and/or acquired ARCP securities at the prices they paid, or at all, if they had

---

[12]    Plaintiffs' claim for §10(b) set forth in Count IX of the Third Amended Complaint is limited with respect to defendant Kay to the alleged false and misleading statements or omissions Kay made on or after February 27, 2014.

- 119 -

been aware that the prices those ARCP securities were trading at or were offered at had been inflated by defendants' misleading statements and/or omissions.

313.    As a direct and proximate cause of defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases and/or acquisition of ARCP securities during the Class Period.

## COUNT X - Violation of §20(a) of the 1934 Act

314.    This claim is brought against defendants ARC Advisors and AR Capital.

315.    Schorsch, Kahane, Weil, Budko and Block operated a series of interrelated companies out of their offices at 405 Park Avenue in New York.  ARCP, ARC Advisors and AR Capital all shared that address.  ARCP paid in excess of $900 million to ARC Advisors and these other entities in a series of related-party transactions, at times without any supporting documentation.

316.    Schorsch, Kahane, Weil, Budko and Block held executive and director positions and/or were beneficial owners at each of these companies and at ARCP, as follows:

| | ARCP | ARC Advisors | RCS Capital (aka RCAP Holdings, LLC) | AR Capital | RCAP |
|---|---|---|---|---|---|
| **Schorsch** | CEO: Dec. 2010 – Oct. 1, 2014; Chairman: Dec. 2010 – Dec. 15, 2014 Beneficial owner | Chairman/CEO: Nov. 2010 – at least Jan. 2014 | CEO/Chairman Beneficial owner | CEO/Chairman: Dec. 2012 – Present Beneficial owner | Chairman: Feb. 2013 – Dec. 2014 Beneficial owner |

- 120 -

|  | **ARCP** | **ARC Advisors** | **RCS Capital (aka RCAP Holdings, LLC)** | **AR Capital** | **RCAP** |
|---|---|---|---|---|---|
| **Kahane** | Director: Dec. 2010 – Mar. 2012; Feb. 2013 – June 24, 2014 Beneficial owner | President/COO: Nov. 2010 – Mar. 2012 | President/COO: Beneficial owner | Beneficial owner | CEO: Feb. 2013 – Sept. 2014; Director: Feb. 2013 – Dec. 2014 Beneficial owner |
| **Weil** | President/Treasurer/ Secretary: Dec. 2010 – Jan. 2014; Director: Mar. 2012 – June 2014 | EVP: Nov. 2010 – at least Jan. 2014 | EVP Beneficial owner | President/COO: Dec. 2012 – Present Beneficial owner | President: Feb. 2013 – Sept. 2014 CEO: Sept. 2014 – Nov. 2015 Director: Feb. 2013 – Present Beneficial owner |
| **Block** | CFO/EVP: Dec. 2010 – Oct. 28, 2014 Beneficial owner | CFO/EVP: Nov. 2010 – at least Jan. 2014 | CFO/EVP Beneficial owner | CFO/EVP: Dec. 2012 – Nov. 2013 Beneficial owner | CFO/EVP/Director: Feb. 2013 – July 2014 Beneficial owner |
| **Budko** | CIO/EVP: Dec. 2010 – 2014 Beneficial owner | CIO/EVP: Nov. 2010 – at least Jan. 2014 | CIO/EVP Beneficial owner | CIO/EVP: Dec. 2012 – Present Beneficial owner | CIO/EVP/Director: Feb. 2013 – Aug. 2015 Beneficial owner |

317.    ARC Advisors and AR Capital possessed the power to control, and did control, directly and/or indirectly, the actions of ARCP during the Class Period.  ARCP did not have any employees at the time of its IPO in September 2011 and continued to have no employees until sometime in 2014.  Instead, ARCP was externally managed by ARC Advisors.  ARC Advisors managed ARCP's activities on a day-to-day basis, provided ARCP with its management team and support personnel and employed ARCP's CEO, President, CIO and other executive officers.  ARC Advisors also supplied the compensation for ARCP's executive officers.  ARCP consistently stated in SEC filings that it was "completely reliant" on ARC Advisors and its parent companies (RCS Capital, LLC until December 27, 2012 and AR Capital, LLC thereafter), which had "the power to direct the activities of [ARCP] through advisory/management agreements."  ARC Advisors, through

- 121 -

this management relationship, controlled the actions of ARCP, thereby reaping over $900 million, with its "affiliates," in fees during the Class Period – fees that ARCP has now acknowledged included transactions for which there is no confirming documentation or otherwise warranted scrutiny.

318.    The two parent entities that owned ARC Advisors – RCS Capital LLC and AR Capital, LLC – trace their origins to 2007, when Schorsch and Kahane founded American Realty Capital II, LLC.  Over the next five years, American Realty Capital II, LLC would change its name no fewer than three times.  American Realty Capital II, LLC amended its name in January 2012 to AR Capital, LLC (***not*** the current defendant entity of the same name) (hereinafter, "Old AR Capital").  It changed its name again in December 2012 to RCS Capital, LLC.  Three short months later, RCS Capital, LLC changed its name yet again for the third time to RCAP Holdings, LLC (RCS Capital, LLC is still currently known as RCAP Holdings).

319.    On December 27, 2012, RCS Capital, LLC (Old AR Capital, LLC) went through a corporate reorganization ("December 2012 Reorganization").  At that time, Schorsch and Kahane created an additional entity and branded it with the recycled name of AR Capital, LLC – the entity sued herein (also referred to herein as "New AR Capital").  As part of this restructuring, Schorsch and Kahane transferred control over the entity that managed and controlled ARCP – ARC Advisors – from RCS Capital, LLC (Old AR Capital) to New AR Capital.  New AR Capital is wholly owned by Schorsch, Kahane, Weil, Budko and Block.  From the December 2012 Reorganization until the end of the Class Period, New AR Capital owned and possessed the power to control, and did control, directly and/or indirectly the actions of ARC Advisors, which continued to be the external manager of ARCP and exerted day-to-day control over ARCP's affairs.

- 122 -

320.    According to ARCP, ARC Advisors and its parent companies (Old AR Capital until the December Reorganization and New AR Capital, LLC thereafter) have "the power to direct the activities of [ARCP] through advisory/management agreements."  The resources of ARC Advisors' parent companies was vital to the implementation and execution of ARCP's business and growth strategies, including the acquisition of ARCP's numerous properties.   After the December Reorganization, New AR Capital possessed the power to control, and did control, ARCP through ARC Advisors.  New AR Capital was wholly-owned by Schorsch, Kahane, Weil, Budko and Block.

321.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

322.    The corporate relationship among the four entities and ARCP is depicted in the following chart:



1186483_1

323.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299).

324.    ARC Advisors and AR Capital exercised control directly and indirectly over the actions of ARCP in connection with its violations of §10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder.  By reason of such conduct, these defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

A.    Declaring this action to be a class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying plaintiffs as Class Representatives and Robbins Geller Rudman & Dowd LLP as Class Counsel;

B.    Awarding compensatory damages in favor of plaintiffs and other members of the Class against all defendants jointly and generally for all damages sustained as a result of defendants' wrongdoing in an amount to be proven at trial, together with interest thereon;

C.    Paragraph removed to conform to the Court's September 8, 2016 Order (Dkt. No. 299);

D.    Awarding plaintiffs and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees, and experts' fees, and other costs and disbursements; and

E.    Awarding plaintiffs and other members of the Class injunctive and other equitable relief, including rescission, as appropriate, in addition to any other relief that is just and proper under the circumstances.

1186483_1

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED:  September 30, 2016

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
MICHAEL J. DOWD
DANIEL S. DROSMAN
DEBRA J. WYMAN
JESSICA T. SHINNEFIELD
ASHLEY M. PRICE
JENNIFER N. CARINGAL
ANGEL P. LAU


s/ DARREN J. ROBBINS
DARREN J. ROBBINS

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
miked@rgrdlaw.com
dand@rgrdlaw.com
debraw@rgrdlaw.com
jshinnefield@rgrdlaw.com
aprice@rgrdlaw.com
jcaringal@rgrdlaw.com
alau@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
MARK T. MILLKEY
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rrothman@rgrdlaw.com
mmillkey@rgrdlaw.com

- 126 -

*Lead Counsel for Lead Plaintiff TIAA-CREF and the Class*

MOTLEY RICE LLC
WILLIAM H. NARWOLD (WN-1713)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  860/822-1681
860/882-1682 (fax)
bnarwold@motleyrice.com

MOTLEY RICE LLC
DONALD A. MIGLIORI (DM-1098)
600 Third Avenue, Suite 2101
New York, NY  10016
Telephone:  401/457-7709
401/457-7708 (fax)
dmigliori@motleyrice.com

*Counsel for Sheet Metal Workers' National Pension Fund, Union Asset Management Holding AG, and KBC Asset Management NV*

LOWEY DANNENBERG COHEN
   & HART, P.C.
BARBARA J. HART
One North Broadway, Suite 509
White Plains, NY  10601
Telephone: 914/997-0500
914/997-0035 (fax)
bhart@lowey.com

*Counsel for Corsair Select 100 L.P., Corsair Select MF Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd.*

COHEN MILSTEIN SELLERS & TOLL PLLC
STEVEN J. TOLL
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com

- 127 -

*Counsel for New York City Employees' Retirement System, the New York City Police Pension Fund, the New York City Police Officers' Variable Supplements Fund, the Board of Education Retirement System of the City of New York, the Teachers' Retirement System of the City of New York and the Teachers' Retirement System of the City of New York Variable A, the New York City Fire Department Pension Fund, the New York City Fire Officers' Variable Supplements Fund and the New York City Fire Fighters' Variable Supplements Fund*

STULL, STULL & BRODY
HOWARD T. LONGMAN
6 East 45th Street
New York, NY  10017
Telephone: 212/687-7230
212/490-2022 (fax)
hlongman@ssbny.com

*Counsel for Noah Bender and IRA FBO John Esposito*

LEVI & KORSINSKY LLP
NICHOLAS I. PORRITT
30 Broad Street
24th Floor
New York, NY  10004
Telephone: 212/363-7500
866/367-6510 (fax)
nporritt@zlk.com

*Counsel for Mitchell and Bonnie Ellis*

WEISSLAW LLP
JOSEPH H. WEISS
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
212/682-3010 (fax)
jweiss@weisslawllp.com

*Counsel for Simon Abadi*

- 128 -

MORGAN & MORGAN, P.C.
PETER SAFIRSTEIN
28 W. 44th St., Suite 2001
New York, NY  10036
Telephone:  212/564-1637
212/564-1807 (fax)
psafirstein@MorganSecuritiesLaw.com

*Counsel for The City of Tampa General Employees
Retirement Fund*

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)
scotth@johnsonandweaver.com

*Counsel for Paul Matten*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

Teachers Insurance and Annuity Association, College Retirement Equities Fund, TIAA-CREF Equity Index Fund, TIAA-CREF Real Estate Securities Fund, TIAA-CREF Life Equity Index Fund, TIAA-CREF Life Real Estate Securities Fund, TIAA-CREF Large Cap Value Index Fund, TIAA-CREF Small Cap Blend Index Fund, TIAA-CREF Bond Index Fund (collectively "TIAA-CREF" or "Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff's transactions in the securities that are the subject of this action are detailed in the attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party in a class action that was filed within the three-year period before the date of this Certification pursuant to the Securities Act of 1933 or the Securities Exchange Act of 1934.

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _____ day of April, 2015.

TIAA-CREF

By: _____
Jonathan Feigelson
Senior Managing Director, General Counsel
and Head of Corporate Governance

AMERICAN REALTY

SCHEDULE A

SECURITIES TRANSACTIONS

College Retirement Equities Fund

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 116,652 | $15.25 |
| 06/28/2013 | 89,600 | $15.25 |
| 06/28/2013 | 45,741 | $15.25 |
| 06/28/2013 | 318,129 | $15.25 |
| 06/28/2013 | 138,142 | $15.25 |
| 07/02/2013 | 4,330 | $14.90 |
| 07/08/2013 | 16,400 | $14.23 |
| 07/09/2013 | 14,500 | $14.36 |
| 07/16/2013 | 16,200 | $14.90 |
| 09/10/2013 | 12,690 | $12.63 |
| 12/27/2013 | 15,410 | $12.77 |
| 2/7/2014^ | 1,780 | $13.99 |
| 2/7/2014^ | 23,754 | $13.99 |
| 2/7/2014^ | 50,102 | $13.99 |
| 2/7/2014^ | 6,120 | $13.99 |
| 02/28/2014 | 244,000 | $14.69 |
| 02/28/2014 | 130,000 | $14.69 |
| 02/28/2014 | 89,810 | $14.69 |
| 02/28/2014 | 711,396 | $14.69 |
| 02/28/2014 | 105,900 | $14.69 |
| 02/28/2014 | 21,793 | $14.69 |
| 03/04/2014 | 43,300 | $14.87 |
| 03/20/2014 | 19,635 | $13.83 |
| 04/30/2014 | 45,072 | $13.08 |
| 05/30/2014 | 67,000 | $12.41 |
| 05/30/2014 | 29,250 | $12.41 |
| 05/30/2014 | 219,280 | $12.41 |
| 05/30/2014 | 25,900 | $12.41 |
| 05/30/2014 | 10,748 | $12.40 |
| 06/05/2014 | 4,010 | $12.44 |
| 06/27/2014 | 258,186 | $12.50 |
| 06/27/2014 | 42,064 | $12.50 |
| 06/27/2014 | 83,202 | $12.50 |
| 06/27/2014 | 49,034 | $12.50 |
| 07/10/2014 | 316,655 | $12.49 |
| 07/10/2014 | 56,900 | $12.45 |
| 07/10/2014 | 488,430 | $12.51 |
| 07/11/2014 | 98,474 | $12.57 |
| 07/11/2014 | 64,100 | $12.57 |
| 07/11/2014 | 217,298 | $12.57 |
| 08/04/2014 | 3,705 | $13.32 |
| 08/11/2014 | 2,346 | $13.02 |
| 08/21/2014 | 12,631 | $13.30 |
| 08/29/2014 | 4,570 | $13.16 |
| 10/13/2014 | 800 | $11.62 |

| | | |
|---|---|---|
| 10/13/2014 | 2,400 | $11.58 |
| 10/13/2014 | 6,490 | $11.59 |
| 10/20/2014 | 2,900 | $12.08 |
| 10/20/2014 | 4,195 | $12.08 |
| 10/29/2014 | 981 | $10.00 |
| 10/29/2014 | 3,058 | $10.00 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 08/02/2013 | 1,262 | $14.10 |
| 08/13/2013 | 2,559 | $13.44 |
| 08/29/2013 | 1,879 | $13.42 |
| 09/04/2013 | 1,535 | $12.87 |
| 11/20/2013 | 3,862 | $12.96 |
| 12/02/2013 | 1,100 | $13.34 |
| 12/03/2013 | 3,735 | $13.30 |
| 12/13/2013 | 8,059 | $12.59 |
| 12/20/2013 | 8,491 | $12.61 |
| 02/20/2014 | 2,500 | $14.11 |
| 06/25/2014 | 6,418 | $12.39 |
| 06/27/2014 | 66,735 | $12.50 |
| 06/27/2014 | 262,900 | $12.50 |
| 06/27/2014 | 164,801 | $12.50 |
| 06/27/2014 | 1,364,040 | $12.50 |
| 07/29/2014 | 5,886 | $13.20 |
| 07/31/2014 | 4,678 | $13.11 |
| 07/31/2014 | 15,397 | $13.13 |
| 07/31/2014 | 8,357 | $13.12 |
| 09/03/2014 | 1,893 | $13.26 |
| 09/03/2014 | 18,223 | $13.29 |
| 09/03/2014 | 439 | $13.26 |
| 09/03/2014 | 4,230 | $13.26 |
| 09/08/2014 | 2,246 | $13.25 |
| 09/10/2014 | 200 | $13.20 |
| 09/16/2014 | 2,414 | $12.64 |
| 09/16/2014 | 11,488 | $12.57 |
| 09/17/2014 | 12,593 | $12.62 |
| 09/18/2014 | 2,505 | $12.44 |
| 09/23/2014 | 1,818 | $12.37 |
| 09/24/2014 | 11,055 | $12.18 |
| 09/25/2014 | 2,998 | $12.09 |
| 09/30/2014 | 5,602 | $12.14 |
| 10/01/2014 | 12,987 | $12.02 |
| 10/08/2014 | 702 | $11.91 |
| 10/08/2014 | 6,325 | $11.90 |
| 10/08/2014 | 4,231 | $11.90 |
| 10/23/2014 | 3,631 | $12.22 |
| 10/24/2014 | 4,059 | $12.35 |
| 10/29/2014 | 981 | $10.00 |
| 10/29/2014 | 1,920 | $8.98 |
| 10/29/2014 | 3,058 | $10.00 |
| 10/29/2014 | 4,039 | $10.00 |
| 10/29/2014 | 14,290 | $9.02 |
| 10/29/2014 | 1,780 | $9.29 |
| 10/29/2014 | 11,706 | $8.03 |

**TIAA Account**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/21/2013 | 214,290 | $14.47 |
| 06/25/2013 | 142,860 | $14.71 |
| 06/28/2013 | 7,027 | $15.25 |
| 07/26/2013 | 37,330 | $14.40 |
| 08/20/2013 | 75,000 | $13.05 |
| 01/21/2014 | 124,600 | $13.99 |
| 01/23/2014 | 23,880 | $14.07 |
| 2/7/2014[A] | 1,244,638 | $13.99 |
| 02/28/2014 | 14,680 | $14.69 |
| 05/30/2014 | 4,325 | $12.41 |
| 06/03/2014 | 340,640 | $12.71 |
| 06/27/2014 | 14,074 | $12.50 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 09/20/2013 | 12,180 | $12.68 |
| 12/20/2013 | 5,970 | $12.61 |
| 01/07/2014 | 6,334 | $12.86 |
| 01/08/2014 | 10,596 | $12.72 |
| 2/11/2014[B] | 1 | $13.78 |
| 03/21/2014 | 14,880 | $14.28 |
| 04/23/2014 | 103,950 | $13.35 |
| 06/20/2014 | 32,460 | $12.59 |
| 07/10/2014 | 3,224 | $12.54 |
| 09/29/2014 | 1,000 | $12.31 |
| 10/16/2014 | 1,500 | $12.01 |

**TIAA CREF Equity Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 57,343 | $15.25 |
| 08/28/2013 | 1,228 | $13.31 |
| 02/28/2014 | 124,400 | $14.69 |
| 04/15/2014 | 6,400 | $13.44 |
| 05/30/2014 | 43,030 | $12.41 |
| 06/27/2014 | 129,138 | $12.50 |

**TIAA CREF Large Cap Value Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/27/2014 | 198,676 | $12.50 |
| 07/02/2014 | 3,359 | $12.62 |
| 07/16/2014 | 6,931 | $12.88 |
| 07/22/2014 | 2,294 | $12.94 |
| 08/04/2014 | 3,339 | $13.32 |
| 08/08/2014 | 2,326 | $12.99 |
| 08/21/2014 | 4,664 | $13.30 |
| 08/22/2014 | 2,256 | $13.19 |
| 09/03/2014 | 439 | $13.26 |
| 09/03/2014 | 1,893 | $13.26 |
| 09/08/2014 | 2,246 | $13.25 |
| 09/16/2014 | 2,414 | $12.64 |
| 10/02/2014 | 2,493 | $11.85 |
| 10/16/2014 | 2,899 | $12.08 |
| 10/17/2014 | 5,042 | $11.92 |
| 10/29/2014 | 4,039 | $10.00 |

**TIAA CREF Small Cap Blend Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 136,920 | $15.25 |
| 07/10/2013 | 3,550 | $14.45 |
| 07/18/2013 | 2,010 | $15.00 |
| 08/06/2013 | 2,320 | $13.72 |
| 10/07/2013 | 3,900 | $12.66 |
| 10/10/2013 | 3,270 | $12.34 |
| 10/18/2013 | 3,800 | $13.29 |
| 12/05/2013 | 4,050 | $12.90 |
| 01/30/2014 | 3,580 | $13.92 |
| 02/28/2014 | 318,370 | $14.69 |
| 03/05/2014 | 8,310 | $14.64 |
| 05/30/2014 | 95,140 | $12.41 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 08/28/2013 | 1,228 | $13.31 |
| 08/28/2013 | 82 | $13.31 |
| 10/11/2013 | 3,300 | $12.42 |
| 12/20/2013 | 2,770 | $12.61 |
| 05/08/2014 | 4,690 | $12.86 |
| 05/13/2014 | 8,140 | $13.39 |
| 06/18/2014 | 8,210 | $12.07 |
| 06/27/2014 | 556,800 | $12.50 |

**TIAA CREF Life Equity Index Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 06/28/2013 | 2,013 | $15.25 |
| 02/28/2014 | 3,843 | $14.69 |
| 03/17/2014 | 970 | $14.27 |
| 06/27/2014 | 5,355 | $12.50 |
| 07/02/2014 | 1,080 | $12.62 |

**TIAA CREF Life Real Estate Securities Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 05/22/2013 | 10,000 | $17.45 |
| 01/24/2014 | 10,000 | $14.02 |
| 2/7/2014[A] | 81,967 | $13.99 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 06/21/2013 | 1,656 | $14.30 |
| 06/21/2013 | 844 | $14.22 |
| 06/21/2013 | 7,500 | $14.14 |
| 02/21/2014 | 11,967 | $14.19 |
| 05/13/2014 | 20,000 | $13.41 |
| 08/20/2014 | 15,000 | $13.09 |

**TIAA Real Estate Securities Fund**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 05/22/2013 | 150,000 | $17.45 |
| 01/24/2014 | 150,000 | $14.02 |
| 2/7/2014[A] | 1,092,900 | $13.99 |

| Date Sold | Type/Amount of Securities Sold | Price |
|---|---|---|
| 06/21/2013 | 24,844 | $14.30 |
| 06/21/2013 | 12,656 | $14.22 |
| 06/21/2013 | 112,500 | $14.14 |
| 02/21/2014 | 142,900 | $14.19 |
| 05/13/2014 | 250,000 | $13.41 |

**TIAA CREF Bond Index Fund**

### Bonds

| Date Acquired | Type of Debt | Face Amount | Price |
|---|---|---|---|
| 2/4/2014[C] | 3.0% due 02/06/2019 | 300,000 | $99.59 |
| 2/4/2014[C] | 4.6% due 02/06/2024 | 200,000 | $99.84 |

[A]Shares exchanged in Cole Merger. Valued at closing price on date of merger.

[B]Delivery of share valued at closing price.

[C]Exchanged for registered notes in connection with an exchange offer announced in September 2014 and declared effective on October 16, 2014.

## PLAINTIFF'S CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned, Marc Le Blanc, on behalf of Sheet Metal Workers' National Pension Fund ("SMWNPF"), declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.    I have reviewed an amended complaint against American Realty Capital Properties, Inc. ("American Realty") and designate Motley Rice LLC as counsel for SMWNPF in this action for all purposes.

2.    I am duly authorized to institute legal action on SMWNPF's behalf, including litigation against American Realty and the other defendants.

3.    SMWNPF did not acquire American Realty securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.    SMWNPF is willing to serve as a representative plaintiff and understands that a representative plaintiff is a party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.   SMWNPF also understands that, as a representative plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.    SMWNPF will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6.    SMWNPF has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification, except as detailed below:

*City of Westland Police and Fire Retirement System v. SAIC, Inc. et al.*, 12-cv-01353-DAB (S.D.N.Y. 2012);

*Construction Workers Pension Trust Fund – Lake County and Vicinity v. Navistar International Corp., et al.*, 13-cv-02111 (N.D. Ill. 2013);

*Bodner v. Aegerion Pharmaceuticals, Inc., et al.*, 14-cv-10105 (D. Mass. 2014);

*In re NII Holdings, Inc. Securities Litigation*, 14-cv-00227 (E.D. Va. 2014); and

*Irving Firemen's Relief and Retirement Fund v. Tesco PLC, et al.*, 14-cv-08495 (S.D.N.Y. 2014).

*Ciraulu v. American Realty Capital Properties, Inc., et al.*, No. 14-cv-08659 (S.D.N.Y. 2014;

7.      SMWNPF understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8.      Attached hereto as Schedule A is a complete listing of all transactions SMWNPF made during the time period in the securities that are the subject of the amended complaint.

**I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.**

Executed this <u>13</u> day of April 2015.

