UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

In re AMERICAN REALTY CAPITAL   :   Civil Action No. 1:15-mc-00040-AKH
PROPERTIES, INC. LITIGATION   :
——————————————————————   :   <u>CLASS ACTION</u>
  :
This Document Relates To:   :
  :
    ALL ACTIONS.   :
—————————————————————— x

PLAINTIFFS' OPPOSITION TO THE ARCP DEFENDANTS' MOTION FOR PROTECTIVE
ORDER WITH RESPECT TO INVESTIGATION MATERIALS

**[REDACTED]**

1285936_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

     A.    Overview of the Whistleblower Investigation and the Restatement Audit Work ................................................................................................................3

     B.    ARCP Cannot Meet the Heavy Burden to Shield the Investigation Materials from Discovery ................................................................................5

          1.    Attorney-Client Privilege........................................................................5

          2.    Work Product Protection..........................................................................6

     C.    ARCP Waived Any Potentially Applicable Privilege or Protection by Providing the Investigation Materials to GT .........................................................7

          1.    There Is No Doubt that the Investigation Materials Were Disclosed to GT ..................................................................................................7

          2.    Disclosure of the Investigation Materials to GT Resulted in Waiver of Any Work Product Protection that Potentially Applied ........................12

     D.    The Investigation Materials Were Not Protected in the First Place......................18

          1.    The Investigation Materials Prepared by EY Should Be Produced..........19

               a.    ARCP Has Not Met Its Burden of Showing that the Investigation Materials Prepared by EY Should Be Protected ................................................................................19

               b.    The EY Materials Would Have Been Prepared in Substantially Similar Form Irrespective of the Prospect of Litigation................................................................................21

          2.    The Documents ARCP Instructed Teneo to Withhold Must Be Produced ................................................................................................24

          3.    The Documents ARCP Has Instructed GT to Withhold Must Be Produced ................................................................................................28

III.    CONCLUSION................................................................................................29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
 No. 08 Civ. 7508 (SAS), 2011 U.S. Dist. LEXIS 116850
 (S.D.N.Y. Oct. 3, 2011) ........................................................................................5

*Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*,
 240 F.R.D. 96 (S.D.N.Y. 2007) ....................................................................6, 21, 23

*Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*,
 252 F.R.D. 163 (S.D.N.Y. 2008) .........................................................................20

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*,
 171 F. Supp. 3d 136 (S.D.N.Y. 2016)...................................................................25

*Calvin Klein Trademark Tr. v. Wachner*,
 198 F.R.D. 53 (S.D.N.Y. 2000) .......................................................................26, 27

*Fine v. ESPN, Inc.*,
 No. 5:12-cv-0836, 2015 U.S. Dist. LEXIS 68704
 (N.D.N.Y. May 28, 2015)...............................................................................20, 26

*First Horizon Nat'l Corp. v. Hous. Cas. Co.*,
 No. 2:15-cv-2235-SHL-dkv, 2016 U.S. Dist. LEXIS 142332
 (W.D. Tenn. Oct. 5, 2016) ...................................................................................15

*Grant Thornton, LLP v. FDIC*,
 535 F. Supp. 2d 676 (S.D. W. Va. 2007), *rev'd in part on other grounds*,
 *Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008) ....................................15

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
 No. 02 Civ 7955 DLC, 2003 WL 21998674
 (S.D.N.Y. Aug. 25, 2003).....................................................................................26

*In re Copper Mkt. Antitrust Litig.*,
 200 F.R.D. 213 (S.D.N.Y. 2001) ...........................................................................27

*In re County of Erie*,
 473 F.3d 413 (2d Cir. 2007)....................................................................................5

*In re Gen. Motors LLC Ignition Switch Litig.*,
 80 F. Supp. 3d 521 (S.D.N.Y. 2015)........................................................................5

*In re Grand Jury Subpoena*,
 510 F.3d 180 (2d Cir. 2007).....................................................................................7

- ii -

**Page**

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  230 F.R.D. 293 (S.D.N.Y. 2003) ...........................................................23

*In re Kidder Peabody Sec. Litig.*,
  168 F.R.D. 459 (S.D.N.Y 1996) ...........................................................24

*In re King Pharm., Inc. Sec. Litig.*,
  No. 2:03-CV-77, 2005 U.S. Dist. LEXIS 49983
  (E.D. Tenn. Sep. 21, 2005) ...........................................................15

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15 Civ. 7488 (CM), 2017 U.S. Dist. LEXIS 76675
  (S.D.N.Y. May 19, 2017)...........................................................6, 24

*In re Symbol Techs., Inc.*,
  No. CV 05-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 131478
  (E.D.N.Y. Sept. 29, 2015)...........................................................6

*In re Veeco Instruments, Inc. Sec. Litig.*,
  No. 05-MD-01695 (CM) (GAY), 2007 WL 724555
  (S.D.N.Y. Mar. 9, 2007) ...........................................................23

*In re Weatherford Int'l Sec. Litig.*,
  No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 12185082
  (S.D.N.Y. Nov. 19, 2013) ...........................................................18

*In re Willkie Farr & Gallagher*,
  No. M8-85 (JSM), 1997 U.S. Dist. LEXIS 2927
  (S.D.N.Y. Mar. 14, 1997) ........................................................... *passim*

*McNamee v. Clemens*,
  No. 09 CV 1647 (SJ), 2013 U.S. Dist. LEXIS 179736
  (E.D.N.Y. Sept. 18, 2013)...........................................................25

*Medinol, Ltd., v. Boston Sci. Corp.*,
  214 F.R.D. 113 (S.D.N.Y. 2002) ........................................................... *passim*

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
  229 F.R.D. 441 (S.D.N.Y. 2004) ...........................................................18

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
  No. CV-06-6863-DOC, 2009 U.S. Dist. LEXIS 134695
  (C.D. Cal. July 8, 2009) ...........................................................15

- iii -

**Page**

*Patel v. L-3 Commc'ns Holdings, Inc.*,
No. 14-CV-6038 (VEC), 2016 WL 4030704
(S.D.N.Y. July 25, 2016) ........................................................................................23

*United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
No. 97 Civ. 6124 (JGK) (THK), 2000 U.S. Dist. LEXIS 7939
(S.D.N.Y. June 8, 2000) ..........................................................................................24

*United States v. Adlman*,
134 F.3d 1194 (2d Cir. 1998) ........................................................................ *passim*

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984) .................................................................................................14

*United States v. Deloitte LLP*,
610 F.3d 129 (D.C. Cir. 2010) ................................................................................17

*United States v. Finazzo*,
No. 14-3213-cr(L), 2017 U.S. App. LEXIS 3972
(2d Cir. Mar. 7, 2017) ...............................................................................................5

*United States v. Hatfield*,
No. 06-CR-0550 (JS), 2010 U.S. Dist. LEXIS 4026
(E.D.N.Y. Jan. 8, 2010) .....................................................................................14, 15

*United States v. Kovel*,
296 F.2d 918 (2d Cir. 1961) .........................................................................16, 24, 27

*Univ. Sports Publ'ns Co. v. Playmakers Media Co.*,
No. 09 Civ. 8206 (RJH) (DF), 2011 U.S. Dist. LEXIS 30675
(S.D.N.Y. Mar. 21, 2011) ........................................................................................24

*Von Bulow v. Von Bulow*,
811 F.2d 136 (2d Cir. 1987) ......................................................................................5

*Wultz v. Bank of China Ltd.*,
304 F.R.D. 384 (S.D.N.Y. 2105) ..................................................................6, 19, 20

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 26(b)(3)..................................................................................................6, 27

Plaintiffs, by and through their attorneys, respectfully submit this Opposition to the Memorandum of Law in Support of ARCP Defendants' Motion for Protective Order with Respect to Investigation Materials ("ARCP Mem.") filed on June 27, 2017.  Dkt. No. 400.

## I.  INTRODUCTION

For nearly a year, plaintiffs have diligently sought the highly relevant "Investigation Materials"[1] at issue by this motion.  American Realty Capital Properties, Inc. ("ARCP" or the "Company") is determined to keep them hidden.  Plaintiffs sought these materials beginning with their first round of document requests served on ARCP in September 2016.  ARCP initially took the untenable position that the Investigation Materials were not relevant and of minimal benefit to plaintiffs, and refused to produce the materials on those grounds.  Dkt. No. 349 at 13-14.  This forced plaintiffs to come to this Court seeking an order that the highly relevant post-class period documents, including the Investigation Materials, should be produced.  *Id.* at 1-7.  This Court unequivocally agreed with plaintiffs at the January 24, 2017 hearing, ruling that the documents generated during the course of ARCP's whistleblower investigation were relevant to plaintiffs' claims, and ordering that they, and other post-class period documents, be produced ***within 30-40 days***.  Dkt. No. 353 at 7:13-8:11.

