**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re AMERICAN REALTY CAPITAL PROPERTIES, INC. LITIGATION | Civil Action No. 1:15-mc-00040-AKH <br><br> CLASS ACTION |
| This Document Relates To: <br>     ALL ACTIONS. | |
| ARCHER CAPITAL MASTER FUND, L.P., et al., <br><br>                              Plaintiffs, <br><br>     vs. <br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>                              Defendants. | Civil Action No. 1:16-cv-05471-AKH |
| ATLAS MASTER FUND, LTD., et al. <br><br>                              Plaintiffs, <br>     vs. <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>                              Defendants. | Civil Action No. 1:16-cv-05475-AKH |

[Caption continued on following page.]

| | |
|---|---|
| BLACKROCK ACS US EQUITY TRACKER FUND, et al., | Civil Action No. 1:15-cv-08464-AKH |
| Plaintiffs, | |
| vs. | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., | |
| Defendants. | |
| CLEARLINE CAPITAL PARTNERS LP, et al., | Civil Action No. 1:15-cv-08467-AKH |
| Plaintiffs, | |
| vs. | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., | |
| Defendants. | |
| HG VORA SPECIAL OPPORTUNITIES MASTER FUND, LTD., | Civil Action No. 1:15-cv-04107-AKH |
| Plaintiff, | |
| vs. | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., | |
| Defendants. | |

[Caption continued on following page.]

JET CAPITAL MASTER FUND, L.P., et al.,

                           Plaintiffs,

     vs.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., et al.,

                           Defendants.

Civil Action No. 1:15-cv-00307-AKH

---

PENTWATER EQUITY OPPORTUNITIES
MASTER FUND LTD., et al.,

                           Plaintiffs,

     vs.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., et al.,

                           Defendants.

Civil Action No. 1:15-cv-08510-AKH

---

PIMCO FUNDS:  PIMCO DIVERSIFIED
INCOME FUND, et al.,

                           Plaintiffs,

     vs.

AMERICAN REALTY CAPITAL
PROPERTIES, INC., et al.,

                           Defendants.

Civil Action No. 1:15-cv-08466-AKH

[Caption continued on following page.]

| | |
|---|---|
| TWIN SECURITIES, INC., et al., | Civil Action No. 1:15-cv-01291-AKH |
| Plaintiffs, | |
| vs. | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., | |
| Defendants. | |
| JOANNE WITCHKO, Derivatively on Behalf of Nominal Defendant AMERICAN REALTY CAPITAL PROPERTIES, INC., | Lead Case No. 1:15-cv-06043-AKH (Consolidated w/Case No. 15-cv-08563-AKH) |
| Plaintiff, | |
| vs. | |
| NICHOLAS S. SCHORSCH, et al., | |
| Defendants, | |
| – and – | |
| AMERICAN REALTY CAPITAL PROPERTIES, INC., | |
| Nominal Defendant. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF ARCP DEFENDANTS' MOTION FOR PROTECTIVE ORDER WITH RESPECT TO INVESTIGATION MATERIALS**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 6

I.   ARCP DID NOT WAIVE PRIVILEGE OVER THE INVESTIGATION
     MATERIALS BY SHARING CERTAIN DOCUMENTS WITH GRANT
     THORNTON.................................................................................................................. 6

     A.    Sharing of Certain Documents with Grant Thornton Did Not Effect a Waiver
           of Work Product Protection. ................................................................................ 6

     B.    Even If a Waiver Could Be Found, It Would Not Extend Beyond Documents
           Shared with Grant Thornton. ............................................................................ 10

II.  THE E&Y DOCUMENTS WOULD NOT HAVE BEEN PREPARED IN
     SUBSTANTIALLY SIMILAR FORM ABSENT THE PROSPECT OF
     LITIGATION................................................................................................................ 13

III. THE TENEO DOCUMENTS ARE PROTECTED UNDER THE ATTORNEY-
     CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE. ..................................... 17

CONCLUSION........................................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Irish Banks v. Bank of America*,
   240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................16, 17

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.*,
   2006 WL 278131 (S.D.N.Y. Feb. 2, 2006)...............................................8, 9

*Calvin Klein Trademark Trust v. Wachner*,
   198 F.R.D. 53 (S.D.N.Y. 2000) .....................................................................18

*Estate of Ungar v. Palestinian Authority*,
   332 F. App'x 643 (2nd Cir. 2009) ...................................................................6

*Fine v. ESPN, Inc.*,
   2015 WL 3447690 (N.D.N.Y. May 28, 2015)...............................................17

*Haugh v. Schroder Investment Management North America Inc.*,
   2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003)..............................................18

*In re County of Erie*,
   546 F.3d 222 (2d Cir. 2008)............................................................................11

*In re General Motors LLC Ignition Switch Litigation*,
   80 F. Supp. 3d 521 (S.D.N.Y. 2015)........................................................12, 13

*In re Grand Jury Subpoenas*,
   265 F. Supp. 2d 321 (S.D.N.Y. 2003).............................................................18

*In re Metlife Demutualization Litig.*,
   2007 WL 1017603 (S.D.N.Y. Mar. 30, 2007) ...............................................11

*In re Veeco Instruments, Inc. Sec. Litig.*,
   2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) .........................................15, 16, 17

*In re Von Bulow*,
   828 F.2d 94 (2d Cir. 1987)........................................................................11, 12

*In re Weatherford Int'l Secs. Litig.*,
   2013 WL 12185082 (S.D.N.Y. Nov. 19, 2013).......................................7, 8, 17

