UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re AMERICAN REALTY CAPITAL PROPERTIES, INC. LITIGATION | Civil Action No. 1:15-mc-00040-AKH <br><br> <u>CLASS ACTION</u> |
| This Document Relates To:<br>　　ALL ACTIONS. | |
| ARCHER CAPITAL MASTER FUND, L.P., et al., <br><br>　　　　　　　　Plaintiffs, <br><br>　vs. <br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>　　　　　　　　Defendants. | Civil Action No. 1:16-cv-05471-AKH |
| ATLAS MASTER FUND, LTD., et al. <br><br>　　　　　　　　Plaintiffs, <br>　vs. <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>　　　　　　　　Defendants. | Civil Action No. 1:16-cv-05475-AKH |

[Caption continued on following page.]

| | |
|---|---|
| BLACKROCK ACS US EQUITY TRACKER FUND, et al., <br><br>                   Plaintiffs, <br><br>   vs. <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>                   Defendants. | Civil Action No. 1:15-cv-08464-AKH |
| CLEARLINE CAPITAL PARTNERS LP, et al., <br><br>                   Plaintiffs, <br><br>   vs. <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>                   Defendants. | Civil Action No.: 1:15-cv-08467-AKH |
| HG VORA SPECIAL OPPORTUNITIES MASTER FUND, LTD., <br><br>                   Plaintiff, <br><br>   vs. <br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br>                   Defendants. | Civil Action No. 1:15-cv-04107-AKH |

[Caption continued on following page.]

| | |
|---|---|
| JET CAPITAL MASTER FUND, L.P., et al.,<br><br>       Plaintiffs,<br> vs.<br><br>AMERICAN REALTY CAPITAL PROPERTIES, INC., et al.,<br><br>       Defendants. | Civil Action No. 1:15-cv-00307-AKH |
| PENTWATER EQUITY OPPORTUNITIES MASTER FUND LTD., et al.,<br><br>       Plaintiffs,<br> vs.<br><br>AMERICAN REALTY CAPITAL PROPERTIES, INC., et al.,<br><br>       Defendants. | Civil Action No.: 1:15-cv-08510-AKH |
| PIMCO FUNDS: PIMCO DIVERSIFIED INCOME FUND, et al.,<br><br>       Plaintiffs,<br> vs.<br><br>AMERICAN REALTY CAPITAL PROPERTIES, INC., et al.,<br><br>       Defendants. | Civil Action 1: 15-cv-08466-AK |

[Caption continued on following page.]

| | |
|---|---|
| TWIN SECURITIES, INC., et al., <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., et al., <br><br> Defendants. | Civil Action No. 1:15-cv-01291-AKH |
| JOANNE WITCHKO, Derivatively on Behalf of Nominal Defendant AMERICAN REALTY CAPITAL PROPERTIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NICHOLAS S. SCHORSCH, et al., <br><br> Defendants, <br> – and – <br><br> AMERICAN REALTY CAPITAL PROPERTIES, INC., <br><br> Nominal Defendant. | Lead Case No.: 1:15-cv-6043-AKH (Consolidated w/Case No. 15-cv-8563-AKH) |

## SUPPLEMENTAL DECLARATION OF CHRISTOPHER L. GARCIA IN FURTHER SUPPORT OF ARCP DEFENDANTS' MOTION FOR PROTECTIVE ORDER WITH RESPECT TO INVESTIGATION MATERIALS

I, CHRISTOPHER L. GARCIA, declare as follows:

1. I am a partner with the law firm of Weil, Gotshal & Manges LLP ("Weil"), counsel to Defendants Thomas A. Andruskevich, Bruce D. Frank, Leslie D. Michelson, Edward G. Rendell and William G. Stanley, former outside, non-management directors of Defendant American Realty Capital Properties, Inc. (collectively, the "Outside, Non-Management Directors"), in the above-captioned actions. I am a member in good standing of the Bar of the State of New York and am admitted to practice before this Court.

2. I respectfully submit this supplemental declaration in further support of the ARCP Defendants' Motion for a Protective Order with Respect to Investigation Materials, filed by Defendants American Realty Capital Properties, Inc. ("ARCP" or the "Company") and ARC Properties Operating Partnership, L.P. ("ARCP OP") (collectively, the "ARCP Defendants") in the above-captioned actions with respect to Plaintiffs' request for the production of documents relating to the internal investigation conducted by ARCP's Audit Committee (the "Audit Committee") with the assistance of Weil.

