```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/14/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
:
:
:
IN RE AMERICAN REALTY CAPITAL      :  **ORDER GRANTING IN PART**
PROPERTIES, INC. LITIGATION        :  **AND DENYING IN PART**
                                   :  **DEFENDANTS' MOTION FOR**
                                   :  **PROTECTIVE ORDER**
                                   :
                                      15-mc-40 (AKH)
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Defendant American Realty Capital Properties, Inc. ("ARCP") and ARC Properties Operating Partnership, L.P. (collectively, the "ARCP defendants") move this Court for a protective order with respect to class action plaintiffs' request for the production of documents relating to the internal investigation conducted by ARCP's Audit Committee ("the Audit Committee") with the assistance of the law firm Weil, Gotshal & Manges LLP ("Weil"), the accounting firm Ernst & Young ("E&Y"), and the public relations firm Teneo Strategy LLC ("Teneo"). Communications between either Weil or E&Y and Grant Thornton LLP ("GT"), ARCP's outside auditor, are also at issue. For the reasons discussed below, and in general as to the entire set of documents, I hold that (1) the materials prepared by Weil and the communications between Weil and the Audit Committee are privileged; (2) materials prepared by E&Y are privileged, and are otherwise protected work product; (3) the materials prepared by Teneo are neither privileged nor work product and must be produced; and (4) Weil and E&Ys' disclosure of materials to GT did not waive work product protection. I make no rulings as to

1

particular documents. The parties may tender particular documents for the court's review after applying the rulings described in this decision.

## I. FACTS

On September 7, 2014, ARCP's auditor, GT, alerted the lead independent director of ARCP's Audit Committee to an email sent by an ARCP employee to GT the previous day raising concerns regarding accounting practices and other matters at ARCP. In response, on September 9, 2014, the Audit Committee retained Weil to assist the Audit Committee in conducting an internal investigation of the alleged misconduct and to provide legal advice to the Audit Committee in connection therewith.

In light of the accounting issues raised by the whistleblower's allegations, Weil retained E&Y to provide forensic accounting services in connection with Weil's representation of the Audit Committee. With the assistance of E&Y, Weil began reviewing documents, communicating with ARCP employees, and conducting witness interviews. Furthermore, on October 27, 2014, Weil entered into an agreement on behalf of the Audit Committee with Teneo, under which Teneo agreed to provide advisory and strategic communications services in connection with ARCP's announcement of the Audit Committee's preliminary results of its investigation.

On October 29, 2014, ARCP filed a Form 8-K with the U.S. Securities and Exchange Commission announcing the Audit Committee's conclusion, based on the preliminary findings of its investigation, that ARCP had made errors in its calculation of its Adjusted Funds From Operations ("AFFO") for the first and second quarters of 2014 and, as a result, had overstated AFFO for these periods. Garcia Declaration, ECF 401, at Ex. C. The October 2014 disclosure also indicated that the investigation was ongoing as "the Audit Committee ha[d]

expanded its investigation to encompass the Company's audited consolidated financial statements for the fiscal year ended December 31, 2013." *Id.*

Weil's investigation on behalf of the Audit Committee continued following the October 2014 disclosure. In connection with the investigation, Weil and E&Y engaged in communications with—and received information and input from—GT.

A number of putative class actions were filed against ARCP and eventually consolidated into the instant putative class action. To date, ARCP has withheld 5,107 documents on the ground that they are related to the internal investigation. They fall broadly into four categories: (1) materials prepared by Weil and the communications between it and the Audit Committee and/or ARCP employees in furtherance of the investigation; (2) materials prepared by E&Y in relation to the investigation; (3) materials prepared by Teneo for the same purpose; and (4) input and information provided by GT to Weil and E&Y, and materials prepared by Weil and/or E&Y that were provided to GT, in connection with the investigation.

Plaintiffs now seek discovery of all disputed materials. On June 27, 2017, defendants moved for a protective order to deny discovery pursuant to Fed. R. Civ. P. 26(c)(1) on the basis that these materials are protected by the attorney-client privilege and work product doctrine. *See* ECF 399, Motion for Protective Order with Respect to Investigation Materials. Oral argument was held on July 18, 2017. After careful consideration of the parties' submissions and arguments, I consider each assertion of privilege below.

