UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                       :
                                       :  Case No. 1:15-mc-00040-AKH
                                       :
IN RE AMERICAN REALTY CAPITAL     :  **ECF CASE**
PROPERTIES, INC. LITIGATION         :
                                       :  **ORAL ARGUMENT REQUESTED**
                                       :
                                       :
-----------------------------------------------------------------X

**CERTAIN SECURITIES ACT OF 1933 DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR RENEWED MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT DUE TO PLAINTIFFS' FAILURE TO ESTABLISH TRACEABILITY</u>**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

      A.      Plaintiffs' Section 11 Claims .................................................................3

      B.      How Securities Are Transferred And Held.............................................3

      C.      Plaintiffs' Shares Of ARCP Common Stock At Issue ............................6

      D.      Mr. Pitt Does Not Dispute Any Material Facts......................................6

LEGAL STANDARD................................................................................................................8

ARGUMENT .........................................................................................................................9

I.      The Tracing Requirement Is Strictly Enforced, Even In Light Of Changes In Securities Trading Practices. ...........................................................................................10

II.     Courts Recognize That The Advent Of The Intermediated System, Through Which Securities Are Held In Fungible Bulk, Makes It Virtually Impossible To Trace Shares To A Particular Registration Statement When There Have Been Multiple Offerings Of The Same Security. ...................................................................................................12

III.    Because They Hold A *Pro Rata* Interest In A Fungible Bulk Of ARCP Common Stock— Rather Than Specifically Identifiable Shares—Plaintiffs Cannot Trace Their Shares To Any Particular Registration Statement.........................................................................13

CONCLUSION.....................................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Abbey v. Computer Memories, Inc.*,
    634 F. Supp. 870 (N.D. Cal. 1986) ....................................................11, 12, 13, 14

*In re Barclays Bank PLC Sec. Litig.*,
    2017 WL 4082305 (S.D.N.Y. Sept. 13, 2017)...........................................................8

*Barnes v. Osofsky*,
    373 F.2d 269 (2d Cir. 1967).....................................................................9, 10, 11

*Brown v. City of Syracuse*,
    673 F.3d 141 (2d Cir. 2012)..................................................................................9

*Canon Inc. v. Tesseron Ltd.*,
    146 F. Supp. 3d 568 (S.D.N.Y. 2015).................................................................9

*Colonial Realty Corp. v. Brunswick Corp.*,
    257 F. Supp. 875 (S.D.N.Y. 1966) ...................................................................12

*In re Crazy Eddie Sec. Litig.*,
    792 F. Supp. 197 (E.D.N.Y. 1992) ...................................................................11

*Delaware v. New York*,
    507 U.S. 490 (1993)................................................................................................4

*In re FleetBoston Fin. Corp. Sec. Litig.*,
    253 F.R.D. 315 (D.N.J. 2008)......................................................................11, 12

*In re Global Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)..............................................................9, 10

*Grand Lodge of Pa. v. Peters*,
    550 F. Supp. 2d 1363 (M.D. Fla. 2008)............................................................11

*Hemmer Grp. v. Sw. Water Co.*,
    663 F. App'x 496 (9th Cir. 2016) (per curiam) ............................................13, 14

*In re Initial Public Offering Sec. Litig.*,
    227 F.R.D. 65 (S.D.N.Y. 2004), *vacated on other grounds*,
    471 F.3d 24 (2d Cir. 2006)................................................................10, 11, 12, 16

*Kirkwood v. Taylor*,
    590 F. Supp. 1375 (D. Minn. 1984)................................................................12, 13

*Klein v. Computer Devices, Inc.*,
    591 F. Supp. 270 (S.D.N.Y. 1984) ....................................................................10

*Lorber v. Beebe*,
    407 F. Supp. 279 (S.D.N.Y. 1975) ........................................................10, 12, 13, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).......................................................................................................9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
    592 F.3d 347 (2d Cir. 2010)...........................................................................................9

*Perrin v. Sw. Water Co.*,
    2014 WL 10979865 (C.D. Cal. July 2, 2014)...............................................................12

*Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*,
    559 F.3d 772 (8th Cir. 2009) ..........................................................................................4

*In re Puda Coal Sec. Inc. Litig.*,
    2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ......................................................... *passim*

*Wechsler v. Hunt Health Sys., Ltd.*,
    198 F. Supp. 2d 508 (S.D.N.Y. 2002)..............................................................................9

*Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*,
    539 F.3d 1159 (9th Cir. 2008) .........................................................................................4

**Statutes & Rules**

15 U.S.C. § 77k(a) .................................................................................................................16

15 U.S.C. § 78q-1(a) ...............................................................................................................4

Fed. R. Civ. P. 56(a) ................................................................................................................8