_____
Marc Le Blanc
Fund Administrator
Sheet Metal Workers' National Pension Fund

**Schedule A**

**American Realty Capital Properties, Inc.**
**Class Period: 09/07/11 - 10/29/14**

| Sheet Metal Workers' National Pension Fund | | Date | Shares | Price |
|---|---|---|---|---|
| **(ISIN: US02917T1043)** | | | | |
| | Purchases: | 03/06/13 | 17,600 | $13.8270 |
| | | 03/07/13 | 9,300 | $14.1052 |
| | | 03/08/13 | 3,300 | $14.1501 |
| | | 03/11/13 | 2,100 | $14.1472 |
| | | 03/12/13 | 100 | $14.1000 |
| | | 03/13/13 | 1,700 | $13.9886 |
| | | 03/14/13 | 1,400 | $14.0256 |
| | | 03/15/13 | 900 | $14.0297 |
| | | 03/18/13 | 2,000 | $13.9095 |
| | | 03/19/13 | 500 | $13.8990 |
| | | 05/20/13 | 7,100 | $17.7700 |
| | | 05/21/13 | 1,700 | $17.7130 |
| | | 05/22/13 | 1,900 | $17.7857 |
| | | 05/28/13 | 4,000 | $16.8532 |
| | | 08/02/13 | 5,600 | $14.1033 |
| | | 01/23/14 | | |
| | | (1) | 65,028 | $14.5900 |
| | | 04/11/14 | 8,000 | $13.3586 |
| | | 05/21/14 | 30,100 | $12.0000 |
| | | 05/22/14 | 1,900 | $12.3643 |
| | | 05/23/14 | 1,900 | $12.3937 |
| | | 07/11/14 | 13,800 | $12.5684 |
| | | 10/15/14 | 9,900 | $11.6536 |
| | Sales: | 04/19/13 | 800 | $16.4257 |
| | | 10/30/13 | 3,200 | $13.3984 |
| | | 11/26/13 | 500 | $13.2400 |
| | | 11/26/13 | 3,400 | $13.2762 |
| | | 11/27/13 | 3,100 | $13.2923 |
| | | 11/29/13 | 200 | $13.2062 |
| | | 12/02/13 | 5,700 | $13.3633 |
| | | 12/03/13 | 400 | $13.2735 |
| | | 12/03/13 | 3,400 | $13.3156 |
| | | 12/04/13 | 1,200 | $13.2487 |
| | | 12/05/13 | 1,000 | $12.9581 |
| | | 12/06/13 | 4,500 | $12.8199 |
| | | 12/09/13 | 2,900 | $12.8711 |
| | | 12/10/13 | 3,500 | $12.8376 |

| | | |
|---|---|---|
| 12/11/13 | 2,300 | $12.6005 |
| 12/12/13 | 1,400 | $12.3818 |
| 12/13/13 | 2,500 | $12.5532 |
| 12/13/13 | 3,600 | $12.6279 |
| 12/16/13 | 800 | $12.7451 |
| 12/17/13 | 300 | $12.7817 |
| 12/18/13 | 800 | $12.8197 |
| 12/23/13 | 200 | $12.6524 |
| 12/24/13 | 500 | $12.7037 |
| 01/27/14 | 1,100 | $13.9405 |
| 02/11/14 | 1 | $13.7636 |
| 03/11/14 | 3,300 | $14.4515 |

**(ISIN: US03879QAA22 /**
**US03879QAB05)**

| | | |
|---|---|---|
| Purchases (US03879QAA22): | 09/16/14 | 4,000 | $100.1000 |

| | | |
|---|---|---|
| Exchange US03879QAA22 Notes for<br>US03879QAB05 Notes: | 10/15/14 | 4,000 | $0.0000 |

**(ISIN: US03879QAE44 /**
**US03879QAF19)**

| | | |
|---|---|---|
| Purchases (US03879QAE44): | 05/15/14 | 300 | $102.1500 |
| | 05/15/14 | 200 | $102.1500 |
| | 05/15/14 | 400 | $102.1800 |
| | 05/15/14 | 300 | $102.1500 |
| | 05/21/14 | 300 | $102.5000 |
| | 05/28/14 | 300 | $103.2100 |

| | | |
|---|---|---|
| Exchange US03879QAE44 Notes for<br>US03879QAF19 Notes: | 10/15/14 | 1,800 | $0.0000 |

(1) Shares acquired from the CREI merger with an implied value of $14.59 per share.

### PLAINTIFF'S CERTIFICATION
### PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned, Dr. Joachim von Cornberg and Dr. Fabian Hannich, on behalf of Union Asset Management Holding AG ("Union"), for account of its funds listed in Schedule A (the "Funds"), declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      We have reviewed a complaint against American Realty Capital Properties, Inc. ("American Realty") and designate Motley Rice LLC as counsel for Union in this action for all purposes.

2.      We are duly authorized to institute legal action on behalf of Union and the Funds' behalf, including litigation against American Realty and any other defendants.

3.      Union did not purchase or sell the security that is the subject of this litigation at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.      Union is willing to serve as a representative plaintiff and understands that a representative plaintiff is a party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.  Union also understands that, as a representative plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.      Union will not accept any payment for serving as a representative party beyond its *pro rata* share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the Court.

6.      Union has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification, except as detailed below:

   *Clark v. Barrick Gold Corp., et al.*, No. 13-cv-03851-RPP (S.D.N.Y.);

   *West Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc., et al.*, No. 13-cv-01686 (D. Minn.);

   *Ciraulu v. American Realty Capital Properties, Inc., et al.*, No. 14-cv-08659 (S.D.N.Y. 2014); and

   *Kaltman v. Petróleo Brasileiro S.A. – Petrobras*, No. 14-cv-09662 (S.D.N.Y. 2015).

7.     Union understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8.     Attached hereto as Schedule A is a complete listing of all transactions the Funds made during the Class Period in the security that is the subject of this litigation.  Union will provide records of those transactions upon request.

9.     Union is also represented and counseled in this matter by its attorney, Deborah M. Sturman of Sturman LLC.

**We declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of our knowledge, information and belief.**

Executed this 27ᵗʰ day of April, 2015.

For Union Asset Management Holding AG:

_____
Dr. Joachim von Cornberg
General Counsel

_____
Dr. Fabian Hannich
General Counsel

**Schedule A**

**American Realty Capital Properties, Inc.**

**Period: 09/07/11 - 10/29/14**

| Union Asset Management Holding AG | | Date | Shares | Price |
|---|---|---|---|---|
| **DEVIF-Fonds Nr. 48** | | | | |
| (ISIN: US02917TAA25) | | | | |
| | Purchases: | 10/23/13 | 5,000 | $102.2419 |
| | | 10/29/13 | 5,000 | $102.8343 |
| | | | | |
| **DEVIF-Fonds Nr. 65** | | | | |
| (ISIN: US02917TAA25) | | | | |
| | Purchases: | 10/29/13 | 5,000 | $102.8330 |
| | | 12/09/13 | 5,000 | $100.1580 |
| | | 12/18/13 | 5,000 | $99.9078 |
| | | | | |
| **DEVIF-Fonds Nr. 60** | | | | |
| (ISIN: US02917TAA25) | | | | |
| | Purchases: | 10/23/13 | 10,000 | $102.2282 |
| | | 12/16/13 | 10,000 | $99.2706 |
| | | | | |
| **UIN-Fonds Nr. 560** | | | | |
| (ISIN: US02917TAA25) | | | | |
| | Purchases: | 10/23/13 | 5,000 | $102.2488 |
| | | 12/16/13 | 5,000 | $99.2912 |
| | | | | |
| **UniInstitutional Convertibles Protect** | | | | |
| (ISIN: US02917TAA25) | | | | |
| | Purchases: | 10/31/13 | 15,000 | $101.9636 |
| | | 02/19/14 | 5,000 | $105.5413 |
| | | 03/18/14 | 5,000 | $107.9113 |
| | | 10/02/14 | 20,000 | $99.7095 |
| | | 10/09/14 | 10,000 | $98.7690 |
| | | 10/10/14 | 20,000 | $98.0535 |
| | | 10/28/14 | 20,000 | $99.7595 |

**UniInstitutional Global Convertibles**
(ISIN: US02917TAA25)

| | | | | |
|---|---|---|---|---|
| | Purchases: | 12/06/13 | 10,000 | $100.0205 |
| | | 12/16/13 | 5,000 | $99.2912 |
| | | 02/19/14 | 5,000 | $105.5413 |
| | | 10/02/14 | 10,000 | $99.7189 |
| | | 10/14/14 | 30,000 | $97.8063 |
| | | 10/17/14 | 10,000 | $98.3942 |

**DEVIF-Fonds Nr. 48**
(ISIN: US02917TAB08)

| | | | | |
|---|---|---|---|---|
| | Purchases: | 04/23/14 | 5,000 | $107.4095 |

**DEVIF-Fonds Nr. 60**
(ISIN: US02917TAB08)

| | | | | |
|---|---|---|---|---|
| | Purchases: | 04/23/14 | 10,000 | $107.3957 |
| | | 05/06/14 | 10,000 | $105.7709 |

**UIN-Fonds Nr. 560**
(ISIN: US02917TAB08)

| | | | | |
|---|---|---|---|---|
| | Purchases: | 04/23/14 | 5,000 | $107.4164 |
| | | 05/06/14 | 5,000 | $105.7917 |

**UniInstitutional Convertibles Protect**
(ISIN: US02917TAB08)

| | | | | |
|---|---|---|---|---|
| | Purchases: | 02/20/14 | 10,000 | $109.4599 |
| | | 03/31/14 | 10,000 | $108.5706 |
| | | 10/14/14 | 20,000 | $98.9595 |

**UniInstitutional Global Convertibles**
(ISIN: US02917TAB08)

| | | | | |
|---|---|---|---|---|
| | Purchases: | 02/20/14 | 10,000 | $109.4599 |

## PLAINTIFF'S CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned, Chris Sterckx and Dirk Cuypers, on behalf of KBC Asset Management NV ("KBC"), for account of its funds listed in Schedule A (the "Funds"), declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      We have reviewed a complaint against American Realty Capital Properties, Inc. ("American Realty") and designate Motley Rice LLC as counsel for KBC in this action for all purposes.

2.      We are duly authorized to institute legal action on behalf of KBC and the Funds' behalf, including litigation against American Realty and any other defendants.

3.      KBC did not purchase or sell the security that is the subject of this litigation at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.      KBC is willing to serve as a representative plaintiff and understands that a representative plaintiff is a party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.  KBC also understands that, as a representative plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.      KBC will not accept any payment for serving as a representative party beyond its *pro rata* share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the Court.

6.      KBC has not sought to serve as a lead plaintiff or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification, except as detailed below:

> *City of Westland Police and Fire Retirement System v. SAIC, Inc. et al.*, No. 12-cv-01353 (S.D.N.Y. 2012);

> *Brian Roffe Profit Sharing Plan, et al. v. Facebook, Inc., et al.*, No. 12-cv-04081 (S.D.N.Y. 2012);

> *Florida Carpenters Regional Council Pension Plan v. Eaton Corporation, et al.*, No. 12-cv-02001 (N.D. Ohio 2012);

> *Barnicle v. Mellanox Technologies, Ltd., et al.*, No. 13-cv-00925 (S.D.N.Y. 2013);

> *Bondali v. Yum! Brands, Inc.*, No. 13-cv-00117 (C.D. Cal. 2013);

*Birmingham Retirement and Relief System v. S.A.C. Capital Advisors, LLC, et al.*, No. 13-cv-02459 (S.D.N.Y. 2013);

*Hatamian v. Advanced Micro Devices, Inc., et al.*, No. 14-cv-00226 (N.D. Cal. 2014);

*Bodner v. Aegerion Pharmaceuticals, Inc., et al.*, No. 14-cv-10105 (D. Mass. 2014);

*Pio v. General Motors Company, et al.*, No. 14-cv-11191 (E.D. Mich. 2014);

*Kalika v. Weight Watchers International, Inc., et al.*, No. 14-cv-01997 (S.D.N.Y. 2014);

*City of Hialeah Employees' Retirement System v. Genworth Financial, Inc., et al.*, No. 14-cv-02392 (S.D.N.Y. 2014);

*Henningsen v. The ADT Corporation, et al.*, No. 14-cv-80566 (S.D. Fla. 2014);

*Laborers Pension Trust Fund – Detroit & Vicinity v. Lions Gate Entertainment Corp., et al.*, No. 14-cv-05197 (S.D.N.Y. 2014);

*Aruliah v. Impax Laboratories, Inc., et al.*, No. 14-cv-03673 (N.D. Cal. 2014);

*Ciraulu v. American Realty Capital Properties, Inc., et al.*, No. 14-cv-08659 (S.D.N.Y. 2014;

*St. Lucie County Fire District Firefighters' Pension Trust Fund, et al. v. Bryant, et al.*, No. 14-cv-03428 (S.D. Tex. 2015); and

*Newett v. LeapFrog Enterprises, Inc., et al.*, No. 15-cv-00347 (N.D. Cal. 2015).

7.      KBC understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8.      Attached hereto as Schedule A is a complete listing of all transactions the Funds made during the Class Period in the security that is the subject of this litigation.  KBC will provide records of those transactions upon request.

9.      KBC is also represented and counseled in this matter by its attorney, Deborah M. Sturman of Sturman LLC.

**We declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of our knowledge, information and belief.**

Executed this 22nd day of April, 2015.

For KBC Asset Management NV:

Chris Sterckx
Managing Director

Dirk Cuypers
Managing Director

**Schedule A**

**American Realty Capital Properties, Inc.**
**(ISIN: US02917T1043)**

**Class Period: 9/07/11 – 10/29/14**

| <u>KBC Asset Management NV</u> | | <u>Date</u> | <u>Shares</u> | <u>Price</u> |
|---|---|---|---|---|
| **PLATO INST.I.F. NORTH AMERICAN EQ.** | | | | |
| | Purchases: | 02/18/14 | 36,514 | $14.5900 |
| | | (1) | | |
| | | 06/25/14 | 12,985 | $12.3900 |
| | Sales: | 02/28/14 | 12,039 | $14.6900 |
| **PRIVILEGED PORTFOLIO REAL ESTATE** | | | | |
| | Purchases: | 11/21/13 | 30,214 | $12.9834 |
| | | 02/20/14 | 101,747 | $14.1100 |
| | | 04/30/14 | 7,655 | $13.0900 |
| | | 06/05/14 | 30,812 | $12.4400 |
| | | 06/19/14 | 87,178 | $12.1700 |
| **INDEX FUND - WORLD** | | | | |
| | Purchases: | 06/20/14 | 2,685 | $12.5900 |
| | | 06/30/14 | 3,306 | $12.5300 |
| | | 09/29/14 | 3,595 | $12.3700 |
| **INDEX FUND - UNITED STATES** | | | | |
| | Purchases: | 02/28/14 | 5,182 | $14.6900 |
| | | 08/21/14 | 3,719 | $13.3000 |
| **KBC SELECT IMMO - WORLD PLUS** | | | | |
| | Purchases: | 01/08/14 | 3,226 | $12.6600 |
| | | 01/31/14 | 24,213 | $13.8400 |
| | | 08/01/14 | 1,524 | $13.2000 |
| | | 09/24/14 | 1,568 | $12.1700 |

(1) Shares acquired from the CREI merger with an implied value of $14.59 per share.

## CERTIFICATION

I, Jay Petschek, hereby certify as follows:

1.     I am Managing Member of Corsair Capital Management, L.P., which has legal authority to enter into and execute this Certification on behalf of Corsair Select 100 L.P., Corsair Select Master Fund, Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd. (collectively hereinafter "Corsair").

2.     Corsair has reviewed the proposed amended class action complaint (the "Complaint") to be filed against American Realty Capital Properties ("ARCP") and others, and has discussed the contents of the Complaint with outside counsel.

3.     Corsair did not purchase or acquire the securities of ARCP at the direction of counsel, or in order to participate in any private action under the federal securities laws.

4.     Corsair is willing to serve as a lead plaintiff and representative party on behalf of a class (or classes) of investors who purchased or otherwise acquired ARCP securities during the Class Period, including providing testimony at deposition and trial, if necessary.

5.     Corsair's transactions in ARCP securities during the revised Class Period are identified in the annexed chart.

6.     Corsair has not served nor sought to serve as a lead plaintiff in any class action under the federal securities laws during the last three years.

7.     Corsair will not accept payment for serving as a lead plaintiff beyond its pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

8.     I declare under penalty of perjury that the foregoing is true and correct. Executed this 14 day of April 2015.

By: _____

Title: Managing Member of the General Partner

On Behalf Of: Corsair Select 100 L.P., Corsair Select Master Fund Ltd., Corsair Capital Partners L.P., Corsair Select L.P., Corsair Capital Partners 100 L.P., and Corsair Capital Investors, Ltd.

**Corsair Select 100 LP**

| Date | Transaction Type[1] | Quantity | Price |
|---|---|---|---|
| | | | |
| 9/6/2011 | Holdings | - | |
| 6/14/2013 | Purchase | 361 | $ 14.99 |
| 6/17/2013 | Purchase | 1,804 | $ 14.98 |
| 6/17/2013 | Purchase | 110 | $ 14.87 |
| 6/17/2013 | Purchase | 2,255 | $ 14.96 |
| 6/18/2013 | Purchase | 4,781 | $ 15.03 |
| 6/18/2013 | Purchase | 11,162 | $ 15.25 |
| 6/18/2013 | Purchase | 2,706 | $ 14.98 |
| 6/18/2013 | Purchase | 386 | $ 15.03 |
| 6/18/2013 | Purchase | 1,804 | $ 14.86 |
| 6/18/2013 | Purchase | 3,318 | $ 15.24 |
| 6/21/2013 | Purchase | 1,353 | $ 14.33 |
| 6/27/2013 | Purchase | 451 | $ 15.09 |
| 7/1/2013 | Purchase | 1,650 | $ 14.85 |
| 7/1/2013 | Purchase | 121 | $ 14.76 |
| 7/2/2013 | Purchase | 5,429 | $ 15.05 |
| 7/3/2013 | Purchase | 633 | $ 14.65 |
| 7/9/2013 | Purchase | 362 | $ 14.44 |
| 7/10/2013 | Purchase | 435 | $ 14.49 |
| 7/10/2013 | Purchase | 543 | $ 14.50 |
| 7/11/2013 | Purchase | 618 | $ 14.79 |
| 7/11/2013 | Purchase | 724 | $ 14.78 |
| 7/12/2013 | Purchase | 1,307 | $ 14.73 |
| 7/17/2013 | Purchase | 1,810 | $ 15.16 |
| 10/16/2013 | Purchase | 666 | $ 12.76 |
| 10/23/2013 | Sale | 435 | $ 13.17 |
| 11/1/2013 | Sale | 1,101 | $ 13.27 |
| 12/26/2013 | Sale | 1,053 | $ 12.79 |
| 12/31/2013 | Sale | 1,685 | $ 12.76 |

[1] For each of the Corsair Funds herein, (a) transactions dated February 7, 2014 reflect shares acquired as part of the Cole Merger, which are valued at the closing price on the date of the merger; and (b) transactions dated May 21, 2014 reflect shares purchased on the secondary offering.

1

| 2/7/2014 | Acquisition | 8,538 | $ 13.99 |
|---|---|---|---|
| 2/7/2014 | Acquisition | 1,301 | $ 13.99 |
| 4/1/2014 | Sale | 303 | $ 14.01 |
| 5/1/2014 | Sale | 513 | $ 13.01 |
| 5/5/2014 | Purchase | 1,296 | $ 12.99 |
| 5/5/2014 | Sale | 508 | $ 12.96 |
| 5/21/2014 | Purchase | 8,913 | $ 12.00 |
| 10/1/2014 | Sale | 715 | $ 12.04 |
| 10/29/2014 | Purchase | 3,323 | $ 9.93 |
| 11/10/2014 | Sale | 360 | $ 8.49 |
| 11/11/2014 | Sale | 1,533 | $ 8.54 |
| 11/13/2014 | Sale | 307 | $ 8.84 |
| 11/14/2014 | Sale | 1,533 | $ 8.67 |
| 11/14/2014 | Sale | 1,533 | $ 8.69 |
| 11/14/2014 | Sale | 6,899 | $ 8.66 |
| 11/14/2014 | Sale | 7,666 | $ 8.68 |
| 11/14/2014 | Sale | 6,132 | $ 8.69 |
| 11/14/2014 | Sale | 9,200 | $ 8.68 |
| 11/17/2014 | Sale | 1,533 | $ 8.76 |
| 11/18/2014 | Sale | 7,666 | $ 8.69 |
| 11/19/2014 | Sale | 767 | $ 8.75 |
| 11/20/2014 | Sale | 1,533 | $ 9.10 |
| 11/21/2014 | Sale | 767 | $ 8.99 |
| 11/21/2014 | Sale | 767 | $ 8.98 |
| 11/21/2014 | Sale | 144 | $ 8.98 |
| 11/24/2014 | Sale | 1,150 | $ 9.10 |
| 11/24/2014 | Sale | 767 | $ 9.12 |
| 11/25/2014 | Sale | 3,066 | $ 8.99 |
| 11/25/2014 | Sale | 2,300 | $ 8.97 |
| 11/26/2014 | Sale | 2,682 | $ 9.34 |

**Corsair Select Master Fund, Ltd.**

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 9/6/2011 | Holdings | - | |
| 6/14/2013 | Purchase | 1,904 | $ 14.99 |
| 6/17/2013 | Purchase | 9,520 | $ 14.98 |
| 6/17/2013 | Purchase | 583 | $ 14.87 |
| 6/17/2013 | Purchase | 11,901 | $ 14.96 |
| 6/18/2013 | Purchase | 25,229 | $ 15.03 |
| 6/18/2013 | Purchase | 58,902 | $ 15.25 |
| 6/18/2013 | Purchase | 14,281 | $ 14.98 |
| 6/18/2013 | Purchase | 2,037 | $ 15.03 |
| 6/18/2013 | Purchase | 9,520 | $ 14.86 |
| 6/18/2013 | Purchase | 17,511 | $ 15.24 |
| 6/21/2013 | Purchase | 7,140 | $ 14.33 |
| 6/27/2013 | Purchase | 2,380 | $ 15.09 |
| 7/1/2013 | Purchase | 9,050 | $ 14.85 |
| 7/1/2013 | Purchase | 6,004 | $ 15.26 |
| 7/1/2013 | Purchase | 663 | $ 14.76 |
| 7/2/2013 | Purchase | 29,648 | $ 15.05 |
| 7/3/2013 | Purchase | 3,459 | $ 14.65 |
| 7/9/2013 | Purchase | 1,976 | $ 14.44 |
| 7/10/2013 | Purchase | 2,379 | $ 14.49 |
| 7/10/2013 | Purchase | 2,965 | $ 14.50 |
| 7/11/2013 | Purchase | 3,374 | $ 14.79 |
| 7/11/2013 | Purchase | 3,953 | $ 14.78 |
| 7/12/2013 | Purchase | 7,136 | $ 14.73 |
| 7/17/2013 | Purchase | 9,883 | $ 15.16 |
| 9/3/2013 | Purchase | 7,780 | $ 13.13 |
| 9/18/2013 | Sale | 2,115 | $ 12.53 |
| 10/16/2013 | Purchase | 3,733 | $ 12.76 |
| 10/23/2013 | Sale | 2,435 | $ 13.17 |
| 11/1/2013 | Purchase | 19,820 | $ 13.27 |
| 12/26/2013 | Sale | 6,530 | $ 12.79 |
| 12/31/2013 | Sale | 10,447 | $ 12.76 |
| 2/7/2014 | Acquisition | 52,978 | $ 13.99 |
| 2/7/2014 | Acquisition | 8,068 | $ 13.99 |
| 3/3/2014 | Purchase | 3,749 | $ 14.69 |

3

| 4/1/2014 | Purchase | 4,259 | $ | 14.08 |
|---|---|---|---|---|
| 5/1/2014 | Sale | 3,177 | $ | 13.01 |
| 5/5/2014 | Sale | 3,151 | $ | 12.95 |
| 5/5/2014 | Sale | 1,943 | $ | 12.95 |
| 5/21/2014 | Purchase | 55,129 | $ | 12.00 |
| 10/1/2014 | Sale | 1,753 | $ | 12.04 |
| 10/29/2014 | Purchase | 20,731 | $ | 9.93 |
| 11/10/2014 | Sale | 2,249 | $ | 8.49 |
| 11/11/2014 | Sale | 9,571 | $ | 8.54 |
| 11/13/2014 | Sale | 1,914 | $ | 8.84 |
| 11/14/2014 | Sale | 9,571 | $ | 8.67 |
| 11/14/2014 | Sale | 9,571 | $ | 8.69 |
| 11/14/2014 | Sale | 43,071 | $ | 8.66 |
| 11/14/2014 | Sale | 47,857 | $ | 8.68 |
| 11/14/2014 | Sale | 38,284 | $ | 8.69 |
| 11/14/2014 | Sale | 57,428 | $ | 8.68 |
| 11/17/2014 | Sale | 9,571 | $ | 8.76 |
| 11/18/2014 | Sale | 47,856 | $ | 8.69 |
| 11/19/2014 | Sale | 4,786 | $ | 8.75 |
| 11/20/2014 | Sale | 9,571 | $ | 9.10 |
| 11/21/2014 | Sale | 4,786 | $ | 8.99 |
| 11/21/2014 | Sale | 4,786 | $ | 8.98 |
| 11/21/2014 | Sale | 895 | $ | 8.98 |
| 11/24/2014 | Sale | 7,178 | $ | 9.10 |
| 11/24/2014 | Sale | 4,786 | $ | 9.12 |
| 11/25/2014 | Sale | 19,143 | $ | 8.99 |
| 11/25/2014 | Sale | 14,357 | $ | 8.97 |
| 11/26/2014 | Sale | 16,751 | $ | 9.34 |