Instead of producing these highly relevant documents by the end of April 2017, as ordered by this Court, ARCP employed a new tactic to hide this crucial evidence from plaintiffs:  asserting attorney-client privilege and work product protection *en masse* over the Investigation Materials.  ARCP has cast its cloak of secrecy wide, withholding more than ***5,000*** of its own documents concerning the whistleblower investigation, and redacting a yet unknown number of other ARCP documents on privilege grounds.  But ARCP did not stop there in its efforts to conceal this highly

---

[1]    As defined in ARCP Mem. at 1.

relevant information.  Rather, it instructed numerous other entities – including defendant Grant Thornton  LLP ("GT"), ARCP's former independent auditor, Ernst & Young LLP ("EY"), the forensic accountants retained to assist with the whistleblower investigation, and Teneo Strategy LLC ("Teneo"), a public relations firm retained in connection with the disclosure of ARCP's accounting fraud – to further thwart the discovery process by withholding or redacting Investigation Materials in *their* possession, custody or control on the basis of *ARCP's* purported privilege.  Troublingly, plaintiffs do not yet even know the total number of third-party documents that have been withheld by EY and Teneo.  Despite plaintiffs' repeated requests that ARCP do so, ARCP has failed to provide privilege logs for the documents that ARCP has instructed Teneo and EY to withhold.

With the scheduling of merits depositions drawing near in this case, it is long past time for ARCP to produce the Investigation Materials plaintiffs have doggedly pursued.  As plaintiffs have insisted for months, there is no basis for ARCP's assertion of privilege over the Investigation Materials, as ARCP waived any protection that potentially applied to these materials by providing them to ARCP's independent auditor, GT.  Indeed, this Court ruled on this identical issue in *Medinol, Ltd., v. Boston Sci. Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002) (Hellerstein, J.), holding that the disclosure of privileged investigation materials to an independent auditor waives protection over those materials.  *See also In re Willkie Farr & Gallagher*, No. M8-85 (JSM), 1997 U.S. Dist. LEXIS 2927, at *6 (S.D.N.Y. Mar. 14, 1997) (same).

Moreover, the Investigation Materials were never privileged in the first place, as they were not "'prepared in anticipation of litigation.'"  *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998).[2]  Indeed, ARCP has completely failed to meet its "heavy" burden of showing that the Investigation Materials would not have "been created in essentially similar form irrespective of the

---

[2]    All citations and footnotes are omitted and emphasis is added unless otherwise noted.

litigation." *Id.* at 1202.  Nor can it, as the documents produced in this litigation clearly demonstrate that the Investigation Materials would have been prepared in substantially similar form – regardless of anticipated litigation – for the business purpose of restating the Company's financials and internal controls. Because ARCP has failed to meet its heavy burden of showing that any privilege or protection applies to the Investigation Materials, as well as that any such privilege or protection has not been waived, ARCP's motion for a protective order preventing discovery of the Investigation Materials should be denied, and the documents should be produced without further delay.

## II.    ARGUMENT

### A.    Overview of the Whistleblower Investigation and the Restatement Audit Work

In early September 2014, when two ARCP whistleblowers came forward in quick succession reporting widespread accounting improprieties occurring at the Company, ARCP's Audit Committee retained the law firm Weil Gotshal & Manges LLP ("Weil") to investigate the validity of the whistleblowers' claims.  Weil, in turn, retained EY to "perform the forensic accounting procedures" in connection with the whistleblower investigation.  *See* ARCP Mem. at 5-6; *see also* Declaration of Christopher L. Garcia in Support of ARCP Defendants' Motion for Protective Order With Respect to Investigation Materials (Dkt. No. 401) ("Garcia Decl."), ¶8.

On October 29, 2014, the Audit Committee announced its conclusions, based on the preliminary findings of its investigation, that: (1) "AFFO and other financial statement errors were intentionally made, resulting in the overstatement of AFFO and an understatement of the Company's net loss"; (2) the Company's 2013 Form 10-K and 1Q and 2Q 2014 financials "should no longer be relied upon"; (3) ARCP would "restate the Prior Financial Information and amend its prior periodic filings to the extent required"; and (4) the Company was "reevaluating its internal controls over financial reporting and its disclosure controls and procedures."  Garcia Decl., Ex. C.

Following this announcement, the Audit Committee tasked Weil and EY with pressing forward on the whistleblower investigation, which ARCP had announced was "ongoing." *Id.*; *see also* Declaration of Jessica T. Shinnefield in Support of Plaintiffs' Opposition to the ARCP Defendants' Motion for Protective Order with Respect to Investigation Materials ("Shinnefield Decl."), filed concurrently herewith. Shinnefield Decl., Ex. 1 at 2. Simultaneously, defendant GT, which remained ARCP's *independent* auditor throughout the entire time period that the whistleblower investigation was occurring, was required to conduct the independent audit work necessary for the Company to restate its financials and internal controls. *See* ASC 250-10-45-23 ("Any error in the financial statements of a prior period discovered after the financial statements are issued . . . shall be reported as an error correction, by restating the prior-period financial statements."). The document discovery produced to date shows ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████.

That this information was shared with GT is not the least bit surprising, given that GT needed to understand the scope of the forensic work EY was performing, and be on board with the conclusions EY was reaching in the whistleblower investigation, in order to be comfortable signing off on the Company's forthcoming restated financials and internal controls. Moreover, it is clear from the documents produced to date that ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████. Nor is it coincidence that the findings from the whistleblower investigation and the filing of the Company's restatement were announced in the same press release on March 2,

2015, as GT's sign off on the completion of ARCP's restatement hinged upon the final conclusions from the whistleblower investigation.  Shinnefield Decl., Ex. 2.

### B.  ARCP Cannot Meet the Heavy Burden to Shield the Investigation Materials from Discovery

#### 1.  Attorney-Client Privilege

As ARCP admits, it is well-established Second Circuit law that materials are only protected by the attorney-client privilege where "the ***predominant purpose*** of the communication is to render or solicit ***legal*** advice."  *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007); *see also* ARCP Mem. at 13 ("The attorney-client privilege applies to communications relating to an internal investigation where 'the predominant purpose of the communication is to render or solicit legal advice.'") (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 529 (S.D.N.Y. 2015)).  The Second Circuit has further explained that its "predominant purpose" test is satisfied by communications involving "the interpretation and application of legal principles to guide future conduct or assess past conduct."  *Erie*, 473 F.3d at 419.

ARCP bears the heavy burden of making this showing.  *United States v. Finazzo*, No. 14-3213-cr(L), 2017 U.S. App. LEXIS 3972, at *22 (2d Cir. Mar. 7, 2017) ("The burden of establishing the existence of an attorney-client privilege rests with the party asserting it.); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2011 U.S. Dist. LEXIS 116850, at *9 (S.D.N.Y. Oct. 3, 2011) ("[T]he party asserting either the attorney-client privilege or attorney work product protection has the 'heavy burden' of proving that privilege or protection applies to the documents or communications at issue.").  "'That burden is not, of course, discharged by mere conclusory or *ipse dixit* assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed.'"  *Von Bulow v. Von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987).  And "'[j]ust as the party asserting privilege has the burden

- 5 -

of establishing it, that party "also bears the burden of demonstrating that it has not been waived."" *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 U.S. Dist. LEXIS 76675, at *15 (S.D.N.Y. May 19, 2017).

### 2.    Work Product Protection

The work product doctrine is codified by Federal Rule of Civil Procedure 26(b)(3), which provides "that documents 'prepared in anticipation of litigation or for trial' are discoverable only upon a showing of substantial need of the materials and inability, without undue hardship, to obtain their substantial equivalent elsewhere." *Adlman*, 134 F.3d at 1197.  The Second Circuit has made it abundantly clear that work product protection does *not*, however, apply to "documents that are prepared in the ordinary course of business *or that would have been created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation*." *Id.* at 1202; *Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*, 240 F.R.D. 96, 106 (S.D.N.Y. 2007).