*In re Willkie Farr & Gallagher*,
   1997 WL 118369 (S.D.N.Y. March 14, 1997) .......................................3, 7, 8

*Medinol, Ltd. v. Boston Scientific Corp.*,
   214 F.R.D. 113 (S.D.N.Y. 2002) ................................................................... *passim*

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   229 F.R.D. 441 (S.D.N.Y. 2004) ............................................................................8

*Oxyn Telecomm'ns, Inc. v. Onse Telecom*,
   2003 WL 660848 (S.D.N.Y. Feb. 27, 2003) ...................................................11, 12

*Patel v. L-3 Commc'ns Holdings, Inc.*,
   2016 WL 4030704 (S.D.N.Y. July 25, 2016) ..................................................15, 16

*United States v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) ...................................................................7, 8, 9, 15

*United States v. Arthur Young & Co.*,
   465 U.S. 805 (1984) ..............................................................................................9

*United States v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010) ..................................................................... *passim*

*United States v. Kovel*,
   296 F.2d 918 (2d Cir. 1961) ....................................................................4, 14, 18

*Vacco v. Harrah's Operating Co.*,
   2008 WL 4793719 (S.D.N.Y. Oct. 29, 2008) ........................................................8

*Wi-LAN, Inc. v. LG Elecs., Inc.*,
   2013 WL 685339 (N.D. Cal. Feb. 25, 2013) ...................................................11, 12

*Wultz v. Bank of China Ltd.*,
   304 F.R.D. 384 (S.D.N.Y. 2015) .......................................................................16, 17

**Other Authorities**

Rule 26(b)(3)(A) .......................................................................................................17

Defendants American Realty Capital Properties, Inc. ("ARCP" or the "Company") and ARC Properties Operating Partnership, L.P. ("ARCP OP") (collectively, the "ARCP Defendants" or "ARCP"), by and through their attorneys, respectfully submit this reply memorandum of law in support of their motion for a protective order with respect to Plaintiffs' request for the production of documents (the "Investigation Materials") relating to the internal investigation conducted by ARCP's Audit Committee with the assistance of the law firm Weil, Gotshal & Manges LLP ("Weil").

## PRELIMINARY STATEMENT

Plaintiffs have abandoned any claim that materials and communications created by the Audit Committee and its outside counsel, Weil, in connection with Weil's investigation of whistleblower allegations are not, in the first instance, materials protected by the attorney-client privilege and word product doctrine.  Instead, Plaintiffs seek to hang their hat on the contention that Weil's investigation materials—including highly sensitive witness interview memoranda— should be produced to Plaintiffs on a waiver theory that assumes all of the Investigation Materials were given to ARCP's outside auditor, Grant Thornton LLP, in connection with the restatement of certain of ARCP's financial results.

Plaintiffs' waiver argument rests on flawed factual and legal premises.  Contrary to the broad and unsupported assertions in Plaintiffs' Opposition, information did not "flow[] freely" from Weil and the firm hired by Weil to perform forensic accounting services, Ernst & Young LLP ("E&Y"), to Grant Thornton.  (Opp'n at 4.)  Weil did not provide Grant Thornton with notes or memoranda memorializing the content of Weil's witness interviews, and most of the documents considered by Weil were never provided to Grant Thornton.  (Suppl. Decl. ¶ 9.)[1]  Nor did Weil

---

[1] "Suppl. Decl." refers to the Supplemental Declaration of Christopher L. Garcia in Further Support of ARCP Defendants' Motion for Protective Order with Respect to Investigation Materials, filed herewith.  "Decl." refers to the

and E&Y "routinely share[] detailed information regarding the whistleblower investigation with" Grant Thornton, and they did not "disclose[] nearly every aspect of their investigation" to Grant Thornton.  (Opp'n at 7, 8.)  For example, Weil conducted at least 76 witness interviews over a total of more than 100 hours, yet Plaintiffs' Opposition identifies only a handful of instances where information provided to Grant Thornton reflected purported statements by a witness.  (Suppl. Decl. ¶ 9.)  Further, the vast majority of the information collected and reviewed by Weil and E&Y was not shared with Grant Thornton.  (*Id.* ¶ 10.)  Plaintiffs' reference to isolated examples of alleged witness "statements" does not come close to supporting their assertion that Weil provided the fruits of its investigation to Grant Thornton.

Moreover, Plaintiffs' suggestion that Weil was merely acting as a conduit to Grant Thornton, and that the investigation would therefore be conducted in the same manner absent the prospect of litigation, is absurd.  Weil did not rely on Grant Thornton to assist in its investigation.  (*Id.* ¶ 7.)  Rather, Weil specifically engaged E&Y to provide forensic accounting services to assist Weil in its investigation and assessment of litigation and regulatory risks that ARCP could face.  (*Id.*)  Moreover, if there were no litigation purpose to the investigation, Weil could have just had Grant Thornton join in the witness interviews; but Grant Thornton was not invited to (and did not attend) a single witness interview.  (*Id.* ¶ 9.)  Additionally, Weil did not extend its investigation into additional areas and topics requested by Grant Thornton, and Weil declined to interview certain witnesses whom Grant Thornton had requested that Weil interview. (*Id.* ¶ 8.)  If, as Plaintiffs suggest, Weil was simply acting as a conduit to Grant Thornton, it would

---

Declaration of Christopher L. Garcia in Support of ARCP Defendants' Motion for Protective Order with Respect to Investigation Materials, Dkt. No. 401.  "Moving Br." refers to the Memorandum of Law in Support of ARCP Defendants' Motion for Protective Order with Respect to Investigation Materials, Dkt. No. 400, and "Opp'n" refers to Plaintiffs' Opposition to the ARCP Defendants' Motion for Protective Order with Respect to Investigation Materials, Dkt. No. 415.  All docket references herein are to No. 15-mc-00040-AKH, unless otherwise noted.

have provided any and all information obtained in the investigation to Grant Thornton.  But that did not happen.  In sum, as Mr. Garcia's declarations make abundantly clear, there is no factual basis for Plaintiffs' argument that the ARCP Defendants waived attorney-client privilege or work product protection with respect to the Investigation Materials based on Weil's sharing of limited information with Grant Thornton, or their argument that the investigation would have been conducted in substantially similar form irrespective of the prospect of litigation.