3. I submit this declaration based on personal knowledge of the investigation, as I was one of the attorneys at Weil who led it. The information contained in this declaration is limited to my best current recollection of the events described herein. Furthermore, this declaration does not purport to provide a complete account of all facts concerning the investigation.

4. Upon its initial review of the employee whistleblower email that precipitated the internal investigation that Weil was retained to conduct on behalf of the Audit Committee of

- 2 -

ARCP, Weil anticipated that there would be civil litigation and regulatory investigations. As indicated in my Declaration of June 27, 2017, this concern for litigation and investigations was based on both the nature and source of the allegations, which concerned alleged accounting and other improprieties at ARCP. The allegations were made by an employee familiar with ARCP's accounting who had access to ARCP accounting information. Additionally, the employee who submitted the allegations identified himself through the email he sent detailing the allegations; this was not an anonymous whistleblower complaint. This lent a measure of credibility to the allegations far greater than the level of credibility that is attendant to anonymous whistleblower complaints and suggested, based on my experience, that litigation and regulatory investigations should be anticipated.

5.  The allegations made by the whistleblower were serious. They concerned a broad range of alleged accounting and other improprieties involving senior management of the Company. If true, the allegations were precisely the types of allegations one would expect would result in civil litigation and regulatory investigations and/or proceedings.

6.  Moreover, Weil and the Audit Committee recognized the risk from the outset of the investigation that the whistleblower could stop cooperating with the Company and provide information to plaintiffs' lawyers or government regulators. He could, at any time, report the same allegations to plaintiffs' lawyers or regulators before the Audit Committee had the opportunity to complete its investigation and report, as appropriate, to regulators or investors. He could make such reports regardless of whether the allegations were true. This created a risk of litigation and regulatory investigations additional to the risk posed by the facial credibility of the allegations.

7. I have reviewed Plaintiffs' opposition to the ARCP Defendants' motion for a protective order with respect to materials prepared in the course of the investigation and, in particular, the assertion that the materials prepared by Weil and Ernst & Young LLP ("E&Y") during the investigation would have been the same regardless of the threat of potential litigation because they were prepared to assist ARCP's auditor, Grant Thornton LLP ("Grant Thornton"), with its audit procedures. As discussed in my original declaration and above, that is not the case. For example, Weil, working on behalf of the Audit Committee, compiled and considered information well beyond what was shared with Grant Thornton. Weil also did not rely on Grant Thornton to assist in its investigation. Rather, Weil specifically engaged E&Y to provide forensic accounting services to assist Weil in its investigation and assessment of litigation and regulatory risks that ARCP could face.

8. In addition, Weil did not extend its investigation into additional areas and topics requested by Grant Thornton. Similarly, Weil declined to interview certain witnesses whom Grant Thornton had requested that Weil interview.

9. Nor was Grant Thornton provided with unlimited access to materials prepared in connection with the Audit Committee's investigation. Among other things, Grant Thornton was not invited to (and did not attend) any of the at least 76 witness interviews conducted by Weil over a total of more than 100 hours. Weil did not provide Grant Thornton with notes or memoranda memorializing the content of Weil's witness interviews. And most documents considered by Weil were not provided to Grant Thornton. Accordingly, the universe of information compiled and considered by Weil and the Audit Committee was much larger than the information shared with Grant Thornton.

10. To be sure, Grant Thornton requested, and was provided with, information as to Weil's work plan and scope of the investigation; for example, Weil identified how many documents it reviewed in total, the search terms used to review those documents, and the number of witnesses and witness interviews. The provision of this type of information is routinely requested by auditors in circumstances such as those presented here so that they can verify that outside counsel is conducting a thorough and independent investigation. It does not mean that Weil or E&Y shared whole-cloth the information that they collected and reviewed. On the contrary, the vast majority of the information collected and reviewed by Weil and E&Y was not shared with Grant Thornton.

11. While Weil and the Audit Committee shared information with Grant Thornton in connection with Grant Thornton's work, and while Grant Thornton provided input to Weil and the Audit Committee concerning certain aspects of the investigation, the investigation by the Audit Committee was independent of Grant Thornton's work as it contemplated litigation and regulatory investigations and was executed in a manner that reflected such contemplation.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of July 2017 in New York, New York.

_____
Christopher L. Garcia