## II. **APPLICABLE LAW**

Defendants seek a protective order under Fed. R. Civ. P. 26(c)(1), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The protection of documents

3

covered by the attorney-client privilege or the work product doctrine constitutes "good cause" for the issuance of a protective order. *See Roseman v. Bloomberg L.P.*, 2016 WL 3866375, at *5 (S.D.N.Y. June 17, 2016) (good cause exists when discovery seeks to "elicit privileged communications and protected information"). I must therefore independently consider each of defendants' requests to exempt the disputed materials from discovery.

a. The Attorney-Client Privilege

"[T]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 526 (S.D.N.Y. 2015) (quoting *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. DOJ*, 697 F.3d 184, 207 (2d Cir.2012)). Notably, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). In the corporate context, failure to afford protection to such communications "threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law." *Id.* at 392.

Accordingly, the touchstone of deciding whether attorney-client privilege applies to communications between lawyers and accountants turns on the purpose of the communication. As the Second Circuit stated:

> What is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service[s] . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.

*United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). The privilege therefore applies to communications relating to an internal investigation where "the predominant purpose of the

4

communication is to render or solicit legal advice." *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 529 (quoting *In re County of Erie*, 473 F.3d 413, 420 (2d Cir.2007)). "The primary purpose test, however, does not require a showing that obtaining or providing legal advice was the *sole* purpose of an internal investigation or that the communications at issue 'would not have been made 'but for' the fact that legal advice was sought.'" *Id.* at 530 (citing *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir.2014)). Rather, "[s]o long as obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney-client privilege applies, even if there were also other purposes for the investigation." *Id.*

### b. The Work Product Doctrine

The work product doctrine protects from disclosure "documents and tangible things that are prepared *in anticipation of litigation* or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). Thus, "materials prepared in anticipation of litigation are not discoverable absent a showing that the party seeking discovery has a substantial need for the materials and cannot obtain the equivalent without undue hardship." *In re Vecco Instruments, Inc. Sec. Litig.*, 2007 WL 210110, at *1 (S.D.N.Y. Jan. 25, 2007).

In *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), the Second Circuit set forth the standard for when a document that is created with both a litigation and business purpose is prepared "in anticipation of litigation," holding that the document must be prepared "'because of' existing or expected litigation." *Id.* at 1198. Thus, under *Adlman*, a document created "because of" the prospect of litigation "does not lose protection . . . merely because it is created in order to assist with a business decision." *Id.* at 1202; *see also Schaeffler v. United States*, 806

5

F.3d 34, 43 (2d Cir. 2015) ("Documents prepared in anticipation of litigation are work product, even when they are also intended to assist in business dealings."). Conversely, "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" do not qualify for work product protection "[e]ven if such documents might also help in preparation for litigation." *Adlman*, 134 F.3d at 1202.

### III. DISCUSSION

For the reasons stated below, I hold that (1) the materials prepared by Weil and the communications between Weil and the Audit Committee are privileged; (2) materials prepared by E&Y are privileged, and are otherwise protected work product; (3) the materials prepared by Teneo are neither privileged nor work product and must be produced; and (4) Weil and E&Ys' disclosure of materials to GT did not waive work product protection. However, these findings set out general principles for the parties to apply, not ironclad decrees.

a. Communications between Weil and ARCP

Weil's and the Audit Committee's communications and the documents that they prepared in connection with the investigation are protected by the attorney-client privilege. Weil's investigation was conducted in connection with the Audit Committee's request for legal advice in light of possible accounting errors and the anticipation of governmental investigations and civil litigation. Furthermore, the witnesses interviewed were explicitly told that the purpose of the interviews was to collect information to assist in providing legal advice to the corporate client, and that the matters discussed were therefore privileged and confidential. *See* Garcia Declaration, ECF 401, at ¶ 22. Such communications fall squarely within the ambit of attorney-client privilege and are not discoverable. *See In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d at 527 ("It is well established that the privilege applies to communications between

6

corporate counsel and a corporation's employees, made 'at the direction of corporate superiors in order to secure legal advice from counsel.'" (citing *Upjohn*, 449 U.S. at 394)).