# INTRODUCTION

Pursuant to the Court's instruction at the June 12, 2019 hearing, certain Securities Act of 1933 Defendants[1] renew their motion for summary judgment as to Counts IV-VI on the basis that Plaintiffs have failed to introduce evidence sufficient to prove that they hold shares of ARCP common stock that are traceable to the challenged registration statements. The Court previously denied summary judgment on this question, ruling that "issues of fact exist regarding traceability." (D.E. 851, Summ. J. Order at 8 (May 10, 2019).) But whatever issues of fact may have been open at the time of this Court's previous order, it is clear that no disputes of material fact remain. For that reason, as this Court observed, Plaintiffs' tracing burden should be addressed "now," before trial. (Ex. A, 06/12/2019 Hearing Tr. at 28.) Plaintiffs have effectively conceded as much themselves, filing a so-called "motion *in limine*" in which they argue that the Court should decide the legal question now and preclude Defendants from presenting evidence disputing Plaintiffs' ability to trace at trial. (*See* D.E. 990, Pls.' Motion *in Limine* No 11.)

Since briefing closed on the initial motion for summary judgment, Harvey Pitt—the putative expert on whom Plaintiffs intend to rely to satisfy their tracing burden (*see* Ex. A, 06/12/2019 Hearing Tr. at 26-27)—has submitted his expert report and testified at his deposition.

---

[1] The relevant Securities Act of 1933 Defendants are Grant Thornton LLP; American Realty Capital Properties, Inc. (n/k/a VEREIT, Inc.); AR Capital LLC; ARC Properties Advisors LLC; Nicholas S. Schorsch; Edward M. Weil; William M. Kahane; Leslie D. Michelson; Edward G. Rendell; Scott J. Bowman; Peter M. Budko; Brian Block; Lisa Beeson; Brian D. Jones; William G. Stanley; Thomas A. Andruskevich; Scott P. Sealy; Barclays Capital Inc.; BMO Capital Markets Corp.; Capital One Securities, Inc.; Citigroup Global Markets Inc.; Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc.; Janney Montgomery Scott, LLC; JMP Securities LLC; J.P. Morgan Securities LLC; KeyBanc Capital Markets Inc.; Ladenburg Thalmann & Co. Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Mizuho Securities USA LLC (f/k/a Mizuho Securities USA Inc.); Morgan Stanley & Co. LLC; Piper Jaffray & Co.; PNC Capital Markets LLC; RBS Securities Inc.; Robert W. Baird & Co. Incorporated; and Wells Fargo Securities, LLC.

As detailed below, Mr. Pitt does not call into question any of the factual evidence that shows Plaintiffs' inability to trace their shares. There is no dispute that the relevant named Plaintiffs did not acquire a right to any specifically identifiable shares, but instead acquired only a *pro rata* interest in a fungible bulk of ARCP common stock shares held by the Depository Trust Company ("DTC"). (*See* Ex. B, Report of Harvey Pitt ("Pitt Report") at 24.) Nor is there any dispute that DTC's fungible bulk contained shares issued under registration statements not at issue here. (*Id.*) Far from disputing these facts, Mr. Pitt has expressed his agreement with them: "the common shares of ARCP … are held by DTC in a single fungible bulk, meaning that shareholders have a *pro rata* interest in the fungible bulk of securities, rather than a right to claim specific shares." (*Id.*) Thus, as Mr. Pitt's report and deposition confirm, the only dispute goes not to any *factual* question, but rather to the appropriate *legal* analysis of these undisputed facts. And, as multiple courts have held, these undisputed facts necessarily mean that the shares the named Plaintiffs acquired are untraceable.

As this Court recognized in June, although Plaintiffs "bore the burden of coming forward" with evidence of traceability in opposition to the previous motion for summary judgment, "[They] didn't do it. … And [the Court] didn't punish them for it." (Ex. A, 06/12/2019 Hearing Tr. at 29.) "But," the Court went on, "they can do it now." (*Id.*) And so they must. The Court should grant summary judgment to Defendants on Count IV (as it relates to common stock), Count V, and Count VI.[2]

---

[2] This Court has already granted summary judgment against aftermarket purchasers of ARCP common stock on the Section 11 claims. (D.E. 851, Summ. J. Order at 8 (May 10, 2019).)

## FACTUAL BACKGROUND

### A.    Plaintiffs' Section 11 Claims

Plaintiffs bring six claims under Section 11 of the Securities Act of 1933. Only the three counts related to ARCP's offerings of *common stock* are at issue in this motion: Count IV, which relates to ARCP's offering of common stock in January 2014 in connection with the ARCT IV merger; Count V, which relates to ARCP's offering of common stock in February 2014 in connection with the Cole Merger; and Count VI, which relates to ARCP's offering of common stock in May 2014 in connection with a secondary public equity offering. Defendants do not seek summary judgment with respect to claims based on the debt offerings in Counts I–III or the Series F Preferred Stock at issue in Count IV.

### B.    How Securities Are Transferred And Held

To establish traceability, Plaintiffs must show that the shares they hold are traceable to the specific registration statement they challenge. *In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at *8 (S.D.N.Y. Oct. 1, 2013). If shares were still issued in the form of paper certificates—as they were at the time of the enactment of the Securities Act in 1933 (56.1 ¶ 1 (citing Report of Jack R. Wiener "Wiener Report"))[3]—then tracing would be straightforward. A plaintiff bringing a Section 11 claim could rely on the paper certificate to establish that she acquired shares issued under a particular registration statement.