**Corsair Capital Partners LP**

| Date | Transaction | Quantity | Price |
|------|-------------|----------|-------|
| 9/6/2011 | Holdings | - | |
| 6/7/2013 | Purchase | 15,585 | $ 15.15 |
| 6/10/2013 | Purchase | 7,793 | $ 14.95 |
| 6/11/2013 | Purchase | 15,585 | $ 14.63 |
| 6/13/2013 | Purchase | 15,585 | $ 14.57 |
| 6/14/2013 | Purchase | 9,166 | $ 14.99 |
| 6/17/2013 | Purchase | 45,828 | $ 14.98 |
| 6/17/2013 | Purchase | 2,805 | $ 14.87 |
| 6/17/2013 | Purchase | 57,285 | $ 14.96 |
| 6/18/2013 | Purchase | 121,445 | $ 15.03 |
| 6/18/2013 | Purchase | 283,541 | $ 15.25 |
| 6/18/2013 | Purchase | 68,742 | $ 14.98 |
| 6/18/2013 | Purchase | 9,807 | $ 15.03 |
| 6/18/2013 | Purchase | 45,828 | $ 14.86 |
| 6/18/2013 | Purchase | 84,294 | $ 15.24 |
| 6/21/2013 | Purchase | 34,371 | $ 14.33 |
| 6/27/2013 | Purchase | 11,457 | $ 15.09 |
| 7/1/2013 | Purchase | 40,000 | $ 14.85 |
| 7/1/2013 | Purchase | 3,073 | $ 14.76 |
| 7/2/2013 | Purchase | 137,355 | $ 15.05 |
| 7/3/2013 | Purchase | 16,025 | $ 14.65 |
| 7/8/2013 | Purchase | 11,762 | $ 14.23 |
| 7/9/2013 | Purchase | 9,157 | $ 14.44 |
| 7/10/2013 | Purchase | 11,020 | $ 14.49 |
| 7/10/2013 | Purchase | 13,735 | $ 14.50 |
| 7/11/2013 | Purchase | 15,631 | $ 14.79 |
| 7/11/2013 | Purchase | 18,314 | $ 14.78 |
| 7/12/2013 | Purchase | 33,059 | $ 14.73 |
| 7/17/2013 | Purchase | 45,785 | $ 15.16 |
| 8/1/2013 | Purchase | 9,472 | $ 14.45 |
| 10/16/2013 | Purchase | 17,216 | $ 12.76 |
| 10/23/2013 | Sale | 11,757 | $ 13.17 |
| 11/1/2013 | Purchase | 3,597 | $ 13.27 |
| 1/14/2014 | Purchase | 15,013 | $ 13.22 |
| 2/7/2014 | Acquisition | 106,126 | $ 13.99 |

5

| 2/7/2014 | Acquisition | 32,594 | $ | 13.99 |
|---|---|---|---|---|
| 3/3/2014 | Purchase | 16,404 | $ | 14.61 |
| 4/1/2014 | Purchase | 25,217 | $ | 14.07 |
| 5/1/2014 | Purchase | 13,767 | $ | 13.04 |
| 5/21/2014 | Purchase | 230,880 | $ | 12.00 |
| 6/2/2014 | Purchase | 21,882 | $ | 12.44 |
| 10/1/2014 | Purchase | 34,590 | $ | 12.06 |
| 10/16/2014 | Purchase | 16,788 | $ | 11.97 |
| 10/21/2014 | Purchase | 62,956 | $ | 12.12 |
| 10/29/2014 | Purchase | 87,732 | $ | 9.93 |
| 11/10/2014 | Sale | 10,877 | $ | 8.49 |
| 11/11/2014 | Sale | 46,271 | $ | 8.54 |
| 11/13/2014 | Sale | 9,254 | $ | 8.84 |
| 11/14/2014 | Sale | 46,271 | $ | 8.67 |
| 11/14/2014 | Sale | 46,271 | $ | 8.69 |
| 11/14/2014 | Sale | 208,217 | $ | 8.66 |
| 11/14/2014 | Sale | 231,352 | $ | 8.68 |
| 11/14/2014 | Sale | 185,085 | $ | 8.69 |
| 11/14/2014 | Sale | 277,623 | $ | 8.68 |
| 11/17/2014 | Sale | 46,271 | $ | 8.76 |
| 11/18/2014 | Sale | 231,352 | $ | 8.69 |
| 11/19/2014 | Sale | 23,135 | $ | 8.75 |
| 11/20/2014 | Sale | 46,270 | $ | 9.10 |
| 11/21/2014 | Sale | 23,135 | $ | 8.99 |
| 11/21/2014 | Sale | 23,135 | $ | 8.98 |
| 11/21/2014 | Sale | 4,327 | $ | 8.98 |
| 11/24/2014 | Sale | 34,703 | $ | 9.10 |
| 11/24/2014 | Sale | 23,135 | $ | 9.12 |
| 11/25/2014 | Sale | 92,545 | $ | 8.99 |
| 11/25/2014 | Sale | 69,408 | $ | 8.97 |
| 11/26/2014 | Sale | 80,977 | $ | 9.34 |

### Corsair Select LP

| Date | Transaction | Quantity | Price |
|------|-------------|----------|-------|
| 9/6/2011 | Holdings | - | |
| 6/14/2013 | Purchase | 5,973 | $  14.99 |
| 6/17/2013 | Purchase | 29,866 | $  14.98 |
| 6/17/2013 | Purchase | 1,828 | $  14.87 |
| 6/17/2013 | Purchase | 37,332 | $  14.96 |
| 6/18/2013 | Purchase | 79,144 | $  15.03 |
| 6/18/2013 | Purchase | 184,779 | $  15.25 |
| 6/18/2013 | Purchase | 44,799 | $  14.98 |
| 6/18/2013 | Purchase | 6,391 | $  15.03 |
| 6/18/2013 | Purchase | 29,866 | $  14.86 |
| 6/18/2013 | Purchase | 54,934 | $  15.24 |
| 6/21/2013 | Purchase | 22,399 | $  14.33 |
| 6/27/2013 | Purchase | 7,467 | $  15.09 |
| 7/1/2013 | Purchase | 27,350 | $  14.85 |
| 7/1/2013 | Purchase | 2,008 | $  14.76 |
| 7/2/2013 | Purchase | 89,755 | $  15.05 |
| 7/3/2013 | Purchase | 10,471 | $  14.65 |
| 7/9/2013 | Purchase | 5,984 | $  14.44 |
| 7/10/2013 | Purchase | 7,201 | $  14.49 |
| 7/10/2013 | Purchase | 8,976 | $  14.50 |
| 7/11/2013 | Purchase | 10,214 | $  14.79 |
| 7/11/2013 | Purchase | 11,967 | $  14.78 |
| 7/12/2013 | Purchase | 21,602 | $  14.73 |
| 7/17/2013 | Purchase | 29,918 | $  15.16 |
| 10/16/2013 | Purchase | 11,064 | $  12.76 |
| 10/23/2013 | Sale | 7,199 | $  13.17 |
| 11/1/2013 | Sale | 18,719 | $  13.27 |
| 12/26/2013 | Sale | 17,417 | $  12.79 |
| 12/31/2013 | Sale | 27,868 | $  12.76 |
| 2/7/2014 | Acquisition | 141,566 | $  13.99 |
| 2/7/2014 | Acquisition | 21,544 | $  13.99 |
| 3/3/2014 | Sale | 3,749 | $  14.69 |
| 4/1/2014 | Purchase | 9,413 | $  14.07 |
| 5/1/2014 | Sale | 8,389 | $  13.01 |
| 5/5/2014 | Sale | 8,305 | $  12.94 |

7

| 5/21/2014 | Purchase | 145,292 | $ | 12.00 |
|-----------|----------|---------|---|-------|
| 10/1/2014 | Sale | 8,774 | $ | 12.04 |
| 10/29/2014 | Purchase | 54,397 | $ | 9.93 |
| 11/10/2014 | Sale | 5,902 | $ | 8.49 |
| 11/11/2014 | Sale | 25,115 | $ | 8.54 |
| 11/13/2014 | Sale | 5,023 | $ | 8.84 |
| 11/14/2014 | Sale | 25,115 | $ | 8.67 |
| 11/14/2014 | Sale | 25,115 | $ | 8.69 |
| 11/14/2014 | Sale | 113,017 | $ | 8.66 |
| 11/14/2014 | Sale | 125,575 | $ | 8.68 |
| 11/14/2014 | Sale | 100,460 | $ | 8.69 |
| 11/14/2014 | Sale | 150,689 | $ | 8.68 |
| 11/17/2014 | Sale | 25,115 | $ | 8.76 |
| 11/18/2014 | Sale | 125,575 | $ | 8.69 |
| 11/19/2014 | Sale | 12,557 | $ | 8.75 |
| 11/20/2014 | Sale | 25,115 | $ | 9.10 |
| 11/21/2014 | Sale | 12,557 | $ | 8.99 |
| 11/21/2014 | Sale | 12,557 | $ | 8.98 |
| 11/21/2014 | Sale | 2,349 | $ | 8.98 |
| 11/24/2014 | Sale | 18,836 | $ | 9.10 |
| 11/24/2014 | Sale | 12,557 | $ | 9.12 |
| 11/25/2014 | Sale | 50,224 | $ | 8.99 |
| 11/25/2014 | Sale | 37,668 | $ | 8.97 |
| 11/26/2014 | Sale | 43,946 | $ | 9.34 |

**Corsair Capital Partners 100 LP**

| Date | Transaction | Quantity | Price |
|---|---|---|---|
| 9/6/2011 | Holdings | - | |
| 6/7/2013 | Purchase | 1,149 | $ 15.15 |
| 6/10/2013 | Purchase | 574 | $ 14.95 |
| 6/11/2013 | Purchase | 1,149 | $ 14.63 |
| 6/13/2013 | Purchase | 1,149 | $ 14.57 |
| 6/14/2013 | Purchase | 675 | $ 14.99 |
| 6/17/2013 | Purchase | 3,377 | $ 14.98 |
| 6/17/2013 | Purchase | 207 | $ 14.87 |
| 6/17/2013 | Purchase | 4,221 | $ 14.96 |
| 6/18/2013 | Purchase | 8,949 | $ 15.03 |
| 6/18/2013 | Purchase | 20,892 | $ 15.25 |
| 6/18/2013 | Purchase | 5,065 | $ 14.98 |
| 6/18/2013 | Purchase | 723 | $ 15.03 |
| 6/18/2013 | Purchase | 3,377 | $ 14.86 |
| 6/18/2013 | Purchase | 6,211 | $ 15.24 |
| 6/21/2013 | Purchase | 2,533 | $ 14.33 |
| 6/27/2013 | Purchase | 844 | $ 15.09 |
| 7/1/2013 | Purchase | 2,950 | $ 14.85 |
| 7/1/2013 | Purchase | 226 | $ 14.76 |
| 7/2/2013 | Purchase | 10,078 | $ 15.05 |
| 7/3/2013 | Purchase | 1,176 | $ 14.65 |
| 7/8/2013 | Purchase | 863 | $ 14.23 |
| 7/9/2013 | Purchase | 672 | $ 14.44 |
| 7/10/2013 | Purchase | 808 | $ 14.49 |
| 7/10/2013 | Purchase | 1,008 | $ 14.50 |
| 7/11/2013 | Purchase | 1,147 | $ 14.79 |
| 7/11/2013 | Purchase | 1,344 | $ 14.78 |
| 7/12/2013 | Purchase | 2,426 | $ 14.73 |
| 7/17/2013 | Purchase | 3,359 | $ 15.16 |
| 10/16/2013 | Purchase | 1,252 | $ 12.76 |
| 10/23/2013 | Sale | 858 | $ 13.17 |
| 1/14/2014 | Sale | 5,467 | $ 13.17 |
| 1/14/2014 | Purchase | 1,015 | $ 13.22 |
| 2/7/2014 | Acquisition | 7,243 | $ 13.99 |
| 2/7/2014 | Acquisition | 2,204 | $ 13.99 |

9

| 3/3/2014 | Sale | 3,523 | $ | 14.59 |
|---|---|---|---|---|
| 4/1/2014 | Sale | 1,833 | $ | 14.02 |
| 5/1/2014 | Sale | 164 | $ | 13.01 |
| 5/21/2014 | Purchase | 14,234 | $ | 12.00 |
| 6/2/2014 | Sale | 1,285 | $ | 12.40 |
| 8/4/2014 | Sale | 1,035 | $ | 13.19 |
| 10/1/2014 | Purchase | 2,060 | $ | 12.06 |
| 10/16/2014 | Purchase | 995 | $ | 11.97 |
| 10/21/2014 | Purchase | 3,731 | $ | 12.12 |
| 10/29/2014 | Purchase | 5,199 | $ | 9.93 |
| 11/10/2014 | Sale | 645 | $ | 8.49 |
| 11/11/2014 | Sale | 2,750 | $ | 8.54 |
| 11/13/2014 | Sale | 550 | $ | 8.84 |
| 11/14/2014 | Sale | 2,750 | $ | 8.67 |
| 11/14/2014 | Sale | 2,750 | $ | 8.69 |
| 11/14/2014 | Sale | 12,374 | $ | 8.66 |
| 11/14/2014 | Sale | 13,748 | $ | 8.68 |
| 11/14/2014 | Sale | 10,998 | $ | 8.69 |
| 11/14/2014 | Sale | 16,498 | $ | 8.68 |
| 11/17/2014 | Sale | 2,750 | $ | 8.76 |
| 11/18/2014 | Sale | 13,749 | $ | 8.69 |
| 11/19/2014 | Sale | 1,375 | $ | 8.75 |
| 11/20/2014 | Sale | 2,750 | $ | 9.10 |
| 11/21/2014 | Sale | 1,375 | $ | 8.99 |
| 11/21/2014 | Sale | 1,375 | $ | 8.98 |
| 11/21/2014 | Sale | 257 | $ | 8.98 |
| 11/24/2014 | Sale | 2,062 | $ | 9.10 |
| 11/24/2014 | Sale | 1,375 | $ | 9.12 |
| 11/25/2014 | Sale | 5,500 | $ | 8.99 |
| 11/25/2014 | Sale | 4,125 | $ | 8.97 |
| 11/26/2014 | Sale | 4,812 | $ | 9.34 |

**Corsair Capital Investors Ltd.**

| Date | Transaction | Quantity | Price |
|------|-------------|----------|-------|
| 9/6/2011 | Holdings | - | |
| 6/7/2013 | Purchase | 3,266 | $  15.15 |
| 6/10/2013 | Purchase | 1,633 | $  14.95 |
| 6/11/2013 | Purchase | 3,266 | $  14.63 |
| 6/13/2013 | Purchase | 3,266 | $  14.57 |
| 6/14/2013 | Purchase | 1,921 | $  14.99 |
| 6/17/2013 | Purchase | 9,605 | $  14.98 |
| 6/17/2013 | Purchase | 588 | $  14.87 |
| 6/17/2013 | Purchase | 12,006 | $  14.96 |
| 6/18/2013 | Purchase | 25,452 | $  15.03 |
| 6/18/2013 | Purchase | 59,424 | $  15.25 |
| 6/18/2013 | Purchase | 14,407 | $  14.98 |
| 6/18/2013 | Purchase | 2,056 | $  15.03 |
| 6/18/2013 | Purchase | 9,605 | $  14.86 |
| 6/18/2013 | Purchase | 17,667 | $  15.24 |
| 6/21/2013 | Purchase | 7,204 | $  14.33 |
| 6/27/2013 | Purchase | 2,401 | $  15.09 |
| 7/1/2013 | Purchase | 8,000 | $  14.85 |
| 7/1/2013 | Purchase | 620 | $  14.76 |
| 7/1/2013 | Sale | 6,004 | $  15.26 |
| 7/2/2013 | Purchase | 27,735 | $  15.05 |
| 7/3/2013 | Purchase | 3,236 | $  14.65 |
| 7/8/2013 | Purchase | 2,375 | $  14.23 |
| 7/9/2013 | Purchase | 1,849 | $  14.44 |
| 7/10/2013 | Purchase | 2,225 | $  14.49 |
| 7/10/2013 | Purchase | 2,773 | $  14.50 |
| 7/11/2013 | Purchase | 3,156 | $  14.79 |
| 7/11/2013 | Purchase | 3,698 | $  14.78 |
| 7/12/2013 | Purchase | 6,675 | $  14.73 |
| 7/17/2013 | Purchase | 9,245 | $  15.16 |
| 8/1/2013 | Sale | 9,472 | $  14.45 |
| 8/5/2013 | Purchase | 4,954 | $  14.08 |
| 9/3/2013 | Purchase | 8,087 | $  13.13 |
| 9/18/2013 | Purchase | 1,092 | $  12.55 |
| 10/1/2013 | Sale | 8,915 | $  12.49 |

11

| Date | Type | Quantity | Price |
|---|---|---|---|
| 10/16/2013 | Purchase | 3,355 | $ 12.76 |
| 10/23/2013 | Sale | 2,316 | $ 13.17 |
| 11/1/2013 | Sale | 3,597 | $ 13.27 |
| 12/2/2013 | Purchase | 964 | $ 13.37 |
| 12/31/2013 | Sale | 17,495 | $ 12.74 |
| 12/31/2013 | Sale | 1,500 | $ 12.86 |
| 1/14/2014 | Purchase | 2,661 | $ 13.22 |
| 1/31/2014 | Purchase | 2,470 | $ 13.88 |
| 2/3/2014 | Purchase | 2,077 | $ 13.58 |
| 2/7/2014 | Acquisition | 18,929 | $ 13.99 |
| 2/7/2014 | Acquisition | 5,774 | $ 13.99 |
| 3/3/2014 | Purchase | 8,727 | $ 14.61 |
| 4/1/2014 | Purchase | 18,963 | $ 14.08 |
| 5/1/2014 | Purchase | 4,493 | $ 13.04 |
| 5/21/2014 | Purchase | 45,552 | $ 12.00 |
| 6/2/2014 | Sale | 841 | $ 12.40 |
| 7/1/2014 | Sale | 5,551 | $ 12.59 |
| 9/16/2014 | Sale | 8,687 | $ 12.58 |
| 9/17/2014 | Sale | 8,687 | $ 12.60 |
| 9/30/2014 | Sale | 81,036 | $ 12.22 |
| 10/1/2014 | Purchase | 6,619 | $ 12.06 |
| 10/16/2014 | Purchase | 2,217 | $ 11.97 |
| 10/21/2014 | Purchase | 8,313 | $ 12.12 |
| 10/29/2014 | Purchase | 11,584 | $ 9.93 |
| 11/10/2014 | Sale | 1,444 | $ 8.49 |
| 11/11/2014 | Sale | 6,150 | $ 8.54 |
| 11/13/2014 | Sale | 1,230 | $ 8.84 |
| 11/14/2014 | Sale | 6,150 | $ 8.67 |
| 11/14/2014 | Sale | 6,150 | $ 8.69 |
| 11/14/2014 | Sale | 27,675 | $ 8.66 |
| 11/14/2014 | Sale | 30,750 | $ 8.68 |
| 11/14/2014 | Sale | 24,600 | $ 8.69 |
| 11/14/2014 | Sale | 36,900 | $ 8.68 |
| 11/17/2014 | Sale | 6,150 | $ 8.76 |
| 11/18/2014 | Sale | 30,750 | $ 8.69 |
| 11/19/2014 | Sale | 3,075 | $ 8.75 |
| 11/20/2014 | Sale | 6,150 | $ 9.10 |

| 11/21/2014 | Sale | 3,075 | $ | 8.99 |
|---|---|---|---|---|
| 11/21/2014 | Sale | 3,075 | $ | 8.98 |
| 11/21/2014 | Sale | 575 | $ | 8.98 |
| 11/24/2014 | Sale | 4,613 | $ | 9.10 |
| 11/24/2014 | Sale | 3,075 | $ | 9.12 |
| 11/25/2014 | Sale | 12,300 | $ | 8.99 |
| 11/25/2014 | Sale | 9,226 | $ | 8.97 |
| 11/26/2014 | Sale | 10,763 | $ | 9.34 |

**CERTIFICATION PURSUANT TO**
**FEDERAL SECURITIES LAWS**

I, Kathryn Diaz, on behalf of the Teachers' Retirement System of the City of New York ("TRS") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller. I have reviewed a complaint filed in this matter. TRS has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      TRS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      TRS is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      TRS' transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There is one other federal securities action filed during the three years prior to the date of this certification, in which TRS has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.      TRS will not accept any payment for serving as a representative party on behalf of the class beyond TRS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.


_____
Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**The Teachers' Retirement System of the City of New York**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Shares | Share Price | |
| 02917T104 | 5/7/2013 | Purchase | 5,505 | $ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 5,505 | $ | 15.950 |
| 02917T104 | 6/28/2013 | Purchase | 4,654 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 68,333 | $ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 71,100 | $ | 15.250 |
| 02917T104 | 7/19/2013 | Purchase | 128 | $ | 14.760 |
| 02917T104 | 8/30/2013 | Purchase | 584 | $ | 13.410 |
| 02917T104 | 9/30/2013 | Purchase | 981 | $ | 12.190 |
| 02917T104 | 10/31/2013 | Purchase | 460 | $ | 13.270 |
| 02917T104 | 10/31/2013 | Purchase | 944 | $ | 13.270 |
| 02917T104 | 11/5/2013 | Sale | 2,083 | $ | 13.150 |
| 02917T104 | 11/5/2013 | Sale | 13,298 | $ | 13.150 |
| 02917T104 | 12/20/2013 | Purchase | 57 | $ | 12.605 |
| 02917T104 | 12/20/2013 | Purchase | 1,103 | $ | 12.610 |
| 02917T104 | 1/22/2014 | Purchase | 2,189.08 | $ | 13.950 |
| 02917T104 | 1/31/2014 | Purchase | 103 | $ | 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 377 | $ | 13.840 |
| 02917T104 | 1/31/2014 | Purchase | 426 | $ | 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 1,560 | $ | 13.840 |
| 02917T104 | 2/19/2014 | Sale | 0.08 | $ | 13.924 |
| 02917T104 | 2/28/2014 | Purchase | 19,227 | $ | 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 98,630 | $ | 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 136,900 | $ | 14.687 |
| 02917T104 | 3/26/2014 | Sale | 10,249 | $ | 13.915 |
| 02917T104 | 3/27/2014 | Sale | 360 | $ | 13.800 |
| 02917T104 | 3/31/2014 | Sale | 479 | $ | 14.020 |
| 02917T104 | 4/30/2014 | Purchase | 300 | $ | 13.082 |
| 02917T104 | 4/30/2014 | Purchase | 397 | $ | 13.082 |
| 02917T104 | 5/21/2014 | Purchase | 2,400 | $ | 12.300 |
| 02917T104 | 5/21/2014 | Purchase | 16,620 | $ | 12.351 |
| 02917T104 | 5/21/2014 | Purchase | 38,790 | $ | 12.228 |
| 02917T104 | 5/21/2014 | Purchase | 55,910 | $ | 12.297 |
| 02917T104 | 5/21/2014 | Purchase (Offering) | 67,930 | $ | 12.000 |
| 02917T104 | 5/22/2014 | Sale | 22,600 | $ | 12.382 |
| 02917T104 | 5/22/2014 | Sale | 45,330 | $ | 12.301 |
| 02917T104 | 5/30/2014 | Purchase | 24 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 357 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 900 | $ | 12.407 |
| 02917T104 | 5/30/2014 | Purchase | 1,935 | $ | 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 28,872 | $ | 12.400 |
| 02917T104 | 5/30/2014 | Sale | 113,720 | $ | 12.262 |
| 02917T104 | 6/27/2014 | Purchase | 189,500 | $ | 12.498 |
| 02917T104 | 6/27/2014 | Purchase | 441,937 | $ | 12.500 |

## The Teachers' Retirement System of the City of New York
### Schedule of Transactions

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|-------|-----------|------------------|--------|-------------|
| 02917T104 | 6/27/2014 | Sale | 9,702 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 12,994 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 77,066 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 103,221 | $ 12.500 |
| 02917T104 | 7/29/2014 | Sale | 29,425 | $ 13.230 |
| 02917T104 | 10/22/2014 | Sale | 56,300 | $ 12.070 |

| Fixed Income | | | | |
|-------|-----------|------------------|--------|-------------|
| CUSIP | Trade Date | Transaction Type | Units | Unit Price |
| 02917TAA2 | 7/24/2013 | Purchase | 68,000 | 0.9942 |
| 02917TAA2 | 7/24/2013 | Purchase | 262,000 | 0.9948 |
| 02917TAA2 | 7/25/2013 | Purchase | 90,000 | 0.9926 |
| 02917TAA2 | 7/25/2013 | Purchase | 240,000 | 0.9926 |
| 02917TAA2 | 10/28/2014 | Purchase | 450,000 | 0.9988 |
| 03879QAA2 | 2/4/2014 | Purchase | 3,830,000 | 0.9997 |
| 03879QAA2 | 2/4/2014 | Sale | 2,685,000 | 1.0007 |
| 03879QAA2 | 2/5/2014 | Sale | 1,145,000 | 1.0020 |
| 03879QAA2 | 6/5/2014 | Purchase | 2,625,000 | 1.0065 |
| 03879QAA2 | 6/27/2014 | Purchase | 1,790,000 | 1.0040 |
| 03879QAA2 | 10/16/2014 | Sale | 4,415,000 | 1.0054 |
| 03879QAB0 | 10/16/2014 | Purchase | 4,415,000 | 1.0054 |
| 03879QAE4 | 4/3/2014 | Purchase | 620,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 1,577,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 2,197,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 2,197,000 | 1.0058 |

**CERTIFICATION PURSUANT TO**
**FEDERAL SECURITIES LAWS**

I, Kathryn Diaz, on behalf of the New York City Employees' Retirement System ("NYCERS") hereby certify, as to the claims asserted under the federal securities laws, that:

1.    I am General Counsel at the New York City Office of the Comptroller. I have reviewed a complaint filed in this matter. NYCERS has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.    NYCERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.    NYCERS is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    NYCERS' transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.    There is one other federal securities action filed during the three years prior to the date of this certification, in which NYCERS has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.    NYCERS will not accept any payment for serving as a representative party on behalf of the class beyond NYCERS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

_____
Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## New York City Employees' Retirement System
### Schedule of Transactions