In making a work product determination, a court must ask "not merely whether [the party invoking the privilege] contemplated litigation when it generated the materials at issue, but rather *whether these materials 'would have been prepared in essentially similar form irrespective of litigation*.'"  *Id.* at 106; *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 395 (S.D.N.Y. 2105) (determining whether investigation materials are protected by the work product doctrine "requires us to consider what 'would have' happened had there been no litigation threat – that is, whether [the Company] 'would have' generated these documents if it were acting solely for its 'business-related purposes'").  Importantly, the burden rests on the party advocating work product protection to show what it would have done differently if there were no threat of litigation.  *Wultz*, 304 F.R.D. at 395-96; *Allied Irish Bank*, 240 F.R.D. at 106-107 (same); *In re Symbol Techs., Inc.*, No. CV 05-3923

(DRH) (AKT), 2015 U.S. Dist. LEXIS 131478 (E.D.N.Y. Sept. 29, 2015) (same).  And, as with the attorney-client privilege, the party asserting the work-product protection "bears the heavy burden of establishing its applicability."  *In re Grand Jury Subpoena*, 510 F.3d 180, 183 (2d Cir. 2007).

**C.     ARCP Waived Any Potentially Applicable Privilege or Protection by Providing the Investigation Materials to GT**

The Court need not even reach the issue of whether the Investigation Materials are protected by the attorney-client privilege or work product doctrine, as ARCP has failed to meet its heavy burden of showing that it did not waive any potentially applicable privilege or protection by disclosing these materials to the Company's independent auditor, GT.  *Id.*

ARCP has not attempted to dispute that it waived any attorney-client privilege that potentially attached to the Investigation Materials by providing these materials to GT.  *See* ARCP Mem. at 25-30.  Nor can it, as it is black letter law that the voluntary disclosure of confidential materials to a third-party such as GT automatically waives the attorney-client privilege.  *See, e.g.*, *Willkie Farr*, 1997 U.S. Dist. LEXIS 2927, at *2-*3.  Instead, ARCP's argument is that the Investigation Materials are protected by the work product doctrine, and that this protection has not been waived.  Neither assertion is correct, however, for the reasons explained below.

**1.     There Is No Doubt that the Investigation Materials Were Disclosed to GT**

The documents produced in this action unequivocally establish that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████. *See, e.g.*, Shinnefield Decl., Exs. 3-4 at GT-ARC DOC_00915228-47; GT-

ARCP DOC_01626979-7006.

For example, documents produced in this litigation show that ██████████████████

████████████████████████:

- ██████████████████████████████ Shinnefield Decl., Ex. 3 at GT-ARCP
  DOC_00915231.

- ██████████████████████████████ *Id.*

- ███████████████████████████████████████████████████
  ██████████████████████████ *Id.* at GT-ARCP DOC_00915232.

- ██████████████████████████████ *Id.*

- ███████████████████████████████████████████
  ████████████████████ Shinnefield Decl., Ex. 5 at
  GT-ARCP DOC 01696905-06.

- ███████████████████████████████████████████
  Shinnefield Decl., Ex. 6 at GT-ARCP DOC_00182677-78, 80.
  ████████████████████
  *Id.* at GT-ARCP DOC_00182679.
  ████████████████████
  *Id.* at GT-ARCP DOC_00182681.

- ██████████████████████████████████████████
  ████████████████████ Shinnefield Decl., Ex. 7 at GT-ARCP DOC_00689915-16.

- ██████████████████████████████████████████
  ██████████████████████ Shinnefield Decl., Ex. 8 at ARCP-WGM-
  00000759. ████████████████████████████████████████
  ████████████████████████ Shinnefield Decl., Ex. 9 at ARCP-WGM-
  00000774.

- ██████████████████████████████████████████
  ████████████████ Shinnefield Decl., Ex. 10 at GT-ARCP DOC_01543090-94.

- ██████████████████████████ *See* Shinnefield Decl., Ex. 4 at GT-ARCP DOC_01626994-6995;
  Shinnefield Decl., Ex. 4 at GT-ARCP DOC_01626990-6993.
  ██████████████████████████████████████████
  ██████████████████████████████████████████
  ██████████████████ Shinnefield Decl., Ex. 4 at GT-
  ARCP DOC_01626995.

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  ████████████ Shinnefield Decl.,
  Ex. 3 at GT-ARCP DOC_00915233.

- ██████████████████████████████████████████
  ████████████████████ Shinnefield Decl., Ex. 11 at GT-
  ARCP DOC_00183448.

1285936_1

Documents produced in this litigation further establish that ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████ :

██████████████████████████████████████████████████

Shinnefield Decl., Ex. 3 at GT-ARCP DOC_00915232-33.

Similarly, with respect to ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *Id.* at GT-ARCP

DOC_00915233.  And yet another internal GT document ████████████████

████████████████████████████ *See* Shinnefield Decl., Ex. 12 at GT-ARCP

DOC_00157815.  With respect to ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ *Id.*  And with

respect to ██████████████████████████████████████████

████████████████████████████████████████████████████

1285936_1

██████████████████████████████████████████
██████████████████████████████████████████

*Id.*

In addition to being provided with ███████████████████
██████████████████████████████████████████

████████████████████:

- ███████████████████████████████████
  ██████████ Shinnefield Decl., Ex. 3 at GT-ARCP DOC 00915232.

- ███████████████████████████████████
  ██████████ Shinnefield Decl., Ex. 6 at GT-ARCP DOC_00182679.

But GT was not merely privy to the information uncovered in the whistleblower investigation, it was also ***relying*** upon the work EY and Weil performed as part of the whistleblower investigation in order to prepare the Company's restated financials.  Indeed, GT would not have performed the requisite due diligence to sign off on the restated financials and internal controls without having first reviewed and understood the materials and findings from the whistleblower investigation.  Just a few examples of the many instances where ████████████████

████████████████████████:

- ███████████████████████████████████
  ██████████ Shinnefield Decl., Ex. 13 at GT-ARCP DOC_01770347-48.

- ███████████████████████████████ Shinnefield Decl., Ex. 14 at GT-ARCP DOC_00165343.

- 11 -

1285936_1

- ████████████████████████████████████████
  ████████████████████████████████ Shinnefield Decl., Ex. 15 at ARCP_CLASS_02510784.

- ████████████████████████████████████████
  ████████████████████████████████████████
  Shinnefield Decl., Ex. 16 at GT-ARCP DOC_00752148.

- ████████████████████████████████████████
  ████████████████ Shinnefield Decl., Ex. 17 at GT-ARCP DOC_00689915.

- ████████████████████████████████████████
  ███████████████████████ Shinnefield Decl.,
  Ex. 18 at GT-ARCP DOC_01560317.

- ████████████████████████████████████████
  ████████████████████████████████████████
  Shinnefield Decl., Ex. 6 at GT-ARCP DOC_00182680.

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████ Shinnefield Decl., Ex. 4 at GT-ARCP DOC_01626982.

### 2. Disclosure of the Investigation Materials to GT Resulted in Waiver of Any Work Product Protection that Potentially Applied

The present factual scenario – in which the independent auditor needed access to purportedly privileged information in order to sign-off on the defendant company's financials – is analogous to the situation addressed in *Willkie Farr*, 1997 U.S. Dist. LEXIS 2927, at *6. In *Willkie Farr*, defendant corporation Sensormatic's Audit Committee hired the law firm of Willkie Farr & Gallagher to conduct a comprehensive investigation regarding alleged improprieties with the company's "accounting practices, policies and procedures, and to provide legal advice to the Audit Committee regarding these issues." *Id.* at *2. EY, Sensormatic's independent auditor, was not initially privy to information gathered during Willkie Farr's investigation, but ultimately refused to

- 12 -

provide an unqualified audit opinion for Sensormatic's financials unless it was provided with unrestricted access to the results of the law firm's investigation. *Id.* at *2-*3. Summaries of some of the investigation materials were ultimately provided to EY. *Id.* at *3. Thereafter, plaintiffs in a securities class action moved to compel the investigation materials from Sensormatic on the ground that privilege had been waived by providing the materials to EY.

On these facts, Judge Martin held that Sensormatic had waived its privilege with respect to the information divulged to EY, explaining:

> Once it became clear [to Sensormatic], however, that the cost of that confidentiality was the inability to get from Ernst & Young an unqualified audit opinion, Sensormatic made a strategic decision to waive the privilege. ***Once the Audit Committee disclosed to Ernst & Young the substantive and detailed results of the Willkie investigation, including paraphrased statements of what Sensormatic employees had stated in confidence to Willkie attorneys, Sensormatic waived its privilege***.

*Id.* at *7-*8.

Here, as in *Willkie Farr*, ARCP waived any privilege that potentially applied to the Investigation Materials by choosing to disclose to GT ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ .

This Court reached that exact same conclusion in *Medinol*, 214 F.R.D. at 115 (Hellerstein, J.). In *Medinol*, like here, a committee of the defendant company's board of directors retained outside counsel to investigate alleged malfeasance at the company, when the prospect of litigation was already imminent. *Id.* The issue this Court was tasked with resolving was whether the disclosure of Board of Director Committee meeting minutes, which discussed information relating to the Board's investigation, to the company's outside auditor waived any work product protection that potentially applied to the investigation materials disclosed to the auditor. *Id.* ("The question here,

then, is whether Boston Scientific's disclosure of the meeting minutes of the Special Litigation

Committee to Ernst & Young waives the protection of the work product doctrine.").

This Court's ruling was unequivocal:  "I hold that it does."  *Id.*  This Court then ordered the

company to produce ***all*** of the litigation materials that were disclosed to the auditor within 20 days.

This Court explained the rationale for its holding as follows:

> The independent auditor . . . must come to his own understanding of reasonableness,
> based on the evidence.  The auditor's review supports the auditor's independent
> opinion about the fairness of the company's financial reports, not the audited
> company's litigation interests.  Thus, the auditor's interests are not necessarily
> aligned with the interests of the company.  And, as has become crystal clear in the
> face of the many accounting scandals that have arisen as of late, in order for auditors
> to properly do their job, they ***must*** not share common interests with the company
> they audit.  "Good auditing requires adversarial tension between the auditor and the
> client."

*Id.* at 116-17 (emphasis in original).

In so holding, this Court also relied upon the Supreme Court's opinion in *Arthur Young*,

wherein the Supreme Court explained an independent auditor's function:

> By certifying the public reports that collectively depict a corporation's financial
> status, the independent auditor assumes a ***public*** responsibility transcending any
> employment relationship with the client.  The independent public accountant
> performing this special function owes ultimate allegiance to the corporation's
> creditors and stockholders, as well as to the investing public.  This "public
> watchdog" function demands that the accountant maintain total independence from
> the client at all times and requires complete fidelity to the public trust.

*United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984).

While ARCP attempts to cast this Court's well-reasoned opinion in *Medinol* as merely an

outlier, in reality, courts both within and outside this Circuit have followed this Court's holding and

agreed with its rationale.  For example, in *United States v. Hatfield*, No. 06-CR-0550 (JS), 2010 U.S.

Dist. LEXIS 4026, at *12 (E.D.N.Y. Jan. 8, 2010), the court specifically relied on this Court's ruling

in *Medinol* in finding work product waiver.  More specifically, in *Hatfield*, like here, a law firm

- 14 -

hired an accounting firm to assist it in conducting an investigation and providing legal advice.  That accounting firm, like EY did here, then disclosed its accounting work to the defendant company's independent auditors.  *Id.* at \*11-\*13.  Relying specifically on *Medinol*, the court held that waiver of work product protection resulted from the disclosure of this information to the independent auditor. *Id*. at \*9-\*11; *see also Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV-06-6863-DOC (RNBx), 2009 U.S. Dist. LEXIS 134695, at \*12-\*16 (C.D. Cal. July 8, 2009) (citing this Court's opinion in *Medinol* in holding that the defendant company waived its privilege over investigation materials by providing them to its independent auditor); *In re King Pharm., Inc. Sec. Litig.*, No. 2:03-CV-77, 2005 U.S. Dist. LEXIS 49983, at \*13-\*14 (E.D. Tenn. Sep. 21, 2005) (citing *Medinol* and holding the "attorney work product doctrine has no application" to documents the client provided to its "usual outside auditor"); *Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676, 709-10 (S.D. W. Va. 2007) (citing *Medinol* for the proposition that "[a]n independent certified public accountant does not play the role of an advocate for its client.  In order to properly do their job, auditors must not share common interests with the company they audit.  The accountant owes ultimate allegiance to the corporation's creditors and stockholders and ultimately to the investing public.  The independent auditor serves a 'public watchdog' function requiring the accountant to maintain independence from the client"), *rev'd in part on other grounds*, *Ellis v. Grant Thornton LLP*, 530 F.3d 280 (4th Cir. 2008); *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, No. 2:15-cv-2235-SHL-dkv, 2016 U.S. Dist. LEXIS 142332, at \*30 (W.D. Tenn. Oct. 5, 2016) (same).

Moreover, an even stronger argument for waiver exists here than in *Medinol*.  While in *Medinol* the independent auditor had only been provided with Board meeting minutes in which the internal investigation was discussed, here, ███████████████████████████████

████████████████████████████████████████████████████

- 15 -

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████. *See* Shinnefield Decl., Exs. 3, 11.  Thus,

under *Medinol*, and the many other decisions that have followed it, the Company waived any

protection that potentially applied to the Investigation Materials by disclosing their contents to GT.

*Id.*

ARCP's attempts to distinguish this case from *Medinol* are unavailing.  ARCP Mem. at 29-

30.  For example, ARCP asserts that here, the disclosure of the Investigation Materials to GT served

"'pertinent litigation interests,'" whereas this Court determined that not to be the case in *Medinol*.

But that is factually incorrect.  *Id.* at 29.  The Investigation Materials were disclosed to GT here in

order for GT, as ARCP independent auditor, to audit the Company's restated financials – a decidedly

business, as opposed to legal, interest.  Indeed, as the Audit Committee and Weil both admit, they

had already retained a ***different*** accounting firm, EY, to provide the type of forensic accounting

services potentially protected under *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) – *i.e.,*

accounting services performed for an attorney to enable  the attorney to provide legal advice to his

client.  In fact, this Court highlighted this very distinction in *Medinol*, explaining that while privilege

might apply "where an accountant was hired to help the attorney understand his client's complicated

tax strategies for use in litigation" (citing *Kovel*), it would ***not*** apply in a situation such as here where

the disclosure of privileged information to outside accountants was "for audit purposes."  *Medinol*,

214 F.R.D. at 116.  There is no doubt here that the work performed by GT was "for audit purposes"

– *i.e.*, auditing the Company's restated financials and internal controls.

Nor is the primary case upon which ARCP relies, *United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010), persuasive here.  ARCP Mem. at 26, 28-29.  In *Deloitte,* the key inquiry by the court was whether the auditor and the company had potentially been adversaries in the litigation discussed in the privileged documents.  On the facts of that case, the court answered that question in the negative, and therefore found no waiver when the defendant company provided materials to an independent auditor.  *Deloitte*, 610 F.3d at 140.

Here, however, with respect to the matters discussed in the Investigation Materials at issue, GT was – and, in fact, continues to be – a potential adversary of ARCP.  For example, GT has always insisted that is was duped by ARCP and the individual defendants in this case – *e.g.*, McAlister and Block – and was completely ignorant of the accounting fraud perpetrated by ARCP.  For example, one of the affirmative defenses raised in GT's Answer states:  "GT was the victim of fraud, deceit, misrepresentation, concealment, negligence and/or breach of contract practiced upon it by others, in that information was not provided to GT, was misrepresented to GT, and/or was concealed from GT while GT was rendering professional services, and any recovery against GT shall be diminished as a result."  Dkt. No. 280, ¶14.  However, the whistleblower investigation revealed evidence showing ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████.  Shinnefield Decl., Ex. 19 at 1037:24-1052:6; Shinnefield Decl., Ex. 20 at GT-ARCP DOC_01590053-67.  ARCP has also raised the following affirmative defense in its Answer:  "The claims asserted in the Complaint are barred because the ARCP Defendants relied, in good faith, and were entitled to rely, on advice and information provided by the ARCP Defendants' accountants, auditors, consultants and other professional advisors."  Dkt. No. 270 at 147.  Also indicative of the adversarial relationship between

- 17 -

ARCP and GT is that ARCP fired GT upon the investigation's conclusion.  Shinnefield Decl., Ex. 21 at 3 (reporting that ARCP has "dismissed" GT as ARCP's independent auditors).  Thus, GT and ARCP were (and continue to be) potential adversaries.[3]

In accordance with this Court's ruling in *Medinol*, and the cases that have followed it, any protection applicable to the Investigation Materials has been waived because ARCP disclosed them to GT, a party with potentially adverse interests.