Plaintiffs fare no better on the law.  Plaintiffs principally rely on two cases to support their claim that providing investigation materials to an outside auditor effects a waiver of work product protection.  The first, *In re Willkie Farr & Gallagher*, 1997 WL 118369 (S.D.N.Y. March 14, 1997), did not even **address** the question of work product waiver.  Rather, it addressed the issue of waiver of attorney-client privilege and held that a waiver occurred under the fairness doctrine because the company was using the privilege "as both a sword and shield in litigation" by arguing that plaintiffs' complaint should be dismissed based on information learned during the investigation.  *Id.* at *3.  Here, ARCP has **never** attempted to use the Investigation Materials as both a sword and shield.  Thus, even if the disclosure of certain materials to Grant Thornton **could** effect a waiver of work product protection—and it cannot—there would be no basis for adopting Plaintiffs' extreme position that such a limited waiver could be extended to effect a broad waiver as to all Investigation Materials.

Second, Plaintiffs rely on this Court's decision in *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002), and a handful of cases that have since cited *Medinol*.  But the vast majority of cases since *Medinol* have declined to find a waiver of work product protection resulting from disclosure to an outside auditor and have recognized the serious public policy consequences of a waiver finding.  In *United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010),

for example, the D.C. Circuit held that a company did not waive work product protection over documents provided to its outside auditor, recognizing that a finding of waiver would "discourage companies from seeking legal advice and candidly disclosing that information to independent auditors," *id.* at 143, thereby undermining the common goal of uncovering the facts and reporting accurate information to investors.  Where, as here, there is no basis to conclude that the outside auditor is adverse to the company or its outside counsel conducting the internal investigation, the Court should not find a waiver of work product protection simply because counsel shared limited information with that outside auditor.  Moreover, unlike in *Medinol*, the Audit Committee and Grant Thornton shared a common litigation interest given the likelihood of litigation arising from the accounting errors.

Plaintiffs' secondary argument is that Investigation Materials prepared by E&Y in connection with its performance of forensic accounting services on behalf of Weil are not protected work product because they purportedly would have been prepared in substantially similar form regardless of the prospect of litigation.  Notably (and correctly), Plaintiffs do ***not*** contest that documents prepared by E&Y are protected by attorney-client privilege under *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961).  (*See* Opp'n at 24 n.6.)  Given Plaintiffs' concession that the E&Y documents are protected by attorney-client privilege and, therefore, protected from discovery, the Court need not even address whether they are protected work product.  In any event, the E&Y documents ***are*** protected work product because, as the moving brief and Mr. Garcia's declarations establish, Weil's investigation—and E&Y's work on behalf of Weil in connection with the investigation—would not have been conducted in substantially similar manner but for the prospect of litigation.

- 4 -

Plaintiffs also argue that documents and communications exchanged with Teneo Strategy LLC ("Teneo"), which was retained by Weil to assist it in rendering legal advice to the Audit Committee regarding communications with the public and media in connection with the investigation, are generally not privileged.  Plaintiffs concede that Teneo documents that "contain Weil's mental impression" are protected work product.  (Opp'n at 27.)  But Plaintiffs fail to recognize that even documents that do not reflect Weil's mental impressions are protected by attorney-client privilege and the work product doctrine, and their arguments to the contrary fail.

Finally, Plaintiffs' baseless accusations that the ARCP Defendants have engaged in "tactic[s] to hide" and "conceal" the Investigation Materials should be given no credence.  (Opp'n at 1.)  That the ARCP Defendants have asserted privilege over the highly sensitive Investigation Materials, including witness interview memoranda that are classic work product, is not surprising and, in fact, is standard and widely-accepted practice in cases involving internal investigations followed by large-scale litigation.  Moreover, Plaintiffs' false narrative about the progression of the ARCP Defendants' document productions in this case should be rejected.  In a prior discovery dispute about whether the ARCP Defendants should be put to the burden of producing post-class period documents (dated from October 30, 2014 through March 31, 2015), the ARCP Defendants argued that they should not be put to that burden because many of the documents would likely be protected by privilege and, therefore, a review of such documents would be unduly burdensome and disproportionate to the needs of the case.  The ARCP Defendants have never argued that the Investigation Materials were "not relevant" (Opp'n at 1), and, contrary to Plaintiffs' suggestion, the Court did not order the ARCP Defendants to produce the Investigation Materials.  (*See* Dkt. No. 352 (Jan. 25, 2017) (granting Plaintiffs' request "for all defendants to enlarge their search for

and production of responsive, ***non-privileged*** documents through March 31, 2015") (emphasis added).)[2]

For all these reasons, and as discussed in more detail herein, the Court should enter a protective order preventing discovery of the Investigation Materials.