### b. E&Y Communications and Materials

The communications and materials that E&Y produced in connections with the investigation are also protected. First, these communications are protected by attorney-client privilege by *Koval*. That is, a communication from or to either E&Y or Weil and the Audit Committee will be privileged if it is "made in confidence for the purpose of obtaining legal advice from the lawyer" to the audit committee, and if the lawyer employs the accountant to assist the lawyer in understanding technical acckunting issues. *Koval*, 296 F.2d at 922. Accordingly, the attorney-client privilege applies to a communication from E&Y if the ARCP defendants can show that the predominant purpose of the communications with E&Y were to enable Weil to deliver legal advice to its clients. *See United States v. Finazzo*, No. 14-3213-CR(L), 2017 WL 922966, at *7 (2d Cir. Mar. 7, 2017) ("The burden of establishing the existence of an attorney-client privilege rests with the party asserting it."). Conversely, "[i]f what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Koval*, 296 F.2d at 922.

Second, the materials that E&Y prepared were in anticipation of litigation and are therefore protected work product. The record reflects that E&Y would not have prepared these materials in substantially similar form absent the prospect of litigation because (1) GT, not E&Y, performed the audit work necessary to restate the Company's financial statements; and (2) the purpose of E&Y's retainer with Weil was to provide forensic accounting services in connection with Weil's representation of the Audit Committee. Pursuant to *Adlman*, such materials are not discoverable. *See In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 724555, at *8 (S.D.N.Y.

7

Mar. 9, 2007) ("[T]he fact that some or even all of the documents at issue were created in part to ensure that [the company's] public disclosures were accurate does not remove them from the ambit of work product protection under *Adlman*.").

   c. Teneo Communications and Materials

Communications from and materials prepared by Teneo, the public relations firm hired to assist ARCP regarding relations with the public and media in connection with the investigation, are not privileged and must be produced. Neither the attorney-client privilege nor the work product doctrine extend to communications to and from public relations firms that provide advisory and strategic communication services. *See Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("[T]he [attorney-client] privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client. . . . [I]t is obvious that as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine.").

   d. Materials Disclosed to GT

At issue is whether ARCP waived work product protection with respect to the investigation materials provided to GT, which ARCP disclosed in order to coordinate with and receive feedback from GT to determine appropriate areas for the investigation. "[T]he work product privilege should not be deemed waived unless disclosure is inconsistent with maintaining secrecy from possible adversaries." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445–46 (Baer, J.) (S.D.N.Y. 2004). Accordingly, "courts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." *Id.* (internal quotation marks and citation omitted).

This Court addressed this issue in *Medinol, Ltd. v. Boston Sci. Corp.*, 214 F.R.D. 113 (S.D.N.Y. 2002). In *Medinol*, I held that the defendant's disclosure of board meeting minutes to an auditor effected a waiver of work product protection. My decision was based on the finding that the defendant and its outside auditor did not share common interests in litigation, and concluded that such disclosures "did not therefore serve the privacy interests that the work product doctrine was intended to protect." *Id.* at 17.

However, the instant case is distinguishable from *Medinol*, and I hold that ARCP did not waive work product protection when it provided materials to GT. Although GT, as an independent auditor, had the responsibility to issue an independent opinion about the fairness of ARCP's financial reports, both ARCP and GT shared a common interest in getting to the root of any errors in ARCP's financial statements, which had previously been reviewed or audited by GT. *See, e.g., Merrill Lynch & Co.*, 229 F.R.D. at 448 ("A business and its auditor can and should be aligned insofar as they both seek to prevent, detect, and root out corporate fraud."). Thus, that GT and ARCP maintained the routine tension between an independent auditor and company is insufficient, on its own, to compel waiver. *See United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) ("[T]he possibility of a future dispute between [the accountant] and [company] does not render [the accountant] a potential adversary for the present purpose. If it did, any voluntary disclosure would constitute waiver.").

## IV. CONCLUSION

For the aforementioned reasons, the ARCP defendants' motion is granted in part and denied in part. Specifically, I hold that (1) the materials prepared by Weil and the communications between Weil and the Audit Committee are privileged; (2) materials prepared by E&Y are privileged, and are otherwise protected work product; (3) the materials prepared by

9

Teneo are neither privileged nor work product and must be produced; and (4) Weil and E&Ys' disclosure of materials to GT did not waive work product protection. These holdings represent general principles, not ironclad decrees, and the parties must review the privilege logs in light of them to determine whether a particular document or set of documents are discoverable. The Clerk shall terminate the motion (ECF 399).

    SO ORDERED.

Dated: New York, New York
       August 14, 2017

ALVIN K. HELLERSTEIN
United States District Judge