But that is not how securities transactions work today. Because of the inefficiency and delay caused by the paper certificate system, Congress delegated to the SEC the responsibility of

---

[3] As set forth more fully in his Report, Jack R. Wiener is a former officer for The Depository Trust & Clearing Corporation (DTCC) and DTC, which is DTCC's wholly owned subsidiary and the world's largest custodian of securities. (Ex. C, Wiener Report ¶¶ 9-10.) He worked for DTCC and DTC for nearly 17 years. (*Id.*)

addressing the problem. *See Whistler Invs., Inc. v. Depository Trust & Clearing Corp.*, 539 F.3d 1159, 1163 (9th Cir. 2008) (describing statutory background); 15 U.S.C. § 78q-1(a). The SEC encouraged industry players to create a new system of clearance and settlement. *See Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 776 (8th Cir. 2009).

DTC was created to address this paperwork crisis. (56.1 ¶¶ 3-4.) Acting as a central depository for securities,[4] DTC took custody of paper certificates and developed an "intermediated system" of holding securities. (56.1 ¶ 5.) In DTC's intermediated system, typically one or more "global certificates" are issued by the issuer in DTC's "street name"—that is, in the name of DTC's partnership nominee, Cede & Co. (56.1 ¶¶ 6-9.) Cede & Co. becomes the registered owner of these securities on the books of the issuer of the securities; the global certificates are physically held either by DTC or a sub-custodian of DTC. (56.1 ¶ 8.) When an investor acquires shares of securities that are held by DTC in this fashion, the investor's position in the securities issue (that is, how many shares the investor owns) is commonly referred to as a "book-entry" position, reflecting the fact that the investor's position is reflected only on the books and records of DTC rather than in the form of a paper certificate. (56.1 ¶¶ 11-12.)

Each issue of securities held by DTC also is given a CUSIP, which is an alphanumeric code used to identify the security. (56.1 ¶ 13.) Securities of the same type (for example, common stock) issued by the same issuer, but in offerings made at different times, often bear the same CUSIP. DTC holds all securities that it custodies bearing the same CUSIP in street name in a fungible, aggregate bulk. (56.1 ¶ 14.) Once deposited in the fungible bulk, all securities bearing the same CUSIP are commingled and cannot be distinguished from one another. (56.1 ¶ 15.)

---

[4] A securities depository is "a large institution that holds only the accounts of 'participant' brokers and banks and serves as a clearinghouse for its participants' securities transactions." *Delaware v. New York*, 507 U.S. 490, 496 (1993).

A securities intermediary, such as DTC, a bank, or a broker, maintains securities accounts for its customers. (56.1 ¶ 16.) Under this intermediated holding system, the customer (down to the beneficial owner) ***does not receive any specifically identifiable shares***. (56.1 ¶¶ 19-20, 26.) Instead, the customer has a *pro rata* interest in the fungible, aggregate bulk of all the securities held in street name by the intermediary that bear the same CUSIP. (56.1 ¶¶ 18.)

In this way, the intermediated holding system is akin to a vat of wine. It is as though the issuer, on behalf of three Participants,[5] were to deposit with DTC ten gallons of red wine from the same vineyard, but of different vintages, as follows: On behalf of Participant A—one gallon of Chateau ARCP 2001; on behalf of Participant B—two gallons of Chateau ARCP 2002; and on behalf of Participant C—seven gallons of Chateau ARCP 2003. DTC, in turn, pours the aggregate ten gallons of Chateau ARCP red wine, of three different vintages, into a single vat. (Ex. C, Wiener Report at ¶ 30.) The ten gallons of red wine in the vat is the fungible, aggregate bulk that DTC holds. (*Id.* at ¶ 31.) The gallons of wine are all commingled in the vat. (*Id.*) Each Participant has a right to its respective *pro rata* share of the contents of the vat—for example, Participant A owns a ten percent interest in the wine in the vat. (*Id.*) But no Participant directly owns any specifically identifiable wine. (*Id.*) When Participant A seeks to withdraw its ten percent *pro rata* share of wine, DTC simply dips a ladle into the vat and scoops out ten percent of the wine that is in the vat. (*Id.*) Because the gallons of wine were all commingled in the vat, no one—including the Participant or DTC—is able to determine that any particular drop or cup of wine in the vat came from a particular gallon or vintage. (*Id.*)

---

[5] A DTC "Participant" is an entity that DTC has admitted to be a member of the depository and to maintain a securities account at DTC. (Ex. C, Wiener Report ¶ 18 n.6.)