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 5/7/2013 | Purchase | 3,774 | $ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 3,774 | $ | 15.950 |
| 02917T104 | 6/20/2013 | Purchase | 16,100 | $ | 14.210 |
| 02917T104 | 6/21/2013 | Purchase | 24,600 | $ | 14.200 |
| 02917T104 | 6/24/2013 | Purchase | 24,070 | $ | 14.250 |
| 02917T104 | 6/24/2013 | Purchase | 30,239 | $ | 14.270 |
| 02917T104 | 6/28/2013 | Purchase | 1,139 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 2,389 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 16,731 | $ | 15.240 |
| 02917T104 | 6/28/2013 | Purchase | 17,700 | $ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 35,072 | $ | 15.250 |
| 02917T104 | 7/5/2013 | Purchase | 6,048 | $ | 14.200 |
| 02917T104 | 7/5/2013 | Purchase | 18,143 | $ | 14.220 |
| 02917T104 | 7/10/2013 | Purchase | 9,061 | $ | 14.470 |
| 02917T104 | 7/10/2013 | Purchase | 11,839 | $ | 14.450 |
| 02917T104 | 7/24/2013 | Purchase | 1,453 | $ | 14.510 |
| 02917T104 | 7/24/2013 | Purchase | 2,838 | $ | 14.550 |
| 02917T104 | 7/24/2013 | Purchase | 6,909 | $ | 14.520 |
| 02917T104 | 7/26/2013 | Purchase | 9,057 | $ | 14.670 |
| 02917T104 | 7/26/2013 | Purchase | 10,143 | $ | 14.650 |
| 02917T104 | 7/30/2013 | Purchase | 1,600 | $ | 14.860 |
| 02917T104 | 7/31/2013 | Purchase | 3,789 | $ | 14.610 |
| 02917T104 | 7/31/2013 | Purchase | 8,411 | $ | 14.630 |
| 02917T104 | 8/1/2013 | Purchase | 1,933 | $ | 14.170 |
| 02917T104 | 8/1/2013 | Purchase | 4,567 | $ | 14.200 |
| 02917T104 | 8/30/2013 | Purchase | 238 | $ | 13.410 |
| 02917T104 | 10/16/2013 | Sale | 6,974 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 297 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 383 | $ | 13.280 |
| 02917T104 | 11/26/2013 | Sale | 2,757 | $ | 13.280 |
| 02917T104 | 12/20/2013 | Sale | 201 | $ | 12.610 |
| 02917T104 | 12/20/2013 | Sale | 406 | $ | 12.610 |
| 02917T104 | 1/7/2014 | Sale | 1,606 | $ | 12.876 |
| 02917T104 | 1/7/2014 | Sale | 3,211 | $ | 12.870 |
| 02917T104 | 1/7/2014 | Sale | 6,159 | $ | 12.860 |
| 02917T104 | 1/7/2014 | Sale | 11,824 | $ | 12.864 |
| 02917T104 | 1/8/2014 | Sale | 1,711 | $ | 12.699 |
| 02917T104 | 1/8/2014 | Sale | 4,667 | $ | 12.707 |
| 02917T104 | 1/8/2014 | Sale | 6,339 | $ | 12.712 |
| 02917T104 | 1/8/2014 | Sale | 27,383 | $ | 12.690 |
| 02917T104 | 1/9/2014 | Sale | 21,000 | $ | 12.646 |
| 02917T104 | 1/10/2014 | Sale | 796 | $ | 12.715 |
| 02917T104 | 1/10/2014 | Sale | 3,995 | $ | 12.720 |

**New York City Employees' Retirement System**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|-------|-----------|------------------|--------|-------------|
| 02917T104 | 1/10/2014 | Sale | 5,718 | $ 12.819 |
| 02917T104 | 1/10/2014 | Sale | 7,750 | $ 12.985 |
| 02917T104 | 1/10/2014 | Sale | 15,882 | $ 12.798 |
| 02917T104 | 1/10/2014 | Sale | 15,900 | $ 12.971 |
| 02917T104 | 1/10/2014 | Sale | 17,109 | $ 12.711 |
| 02917T104 | 1/10/2014 | Sale | 39,750 | $ 12.970 |
| 02917T104 | 1/22/2014 | Purchase | 1,092.9 | $ 13.950 |
| 02917T104 | 1/28/2014 | Sale | 7,200 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 30 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 112 | $ 13.840 |
| 02917T104 | 1/31/2014 | Purchase | 466 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 1,709 | $ 13.840 |
| 02917T104 | 2/14/2014 | Purchase | 600 | $ 13.868 |
| 02917T104 | 2/19/2014 | Sale | 0.9 | $ 13.933 |
| 02917T104 | 2/28/2014 | Purchase | 13,942 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 25,900 | $ 14.769 |
| 02917T104 | 2/28/2014 | Purchase | 72,831 | $ 14.686 |
| 02917T104 | 3/26/2014 | Sale | 47,340 | $ 13.915 |
| 02917T104 | 3/27/2014 | Sale | 293 | $ 13.800 |
| 02917T104 | 3/31/2014 | Sale | 188 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 496 | $ 14.020 |
| 02917T104 | 4/30/2014 | Purchase | 314 | $ 13.082 |
| 02917T104 | 5/30/2014 | Purchase | 25 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 145 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 2,045 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 11,853 | $ 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 39,900 | $ 12.498 |
| 02917T104 | 6/27/2014 | Purchase | 228,540 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 10,573 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 14,161 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 32,048 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 42,924 | $ 12.500 |
| 02917T104 | 7/17/2014 | Purchase | 300 | $ 12.890 |

**New York City Employees' Retirement System**
**Schedule of Transactions**

| Fixed Income | | | | |
|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Units** | **Unit Price** |
| 03879QAA2 | 2/4/2014 | Purchase | 6,005,000 | 0.9997 |
| 03879QAA2 | 2/4/2014 | Sale | 4,200,000 | 1.0007 |
| 03879QAA2 | 2/5/2014 | Sale | 1,805,000 | 1.0020 |
| 03879QAA2 | 6/5/2014 | Purchase | 3,975,000 | 1.0065 |
| 03879QAA2 | 6/27/2014 | Purchase | 2,710,000 | 1.0040 |
| 03879QAA2 | 10/16/2014 | Sale | 6,685,000 | 1.0054 |
| 03879QAB0 | 10/16/2014 | Purchase | 6,685,000 | 1.0054 |
| 03879QAE4 | 4/3/2014 | Purchase | 310,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 810,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 1,120,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 1,120,000 | 1.0058 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Police Pension Fund ("Police") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller. I have reviewed a complaint filed in this matter. Police has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      Police did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      Police is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Police's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There is one other federal securities action filed during the three years prior to the date of this certification, in which Police has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.      Police will not accept any payment for serving as a representative party on behalf of the class beyond Police's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 7th day of April, 2015.

_____
Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**The New York City Police Pension Fund**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| CUSIP | Trade Date | Transaction Type | Shares | \$ | Share Price |
| 02917T104 | 5/7/2013 | Purchase | 2,099 | \$ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 2,099 | \$ | 15.950 |
| 02917T104 | 6/20/2013 | Purchase | 6,100 | \$ | 14.210 |
| 02917T104 | 6/21/2013 | Purchase | 9,300 | \$ | 14.200 |
| 02917T104 | 6/24/2013 | Purchase | 9,107 | \$ | 14.250 |
| 02917T104 | 6/24/2013 | Purchase | 11,440 | \$ | 14.270 |
| 02917T104 | 6/28/2013 | Purchase | 2,621 | \$ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 27,700 | \$ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 38,488 | \$ | 15.250 |
| 02917T104 | 7/5/2013 | Purchase | 2,288 | \$ | 14.200 |
| 02917T104 | 7/5/2013 | Purchase | 6,865 | \$ | 14.220 |
| 02917T104 | 7/10/2013 | Purchase | 3,425 | \$ | 14.470 |
| 02917T104 | 7/10/2013 | Purchase | 4,475 | \$ | 14.450 |
| 02917T104 | 7/19/2013 | Purchase | 69 | \$ | 14.760 |
| 02917T104 | 7/24/2013 | Purchase | 545 | \$ | 14.510 |
| 02917T104 | 7/24/2013 | Purchase | 1,064 | \$ | 14.550 |
| 02917T104 | 7/24/2013 | Purchase | 2,591 | \$ | 14.520 |
| 02917T104 | 7/26/2013 | Purchase | 3,443 | \$ | 14.670 |
| 02917T104 | 7/26/2013 | Purchase | 3,857 | \$ | 14.650 |
| 02917T104 | 7/30/2013 | Purchase | 600 | \$ | 14.860 |
| 02917T104 | 7/31/2013 | Purchase | 1,429 | \$ | 14.610 |
| 02917T104 | 7/31/2013 | Purchase | 3,171 | \$ | 14.630 |
| 02917T104 | 8/1/2013 | Purchase | 743 | \$ | 14.170 |
| 02917T104 | 8/1/2013 | Purchase | 1,757 | \$ | 14.200 |
| 02917T104 | 8/30/2013 | Purchase | 266 | \$ | 13.410 |
| 02917T104 | 9/20/2013 | Purchase | 30,300 | \$ | 12.677 |
| 02917T104 | 10/16/2013 | Sale | 1,626 | \$ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 473 | \$ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 1,503 | \$ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 925 | \$ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 3,452 | \$ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 256 | \$ | 12.610 |
| 02917T104 | 1/7/2014 | Sale | 606 | \$ | 12.876 |
| 02917T104 | 1/7/2014 | Sale | 1,211 | \$ | 12.870 |
| 02917T104 | 1/7/2014 | Sale | 2,323 | \$ | 12.860 |
| 02917T104 | 1/7/2014 | Sale | 4,460 | \$ | 12.864 |
| 02917T104 | 1/8/2014 | Sale | 649 | \$ | 12.699 |
| 02917T104 | 1/8/2014 | Sale | 1,769 | \$ | 12.707 |
| 02917T104 | 1/8/2014 | Sale | 2,403 | \$ | 12.712 |
| 02917T104 | 1/8/2014 | Sale | 10,379 | \$ | 12.690 |
| 02917T104 | 1/9/2014 | Sale | 8,000 | \$ | 12.646 |
| 02917T104 | 1/10/2014 | Sale | 298 | \$ | 12.715 |
| 02917T104 | 1/10/2014 | Sale | 1,496 | \$ | 12.720 |

**The New York City Police Pension Fund**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|---|---|---|---|---|
| 02917T104 | 1/10/2014 | Sale | 2,171 | $ 12.819 |
| 02917T104 | 1/10/2014 | Sale | 2,934 | $ 12.985 |
| 02917T104 | 1/10/2014 | Sale | 6,019 | $ 12.971 |
| 02917T104 | 1/10/2014 | Sale | 6,029 | $ 12.798 |
| 02917T104 | 1/10/2014 | Sale | 6,406 | $ 12.711 |
| 02917T104 | 1/10/2014 | Sale | 15,047 | $ 12.970 |
| 02917T104 | 1/14/2014 | Purchase | 1,300 | $ 13.180 |
| 02917T104 | 1/21/2014 | Purchase | 8,700 | $ 13.988 |
| 02917T104 | 1/28/2014 | Sale | 234 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 205 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 751 | $ 13.840 |
| 02917T104 | 2/7/2014 | Purchase (Merger) | 86,994.84 | $ 13.990 |
| 02917T104 | 2/19/2014 | Sale | 0.84 | $ 13.929 |
| 02917T104 | 2/28/2014 | Purchase | 12,858 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 48,700 | $ 14.687 |
| 02917T104 | 2/28/2014 | Purchase | 61,057 | $ 14.686 |
| 02917T104 | 3/21/2014 | Sale | 900 | $ 14.270 |
| 02917T104 | 3/21/2014 | Sale | 1,800 | $ 14.270 |
| 02917T104 | 3/26/2014 | Sale | 15,740 | $ 13.915 |
| 02917T104 | 3/31/2014 | Purchase | 100 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 997 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 247 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 343 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 295 | $ 13.082 |
| 02917T104 | 5/21/2014 | Purchase | 1,900 | $ 12.260 |
| 02917T104 | 5/28/2014 | Sale | 3,047 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 40 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 154 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 3,336 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 12,533 | $ 12.400 |
| 02917T104 | 6/3/2014 | Purchase | 25,500 | $ 12.726 |
| 02917T104 | 6/20/2014 | Sale | 2,700 | $ 12.590 |
| 02917T104 | 6/27/2014 | Purchase | 86,700 | $ 12.498 |
| 02917T104 | 6/27/2014 | Purchase | 241,632 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 12,290 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 9,176 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 33,328 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 44,639 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 1,304 | $ 13.108 |

**The New York City Police Pension Fund**
**Schedule of Transactions**

| Fixed Income | | | | |
|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Units** | **Unit Price** |
| 03879QAE4 | 4/3/2014 | Purchase | 260,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 680,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 940,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 940,000 | 1.0058 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Fire Department Pension Fund ("Fire") hereby certify, as to the claims asserted under the federal securities laws, that:

1.     I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  Fire has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.     Fire did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     Fire is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Fire's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.     There are no other federal securities action filed during the three years prior to the date of this certification, in which Fire has sought to serve as a representative party on behalf of a class.

6.     Fire will not accept any payment for serving as a representative party on behalf of the class beyond Fire's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

_____

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**The New York City Fire Department Pension Fund**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 6/20/2013 | Purchase | 4,400 | $ | 14.210 |
| 02917T104 | 6/21/2013 | Purchase | 6,700 | $ | 14.200 |
| 02917T104 | 6/24/2013 | Purchase | 6,623 | $ | 14.250 |
| 02917T104 | 6/24/2013 | Purchase | 8,321 | $ | 14.270 |
| 02917T104 | 6/28/2013 | Purchase | 737 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 8,300 | $ | 15.250 |
| 02917T104 | 6/28/2013 | Purchase | 10,826 | $ | 15.250 |
| 02917T104 | 7/5/2013 | Purchase | 1,664 | $ | 14.200 |
| 02917T104 | 7/5/2013 | Purchase | 4,992 | $ | 14.220 |
| 02917T104 | 7/10/2013 | Purchase | 2,514 | $ | 14.470 |
| 02917T104 | 7/10/2013 | Purchase | 3,286 | $ | 14.450 |
| 02917T104 | 7/24/2013 | Purchase | 389 | $ | 14.510 |
| 02917T104 | 7/24/2013 | Purchase | 760 | $ | 14.550 |
| 02917T104 | 7/24/2013 | Purchase | 1,851 | $ | 14.520 |
| 02917T104 | 7/26/2013 | Purchase | 2,500 | $ | 14.670 |
| 02917T104 | 7/26/2013 | Purchase | 2,800 | $ | 14.650 |
| 02917T104 | 7/30/2013 | Purchase | 500 | $ | 14.860 |
| 02917T104 | 7/31/2013 | Purchase | 1,025 | $ | 14.610 |
| 02917T104 | 7/31/2013 | Purchase | 2,275 | $ | 14.630 |
| 02917T104 | 8/1/2013 | Purchase | 535 | $ | 14.170 |
| 02917T104 | 8/1/2013 | Purchase | 1,265 | $ | 14.200 |
| 02917T104 | 10/16/2013 | Sale | 458 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 133 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 250 | $ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 149 | $ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 575 | $ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 42 | $ | 12.610 |
| 02917T104 | 1/7/2014 | Sale | 437 | $ | 12.876 |
| 02917T104 | 1/7/2014 | Sale | 873 | $ | 12.870 |
| 02917T104 | 1/7/2014 | Sale | 1,675 | $ | 12.860 |
| 02917T104 | 1/7/2014 | Sale | 3,215 | $ | 12.864 |
| 02917T104 | 1/8/2014 | Sale | 469 | $ | 12.699 |
| 02917T104 | 1/8/2014 | Sale | 1,280 | $ | 12.707 |
| 02917T104 | 1/8/2014 | Sale | 1,739 | $ | 12.712 |
| 02917T104 | 1/8/2014 | Sale | 7,512 | $ | 12.690 |
| 02917T104 | 1/9/2014 | Sale | 5,800 | $ | 12.646 |
| 02917T104 | 1/10/2014 | Sale | 218 | $ | 12.715 |
| 02917T104 | 1/10/2014 | Sale | 1,094 | $ | 12.720 |
| 02917T104 | 1/10/2014 | Sale | 1,588 | $ | 12.819 |
| 02917T104 | 1/10/2014 | Sale | 2,127 | $ | 12.985 |
| 02917T104 | 1/10/2014 | Sale | 4,364 | $ | 12.971 |
| 02917T104 | 1/10/2014 | Sale | 4,412 | $ | 12.798 |
| 02917T104 | 1/10/2014 | Sale | 4,688 | $ | 12.711 |

**The New York City Fire Department Pension Fund**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|-------|-----------|------------------|--------|-------------|
| 02917T104 | 1/10/2014 | Sale | 10,909 | $ 12.970 |
| 02917T104 | 1/28/2014 | Sale | 30 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 27 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 98 | $ 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 1,557 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 7,934 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 14,200 | $ 14.687 |
| 02917T104 | 3/26/2014 | Sale | 2,045 | $ 13.915 |
| 02917T104 | 3/31/2014 | Sale | 121 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 32 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 60 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 31 | $ 13.082 |
| 02917T104 | 5/28/2014 | Sale | 533 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 5 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 27 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 404 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 2,193 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 7,000 | $ 12.407 |
| 02917T104 | 6/27/2014 | Purchase | 70,055 | $ 12.500 |
| 02917T104 | 6/27/2014 | Purchase | 15,400 | $ 12.498 |
| 02917T104 | 6/27/2014 | Sale | 1,488 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 1,111 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 5,831 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 7,811 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 378 | $ 13.108 |
| 02917T104 | 10/22/2014 | Sale | 4,900 | $ 12.070 |

| Fixed Income | | | | |
|-------|-----------|------------------|--------|------------|
| CUSIP | Trade Date | Transaction Type | Units | Unit Price |
| 03879QAE4 | 4/3/2014 | Purchase | 60,000 | 1.0023 |
| 03879QAE4 | 4/7/2014 | Purchase | 160,000 | 1.0072 |
| 03879QAE4 | 10/16/2014 | Sale | 220,000 | 1.0058 |
| 03879QAF1 | 10/16/2014 | Purchase | 220,000 | 1.0058 |

**CERTIFICATION PURSUANT TO**
**FEDERAL SECURITIES LAWS**

I, Kathryn Diaz, on behalf the New York City Fire Officers' Variable Supplements Fund ("FOSVF") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  FOSVF has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

. 2.      FOSVF did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      FOSVF is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      FOSVF's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There are no other federal securities action filed during the three years prior to the date of this certification, in which FOSVF has sought to serve as a representative party on behalf of a class.

6.      FOSVF will not accept any payment for serving as a representative party on behalf of the class beyond Fire Officers' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.


_____
Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**The New York City Fire Officers' Variable Supplements Fund**
**Schedule of Transactions**

| CUSIP | Trade Date | Transaction Type | Shares | Share Price |
|---|---|---|---|---|
| **Equity** | | | | |
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** |
| 02917T104 | 6/28/2013 | Purchase | 83 | $ 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 1,219 | $ 15.250 |
| 02917T104 | 10/16/2013 | Sale | 15 | $ 12.710 |
| 02917T104 | 10/16/2013 | Sale | 51 | $ 12.710 |
| 02917T104 | 11/26/2013 | Sale | 47 | $ 13.280 |
| 02917T104 | 12/10/2013 | Sale | 29 | $ 12.770 |
| 02917T104 | 12/10/2013 | Sale | 108 | $ 12.770 |
| 02917T104 | 12/20/2013 | Sale | 8 | $ 12.610 |
| 02917T104 | 1/28/2014 | Sale | 8 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 27 | $ 13.840 |
| 02917T104 | 1/31/2014 | Purchase | 7 | $ 13.832 |
| 02917T104 | 2/28/2014 | Purchase | 239 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 1,063 | $ 14.686 |
| 02917T104 | 3/26/2014 | Sale | 274 | $ 13.915 |
| 02917T104 | 3/31/2014 | Sale | 19 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 4 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 8 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 7 | $ 13.082 |
| 02917T104 | 5/28/2014 | Sale | 71 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 62 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 1 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 294 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 3 | $ 12.410 |
| 02917T104 | 6/27/2014 | Sale | 171 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 228 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 1,047 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 782 | $ 12.500 |
| 02917T104 | 6/27/2014 | Purchase | 7,005 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 38 | $ 13.108 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf the New York City Fire Fighters' Variable Supplements Fund ("FFVSF") hereby certify, as to the claims asserted under the federal securities laws, that:

1.     I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  FFVSF has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.     FFVSF did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     FFVSF is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     FFVSF's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.     There are no other federal securities action filed during the three years prior to the date of this certification, in which FFVSF has sought to serve as a representative party on behalf of a class.

6.     FFVSF will not accept any payment for serving as a representative party on behalf of the class beyond Fire Officers' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.


Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**The New York City Fire Fighters' Variable Supplements Fund**
**Schedule of Transactions**

| Equity | | | | |
|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** |
| 02917T104 | 6/28/2013 | Purchase | 123 | $ 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 1,812 | $ 15.250 |
| 02917T104 | 10/16/2013 | Sale | 76 | $ 12.710 |
| 02917T104 | 10/16/2013 | Sale | 22 | $ 12.710 |
| 02917T104 | 11/26/2013 | Sale | 71 | $ 13.280 |
| 02917T104 | 12/10/2013 | Sale | 43 | $ 12.770 |
| 02917T104 | 12/10/2013 | Sale | 162 | $ 12.770 |
| 02917T104 | 12/20/2013 | Sale | 12 | $ 12.610 |
| 02917T104 | 1/28/2014 | Sale | 11 | $ 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 10 | $ 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 35 | $ 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 594 | $ 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 2,833 | $ 14.686 |
| 02917T104 | 3/26/2014 | Sale | 730 | $ 13.915 |
| 02917T104 | 3/31/2014 | Sale | 46 | $ 14.020 |
| 02917T104 | 3/31/2014 | Sale | 12 | $ 14.020 |
| 02917T104 | 4/7/2014 | Sale | 21 | $ 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 18 | $ 13.082 |
| 02917T104 | 5/28/2014 | Sale | 190 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 2 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 10 | $ 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 154 | $ 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 783 | $ 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 9,208 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 568 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 424 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,083 | $ 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,789 | $ 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 50 | $ 13.108 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the Board of Education Retirement System of the City of New York ("BERS") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller.  I have reviewed a complaint filed in this matter.  BERS has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      BERS did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      BERS is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      BERS' transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There is one other federal securities action filed during the three years prior to the date of this certification in which BERS has sought to serve as a representative party on behalf of a class: *Jahm v. Bankrate, Inc.*, 14-cv-81323-DMM (S.D. Fla. filed Oct. 28, 2014).

6.      BERS will not accept any payment for serving as a representative party on behalf of the class beyond BERS' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

## The Board of Education Retirement System of the City of New York
## Schedule of Transactions

| Equity | | | | | |
|--------|------------|------------------|--------|----|-------|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | | **Share Price** |
| 02917T104 | 5/7/2013 | Purchase | 2,727 | $ | 17.040 |
| 02917T104 | 6/4/2013 | Sale | 2,727 | $ | 15.950 |
| 02917T104 | 6/28/2013 | Purchase | 612 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 8,982 | $ | 15.250 |
| 02917T104 | 10/16/2013 | Sale | 375 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 108 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 346 | $ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 212 | $ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 796 | $ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 59 | $ | 12.610 |
| 02917T104 | 1/28/2014 | Sale | 63 | $ | 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 55 | $ | 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 202 | $ | 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 3,409 | $ | 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 16,386 | $ | 14.686 |
| 02917T104 | 3/26/2014 | Sale | 4,224 | $ | 13.915 |
| 02917T104 | 3/31/2014 | Sale | 264 | $ | 14.020 |
| 02917T104 | 3/31/2014 | Sale | 66 | $ | 14.020 |
| 02917T104 | 4/7/2014 | Sale | 124 | $ | 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 106 | $ | 13.082 |
| 02917T104 | 5/28/2014 | Sale | 1,101 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 11 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 56 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 884 | $ | 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 4,529 | $ | 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 57,191 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 3,258 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,432 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 12,044 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 16,132 | $ | 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 309 | $ | 13.108 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Kathryn Diaz, on behalf of the New York City Police Officers' Variable Supplements Fund ("POVSF") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the New York City Office of the Comptroller. I have reviewed a complaint filed in this matter. POVSF has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      POVSF did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      POVSF is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      POVSF's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A.

5.      There are no other federal securities action filed during the three years prior to the date of this certification in which POVSF has sought to serve as a representative party on behalf of a class.

6.      POVSF will not accept any payment for serving as a representative party on behalf of the class beyond POVSF's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 17th day of April, 2015.

Kathryn Diaz
General Counsel
*New York City Office of the Comptroller*

**The New York City Police Officers' Variable Supplements Fund**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 6/28/2013 | Purchase | 183 | $ | 15.260 |
| 02917T104 | 6/28/2013 | Purchase | 2,694 | $ | 15.250 |
| 02917T104 | 8/30/2013 | Purchase | 39 | $ | 13.410 |
| 02917T104 | 10/16/2013 | Sale | 113 | $ | 12.710 |
| 02917T104 | 10/16/2013 | Sale | 33 | $ | 12.710 |
| 02917T104 | 11/26/2013 | Sale | 105 | $ | 13.280 |
| 02917T104 | 12/10/2013 | Sale | 64 | $ | 12.770 |
| 02917T104 | 12/10/2013 | Sale | 240 | $ | 12.770 |
| 02917T104 | 12/20/2013 | Sale | 18 | $ | 12.610 |
| 02917T104 | 1/28/2014 | Sale | 13 | $ | 14.170 |
| 02917T104 | 1/31/2014 | Purchase | 11 | $ | 13.832 |
| 02917T104 | 1/31/2014 | Purchase | 40 | $ | 13.840 |
| 02917T104 | 2/28/2014 | Purchase | 629 | $ | 14.686 |
| 02917T104 | 2/28/2014 | Purchase | 3,270 | $ | 14.686 |
| 02917T104 | 3/26/2014 | Sale | 843 | $ | 13.915 |
| 02917T104 | 3/31/2014 | Sale | 49 | $ | 14.020 |
| 02917T104 | 3/31/2014 | Sale | 13 | $ | 14.020 |
| 02917T104 | 4/7/2014 | Sale | 25 | $ | 13.790 |
| 02917T104 | 4/30/2014 | Purchase | 21 | $ | 13.082 |
| 02917T104 | 5/28/2014 | Sale | 220 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 2 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 11 | $ | 12.410 |
| 02917T104 | 5/30/2014 | Purchase | 163 | $ | 12.400 |
| 02917T104 | 5/30/2014 | Purchase | 904 | $ | 12.400 |
| 02917T104 | 6/27/2014 | Purchase | 10,804 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 602 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 449 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 2,404 | $ | 12.500 |
| 02917T104 | 6/27/2014 | Sale | 3,219 | $ | 12.500 |
| 02917T104 | 7/31/2014 | Purchase | 58 | $ | 13.108 |

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Valerie Budzik, on behalf the Teachers' Retirement System of the City of New York Variable A ("TRS Var-A.") hereby certify, as to the claims asserted under the federal securities laws, that:

1.      I am General Counsel at the Teachers' Retirement System of the City of New York. I have reviewed a complaint filed in this matter. TRS Var-A has authorized Cohen Milstein Sellers & Toll PLLC to file a motion for appointment as lead plaintiff on its behalf.