### D.      The Investigation Materials Were Not Protected in the First Place

ARCP has taken the untenable position that ***all*** of the materials created as part of the whistleblower investigation are protected by the attorney-client privilege and/or work product doctrine, and has withheld ***more than 5,000 relevant, responsive ARCP documents*** on these grounds.  ARCP Mem. at 9.  ARCP has also redacted an undisclosed number of investigation documents on privilege grounds.  Additionally, ARCP has instructed other entities, EY (forensic

---

[3]      In the other cases cited by defendants, there was nowhere near the level of potential adversarial tension that exists here.  *See, e.g., In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 12185082, at *5 (S.D.N.Y. Nov. 19, 2013) (cited in ARCP Mem. at 26).  Moreover, while there is  admittedly a split among the district courts within this Circuit on this issue, this split stems from a philosophical difference among the courts regarding an independent auditor's role.  In one camp, which are the decisions ARCP cites, courts have taken the position that there is no adversarial relationship between a company and its independent auditor, as they share the common interest of ensuring the integrity of the company's financial statements.  *See*, *e.g*. *Merrill Lynch & Co. v. Allegheny Energy, Inc*., 229 F.R.D. 441, 448 (S.D.N.Y. 2004) ("[A]ny tension between an auditor and a corporation that arises from an  auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine.").

This Court, however, has long been the champion of the opposite view: that "the auditor's review supports the auditor's independent opinion about the fairness of the company's financial reports, not the audited company's litigation interests.  Thus, the auditor's interests are not necessarily aligned with the interests of the company."  *Medinol*, 214 F.R.D. at 116.  In short, that "'[g]ood auditing ***requires*** adversarial tension between the auditor and the client.'"  *Id.*  The facts of this case do not warrant a departure from that well-reasoned decision.  Indeed, the facts here further evidence the existence of, and need for, adversarial tension between an independent auditor and the company it audits.

- 18 -

accountants for the whistleblower investigation), Teneo (a public relations firm hired in connection

with the disclosure of ARCP's accounting fraud) and GT (ARCP's independent auditor discussed in

detail above), to withhold an unknown additional number of documents based on ARCP's purported

privileges.[4]  This is particularly problematic given that ARCP strategically has not included ***any*** of

the documents that it has instructed EY or Teneo to withhold on a privilege log, making it

impossible for plaintiffs to ascertain, much less challenge, the basis for and validity of the privilege

ARCP is asserting over EY and Teneo's materials on a document-by-document basis.  But the

burden to establish that these documents should be shielded from discovery rests with ARCP.  That

burden has not been met, and the Investigation Materials must therefore be produced.

> 1.    **The Investigation Materials Prepared by EY Should Be
>        Produced**
>
> > a.    **ARCP Has Not Met Its Burden of Showing that the
> >        Investigation Materials Prepared by EY Should Be
> >        Protected**

ARCP has failed to meet its heavy burden of showing that the Investigation Materials

prepared by EY would not have "been created in essentially similar form irrespective of the

litigation," as is required for work product protection to apply.  *Adlman*, 134 F.3d at 1202; *Wultz*,

304 F.R.D. at 395 (determining whether investigation materials are protected by the work product

doctrine "'requires us to consider what "would have" happened had there been no litigation threat –

---

[4]    During a telephonic conversation with EY regarding the third-party subpoena plaintiffs served on
EY, EY's attorneys represented that EY takes "no position" regarding whether the Investigation
Materials it possesses are protected by the attorney-client privilege or work product doctrine.
Rather, it is refusing to produce any of the documents that EY prepared in connection with the
whistleblower investigation simply because ARCP has instructed it to do so. Similarly, Teneo
informed plaintiffs that they were providing the documents sought by plaintiffs' subpoena to
ARCP's counsel  "prior to production to determine which records must be withheld in order to
preserve applicable privileges." Shinnefield Decl., Ex. 22. Teneo provided its documents to ARCP
over a month ago, yet ARCP's counsel has still not completed its review, or produced any Teneo
documents.  Shinnefield Decl., Ex. 23.

that is, whether [the Company] "would have" generated these documents if it were acting solely for its' non-litigation purposes").  Accordingly, these materials must be produced.

ARCP has put forth **no facts** whatsoever showing that it would not have prepared the Investigation Materials in substantially similar form had ARCP not anticipated litigation.  *Wultz*, 304 F.R.D. at 395-96 (finding the defendant had not "met its burden of showing that the materials are protectable as work product" because it "provided virtually no evidence on the question of what [it] 'would have' done . . . under circumstances" where there was "no threat of actual litigation"). Indeed, ARCP has not provided a shred of evidence showing what it would have done differently had there been no threat of litigation, as it is required to do for work product protection to apply.  *Id.*

Instead, ARCP's counsel has simply made *ipse dixit* assertions that parrot the legal definition of work product, such as: "[t]he investigation was conducted in a manner that it was, and the materials generated in connection with the investigation were prepared in the manner that they were, because of the prospect of such litigations and investigations."  Garcia Decl., ¶6 .  But the law is clear that these types of *ipse dixit* assertions are insufficient, and that failure to make the required factual showings regarding what ARCP would have done differently had there been no threat of litigation is fatal to ARCP's work product claim.  *Wultz*, 304 F.R.D. at 391 (the proponent of the privilege's burden is "not discharged by mere conclusory or *ipse dixit* assertions"); *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 173 (S.D.N.Y. 2008) (no work product protection applied because defendants "failed to provide evidence that the documents would not have been prepared in essentially the same form irrespective of that litigation, as required by *Adlman*, 134 F.3d at 1202").  *Fine v. ESPN, Inc.*, No. 5:12-cv-0836 (LEK/DEP), 2015 U.S. Dist. LEXIS 68704, at *18-*20 (N.D.N.Y. May 28, 2015) (investigation materials not protected by work product privilege because the defendant's affidavit submitted in support of its work product claim

- 20 -

did not establish that the defendant would have done anything different absent the prospect of litigation).  Because ARCP has failed to carry its burden, these materials must be produced.

> **b.      The EY Materials Would Have Been Prepared in Substantially Similar Form Irrespective of the Prospect of Litigation**

Though plaintiffs do not bear the burden of proof on this issue – ARCP does – there is no doubt that the Investigation Materials prepared by EY would have been created in substantially similar form – irrespective of the prospect of litigation – to, among other things:  (i) understand how the fraud was perpetrated and by whom; (ii) analyze the scope and magnitude of the fraud to determine the impact the fraud had on the Company's financials so they could be accurately restated, if necessary; and (iii) implement appropriate internal controls to ensure no further fraudulent conduct occurred.  *See, e.g.*, *Allied Irish Banks*, 240 F.R.D. at 108 (affording no work product protection to materials generated during an internal company investigation where the purpose of the investigation was to "'address . . . culpability, accountability, control systems and organizational issues'").

The Audit Committee admitted as much when it publicly announced the whistleblower investigation, telling investors: "[t]he accounting issues are unacceptable and we are taking the personnel and other actions necessary to ensure this does not happen again."  Shinnefield Decl., Ex. 24.  As the court in *Allied Irish Banks* noted: "the fact that the investigation was announced to the press demonstrates that there were critical public accountability concerns that motivated the commissioning of the Report and, as a result, the creation of the underlying investigatory documents."  240 F.R.D. at 107.  The court further explained: "[h]aving just discovered a major fraud resulting in a loss of millions of dollars, [the company] needed to reassure the public that '[t]he group's underlying business and profitability momentum is not impaired by this one-off blow.'"  As in *Allied Irish Banks*, ARCP's whistleblower investigation, which the Company publicly touted,

- 21 -

served the vital business purpose of reassuring investors and allaying their justified concerns about the Company's integrity, transparency, and financial viability, and therefore would have been conducted even had no litigation been anticipated.

That the forensic accounting materials prepared by EY in connection with this investigation would have been created in substantially similar form irrespective of the prospect of litigation is particularly evident here. Very shortly after the whistleblowers came forward, ARCP recognized that the Company would need to restate some, if not all, of its prior financial statements, and would need to re-evaluate ARCP's internal controls – facts the Company openly acknowledged in its October 29, 2014 press release where it publicly disclosed the fraud.

According to defendants, ARCP tasked EY with providing forensic accounting support to the whistleblower investigation, while the Company's independent auditor, GT, was charged with conducting the audit work necessary to restate the Company's financials. In reality, as detailed above in §II.C.1., information regarding the whistleblower investigation flowed freely between EY and GT. In fact, document discovery produced in this action shows ███████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████.

For example, ██████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████ Shinnefield Decl., Ex. 17 at GT-ARCP DOC-00689915. Similarly, another

GT e-mail states: ███████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████ Shinnefield Decl., Ex. 16 at GT-ARCP DOC_00752148. These are

just some of the many examples plaintiffs have found showing that GT relied upon EY's forensic audit work in order to feel comfortable signing off on the Company's restated financials.