## **ARGUMENT**[3]

I. **ARCP DID NOT WAIVE PRIVILEGE OVER THE INVESTIGATION MATERIALS BY SHARING CERTAIN DOCUMENTS WITH GRANT THORNTON.**

A. **Sharing of Certain Documents with Grant Thornton Did Not Effect a Waiver of Work Product Protection.**

As demonstrated in the moving brief, ARCP did not waive work product protection with respect to the Investigation Materials provided to Grant Thornton.  (*See* Moving Br. at 25-30.)  In arguing otherwise, Plaintiffs' Opposition barely attempts to grapple with the great weight of authority holding that disclosure to an outside auditor does not waive work product protection, including the only Court of Appeals decision to have considered the issue.  Nor do Plaintiffs even ***attempt*** to address the public policy concerns underlying these decisions—namely, that a finding of waiver would discourage open discussions between counsel conducting internal investigations into allegations of corporate misconduct and the company's outside auditor, thereby undermining the common goal of uncovering the facts and reporting accurate information to investors.  *See United States v. Deloitte LLP*, 610 F.3d 129, 143 (D.C. Cir. 2010) (finding waiver based on

---

[2] Additionally, contrary to Plaintiffs' assertions, the ARCP Defendants have properly requested that third parties (such as E&Y) allow the ARCP Defendants the opportunity to review potentially privileged documents so that they can determine whether to assert their privilege over those documents where appropriate.  *See, e.g., Estate of Ungar v. Palestinian Authority*, 332 F. App'x 643, 645 (2nd Cir. 2009) (privilege holder has right to assert privilege over documents of third-party subpoena recipients).

[3] Unless otherwise noted, alterations, internal citations and quotation marks are omitted from case citations.

disclosure to an outside auditor would "discourage companies from seeking legal advice and candidly disclosing that information to independent auditors").

Instead, Plaintiffs rely almost entirely on *In re Willkie Farr & Gallagher*, 1997 WL 118369 (S.D.N.Y. March 14, 1997), and this Court's decision in *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002).  Neither decision helps Plaintiffs.

Contrary to Plaintiffs' suggestion (*see* Opp'n at 12-13), *Willkie Farr* did **not** address whether work product protection is waived by disclosure to an auditor.  In fact, the court's sole holding on the work product question was that the work product doctrine did not apply because the "primary motivation" for the creation of the documents was for business purposes.  *Willkie Farr*, 1997 WL 118369, at *2.  Notably, as other courts have observed, *Willkie Farr* was decided prior to the Second Circuit's decision in *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), which expressly rejected the "primary motivation" test utilized in *Willkie Farr* and instead adopted the "because of" test, as discussed in further detail in the ARCP Defendants' moving brief (at 15-16).  *See In re Weatherford Int'l Secs. Litig.*, 2013 WL 12185082, at *3 (S.D.N.Y. Nov. 5, 2013) (noting that *Willkie Farr* "applie[d] a standard—requiring that the party claiming the privilege prove that the withheld documents were prepared principally or exclusively to assist in anticipated or ongoing litigation—that the Second Circuit explicitly disavowed in *Adlman*").  In any event, *Willkie Farr*'s sole holding on waiver was that the company waived ***attorney-client privilege*** with respect to information disclosed to the auditor.  The ARCP Defendants, however, have never argued that the attorney-client privilege applies to its communications with Grant Thornton.[4]

---

[4] The court in *Willkie Farr* extended its waiver holding to all of the law firm's materials that were the subject of a subpoena because its client, the company, was using the privilege "as both a sword and shield in litigation" by arguing that plaintiffs' complaint should be dismissed "because the accounting firm's audit, which relied on the law firm's investigation, showed that the alleged irregularities in the financial statement were not material."  *Willkie Farr*, 1997 WL 118369, at *3.  Accordingly, privilege was waived under the "fairness doctrine."  *Id.* at *3-4.  As discussed *infra*

Plaintiffs' reliance upon *Medinol* is also misplaced.  In *Medinol*, the Court declined to find "common interests in litigation" between the company and its outside auditor with respect to meeting minutes shared with the auditor so that it could evaluate the company's litigation reserves, and ordered production of materials disclosed to the outside auditor.  *Medinol*, 214 F.R.D. at 116-17.  Since *Medinol*, an overwhelming majority of courts in this Circuit have declined to find a waiver of work product protection resulting from disclosing information or documents to external auditors.  *See In re Weatherford Int'l Sec. Litig.*, 2013 WL 12185082, at *5 (declining to follow *Medinol* and holding that disclosure to outside auditors did not waive work product protection); *Vacco v. Harrah's Operating Co.*, 2008 WL 4793719, at *6-7 (S.D.N.Y. Oct. 29, 2008) (same); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447-49 (S.D.N.Y. 2004) (concurring "with the need for auditors to retain their independence" but holding that the disclosure to external auditor did not waive work product protection).

As other courts have noted, *Medinol*'s holding that disclosure to an auditor waived work product protection runs counter to the Second Circuit's decision in *Adlman*.  *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co.*, 2006 WL 278131, at *2 (S.D.N.Y. Feb. 2, 2006) (declining to follow *Medinol* "because it appears to be directly in conflict with *Adlman*").  In explaining the rationale for its adoption of the "because of" test for when a document is prepared "in anticipation of litigation," the *Adlman* court examined a hypothetical in which a company's independent auditor requested a memorandum prepared by the company's attorneys estimating the likelihood of success in litigation and an accompanying analysis of the company's legal strategies and options to assist it in estimating what should be reserved for litigation losses.  *Adlman*, 134

---

in Section I.B, ARCP has ***never*** attempted to use the Investigation Materials as both a sword and shield, and therefore there is no basis for finding a broad waiver under the fairness doctrine.