### C.   Plaintiffs' Shares Of ARCP Common Stock At Issue

ARCP common stock was held by DTC in the intermediated system of securities holding described above. (56.1 ¶ 21.) All shares of ARCP common stock—whether issued in its initial public offering in 2011 or in any of the three secondary offerings at issue here—were identified by the same CUSIP: 02917T104. (56.1 ¶ 22.) Because the same CUSIP was used for each issuance of common stock, the CUSIP does not provide any information about when, or under what registration statement, a particular share of common stock was issued. (56.1 ¶ 23; *see also* Ex. D, Deposition of Harvey Pitt ("Pitt Dep.") at 284:18-285:10.) And regardless of the offering, all shares of ARCP common stock held at DTC in DTC's street name—that is, in the name of Cede & Co.—were held as part of a fungible bulk. (56.1 ¶ 25.) Put differently, the shares of ARCP common stock that were issued pursuant to the registration statements challenged in this lawsuit were combined with other shares of ARCP common stock—not issued pursuant to the challenged registration statements—in a single fungible bulk. (*See* Ex. B, Pitt Report at 24.)

Plaintiffs' trading records confirm that what they acquired when they invested in ARCP was not specifically identifiable shares of common stock, but rather a *pro rata* interest in the fungible bulk of ARCP common stock held by DTC. (56.1 ¶ 27; *see also* Ex. C, Wiener Report ¶¶ 52-64.) As explained below, this fact is determinative. And it is undisputed. (D.E. 783, Pls.' Resp. to GT 56.1 ¶ 129 (conceding that "Plaintiffs have produced no evidence that any of the named Plaintiffs held their shares of ARCP common stock outside DTC's fungible bulk").)

### D.   Mr. Pitt Does Not Dispute Any Material Facts

Though Plaintiffs' putative expert opines on the ultimate issue that named Plaintiffs can trace their shares of common stock to the registration statements at issue in each of Counts IV, V, and VI, he does not dispute any material fact—and Mr. Pitt's purportedly expert opinions do

not give rise to any triable issue. Far from disputing any facts concerning what interests in ARCP

common stock the named Plaintiffs acquired, Mr. Pitt agrees that

> [a]s is the case with all U.S. public companies that engage in
> multiple issuances of the same class of securities, the common
> stock shares of ARCP that were issued in each of these
> transactions had the same identifying CUSIP numbers as the
> common stock shares already outstanding. Moreover, the common
> shares of ARCP—as is true of each class of stock issued by any
> public company—are held by DTC in a single fungible bulk,
> meaning that **shareholders have a pro rata interest in the fungible
> bulk of securities, rather than a right to claim specific shares**.

(Ex. B, Pitt Report at 24 (emphasis added).)

What Mr. Pitt does dispute is how the law applies to these undisputed facts.[6] Copying

verbatim the words of Class Plaintiffs' summary judgment brief about how the law should be

interpreted, Mr. Pitt opines that "Defendants conflate the concept of how securities are *held*, with

how securities are *acquired*." (*Id.* at 23; *compare* D.E. 784, Pls.' § 11 Opp. to Summ. J. at 74

("[Grant Thornton's] argument … conflates the concept of how securities are *held* with how

securities are *acquired*.").) Instead, according to Mr. Pitt's understanding, "if plaintiffs purchased

shares directly in an offering," there is no "need to trace the shares." (Ex. B, Pitt Report at 26;

*see also* Ex. D, Pitt Dep. at 383:11-389:17 ("[T]here is no such thing as a tracing requirement in

Section 11. … [C]ourts have constructed a traceability doctrine which is, to my knowledge,

wholly judge-made.").) And because the named Plaintiffs participated in the offerings, according

to Mr. Pitt, "how shares are maintained at DTC … has absolutely nothing to do with whether

particular shares were offered—and purchased—pursuant to an effective registration statement."

---

[6] Defendants are filing concurrently with this motion a motion to exclude the testimony of Mr.
Pitt on the ground that, among other things, his testimony comprises legal opinions, which are
inadmissible both because they invade the province of the Court and because they misstate the
law.

(Ex. B, Pitt Report at 24; *see also* Ex. D, Pitt Dep. at 296:16-297:3 (stating that "what happens at DTC is completely irrelevant to the issues in this litigation").)[7]

As set forth below, Mr. Pitt's legal opinions have been thoroughly rejected by courts, which conclude that whether shares are held by DTC is not just relevant but dispositive. *See, e.g.*, *Puda Coal*, 2013 WL 5493007, at *8 ("The steps necessarily involving the DTCC are fatal to traceability."). But most important for present purposes, Mr. Pitt's legal opinions do not create any genuine dispute of material fact.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the movant provides "facts showing that the non-movant's claims cannot be sustained, the opposing party must 'set forth specific facts showing that there is a genuine issue for trial,' and cannot rest on the 'mere allegations or denials' of his pleadings." *In re Barclays Bank PLC Sec. Litig.*, 2017 WL 4082305, at *8 (S.D.N.Y. Sept. 13, 2017) (citation omitted). Summary judgment should be granted "[w]here the record taken as a whole could not lead a