2.      TRS Var-A did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.      TRS Var-A is willing to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      Based on initial research, TRS Var-A's transactions in American Realty Capital Properties, Inc. securities that are the subject of this action from September 7, 2011 through October 29, 2014 are set forth on the attached Schedule A; research is coninuting.

5.      There are no other federal securities action filed during the three years prior to the date of this certification, in which TRS Var-A has sought to serve as a representative party on behalf of a class.

6.      TRS Var-A will not accept any payment for serving as a representative party on behalf of the class beyond TRS V.A.'s pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this 16th day of April, 2015.

Valerie Budzik
General Counsel
*New York City Teachers' Retirement System*

**The Teachers' Retirement System of the City of New York Variable A**
**Schedule of Transactions**

| Equity | | | | | |
|---|---|---|---|---|---|
| **CUSIP** | **Trade Date** | **Transaction Type** | **Shares** | **Share Price** | |
| 02917T104 | 6/28/2013 | Purchase | 39,239 | $ | 15.255 |
| 02917T104 | 2/28/2014 | Purchase | 62,147 | $ | 14.686 |
| 02917T104 | 3/31/2014 | Purchase | 19,184 | $ | 14.016 |
| 02917T104 | 5/30/2014 | Purchase | 22,439 | $ | 12.406 |
| 02917T104 | 6/27/2014 | Purchase | 26,584 | $ | 12.497 |
| 02917T104 | 6/27/2014 | Purchase | 57,700 | $ | 12.500 |
| 02917T104 | 8/14/2014 | Sale | 2,900 | $ | 13.020 |
| 02917T104 | 9/15/2014 | Sale | 1,200 | $ | 12.430 |
| 02917T104 | 10/21/2014 | Sale | 2,200 | $ | 12.080 |

## PLAINTIFF'S CERTIFICATION
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned, Ernest P. Carrera, on behalf of City of Tampa General Employees Retirement Fund declares the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the Amended Complaint against American Realty Capital Properties, Inc. defendants ("American Realty Capital") and designate Morgan & Morgan, P.C. as counsel for the City of Tampa General Employees Retirement Fund in this action for all purposes.

2.      As Chairman of City of Tampa General Employees Retirement Fund, I am duly authorized to institute legal action on behalf of City of Tampa General Employees Retirement Fund including litigation against American Realty Capital and the other defendants.

3.      City of Tampa General Employees Retirement Fund did not acquire American Realty Capital securities at the direction of plaintiff's counsel or in order to participate in any private action under the federal securities laws.

4.      City of Tampa General Employees Retirement Fund is willing to serve as a lead plaintiff and understands that a lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.  City of Tampa General Employees Retirement Fund also understands that, if appointed lead Plaintiff in this action, it will be subject to the jurisdiction of the Court and will be bound by all rulings by the Court, including rulings regarding any judgments.

5.      City of Tampa General Employees Retirement Fund will not accept any payment for serving as a representative party beyond its pro rata share of any recovery, except reasonable costs and expenses, such as lost wages and travel expenses, directly related to the class representation, as ordered or approved by the court pursuant to law.

6.      Within the past three years, City of Tampa General Employees Retirement Fund has not sought to serve as a representative party for a class in an action under the federal securities laws.

7.      City of Tampa General Employees Retirement Fund understands that this is not a claim form, and that its ability to share in any recovery as a member of the class is unaffected by its decision to serve as a representative party.

8.      Attached hereto as Schedule A is a complete listing of all transactions City of Tampa General Employees Retirement Fund made during the Class Period in the security that is the subject of the complaint.  City of Tampa General Employees Retirement Fund will provide records of those transactions upon request.

**I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.**

Executed this 14 day of April, 2015

City of Tampa General Employees Retirement Fund

Ernest P. Carrera - Chairman

Schedule A

City of Tampa General Employees Retirement Plan
Transactions in
**American Realty Capital Properties, Inc.**

|  | Date | Quantity | Price |
|---|---|---|---|
| Purchases: | | | |
| | 5/16/2014 | 7,300 | $13.05 |
| | 5/19/2014 | 7,200 | $12.91 |
| | 5/20/2014 | 4,100 | $12.88 |
| | 5/21/2014 | 1,000 | $12.36 |
| | 5/21/2014 | 11,300 | $12.00 |
| | 5/22/2014 | 700 | $12.36 |
| | 5/23/2014 | 700 | $12.39 |
| | 9/5/2014 | 290 | $13.22 |
| | 9/5/2014 | 2,220 | $13.30 |
| | 9/8/2014 | 390 | $13.25 |

## CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, Paul Matten, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1.      I have reviewed the Amended Class Action Complaint for Violation of the Federal Securities Laws and authorize its filing.

2.      I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4.      I made the following transactions during the Class Period in the securities that are the subject of this action.

See Attached Schedule A.

5.      I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.      I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of April, 2014.

DocuSigned by:

*Paul Matten*

Paul Matten

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|

**PAUL MATTEN - Personal Account**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/7/2013 | 700 | $14.980 |
| Purchase | 6/7/2013 | 1244 | $14.986 |
| Purchase | 6/7/2013 | 2056 | $14.980 |
| Purchase | 6/7/2013 | 4000 | $14.980 |
| Purchase | 6/7/2013 | 4000 | $14.997 |
| Purchase | 6/7/2013 | 4000 | $14.969 |
| Purchase | 6/10/2013 | 600 | $14.787 |
| Purchase | 6/10/2013 | 1200 | $14.877 |
| Purchase | 6/10/2013 | 2800 | $14.880 |
| Purchase | 6/10/2013 | 3400 | $14.790 |
| Purchase | 6/11/2013 | 8000 | $14.510 |
| Purchase | 6/12/2013 | 200 | $14.269 |
| Purchase | 6/12/2013 | 200 | $14.270 |
| Purchase | 6/12/2013 | 300 | $14.288 |
| Purchase | 6/12/2013 | 484 | $14.360 |
| Purchase | 6/12/2013 | 600 | $14.270 |
| Purchase | 6/12/2013 | 3000 | $14.260 |
| Purchase | 6/12/2013 | 3516 | $14.420 |
| Purchase | 6/12/2013 | 3700 | $14.290 |
| Purchase | 6/12/2013 | 4000 | $14.360 |
| Purchase | 6/13/2013 | 8000 | $14.010 |
| Purchase | 6/20/2013 | 627 | $14.360 |
| Purchase | 6/20/2013 | 836 | $14.300 |
| Purchase | 6/20/2013 | 1100 | $14.350 |
| Purchase | 6/20/2013 | 1100 | $14.355 |
| Purchase | 6/20/2013 | 1300 | $14.288 |
| Purchase | 6/20/2013 | 2300 | $14.345 |
| Purchase | 6/20/2013 | 2873 | $14.408 |
| Purchase | 6/20/2013 | 5864 | $14.290 |
| Purchase | 6/20/2013 | 8000 | $14.510 |
| Purchase | 6/20/2013 | 8000 | $14.169 |
| Purchase | 6/24/2013 | 478 | $14.590 |
| Purchase | 6/24/2013 | 800 | $14.340 |
| Purchase | 6/24/2013 | 7200 | $14.340 |
| Purchase | 6/24/2013 | 7522 | $14.590 |
| Purchase | 6/25/2013 | 1000 | $14.710 |

1

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/25/2013 | 7000 | $14.706 |
| Purchase | 7/5/2013 | 500 | $14.240 |
| Purchase | 7/5/2013 | 1382 | $14.240 |
| Purchase | 7/5/2013 | 6618 | $14.260 |
| Purchase | 7/5/2013 | 7500 | $14.250 |
| Purchase | 7/5/2013 | 8000 | $14.169 |
| Purchase | 7/8/2013 | 2800 | $14.250 |
| Purchase | 7/8/2013 | 52 | $14.290 |
| Purchase | 7/8/2013 | 100 | $14.282 |
| Purchase | 7/8/2013 | 105 | $14.200 |
| Purchase | 7/8/2013 | 352 | $14.270 |
| Purchase | 7/8/2013 | 596 | $14.210 |
| Purchase | 7/8/2013 | 700 | $14.250 |
| Purchase | 7/8/2013 | 700 | $14.270 |
| Purchase | 7/8/2013 | 700 | $14.195 |
| Purchase | 7/8/2013 | 966 | $14.278 |
| Purchase | 7/8/2013 | 1500 | $14.288 |
| Purchase | 7/8/2013 | 1800 | $14.270 |
| Purchase | 7/8/2013 | 2400 | $14.210 |
| Purchase | 7/8/2013 | 2700 | $14.380 |
| Purchase | 7/8/2013 | 3000 | $14.270 |
| Purchase | 7/8/2013 | 3148 | $14.290 |
| Purchase | 7/8/2013 | 3300 | $14.200 |
| Purchase | 7/8/2013 | 3517 | $14.280 |
| Purchase | 7/8/2013 | 3895 | $14.200 |
| Purchase | 7/8/2013 | 4648 | $14.250 |
| Purchase | 7/8/2013 | 5300 | $14.380 |
| Purchase | 7/8/2013 | 8000 | $14.290 |
| Purchase | 7/8/2013 | 8000 | $14.220 |
| Purchase | 7/8/2013 | 8000 | $14.210 |
| Purchase | 7/8/2013 | 8000 | $14.210 |
| Purchase | 7/8/2013 | 8000 | $14.210 |
| Purchase | 7/9/2013 | 600 | $14.235 |
| Purchase | 7/9/2013 | 1000 | $14.328 |
| Purchase | 7/9/2013 | 1000 | $14.310 |
| Purchase | 7/9/2013 | 1200 | $14.300 |
| Purchase | 7/9/2013 | 1900 | $14.290 |
| Purchase | 7/9/2013 | 2100 | $14.289 |
| Purchase | 7/9/2013 | 4000 | $14.300 |
| Purchase | 7/9/2013 | 7400 | $14.240 |
| Purchase | 7/9/2013 | 8000 | $14.200 |
| Purchase | 7/25/2013 | 100 | $14.365 |

2

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 7/25/2013 | 100 | $14.328 |
| Purchase | 7/25/2013 | 200 | $14.295 |
| Purchase | 7/25/2013 | 807 | $14.330 |
| Purchase | 7/25/2013 | 7093 | $14.330 |
| Purchase | 7/25/2013 | 7800 | $14.299 |
| Purchase | 7/25/2013 | 7900 | $14.369 |
| Purchase | 7/25/2013 | 8000 | $14.310 |
| Purchase | 7/25/2013 | 8000 | $14.320 |
| Purchase | 7/25/2013 | 8000 | $14.310 |
| Purchase | 7/26/2013 | 100 | $14.265 |
| Purchase | 7/26/2013 | 200 | $14.215 |
| Purchase | 7/26/2013 | 800 | $14.255 |
| Purchase | 7/26/2013 | 1000 | $14.220 |
| Purchase | 7/26/2013 | 1500 | $14.2575 |
| Purchase | 7/26/2013 | 1700 | $14.260 |
| Purchase | 7/26/2013 | 4800 | $14.230 |
| Purchase | 7/26/2013 | 6000 | $14.287 |
| Purchase | 7/26/2013 | 7900 | $14.270 |
| Purchase | 7/26/2013 | 8000 | $14.220 |
| Purchase | 7/31/2013 | 34 | $14.529 |
| Purchase | 7/31/2013 | 100 | $14.530 |
| Purchase | 7/31/2013 | 100 | $14.528 |
| Purchase | 7/31/2013 | 300 | $14.530 |
| Purchase | 7/31/2013 | 300 | $14.530 |
| Purchase | 7/31/2013 | 400 | $14.499 |
| Purchase | 7/31/2013 | 500 | $14.529 |
| Purchase | 7/31/2013 | 700 | $14.497 |
| Purchase | 7/31/2013 | 800 | $14.525 |
| Purchase | 7/31/2013 | 800 | $14.500 |
| Purchase | 7/31/2013 | 1930 | $14.495 |
| Purchase | 7/31/2013 | 2300 | $14.510 |
| Purchase | 7/31/2013 | 2400 | $14.510 |
| Purchase | 7/31/2013 | 3066 | $14.505 |
| Purchase | 7/31/2013 | 4170 | $14.500 |
| Purchase | 7/31/2013 | 5000 | $14.469 |
| Purchase | 7/31/2013 | 6100 | $14.527 |
| Purchase | 7/31/2013 | 7000 | $14.470 |
| Purchase | 7/31/2013 | 8000 | $14.516 |
| Purchase | 7/31/2013 | 8000 | $14.567 |
| Purchase | 7/31/2013 | 8000 | $14.527 |
| Purchase | 7/31/2013 | 8000 | $14.510 |
| Purchase | 8/1/2013 | 100 | $14.305 |

3

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/1/2013 | 200 | $14.135 |
| Purchase | 8/1/2013 | 398 | $14.160 |
| Purchase | 8/1/2013 | 700 | $14.152 |
| Purchase | 8/1/2013 | 1500 | $14.307 |
| Purchase | 8/1/2013 | 2000 | $14.150 |
| Purchase | 8/1/2013 | 2300 | $14.050 |
| Purchase | 8/1/2013 | 4000 | $14.340 |
| Purchase | 8/1/2013 | 6400 | $14.310 |
| Purchase | 8/1/2013 | 6702 | $14.140 |
| Purchase | 8/1/2013 | 7700 | $14.045 |
| Purchase | 8/1/2013 | 8000 | $14.320 |
| Purchase | 8/1/2013 | 10000 | $14.150 |
| Purchase | 8/1/2013 | 10000 | $14.050 |
| Purchase | 8/6/2013 | 1100 | $13.745 |
| Purchase | 8/6/2013 | 1900 | $13.720 |
| Purchase | 8/6/2013 | 2100 | $13.715 |
| Purchase | 8/6/2013 | 2900 | $13.750 |
| Purchase | 8/6/2013 | 8000 | $13.770 |
| Purchase | 8/7/2013 | 8000 | $13.610 |
| Purchase | 8/8/2013 | 100 | $13.578 |
| Purchase | 8/8/2013 | 100 | $13.595 |
| Purchase | 8/8/2013 | 100 | $13.578 |
| Purchase | 8/8/2013 | 200 | $13.575 |
| Purchase | 8/8/2013 | 200 | $13.579 |
| Purchase | 8/8/2013 | 400 | $13.575 |
| Purchase | 8/8/2013 | 600 | $13.590 |
| Purchase | 8/8/2013 | 700 | $13.557 |
| Purchase | 8/8/2013 | 1500 | $13.578 |
| Purchase | 8/8/2013 | 1500 | $13.578 |
| Purchase | 8/8/2013 | 1500 | $13.588 |
| Purchase | 8/8/2013 | 1800 | $13.600 |
| Purchase | 8/8/2013 | 2100 | $13.580 |
| Purchase | 8/8/2013 | 2100 | $13.598 |
| Purchase | 8/8/2013 | 2500 | $13.580 |
| Purchase | 8/8/2013 | 2500 | $13.590 |
| Purchase | 8/8/2013 | 3400 | $13.590 |
| Purchase | 8/8/2013 | 3500 | $13.580 |
| Purchase | 8/8/2013 | 3900 | $13.580 |
| Purchase | 8/8/2013 | 4000 | $13.580 |
| Purchase | 8/8/2013 | 7300 | $13.560 |
| Purchase | 8/8/2013 | 8000 | $13.610 |
| Purchase | 8/8/2013 | 8000 | $13.660 |

4

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/9/2013 | 400 | $13.959 |
| Purchase | 8/9/2013 | 500 | $13.850 |
| Purchase | 8/9/2013 | 700 | $13.905 |
| Purchase | 8/9/2013 | 1500 | $13.848 |
| Purchase | 8/9/2013 | 1600 | $13.910 |
| Purchase | 8/9/2013 | 1700 | $13.900 |
| Purchase | 8/9/2013 | 2000 | $13.840 |
| Purchase | 8/9/2013 | 3600 | $13.960 |
| Purchase | 8/9/2013 | 4000 | $13.920 |
| Purchase | 8/9/2013 | 4000 | $13.820 |
| Purchase | 8/9/2013 | 8000 | $13.959 |
| Purchase | 8/9/2013 | 8000 | $13.960 |
| Purchase | 8/9/2013 | 12000 | $13.900 |
| Purchase | 8/12/2013 | 100 | $13.720 |
| Purchase | 8/12/2013 | 1500 | $13.717 |
| Purchase | 8/12/2013 | 2000 | $13.780 |
| Purchase | 8/12/2013 | 2000 | $13.670 |
| Purchase | 8/12/2013 | 4000 | $13.650 |
| Purchase | 8/12/2013 | 4400 | $13.715 |
| Purchase | 8/12/2013 | 8000 | $13.820 |
| Purchase | 8/13/2013 | 2000 | $13.528 |
| Purchase | 8/13/2013 | 4000 | $13.600 |
| Purchase | 8/13/2013 | 4000 | $13.558 |
| Purchase | 8/13/2013 | 10000 | $13.440 |
| Purchase | 8/14/2013 | 200 | $13.335 |
| Purchase | 8/14/2013 | 2500 | $13.340 |
| Purchase | 8/14/2013 | 7300 | $13.360 |
| Purchase | 8/14/2013 | 10000 | $13.440 |
| Purchase | 8/15/2013 | 10000 | $13.330 |
| Purchase | 8/15/2013 | 200 | $13.155 |
| Purchase | 8/15/2013 | 400 | $13.159 |
| Purchase | 8/15/2013 | 3100 | $13.170 |
| Purchase | 8/15/2013 | 6900 | $13.177 |
| Purchase | 8/15/2013 | 9400 | $13.160 |
| Purchase | 8/15/2013 | 10000 | $13.200 |
| Purchase | 8/15/2013 | 10000 | $13.110 |
| Purchase | 8/16/2013 | 100 | $12.990 |
| Purchase | 8/16/2013 | 100 | $12.989 |
| Purchase | 8/16/2013 | 400 | $12.845 |
| Purchase | 8/16/2013 | 700 | $12.928 |
| Purchase | 8/16/2013 | 1100 | $12.988 |
| Purchase | 8/16/2013 | 1500 | $12.998 |

5

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/16/2013 | 1500 | $13.000 |
| Purchase | 8/16/2013 | 1500 | $12.938 |
| Purchase | 8/16/2013 | 2000 | $12.908 |
| Purchase | 8/16/2013 | 2500 | $13.000 |
| Purchase | 8/16/2013 | 2500 | $12.998 |
| Purchase | 8/16/2013 | 2500 | $12.940 |
| Purchase | 8/16/2013 | 2700 | $12.990 |
| Purchase | 8/16/2013 | 3300 | $12.930 |
| Purchase | 8/16/2013 | 3600 | $12.850 |
| Purchase | 8/16/2013 | 4000 | $12.908 |
| Purchase | 8/16/2013 | 4000 | $12.910 |
| Purchase | 8/16/2013 | 6000 | $12.847 |
| Purchase | 8/19/2013 | 1000 | $12.658 |
| Purchase | 8/19/2013 | 2000 | $12.650 |
| Purchase | 8/19/2013 | 3000 | $12.659 |
| Purchase | 8/19/2013 | 3000 | $12.660 |
| Purchase | 8/19/2013 | 5000 | $12.660 |
| Purchase | 8/19/2013 | 6000 | $12.680 |
| Purchase | 8/20/2013 | 58 | $12.899 |
| Purchase | 8/20/2013 | 500 | $12.880 |
| Purchase | 8/20/2013 | 842 | $12.860 |
| Purchase | 8/20/2013 | 2000 | $12.900 |
| Purchase | 8/20/2013 | 2600 | $12.900 |
| Purchase | 8/20/2013 | 4000 | $12.900 |
| Purchase | 8/20/2013 | 10000 | $12.900 |
| Purchase | 8/30/2013 | 100 | $13.365 |
| Purchase | 8/30/2013 | 100 | $13.399 |
| Purchase | 8/30/2013 | 300 | $13.345 |
| Purchase | 8/30/2013 | 300 | $13.399 |
| Purchase | 8/30/2013 | 800 | $13.395 |
| Purchase | 8/30/2013 | 800 | $13.395 |
| Purchase | 8/30/2013 | 1000 | $13.350 |
| Purchase | 8/30/2013 | 1000 | $13.330 |
| Purchase | 8/30/2013 | 1300 | $13.350 |
| Purchase | 8/30/2013 | 1500 | $13.340 |
| Purchase | 8/30/2013 | 1600 | $13.320 |
| Purchase | 8/30/2013 | 2125 | $13.395 |
| Purchase | 8/30/2013 | 2200 | $13.330 |
| Purchase | 8/30/2013 | 2900 | $13.400 |
| Purchase | 8/30/2013 | 3359 | $13.360 |
| Purchase | 8/30/2013 | 3600 | $13.340 |
| Purchase | 8/30/2013 | 4000 | $13.330 |

6

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 8/30/2013 | 4000 | $13.357 |
| Purchase | 8/30/2013 | 4000 | $13.357 |
| Purchase | 8/30/2013 | 4000 | $13.360 |
| Purchase | 8/30/2013 | 5775 | $13.400 |
| Purchase | 8/30/2013 | 6641 | $13.350 |
| Purchase | 8/30/2013 | 7800 | $13.330 |
| Purchase | 8/30/2013 | 8000 | $13.356 |
| Purchase | 8/30/2013 | 8000 | $13.396 |
| Purchase | 8/30/2013 | 8300 | $13.370 |
| Purchase | 8/30/2013 | 9000 | $13.350 |
| Purchase | 8/30/2013 | 9000 | $13.340 |
| Purchase | 8/30/2013 | 9200 | $13.400 |
| Purchase | 8/30/2013 | 10000 | $13.330 |
| Purchase | 8/30/2013 | 10000 | $13.340 |
| Purchase | 8/30/2013 | 10000 | $13.390 |
| Purchase | 8/30/2013 | 10000 | $13.390 |
| Purchase | 8/30/2013 | 10800 | $13.350 |
| Purchase | 8/30/2013 | 18500 | $13.360 |
| Purchase | 8/30/2013 | 20000 | $13.340 |
| Purchase | 9/5/2013 | 100 | $12.690 |
| Purchase | 9/5/2013 | 500 | $12.665 |
| Purchase | 9/5/2013 | 900 | $12.675 |
| Purchase | 9/5/2013 | 900 | $12.690 |
| Purchase | 9/5/2013 | 1000 | $12.687 |
| Purchase | 9/5/2013 | 1500 | $12.670 |
| Purchase | 9/5/2013 | 2000 | $12.750 |
| Purchase | 9/5/2013 | 2000 | $12.650 |
| Purchase | 9/5/2013 | 3100 | $12.680 |
| Purchase | 9/5/2013 | 4000 | $12.670 |
| Purchase | 9/5/2013 | 4000 | $12.680 |
| Purchase | 9/5/2013 | 4000 | $12.687 |
| Purchase | 9/9/2013 | 100 | $12.770 |
| Purchase | 9/9/2013 | 100 | $12.759 |
| Purchase | 9/9/2013 | 200 | $12.780 |
| Purchase | 9/9/2013 | 300 | $12.765 |
| Purchase | 9/9/2013 | 3600 | $12.770 |
| Purchase | 9/9/2013 | 3800 | $12.780 |
| Purchase | 9/9/2013 | 3900 | $12.760 |
| Purchase | 9/9/2013 | 4000 | $12.770 |
| Purchase | 9/9/2013 | 4000 | $12.710 |
| Purchase | 9/9/2013 | 4000 | $12.720 |
| Purchase | 9/9/2013 | 4000 | $12.720 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 9/9/2013 | 4000 | $12.717 |
| Purchase | 9/9/2013 | 4000 | $12.720 |
| Purchase | 9/9/2013 | 8000 | $12.750 |
| Purchase | 9/10/2013 | 1000 | $12.630 |
| Purchase | 9/10/2013 | 2000 | $12.640 |
| Purchase | 9/10/2013 | 2000 | $12.637 |
| Purchase | 9/10/2013 | 2000 | $12.627 |
| Purchase | 9/10/2013 | 5000 | $12.640 |
| Purchase | 9/11/2013 | 4000 | $12.400 |
| Purchase | 9/11/2013 | 4000 | $12.400 |
| Purchase | 9/11/2013 | 4000 | $12.370 |
| Purchase | 9/12/2013 | 100 | $12.409 |
| Purchase | 9/12/2013 | 775 | $12.405 |
| Purchase | 9/12/2013 | 1000 | $12.407 |
| Purchase | 9/12/2013 | 2000 | $12.410 |
| Purchase | 9/12/2013 | 4125 | $12.410 |
| Purchase | 9/16/2013 | 600 | $12.264 |
| Purchase | 9/16/2013 | 1000 | $12.265 |
| Purchase | 9/16/2013 | 2300 | $12.260 |
| Purchase | 9/16/2013 | 4000 | $12.405 |
| Purchase | 9/16/2013 | 4100 | $12.270 |
| Purchase | 9/23/2013 | 1100 | $12.510 |
| Purchase | 9/23/2013 | 2900 | $12.509 |
| Purchase | 9/23/2013 | 4000 | $12.510 |
| Purchase | 9/24/2013 | 100 | $12.330 |
| Purchase | 9/24/2013 | 1900 | $12.410 |
| Purchase | 9/24/2013 | 2000 | $12.410 |
| Purchase | 9/24/2013 | 8000 | $12.369 |
| Purchase | 9/24/2013 | 8000 | $12.460 |
| Purchase | 9/25/2013 | 8000 | $12.510 |
| Purchase | 9/25/2013 | 300 | $12.475 |
| Purchase | 9/25/2013 | 3700 | $12.480 |
| Purchase | 9/25/2013 | 8000 | $12.479 |
| Purchase | 9/26/2013 | 100 | $12.495 |
| Purchase | 9/26/2013 | 300 | $12.465 |
| Purchase | 9/26/2013 | 500 | $12.499 |
| Purchase | 9/26/2013 | 601 | $12.478 |
| Purchase | 9/26/2013 | 1000 | $12.477 |
| Purchase | 9/26/2013 | 2000 | $12.497 |
| Purchase | 9/26/2013 | 2000 | $12.467 |
| Purchase | 9/26/2013 | 2508 | $12.500 |
| Purchase | 9/26/2013 | 2892 | $12.500 |