Given that EY performed crucial audit work necessary to restate the Company's financials – *i.e.*, uncover the accounting manipulations and identify deficient controls – and given that GT admittedly relied upon that audit work in order to sign off on the Company's restated financials, there is no doubt that the materials EY is withholding would have been created in substantially similar form even without the prospect of litigation. *Allied Irish Banks*, 240 F.R.D. at 106 (finding no work product protection applied, even though there was "no doubt" the company "believed litigation would result," because documents generated during internal investigation "'would have been created in substantially similar form' based on this non-litigation purpose"); *see also In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 297 (S.D.N.Y. 2003) ("the pre-eminent business purpose of the audits renders work product protection inapplicable"). Accordingly, these materials must be produced.[5]

---

[5]   *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MD-01695 (CM) (GAY), 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007), upon which ARCP heavily relies, is easily distinguished. On the facts of that case, the court found that the defendant had met its burden of showing that the materials would not have been created in substantially similar form but for the prospect of litigation based on the "thorough and detailed" affidavits submitted by the defendant in connection with the motion. *Id.* at *7. In particular, the court noted that the affidavits did not merely "rely solely on boilerplate paraphrasing of the legal standard," as ARCP does here, and has been found insufficient by numerous courts, but instead specifically detailed what the company would have done differently had no litigation been anticipated:  "relied exclusively on its internal finance staff and outside auditors had it been concerned solely with correcting [its] financial records rather than with the prospect of litigation." *Id.* at *8. Here, ARCP has made no such showing and, therefore, has not satisfied its heavy burden of establishing work product under *Adlman*, 134 F.3d at 1197. So too is *Patel v. L-3 Commc'ns Holdings, Inc.*, No. 14-CV-6038 (VEC), 2016 WL 4030704 (S.D.N.Y. July 25, 2016), factually inapposite, as in that case, there was not the wealth of evidence that plaintiffs have submitted here showing that the materials sought would have been prepared in substantially similar form in order to restate the defendant company's financials.

- 23 -

1285936_1

Nor does the fact that Weil retained EY somehow transform any document EY prepared into protected work product. To the contrary, the law is clear that "[a] party may not 'insulate itself from discovery by hiring an attorney to conduct' an investigation that otherwise would not be accorded work product protection." *Univ. Sports Publ'ns Co. v. Playmakers Media Co.*, No. 09 Civ. 8206 (RJH) (DF), 2011 U.S. Dist. LEXIS 30675, at *20-*21 (S.D.N.Y. Mar. 21, 2011) (citing *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97 Civ. 6124 (JGK) (THK), 2000 U.S. Dist. LEXIS 7939 (S.D.N.Y. June 8, 2000)); *see also In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 465 (S.D.N.Y 1996) (holding that work-product privilege does not attach to reports generated in internal investigation by outside counsel because counsel would have been retained even if litigation had not been threatened at the time).

Because ARCP has failed to meet its heavy burden of showing that the materials prepared by EY would not have been prepared in substantially similar form irrespective of the prospect of litigation, no work product protection applies.[6]

## 2. The Documents ARCP Instructed Teneo to Withhold Must Be Produced

The documents that ARCP has instructed Teneo to withhold, on the basis of ARCP's purported privilege, should be produced. First, ARCP has failed to produce a privilege log reflecting the documents it has demanded that Teneo withhold, leaving plaintiffs and this Court completely in

---

[6]   While the Investigation Materials prepared by EY were once ***potentially*** subject to attorney-client privilege under *Kovel*, this point is moot given that ARCP has not even attempted to meet its burden of showing that the attorney-client privilege was not waived when it disclosed the Investigation Materials to GT. *See* ARCP Mem. at 25-30 (arguing non-waiver of the work product doctrine, but completely failing to even address – much less meet its burden of establishing – non-waiver of the attorney-client privilege); *Namenda*, 2017 U.S. Dist. LEXIS 76675, at *15 ("'Just as the party asserting privilege has the burden of establishing it, that party "also bears the burden of demonstrating that it has not been waived."'"). Nor could ARCP make any such showing, as it is black letter law that the attorney-client privilege is waived when privileged materials are provided to independent auditors. *See, e.g.*, *Willkie Farr*, 1997 U.S. Dist. LEXIS 2927, at *2-*3.

- 24 -

the dark regarding the volume of documents withheld,  and more importantly, the validity of the privilege assertions being made.[7]  More specifically, while ARCP asserts in this motion that  Teneo assisted Weil "'in rendering legal advice,'" without a privilege log it is impossible for plaintiffs to assess this blanket contention on a document-by-document basis.  ARCP Mem. at 24.  Nor does the conclusory declaration submitted by ARCP in connection with this motion, which primarily relies on Teneo's October 27, 2014 engagement agreement (Garcia Decl., Ex. D at 1), come close to satisfying ARCP's burden of establishing that *all* of the Teneo documents are protected by the attorney-client privilege or work product doctrine.  *See, e.g.*, *McNamee v. Clemens*, No. 09 CV 1647 (SJ), 2013 U.S. Dist. LEXIS 179736, at *22 (E.D.N.Y. Sept. 18, 2013) (finding "'conclusory descriptions'" of the role played by a public relations firm hired by defendant's counsel insufficient to show privilege).

ARCP's actions here are similar to the "sweeping and rather brazen" conduct of the defendant in *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 171 F. Supp. 3d 136, 139-40 (S.D.N.Y. 2016), who the court chastised for asking "plaintiffs and this Court to rely on their broad representations that the attorney-client and work-product privileges apply to communications with an outside public relations consultant without doing any of the necessary basic work to show that the privileges apply to particular documents on the facts and circumstances" of the case.  As was the remedy in *Bloomingburg*, ARCP's "failure to conduct the basic work (even at this late stage in

---

[7]    Plaintiffs served a third-party subpoena on Teneo more than three months ago, on April 7, 2017. Despite plaintiffs' request that ARCP provide them with a privilege log for the Teneo documents prior to the parties' July 7, 2017 meet and confer to discuss deficiencies with ARCP's other privilege logs, ARCP has refused, telling plaintiffs: "[o]nce we have completed our reviews, we will get back to you with respect to whether a privilege log is required, and if so, what form it should take." Shinnefield Decl., Ex. 25. ***Three months after serving the subpoena on Teneo, plaintiffs have yet to receive a single document from Teneo or a privilege log reflecting the documents that ARCP has instructed Teneo to withhold.***

discovery) necessary to allow the Court to consider the documents on a case-by-case basis justifies the determination that all documents and communications in [Teneo's] possession that are responsive to the subpoena must be disclosed immediately." *Id.* at 147.

Moreover, the law is clear that in situations such as this, where the public relations firm is simply providing "advisory and strategic communications services," materials prepared by or provided to public relations firms are typically not shielded from discovery. Judge Rakoff's decision in *Calvin Klein* is particularly instructive here. *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 54-55 (S.D.N.Y. 2000). In that case, Calvin Klein retained the law firm Boies Schiller, and in anticipation of a lawsuit being filed, Boies Schiller retained a public relations firm. More specifically, Boies Schiller maintained that the public relations firm was retained "to help [Boies Schiller] understand the possible reaction of [Calvin Klein's] constituencies to the matters that would arise in the litigation, to provide legal advice to [Calvin Klein], and to assure that the media crisis that would ensue – including responses to requests by the media about the law suit and the overall dispute between the companies – would be handled responsibly." *Id.* at 54.

Judge Rakoff held that no attorney-client privilege applied to the public relations materials sought, explaining that "'the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" *Id.*; *see also Fine*, 2015 U.S. Dist. LEXIS 68704, at *31 (refusing to apply attorney-client privilege to communications between a law firm and the public relations firm it retained because the communications were not "***necessary*** to facilitate attorney-client communications and for the provision of legal advice") (emphasis in original); *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955 DLC, 2003 WL 21998674, at *3, *8 (S.D.N.Y. Aug. 25, 2003) (finding that documents shared with a public relations consultant performing "standard public relations services" were not privileged).

- 26 -

In *Calvin Klein*, Judge Rakoff further found that no work product protection applied to the advice provided by the public relations firm, explaining:

> It is obvious that as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called "work product" doctrine embodied in Rule 26(b)(3), Fed. R. Civ. P.  That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally.