F.3d at 1200.  The Second Circuit observed that to refuse to recognize work product protection in these circumstances would "impose[] an untenable choice upon a company" because "[i]f the company declines to make such analysis or scrimps on candor and completeness to avoid prejudicing its litigation prospects, it subjects itself and its co-venturers to ill-informed decisionmaking."  *Id*.  The court stated that it "perceive[d] nothing in the policies underlying the work-product doctrine or the text of the Rule itself that would justify subjecting a litigant to this array of undesirable choices."  *Id*.  Accordingly, the Second Circuit held that the work product doctrine should protect such documents, *id.*, and it made no suggestion that providing the document to the auditor would waive work product protection.  *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 2006 WL 278131, at *2 (noting that in *Adlman*, "the opinion was provided to an independent auditor, and yet the Second Circuit did not suggest that any waiver might have occurred").

Plaintiffs' reliance on *Medinol*'s citation to the Supreme Court's "public watchdog" language in *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984), is also unavailing.  Indeed, in *Deloitte*, the D.C. Circuit expressly rejected the argument that *Arthur Young* supported a finding of waiver:

> Likewise, the government's reliance on *Arthur Young* is misplaced.  In *Arthur Young*, the Court considered whether *accountant* work-product should be granted the same protection *attorney* work product receives.  The government quotes the Court's statement that "[t]o insulate from disclosure a certified public accountant's interpretations of the client's financial statements would be to ignore the significance of the accountant's role as a disinterested analyst charged with public obligations."  *Arthur Young*, 465 U.S. at 818, 104 S.Ct. 1495.  All well and good.  In this case, however, the government attempts to discover not an independent auditor's "interpretations of the client's financial statements," which *Arthur Young* would permit, but an attorney's thoughts and opinions developed in anticipation of litigation, which the work product doctrine forbids.

*Deloitte*, 610 F.3d at 143.

Notably, Plaintiffs do not cite a single Southern District decision that follows *Medinol*. By contrast, the ARCP Defendants have pointed to the plethora of Southern District decisions that have held that disclosure to an auditor does not waive work product protection, none of which Plaintiffs address in anything other than conclusory fashion. (*See* Opp'n at 18 n.3.) Moreover, Plaintiffs' attempt to distinguish the D.C. Circuit's decision in *Deloitte*—the sole Court of Appeals decision to address the issue—is unavailing. Contrary to Plaintiffs' assertion, *Deloitte* addressed precisely the issue presented here: whether the company waived work product protection by disclosing information to its external auditor. *See Deloitte*, 610 F.3d at 139. Accordingly, the *Deloitte* court's holding that an auditor's "power to issue an adverse opinion, while significant, does not make it the sort of litigation adversary contemplated by the waiver standard," *id.* at 140, and its recognition of the severe adverse public policy consequences of a waiver finding, *id.* at 143, is directly on point here.

Moreover, as established in the moving brief, the facts in *Medinol* are distinguishable from those here. (*See* Moving Br. at 29-30.) Unlike the company's external auditor in *Medinol*, Grant Thornton did not have an adversarial relationship with ARCP's Audit Committee. The Audit Committee and Grant Thornton shared a common litigation interest, because both were undoubtedly aware of the likelihood of litigation arising from the accounting errors. If anything, the fact that Grant Thornton's feedback and input during the course of the investigation facilitated a more thorough investigation militates ***against*** the application of the rationale expressed in *Medinol*.

**B.      Even If a Waiver Could Be Found, It Would Not Extend Beyond Documents Shared with Grant Thornton.**

Plaintiffs attempt to argue that ARCP made a general waiver of any potentially applicable attorney-client privilege or work product protection by purportedly providing certain Investigation

Materials to Grant Thornton.  (Opp'n at 7-18.)  Even if the Court were to conclude that the ARCP Defendants waived attorney-client privilege or work product protection by disclosing certain information to Grant Thornton, however, any waiver would be limited to the information disclosed and would not extend to the Investigation Materials in their entirety because the ARCP Defendants have never attempted to use the Investigation Materials offensively in this litigation.

As the Second Circuit held in *In re Von Bulow*, 828 F.2d 94 (2d Cir. 1987), where "disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed." *Id.* at 103.  Rather, a broad waiver can apply only "where the privilege-holder has attempted to use the privilege as both as both 'a sword' and 'a shield' or where the attacking party has been prejudiced at trial." *Id*.  Thus, while a disclosure may result in a limited waiver of the specific documents or communications disclosed, "this waiver does not extend to other documents that may contain similar (or different) advice on the same subject, ***unless*** [the withholding party] attempts to use those documents or that advice affirmatively[.]" *Oxyn Telecomm'ns, Inc. v. Onse Telecom*, 2003 WL 660848, at *5 (S.D.N.Y. Feb. 27, 2003) (emphasis added) (citing *In re Von Bulow*, 828 F.2d at 101-02); *see also In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (for waiver to apply, "a party must ***rely*** on privileged advice from his counsel to make his claim or defense") (emphasis in original); *In re Metlife Demutualization Litig.*, 2007 WL 1017603, at *7 (S.D.N.Y. Mar. 30, 2007) (holding that defendant's disclosure of counsel's tax opinion was an extrajudicial disclosure, hence the defendants did not waive the attorney-client privilege with respect to all tax advice relating to the demutualization); *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2013 WL 685339, at *2-3 (N.D. Cal. Feb. 25, 2013) (holding that under the fairness doctrine "the extrajudicial disclosure of an attorney-client communication—one not subsequently used by

the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication") (quoting *In re Von Bulow*, 828 F.2d at 102).