---

[7] At many points, Mr. Pitt cloaks his legal opinions in the purported "understanding" of market participants. (*See, e.g.*, Ex. B, Pitt Report at 22 ("[I]t is commonly understood … that, a *bona fide* claim under Securities Act §11 is stated if the plaintiff alleges—as is the case here—that a registration statement contained an untrue statement of material fact … ."); *id.* at 26-27 ("It is uniformly understood that the traceability requirement in §11 applies only to shareholders who purchased their shares in the aftermarket."); *id.* at 28 ("It is universally understood by issuers, underwriters, auditors, and market participants that investors who purchase or are issued shares directly in a registered securities offering are entitled to pursue Securities Act §11 claims.").) Mr. Pitt admitted that he did not interview or survey any market participants to ascertain their "understandings." (Ex. D, Pitt Dep. at 383:11-385:15.) But even accepting that such a common "understanding" of the law exists, it cannot change what the law actually *is*—and draping legal opinions in the cloth of how the law is supposedly "understood" does not generate any dispute of material fact.

rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the Court previously denied summary judgment on this question, this Court is free in its discretion to consider a renewed motion for summary judgment. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) (finding grounds to renew a motion for summary judgment based on the court's *in limine* evidentiary rulings and their effect on the record); *Canon Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 574 (S.D.N.Y. 2015) ("District courts enjoy considerable discretion in entertaining successive dispositive motions, particularly when the moving party has expanded the factual record on which summary judgment is sought." (citations and punctuation omitted)); *Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 514 (S.D.N.Y. 2002) ("[I]n a renewed summary judgment decision, the Court retains discretion to determine the scope of its reconsideration.").

## ARGUMENT

To establish a prima facie case under Section 11, Plaintiffs must show that they purchased a registered security traceable to the specific registration statement at issue. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010) (stating elements of Section 11 claim). As then-district judge, now-Second Circuit judge Gerard Lynch has explained, "it has been established in the Second Circuit since *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967) (Friendly, J.), that to have standing to assert a section 11 claim, plaintiffs must be able to 'trace their shares to an allegedly misleading registration statement.'" *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 206 (S.D.N.Y. 2003) (quoting *DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003)). This requires Plaintiffs to prove that the shares they acquired were issued under a particular registration statement and are thus "directly traceable" to the relevant offering. *Puda Coal*, 2013 WL 5493007, at *6.

I.      **The Tracing Requirement Is Strictly Enforced, Even In Light Of Changes In Securities Trading Practices.**

Traceability is a demanding requirement that courts enforce strictly, and plaintiffs cannot satisfy it simply by showing that their securities "might" be traceable to the relevant offering. *See Puda Coal*, 2013 WL 5493007, at *7 ("The case law is uninterrupted and has long been clear: traceability is strictly construed for a Section 11 claim."); *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 117 (S.D.N.Y. 2004) (explaining that it is "insufficient that [the] stock 'might' have been issued pursuant to a defective [registration] statement," and noting that the requirement has been "strictly applied"), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006). If a plaintiff fails to carry this burden, the "section 11 claim must be dismissed." *Lorber v. Beebe*, 407 F. Supp. 279, 286 (S.D.N.Y. 1975); *see also Klein v. Computer Devices, Inc.*, 591 F. Supp. 270, 273 (S.D.N.Y. 1984), *on reargument*, 602 F. Supp. 837 (S.D.N.Y. 1985).

Strictly enforcing the tracing requirement protects the balance Congress struck in creating a remedy under Section 11 that does not have certain of the requirements as the remedy under Section 10(b). Unlike a claim under Section 10(b), a claim under Section 11 "dispenses with the requirements of scienter, and, for those who purchase soon enough after the registration statement, reliance." *Global Crossing*, 313 F. Supp. 2d at 207-08. But in exchange, a Section 11 claim is available for a smaller group of people. It is a claim that "inheres in the faulty registration statement that put the shares in question on the market" and therefore "plaintiffs who purchased securities not issued pursuant to the misleading registration statement lack standing as surely as the purchasers of other securities entirely." *Id.* And even though tracing "is often impossible" in light of securities trading practices, a relaxation of the tracing requirement "would be inconsistent with the overall statutory scheme." *Barnes*, 373 F.2d at 272. "[A] literal and rigid application of the tracing requirement is a product of Congress's decision to balance the low-

10

burden substantive proof [with a] high-burden standing requirement, and courts should not abrogate the congressional intent by expanding the 'virtually absolute' liability to claims of purchasers whose securities cannot be traced." *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 347 (D.N.J. 2008); *see also Puda Coal*, 2013 WL 5493007, at *9 ("the case law reflects the plain intent and purpose of Section 11's strict requirements: a lot of certainty is required regarding the provenance of shares to obtain the strict liability of Section 11").