8

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 9/26/2013 | 3000 | $12.480 |
| Purchase | 9/26/2013 | 3499 | $12.470 |
| Purchase | 9/26/2013 | 3600 | $12.469 |
| Purchase | 9/26/2013 | 4000 | $12.500 |
| Purchase | 9/26/2013 | 4000 | $12.480 |
| Purchase | 9/26/2013 | 4000 | $12.470 |
| Purchase | 9/26/2013 | 4000 | $12.457 |
| Purchase | 9/26/2013 | 4406 | $12.490 |
| Purchase | 9/26/2013 | 8000 | $12.510 |
| Purchase | 9/27/2013 | 1100 | $12.450 |
| Purchase | 9/27/2013 | 2900 | $12.450 |
| Purchase | 9/27/2013 | 4000 | $12.490 |
| Purchase | 9/27/2013 | 8000 | $12.380 |
| Purchase | 9/27/2013 | 8000 | $12.270 |
| Purchase | 9/30/2013 | 100 | $12.225 |
| Purchase | 9/30/2013 | 200 | $12.265 |
| Purchase | 9/30/2013 | 347 | $12.290 |
| Purchase | 9/30/2013 | 400 | $12.285 |
| Purchase | 9/30/2013 | 1000 | $12.187 |
| Purchase | 9/30/2013 | 1700 | $12.290 |
| Purchase | 9/30/2013 | 3000 | $12.190 |
| Purchase | 9/30/2013 | 3729 | $12.280 |
| Purchase | 9/30/2013 | 4000 | $12.190 |
| Purchase | 9/30/2013 | 4071 | $12.260 |
| Purchase | 9/30/2013 | 5553 | $12.300 |
| Purchase | 9/30/2013 | 7900 | $12.230 |
| Purchase | 9/30/2013 | 8000 | $12.400 |
| Purchase | 9/30/2013 | 8000 | $12.220 |
| Purchase | 10/8/2013 | 100 | $12.307 |
| Purchase | 10/8/2013 | 200 | $12.295 |
| Purchase | 10/8/2013 | 400 | $12.310 |
| Purchase | 10/8/2013 | 3800 | $12.305 |
| Purchase | 10/8/2013 | 7700 | $12.310 |
| Purchase | 10/8/2013 | 8000 | $12.310 |
| Purchase | 10/8/2013 | 19800 | $12.300 |
| Purchase | 10/9/2013 | 1200 | $12.350 |
| Purchase | 10/9/2013 | 3281 | $12.260 |
| Purchase | 10/9/2013 | 4000 | $12.260 |
| Purchase | 10/9/2013 | 4900 | $12.290 |
| Purchase | 10/9/2013 | 5100 | $12.290 |
| Purchase | 10/9/2013 | 6719 | $12.270 |
| Purchase | 10/9/2013 | 8800 | $12.350 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 10/9/2013 | 10000 | $12.310 |
| Purchase | 10/10/2013 | 700 | $12.330 |
| Purchase | 10/10/2013 | 1000 | $12.310 |
| Purchase | 10/10/2013 | 1000 | $12.308 |
| Purchase | 10/10/2013 | 1500 | $12.289 |
| Purchase | 10/10/2013 | 1800 | $12.350 |
| Purchase | 10/10/2013 | 2000 | $12.348 |
| Purchase | 10/11/2013 | 3200 | $12.329 |
| Purchase | 10/11/2013 | 4800 | $12.330 |
| Purchase | 10/14/2013 | 703 | $12.310 |
| Purchase | 10/23/2013 | 100 | $13.200 |
| Purchase | 10/23/2013 | 8701 | $13.050 |
| Purchase | 10/23/2013 | 11299 | $13.045 |
| Purchase | 10/23/2013 | 19900 | $13.200 |
| Purchase | 10/23/2013 | 20000 | $13.810 |
| Purchase | 10/30/2013 | 700 | $13.440 |
| Purchase | 10/30/2013 | 19300 | $13.440 |
| Purchase | 10/31/2013 | 20000 | $13.020 |
| Purchase | 11/1/2013 | 20000 | $13.170 |
| Purchase | 11/4/2013 | 300 | $13.320 |
| Purchase | 11/4/2013 | 6900 | $13.315 |
| Purchase | 11/4/2013 | 12800 | $13.320 |
| Purchase | 11/5/2013 | 500 | $13.145 |
| Purchase | 11/5/2013 | 19500 | $13.150 |
| Purchase | 11/6/2013 | 20000 | $12.930 |
| Purchase | 11/8/2013 | 100 | $12.755 |
| Purchase | 11/8/2013 | 100 | $12.575 |
| Purchase | 11/8/2013 | 900 | $12.580 |
| Purchase | 11/8/2013 | 1000 | $12.530 |
| Purchase | 11/8/2013 | 1800 | $12.586 |
| Purchase | 11/8/2013 | 1900 | $12.550 |
| Purchase | 11/8/2013 | 3000 | $12.760 |
| Purchase | 11/8/2013 | 3826 | $12.530 |
| Purchase | 11/8/2013 | 4000 | $12.530 |
| Purchase | 11/8/2013 | 5000 | $12.520 |
| Purchase | 11/8/2013 | 9000 | $12.580 |
| Purchase | 11/8/2013 | 10000 | $12.570 |
| Purchase | 11/8/2013 | 10000 | $12.530 |
| Purchase | 11/8/2013 | 16174 | $12.570 |
| Purchase | 11/8/2013 | 16900 | $12.760 |
| Purchase | 11/8/2013 | 18100 | $12.560 |
| Purchase | 11/8/2013 | 18200 | $12.580 |

10

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 11/8/2013 | 20000 | $12.610 |
| Purchase | 11/8/2013 | 20000 | $12.610 |
| Purchase | 11/19/2013 | 100 | $12.965 |
| Purchase | 11/19/2013 | 200 | $12.940 |
| Purchase | 11/19/2013 | 952 | $12.960 |
| Purchase | 11/19/2013 | 9300 | $12.970 |
| Purchase | 11/19/2013 | 9448 | $12.950 |
| Purchase | 11/21/2013 | 100 | $12.935 |
| Purchase | 11/21/2013 | 100 | $12.945 |
| Purchase | 11/21/2013 | 100 | $12.950 |
| Purchase | 11/21/2013 | 1327 | $12.940 |
| Purchase | 11/21/2013 | 18473 | $12.950 |
| Purchase | 12/10/2013 | 20000 | $12.800 |
| Purchase | 12/10/2013 | 20000 | $12.800 |
| Purchase | 12/11/2013 | 100 | $12.598 |
| Purchase | 12/11/2013 | 154 | $12.690 |
| Purchase | 12/11/2013 | 200 | $12.685 |
| Purchase | 12/11/2013 | 300 | $12.430 |
| Purchase | 12/11/2013 | 800 | $12.680 |
| Purchase | 12/11/2013 | 800 | $12.600 |
| Purchase | 12/11/2013 | 2000 | $12.599 |
| Purchase | 12/11/2013 | 3500 | $12.675 |
| Purchase | 12/11/2013 | 4524 | $12.680 |
| Purchase | 12/11/2013 | 6100 | $12.600 |
| Purchase | 12/11/2013 | 7895 | $12.595 |
| Purchase | 12/11/2013 | 9700 | $12.430 |
| Purchase | 12/11/2013 | 10000 | $12.510 |
| Purchase | 12/11/2013 | 10000 | $12.505 |
| Purchase | 12/11/2013 | 10822 | $12.690 |
| Purchase | 12/11/2013 | 11100 | $12.590 |
| Purchase | 12/11/2013 | 12005 | $12.600 |
| Purchase | 12/11/2013 | 20000 | $12.690 |
| Purchase | 12/11/2013 | 20000 | $12.590 |
| Purchase | 12/11/2013 | 20000 | $12.585 |
| Purchase | 12/12/2013 | 2039 | $12.420 |
| Purchase | 12/12/2013 | 3100 | $12.460 |
| Purchase | 12/12/2013 | 4861 | $12.460 |
| Purchase | 12/19/2013 | 3500 | $12.620 |
| Purchase | 12/19/2013 | 16500 | $12.620 |
| Purchase | 12/19/2013 | 20000 | $12.600 |
| Purchase | 12/20/2013 | 444 | $12.609 |
| Purchase | 12/20/2013 | 1000 | $12.577 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 12/20/2013 | 1056 | $12.605 |
| Purchase | 12/20/2013 | 5000 | $12.590 |
| Purchase | 12/20/2013 | 5500 | $12.610 |
| Purchase | 12/20/2013 | 6256 | $12.620 |
| Purchase | 12/20/2013 | 8000 | $12.610 |
| Purchase | 12/20/2013 | 9744 | $12.630 |
| Purchase | 12/23/2013 | 3000 | $12.615 |
| Purchase | 12/24/2013 | 100 | $12.736 |
| Purchase | 12/31/2013 | 10000 | $12.720 |
| Purchase | 1/9/2014 | 10000 | $12.640 |
| Purchase | 1/10/2014 | 1900 | $12.715 |
| Purchase | 1/10/2014 | 4100 | $12.720 |
| Purchase | 02/11/2014 | 8000 | $13.79 |
| Purchase | 02/12/2014 | 192 | $13.52 |
| Purchase. | 02/12/2014 | 3000 | $13.56 |
| Purchase | 02/12/2014 | 3000 | $13.52 |
| Purchase | 02/12/2014 | 3912 | $13.53 |
| Purchase | 02/12/2014 | 4088 | $13.53 |
| Purchase | 02/12/2014 | 4808 | $13.51 |
| Purchase | 02/12/2014 | 5000 | $13.56 |
| Purchase | 02/12/2014 | 8000 | $13.52 |
| Purchase | 02/12/2014 | 8000 | $13.55 |
| Purchase | 03/19/2014 | 378 | $14.12 |
| Purchase | 03/19/2014 | 900 | $14.15 |
| Purchase | 03/19/2014 | 1322 | $14.12 |
| Purchase | 03/19/2014 | 1500 | $14.23 |
| Purchase | 03/19/2014 | 1500 | $14.17 |
| Purchase | 03/19/2014 | 1500 | $14.12 |
| Purchase | 03/19/2014 | 2500 | $14.23 |
| Purchase | 03/19/2014 | 2500 | $14.17 |
| Purchase | 03/19/2014 | 3100 | $14.15 |
| Purchase | 03/19/2014 | 4800 | $14.12 |
| Purchase | 03/19/2014 | 20000 | $14.24 |
| Purchase | 03/31/2014 | 100 | $13.87 |
| Purchase | 03/31/2014 | 1000 | $13.89 |
| Purchase | 03/31/2014 | 6900 | $13.87 |
| Purchase | 04/01/2014 | 1500 | $13.95 |
| Purchase | 04/01/2014 | 1900 | $13.95 |
| Purchase | 04/01/2014 | 2200 | $13.90 |
| Purchase | 04/01/2014 | 4000 | $13.92 |
| Purchase | 04/01/2014 | 4000 | $13.90 |
| Purchase | 04/01/2014 | 4600 | $13.94 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 04/01/2014 | 5800 | $13.90 |
| Purchase | 04/01/2014 | 8000 | $13.99 |
| Purchase | 04/01/2014 | 8000 | $13.90 |
| Purchase | 04/03/2014 | 1 | $13.95 |
| Purchase | 04/03/2014 | 3566 | $13.95 |
| Purchase | 04/03/2014 | 8000 | $13.93 |
| Purchase | 04/03/2014 | 13800 | $13.96 |
| Purchase | 04/03/2014 | 14633 | $13.97 |
| Purchase | 04/07/2014 | 200 | $13.85 |
| Purchase | 04/07/2014 | 8000 | $13.99 |
| Purchase | 04/07/2014 | 8000 | $13.88 |
| Purchase | 04/07/2014 | 11800 | $13.85 |
| Purchase | 04/07/2014 | 20000 | $13.85 |
| Purchase | 04/08/2014 | 2000 | $13.68 |
| Purchase | 04/08/2014 | 4000 | $13.74 |
| Purchase | 04/08/2014 | 4000 | $13.74 |
| Purchase | 04/08/2014 | 4000 | $13.70 |
| Purchase | 04/08/2014 | 6000 | $13.68 |
| Purchase | 04/08/2014 | 8000 | $13.69 |
| Purchase | 04/08/2014 | 8000 | $13.69 |
| Purchase | 04/08/2014 | 12000 | $13.70 |
| Purchase | 04/09/2014 | 100 | $13.55 |
| Purchase | 04/09/2014 | 200 | $13.63 |
| Purchase | 04/09/2014 | 300 | $13.55 |
| Purchase | 04/09/2014 | 852 | $13.55 |
| Purchase | 04/09/2014 | 1200 | $13.63 |
| Purchase | 04/09/2014 | 1248 | $13.56 |
| Purchase | 04/09/2014 | 1500 | $13.63 |
| Purchase | 04/09/2014 | 1500 | $13.52 |
| Purchase | 04/09/2014 | 1500 | $13.55 |
| Purchase | 04/09/2014 | 1500 | $13.56 |
| Purchase | 04/09/2014 | 2500 | $13.63 |
| Purchase | 04/09/2014 | 2500 | $13.52 |
| Purchase | 04/09/2014 | 2500 | $13.55 |
| Purchase | 04/09/2014 | 2600 | $13.63 |
| Purchase | 04/09/2014 | 4000 | $13.62 |
| Purchase | 04/09/2014 | 4000 | $13.59 |
| Purchase | 04/09/2014 | 4000 | $13.56 |
| Purchase | 04/17/2014 | 8000 | $13.21 |
| Purchase | 04/21/2014 | 800 | $13.21 |
| Purchase | 04/21/2014 | 7200 | $13.21 |
| Purchase | 04/23/2014 | 4000 | $13.32 |

13

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 04/23/2014 | 4000 | $13.40 |
| Purchase | 04/23/2014 | 4000 | $13.38 |
| Purchase | 04/23/2014 | 4000 | $13.38 |
| Purchase | 04/23/2014 | 4000 | $13.35 |
| Purchase | 04/23/2014 | 4000 | $13.35 |
| Purchase | 04/23/2014 | 4000 | $13.28 |
| Purchase | 04/23/2014 | 4000 | $13.28 |
| Purchase | 04/23/2014 | 8000 | $13.28 |
| Purchase | 04/24/2014 | 3300 | $13.21 |
| Purchase | 04/24/2014 | 4000 | $13.22 |
| Purchase | 04/24/2014 | 4000 | $13.26 |
| Purchase | 04/24/2014 | 4700 | $13.21 |
| Purchase | 04/25/2014 | 4000 | $13.15 |
| Purchase | 04/25/2014 | 4000 | $13.11 |
| Purchase | 04/25/2014 | 100 | $13.17 |
| Purchase | 04/25/2014 | 500 | $13.12 |
| Purchase | 04/25/2014 | 900 | $13.12 |
| Purchase | 04/25/2014 | 900 | $13.14 |
| Purchase | 04/25/2014 | 1500 | $13.13 |
| Purchase | 04/25/2014 | 1500 | $13.01 |
| Purchase | 04/25/2014 | 1702 | $13.12 |
| Purchase | 04/25/2014 | 1900 | $13.17 |
| Purchase | 04/25/2014 | 2000 | $13.16 |
| Purchase | 04/25/2014 | 3998 | $13.15 |
| Purchase | 04/25/2014 | 4000 | $13.17 |
| Purchase | 04/25/2014 | 4000 | $13.19 |
| Purchase | 04/25/2014 | 4000 | $13.16 |
| Purchase | 04/25/2014 | 4000 | $13.14 |
| Purchase | 04/25/2014 | 4000 | $13.11 |
| Purchase | 04/25/2014 | 4000 | $13.10 |
| Purchase | 04/25/2014 | 4000 | $13.10 |
| Purchase | 04/25/2014 | 4000 | $13.00 |
| Purchase | 04/25/2014 | 6500 | $13.13 |
| Purchase | 04/25/2014 | 6500 | $13.01 |
| Purchase | 04/25/2014 | 8000 | $13.09 |
| Purchase | 04/28/2014 | 1000 | $12.91 |
| Purchase | 04/28/2014 | 3000 | $12.91 |
| Purchase | 04/28/2014 | 4000 | $13.00 |
| Purchase | 04/28/2014 | 4000 | $12.97 |
| Purchase | 04/28/2014 | 4000 | $12.87 |
| Purchase | 04/29/2014 | 100 | $13.00 |
| Purchase | 04/29/2014 | 200 | $12.98 |

14

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 04/29/2014 | 300 | $12.89 |
| Purchase | 04/29/2014 | 700 | $12.88 |
| Purchase | 04/29/2014 | 700 | $12.97 |
| Purchase | 04/29/2014 | 1000 | $12.91 |
| Purchase | 04/29/2014 | 1000 | $13.00 |
| Purchase | 04/29/2014 | 1000 | $13.00 |
| Purchase | 04/29/2014 | 1000 | $12.92 |
| Purchase | 04/29/2014 | 1100 | $13.00 |
| Purchase | 04/29/2014 | 1900 | $12.92 |
| Purchase | 04/29/2014 | 4000 | $13.00 |
| Purchase | 04/29/2014 | 4000 | $13.00 |
| Purchase | 04/29/2014 | 4000 | $13.00 |
| Purchase | 04/29/2014 | 7000 | $12.92 |
| Purchase | 04/30/2014 | 8000 | $12.87 |
| Purchase | 05/05/2014 | 400 | $13.04 |
| Purchase | 05/05/2014 | 1000 | $12.95 |
| Purchase | 05/05/2014 | 3600 | $12.96 |
| Purchase | 05/05/2014 | 4000 | $12.96 |
| Purchase | 05/05/2014 | 7000 | $12.95 |
| Purchase | 05/05/2014 | 8000 | $12.95 |
| Purchase | 05/14/2014 | 6000 | $13.19 |
| Purchase | 05/21/2014 | 50 | $12.57 |
| Purchase | 05/21/2014 | 8000 | $12.20 |
| Purchase | 05/21/2014 | 19950 | $12.57 |
| Purchase | 05/21/2014 | 20000 | $12.57 |
| Purchase | 05/22/2014 | 2500 | $12.10 |
| Purchase | 05/22/2014 | 9500 | $12.08 |
| Purchase | 05/23/2014 | 20000 | $12.33 |
| Purchase | 05/29/2014 | 600 | $12.35 |
| Purchase | 05/29/2014 | 1400 | $12.31 |
| Purchase | 05/29/2014 | 1403 | $12.30 |
| Purchase | 05/29/2014 | 6597 | $12.30 |
| Purchase | 05/29/2014 | 30000 | $12.35 |
| Purchase | 06/02/2014 | 1100 | $12.31 |
| Purchase | 06/02/2014 | 4347 | $12.35 |
| Purchase | 06/02/2014 | 4553 | $12.31 |
| Purchase | 06/02/2014 | 5000 | $12.29 |
| Purchase | 06/02/2014 | 5000 | $12.29 |
| Purchase | 06/02/2014 | 20000 | $12.31 |
| Purchase | 06/09/2014 | 8000 | $12.25 |
| Purchase | 06/12/2014 | 5000 | $11.78 |
| Purchase | 06/12/2014 | 7000 | $11.78 |

15

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 06/17/2014 | 4000 | $12.06 |
| Purchase | 06/17/2014 | 8000 | $11.98 |
| Purchase | 06/18/2014 | 8000 | $12.02 |
| Purchase | 08/18/2014 | 8000 | $12.91 |
| Purchase | 08/18/2014 | 8000 | $12.91 |
| Purchase | 08/18/2014 | 8000 | $12.89 |
| Purchase | 08/18/2014 | 8000 | $12.90 |
| Purchase | 08/18/2014 | 8000 | $12.90 |
| Purchase | 08/18/2014 | 8000 | $12.85 |
| Purchase | 08/19/2014 | 8000 | $12.98 |
| Purchase | 08/20/2014 | 800 | $13.10 |
| Purchase | 08/20/2014 | 1000 | $12.93 |
| Purchase | 08/20/2014 | 6000 | $12.94 |
| Purchase | 08/21/2014 | 200 | $13.14 |
| Purchase | 09/03/2014 | 8000 | $13.26 |
| Purchase | 09/04/2014 | 6000 | $13.09 |
| Purchase | 09/04/2014 | 6000 | $13.06 |
| Purchase | 09/11/2014 | 1000 | $12.97 |
| Purchase | 09/12/2014 | 950 | $12.82 |
| Purchase | 09/15/2014 | 550 | $12.74 |
| Purchase | 09/15/2014 | 1000 | $12.46 |
| Purchase | 09/15/2014 | 5000 | $12.53 |
| Purchase | 09/15/2014 | 5500 | $12.53 |
| Purchase | 09/17/2014 | 1000 | $12.67 |
| Purchase | 09/19/2014 | 150 | $12.37 |
| Purchase | 09/23/2014 | 390 | $12.30 |
| Purchase | 10/01/2014 | 1460 | $12.07 |
| Purchase | 10/02/2014 | 800 | $12.00 |
| Purchase | 10/06/2014 | 2000 | $12.00 |
| Purchase | 10/08/2014 | 200 | $11.84 |
| Purchase | 10/09/2014 | 400 | $11.88 |
| Purchase | 10/13/2014 | 2800 | $11.58 |
| Purchase | 10/16/2014 | 200 | $11.60 |
| Purchase | 10/16/2014 | 800 | $11.75 |
| Purchase | 10/16/2014 | 5800 | $11.65 |
| Purchase | 10/16/2014 | 5800 | $11.67 |
| Purchase | 10/17/2014 | 500 | $12.09 |
| Purchase | 10/23/2014 | 400 | $12.11 |
| Purchase | 10/28/2014 | 50 | $12.42 |
| Purchase | 10/28/2014 | 1150 | $12.42 |
| | | | |
| Sale | 6/13/2013 | 100 | $14.695 |

16

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 6/13/2013 | 500 | $14.670 |
| Sale | 6/13/2013 | 1000 | $14.690 |
| Sale | 6/13/2013 | 1200 | $14.712 |
| Sale | 6/13/2013 | 2900 | $14.692 |
| Sale | 6/13/2013 | 3500 | $14.671 |
| Sale | 6/13/2013 | 6800 | $14.710 |
| Sale | 6/13/2013 | 8000 | $14.240 |
| Sale | 6/13/2013 | 8000 | $14.490 |
| Sale | 6/13/2013 | 8000 | $14.490 |
| Sale | 6/13/2013 | 8000 | $14.550 |
| Sale | 6/20/2013 | 2763 | $14.611 |
| Sale | 6/20/2013 | 5237 | $14.650 |
| Sale | 6/20/2013 | 8000 | $14.662 |
| Sale | 6/24/2013 | 300 | $14.690 |
| Sale | 6/24/2013 | 800 | $14.670 |
| Sale | 6/24/2013 | 3400 | $14.690 |
| Sale | 6/24/2013 | 3500 | $14.670 |
| Sale | 6/24/2013 | 8000 | $14.590 |
| Sale | 6/24/2013 | 8000 | $14.590 |
| Sale | 6/25/2013 | 1940 | $14.751 |
| Sale | 6/25/2013 | 2100 | $14.790 |
| Sale | 6/25/2013 | 3960 | $14.790 |
| Sale | 6/25/2013 | 8000 | $14.774 |
| Sale | 7/5/2013 | 3100 | $14.233 |
| Sale | 7/5/2013 | 4900 | $14.234 |
| Sale | 7/5/2013 | 8000 | $14.290 |
| Sale | 7/5/2013 | 8000 | $14.291 |
| Sale | 7/8/2013 | 2800 | $14.380 |
| Sale | 7/8/2013 | 100 | $14.230 |
| Sale | 7/8/2013 | 1500 | $14.210 |
| Sale | 7/8/2013 | 2300 | $14.230 |
| Sale | 7/8/2013 | 3627 | $14.250 |
| Sale | 7/8/2013 | 4000 | $14.220 |
| Sale | 7/8/2013 | 4000 | $14.220 |
| Sale | 7/8/2013 | 4373 | $14.250 |
| Sale | 7/8/2013 | 4483 | $14.310 |
| Sale | 7/8/2013 | 6500 | $14.215 |
| Sale | 7/8/2013 | 8000 | $14.290 |
| Sale | 7/8/2013 | 8000 | $14.290 |
| Sale | 7/8/2013 | 8596 | $14.270 |
| Sale | 7/9/2013 | 2000 | $14.230 |
| Sale | 7/9/2013 | 2300 | $14.245 |