198 F.R.D. at 55.  Finally, Judge Rakoff found that Boies Schiller did not waive protection over its own work product by providing materials containing its own mental impressions and legal strategies to the public relations firm.  *Id.*  Nor do plaintiffs here seek to discover any legitimate work product of Weil here.  Rather, plaintiffs simply seek any communications involving Teneo, any materials prepared by Teneo, and any materials that Weil or ARCP provided to Teneo that do not contain Weil's mental impression.  There is no basis for withholding these materials on privilege grounds, and they should therefore be produced immediately.  *Id.*[8]

---

[8]   None of the cases ARCP cites warrant a departure from Judge Rakoff's well-reasoned analysis and opinion in *Calvin Klein*, 198 F.R.D. 53.  For example, *Copper* is distinguishable because there, the Japanese corporate-defendant "lacked experience in dealing with the Western media," its "internal resources were insufficient," and its executives' "English language skills were not sufficiently sophisticated for media relations."  *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 215, 219 (S.D.N.Y. 2001).  Thus, the public relations services rendered by the U.S.-based public relations firm were arguably necessary to assist the Japanese company in the defense of its U.S.-based regulatory lawsuit.  *Id.*  Moreover, the court's holding turned largely on the fact – which is not the case here – that the public relations firm was not retained by outside lawyers, but rather, was retained by the company itself, "incorporated into [the company's] staff," and "possessed authority to make decisions on behalf of [the company]."  *Id.* at 219-20.  Therefore, the court protected the materials sought under an *Upjohn* theory of privilege rather than under *Kovel*, and specifically distinguished the opposite ruling by Judge Rakoff in *Calvin Klein* – which is more factually similar to the case here – on that very basis.  *Copper*, 200 F.R.D. at 220 n.4.

- 27 -

### 3. The Documents ARCP Has Instructed GT to Withhold Must Be Produced

On the basis of ARCP's purported work product protection, ARCP has instructed defendant GT to withhold 671 documents relating to the whistleblower investigation that were within GT's possession, custody or control. ARCP has also redacted an unknown number of GT documents relating to the investigation on the same ground. As with Teneo and EY, GT takes no position regarding whether the Investigation Materials in its possession were indeed work product, but nevertheless withheld them at ARCP's direction. However, for the reasons explained in §II.C.2. above, none of the Investigation Materials that GT possessed are protected by the attorney-client privilege or work product doctrine, as any such protection was waived by disclosing these materials to GT. *Medinol*, 214 F.R.D. at 116 (holding that disclosure of attorney work product from an investigation to an independent auditor waives any work product protection that potentially applied). Nor did work product protection ever apply to the Investigation Materials in GT's possession, as these documents would have been prepared for the business purpose of restating the Company's financials irrespective of the prospect of litigation. *Adlman*, 134 F.3d at 120. Accordingly, these materials should be produced immediately.

## III.     CONCLUSION

For the foregoing reasons, the Court should deny ARCP's motion seeking the entry of a

protective order preventing discovery of the Investigation Materials.

DATED:  July 10, 2017                          Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               DARREN J. ROBBINS
                                               MICHAEL J. DOWD
                                               DANIEL S. DROSMAN
                                               JASON A. FORGE
                                               DEBRA J. WYMAN
                                               JESSICA T. SHINNEFIELD


                                                  s/ JESSICA T. SHINNEFIELD
                                               JESSICA T. SHINNEFIELD

                                               655 West Broadway, Suite 1900
                                               San Diego, CA  92101-8498
                                               Telephone:  619/231-1058
                                               619/231-7423 (fax)
                                               darrenr@rgrdlaw.com
                                               miked@rgrdlaw.com
                                               dand@rgrdlaw.com
                                               jforge@rgrdlaw.com
                                               debraw@rgrdlaw.com
                                               jshinnefield@rgrdlaw.com

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               SAMUEL H. RUDMAN
                                               ROBERT M. ROTHMAN
                                               58 South Service Road, Suite 200
                                               Melville, NY  11747
                                               Telephone:  631/367-7100
                                               631/367-1173 (fax)
                                               srudman@rgrdlaw.com
                                               rrothman@rgrdlaw.com

                                               Lead Counsel for Lead Plaintiff and the Class

- 29 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 10, 2017.

s/ JESSICA T. SHINNEFIELD
JESSICA T. SHINNEFIELD

ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: jshinnefield@rgrdlaw.com

- 30 -

1285936_1

## Mailing Information for a Case 1:15-mc-00040-AKH In re American Realty Capital Properties, Inc. Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey Simon Abraham**
  jabraham@aftlaw.com

- **Robin L. Alperstein**
  ralperstein@beckerglynn.com,hhill@beckerglynn.com,saltreuter@beckerglynn.com

- **Antonia Marie Apps**
  aapps@milbank.com,tlevendosky@milbank.com,ggreen@milbank.com,USANYS.ECF@USDOJ.GOV

- **Adam M. Apton**
  aapton@zlk.com

- **Karim Basaria**
  kbasaria@sidley.com

- **Gary Frederick Bendinger**
  gbendinger@sidley.com,nyefiling@sidley.com,gary-bendinger-4030@ecf.pacerpro.com

- **Stanley D Bernstein**
  bernstein@bernlieb.com,tmaloney@bernlieb.com,ecf@bernlieb.com

- **Rebecca A. Beynon**
  rbeynon@kellogghansen.com,dkelly@kellogghansen.com

- **Brian Roger Blais**
  brian.blais@usdoj.gov,usanys.ecf@usdoj.gov,CaseView.ECF@usdoj.gov

- **Jeffrey Craig Block**
  jeff@blockesq.com,jason@blockesq.com,pacer-blockleviton-9062@ecf.pacerpro.com

- **Dwight Phillip Bostwick**
  dbostwick@zuckerman.com

- **Bruce Roger Braun**
  bbraun@sidley.com,kbasaria@sidley.com,wlawrence@sidley.com,nconrad@sidley.com,bruce-braun-9612@ecf.pacerpro.com,nyefiling@sidley.com,catherine.stewart@sidley.com,efilingnotice@sidley.com,jplatt@sidley.com,ntygesso@sidley.com,culrich@sidley.com

- **Jennifer Nunez Caringal**
  jcaringal@rgrdlaw.com,lmix@rgrdlaw.com

- **Kevin Koon-Pon Chan**
  kchan@rosenlegal.com

- **Alexandra Rebecca Clark**
  aclark@pkbllp.com

- **Neil Harris Conrad**
  nconrad@sidley.com

- **Jason Robert D'Agnenica**
  jasondag@ssbny.com

- **Glen DeValerio**
  gdevalerio@bermandevalerio.com,bdentremont@bermandevalerio.com,ecf@bermandevalerio.com,bmccarthy@bermandevalerio.com

- **Bruce Whitney Dona**
  bruce.dona@ksfcounsel.com

- **Michael Joseph Dowd**
  miked@rgrdlaw.com,debg@rgrdlaw.com,e_file_sd@rgrdlaw.com,tome@rgrdlaw.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,E_File_SD@rgrdlaw.com,tholindrake@rgrdlaw.com,kcook@rgrdlaw.com

- **Scott Alexander Edelman**
  sedelman@milbank.com

- **Ethan Padilla Fallon**
  efallon@kellogghansen.com,lward@kellogghansen.com

- **H. Miriam Farber**
  mfarber@shearman.com,managing-attorney-5081@ecf.pacerpro.com,CourtAlert@Shearman.com,miriam-farber-7421@ecf.pacerpro.com,manattyoffice@shearman.com

- **Meagan Alicia Farmer**
  mfarmer@gardylaw.com

- **Reid Mason Figel**
  rfigel@kellogghansen.com,oames@kellogghansen.com,gfording@kellogghansen.com

- **Robert Craig Finkel**
  rfinkel@wolfpopper.com,cdunleavy@wolfpopper.com,mgianfagna@wolfpopper.com

- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Adam Fotiades**
  afotiades@zuckerman.com

- **Molly Bruder Fox**
  mbfox@steptoe.com

- **Christopher Louis Garcia**
  christopher.garcia@weil.com,evert.christensen@weil.com,MCO.ECF@weil.com,nymao@ecf.pacerpro.com

- **James Philip Gillespie**
  jgillespie@kirkland.com,kevin.mccarthy@kirkland.com,kenymanagingclerk@kirkland.com

- **Daniel Zachary Goldman**
  dgoldman@pkbllp.com

- **Andrew Edward Goldsmith**
  agoldsmith@kellogghansen.com,jlai@kellogghansen.com,ecfnotices@kellogghansen.com

- **Douglas W. Greene**
  greened@lanepowell.com,davisc@lanepowell.com,tsuboin@lanepowell.com,mitchelll@lanepowell.com,flabela@lanepowell.com,Matsushitat@lanepowell.com,DockSEA@lanepowell.com,lanep@lanepowell.com,schaera@lanepowell.com

- **Theresa Hsin-Yi Gue**
  tgue@pkbllp.com

- **Adam Selim Hakki**
  ahakki@shearman.com,managing-attorney-5081@ecf.pacerpro.com,Courtalert@shearman.com,manattyoffice@shearman.com,adam-hakki-1816@ecf.pacerpro.com