Courts in this district routinely reject attempts to claim a broad waiver of privilege resulting from limited disclosure of privileged information. For example, in *Oxyn Telecommunications*, the plaintiff argued that the defendant had waived privilege with respect to all documents relating to certain issues in the action where the defendant had previously engaged in extrajudicial communications with the plaintiff in connection with a failed co-venture. *Oxyn Telecomm'ns*, 2003 WL 660848, at \*4. Relying on the standard set forth by the Second Circuit in *In re Von Bulow*, the court held that waiver was limited to the information and document disclosed because the defendant had not sought to use the non-disclosed documents affirmatively in the litigation: "[T]he fairness doctrine, which aims to prevent prejudice to a party and a distortion of the judicial process when a privilege holder selectively discloses otherwise privileged information during litigation, simply does not apply to extrajudicial disclosures." *Id.* at \*5.

Similarly, in *In re General Motors LLC Ignition Switch Litigation*, 80 F. Supp. 3d 521 (S.D.N.Y. 2015), General Motors ("GM") retained attorney Anton Valukas and his law firm Jenner & Block to conduct an internal investigation into GM's ignition switch defects. *Id.* at 524. After reviewing a large number of documents and interviewing current and former employees, Valukas and his colleagues presented their findings to the GM Board of Directors in a 315-page report (the "Valukas Report"). *Id.* Thereafter, the Valukas Report was submitted to Congress, the Department of Justice, and the National Highway Traffic Safety Administration ("NHTSA"), and was ultimately shared with the public on the NHTSA's website. *Id.* at 525. Even though the Valukas Report included citations to many (but not all) witness interviews conducted by the Jenner & Block lawyers and expressly disclosed statements of witnesses, *id.* at 524-25, the court

nonetheless held that "there is no basis to conclude that [GM] waived either attorney-client privilege or the attorney work product doctrine" with respect to the interview materials withheld by GM because GM had "neither offensively used the Valukas Report in litigation nor made a selective or misleading presentation that is unfair to adversaries in this litigation, or any other." *Id.* at 534.  The court further stated, "[p]ut simply, this case does not present the unusual and rare circumstances in which fairness requires a judicial finding of waiver with respect to related, protected information." *Id.*

Here, to the extent waiver could be found—and it should not—it should be limited to the specific information disclosed to Grant Thornton because (1) the ARCP Defendants have not offensively used, and do not intend to use, the Investigation Materials as a sword and a shield; and (2) the limited extrajudicial disclosure of information to Grant Thornton does not give a tactical advantage to the ARCP Defendants in this litigation, nor does it prejudice Plaintiffs in any way.

## II.   THE E&Y DOCUMENTS WOULD NOT HAVE BEEN PREPARED IN SUBSTANTIALLY SIMILAR FORM ABSENT THE PROSPECT OF LITIGATION.

Plaintiffs do ***not*** dispute that the Audit Committee and Weil reasonably anticipated litigation when they conducted the internal investigation.  And with good reason—upon Weil's initial review of the employee whistleblower complaint, the prospect of litigation and regulatory investigations was readily apparent.   (Suppl. Decl. ¶¶ 4-6.)   Nor do Plaintiffs dispute that documents prepared by the Audit Committee or Weil during the investigation are protected work product.   Rather, Plaintiffs argue that the Investigation Materials prepared by ***E&Y*** are not protected work product because those documents purportedly would have been prepared in substantially similar form irrespective of the prospect of litigation.  (*See* Opp'n at 19-24.)[5]

---

[5] Plaintiffs claim that the ARCP Defendants' assertion of privilege over the E&Y documents is "particularly problematic" given that the ARCP Defendants have not provided Plaintiffs with a privilege log with respect to E&Y's

As an initial matter, the Court need not address whether the E&Y documents are protected work product because they are squarely protected by attorney-client privilege under *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961).  (*See* Moving Br. at 21-23.)  Unsurprisingly, Plaintiffs do not dispute this.  (*See* Opp'n at 24 n.6 (acknowledging that "the Investigation Materials prepared by EY were once potentially subject to attorney-client privilege under *Kovel*," but arguing that "this point is moot" based on Plaintiffs' argument that ARCP waived privilege with respect to documents shared with Grant Thornton); Opp'n at 16 (similarly acknowledging that E&Y "provide[d] the type of forensic accounting services potentially protected under *United States v. Kovel*").)  Given Plaintiffs' concession that the E&Y documents are protected by attorney-client privilege and, therefore, protected from discovery, the Court need not even address whether the E&Y documents are protected work product (assuming that the Court does not otherwise find a waiver of attorney-client privilege).