Many courts have recognized the need to construe Section 11's tracing requirement strictly in light of the plain language of the statute and Congress's overall design of the securities laws.[8] Courts also recognize that, although securities trading practices have evolved since Section 11's enactment, neither the statutory text nor its literal meaning has changed. Indeed, as Judge Scheindlin has explained, "The advent of fungible bulk storage has made plaintiffs' tracing requirement a stringent one indeed; however, it is not the domain of this Court to abrogate such a requirement. That is a job for Congress." *In re Initial Public Offering*, 227 F.R.D. at 119 n.402; *see also Barnes*, 373 F.2d at 272-73 (noting that a broader reading of Section 11 "would be inconsistent with the overall statutory scheme" and that changes to the statute must be made by Congress). Investors who are not able to satisfy Section 11's strict tracing requirement are not without a remedy; they simply must satisfy the elements of Section

---

[8] *See, e.g.*, *FleetBoston Fin. Corp.*, 253 F.R.D. at 247-48; *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1374 (M.D. Fla. 2008) ("The courts must defer to Congress should it desire to broaden the class of security owners permitted to recover pursuant to a misleading registration statement."); *In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197, 202 (E.D.N.Y. 1992) ("If Congress wishes to ease [Section 11's tracing] burden on security holders such as plaintiffs, it can do so."); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal. 1986) ("Relaxing the tracing requirement such that a plaintiff may fulfill it by showing even a high probability that some of his shares were from the relevant offering would be inconsistent with the narrow scope of potential liability envisioned by section 11.").

10(b). *See, e.g.*, *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal. 1986);

*Colonial Realty Corp. v. Brunswick Corp.*, 257 F. Supp. 875, 881-82 (S.D.N.Y. 1966).

## II.     Courts Recognize That The Advent Of The Intermediated System, Through Which Securities Are Held In Fungible Bulk, Makes It Virtually Impossible To Trace Shares To A Particular Registration Statement When There Have Been Multiple Offerings Of The Same Security.

As many courts have recognized, the practical effect of the modern system is that, when

securities are held in DTC's street name at DTC as part of a fungible bulk, there is no way to

identify specific shares owned by any DTC participant. *See, e.g.*, *Kirkwood v. Taylor*, 590 F.

Supp. 1375, 1379 (D. Minn. 1984) ("The DTC holds all certificates, both old and new, in its

nominee name as pooled shares in a fungible mass for the benefit of all its members."), *aff'd*, 760

F.2d 272 (8th Cir. 1985) (table decision). This "modern practice of electronic delivery and

clearing of securities trades, in which all deposited shares of the same issue are held together in

fungible bulk, makes it virtually impossible to trace shares to a registration statement once

additional unregistered shares have entered the market." *Initial Public Offering*, 227 F.R.D. at

118; *Perrin v. Sw. Water Co.*, 2014 WL 10979865, at *8 (C.D. Cal. July 2, 2014) (plaintiffs did

not have viable Section 11 claim where "shares were held in fungible mass" by issuer's transfer

agent); *Puda Coal*, 2013 WL 5493007, at *8 ("The steps necessarily involving the DTCC are

fatal to traceability."); *FleetBoston Fin. Corp.*, 253 F.R.D. at 345 ("beneficial owners … [cannot]

satisfy the tracing requirement … in the event their aggregate bulks consist of identically

denominated and, thus, wholly fungible, shares generated by the issuer as a result of more than

one offering"); *Abbey*, 634 F. Supp. at 875-76 (rejecting plaintiff's "fungible mass theory as a

method [of] tracing"); *Kirkwood*, 590 F. Supp. at 1378-81 (same); *Lorber*, 407 F. Supp. at 286-

87 (plaintiff did not have viable Section 11 claim where plaintiff purchased a new share but

received a share from a broker's "house account" containing both old and new shares).

Indeed, multiple courts have granted summary judgment to a defendant because the plaintiff could not trace its shares where those shares were part of a fungible bulk. *See Hemmer Grp. v. Sw. Water Co.*, 663 F. App'x 496, 498 (9th Cir. 2016) (per curiam) (affirming summary judgment on Section 11 claim where plaintiff's shares "were part of a fungible mass" held by plaintiff's transfer agent, which included shares from multiple offerings, and were therefore untraceable); *Abbey*, 634 F. Supp. at 875-76 (granting summary judgment on Section 11 claim where plaintiff's shares were commingled with other shares held in DTC's vault); *Kirkwood*, 590 F. Supp. at 1378-83 (granting summary judgment on Section 11 claims for failure to trace); *Lorber*, 407 F. Supp. at 285-87 (same).

### III. Because They Hold A *Pro Rata* Interest In A Fungible Bulk Of ARCP Common Stock—Rather Than Specifically Identifiable Shares—Plaintiffs Cannot Trace Their Shares To Any Particular Registration Statement.

Plaintiffs' attempt to trace their shares to the relevant registration statements is foreclosed by the law and undisputed facts. It is undisputed that Plaintiffs hold a *pro rata* interest in the fungible bulk held by DTC—not any specifically identifiable shares of ARCP common stock. (D.E. 783, Pls.' Resp. to GT 56.1 ¶ 129.) For that reason, they cannot establish that they acquired any shares of common stock directly traceable to any of the registration statements at issue.