17

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 7/9/2013 | 3700 | $14.240 |
| Sale | 7/9/2013 | 4041 | $14.340 |
| Sale | 7/9/2013 | 7159 | $14.370 |
| Sale | 7/9/2013 | 8000 | $14.290 |
| Sale | 7/9/2013 | 8000 | $14.340 |
| Sale | 7/9/2013 | 8000 | $14.290 |
| Sale | 7/9/2013 | 8000 | $14.290 |
| Sale | 7/26/2013 | 100 | $14.661 |
| Sale | 7/26/2013 | 200 | $14.660 |
| Sale | 7/26/2013 | 300 | $14.623 |
| Sale | 7/26/2013 | 700 | $14.664 |
| Sale | 7/26/2013 | 700 | $14.664 |
| Sale | 7/26/2013 | 895 | $14.660 |
| Sale | 7/26/2013 | 1300 | $14.660 |
| Sale | 7/26/2013 | 1500 | $14.523 |
| Sale | 7/26/2013 | 1500 | $14.584 |
| Sale | 7/26/2013 | 1500 | $14.660 |
| Sale | 7/26/2013 | 1600 | $14.660 |
| Sale | 7/26/2013 | 1700 | $14.663 |
| Sale | 7/26/2013 | 1700 | $14.661 |
| Sale | 7/26/2013 | 2405 | $14.640 |
| Sale | 7/26/2013 | 2500 | $14.520 |
| Sale | 7/26/2013 | 2825 | $14.665 |
| Sale | 7/26/2013 | 2875 | $14.660 |
| Sale | 7/26/2013 | 4000 | $14.490 |
| Sale | 7/26/2013 | 5500 | $14.665 |
| Sale | 7/26/2013 | 6500 | $14.580 |
| Sale | 7/26/2013 | 7700 | $14.620 |
| Sale | 7/26/2013 | 8000 | $14.390 |
| Sale | 7/26/2013 | 8000 | $14.440 |
| Sale | 7/26/2013 | 8000 | $14.540 |
| Sale | 7/26/2013 | 8000 | $14.660 |
| Sale | 7/31/2013 | 500 | $14.675 |
| Sale | 7/31/2013 | 7500 | $14.670 |
| Sale | 8/9/2013 | 100 | $13.941 |
| Sale | 8/9/2013 | 200 | $13.955 |
| Sale | 8/9/2013 | 1000 | $13.960 |
| Sale | 8/9/2013 | 1100 | $13.970 |
| Sale | 8/9/2013 | 1300 | $13.950 |
| Sale | 8/9/2013 | 1500 | $13.943 |
| Sale | 8/9/2013 | 2300 | $13.970 |
| Sale | 8/9/2013 | 2652 | $13.940 |

18

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 8/9/2013 | 3200 | $13.970 |
| Sale | 8/9/2013 | 3548 | $13.950 |
| Sale | 8/9/2013 | 3700 | $13.961 |
| Sale | 8/9/2013 | 5700 | $13.971 |
| Sale | 8/9/2013 | 6700 | $13.940 |
| Sale | 8/9/2013 | 7000 | $13.950 |
| Sale | 8/29/2013 | 147 | $13.490 |
| Sale | 8/29/2013 | 200 | $13.565 |
| Sale | 8/29/2013 | 200 | $13.545 |
| Sale | 8/29/2013 | 200 | $13.545 |
| Sale | 8/29/2013 | 300 | $13.530 |
| Sale | 8/29/2013 | 600 | $13.540 |
| Sale | 8/29/2013 | 600 | $13.535 |
| Sale | 8/29/2013 | 667 | $13.520 |
| Sale | 8/29/2013 | 718 | $13.540 |
| Sale | 8/29/2013 | 800 | $13.540 |
| Sale | 8/29/2013 | 1500 | $13.545 |
| Sale | 8/29/2013 | 2200 | $13.545 |
| Sale | 8/29/2013 | 2400 | $13.540 |
| Sale | 8/29/2013 | 3572 | $13.520 |
| Sale | 8/29/2013 | 3589 | $13.520 |
| Sale | 8/29/2013 | 4757 | $13.530 |
| Sale | 8/29/2013 | 4800 | $13.580 |
| Sale | 8/29/2013 | 5614 | $13.550 |
| Sale | 8/29/2013 | 6411 | $13.510 |
| Sale | 8/29/2013 | 8400 | $13.540 |
| Sale | 8/29/2013 | 9076 | $13.540 |
| Sale | 8/29/2013 | 9682 | $13.560 |
| Sale | 8/29/2013 | 10000 | $13.510 |
| Sale | 8/29/2013 | 10024 | $13.530 |
| Sale | 8/29/2013 | 13743 | $13.540 |
| Sale | 8/29/2013 | 20000 | $13.580 |
| Sale | 8/29/2013 | 20000 | $13.580 |
| Sale | 8/29/2013 | 20000 | $13.550 |
| Sale | 8/29/2013 | 39800 | $13.560 |
| Sale | 9/18/2013 | 500 | $12.850 |
| Sale | 9/18/2013 | 600 | $12.850 |
| Sale | 9/18/2013 | 1000 | $12.853 |
| Sale | 9/18/2013 | 1900 | $12.855 |
| Sale | 9/18/2013 | 2000 | $12.850 |
| Sale | 9/18/2013 | 2000 | $12.853 |
| Sale | 9/18/2013 | 4000 | $12.850 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 9/18/2013 | 20000 | $12.850 |
| Sale | 9/26/2013 | 4406 | $12.560 |
| Sale | 9/26/2013 | 8000 | $12.520 |
| Sale | 9/27/2013 | 2609 | $12.520 |
| Sale | 9/27/2013 | 7391 | $12.490 |
| Sale | 9/27/2013 | 8000 | $12.490 |
| Sale | 9/27/2013 | 8000 | $12.441 |
| Sale | 10/1/2013 | 1000 | $12.554 |
| Sale | 10/1/2013 | 1500 | $12.550 |
| Sale | 10/1/2013 | 5500 | $12.550 |
| Sale | 10/1/2013 | 8000 | $12.490 |
| Sale | 10/1/2013 | 8000 | $12.590 |
| Sale | 10/1/2013 | 8000 | $12.550 |
| Sale | 10/2/2013 | 300 | $12.755 |
| Sale | 10/2/2013 | 500 | $12.850 |
| Sale | 10/2/2013 | 1000 | $12.854 |
| Sale | 10/2/2013 | 2000 | $12.654 |
| Sale | 10/2/2013 | 4000 | $12.850 |
| Sale | 10/2/2013 | 6000 | $12.650 |
| Sale | 10/2/2013 | 6500 | $12.850 |
| Sale | 10/2/2013 | 7700 | $12.750 |
| Sale | 10/2/2013 | 8000 | $12.850 |
| Sale | 10/2/2013 | 8000 | $12.854 |
| Sale | 10/2/2013 | 8000 | $12.864 |
| Sale | 10/10/2013 | 4000 | $12.390 |
| Sale | 10/11/2013 | 8000 | $12.370 |
| Sale | 10/11/2013 | 8000 | $12.390 |
| Sale | 10/14/2013 | 703 | $12.370 |
| Sale | 10/15/2013 | 100 | $13.005 |
| Sale | 10/15/2013 | 5000 | $13.000 |
| Sale | 10/15/2013 | 13600 | $12.800 |
| Sale | 10/15/2013 | 66400 | $12.810 |
| Sale | 10/15/2013 | 74900 | $12.990 |
| Sale | 10/17/2013 | 200 | $13.105 |
| Sale | 10/17/2013 | 20000 | $13.220 |
| Sale | 10/17/2013 | 39800 | $13.100 |
| Sale | 10/17/2013 | 40000 | $13.160 |
| Sale | 10/18/2013 | 300 | $13.446 |
| Sale | 10/18/2013 | 600 | $13.435 |
| Sale | 10/18/2013 | 700 | $13.450 |
| Sale | 10/18/2013 | 1300 | $13.448 |
| Sale | 10/18/2013 | 2700 | $13.445 |

20

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 10/18/2013 | 3000 | $13.440 |
| Sale | 10/18/2013 | 4600 | $13.345 |
| Sale | 10/18/2013 | 5400 | $13.350 |
| Sale | 10/18/2013 | 10000 | $13.340 |
| Sale | 10/18/2013 | 12000 | $13.440 |
| Sale | 10/18/2013 | 19400 | $13.430 |
| Sale | 10/18/2013 | 20000 | $13.290 |
| Sale | 10/18/2013 | 20000 | $13.390 |
| Sale | 10/18/2013 | 20000 | $13.400 |
| Sale | 10/21/2013 | 20000 | $13.450 |
| Sale | 10/22/2013 | 14000 | $13.690 |
| Sale | 10/22/2013 | 16000 | $13.590 |
| Sale | 10/23/2013 | 100 | $13.920 |
| Sale | 10/23/2013 | 500 | $13.870 |
| Sale | 10/23/2013 | 1000 | $13.890 |
| Sale | 10/23/2013 | 1500 | $13.910 |
| Sale | 10/23/2013 | 4400 | $13.850 |
| Sale | 10/23/2013 | 5000 | $13.860 |
| Sale | 10/23/2013 | 5600 | $13.840 |
| Sale | 10/23/2013 | 9000 | $13.850 |
| Sale | 10/23/2013 | 10000 | $13.790 |
| Sale | 10/23/2013 | 14500 | $13.850 |
| Sale | 10/23/2013 | 18400 | $13.900 |
| Sale | 10/25/2013 | 1300 | $13.645 |
| Sale | 10/25/2013 | 18700 | $13.640 |
| Sale | 10/31/2013 | 20000 | $13.260 |
| Sale | 11/4/2013 | 464 | $13.450 |
| Sale | 11/4/2013 | 19536 | $13.440 |
| Sale | 11/4/2013 | 20000 | $13.360 |
| Sale | 11/11/2013 | 20000 | $12.790 |
| Sale | 11/12/2013 | 7200 | $12.860 |
| Sale | 11/12/2013 | 12800 | $12.860 |
| Sale | 11/13/2013 | 1000 | $13.090 |
| Sale | 11/13/2013 | 2000 | $13.110 |
| Sale | 11/13/2013 | 2700 | $13.005 |
| Sale | 11/13/2013 | 2900 | $12.950 |
| Sale | 11/13/2013 | 17000 | $13.100 |
| Sale | 11/13/2013 | 17100 | $12.950 |
| Sale | 11/13/2013 | 17300 | $13.000 |
| Sale | 11/13/2013 | 20000 | $13.000 |
| Sale | 11/13/2013 | 20000 | $13.000 |
| Sale | 11/13/2013 | 20000 | $12.950 |

21

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 11/21/2013 | 100 | $13.000 |
| Sale | 11/22/2013 | 6800 | $13.040 |
| Sale | 11/22/2013 | 7500 | $13.000 |
| Sale | 11/22/2013 | 12500 | $13.001 |
| Sale | 11/22/2013 | 13200 | $13.040 |
| Sale | 12/16/2013 | 20000 | $12.800 |
| Sale | 12/18/2013 | 3600 | $12.860 |
| Sale | 12/18/2013 | 16400 | $12.870 |
| Sale | 12/24/2013 | 500 | $12.745 |
| Sale | 12/24/2013 | 2200 | $12.740 |
| Sale | 12/24/2013 | 8376 | $12.731 |
| Sale | 12/24/2013 | 11724 | $12.740 |
| Sale | 12/24/2013 | 17300 | $12.740 |
| Sale | 12/26/2013 | 400 | $12.800 |
| Sale | 12/26/2013 | 1639 | $12.800 |
| Sale | 12/26/2013 | 3900 | $12.805 |
| Sale | 12/26/2013 | 5700 | $12.800 |
| Sale | 12/26/2013 | 10000 | $12.790 |
| Sale | 12/26/2013 | 18361 | $12.810 |
| Sale | 12/27/2013 | 20000 | $12.790 |
| Sale | 12/30/2013 | 2700 | $12.910 |
| Sale | 12/30/2013 | 7300 | $12.901 |
| Sale | 12/30/2013 | 10000 | $12.880 |
| Sale | 12/31/2013 | 900 | $12.830 |
| Sale | 12/31/2013 | 1500 | $12.835 |
| Sale | 12/31/2013 | 7600 | $12.831 |
| Sale | 12/31/2013 | 10000 | $12.890 |
| Sale | 12/31/2013 | 10000 | $12.910 |
| Sale | 1/2/2014 | 3595 | $12.880 |
| Sale | 1/2/2014 | 6405 | $12.870 |
| Sale | 1/2/2014 | 10000 | $12.990 |
| Sale | 1/10/2014 | 100 | $13.025 |
| Sale | 1/10/2014 | 300 | $12.815 |
| Sale | 1/10/2014 | 4404 | $12.830 |
| Sale | 1/10/2014 | 5596 | $12.820 |
| Sale | 1/10/2014 | 5700 | $12.811 |
| Sale | 1/10/2014 | 9900 | $13.020 |
| Sale | 1/10/2014 | 10000 | $12.990 |
| Sale | 1/13/2014 | 614 | $13.025 |
| Sale | 1/13/2014 | 1100 | $13.040 |
| Sale | 1/13/2014 | 1900 | $13.040 |
| Sale | 1/13/2014 | 3000 | $13.040 |

22

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 1/13/2014 | 3000 | $13.040 |
| Sale | 1/13/2014 | 7000 | $13.040 |
| Sale | 1/13/2014 | 7000 | $13.040 |
| Sale | 1/13/2014 | 8100 | $13.040 |
| Sale | 1/13/2014 | 8900 | $13.040 |
| Sale | 1/13/2014 | 9386 | $13.021 |
| Sale | 1/13/2014 | 10000 | $13.020 |
| Sale | 1/16/2014 | 1000 | $13.620 |
| Sale | 1/16/2014 | 1000 | $13.615 |
| Sale | 1/16/2014 | 8000 | $13.610 |
| Sale | 1/16/2014 | 10000 | $13.610 |
| Sale | 1/21/2014 | 3000 | $13.820 |
| Sale | 1/21/2014 | 7000 | $13.820 |
| Sale | 1/21/2014 | 10000 | $13.720 |
| Sale | 02/13/2014 | 8000 | $13.82 |
| Sale | 03/31/2014 | 8000 | $14.01 |
| Sale | 04/07/2014 | 100 | $14.02 |
| Sale | 04/07/2014 | 3400 | $14.01 |
| Sale | 04/07/2014 | 4500 | $14.01 |
| Sale | 04/21/2014 | 8000 | $13.37 |
| Sale | 04/21/2014 | 8000 | $13.36 |
| Sale | 04/23/2014 | 4000 | $13.41 |
| Sale | 04/23/2014 | 4000 | $13.44 |
| Sale | 05/13/2014 | 5900 | $13.47 |
| Sale | 05/13/2014 | 100 | $13.47 |
| Sale | 6/7/2013 | 1400 | $15.004 |
| Sale | 6/7/2013 | 6600 | $15.000 |
| Sale | 08/18/2014 | 8000 | $12.96 |
| Sale | 08/19/2014 | 8000 | $12.94 |
| Sale | 09/02/2014 | 8000 | $13.32 |
| Sale | 09/05/2014 | 100 | $13.20 |
| Sale | 09/05/2014 | 200 | $13.30 |
| Sale | 09/05/2014 | 4000 | $13.22 |
| Sale | 09/05/2014 | 4000 | $13.25 |
| Sale | 09/05/2014 | 4800 | $13.29 |
| Sale | 09/05/2014 | 5900 | $13.19 |
| Sale | 09/05/2014 | 6000 | $13.16 |
| Sale | 9/24/2013 | 100 | $12.565 |
| Sale | 9/24/2013 | 1000 | $12.544 |
| Sale | 9/24/2013 | 3300 | $12.560 |
| Sale | 9/24/2013 | 3300 | $12.560 |
| Sale | 9/24/2013 | 4300 | $12.540 |

23

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 9/24/2013 | 8000 | $12.521 |
| Sale | 9/24/2013 | 8000 | $12.550 |
| Sale | 9/25/2013 | 2000 | $12.524 |
| Sale | 9/25/2013 | 4000 | $12.521 |
| Sale | 9/25/2013 | 6000 | $12.520 |
| Sale | 9/25/2013 | 8000 | $12.520 |
| Sale | 10/21/2014 | 100 | $12.15 |

**PAUL MATTEN**
**(pfd stock-6.7%,**
**Ser. F)**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 01/22/2014 | 100 | $21.330 |
| Purchase | 01/22/2014 | 200 | $21.340 |
| Purchase | 01/22/2014 | 200 | $21.390 |
| Purchase | 01/22/2014 | 500 | $21.290 |
| Purchase | 01/22/2014 | 1500 | $21.390 |
| Purchase | 01/22/2014 | 2901 | $21.400 |
| Purchase | 01/22/2014 | 3099 | $21.300 |
| Purchase | 01/22/2014 | 3600 | $21.293 |
| Purchase | 01/22/2014 | 4400 | $21.292 |
| Purchase | 01/22/2014 | 7500 | $21.400 |
| Purchase | 1/24/2014 | 3600 | $21.214 |
| Purchase | 1/24/2014 | 4400 | $21.214 |
| Purchase | 1/27/2014 | 1000 | $21.030 |
| Purchase | 1/27/2014 | 3000 | $21.026 |
| Purchase | 1/27/2014 | 3600 | $21.098 |
| Purchase | 1/27/2014 | 4000 | $21.027 |
| Purchase | 1/27/2014 | 4400 | $21.098 |
| Sale | 01/29/2014 | 200 | $21.150 |
| Sale | 01/29/2014 | 400 | $21.156 |
| Sale | 01/29/2014 | 594 | $21.270 |
| Sale | 01/29/2014 | 881 | $21.159 |
| Sale | 01/29/2014 | 1700 | $21.275 |
| Sale | 01/29/2014 | 2606 | $21.204 |
| Sale | 01/29/2014 | 2954 | $21.200 |
| Sale | 01/29/2014 | 3100 | $21.200 |
| Sale | 01/29/2014 | 3565 | $21.180 |
| Sale | 1/30/2014 | 1800 | $21.420 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 1/30/2014 | 1800 | $21.420 |
| Sale | 1/30/2014 | 2200 | $21.427 |
| Sale | 1/30/2014 | 2200 | $21.427 |
| Sale | 1/30/2014 | 3400 | $21.250 |
| Sale | 1/30/2014 | 4600 | $21.257 |
| Sale | 3/19/2014 | 2500 | $22.900 |
| Sale | 3/19/2014 | 13418 | $22.880 |
| Sale | 3/19/2014 | 82 | $22.895 |

**MATTEN FAMILY TRUST DECENDENTS (pfd stock-6.7%, Ser. F)**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 1/22/2014 | 600 | $21.39 |
| Purchase | 1/22/2014 | 1400 | $21.41 |
| Purchase | 1/22/2014 | 2000 | $21.40 |
| Purchase | 1/24/2014 | 100 | $21.09 |
| Purchase | 1/24/2014 | 800 | $21.10 |
| Purchase | 1/24/2014 | 1100 | $21.10 |
| Purchase | 1/27/2014 | 900 | $21.04 |
| Purchase | 1/27/2014 | 1100 | $21.04 |
| Purchase | 1/31/2014 | 2000 | $20.98 |
| Sale | 01/30/2014 | 400 | $21.41 |
| Sale | 01/30/2014 | 607 | $21.41 |
| Sale | 01/30/2014 | 900 | $21.26 |
| Sale | 01/30/2014 | 993 | $21.42 |
| Sale | 01/30/2014 | 1100 | $21.26 |
| Sale | 02/06/2014 | 2000 | $21.22 |
| Sale | 03/19/2014 | 2000 | $22.91 |
| Sale | 03/19/2014 | 2000 | $22.83 |

**PAUL MATTEN 09/20/2014 CALL 13**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 09/08/2014 | 5000 | $0.35 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 09/08/2014 | 2000 | $0.30 |
| Purchase | 09/10/2014 | 6000 | $0.25 |
| Purchase | 09/10/2014 | 500 | $0.20 |
| Sell | 09/10/2014 | 500 | $0.20 |
| Sell | 09/11/2014 | 1000 | $0.10 |

**PAUL MATTEN**
**CF**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 7/5/2013 | 100 | $14.18 |
| Purchase | 8/12/2013 | 100 | $13.77 |
| Purchase | 8/13/2013 | 118 | $13.39 |
| Purchase | 11/20/2013 | 82 | $12.95 |
| Purchase | 1/10/2014 | 100 | $12.70 |
| Purchase | 04/28/2014 | 160 | $12.83 |
| Purchase | 05/21/2014 | 149 | $12.31 |
| Purchase | 06/27/2014 | 91 | $12.43 |
| Purchase | 08/18/2014 | 244 | $12.96 |
| Purchase | 09/12/2014 | 156 | $12.97 |
| Purchase | 10/03/2014 | 200 | $11.96 |
| Sale | 1/21/2014 | 100 | $13.84 |

**MATTEN**
**FAMILY TRUST**
**DECENDENTS***

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 3/5/2013 | 1000 | $13.420 |
| Purchase | 3/5/2013 | 100 | $13.479 |
| Purchase | 3/5/2013 | 1100 | $13.480 |
| Purchase | 3/5/2013 | 1,800 | $13.500 |
| Purchase | 3/5/2013 | 2,000 | $13.350 |
| Purchase | 3/20/2013 | 200 | $14.179 |
| Purchase | 3/20/2013 | 800 | $14.180 |
| Purchase | 3/22/2013 | 1,000 | $14.4068 |
| Purchase | 3/22/2013 | 1,000 | $14.3568 |
| Purchase | 3/22/2013 | 1,000 | $14.3099 |
| Purchase | 3/25/2013 | 1,000 | $14.0200 |
| Purchase | 3/25/2013 | 1,000 | $14.0870 |

26

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 3/26/13 | 400 | $14.1172 |
| Purchase | 3/26/13 | 600 | $14.1199 |
| Purchase | 3/26/13 | 1,000 | $14.0399 |
| Purchase | 3/27/2013 | 1,000 | $14.61 |
| Purchase | 3/27/2013 | 1,000 | $14.57 |
| Purchase | 3/27/2013 | 1,000 | $14.4682 |
| Purchase | 3/27/2013 | 1,000 | $14.41 |
| Purchase | 3/28/2013 | 1,000 | $14.36 |
| Purchase | 3/28/2013 | 1,000 | $14.6982 |
| Purchase | 4/1/2013 | 500 | $14.36 |
| Purchase | 4/1/2013 | 500 | $14.3599 |
| Purchase | 4/1/2013 | 1,000 | $14.4599 |
| Purchase | 4/1/2013 | 1,000 | $14.5383 |
| Purchase | 4/3/2013 | 1,000 | $14.46 |
| Purchase | 4/3/2013 | 1,000 | $14.3699 |
| Purchase | 4/4/2013 | 1,000 | $14.5685 |
| Purchase | 4/5/2013 | 400 | $14.7372 |
| Purchase | 4/5/2013 | 600 | $14.7399 |
| Purchase | 4/5/2013 | 1,000 | $14.49 |
| Purchase | 4/5/2013 | 1,000 | $14.6388 |
| Purchase | 4/5/2013 | 1,000 | $14.76 |
| Purchase | 6/3/2013 | 1,200 | $15.01 |
| Purchase | 6/5/2013 | 100 | $15.18 |
| Purchase | 6/5/2013 | 400 | $15.18 |
| Purchase | 6/5/2013 | 700 | $15.18 |
| Purchase | 6/7/2013 | 200 | $15.05 |
| Purchase | 6/7/2013 | 406 | $15.00 |
| Purchase | 6/7/2013 | 794 | $14.99 |
| Purchase | 6/7/2013 | 1,000 | $15.05 |
| Purchase | 6/7/2013 | 1,200 | $14.90 |
| Purchase | 6/10/2013 | 1,000 | $14.79 |
| Purchase | 6/11/2013 | 1,000 | $14.51 |
| Purchase | 6/13/2013 | 2,000 | $14.01 |
| Purchase | 6/27/2013 | 2,000 | $15.15 |
| Purchase | 7/1/2013 | 2,000 | $14.84 |
| Purchase | 7/2/2013 | 800 | $14.69 |
| Purchase | 7/2/2013 | 1,200 | $14.69 |
| Purchase | 7/2/2013 | 2,000 | $14.82 |
| Purchase | 7/8/2013 | 100 | $14.35 |
| Purchase | 7/8/2013 | 100 | $14.35 |
| Purchase | 7/8/2013 | 100 | $14.35 |
| Purchase | 7/8/2013 | 100 | $14.35 |