- **John Louis Hardiman**
  hardimanj@sullcrom.com,john-hardiman-9552@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **David Charles Harrison**
  dharrison@lowey.com

- **Barbara J. Hart**
  bhart@lowey.com

- **Steven P. Harte**
  steven@blockesq.com,pacer-blockleviton-9062@ecf.pacerpro.com

- **Cody Herche**
  cherche@kellogghansen.com,apursley@kellogghansen.com

- **William Scott Holleman**
  ScottH@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Geoffrey Coyle Jarvis**
  gjarvis@ktmc.com,mswift@ktmc.com

- **Frank James Johnson**
  frankj@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Rebecca M Katz**
  rkatz@katzlawnewyork.com,disaacson@motleyrice.com,dabel@motleyrice.com,lkorenblit@motleyrice.com,kweil@motleyrice.com

- **Joshua David Kaye**
  jkaye@paulweiss.com

- **Christopher J. Keller**
  ckeller@labaton.com,drogers@labaton.com,ElectronicCaseFiling@labaton.com

- **Robert S. Khuzami**
  robert.khuzami@kirkland.com,Robert-khuzami-7303@ecf.pacerpro.com,kenymanagingclerk@kirkland.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Lawrence Paul Kolker**
  kolker@whafh.com

- **Daniel Jonathan Kramer**
  dkramer@paulweiss.com,mao_fednational@paulweiss.com

- **Larry Howard Krantz**
  lkrantz@krantzberman.com

- **Eric Albin Larson**
  elarson@mmmlaw.com,mellington@mmmlaw.com

- **Angel P. Lau**
  alau@rgrdlaw.com,tdevries@rgrdlaw.com

- **Justin David Lerer**
  jlerer@paulweiss.com,mao_fednational@paulweiss.com

- **Michelle Lynn Levin**
  mlevin@steptoe.com,bhamerschlag@Steptoe.com,cjenkins@steptoe.com

- **Daniel Craig Lewis**
  daniel.lewis@shearman.com,managing-attorney-5081@ecf.pacerpro.com,daniel-lewis-
  6070@ecf.pacerpro.com,CourtAlert@Shearman.com,gina.seong@shearman.com,manattyoffice@shearman.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,jsnematzadeh@pomlaw.com

- **Neil Robert Lieberman**
  nlieberman@hsgllp.com,crodriguez@hsgllp.com,Managingclerk@hsgllp.com

- **Howard Theodore Longman**
  tsvi@aol.com

- **Dermot Lynch**
  dlynch@zuckerman.com

- **John Phillip MacNaughton**
  jpm@mmmlaw.com,wew@mmmlaw.com,elarson@mmmlaw.com

- **Michael David Margulies**
  mmargulies@bressler.com

- **Rita Kathleen Maxwell**
  rita.maxwell@bracewelllaw.com,mco@bracewelllaw.com

- **Francis Paul McConville**
  fmcconville@labaton.com,jalayo@labaton.com

- **Donald Alan Migliori**
  dmigliori@motleyrice.com

- **Michael Campion Miller**
  mmiller@steptoe.com,bhamerschlag@steptoe.com,cjenkins@steptoe.com

- **Mark Tamerlane Millkey**
  mmillkey@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Beth Mueller**
  beth.mueller@kirkland.com,kenymanagingclerk@kirkland.com

- **William H. Narwold**
  bnarwold@motleyrice.com,glevin@motleyrice.com,vlepine@motleyrice.com,ajanelle@motleyrice.com

- **Shawn Patrick Naunton**
  snaunton@zuckerman.com,jchen@zuckerman.com

- **Gregory Mark Nespole**
  gmn@whafh.com

- **Ivy T. Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan Ohring**
  johring@milbank.com,dhooks1@milbank.com,sbremer@milbank.com,tlevendosky@milbank.com,mbarrow@milbank.com,ggreen@milbank.com

- **Bradley E Oppenheimer**
  boppenheimer@kellogghansen.com,ecf-780f0d54d6a1@ecf.pacerpro.com,gfording@kellogghansen.com

- **Jason Parish**
  jason.parish@kirkland.com,kenymanagingclerk@kirkland.com

- **Guy Petrillo**
  gpetrillo@pkbllp.com

- **Ashley M. Price**
  APrice@rgrdlaw.com

- **Fei-Lu Qian**
  fqian@wolfpopper.com

- **Leah Margaret Quadrino**
  lquadrino@steptoe.com,pparker@steptoe.com

- **Daniel Brett Rehns**
  drehns@hrsclaw.com,efilings@hrsclaw.com

- **Kenneth Mark Rehns**
  krehns@cohenmilstein.com,efilings@cohenmilstein.com

- **Julie Goldsmith Reiser**
  jreiser@cohenmilstein.com

- **Lorin L. Reisner**
  L.Reisner@paulweiss.com,mao_fednational@paulweiss.com

- **Joseph F. Rice**
  jrice@motleyrice.com

- **Darren J. Robbins**
  e_file_sd@rgrdlaw.com,karenc@rgrdlaw.com,jcaringal@rgrdlaw.com

- **Lara Elizabeth Romansic**
  lromansic@steptoe.com

- **Laurence M. Rosen**
  lrosen@rosenlegal.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Robert M. Rothman**
  rrothman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Peter George Safirstein**
  psafirstein@safirsteinmetcalf.com,sfeerick@safirsteinmetcalf.com

- **Michael Gerard Scavelli**
  mscavelli@steptoe.com,bhamerschlag@Steptoe.com,cjenkins@steptoe.com

- **Jed Mastren Schwartz**
  jschwartz@milbank.com,lknoke@milbank.com,ggreen@milbank.com,calipio@milbank.com

- **Joseph R. Seidman**
  seidman@bernlieb.com

- **Jonathan Lucas Shapiro**
  jshapiro@ebglaw.com,nyma@ebglaw.com

- **Jessica T. Shinnefield**
  jshinnefield@rgrdlaw.com

- **Hannah Suzanne Sholl**
  hsholl@hsgllp.com,Managingclerk@hsgllp.com

- **Thomas Michael Skelton**
  tskelton@lowey.com

- **Richard William Slack**
  richard.slack@weil.com,MCO.ECF@weil.com,nymao@ecf.pacerpro.com

- **Patrick C Smith**
  psmith@dehay.com

- **Audra Jan Soloway**
  asoloway@paulweiss.com,mao_fednational@paulweiss.com

- **Luigi Spadafora**
  spadafora.l@wssllp.com

- **Kendra L Stead**
  kstead@sidley.com,efilingnotice@sidley.com,jdent@sidley.com,kendra-stead-0480@ecf.pacerpro.com

- **Michael Howard Steinberg**
  steinbergm@sullcrom.com,michael-h-steinberg-5026@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **Christopher D. Stewart**
  cstewart@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael Walter Stocker**
  mstocker@labaton.com,sauer@labaton.com,electroniccasefiling@labaton.com

- **William Taylor**
  wtaylor@zuckerman.com

- **Daniel Ben Tehrani**
  Daniel.Tehrani@usdoj.gov,CaseView.ECF@usdoj.gov

- **Steven Jeffrey Toll**
  stoll@cohenmilstein.com,efilings@cohenmilstein.com

- **Matthew Tracy**
  tracy.m@wssllp.com

- **Nicholas Tygesson**
  ntygesso@sidley.com

- **Anil Karim Vassanji**
  vassanjia@sullcrom.com,anil-vassanji-1486@ecf.pacerpro.com,s&cmanagingclerk@sullcrom.com

- **Melanie Elizabeth Walker**
  mewalker@sidley.com,melanie-walker-7174@ecf.pacerpro.com,efilingnotice@sidley.com

- **Reid Weingarten**
  rweingarten@steptoe.com

- **Joseph Harry Weiss**
  jweiss@weisslawllp.com,infony@weisslawllp.com,joshua-rubin-1257@ecf.pacerpro.com,exec@weisslawllp.com

- **Theodore Von Wells , Jr**
  twells@paulweiss.com,mao_fednational@paulweiss.com

- **Regis C. Worley , Jr**
  rworley@rgrdlaw.com

- **Debra J. Wyman**
  debraw@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Genevieve Graeme York-Erwin**
  YorkErwinG@lanepowell.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Ar Capital LLC
,

David               C. Walton
Robbins Geller Rudman & Dowd LLP (SANDIEGO)
655 West  Broadway
Suite  1900
San Diego, CA 92101


Abby M. Wenzel
,
```