In any event, the E&Y documents *are* protected work product because, as the moving brief and Mr. Garcia's declarations establish, Weil's investigation—and E&Y's work on behalf of Weil in connection with the investigation—would not have been conducted in a substantially similar manner but for the prospect of litigation.  (Decl. ¶ 6; Suppl. Decl. ¶ 7.)  To wit, Weil compiled and considered information well beyond what was shared with Grant Thornton.  (Suppl. Decl. ¶ 7.)  In

---

documents responsive to the third-party subpoena served on it by Plaintiffs.  (Opp'n at 19.)  As the ARCP Defendants previously explained to Plaintiffs, however (*see* Opp'n, Ex. 25), the ARCP Defendants' review of E&Y work papers revealed that those documents are comprised of electronic work papers collected or created by E&Y in connection with the Audit Committee investigation and stored in a single "Electronic Workpapers" file folder for that purpose, and hard copy work papers of the same type.  All of these work papers are related to the Audit Committee's investigation, with respect to which Plaintiffs are challenging the ARCP Defendants' privilege assertions in their entirety, and which challenge is the subject of the pending motion for a protective order.  Breaking apart the work papers to list the contents on a document-by-document basis would therefore be pointless and unnecessarily burdensome.  Additionally, a document-by-document log could reveal information concerning, *inter alia*, the focus, scope and time period of documents reviewed in connection with the internal investigation, and could therefore reveal privileged information.  Moreover, Plaintiffs have received privilege logs from the ARCP Defendants that identify on an individualized basis all withheld and redacted communications between ARCP and E&Y, and have separately negotiated privilege logs with Weil.

- 14 -

addition, Weil did not extend its investigation into additional areas and topics requested by Grant Thornton.  (*Id.* ¶ 8.)  Similarly, Weil declined to interview certain witnesses whom Grant Thornton had requested that Weil interview.  (*Id*.)

 In arguing that the E&Y documents would have been prepared in substantially similar form irrespective of the prospect of litigation, Plaintiffs fundamentally misinterpret the law in the Second Circuit and misconstrue the facts of the instant case.  *First*, under *Adlman*, work product protection applies even if there is a dual purpose for the creation of the materials:  "[w]here a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it is created in order to assist with a business decision."  *Id.* at 1202.  Thus, "the fact that some or even all of the documents at issue were created in part to ensure that [the company's] public disclosures were accurate does not remove them from the ambit of work product protection under *Adlman*."  *In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 724555, at *8 (S.D.N.Y. Mar. 9, 2007); *Patel v. L-3 Commc'ns Holdings, Inc.*, 2016 WL 4030704, at *3 (S.D.N.Y. July 25, 2016) ("Although [the company] may have had independent obligations or business reasons to seek to assure itself that the accounting problems discovered within [the company's Army Sustainment Division] were limited to the C-12 Contract and were not duplicated elsewhere in the company, that fact does not alter the reality that the review was conducted as it was in large part because of expected litigation.").

 *Second*, in an effort to demonstrate that E&Y would not have prepared documents in substantially similar form, Plaintiffs misconstrue the facts to suggest that E&Y performed audit work necessary to restate the Company's financial statements.  That is simply not correct.  Grant Thornton was the sole outside auditor auditing the restated financials.  The sole purpose of E&Y's

retainer by Weil was to provide forensic accounting services in connection with Weil's representation of the Audit Committee.  (*See* Moving Br. at 4-5.)  To the limited extent that Grant Thornton considered the results of E&Y's work on the internal investigation for purposes of its own audit work, that did not somehow convert E&Y into the Company's auditor.

*Third*, in a last-ditch effort, Plaintiffs boldly attempt to argue that "ARCP's counsel has simply made *ipse dixit* assertions" that the Investigation Materials were prepared in the manner that they were because of the prospect of litigation and regulatory investigations.  (Opp'n at 20.)  But this does not fairly characterize Mr. Garcia's declarations submitted in connection with the ARCP Defendants' motion, which provide specific facts supporting the representation that the Investigation Materials would not have been prepared in substantially similar form absent the prospect of litigation and regulatory investigations.

In any event, courts repeatedly accept sworn statements from corporate representatives and counsel who conducted the investigation that represent that the investigation was conducted in anticipation of litigation, and this Court should likewise do so here.  *See In re Veeco*, 2007 WL 724555, at *2, *7 (rejecting plaintiff's "attempts to impugn" affidavits averring that "the documents at issue were prepared because of the anticipated litigation and would not have been prepared by [the company] in the ordinary course of business, nor would [the company] prepare work in a form substantially similar to that prepared by [counsel] and the [accounting firm]"); *Patel*, 2016 WL 4030704, at *3 (accepting attorney declaration averring that law firm and forensic accounting firm "would not have conducted the review in the manner they did in the absence of anticipated litigation" as sufficient to invoke work product protection).

In support of their argument that Mr. Garcia's declarations are insufficient to demonstrate that the Investigation Materials are protected work product, Plaintiffs rely on *Wultz v. Bank of*

*China Ltd.*, 304 F.R.D. 384 (S.D.N.Y. 2015), *Allied Irish Banks v. Bank of America*, 240 F.R.D.

96 (S.D.N.Y. 2007), and *Fine v. ESPN, Inc.*, 2015 WL 3447690 (N.D.N.Y. May 28, 2015). But

those cases are inapposite. In *Wultz*, the defendant provided "virtually no evidence on the question

of what" it "would have done had it learned of the facts giving rise to the investigation "under

circumstances where the knowledge was not coupled with the threat of litigation." *Id.* at 396.

Similarly, in *Allied Irish Banks*, the company did not attempt to provide a witness to attest to the

question of how the investigation would have been conducted differently had there been no threat

of litigation, which the court noted was not surprising given that the investigation was conducted

by a non-attorney for business purposes. *Allied Irish Banks*, 240 F.R.D. at 107. And in *Fine*, the

attorney stated in his affidavit that his law firm frequently conducted investigations for the

university into alleged employee misconduct, "suggesting that the investigation concerning . . .