That was precisely the conclusion that Judge Forrest reached in *Puda Coal*. There, the defendants moved for summary judgment on a Section 11 claim based on a secondary offering of common stock. *Puda Coal*, 2013 WL 5493007, at *1. As here, at the time of the secondary offering, the market already contained "old" shares of common stock issued pursuant to other registration statements not challenged by the plaintiffs. *Id.* at *2-3. The summary judgment record established that the "new" shares of common stock issued pursuant to the allegedly misleading registration statement—which formed the basis of the Section 11 claim—were part of a fungible bulk of old and new shares held at DTC, and that the named plaintiff purporting to

represent the Section 11 class merely received electronic book-entry shares representing a *pro rata* interest in that fungible bulk. *Id.* at *3-4. Because the named plaintiff received only a *pro rata* interest in the fungible bulk, and not any specifically identifiable shares, his shares could not be traced to the allegedly defective registration statement. *Id.* at *2-5, 8. In Judge Forrest's words, "[t]his fungibility of shares is fatal to [plaintiff's] attempt to trace particular shares to" a particular offering. *Id.* at *8. Recognizing this reality, Judge Forrest granted summary judgment against the plaintiffs and dismissed the Section 11 claim. *Id.* at *9, *20.

Plaintiffs here attempt to distinguish *Puda Coal* and the other cases cited above on the ground that Plaintiffs were "direct participants" in the relevant offerings—meaning that the Count IV and Count V Plaintiffs "received their shares *in* the Cole and ARCT IV Mergers" and the Count VI Plaintiffs purchased shares "*in* the Secondary Offering." (*See* D.E. 784, Pls.' § 11 Opp. to Summ. J. at 78-80.) According to Plaintiffs, Grant Thornton's argument

> conflates the concept of how securities are *held* with how securities are *acquired*. How shares are maintained at DTC has nothing to do with whether particular shares were offered and acquired pursuant to a registration statement filed with the SEC, and whether acquirers of those securities are protected by the Securities Act.

(*Id.* at 74.)

But Plaintiffs misunderstand the law. Contrary to Plaintiffs' unsupported assertion, how securities are held *is* relevant to determining *which* securities a shareholder acquired, as many cases illustrate. *See, e.g.*, *Lorber*, 407 F. Supp. at 286-87 (dismissing Section 11 claim because plaintiff "*received* a certificate which came out of a Lehman 'house account' which held both 'old' and 'new' shares on a fungible basis and thus could not be identified as either 'old' or 'new'" (emphasis added)); *Abbey*, 634 F. Supp. at 875 (granting summary judgment on Section 11 claim because plaintiff received shares that had been commingled with shares from other offerings in DTC's vault); *Hemmer Grp.*, 663 F. App'x at 498 (granting summary judgment on

14

Section 11 claim because plaintiff received shares that were part of a fungible mass that included shares from multiple offerings: "Because the [plaintiff] could not demonstrate that its shares *originated* from the relevant registration statement, it lacked standing to pursue its Section 11 claim" (emphasis added)). As these cases make clear, the manner in which a Section 11 plaintiff's shares are held bears directly on the plaintiff's ability to satisfy Section 11's strict tracing requirement.

Moreover, the case law directly *rejects* Plaintiffs' assertion that DTC's method of holding securities "has *nothing to do* with whether particular shares were … acquired pursuant to a registration statement filed with the SEC." (D.E. 784, Pls.' § 11 Opp. to Summ. J. at 74 (emphasis added).) DTC's method of holding securities is not only relevant but in fact dispositive, as many courts have recognized. In Judge Forrest's words: "The steps necessarily involving the DTCC are ***fatal to traceability***." *Puda Coal*, 2013 WL 5493007, at *8 (emphasis added). That is because when participants acquire a *pro rata* interest in a fungible bulk held by DTC, they do not acquire identifiable shares that are susceptible to tracing—and even if they did, it is impossible to identify which of the shares in that fungible bulk is traceable to which registration statement. Once shares become part of the fungible bulk at DTC, "they lose any specific identity." *Id.* And because they lose any specific identity, they cannot be traced to a particular registration statement. *Id.*

This is true regardless of whether Plaintiffs "participated in" a merger or secondary offering of ARCP common stock. Again, Plaintiffs *do not dispute* that their shares were held as part of DTC's fungible bulk. (D.E. 783, Pls.' Resp. to GT 56.1 ¶ 129.) Thus, even though Plaintiffs may have acquired securities ***in connection with*** the Cole or ARCT IV merger or the secondary offering, what they actually ***received*** was a *pro rata* interest in the fungible bulk of old

and new ARCP common stock held by DTC—not specifically identifiable shares issued pursuant to the relevant registration statements. In the language of Section 11, Plaintiffs cannot show that what they "acquir[ed]" was any "such security" issued pursuant to the registration statements at issue here. 15 U.S.C. § 77k(a).