27

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|-------------|------|--------|-------|
| Purchase | 7/8/2013 | 300 | $14.25 |
| Purchase | 7/8/2013 | 1,300 | $14.35 |
| Purchase | 7/25/2013 | 2,000 | $14.33 |
| Purchase | 7/26/2013 | 2,000 | $14.27 |
| Purchase | 7/31/2013 | 2,000 | $14.54 |
| Purchase | 8/1/2013 | 2000 | $14.28 |
| Purchase | 8/8/2013 | 2000 | $13.58 |
| Purchase | 8/12/2013 | 2000 | $13.79 |
| Purchase | 10/23/2013 | 600 | $13.07 |
| Purchase | 10/23/2013 | 2000 | $13.02 |
| Purchase | 10/23/2013 | 3400 | $13.07 |
| Purchase | 10/30/2013 | 2000 | $13.44 |
| Purchase | 10/30/2013 | 2000 | $13.27 |
| Purchase | 10/31/2013 | 2000 | $13.02 |
| Purchase | 11/4/2013 | 2000 | $13.30 |
| Purchase | 02/06/2014 | 3,000 | $13.72 |
| Purchase | 02/12/2014 | 1,000 | $13.54 |
| Purchase | 03/19/2014 | 200 | $13.88 |
| Purchase | 03/19/2014 | 1,800 | $13.89 |
| Purchase | 03/19/2014 | 2,000 | $14.31 |
| Purchase | 03/19/2014 | 2,000 | $14.31 |
| Purchase | 03/19/2014 | 2,000 | $14.23 |
| Purchase | 03/19/2014 | 2,000 | $13.90 |
| Purchase | 03/27/2014 | 2,000 | $13.80 |
| Purchase | 04/01/2014 | 1,400 | $13.98 |
| Purchase | 04/01/2014 | 2,600 | $13.98 |
| Purchase | 04/03/2014 | 100 | $13.91 |
| Purchase | 04/03/2014 | 662 | $13.92 |
| Purchase | 04/03/2014 | 900 | $13.91 |
| Purchase | 04/03/2014 | 2,338 | $13.91 |
| Purchase | 04/10/2014 | 2,000 | $13.37 |
| Purchase | 04/11/2014 | 800 | $13.25 |
| Purchase | 04/11/2014 | 1,200 | $13.25 |
| Purchase | 04/25/2014 | 2,000 | $13.00 |
| Purchase | 04/25/2014 | 2,000 | $13.00 |
| Purchase | 04/25/2014 | 2,000 | $13.02 |
| Purchase | 04/28/2014 | 2,000 | $12.84 |
| Purchase | 05/08/2014 | 2,000 | $12.68 |
| Purchase | 05/21/2014 | 702 | $12.19 |
| Purchase | 05/21/2014 | 1,298 | $12.20 |
| Purchase | 05/21/2014 | 3,000 | $12.65 |
| Purchase | 05/21/2014 | 3,000 | $12.62 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 05/21/2014 | 4,000 | $12.29 |
| Purchase | 05/21/2014 | 6,000 | $12.26 |
| Purchase | 05/22/2014 | 4,000 | $12.10 |
| Purchase | 05/22/2014 | 4,000 | $12.07 |
| Purchase | 06/11/2014 | 2,000 | $12.02 |
| Purchase | 06/11/2014 | 2,000 | $11.93 |
| Purchase | 06/11/2014 | 2,000 | $11.79 |
| Purchase | 06/12/2014 | 2,000 | $11.82 |
| Purchase | 06/17/2014 | 2,000 | $12.06 |
| Purchase | 06/18/2014 | 600 | $11.95 |
| Purchase | 06/18/2014 | 1,400 | $11.94 |
| Purchase | 06/18/2014 | 2,000 | $12.02 |
| Purchase | 06/18/2014 | 2,000 | $12.01 |
| Purchase | 07/09/2014 | 2,000 | $12.37 |
| Purchase | 07/09/2014 | 2,000 | $12.36 |
| Purchase | 09/12/2014 | 2,000 | $12.55 |
| Purchase | 09/12/2014 | 2,000 | $12.56 |
| Purchase | 09/12/2014 | 2,000 | $12.55 |
| Purchase | 09/12/2014 | 4,000 | $12.68 |
| Purchase | 09/15/2014 | 2,000 | $12.47 |
| Purchase | 09/16/2014 | 2,000 | $12.43 |
| Purchase | 09/16/2014 | 2,000 | $12.57 |
| Purchase | 09/17/2014 | 2,000 | $12.61 |
| Purchase | 09/18/2014 | 4,000 | $12.49 |
| Purchase | 09/18/2014 | 4,000 | $12.39 |
| Purchase | 09/24/2014 | 500 | $12.18 |
| Purchase | 09/25/2014 | 4,000 | $12.06 |
| Purchase | 09/30/2014 | 3,500 | $12.11 |
| Purchase | 10/01/2014 | 1,000 | $12.04 |
| Purchase | 10/08/2014 | 2,000 | $11.84 |
| Purchase | 10/08/2014 | 4,000 | $11.86 |
| Purchase | 10/09/2014 | 2,000 | $11.88 |
| Purchase | 10/29/2014 | 10,000 | $10.15 |
| Purchase | 10/29/2014 | 10,000 | $9.91 |
| | | | |
| Sale | 3/11/2013 | 2,000 | $14.3202 |
| Sale | 3/20/2013 | 1,000 | $14.3001 |
| Sale | 3/25/2013 | 300 | $14.1915 |
| Sale | 3/25/2013 | 700 | $14.1900 |
| Sale | 3/26/2013 | 1,000 | $14.1825 |
| Sale | 3/26/2013 | 1,000 | $14.2018 |

29

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 3/27/2013 | 1,000 | $14.69 |
| Sale | 3/27/2013 | 1,000 | $14.48 |
| Sale | 3/27/2013 | 1,000 | $14.7218 |
| Sale | 3/27/2013 | 1,000 | $14.57 |
| Sale | 3/27/2013 | 1,000 | $14.5210 |
| Sale | 3/28/2013 | 200 | $14.8301 |
| Sale | 3/28/2013 | 800 | $14.8328 |
| Sale | 3/28/2013 | 1,000 | $14.4718 |
| Sale | 3/28/2013 | 1,000 | $14.69 |
| Sale | 4/1/2013 | 1,000 | $14.4617 |
| Sale | 4/2/2013 | 100 | $14.655 |
| Sale | 4/2/2013 | 900 | $14.6501 |
| Sale | 4/2/2013 | 1,000 | $14.6701 |
| Sale | 4/3/2013 | 200 | $14.535 |
| Sale | 4/3/2013 | 300 | $14.6415 |
| Sale | 4/3/2013 | 300 | $14.65 |
| Sale | 4/3/2013 | 400 | $14.66 |
| Sale | 4/3/2013 | 800 | $14.5301 |
| Sale | 4/4/2013 | 2 | $14.785 |
| Sale | 4/4/2013 | 400 | $14.6728 |
| Sale | 4/4/2013 | 600 | $14.6715 |
| Sale | 4/4/2013 | 998 | $14.78 |
| Sale | 4/4/2013 | 1,000 | $14.69 |
| Sale | 4/5/2013 | 1,000 | $14.69 |
| Sale | 4/5/2013 | 1,000 | $14.79 |
| Sale | 4/5/2013 | 2,000 | $14.79 |
| Sale | 4/8/2013 | 1,000 | $14.9812 |
| Sale | 5/9/2013 | 1,000 | $17.36 |
| Sale | 5/28/2013 | 200 | $17.53 |
| Sale | 5/28/2013 | 1,800 | $17.34 |
| Sale | 6/13/2013 | 800 | $14.76 |
| Sale | 6/13/2013 | 1,200 | $14.65 |
| Sale | 6/27/2013 | 100 | $15.18 |
| Sale | 6/27/2013 | 811 | $15.15 |
| Sale | 6/27/2013 | 1,089 | $15.18 |
| Sale | 7/26/2013 | 700 | $14.63 |
| Sale | 7/26/2013 | 1,300 | $14.63 |
| Sale | 7/30/2013 | 100 | $14.94 |
| Sale | 7/30/2013 | 1900 | $14.90 |
| Sale | 10/23/2013 | 4000 | $13.85 |
| Sale | 10/23/2013 | 4000 | $13.85 |
| Sale | 10/25/2013 | 2000 | $13.64 |

**Paul Matten - Schedule A**
**American Realty Capital Properties Inc. Transactions**
**Class Period: September 7, 2011 Through October 29, 2014**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Sale | 11/4/2013 | 2000 | $13.69 |
| Sale | 1/16/2014 | 4000 | $13.60 |
| Sale | 1/21/2014 | 3000 | $13.82 |
| Sale | 1/21/2014 | 3000 | $13.98 |
| Sale | 9/15/2014 | 2000 | $12.46 |
| Sale | 10/29/2014 | 10000 | $9.97 |

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Simon Abadi ("Plaintiff"), hereby certifies as follows:

1.      I have reviewed the Amended Class Action Complaint being filed on my behalf and on behalf of all others similarly situated and authorized its filing.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.      I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      I, together with my wife and children, owned 2,085 shares of Cole Real Estate Investments, Inc. ("CREI") at the time of the Merger with American Realty Capital Properties, Inc. ("ARCP"). These shares were exchange in the Merger for ARCP shares, which we continued to hold through October 28, 2014.

5.      I have not served as a class representative in a federal securities case in the last three years.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7.      The matters stated in this certification are true to the best of my current knowledge, information and belief.

8.      I hereby certify, under penalty of perjury, that the foregoing is true and correct.

DATED:  April 17, 2015

_____
SIMON ABADI

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Mitchell Ellis, duly certify and say, as to the claims asserted under the federal securities

laws, that:

1.    I have reviewed a complaint filed in this action.

2.    I did not purchase the security that is the subject of this action at the direction of

plaintiff's counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including

providing testimony at deposition and trial, if necessary.

4.    My transaction(s) in American Realty Capital Properties, Inc. securities which are the

subject of this litigation during the class period (are) set forth in the chart attached hereto.

5.    Within the last 3 years, I have not sought to serve nor have I served as a class

representative in any federal securities fraud case other than in this pending action.

6.    I will not accept any payment for serving as a representative party on behalf of the

class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the

court, including any award for reasonable costs and expenses (including lost wages) directly relating

to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct.  Executed

this __14__ day of April 2015.

_____
Mitchell Ellis

**Mitchell Ellis**
**Transactions in American Realty Capital Properties, Inc. Securities**

| Date of Transaction | Securities | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|---|
| 12/12/2013 | ARCP | B | 24,350 | 12.36 |
| 12/12/2013 | ARCP | B | 5,100 | 12.36 |
| 10/3/2014 | ARCPP | B | 2,200 | 23.59 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, Bonnie Ellis, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a complaint filed in this action.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in American Realty Capital Properties, Inc. securities which are the subject of this litigation during the class period (are) set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case other than in this pending action.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this _14_ day of April 2015.

_Bonnie Ellis_
Bonnie Ellis

**Bonnie Ellis**
**Transactions in American Realty Capital Properties, Inc. Securities**

| Date of Transaction | Securities | Buy (B) or Sell (S) | Quantity | Price ($) |
|---|---|---|---|---|
| 10/3/2014 | ARCPP | B | 6,300 | 23.43 |
| 10/3/2014 | ARCPP | B | 4,580 | 23.43 |

<u>CERTIFICATION</u>

Noah Bender ("Plaintiff") hereby states:

1.  Plaintiff makes this certification pursuant to the Private Securities Litigation Reform Act of 1995.

2.  Plaintiff has reviewed the Amended Class Action Complaint to be filed on his behalf and on behalf of a proposed Class (the "Complaint") and has authorized its filing on his behalf.

3.  Plaintiff did not purchase any securities of American Realty Capital Properties, Inc. ("ARCP") at the direction of his counsel or in order to participate in this private action.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.  Plaintiff's transactions in ARCP securities during the class period set forth in Complaint, are set forth on Schedule A attached hereto.

6.  Plaintiff has not served nor sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rate share of any recovery, or as ordered or approved by the court including the award of a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury the foregoing is true and correct.

Executed this 13th day of April 2014

_____
Noah Bender

Schedule A

| AssetClass | Symbol | Put/Call | Buy/Sell | Proceeds | Price | OrderType | Quantity | TradeDate |
|---|---|---|---|---|---|---|---|---|
| **Closed positions** | | | | | | | | |
| STK | ARCP | | BUY | -2578 | 12.89 | LMT | 200 | 20131017 |
| STK | ARCP | | BUY | -1289 | 12.89 | LMT | 100 | 20131017 |
| STK | ARCP | | BUY | -2002.5 | 13.35 | LMT | 150 | 20131021 |
| STK | ARCP | | BUY | -1912.5 | 12.75 | LMT | 150 | 20131230 |
| | | | | | | | | |
| STK | ARCP | | BUY | -1410 | 14.1 | LMT | 100 | 20140219 |
| STK | ARCP | | BUY | -1230 | 12.3 | LMT | 100 | 20140530 |
| STK | ARCP | | BUY | -1209.5 | 12.095 | LMT | 100 | 20140619 |
| STK | ARCP | | BUY | -1209.99 | 12.0999 | LMT | 100 | 20140619 |
| STK | ARCP | | BUY | -2488 | 12.44 | LMT | 200 | 20140620 |
| STK | ARCP | | BUY | -2530 | 12.65 | LMT | 200 | 20140701 |
| STK | ARCP | | SELL | 3516 | 8.79 | LMT | -400 | 20141029 |
| STK | ARCP | | SELL | 2808 | 9.36 | LMT | -300 | 20141031 |
| STK | ARCP | | SELL | 6552 | 9.36 | LMT | -700 | 20141031 |
| Total | | | | -4983.49 | | | 0 | |
| | | | | | | | | |
| OPT | ARCP 140222C00012500 | C | BUY | -65 | 0.65 | LMT | 1 | 20140106 |
| OPT | ARCP 140222C00012500 | C | BUY | -65 | 0.65 | LMT | 1 | 20140106 |
| OPT | ARCP 140222C00012500 | C | SELL | 310 | 1.55 | LMT | -2 | 20140127 |
| OPT | ARCP 141018P00012500 | P | BUY | -300 | 0.3 | LMT | 10 | 20140523 |
| OPT | ARCP 141018P00012500 | P | SELL | 1000 | 1 | LMT | -10 | 20140523 |
| OPT | ARCP 150417P00014000 | P | BUY | -13275 | 5.31 | LMT | 25 | 20141031 |
| OPT | ARCP 150417P00014000 | P | SELL | 3925 | 1.57 | LMT | -25 | 20140904 |
| OPT | ARCP 160115P00012500 | P | BUY | -13590 | 4.53 | LMT | 30 | 20141030 |
| OPT | ARCP 160115P00012500 | P | SELL | 2140 | 2.14 | LMT | -10 | 20140623 |
| OPT | ARCP 160115P00012500 | P | SELL | 4100 | 2.05 | LMT | -20 | 20140701 |
| OPT | ARCP 160115P00015000 | P | BUY | -21440 | 6.7 | LMT | 32 | 20141031 |
| OPT | ARCP 160115P00015000 | P | SELL | 7216 | 3.28 | LMT | -22 | 20140729 |
| OPT | ARCP 160115P00015000 | P | SELL | 3500 | 3.5 | LMT | -10 | 20140814 |
| Total | | | | -26544 | | | 0 | |
| | | | | | | | | |
| **Positions still open.** | | | | | | | | |
| OPT | ARCP 160115C00015000 | C | BUY | -1350 | 0.45 | LMT | 30 | 20140701 |
| | | | | | | | | |
| OPT | ARCP 150417P00011000 | P | BUY | -1200 | 0.4 | LMT | 30 | 20140916 |
| OPT | ARCP 150417P00013000 | P | SELL | 1778 | 1.27 | LMT | -14 | 20140916 |
| OPT | ARCP 150417P00013000 | P | SELL | 2032 | 1.27 | LMT | -16 | 20140916 |

## CERTIFICATION

The IRA FBO John Esposito by Dr. John G. Esposito, Jr. ("Plaintiff") hereby states:

1. Plaintiff makes this certification pursuant to the Private Securities Litigation Reform Act of 1995.

2. Plaintiff has reviewed the Amended Class Action Complaint (the "Complaint") which was filed in this action and authorizes the filing of a similar complaint on its behalf and on behalf of a proposed Class.

3. Plaintiff did not purchase any securities or related securities of American Realty Capital Properties, Inc. ("ARCP") at the direction of his counsel or in order to participate in this private action.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in the securities that are the subject of this action during the class period set forth in the Complaint, are set forth on attached Schedule A.

6. Plaintiff has not served nor sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years except in the action entitled *Esposito, et al. v. Brown, et al.*, C.A. No. 2: 13-cv-02125 in the Western District of Washington at Seattle.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rate share of any recovery, or as ordered or approved by the court including the award of a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury the foregoing is true and correct.

Executed this     th day of October, 2015.

10-16-15

Dr. John G. Esposito on behalf of the IRA FBO John Esposito

**SCHEDULE A**

| DATE | SECURITY | SHARES | TRANSACTION TYPE | CONSIDERATION |
|------|----------|--------|------------------|---------------|
| March 4, 2013 | ARCP Common Stock | 700 | Purchase | $12.57/share |
| January 3, 2014 | ARCP Common Stock | 211 | Exchange | 408.052 shares of ARCT IV |
|  | ARCP Preferred Series F | 242 |  |  |
| April 23, 2014 | ARCP Preferred Series F | 242 | Sale | $23.60/share |
| May 21, 2014 | ARCP Common Stock | 600 | Purchase | $12.29/share |
|  |  |  |  |  |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 30, 2016.

s/ DARREN J. ROBBINS
DARREN J. ROBBINS

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:darrenr@rgrdlaw.com

1186483_1

## Mailing Information for a Case 1:15-mc-00040-AKH In re American Realty Capital Properties, Inc. Litigation

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Simon Abraham**
  jabraham@aftlaw.com

- **Robin L. Alperstein**
  ralperstein@beckerglynn.com,hhill@beckerglynn.com,saltreuter@beckerglynn.com

- **Antonia Marie Apps**
  aapps@milbank.com,tlevendosky@milbank.com,ggreen@milbank.com,USANYS.ECF@USDOJ.GOV

- **Adam M. Apton**
  aapton@zlk.com

- **Gary Frederick Bendinger**
  gbendinger@sidley.com,nyefiling@sidley.com

- **Stanley D Bernstein**
  bernstein@bernlieb.com,tmaloney@bernlieb.com,ecf@bernlieb.com

- **Jeffrey Craig Block**
  jeff@blockesq.com,jason@blockesq.com,pacer-blockleviton-9062@ecf.pacerpro.com

- **Dwight Phillip Bostwick**
  dbostwick@zuckerman.com

- **Bruce Roger Braun**
  bbraun@sidley.com,mewalker@sidley.com,kbasaria@sidley.com,jsanford@sidley.com,tflint@sidley.com,nconrad@sidley.com,nyefiling@sidley.com,thargadon@sidley.com,catherine.stewart@

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com,lmix@rgrdlaw.com

- **Kevin Koon-Pon Chan**
  kchan@rosenlegal.com

- **Alexandra Rebecca Clark**
  aclark@pkbllp.com

- **Jason Robert D'Agnenica**
  jasondag@ssbny.com

- **Glen DeValerio**
  gdevalerio@bermandevalerio.com,bdentremont@bermandevalerio.com,ecf@bermandevalerio.com,bmccarthy@bermandevalerio.com

- **Bruce Whitney Dona**
  bruce.dona@ksfcounsel.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com,kcook@rgrdlaw.com

- **Scott Alexander Edelman**
  sedelman@milbank.com

- **H. Miriam Farber**
  mfarber@shearman.com,CourtAlert@Shearman.com,manattyoffice@shearman.com

- **Meagan Alicia Farmer**
  mfarmer@gardylaw.com

- **Reid Mason Figel**
  rfigel@khhte.com,oames@khhte.com,gfording@khhte.com

- **Robert Craig Finkel**
  rfinkel@wolfpopper.com,cdunleavy@wolfpopper.com,mgianfagna@wolfpopper.com,nmackiel@wolfpopper.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Adam Fotiades**
  afotiades@zuckerman.com

- **Molly Bruder Fox**
  mbfox@steptoe.com

- **Christopher Louis Garcia**
  christopher.garcia@weil.com,evert.christensen@weil.com,MCO.ECF@weil.com

- **James Philip Gillespie**
  jgillespie@kirkland.com,kevin.mccarthy@kirkland.com,kenymanagingclerk@kirkland.com

- **Daniel Zachary Goldman**
  dgoldman@pkbllp.com

- **Andrew Edward Goldsmith**
  agoldsmith@khhte.com,aholloman@khhte.com

- **Douglas W. Greene**
  greened@lanepowell.com,davisc@lanepowell.com,tsuboin@lanepowell.com,mitchelll@lanepowell.com,flabela@lanepowell.com,Matsushitat@lanepowell.com,Docketing-SEA@lanepowell.com,lanep@lanepowell.com,schaera@lanepowell.com

- **Theresa Hsin-Yi Gue**
  tgue@pkbllp.com

- **Adam Selim Hakki**
  ahakki@shearman.com,Courtalert@shearman.com,manattyoffice@shearman.com

- **John Louis Hardiman**
  hardimanj@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **David Charles Harrison**
  dharrison@lowey.com

- **Barbara J. Hart**
  bhart@lowey.com

- **Steven P. Harte**
  steven@blockesq.com,pacer-blockleviton-9062@ecf.pacerpro.com

- **William Scott Holleman**
  ScottH@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Geoffrey Coyle Jarvis**
  gjarvis@ktmc.com,mswift@ktmc.com

- **Frank James Johnson**
  frankj@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Rebecca M Katz**
  rkatz@katzlawnewyork.com,disaacson@motleyrice.com,dabel@motleyrice.com,lkorenblit@motleyrice.com,kweil@motleyrice.com

- **Joshua David Kaye**
  jkaye@paulweiss.com

- **Christopher J. Keller**
  ckeller@labaton.com,ElectronicCaseFiling@labaton.com

- **Robert S. Khuzami**
  robert.khuzami@kirkland.com,kenymanagingclerk@kirkland.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Lawrence Paul Kolker**
  kolker@whafh.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com,mao_fednational@paulweiss.com

- **Angel P. Lau**
  alau@rgrdlaw.com,tdevries@rgrdlaw.com

- **Justin David Lerer**
  jlerer@paulweiss.com

- **Michelle Lynn Levin**
  mlevin@steptoe.com,pparker@steptoe.com

- **Daniel Craig Lewis**
  daniel.lewis@shearman.com,CourtAlert@Shearman.com,gina.seong@shearman.com,manattyoffice@shearman.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Howard Theodore Longman**
  tsvi@aol.com

- **John Phillip MacNaughton**
  jpm@mmmlaw.com,wew@mmmlaw.com,elarson@mmmlaw.com

- **Michael David Margulies**
  mmargulies@bressler.com

- **Rita Kathleen Maxwell**
  rita.maxwell@bracewelllaw.com

- **Francis Paul McConville**
  fmcconville@labaton.com,lmehringer@labaton.com

- **Donald Alan Migliori**
  dmigliori@motleyrice.com

- **Michael Campion Miller**
  mmiller@steptoe.com,pparker@steptoe.com,cjenkins@steptoe.com

- **Mark Tamerlane Millkey**
  mmillkey@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Beth Mueller**
  beth.mueller@kirkland.com,kenymanagingclerk@kirkland.com

- **William H. Narwold**
  bnarwold@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Shawn Patrick Naunton**
  snaunton@zuckerman.com,jchen@zuckerman.com

- **Gregory Mark Nespole**
  nespole@whafh.com

- **Jonathan Ohring**
  johring@milbank.com,sbremer@milbank.com,nfriedman@milbank.com,mbarrow@milbank.com,ggreen@milbank.com,cclaxton@milbank.com

- **Bradley E Oppenheimer**
  boppenheimer@khhte.com,ecf-780f0d54d6a1@ecf.pacerpro.com,gfording@khhte.com

- **Jason Parish**
  jason.parish@kirkland.com,kenymanagingclerk@kirkland.com

- **Guy Petrillo**
  gpetrillo@pkbllp.com,bryan.block@dechert.com,guy.petrillo@usdoj.gov

- **Ashley M. Price**
  APrice@rgrdlaw.com

- **Fei-Lu Qian**
  fqian@wolfpopper.com

- **Leah Margaret Quadrino**
  lquadrino@steptoe.com,pparker@steptoe.com

- **Daniel Brett Rehns**
  drehns@hrsclaw.com

- **Julie Goldsmith Reiser**
  jreiser@cohenmilstein.com

- **Lorin L. Reisner**
  L.Reisner@paulweiss.com,mao_fednational@paulweiss.com

- **Joseph F. Rice**
  jrice@motleyrice.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com,karenc@rgrdlaw.com,jcaringal@rgrdlaw.com

- **Lara Elizabeth Romansic**
  lromansic@steptoe.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Peter George Safirstein**
  psafirstein@safirsteinmetcalf.com,sfeerick@safirsteinmetcalf.com

- **Michael Gerard Scavelli**
  mscavelli@steptoe.com,pparker@steptoe.com,cjenkins@steptoe.com

- **Jed Mastren Schwartz**
  jschwartz@milbank.com,lknoke@milbank.com,ggreen@milbank.com,calipio@milbank.com

- **Joseph R. Seidman**
  seidman@bernlieb.com

- **Jonathan Lucas Shapiro**
  jshapiro@ebglaw.com,nyma@ebglaw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Thomas Michael Skelton**
  tskelton@lowey.com

- **Richard William Slack**
  richard.slack@weil.com,MCO.ECF@weil.com,nymao@ecf.pacerpro.com

- **Patrick C Smith**
  psmith@dehay.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com,mao_fednational@paulweiss.com

- **Kendra L Stead**
  kstead@sidley.com,efilingnotice@sidley.com

- **Michael Howard Steinberg**
  steinbergm@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Michael Walter Stocker**
  mstocker@labaton.com,electroniccasefiling@labaton.com

- **William Taylor**
  wtaylor@zuckerman.com

- **Steven Jeffrey Toll**
  stoll@cohenmilstein.com,efilings@cohenmilstein.com

- **Matthew Tracy**
  tracy.m@wsllp.com

- **Anil Karim Vassanji**
  vassanjia@sullcrom.com,s&cmanagingclerk@sullcrom.com

- **Melanie Elizabeth Walker**
  mewalker@sidley.com,efilingnotice@sidley.com

- **Reid Weingarten**
  rweingarten@steptoe.com

- **Joseph Harry Weiss**
  jweiss@weisslawllp.com,infony@weisslawllp.com,exec@weisslawllp.com

- **Theodore Von Wells , Jr**
  twells@paulweiss.com,mao_fednational@paulweiss.com

- **Tamar Schwartz Wise**
  twise@cozen.com,gburwa@cozen.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Genevieve Graeme York-Erwin**
  YorkErwinG@lanepowell.com

- **Michael B. de Leeuw**
  mdeleeuw@cozen.com,gburwa@cozen.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Ar Capital LLC
,

David              C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101
```