[the] allegations [at issue] was fairly routine and *would have been undertaken even in the complete*

*absence of an anticipation of litigation*." *Fine*, 2015 WL 3447690, at *2 (emphasis added). In

stark contrast with those cases, the ARCP Defendants have submitted the declarations of Mr.

Garcia, which set forth in detail the reasons why the internal investigation was conducted

differently than if Weil had not anticipated litigation and regulatory investigations.[6]

## III.   THE TENEO DOCUMENTS ARE PROTECTED UNDER THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT DOCTRINE.

Plaintiffs contend that the ARCP Defendants have improperly asserted attorney-client

privilege and work product protection over documents prepared by Teneo, which was retained by

---

[6] While Rule 26(b)(3)(A) permits discovery of fact work product in the limited circumstances where a party has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," Plaintiffs' Opposition does not make *any* argument that they have made this showing. Accordingly, Plaintiffs have waived the argument. *In re Veeco*, 2007 WL 724555, at *10-11 (plaintiffs waived "substantial need" argument by failing to raise it in briefing on motion to compel); *In re Weatherford Int'l Sec. Litig.*, 2013 WL 12185082, at *2 n.2 (plaintiffs waived "substantial need" argument by limiting it to a single sentence).

Weil to assist it in rendering legal advice to the Audit Committee regarding communications with the public and media in connection with the investigation.  Notably, Plaintiffs concede that Teneo documents that "contain Weil's mental impression" are protected work product.  (Opp'n at 27.)  But Plaintiffs fail to recognize that even documents that do not reflect Weil's mental impressions are protected (1) by attorney-client privilege under the *Kovel* doctrine, and (2) by the work product doctrine because they reflect documents prepared in anticipation of litigation by a third party that was clearly not in an adversarial relationship with ARCP and, in fact, was expressly hired by Weil for purposes of assisting it with its investigation.  (*See* Moving Br. at 24-25.)

Plaintiffs' reliance on *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53 (S.D.N.Y. 2000), is misplaced as that case is readily distinguishable.  *First*, the *Calvin Klein* court, after an *in camera* review, concluded that very few, if any, of the documents at issue reflected confidential communications made for the purpose of obtaining legal advice.  *Id.* at 54.  Here, by contrast, the withheld documents reflect work product and confidential communications between Weil, ARCP, and Teneo.  *Second*, as recognized by the court in *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003), the public relations consultant in *Calvin Klein* had a relationship with the party asserting privilege that predated any anticipated litigation, and thus the services rendered were nothing more than "ordinary public relations advice."  *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 328-29 (citing *Calvin Klein*, 198 F.R.D. at 54).  That is not the situation here, where Teneo was retained by Weil solely for the purposes of the internal investigation and its aftermath.[7]

Plaintiffs take issue with the fact that the ARCP Defendants have not yet produced a privilege log for documents made available to them by Teneo in response to the subpoena served

---

[7] Notably, Plaintiffs also cite to *Haugh v. Schroder Investment Management North America Inc.*, 2003 WL 21998674, (S.D.N.Y. Aug. 25, 2003), but the court in that case held that communications between a public relations consultant and plaintiffs' former counsel *were* protected work product.  (*See* Moving Br. at 25.)

by Plaintiffs on Teneo (*see* Opp'n at 19 & n.4, 24-25 & n.7), but that issue is of Plaintiffs' own doing.  As indicated in Exhibit 25 to their Opposition, Plaintiffs waited until April 2017 to serve a subpoena on Teneo, and thereafter insisted that Teneo use broad search parameters, causing a lengthy period of negotiations of those searches between Plaintiffs and Teneo and the need for Teneo to then conduct a review of a large volume of documents.  Accordingly, Teneo did not make available ***any*** documents for the ARCP Defendants' privilege review until May 18, 2017, and Teneo continued to provide documents to the ARCP Defendants for their review on a rolling basis through June 2, 2017.  In all, Teneo made more than 11,000 documents available for the ARCP Defendants' privilege review.  These documents are in addition to the more than ***45,000 other third-party documents*** made available for the ARCP Defendants' review at roughly the same time, most of which were in response to a flurry of ***more than thirty*** third-party subpoenas served by Plaintiffs in April and May 2017.  The ARCP Defendants have been diligently reviewing these third parties' documents on an ongoing basis and, as Plaintiffs are well aware, have completed their privilege reviews and provided privilege logs for many of these third parties.  Indeed, on July 12, 2017, the ARCP Defendants produced more than 3,000 documents on behalf of Teneo (no privilege has been asserted over those documents), while their review of the remaining Teneo documents continues.  The ARCP Defendants will continue to diligently review these documents and will provide Plaintiffs with a privilege log for any privileged documents once the review is complete.

## CONCLUSION

For the foregoing reasons and those discussed in the ARCP Defendants' moving brief, the Court should enter a protective order preventing discovery of the Investigation Materials.

Dated:   July 14, 2017
        New York, New York

MILBANK, TWEED, HADLEY & McCLOY LLP


By: _/s/ Antonia M. Apps_____
Scott A. Edelman
Antonia M. Apps
Jed M. Schwartz
Jonathan Ohring
28 Liberty Street
New York, New York 10005
Telephone:  212-530-5000
Fax:  212-530-5219
Email: SEdelman@milbank.com
      AApps@milbank.com
      JSchwartz@milbank.com
      JOhring@milbank.com

*Attorneys for Defendants American Realty Capital Properties, Inc. and ARC Properties Operating Partnership, L.P.*