For this reason, none of the evidence that Plaintiffs point to can satisfy their tracing burden. Plaintiffs' account statements and other documents show that interests in additional shares of ARCP common stock flowed into the named Plaintiffs' accounts following the mergers or were purchased on the date of the secondary public equity offering. (*See* D.E. 784, Pls.' § 11 Opp. to Summ. J. at 76-78, 80-81.) But these documents do not answer Section 11's decisive question—whether the shares each named Plaintiff *actually received* were issued pursuant to the relevant registration statements, as opposed to being shares already circulating in the market and held in DTC's fungible bulk. *See Initial Public Offering*, 227 F.R.D. at 119 n.402 ("The advent of fungible bulk storage has made plaintiffs' tracing requirement a stringent one indeed; however, it is not the domain of this Court to abrogate such a requirement. That is a job for Congress.").

## CONCLUSION

Consistent with the decisions of Judge Forrest in *Puda Coal*, Judge Scheindlin in *Initial Public Offering Securities Litigation*, and the other cases cited above, the Court should enter judgment in Defendants' favor on Count V (Cole merger) and Count VI (May 2014 secondary public equity offering) and should dismiss claims of common stock holders in Count IV (ARCT IV merger).

Dated: August 5, 2019                                Respectfully submitted,

**MILBANK LLP**                                     **SIDLEY AUSTIN LLP**

By:  /s/ *Scott A. Edelman*                         By:   /s/ *Gary F. Bendinger*
    Scott A. Edelman                                  Gary F. Bendinger
    Antonia M. Apps                                   787 Seventh Avenue
    Jed M. Schwartz                                   New York, New York 10019
    Jonathan Ohring                                   Telephone:  (212) 839-5300
    55 Hudson Yards
    New York, New York 10001                          Bruce R. Braun
    Telephone:  (212) 530-5000                        Melanie E. Walker
                                                        Kendra L. Stead
    Jerry L. Marks                                    One South Dearborn Street
    2029 Century Park East, 33rd Floor                 Chicago, Illinois 60603
    Los Angeles, CA 90067-3019                        Telephone: (312) 853-7000
    Telephone: (424) 386-4000

*Attorneys for Defendant American Realty*           *Attorneys for Defendant Grant Thornton LLP*
*Capital Properties, Inc. (n/k/a VEREIT,*
*Inc.)*

**PAUL, WEISS, RIFKIND,**                           **KELLOGG, HANSEN, TODD, FIGEL &**
**WHARTON & GARRISON LLP**                          **FREDERICK, P.L.L.C.**

By:  /s/ *Theodore V. Wells Jr.*                    By:   /s/ *Reid M. Figel*
    Theodore V. Wells Jr.                             Reid M. Figel
    Daniel J. Kramer                                  Rebecca A. Beynon
    Lorin L. Reisner                                  Andrew E. Goldsmith
    Audra J. Soloway                                  Bradley E. Oppenheimer
    Christopher L. Filburn                            1615 M Street N.W., Suite 400
    1285 Avenue of the Americas                       Washington, D.C. 20036
    New York, NY 10019-6064                           Telephone:  (202) 326-7900
    Telephone:  (212) 373-3000

*Attorneys for Defendant Nicholas S.*               *Attorneys for Defendants AR Capital LLC, ARC*
*Schorsch*                                          *Properties Advisors LLC, Scott J. Bowman, Peter*
                                                    *M. Budko, Brian D. Jones, William K. Kahane,*
                                                    *and Edward M. Weil*

**STEPTOE & JOHNSON LLP**

By:   /s/ *Michael C. Miller*
Michael C. Miller
Michael G. Scavelli
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 506-3900


*Attorneys for Attorney Brian Block*

**PETRILLO KLEIN & BOXER LLP**

By:   /s/ *Guy Petrillo*
Guy Petrillo
Dan Goldman
655 Third Avenue, 22nd Floor
New York, NY 10017
Telephone: (212) 370-0330



*Attorneys for Defendant Lisa Beeson*


**SHEARMAN & STERLING LLP**



By:   /s/ *Daniel Lewis*
Adam S. Hakki
John Gueli
Daniel Lewis
Grace J. Lee
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 370-0330


*Attorneys for the Third-Party Underwriters*

**MORRIS, MANNING & MARTIN LLP**

By:   /s/ *John P. MacNaughton*
John P. MacNaughton
Eric A. Larson
1600 Atlanta Financial Center
343 Peachtree Road, N.E.
Atlanta, GA 30326
Telephone: (404) 233-7000

*Attorneys for Defendant Scott P. Sealy, Sr.*

**WEIL, GOTSHAL & MANGES LLP**

By:   /s/ *Christopher L. Garcia*
Christopher L. Garcia
Richard W. Slack
Evert J. Christensen, Jr.
Adam J. Bookman
Justin M. DiGennaro
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000

*Attorneys for Defendants Thomas A. Andruskevich, Leslie D. Michelson, Edward G. Rendell, and William G. Stanley*

18